1  DALE L. ALLEN, JR., State Bar No. 145279
   dallen@aghwlaw.com
2  AMEET D. PATEL, State Bar No. 343413
   apatel@aghwlaw.com
3  ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
   180 Montgomery Street, Suite 1200
4  San Francisco, CA  94104
   Telephone:      (415) 697-2000
5  Facsimile:      (415) 813-2045

6  Attorney for Defendant
   CITY OF REDDING, GARRETT MAXWELL, AND
7  MATTHEW BRUCE

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11  VERONICA MCLEOD, individually and        Case No. 2:22-cv-00585-WBS-JDP
    as successor in interest to decedent,
12  DOLORES HERNANDEZ; AMADO
    HERNANADEZ; individually and as          **DEFENDANTS' NOTICE OF MOTION AND**
13  successor in interest to decedent,        **MOTION FOR SUMMARY JUDGMENT, OR**
    DOLORES HERNANDEZ; and YSIDRA            **IN THE ALTERNATIVE, SUMMARY**
14  REGALDO, individually,                    **ADJUDICATION; MEMORANDUM OF**
                                              **POINTS AND AUTHORITIES [F.R.C.P. 56]**
15                   Plaintiff,
                                              Hon. WILLIAM B. SHUBB
16       v.
                                              Date:    June 10, 2024
17  CITY OF REDDING; GARRETT                  Time:    1:30 p.m.
    MAXWELL, an individual; MATTHEW           Ctrm:    5
18  BRUCE, an individual; and DOES 2-10,
    inclusive,                                Trial:   September 10, 2024
19
                     Defendants.
20

21

22

23

24

25

26

27

28

656126.1

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on June 10, 2024, at 1:30 p.m. in Courtroom 5 of the above entitled Court, located on the 14th floor of 501 I Street, Sacramento, CA 95814, defendants CITY OF REDDING, GARRETT MAXWELL and MATTHEW BRUCE (collectively, "Defendants") will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 56 and Local Rule 260 for an order granting summary judgment or, in the alternative, partial summary judgment in their favor, and against Plaintiffs VERONICA MCLEOD, AMADO HERNANDEZ and YSIDRA REGALDO, (collectively, "Plaintiffs") with respect to the following claims in Plaintiffs' operative First Amended Complaint:

1.      Wrongful Detention/Arrest (Fourth Amendment) (42 U.S.C. §1983);

2.      Excessive Force (Fourth Amendment) (42 U.S.C. §1983);

3.      Denial of Medical Care (Fourth Amendment) (42 U.S.C. §1983);

4.      Substantive Due Process – Right to Familial Relationship (42 U.S.C. §1983);

5.      Municipal Liability– Ratification (42 U.S.C. §1983);

6.      Municipal Liability – Inadequate Training (42 U.S.C. §1983);

7.      Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. §1983)[1];

8.      Battery by a Peace Officer (Wrongful Death);

9.      California Code Civil Procedure §377.60 (Negligence - Wrongful Death);

10.     California Civil Code Section §52.1 (Bane Act);

11.     Dismissal of DOE Defendants; and

12.     Dismissal of Punitive Damages.

This motion is made pursuant to Federal Rule of Civil Procedure 56 and Local Rule 260, on the grounds that no genuine issue of material fact exists as to the above-mentioned claims, and

---

[1] Plaintiffs do not specifically allege *Monell* in any cause of action. See *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Instead, Plaintiffs claim that the alleged constitutional violations were caused by a Redding Police Department policy or custom and/or inadequate training and the alleged actions were ratified by someone with final policymaking authority. (Dkt. No. 13 at ¶¶ 66-99).

656126.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

Defendants are entitled to judgment as a matter of law. Specifically, the excessive force, battery and wrongful death-death claims fail because the undisputed facts show that the Defendant officers, Maxwell, and Bruce, reasonably perceived that Dolores Hernandez, ("Hernandez" or "Decedent"), posed an imminent lethal threat, and the use of lethal force was justified as a matter of law, and because the officers are entitled to qualified immunity. Plaintiffs' inadequate medical care claim fails because Defendant Maxwell promptly summoned necessary medical assistance. The substantive due process (right to familial relationship) claim fails because the officers did not act with a purpose to harm or deliberate indifference and because they are entitled to qualified immunity. The *Monell* claims (fifth through seventh causes of action) fail because Plaintiffs have failed to adequately show the individual Defendants ratified any unconstitutional conduct or that the City of Redding maintained inadequate training or an unconstitutional custom, policy, or practice that would give rise to municipal liability. The negligence claim fails because Defendants exercised reasonable care under the circumstances. The Civil Code § 52.1 claim fails because no unreasonable force was used and because, under recent law, excessive force alone is insufficient for a Bane Act claim. The DOE defendants should be dismissed since the time to substitute/serve-in has passed. Finally, there are no grounds for punitive damages since there is no evidence Defendants acted with evil intent or motive, or with reckless or callous indifference to the decedent's civil rights.

This motion is further based on this Notice, on the Memorandum of Points and Authorities below, Defendants' Separate Statement of Undisputed Facts submitted herewith, the declarations of Ameet D. Patel, Chris Smyrnos, and Rajeev Kelkar filed herewith, and all exhibits attached thereto, on the [proposed] order, on the Court's file in this matter, and on such oral and/or documentary evidence as may be presented at the hearing of this motion.

## STATEMENT OF RELIEF SOUGHT

Defendants seek an order granting summary judgment or, in the alternative, partial summary judgment, in their favor, and against Plaintiffs, with respect to the following portions of Plaintiffs' First Amended Complaint: the first cause of action (Fourth Amendment unlawful detention/arrest) (42 U.S.C. §1983); the second cause of action, (Fourth Amendment, excessive

force) (42 U.S.C. §1983); the third cause of action, (Fourth Amendment– denial of medical care) (42 U.S.C. §1983); the fourth cause of action, (Fourteenth Amendment, substantive Due Process) (42 U.S.C. §1983); the fifth sixth and seventh causes of action, (*Monell* – ratification; inadequate training and unconstitutional custom, practice, or policy) (42 U.S.C. §1983); eighth, ninth, and tenth causes of action under California State law (Battery, Negligence, and Bane Act (Cal. Civ. Code §52.1));  dismissal of DOE defendants; and dismissal of punitive damages.

Respectfully submitted,

Dated:  April 24, 2024

ALLEN, GLAESSNER,
HAZELWOOD & WERTH, LLP

By:   */s/Ameet D. Patel*
DALE L. ALLEN, JR.
AMEET D. PATEL
Attorneys for Defendants
CITY OF REDDING, GARRETT
MAXWELL, and MATTHEW BRUCE

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

iii

1

## TABLE OF CONTENTS

Page

2

3   I.   INTRODUCTION ......................................................................................... 1

4   II.  FACT OVERVIEW ...................................................................................... 1

5        A.   Dispatch/Call for Service ................................................................. 1

     B.   Witness Video .................................................................................. 2

6        C.   Initial Contact .................................................................................. 2

7        D.   The Incident ..................................................................................... 2

8        E.   Post-Incident Investigation and Shooting Review Board ................... 4

     F.   Redding Police Department Policies, POST, Officer Training............ 4

9        G.   Experts............................................................................................. 5

10       H.   Procedural Status............................................................................. 6

     B.   No Unlawful Detention/Arrest .......................................................... 7

11            1.   Initial Encounter Required No Suspicion .............................. 7

12            2.   Officers Had Probable Cause to Arrest Hernandez................ 8

13            1.   Reasonable Force ................................................................. 8

               a.   Nature of the Intrusion .............................................. 9

14            b.   Government Interest................................................... 9

15                 (1)   Severity of Crime .......................................... 10
                  (2)   Threat ........................................................... 10

16                 (3)   Resistance/Flight........................................... 11
                  (1)   Other Factors................................................. 11

17            a.   Balancing................................................................... 12

18            2.   Qualified Immunity ............................................................ 15

19            a.   No Constitutional Violation ...................................... 16

               b.   Not Clearly Established.............................................. 16

20                 (1)   Overview ...................................................... 16
                  (2)   No Particularized Law................................... 16

21       D.   Reasonable Medical Treatment Was Rendered ................................ 17

22            1.   No Purpose to Harm or Deliberate Indifference ................... 18

23            2.   Qualified Immunity ............................................................ 19

          1.   No Unconstitutional Custom, Practice or Policy Identified.................. 20

24            2.   Isolated Incidents and Dissimilar Events Do Not Suffice.................... 21

25            3.   Ratification ........................................................................ 22

          4.   No Inadequate Training........................................................ 22

26            5.   No Causation ...................................................................... 23

27       J.   DOE Defendants Must Be Dismissed ............................................... 25

28       K.   No Evidence to Support Punitive Damages ...................................... 25

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NOTICE & MPA
2:22-CV-00585-WBS-JDP

656126.1

IV.     CONCLUSION ........................................................................................................... 25

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

656126.1

# TABLE OF AUTHORITIES

<u>Page</u>

**U.S. Supreme Court**

*Ashcroft v. al-Kidd*,
  131 S.Ct. 2074 (2011).............................................................................................16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................20

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................................................7

*City & County of San Francisco v. Sheehan*,
  135 S. Ct. 1765 (2015)...........................................................................................14

*Connick v. Thompson*,
  131 S. Ct. 1350 (2011).....................................................................................22, 23

*County of Sacramento v. Lewis*,
  523 U.S. 833 (1998)...............................................................................................18

*Florida v. Royer*,
  460 U.S.  497-498 (1983) ........................................................................................8

*Graham v. Connor*,
  490 U.S. 386 (1989).....................................................................2, 8, 9, 10, 12

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)...............................................................................................15

*Malley v. Briggs*,
  475 U.S. 335 (1986)...............................................................................................15

*Monell v. Dept. of Social Service of City of New York*,
  436 U.S. 658 (1978)..................................... ii, iii, 1, 4, 6, 19, 20, 21, 22, 23

*Mullenix v. Luna*,
  577 U.S. 7, 136 S. Ct. 305, (2015)........................................................................16

*Reichle v. Howards*,
   566 U.S. 658 (2012)..............................................................................................16

*Saucier v. Katz*,
  533 U.S. 194 (2001)...............................................................................................15

*Scott v. Harris*,
  550 U.S. 372 (2007).................................................................................................7

*Smith v. Wade*,
  461 U.S. 30, S.Ct. 1625 (1983)..............................................................................25

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

656126.1

# TABLE OF AUTHORITIES

<u>Page</u>

**Ninth Circuit Court of Appeals**

*AE ex rel. Hernandez v. Cnty. of Tulare*,
   666 F.3d 631 (9th Cir. 2012) ................................................................20

*Blankenhorn v. City of Orange*,
   485 F.3d 463 (9th Cir. 2007) ................................................................22

*Bryan v. MacPherson*,
   630 F.3d 805 (9th Cir. 2010) .........................................................9, 10, 11

*Christie v. Iopa*,
   176 F.3d 1231 (9th Cir. 1999) ..............................................................22

*Clouthier v. Cty. of Contra Costa*,
   591 F.3d 1232 (9th Cir. 2010) ..............................................................22

*Corrales v. Impastato*,
   650 Fed.Appx. 540 (9th Cir. 2016) .....................................................11, 12

*Deorle v. Rutherford*,
   272 15 F.3d 1272 (9th Cir. 2001) .......................................................11, 14

*Estate of Martinez v. City of Federal Way*,
   105 Fed.Appx. 897 (9th Cir. 2004) ........................................................11

*Gillespie v. Civiletti*,
   629 F.2d 637, (9th Cir. 1980) ..............................................................25

*Gillette v. Delmore*,
   979 F.2d 1342 (9th Cir. 1992) ..........................................................20, 22

*Glenn v. Washington Cnty.*,
   673 F.3d 864 (2011) ..........................................................................9

*Gonzales v. City of Anaheim*,
   747 F. 3d 789 (9th Cir. 2014) ..............................................................19

*Hopkins v. Bonvicino*,
   573 F.3d 757 (9th Cir. 2009) ...............................................................16

*Lal v. California*,
   746 F.3d 1112 (9th Cir 2014) ..........................................................14, 15

*Long v. County of Los Angeles*,
   442 F.3d 1187 (9th Cir. 2006) ..............................................................23

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NOTICE & MPA
2:22-CV-00585-WBS-JDP

656126.1

1

**TABLE OF AUTHORITIES**

Page

Marsh v. County of San Diego,
  680 F.3d 1148 (9th Cir. 2012); ................................................22

Mattos v. Agarano,
  661 F.3d 433 (9th Cir. 2011) ................................................11

Meehan v. County of Los Angeles,
  856 F.2d 102 (9th Cir.1988) ................................................20

Meredith v. Erath,
  342 F.3d 1057 (9th Cir. 2003) ................................................9

Monzon v. City of Murietta,
  978 F.3d 1150 (9th Cir. 2020) ................................12, 13, 14, 17

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,
  210 F.3d 1099 (9th Cir. 2000) ................................................7

Porter v. Osborn,
  546 F. 3d 1131 (9th Cir. 2008) ................................................19

Reese v. Cty. of Sacramento,
  888 F.3d 1030, (9th Cir. 2018) ................................................24

Smith v. City of Hemet,
  394 F.3d 689 (9th Cir. 2005) ................................................10

Tatum v. City & Cty. of San Francisco,
  441 F.3d 1090 (9th Cir. 2006) ................................................18

Trevino v. Gates,
  99 F.3d 911 (9th Cir. 1996) ................................................20, 21

Wilkinson v. Torres,
  610 F. 3d 546 (9th Cir. 2010) ................................13, 14, 19

**Other Circuit Courts**

Cole v. Bone,
  993 F.2d 1328 (8th Cir. 1993) ................................................17

Pace v. Capobianco,
  283 F.3d 1275 (11th Cir. 2002) ................................................17

Penley v. Eslinger,
  605 F.3d 843 (11th Cir. 2010) ................................................11, 12

Scott v. Clay County,
  205 F.3d 867 (6th Cir. 2000) ................................................17

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NOTICE & MPA
2:22-CV-00585-WBS-JDP

656126.1

1

## TABLE OF AUTHORITIES

<u>Page</u>

2

3

*Smith v. Freland*,
   954 F.2d 343 (6th Cir. 1992). ...................................................................................17

4

5

**Federal District Courts**

6

*Bazurto v. City of Gilroy Police Dep't*,
   No. 21-CV-06829-VKD, 2021 WL 4975016 (N.D. Cal. Oct. 26, 2021) ...............................21

7

*Donaldson v. United States*,
   No. 15-CV-908 JLS (KSC), 2018 WL 1089986 (S.D. Cal. February 26, 2018)....................10

8

9

*Fewell v. California*,
   No. CV 16-1934 DSF (JEMx), 2017 WL 6043080 (C.D. Cal April 11, 2017)................13, 14

10

*Holland v. Azevedo*,
   No. 14-cv-01349-JST, 2016 WL 1754446 (N.D. Cal. May 3, 2016) ..........................9, 13, 14

11

*R.E. v. City of Long Beach*,
   No.: 2:21-cv-06072-SB-KS, 2022 WL 19072299 (C.D. Cal. July 5, 2022).....................11, 12

12

13

*Santos v. Bear*,
   No. 2:14–cv–00836–JKS, 2015 WL 5326499 (E.D. Cal. September 11, 2015) .....................8

14

*Smythers v. Medford Or. Police Dept.*,
   2015 WL 13238459 (D. Ore. Nov. 27, 2015).........................................................................7

15

16

*Xiong v. Chavez*,
   No. 1:13-cv-00083-SKO, 2016 WL 345609 (E.D. Cal. January 28, 2016) ...........................11

17

18

**California Supreme Court**

19

*Yount v. City of Sacramento*
   (2008) 43 Cal.4th 885 ...........................................................................................................23

20

21

**California Court of Appeals**

22

*Cornell v. City & Cty. of San Francisco*,
   17 Cal.App.5th 766,................................................................................................................24

23

*Edson v. City of Anaheim*
   63 Cal.App.4th 1269,..............................................................................................................23

24

25

*People v. Russell*,
   129 Cal.App.4th 776, (Ct. App. 2005) ..................................................................................10

26

*Quiroz v. Seventh Ave. Center*
   1340 Cal.App.4th 1256 (2006) ..............................................................................................23

27

28

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

ix

656126.1

# TABLE OF AUTHORITIES

<u>Page</u>

**Federal Statutes and Law**

42 U.S.C. §1983 ........................................................................................ i, ii, iii, 6

F.R.C.P. 56 ........................................................................................................ i

F.R.C.P. 56(c) ................................................................................................... 7

**California Statutes and Law**

Civ. Code §52.1 .................................................................................... i, ii, iii, 24

Civ. Code §52.1(b) .......................................................................................... 24

Civil Code §3294 ............................................................................................. 25

Cal. Penal Code §245(a)(1) ............................................................................. 10

Cal. Penal Code §832.5 ..................................................................................... 4

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

**STATEMENT OF ISSUES TO BE DECIDED**

This motion presents the following issues to be decided: (1) Whether Decedent was unlawfully detained and/or unlawfully arrested; (2) Whether Maxwell and Bruce used reasonable force; (3) Whether Decedent received objectively reasonable medical attention; (4) Whether Defendants acted with a purpose to harm or, in the alternative, deliberate indifference in using force against Decedent; (5) Whether the Maxwell and Bruce are entitled to qualified immunity; (6) Whether there is *Monell* liability; (7) Whether Defendants are liable for state-law claims (Bane Act, negligence, battery); (8)Whether DOE defendants should be dismissed; and (9) Whether there is a claim for punitive damages.

## I.   INTRODUCTION

This case arises from the tragic death of Dolores Hernandez ("Hernandez" or "Decedent"). After being confronted for her erratic behavior in public, Hernandez became belligerent and aggressive. Despite attempts to deescalate the situation, including giving her a chance to leave the scene, Hernandez drove her car over responding Redding Police Officer Matthew Bruce's foot and leg. Corporal Garrett Maxwell fired in defense of Bruce and others.

## II.   FACT OVERVIEW

Defendants refer to their *Separate Statement of Undisputed Material Facts* ("*UMF*").

### A.   Dispatch/Call for Service

At approximately 6:27 p.m., on December 2, 2020, North State Security guard, Jason Schuler, called the Shasta Area Safety Communications Agency ("SHASCOM")[2] to report a woman causing a disturbance at MOD Pizza, located in the Discovery Village Shopping Center at 913 Dana Drive in Redding. (*UMF* No. 1.)  Schuler reported the woman left MOD Pizza and was locked in her grey Toyota Camry (California license plate # 7GZH882), yelling and cursing at everyone. (*UMF* No. 2.)

---

[2] SHASCOM provides 911 and dispatch services for the Redding Police Department.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

### B.    Witness Video

Witness, Melody Graham[3], captured video of the incident giving rise to this matter with her cellular phone. (*UMF* No. 3.) The video was lodged with the Court per Local Rule 138(l).

### C.    Initial Contact

Redding Police Corporal Garrett Maxwell and Officer Matthew Bruce, on duty, in full police uniform and marked patrol vehicles, responded to the SHASCOM report. (*UMF* No. 4.) Ofc. Bruce arrived on scene first and located the grey Toyota Camry parked facing south in front of MOD Pizza and determined it was occupied by a female, later identified as Hernandez. (*UMF* No. 5.) Schuler pointed out Hernandez as the person involved in the disturbance. (*UMF* No. 6.)

Cpl. Maxwell arrived almost immediately after Ofc. Bruce and spoke with Schuler (*UMF* No. 7.) Once Cpl. Maxwell had finished speaking with Schuler, he walked closer to the Toyota and Ofc. Bruce, who had approached the driver side window of the Toyota in an attempt to speak with Hernandez. (*UMF* No. 8.) Hernandez had her car running, stereo on at an extremely high volume, and initially ignored Ofc. Bruce's efforts to make contact with her, choosing instead to stare straight ahead. (*UMF* No. 9.) After Bruce shined his flashlight in her car, Hernandez rolled her window down approximately two inches and became uncooperative and argumentative with Ofc. Bruce (telling him that he was a "murderer," and that she did not have to speak with him). (*UMF* No. 10.) Ofc. Bruce continued to try to engage her in conversation, telling her they had never met, that he was not a murderer, and that he was just trying to figure out what was wrong. (*UMF* No. 11.) Ofc. Bruce asked Hernandez for her driver's license since her car was running; however, Hernandez refused to provide it, told Ofc. Bruce she was not driving and did not have to give him "shit." (*UMF* No. 12.)

### D.    The Incident

Hernandez then put her car in reverse and began to back out of the parking spot (the parking stall on either side of her vehicle was open and provided ample room to clear the officers and safely reverse into the parking lot lane of traffic had she intended to leave). (*UMF* No. 13.)

[3] On the date of the incident, Melody Graham, went by her maiden name Melody Raudman.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

The officers began to walk away from her vehicle as they had no desire to detain her and intended to allow her to leave since her departure could end the conflict; however, Hernandez stopped reversing and drove forward, turning her vehicle directly at both Bruce and Maxwell. (*UMF* No. 14.) Hernandez's vehicle came closer to Bruce, who was in fear for his safety (being run over) and stepped out of the way as the vehicle came within inches of his legs. (*UMF* No. 15.)

Hernandez stopped for a few seconds as she screamed "fuck you" and extended both of her middle fingers. (*UMF* No. 16.) Intending to stop the car from moving out of concern for her unsafe driving and for the numerous pedestrians in the area, Ofc. Bruce pulled out his baton and attempted to break the driver's side window to grab Hernandez's keys, disable the vehicle  and attempt to place her under arrest. (*UMF* No. 17.) The window did not break as a result of the baton strikes. (*UMF* No. 18.) Ofc. Bruce did not inform Hernandez that she was under arrest prior to doing so because of how quickly the incident unfolded and because her music was turned up, leading him to believe she would not hear him. (*UMF* No. 19.)

Hernandez then started to reverse her vehicle (while turning the steering wheel clockwise) with its wheels turned towards Ofc. Bruce and made contact with Ofc. Bruce's foot, dragging it and his left leg under the vehicle's front, driver's side tire and pulling him to the ground. (*UMF* No. 20.) The vehicle rolled onto Ofc. Bruce's leg near his left knee and then stopped, pinning him underneath the vehicle and preventing either of his legs from moving. (*UMF* No. 21.) Ofc. Bruce felt his left leg being "crushed" and experienced "immense pain" shooting up his leg while Hernandez's vehicle was stopped on top of him, leading him to believe that Hernandez was going to kill him. (*UMF* No. 22.)

In fear for his life, Ofc. Bruce noticed Cpl. Maxwell running towards his location on the ground and yelled "shoot her"; Cpl. Maxwell had already had drawn his firearm once he saw the vehicle on top of Ofc. Bruce. (*UMF* No. 23.) Cpl. Maxwell shot into Hernandez's vehicle a total of seven times based on his own independent, reasonable and honest belief that Hernandez posed an imminent and deadly threat to Ofc. Bruce. (*UMF* No. 24.) Ofc. Bruce believed that he would have been run over again if Cpl. Maxwell had not fired his shots to eliminate the threat Hernandez posed, as Hernandez's vehicle would have run over Ofc. Bruce's head and body had it

1  been driven forward with counterclockwise steering (posing a potential for serious and potentially

2  fatal injury to Ofc. Bruce). (*UMF* No. 25.)

3       Cpl. Maxwell did not believe it was feasible to provide a verbal warning to Hernandez

4  prior to firing his weapon; nor did Ofc. Bruce or Cpl. Maxwell have time to create a tactical plan

5  because of how quickly the incident transpired. (*UMF* No. 26.) At approximately 6:36:42 p.m. on

6  December 2, 2020, Cpl. Maxwell advised over the radio that shots had been fired with one subject

7  was down and requested "Code 3" medical response. (*UMF* No. 27). Corporal Maxwell evaluated

8  Hernandez, who appeared to be deceased since she was motionless, not breathing, had significant

9  trauma on the left side of her body from gunshot wounds, and had no pulse. (*UMF* No. 28.)

10      **E.    Post-Incident Investigation and Shooting Review Board**

11      Per Redding Police Department Policy, the Department conducted an internal

12  investigation into the officer involved shooting incident. (*UMF* No. 29.) The Department found

13  that Ofc. Bruce believed Hernandez intentionally drove directly at him (assault with a deadly

14  weapon) and attempted to use his baton to break the vehicle's window to detain and arrest her.

15  (*UMF* No. 30.) Moreover, the Department found Cpl. Maxwell's use of deadly force was

16  reasonable and justified to stop Hernandez's immediate threat of death or serious bodily injury to

17  Officer Bruce and the ongoing threat to the public if she were to escape (and thus lawful and

18  within Department policy). (*UMF* No. 31.) (a true and correct copy of those policies are attached

19  to the *Declaration of Chris Smyrnos*).

20      **F.    Redding Police Department Policies, POST, Officer Training**

21      For efficiency and brevity, Defendants refer to and expressly incorporate herein *UMF*

22  Nos. 32-37, which pertain to Plaintiff's *Monell* claim. For efficiency, Defendants will refer to

23  these facts specifically in Defendants' *Monell* discussion, *sub.*

24          1.    Department Policies

25      As part of the Department's policies, the Department adheres to Cal. Pen. Code §832.5.

26  (*UMF* No. 32.)

27          2.    POST Standards

28      At the time of the shooting, Redding Police Department observed and trained to the

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NOTICE & MPA
2:22-CV-00585-WBS-JDP

656126.1

1    standards set by the State of California Commission on Peace Officer Standards and Training

2    ("POST"). (*UMF* No. 33.) POST is a state-wide, governmental organization (created by State of

3    California Legislature) composed of law enforcement executives and advisors tasked with setting

4    minimum selection and training standards for California law enforcement. (*UMF* No. 34.)  The

5    Department's update training is consistent with POST mandates. (*UMF* No. 35.)  In order to be in

6    compliance with POST standards, the Department submits its training courses and policies to

7    regular audits by POST. (*UMF* No. 36.)  At the time of the incident, Cpl. Maxwell and Ofc.

8    Bruce attended and successfully completed the POST-certified police academy prior to being

9    hired by the Department, successfully passed their FTO training, and were up to date with all

10   mandated POST training requirements.  (*UMF* No. 37.)

11          **G.    Experts**

12          Defendant disclosed retained expert Dr. Rajeev Kelkar (accident reconstruction) in this

13   matter (*Defendants' Rule 26 Expert Disclosures*, attached as Exhibit "G" to Patel Decl.)  Upon

14   examining the evidence Dr. Kelkar reached a number of conclusions, most pertinently, the

15   following: (1) The subject accident occurred at approximately between 6:30 PM and 7:00 PM on

16   December 2, 2020, in front of a Mod Pizza restaurant, located at 913 Dana Drive, Redding,

17   California 96003; (2) At that time and location, officers responded to a report of a disturbance

18   inside/around the Mod Pizza caused by a woman (later identified to be decedent Dolores

19   Hernandez) who was in the driver seat of a 2007 Toyota Camry (California license plate number

20   7GZH882), which was facing Mod Pizza; (3) In the seconds leading up to incident/shooting,

21   Corporal Maxwell and Officer Bruce were standing near the driver's side of Hernandez's vehicle

22   when it started to reverse; (4) Hernandez had sufficient clearance behind her vehicle and to its

23   sides to reverse into the aisle behind her parking location and then pull forward and drive forward

24   down that aisle; (5) When Hernandez starts her first reversing movement, Ofc. Bruce and Cpl.

25   Maxwell are at the driver-side front door and front fender area of her vehicle, and not in front of

26   her vehicle; (6) When Hernandez stops her vehicle at the end of her first reversing movement, she

27   stops it in a location and orientation such that the vehicle is facing Ofc. Bruce and Cpl. Maxwell;

28   (7) Two seconds later, Hernandez starts her first forward movement and steers counterclockwise

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NOTICE & MPA
2:22-CV-00585-WBS-JDP

(effectively moving the front of the vehicle to the left), and Ofc. Bruce and Cpl. Maxwell can be seen moving away from the front of the vehicle and towards the driver-side of her vehicle; (8) Less than 2.5 seconds later, Hernandez stops her forward movement at a location that is directly over where Ofc. Bruce and Cpl. Maxwell would have been had they not moved out of the way; (9) When Hernandez starts her second reversing movement, Ofc. Bruce and Cpl. Maxwell are again located on the driver side of the vehicle and not in front of the vehicle; (10) Hernandez also steers clockwise during this movement (effectively moving the front of the vehicle to the left) and towards Ofc. Bruce and Cpl. Maxwell and causing Ofc. Bruce's leg to get run over and bring him to the ground; (11) After coming to a stop following second reverse movement, the reverse lights on Hernandez's vehicle go off, and the vehicle starts moving forward again; (12) Ofc. Bruce is on the ground at the point in time when Hernandez's vehicle starts its second forward movement; (13) Hernandez's vehicle would have run over Ofc. Bruce's head and body had it been driven forward with counterclockwise steering (effectively moving the front of the vehicle to the left, and having the rear wheels run over Ofc. Bruce's head and body), meaning there was potential for serious and potentially fatal injury to Ofc. Bruce. (*Kelkar Report*, attached as Exhibit "J" to Patel Decl.; *Declaration of Rajeev Kelkar*, attached as Exhibit "F" to Patel Decl.)

Plaintiffs did not disclose an accident reconstruction expert.

**H.   Procedural Status**

Plaintiffs filed the First Amended Complaint ("FAC") on January 17, 2023, alleging ten causes of action. (Dkt. No. 13.)  The first and second causes of action (Fourth Amendment unlawful detention/arrest/excessive force) (42 U.S.C. § 1983) are alleged against defendants Maxwell and Bruce (*Id.*, at ¶¶ 31-45); the third and fourth causes of action, (Fourth Amendment– denial of medical care; Fourteenth Amendment – due process) (42 U.S.C. §1983) are alleged against defendant Maxwell (*Id.*, at ¶¶ 46-54); the fifth, sixth and seventh causes of action, (*Monell* – ratification; inadequate training and unconstitutional custom, practice, or policy) (42 U.S.C. §1983) are alleged against the City (*Id.*, at ¶¶ 66-99); and the eighth, ninth, and tenth causes of action under state law (Battery, Negligence, and Bane Act) are alleged against all defendants (*Id.*, at ¶¶ 100-125).

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1   **III.   ARGUMENT**

2       **A.   Standard of Review**

3       Summary judgment should be granted if "the pleadings, depositions, answers to

4   interrogatories, and admissions on file, together with affidavits, if any, show that there is no

5   genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

6   law." F.R.C.P. 56(c).  It pierces the pleadings and puts the opponent to the test of affirmatively

7   coming forward with sufficient evidence for its claims to create a genuine issue of fact for trial.

8   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In order to meet its initial burden, "the

9   moving party must either produce evidence negating an essential element of the nonmoving

10  party's claim or defense or show that the nonmoving party does not have enough evidence of an

11  essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.*

12  *Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

13      At the summary judgment stage, a court should view the facts in the light depicted by

14  undisputed video evidence because the facts must be viewed in the light most favorable to the

15  nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S.

16  372, 378-79 (2007). See also *Smythers v. Medford Or. Police Dept.*, 2015 WL 13238459 at *3 (D.

17  Ore. Nov. 27, 2015) ("When a videotape captures the event in question, a court should view the

18  facts in the light depicted in the videotape, thereby resolving any relevant issue of fact.

19  [citation].")

20      **B.   No Unlawful Detention/Arrest**

21      Plaintiffs allege that Cpl. Maxwell and Ofc. Bruce "detained [Hernandez] without

22  reasonable suspicion and arrested her without probable cause" when they "stopped [Hernandez]

23  from leaving by using their baton to smash [Hernandez's] car window before using deadly force

24  against her…" (*FAC*, at ¶¶ 32-33). Plaintiffs are mistaken. The defendant officers' initial contact

25  with Hernandez (prior to her moving her vehicle) was a consensual encounter. Once she

26  committed assault with a deadly weapon, the officers had probable cause for their arrest.

27          1.   Initial Encounter Required No Suspicion

28      Maxwell and Bruce did not need suspicion to initiate contact with Hernandez. "[L]aw

7

656126.1

enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen ..." *Florida v. Royer*, supra, 460 U.S. at 497-98 (1983). Federal law mandates that "[t]he government may stop and question any individual for any reason as long as the person to whom questions are put remains free to disregard the questions and walk away." *Santos v. Bear*, No. 2:14–cv–00836–JKS, 2015 WL 5326499 at *7 (E.D. Cal. September 11, 2015) (quotations omitted).

Here, Cpl. Maxwell and Ofc. Bruce approached Hernandez based on Schuler's report. They encountered Hernandez in a public space. They had no intent to detain Hernandez and walked away to allow her to pull out of the parking space and leave. Neither officer blocked her path of egress, activated emergency lighting, displayed weapons, used force or tried to otherwise detain Hernandez prior to her assaulting Ofc. Bruce with her car. Whether the officers had articulable suspicion at the initial point of encounter is moot.

## 2.   Officers Had Probable Cause to Arrest Hernandez

Ofc. Bruce used his baton to strike Hernandez's car window after she committed a felony, assault with a deadly weapon, in an attempt to stop the car and detain/arrest her. Cpl. Maxwell only used deadly force after Hernandez committed the initial assault with a deadly weapon and *then* ran Ofc. Bruce over, crushing his leg, continuing to place him at imminent risk of death or serious bodily injury.

As such, Plaintiffs unlawful seizure/arrest claims fail.

## C.   **Use of Force**

Plaintiffs' use of force-based claims fail because (1) Maxwell and Bruce used reasonable force; and (2) they are entitled to qualified immunity.

### 1.   Reasonable Force

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determination of the reasonableness of the force used requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

1  governmental interest at stake." *Id.* at 396. Put another way, "balance the amount of force applied

2  against the need for that force." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003). In

3  making this determination, "[t]he "reasonableness" of a particular use of force must be judged

4  from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

5  hindsight." *Graham*, *supra*, at 396. ["[t]he calculus of reasonableness must embody allowance for

6  the fact that police officers are often forced to make split-second judgments—in circumstances

7  that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a

8  particular situation."] *Id.*, at 396-397.

9       The use of force here includes baton strikes by Ofc. Bruce on Hernandez's car window

10  and the use of deadly force by Cpl. Maxwell.

11                    a.       Nature of the Intrusion

12       First, the Court must "assess the severity of the intrusion on the individual's Fourth

13  Amendment rights by evaluating the type and amount of force inflicted." *Glenn v. Washington

14  Cnty.*, 673 F.3d 864, 871 (2011) (internal citation and quotation marks omitted). Ofc. Bruce used

15  his baton to strike Hernandez's vehicle's driver door window (not on Hernandez herself) -- a low

16  level of force. See *Holland v. Azevedo*, No. 14-cv-01349-JST, 2016 WL 1754446 at *9 (N.D. Cal.

17  May 3, 2016) (establishing that the record conclusively establishes that defendant officers

18  employed a level of force that was "'low on the continuum of tactics available to police officers'"

19  [quotation omitted] and was not "capable of inflicting significant pain and causing serious injury"

20  where officers "broke plaintiff's passenger side window, opened the passenger door, and

21  attempted to pull her from the car through the passenger door"[quotation omitted].)

22       Cpl. Maxwell used deadly force -- the most significant Fourth Amendment intrusion.

23                    b.       Government Interest

24       The Ninth Circuit evaluates the governmental interest under three core factors: "severity

25  of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

26  others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bryan v.

27  MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (en banc) (citing *Graham*). These factors are not

28  exclusive: "whatever specific factors may be appropriate in a particular case, whether or not listed

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

9

656126.1

1   in *Graham*," should be considered. *Bryan*, *supra*, at 826 (citation omitted).

2   (1)   *Severity of Crime*

3   Cpl. Maxwell and Ofc. Bruce responded to a call of a woman causing a disturbance inside

4   a restaurant, where members of the public were congregated. The report then noted Hernandez

5   was locked in her vehicle, yelling and cursing Once on-scene, Ofc. Bruce approached

6   Hernandez's vehicle and made multiple attempts to speak with her. She was uncooperative and

7   argumentative. Neither officer made any attempt to stop Hernandez from leaving when she began

8   to reverse her vehicle. Instead of leaving, Hernandez drove her vehicle directly at both Cpl.

9   Maxwell and Ofc. Bruce (who would have been hit if they did not move out of the way) in

10  violation of Cal. Penal Code Section 245(a)(1). See *Donaldson v. United States*, No. 15-CV-908

11  JLS (KSC), 2018 WL 1089986 at *14 (S.D. Cal. February 26, 2018) ("Such a crime is cognizable

12  in California. See Cal. Penal Code § 245(a)(1); *People v. Russell*, 129 Cal. App. 4th 776, 782 (Ct.

13  App. 2005) ("The law makes clear a person who operates or drives a vehicle in an attempt to

14  injure another person has committed assault with a deadly weapon, to wit, the car" (citation

15  omitted)).

16  Ofc. Bruce pulled out his baton – using it only on the vehicle, not on Hernandez – in an

17  attempt to stop Hernandez and disable the vehicle. Hernandez again used her vehicle as a weapon

18  and ran over Ofc. Bruce's foot and leg, pulling him to the ground and pinning him under her car.

19  This was a second, more violent violation of Cal. Penal Code Section 245(a)(1). Thus, it is

20  undisputed Hernandez's conduct constituted a severe crime.

21  (2)   *Threat*

22  The Ninth Circuit has made plain -- repeatedly -- the importance of the threat to officer

23  safety: "the **most important** factor under *Graham* is whether the suspect posed an immediate

24  threat to the safety of the officers or others." *Bryan*, *supra*, at 826 (citing *Smith v. City of Hemet*,

25  394 F.3d 689, 702 (9th Cir. 2005) (en banc).

26  Ofc. Bruce only used his baton on Hernandez's vehicle after she drove her vehicle directly

27  at him. It is undisputed Hernandez's conduct posed a threat to Ofc. Bruce, and potentially to

28  others in the area, at this juncture. Cpl. Maxwell used deadly force on Hernandez after she

*ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP*
*180 Montgomery Street, Suite 1200*
*San Francisco, California 94104*

10

656126.1

assaulted Ofc. Bruce with a deadly weapon and based on his reasonable and honest believe that she continued to pose an imminent and deadly threat to Ofc. Bruce because he was still pinned under her car and at risk of being run over again.

### (3)   *Resistance/Flight*

The Court must also consider whether plaintiff actively resisted arrest or attempted to evade arrest by flight.  *Deorlev. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001).  Hernandez had every opportunity to cooperate but chose not to. When Hernandez first backed out of the parking space, she was still free to leave. Instead, she suddenly lunged her vehicle at Ofc. Bruce, who had to step out of the way to avoid being hit. Ofc. Bruce used his baton to disable the vehicle and stop Hernandez, and she resisted. She did not put the car in park. She did not exit the vehicle. She put the vehicle in reverse and ran over Ofc. Bruce's foot and leg in an attempt to get away.

### (1)   *Other Factors*

The Ninth Circuit has also recognized other factors like warnings and lack of alternative means.  *Bryan*, *supra*, at 831; *Mattos v. Agarano*, 661 F.3d 433, 445 (9th Cir. 2011) (en banc). Warnings should only be given when **feasible** (emphasis added). *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001). "Verbal warnings are not feasible when lives are in immediate danger and every second matters." *Corrales v. Impastato*, 650 Fed.Appx. 540, 542 (9th Cir. 2016) (quoting *Estate of Martinez v. City of Federal Way*, 105 Fed.Appx. 897, 899 (9th Cir. 2004)) See also *Xiong v. Chavez*, No. 1:13-cv-00083-SKO, 2016 WL 345609 at *15 (E.D. Cal. January 28, 2016) ("...the fast pace at events unfolded and the mere second that elapsed from the time Defendants encountered Plaintiff and perceived the threat – the gun in Plaintiff's hand pointed in their direction – was evidence it was not practicable to give a warning before deploying force."); *R.E. v. City of Long Beach*, No.: 2:21-cv-06072-SB-KS, 2022 WL 19072299 at *5 (C.D. Cal. July 5, 2022) ("In this case, the situation abruptly and rapidly devolved: less than 10 seconds passed between when Escarrega began stabbing himself and when he fell to the ground after the last shot. Under such circumstances, a warning was not feasible."); *Penley v. Eslinger*, 605 F.3d 843, 854 n. 6 (11th Cir. 2010) (officer was justified in firing without issuing a warning because "a warning might easily have cost the officer his life").

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

Here, Ofc. Bruce did not have time to provide a verbal warning prior to striking Hernandez's window with his baton. Approximately 4.1 seconds elapsed between the time Hernandez's vehicle first moved directly towards the officers and the time it started its second reverse movement and running over Ofc. Bruce's leg. [See *Kelkar Declaration*, ¶ 5(n)] Given the proximity of both officers to the vehicle and the danger Hernandez's vehicle posed being used as a deadly weapon, it was not practicable for Ofc. Bruce to provide a warning. The fact Cpl. Maxwell recalled Ofc. Bruce stating something to the effect of "Now you're trying to run us over?" (*Maxwell Deposition*, at p.47:21-p. 48:4) after the first forward movement of the vehicle speaks to Ofc. Bruce's state of mind concerning the danger he perceived. Ofc. Bruce also reasonably believed that Hernandez would not hear a warning due to the loud music in her car.

Similarly, Cpl. Maxwell did not have time to provide a verbal warning prior to firing at Hernandez. The situation Cpl. Maxwell was facing was also rapidly evolving and took approximately 5.0 seconds to transpire from the point Hernandez's vehicle struck Ofc. Bruce's leg until the vehicle began moving forward again while Ofc. Bruce was pinned under it.  [See *Kelkar Declaration*, ¶ 5(o)] Thus, similar to *Corrales, R.E.,* and *Penley*, *supra*, verbal warnings were not feasible. See also *Monzon v. City of Murietta*, 978 F.3d 1150 (9th Cir. 2020) ("[W]e take note that the officers did not provide a deadly force warning. But this fact is not determinative. The urgency of this chaotic situation makes it impractical to categorically require a deadly force warning because the van went from a standstill to crashing into a cruiser at over 17 mph in 4.5 seconds."). The situation in *Monzon* was incredibly similar to the chaotic and quickly intensifying situation Cpl. Maxwell and Ofc. Bruce faced.

With respect to alternative means, Cpl. Maxwell had none. Ofc. Bruce was facing a lethal threat and non-lethal weapons (e.g., baton, pepper spray, taser) do not stop such a threat.

a.   Balancing

Cpl. Maxwell's use of deadly force in response to the lethal threat posed by Hernandez is consistent with *Graham* and Ninth Circuit precedent. Though the force inflicted in this case was deadly, it must be weighed against the imminent, deadly threat Hernandez posed. The evidence most favorable to Plaintiffs supports both Ofc. Bruce's and Cpl. Maxwell's deposition testimony

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

1    showing that they reasonably feared Hernandez posed an immediate, deadly threat to Ofc. Bruce.

2    Hernandez was reported to be causing a disturbance in public. Cpl. Maxwell and Ofc. Bruce

3    responded and attempted to de-escalate the situation, even allowing her to leave. (*UMF* No. 14.)

4    Instead, Hernandez drove directly at Cpl. Maxwell and Ofc. Bruce, almost striking them,

5    escalating the situation and committing an assault with a deadly weapon in the process. A low-

6    level of force was used (the baton) and did not work. Hernandez struck Ofc. Bruce and pinned

7    him under her car.  Only approximately 19.7 seconds elapsed between the moment Hernandez's

8    vehicle first moved (reversed out of the parking space) and the moment Cpl. Maxwell drew his

9    weapon. (*UMF* No. 38). Cpl. Maxwell was forced to fire his first shot just one second after

10   drawing his gun. (*UMF* No. 39.) If Cpl. Maxwell had not used deadly force, Ofc. Bruce was

11   facing an imminent threat of death or serious bodily injury. The government interest supports the

12   reasonableness of the force used.

13            The reasonableness of Defendants' use-of-force is underscored by prior cases. See

14   *Monzon v. City of Murietta*, 978 F.3d 1150 (9th Cir. 2020) (reasonable force by officers who

15   fatally shot subject that led officers on a dangerous high-speed chase at night, refused to stop the

16   van, and posed an immediate threat to the safety of the officers when he actively resisted arrest by

17   ignoring commands to stop the van and driving near, toward, and amongst the officers on foot);

18   *Wilkinson v. Torres*, 610 F.3d 546, 549, 551-52 (9th Cir. 2010) (force reasonable when officer

19   fired at a suspect where – after the suspect's vehicle crashed following a high-speed chase – the

20   officer ran up to the vehicle, which then began reversing in a counter-clockwise direction when

21   the officer reached the vehicle's passenger-side window, and the shooting officer believed another

22   officer had fallen and been run over by the vehicle); *Fewell v. California*¸ No. CV 16-1934 DSF

23   (JEMx), 2017 WL 6043080 at *3-5 (C.D. Cal April 11, 2017) (reasonable force by officer who

24   was required to make such a snap decision with virtually no time before shooting subject who

25   suddenly reversed his truck and posed an imminent threat of serious injury or death to officer and

26   passengers in an oncoming vehicle); *Holland v. Azevedo*, No. 14-cv-01349-JST, 2016 WL

27   1754446 at *9 (N.D. Cal. May 3, 2016) (force used to extract plaintiff through the door [breaking

28   passenger side window with baton and opening passenger door] was not "capable of inflicting

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

1   significant pain and causing serious injury" (quotation omitted) and was not greater than

2   necessary to effectuate a lawful arrest).

3          The threats facing Cpl. Maxwell and Ofc. Bruce were equal to, if not greater than, the

4   threats in *Monzon*, *Wilkinson*, *Fewell*, and *Holland*. Cpl. Maxwell and Ofc. Bruce did not merely

5   feel threatened by Hernandez; rather, the undisputed, objective factors known to them made their

6   fear for their safety reasonable. See *Deorle v. Rutherford*, 272 15 F.3d 1272, 1281 (9th Cir. 2001)

7   ("[A] simple statement by an officer that he fears for his safety, or the safety of others is not

8   enough; there must be objective factors to justify such a concern. In short, an officer's use of force

9   must be objectively reasonable based on his contemporaneous knowledge of the facts.")

10         The number of shots fired by Cpl. Maxwell does not impact the reasonableness of his

11  actions. In *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015), the Court

12  affirmed that officers may use deadly force to protect themselves from an attacking suspect "even

13  though it mean[s] firing multiple rounds." Indeed, where an officer faces a rapidly escalating

14  situation, "the firing of multiple shots does not suggest the officers shot mindlessly as much as it

15  indicates that they sought to ensure the elimination of a deadly threat." *Wilkinson*, *supra*, 610

16  F.3d at 552 (quotation omitted). Based on that principle, the *Wilkinson* court held that, when an

17  officer fired at a driver whose effort to get away put officers at **risk** (emphasis added) of being

18  run over, "it makes no difference ... whether [the officer] fired seven rounds or eleven." *Id.* at 553.

19  Here, Cpl. Maxwell was more than justified in firing at Hernandez, as the threat presented was

20  even greater than the threat presented in *Wilkinson*, *supra*, as Hernandez **did** run over Ofc. Bruce

21  and could have done so again, making the use of deadly force constitutionally reasonable.

22         Nor is the constitutionality of the officers' conduct impacted by whether they retreated

23  and/or waited for backup. Even assuming they could have done either of those things when

24  Hernandez first drove at Cpl. Maxwell and Ofc. Bruce, the Ninth Circuit has squarely held that

25  officers are not required to retreat or wait for back-up when a suspect advances on them with a

26  deadly weapon. *Lal v. California*, 746 F.3d 1112, 1117 (9th Cir 2014). Because officers in *Lal*

27  faced a deadly threat when the suspect advanced within seven to eight feet of officers while

28  threatening to throw a foot-ball sized rock at them, their actions (shooting and killing suspect)

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NOTICE & MPA
2:22-CV-00585-WBS-JDP

656126.1

were constitutional. *Id.* at 1117-18. The court rejected plaintiffs' arguments that liability could be based on a claim that officers should have retreated or somehow de-escalated the situation. *Id.* Instead, the court reasoned that, because "there is no suggestion that the officers intentionally provoked *Lal*," "even assuming that it might have been possible for the officers to have given Lal a wider berth ... there is no requirement that such an alternative be explored." *Id.* at 1118.

There are zero facts in this case suggesting that Cpl. Maxwell or Ofc. Bruce provoked Hernandez. Ofc. Bruce approached Hernandez responding to the initial disturbance report. Even though she was uncooperative and aggressive, she was free to leave. Neither Ofc. Bruce nor Cpl. Maxwell provoked her to use her car as a deadly weapon against them.

### 2.   Qualified Immunity

Public officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a deferential standard.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("qualified immunity … provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). Regarding excessive force claims, the immunity "operates … to protect officers from the sometimes-hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal citations and quotations omitted). The Court explained "[t]he deference owed officers facing suits for alleged excessive force is not different in some qualitative respect from the probable-cause inquiry in *Anderson* … in excessive force cases, where in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable." *Id.*

In analyzing a police officer's assertion of qualified immunity, the court must determine: (1) whether there was a violation of a constitutional right, and (2) whether the right was clearly established such that a reasonable officer would understand his conduct violate that right. If the alleged conduct violated a constitutional right, then the Court must determine "whether the right was clearly established at the time of the alleged unlawful action." *Hopkins v. Bonvicino*, 573

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

F.3d 757, 762 (9th Cir. 2009) (internal citation and quotation omitted). Here, Cpl. Maxwell and Ofc. Bruce are entitled to qualified immunity.

### a.   No Constitutional Violation

Cpl. Maxwell and Ofc. Bruce used reasonable force against Hernandez (see Section 3.C above). Assuming, *arguendo*, they did not, the law was not clearly established.

### b.   Not Clearly Established

#### (1)   *Overview*

A right is clearly established if -- at the time of the challenged conduct -- "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (emphasis added) (internal citations and quotations omitted). The U.S. Supreme Court has explained that while it "does not require a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, *supra*, at 2083 (2011) (internal citations). The *al-Kidd* Court also stressed that it had repeatedly told courts, the Ninth Circuit in particular, not to define clearly established law at a high level of generality. *Id.* at 2084. To surmount the "clearly established" threshold, "a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) (internal quotation marks and brackets omitted). In determining "whether the violative nature of particular conduct is clearly established," we examine the "specific context of the case." *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (internal quotation marks omitted).

#### (2)   *No Particularized Law*

Qualified immunity turns upon the law at the time of the incident. Here, the relevant date is December 2, 2020.

Cpl. Maxwell and Ofc. Bruce are entitled to qualified immunity unless Plaintiffs can identify a case where an officer was found to have violated the Fourth Amendment for (1) using a baton in an attempt to break a car window when apprehending an aggressive and uncooperative subject who actively and physically resisted by assaulting them with a deadly weapon; and (2)

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  shooting under the following circumstances: subject who chose not to leave when given the

2  opportunity and instead, escalated the situation without provocation by assaulting the officers

3  with a deadly weapon more than once by driving forward directly at them and then reversing into

4  and on top an officer (making him vulnerable to death or further serious bodily injury).

5      Plaintiffs cannot make this showing. Case law is clear: an officer may use deadly force in

6  self-defense or defense of others in response to a subject who uses their vehicle to assault officers

7  or makes them vulnerable to being run over. [See *Monzon,* supra, 978 F.3d 1150 at 1161-1162:

8  "even if the officers' use of deadly force was not reasonable on the uncontested facts of this case

9  (it is), the second prong of the qualified immunity analysis would still compel affirmance because

10  the officers did not violate a clearly established right."

11      Similarly, the Eighth Circuit has held that an officer "had probable cause to believe that

12  the truck posed an imminent threat of serious physical harm to innocent motorists as well as to the

13  officers themselves." *Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993). The Sixth Circuit found that "a

14  car can be a deadly weapon" and held that the officer's decision to stop the car from possibly

15  injuring others was reasonable. *Smith v. Freland*, 954 F.2d 343, (6th Cir. 1992). The Sixth Circuit

16  has also held that an officer reasonably shot a felon fleeing in a vehicle when his reckless driving

17  posed an immediate threat to the safety of officers and innocent civilians. *Scott v. Clay County*,

18  205 F.3d 867, 877 (6th Cir. 2000). Finally, the Eleventh Circuit has found a contributing factor to

19  the suspect being "gravely dangerous" was his "aggressive use of his automobile." *Pace v.*

20  *Capobianco*, 283 F.3d 1275, 1281-82 (11th Cir. 2002).

21      Cpl. Maxwell and Ofc. Bruce are entitled to qualified immunity because there was no

22  clearly established law prohibiting officers from using deadly force to protect another (including a

23  fellow officer) from death or seriously bodily injury as a result of being struck and pinned under a

24  car by a suspect.

25      **D.**    **Reasonable Medical Treatment Was Rendered**

26      Plaintiffs' third cause of action, against Cpl. Maxwell for denial of medical care under the

27  Fourth Amendment, alleges that: "[Maxwell] failed to provide needed medical care to

28  DECEDENT, failed to timely summon needed medical care for DECEDENT, prevented medical

656126.1

care personnel from timely treating DECEDENT and refused to permit medical care personnel to access and care for DECEDENT at the scene for an appreciable time after the incident. "(FAC, at ¶ 48). Claims of denial of medical care during and immediately following an arrest are analyzed under the Fourth Amendment's objective reasonableness standard. *Tatum v. City & Cty. of San Francisco*, *infra,* 441 F.3d 1090, 1098-99 (9th Cir. 2006)). "[T]he Ninth Circuit has held that "a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment," and that there is no duty to render CPR in all circumstances." *Id.,* at 1099. The standard is "not whether officers did all that they could have done but rather did they do all that the Fourth Amendment requires." *Id.*

Here, Cpl. Maxwell reported that shots had been fired and summoned emergency medical responders to the scene "Code 3" within the same radio transmission– there was **no** delay. Even if the officers knew how to administer CPR, they complied with the Fourth Amendment by promptly requesting medical assistance, "and the Constitution required them to do no more." *Tatum*, *supra*, at 1099. Cpl. Maxwell's actions satisfied *Tatum.* Plaintiffs' denial of medical care claim should be dismissed as a matter of law.

**E.      Familial Relationship**

Plaintiffs' fourth cause of action fails because: (1)   officers did not act with a purpose to harm or, in the alternative, deliberate indifference; and (2) they are entitled to qualified immunity.

1.      No Purpose to Harm or Deliberate Indifference

The Due Process clause of the Fourteenth Amendment protects against "arbitrary action of the government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (internal quotations and citations omitted). The Supreme Court has set a high threshold for "arbitrary" conduct: "[o]ur cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, *supra*, at 846 (internal quotations and citations omitted). The threshold is whether the conduct "shocks the conscience." (*Id.*) Where, as here, the incident unfolded in a matter of seconds and the officers did not have time to deliberate "use of force shocks the conscience only if the officers had a purpose to harm the decedent for reasons unrelated to legitimate law enforcement objectives."

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

*Gonzales v. City of Anaheim*, 747 F. 3d 789, 797 (9th Cir. 2014) (citing *Porter v. Osborn*, 546 F. 3d 1131 (9th Cir. 2008).)[4] Examples of improper purpose include intent to terrorize (*Porter, supra*, at 1140-1141); or bullying a suspect or "getting even." (*Wilkinson v. Torres*, 610 F. 3d 546 (9th Cir. 2010). There is no evidence Cpl. Maxwell or Ofc. Bruce acted with an ulterior motive. They only acted to effect an arrest or in self-defense and/or defense of others.

Assuming, *arguendo*, the Court finds the officers did have time to deliberate and utilizes the other Fourteenth Amendment standard (deliberate indifference), there is still no constitutional violation. Ofc. Bruce only used his baton after Hernandez committed her first assault with a deadly weapon (attempting to disable the vehicle and arrest her). Cpl. Maxwell deployed his firearm in response to the imminent threat of death and bodily injury posed to Bruce.

          2.     *Qualified Immunity*

Defendants fully incorporate and adopt by reference their qualified immunity discussion above. Cpl. Maxwell and Ofc. Bruce are entitled to qualified immunity unless Plaintiffs can identify a case where officers in similar factual circumstances were found to have violated the Fourteenth Amendment, under the purpose to harm or deliberate indifference standard. Plaintiffs cannot make this showing.

**F.**    **_Monell_**

Under *Monell v. Dept. of Social Service of City of New York*, 436 U.S. 658 (1978), municipalities may be held liable for an unconstitutional custom, policy, or practice. *Monell, supra*, at 690. Under Ninth Circuit precedent, *Monell* liability may be established one of three ways: (1) proof that municipal employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity; (2) proof that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged conduct was thus an act of official government policy; or (3) proof that an official

---

[4] See *Porter,* at 1139-1140 (five-minute encounter analyzed under "purpose to harm standard"); compare *Lewis*, at 853 (prison custodial situation offered as prime example of sufficient time to deliberate -- therefore application of the deliberate indifference standard).

MSJ – NOTICE & MPA
2:22-CV-00585-WBS-JDP

656126.1

1    with final policy-making authority ratified a subordinate's unconstitutional decision or action and

2    the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted).

3    Plaintiffs allege *Monell* under all three theories (FAC, at ¶¶ 66-99).

4                    1.      No Unconstitutional Custom, Practice or Policy Identified

5            When alleging *Monell* liability under 'custom/policy/practice' the allegedly

6    unconstitutional custom must be so "persistent and widespread" that it constitutes a "permanent

7    and well settled city policy." *Monell*, 436 U.S. at 691. "[L]iability for improper custom may not

8    be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

9    duration, frequency and consistency that the conduct has become a traditional method of carrying

10   out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996). "When one must resort to

11   inference, conjecture and speculation to explain events, the challenged practice is not of sufficient

12   duration, frequency and consistency to constitute an actionable policy or custom." *Id.* at 920. The

13   Ninth Circuit has even found that two incidents alone is insufficient to impose *Monell* liability.

14   *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir.1988).  Conclusory allegations do

15   not suffice. Per *Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007), "a formulaic recitation of

16   the elements of a cause of action will not do." *Twombl*y, *supra*, at 556. As the Ninth Circuit

17   explained in *AE ex rel. Hernandez v. Cnty. of Tular*e, 666 F.3d 631 (9th Cir. 2012):

18           [T]o be entitled to the presumption of truth, allegations in a complaint or
             counterclaim may not simply recite the elements of a cause of action but
19           must contain sufficient allegations of underlying facts to give fair notice and
             to enable the opposing party to defend itself effectively. Second, the factual
20           allegations that are taken as true must plausibly suggest an entitlement to
             relief, such that it is not unfair to require the opposing party to be subjected
21           to the expense of discovery and continued litigation.

22           *AE*, *supra*, at 637. The Ninth Circuit explicitly applied these stringent pleading standards

23   to *Monell* causes of action: "This standard applies to *Monell* claims and should govern future

24   pleadings in this case." *Id.*

25           Here, Plaintiffs allege numerous allegedly unconstitutional "customs, practices, and

26   policies, including: (1) "Using excessive force, including excessive deadly force"; (2)

27   "Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing,

28

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NOTICE & MPA
2:22-CV-00585-WBS-JDP

656126.1

disciplining and controlling misconduct by CITY officers"; (3) "As a matter of policy, refusing to release officer-involved reports as required according to statute in order to avoid critical review of CITY police officer conduct"; (4) "Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional"; and (5) "Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings." (*FAC*, at ¶92). There is no evidence to support any of these claims. Plaintiffs' factual allegations regarding an unconstitutional custom, policy or practice are wholly conclusory. Plaintiffs provide no factual detail as to any "inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct," any other incidents of alleged misconduct, what "officer-involved reports" were not properly released per statute, what specific "unjustified shootings" Plaintiffs refer to, or any other supporting facts. As such, any *Monell* pleading fails because Plaintiffs run afoul *Twombly* and *AE*.

2.     *Isolated Incidents and Dissimilar Events Do Not Suffice*

"Liability for an improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). In *Bazurto v. City of Gilroy Police Dep't*, No. 21-CV-06829-VKD, 2021 WL 4975016 (N.D. Cal. Oct. 26, 2021), the plaintiff alleged the Gilroy Police Department had "several policies, practices, or customs that reflect a deliberate indifference to [plaintiff's] Fourth Amendment rights." *Bazurto*, at * 4. In dismissing the *Monell* claim, the Court found the complaint contained "no factual allegations plausibly supporting the existence of any such policies, practices, or customs, beyond the facts of Mr. Bazurto's own encounter with GPD officers on January 28, 2020." (*Id.*)

Here, this theory should be dismissed because it is premised on a singular event, the subject incident involving Hernandez.  Plaintiffs have failed to plead any prior, similar incidents by the City – but rather only refer to "unjustified" or "unconstitutional" shootings in a generic, conclusory fashion (*FAC*, ¶ 92). This is insufficient to establish *Monell* liability.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

3.   Ratification

Ratification claims require a plaintiff to prove "authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). This requires that the policymaker(s) make a mindful decision to validate an officer's decision. *Gillette*, *supra*, at 1347. It requires that the final policymaker "made a conscious, affirmative choice to approve" the subordinate's unconstitutional conduct and adopt is as official policy. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010). The mere failure to discipline does not show condoning or ratification. *Id.*, at 1253-1254.

Plaintiffs' ratification theory (*FAC*, at ¶¶ 66-75) fails because there are no facts in the FAC that a final policymaker for the City of Redding knew of any unconstitutional conduct by Cpl. Maxwell or Ofc. Bruce, or that such policymaker affirmed or endorsed any alleged unlawful actions. Nor have Plaintiffs identified a final policy maker.

4.   No Inadequate Training

Plaintiff argues *Monell* under inadequate training theory. (*FAC*, at ¶¶ 76-87). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, *supra*, at 1359. To recover for a failure to train, a plaintiff must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) The inadequate training must have "actually caused" the deprivation of rights. *Marsh v. County of San Diego*, 680 F.3d 1148, 1159-60 (9th Cir. 2012); *Merritt*, *supra*, at 770.

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, *supra*, at 1360 (internal quotation and citation omitted). Sustaining a claim for deliberate indifference in training requires a showing of (1) continued adherence to a deficient training policy despite actual or constructive knowledge that the policy has failed to prevent tortious conduct in the past; or (2)

failure to equip officers with tools to handle recurring situations. *Long v. County of Los Angeles,* 442 F.3d 1187, 1186-1187 (9th Cir. 2006). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). There is no such evidence here.

Here, the City may only be liable if Plaintiffs establish that the City had a policy amounting to "deliberate indifference" to constitutional rights. See *Oviatt*, *supra*, at 1474 (citation omitted). [emphasis added.] There is no such evidence of deliberate indifference in this case. The Department's training policy and practices were in compliance with, or exceeded, POST standards. (*Smyrnos Declaration*, at ¶¶ 6-7.) At the time of the incident, Cpl. Maxwell and Ofc. Bruce were POST-certified peace officers who were up to date with POST-mandated continuous training. (*Id.* ¶ 9.) Nor is there any evidence of any similar pattern.

        5.   No Causation

Assuming, *arguendo*, excessive force was used, there is no causal relationship with the City's customs, policies, and practices, or training and official policy. There is no evidence that any alleged inadequacy in training, supervision or discipline was the moving force behind alleged excessive force. Nor is there evidence that ratification by any (unidentified) final policy-maker was the moving force behind any excessive force.

Accordingly, the City is entitled to summary judgment in its favor as to Plaintiffs' *Monell* claim, and requests the Court enter such an order.

**G.**      **Battery by a Police Officer**

State-law battery claims mirror the federal-law excessive force claims. *Edson v. City of Anaheim* 63 Cal.App.4th 1269, 1274-1275 (1998) (affirmed in *Yount v. City of Sacramento* 43 Cal.4th 885, 902 (2008)). This state-law survival claim fails because officers used reasonable force against Hernandez. Defendants refer the Court to Section 3.C.

**H.**      **Negligence (Wrongful-Death)**

Wrongful-death claims require "the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz v. Seventh Ave. Center* 1340 Cal.App.4 1256, 1263 (2006). This claim fails against all the officers because

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

1   their pre-shooting conduct and use of force were reasonable. The incident occurred in seconds or

2   minutes and Hernandez forced the officers' hands by assaulting them and placing Ofc. Bruce in

3   imminent risk of death or serious bodily injury.

4       **I.    Bane Act**

5       The tenth cause of action – violation of the Bane Act against all defendants – fails

6   because: (1) Bane Act claims may not be premised upon excessive force alone; and (2) because

7   the officers used reasonable force.

8       Civil Code § 52.1(b) bars the interference "by threat, intimidation, or coercion, or attempts

9   to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual

10  or individuals of rights secured by the Constitution or laws of the United States, or of the rights

11  secured by the Constitution or laws of this state …" The First District Court of Appeal recently

12  clarified the threshold for Civil Code § 52.1 liability. "[W]here, as here, [an individually-

13  protected right] is properly pleaded and proved, the egregiousness required by Section 52.1 is

14  tested by whether the circumstances indicate the arresting officer had a specific intent to violate

15  the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows

16  something beyond the coercion "inherent" in the wrongful detention. *Cornell v. City & Cty. of*

17  *San Francisco*, 17 Cal. App. 5th 766, 801-802, as modified (Nov. 17, 2017), review denied (Feb.

18  28, 2018) (citations omitted). Proving specific intent requires showing that the defendant acted

19  "with the particular purpose of depriving the citizen victim of his enjoyment of the interests

20  protected by that ... right" *Cornell*, *supra*, at 803 (internal quotations and citations omitted). See

21  also *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (in excessive force context,

22  must show that defendant "intended not only the force, but its unreasonableness, its character as

23  'more than necessary under the circumstances.'"

24      Defendants are not liable under Civil Code § 52.1 because there was no specific intent to

25  deprive Hernandez of a constitutional right. Rather, the officers were acting for a legitimate,

26  specific law enforcement purpose (investigating a disturbance and then attempting to place

27  Hernandez under arrest for assault with a deadly weapon). Plaintiffs' Bane Act claim also fails

28  because there was no excessive force (See Section 3.C).

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

656126.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

J.     **DOE Defendants Must Be Dismissed**

The Ninth Circuit disfavors fictitious parties. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (internal citation omitted). Under FRCP 4(m), all defendants must be served within 90 days of a complaint's filing. The court is only required to extend time to serve "if the plaintiff shows good cause." *Id.* Plaintiffs filed their FAC on January 17, 2023, naming 2-10 DOEs. To-date, none have been substituted-in/served.

K.     **No Evidence to Support Punitive Damages**

Plaintiffs seeks punitive damages against all defendants under both federal and state law. A plaintiff may recover punitive damage in a Section 1983 case, where the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983). Per C.C.P. § 3294(a), a plaintiff may only recover punitive damages where it is proven "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civil Code § 3294 (West 1997.)

There is no evidence Defendants used force against Hernandez or acted against her with evil intent or motive; or reckless or callous indifference to her civil rights. Rather, police responded to a non-compliant subject who escalated the situation, presenting a lethal threat.

IV.   **CONCLUSION**

For these reasons, Defendants respectfully request their motion be granted.

Respectfully submitted,

Dated:  April 24, 2024              ALLEN, GLAESSNER,
                                    HAZELWOOD & WERTH, LLP


By:   */s/ Ameet D. Patel*
      DALE L. ALLEN, JR.
      AMEET D. PATEL
      Attorneys for Defendants
      CITY OF REDDING, GARRETT MAXWELL
      and MATTHEW BRUCE

656126.1