DALE L. ALLEN, JR., State Bar No. 145279
dallen@aghwlaw.com
AMEET D. PATEL, State Bar No. 343413
apatel@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA  94104
Telephone:     (415) 697-2000
Facsimile:     (415) 813-2045

Attorney for Defendant
CITY OF REDDING, GARRETT MAXWELL, AND
MATTHEW BRUCE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA MCLEOD, individually and as successor in interest to decedent, DOLORES HERNANDEZ; AMADO HERNANADEZ; individually and as successor in interest to decedent, DOLORES HERNANDEZ; and YSIDRA REGALDO, individually,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF REDDING; GARRETT MAXWELL, an individual; MATTHEW BRUCE, an individual; and DOES 2-10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:22-CV-00585-WBS-JDP<br><br>**DECLARATION OF CAPTAIN CHRIS SMYRNOS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION [F.R.C.P. 56]**<br><br>Hon. WILLIAM B. SHUBB<br><br>Date:　　June 10, 2024<br>Time:　　1:30 p.m.<br>Ctrm:　　5<br><br>Trial:　　September 10, 2024 |

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

655935.1

I, Chris Smyrnos, declare as follows:

1. I have personal knowledge of the following facts and could and would testify competently thereto if called upon to do so.

2. I am currently employed as a Captain with the Redding Police Department ("Department") and was a Sergeant working as an Acting Lieutenant at the time of the subject incident (December 2, 2020). I started with the Redding Police Department on November 12, 2003.

3. As part of my employment with the Department, I have access to Department policies and procedures, as well as individual officer personnel files.

4. The Department has in place official policies that mandate the investigation and review of officer involved shooting incidents.

5. The Department adheres to California Penal Code §832.5, which requires that the Department have a procedure for investigating complaints made by the public, and that it makes a written description of the procedure available to the public.

6. At the time of the subject incident, the Department observed and trained to meet or exceed the standards set by the State of California Commission on Peace Officer Standards and Training ("POST"). POST is a state-wide, governmental organization (created by State of California Legislature) composed of law enforcement executives and advisors tasked with setting minimum selection and training standards for California law enforcement and since 2021, was given additional authority to certify, decertify and suspend peace officers in certain instances.

7. The Department's update training is consistent with POST mandates.

8. In order to be in compliance with POST standards, the Department submits its training courses and policies to regular audits by POST.

9. At the time of the subject incident, Corporal Garrett Maxwell and Officer Matthew Bruce attended and successfully completed the POST-certified police academy prior to being hired by the Department, successfully passed their FTO training, and were up to date with all mandated POST training requirements.

10. Attached as Exhibit "A" to this declaration please find a true and correct copy of the Department policies in effect at the time of the incident. Including but not limited to: (1) Use

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – SMYRNOS DECL.
2:22-CV-00585-WBS-JDP

655935.1

1   of Force – Policy 300; and (2) Firearms – Policy 305.

2   11. The Department policy requires documentation of incidents in which force is used (e.g.,

3   Policies 300 and 304). Such documentation is maintained by the Department.

4   12. I investigated the officer involved shooting [OIS] involving decedent Dolores Hernandez that

5   took place on December 2, 2020. As part of that function, I reviewed all of the evidence and

6   other materials related to the incident, including the Shasta Area Safety Communications

7   Agency ("SHASCOM") 911 audio tapes and transcripts, MDC messages from the time of the

8   initial call for service to 0300 hours on the morning of December 3, 2020, cell phone video

9   recorded by witness Melody Raudman, investigative reports from Shasta County Sheriff's

10   Office, Anderson Police Department, and Redding Police Department, Redding Police

11   Department policies and procedures, the clearance letter issued by Shasta County District

12   Attorney Stephanie Bridgett and statements provided by the involved officers. During my

13   employment with the Redding Police Department, I have served as the SHASCOM Director.

14   13. As part of my investigation, I discovered that on December 2, 2020, beginning at or around

15   6:27 p.m., North State Security guard Jason Schuler called "SHASCOM" reporting a woman

16   (later identified as Hernandez) causing a disturbance at the Mod Pizza business (located at

17   913 Dana Drive in Redding, CA) who had left the business but was now locked in her grey

18   Toyota Camry (California license plate # 7GZH882), yelling and cursing at citizens and

19   threating Mr. Schuler.

20   14. Redding Police Corporal Garrett Maxwell and Officer Matthew Bruce responded to this call

21   for service.

22   15. As part of my investigation, I learned that at approximately 6:36:42 p.m. on December 2,

23   2020, Corporal Maxwell advised over the radio that shots had been fired and one subject was

24   down and requested "Code 3" medical to respond (I am also aware that the Department

25   produced this portion of dispatch audio for discovery purposes as Bates COR (McLeod)

26   000280). I also discovered that Corporal Maxwell had evaluated Hernandez, who appeared to

27   be obviously deceased since she was motionless, not breathing, had significant trauma on the

28   left side of her body from gunshot wounds, and had no pulse. Dolores Hernandez was

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

3

MSJ – SMYRNOS DECL.
2:22-CV-00585-WBS-JDP

655935.1

1    pronounced deceased at the scene.

2    16. Per Redding Police Department Policy, the Department conducted an internal investigation

3    into the officer involved shooting incident.

4    17. Consistent with Department Policy 304.8, I prepared a written report of my findings. A true

5    and correct copy of the report of my findings is attached hereto as Exhibit "B".

6    18. My investigation found that Corporal Maxwell's and Officer Bruce's actions were in

7    compliance with the Department's policies and procedures.

8    19. Per my report, Officer Bruce believed Hernandez intentionally drove directly at him (assault

9    with a deadly weapon) and posed a threat to the citizens in the shopping center based on

10   Officer Bruce's fear that Hernandez would attempt to run over numerous citizens in the area.

11   Officer Bruce thus attempted to use his baton to break the vehicle's window to detain and

12   arrest her (he did not issue a verbal command because her music had been turned up, and he

13   did not believe she would hear him).

14   20. As Officer Bruce attempted to break Hernandez's window, Hernandez reversed with her front

15   wheels pointed towards him, causing the car's front, driver's side tire to grab his foot, run

16   over his leg, and pull him to the ground. The vehicle ran over Officer Bruce's leg, pinning and

17   trapping him on the ground under the car.

18   21. Per my report, Corporal Maxwell's use of deadly force was reasonable and justified to stop

19   Hernandez's immediate threat of death or serious bodily injury to Officer Bruce, who had

20   been ran over and was pinned under her car (posing a continued risk of being run over again),

21   and the ongoing threat to the public if she were to escape (and thus lawful and within

22   Department policy). It was not feasible for Corporal Maxwell to issue a warning to Hernandez

23   prior to using deadly force due to the rapidly unfolding nature of the incident and the fact that

24   Officer Bruce was actively trapped under Hernandez's vehicle.

25   / / /

26   / / /

27   / / /

28   / / /

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – SMYRNOS DECL.
2:22-CV-00585-WBS-JDP

655935.1

1   I swear under penalty of perjury under the laws of the United States of America that the foregoing

2   is true and correct to the best of my own personal knowledge. Signed this _____ day of April

3   2024 in the City of _____, California.

4

5

6   _____

7   CAPTAIN CHRIS SMYRNOS
    Redding Police Department

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP**
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – SMYRNOS DECL.
2:22-CV-00585-WBS-JDP

655935.1

# EXHIBIT "A"

Redding Police Department

RPD Policy Manual

---

**CHIEF'S PREFACE**

The Redding Police Department Policy Manual contains the operational orders established to provide excellent service to our community in a safe and professional manner. These policies have been established based on legal precedence and best practice principles from the law enforcement profession collectively. This policy manual contains a framework of rules and expected performance procedures for all department members to abide by in order to complete our mission. The members of the Redding Police Department are held to the highest standard by the citizens we serve and adherence to these policies is one of the requirements of these standards. Adherence to these policies, along with your ongoing training will provide you with the skills and knowledge to address your law enforcement responsibilities in an ethical and legal manner. I am confident that together we will continue to provide outstanding service to our community.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000472

# Redding Police Department
RPD Policy Manual

**LAW ENFORCEMENT CODE OF ETHICS**

As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.

I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession . . . law enforcement.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000473

# Redding Police Department

RPD Policy Manual

**MISSION STATEMENT**

The mission of the Redding Police Department is to work in partnership with the community to protect life and property, find innovative ways to solve neighborhood problems and enhance the quality of life in our city.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000474

Redding Police Department

RPD Policy Manual

# Table of Contents

**Chief's Preface** . . . . . . . . . . . . . . . . **1**

**Law Enforcement Code of Ethics** . . . . . . . . . **2**

**Mission Statement** . . . . . . . . . . . . . . **3**

**Chapter 1 - Law Enforcement Role and Authority** . . . . . . . **9**
100 - Law Enforcement Authority . . . . . . . . . . . 10
101 - Chief Executive Officer . . . . . . . . . . . 13
102 - Oath of Office . . . . . . . . . . . . . 14
103 - Policy Manual . . . . . . . . . . . . . 15

**Chapter 2 - Organization and Administration** . . . . . . . **18**
200 - Organizational Structure and Responsibility . . . . . . . 19
201 - General Orders . . . . . . . . . . . . . 21
202 - Emergency Management Plan . . . . . . . . . . 22
203 - Training Policy . . . . . . . . . . . . . 23
204 - Electronic Mail and Department Phones . . . . . . . . 26
205 - Administrative Communications . . . . . . . . . . 28
206 - Staffing Levels . . . . . . . . . . . . . 29
207 - License to Carry a Firearm . . . . . . . . . . 30
208 - Retiree Concealed Firearms . . . . . . . . . . 31
209 - Administrative Leave . . . . . . . . . . . . 36

**Chapter 3 - General Operations** . . . . . . . . . . **37**
300 - Use of Force . . . . . . . . . . . . . . 38
301 - Handcuffing and Restraints . . . . . . . . . . 48
302 - Control Devices and Techniques . . . . . . . . . 53
303 - Conducted Energy Device . . . . . . . . . . . 58
304 - Officer-Involved Shootings and Deaths . . . . . . . . 64
305 - Firearms . . . . . . . . . . . . . . . 73
306 - Vehicle Pursuits . . . . . . . . . . . . . 85
307 - Officer Response to Calls . . . . . . . . . . . 97
308 - Canines . . . . . . . . . . . . . . . 100
309 - Domestic Violence . . . . . . . . . . . . . 109
310 - Search and Seizure . . . . . . . . . . . . 121
311 - Temporary Custody of Juveniles . . . . . . . . . 123
312 - Adult Abuse . . . . . . . . . . . . . . 134
313 - Discriminatory Harassment . . . . . . . . . . . 144
314 - Child Abuse . . . . . . . . . . . . . . 150
315 - Missing Persons . . . . . . . . . . . . . 158
316 - Public Alerts . . . . . . . . . . . . . . 164
317 - Victim and Witness Assistance . . . . . . . . . . 168
318 - Hate Crimes . . . . . . . . . . . . . . 171

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000475

319 - Standards of Conduct . . . . . . . . . . . . . . 175
320 - Information Technology Use . . . . . . . . . . . . 179
321 - Department Use of Social Media . . . . . . . . . . 183
322 - Report Preparation . . . . . . . . . . . . . . 186
323 - Media Relations . . . . . . . . . . . . . . . 192
324 - Subpoenas and Court Appearances . . . . . . . . . 195
325 - Reserve Officers . . . . . . . . . . . . . . . 200
326 - Outside Agency Assistance . . . . . . . . . . . . 206
327 - Registered Offender Information . . . . . . . . . . 208
328 - Death Investigation . . . . . . . . . . . . . . 211
329 - Identity Theft . . . . . . . . . . . . . . . . 215
330 - Communications with Persons with Disabilities . . . . . 217
331 - Private Persons Arrests . . . . . . . . . . . . . 225
332 - Anti-Reproductive Rights Crimes Reporting . . . . . . 228
333 - Limited English Proficiency Services . . . . . . . . . 230
334 - Mandatory Employer Notification . . . . . . . . . . 238
335 - Biological Samples . . . . . . . . . . . . . . 240
336 - Chaplains . . . . . . . . . . . . . . . . . 242
337 - Child and Dependent Adult Safety . . . . . . . . . 249
338 - Service Animals . . . . . . . . . . . . . . . 252
339 - Volunteer Program . . . . . . . . . . . . . . 255
340 - Off-Duty Law Enforcement Actions . . . . . . . . . 259
341 - Gun Violence Restraining Orders . . . . . . . . . . 261
342 - Native American Graves Protection and Repatriation . . . 264
343 - Drug Recognition Expert Program (DRE) . . . . . . . 266
344 - Child Abduction/Endangered Missing Children . . . . . 267
345 - Misconduct and Arrest of City Employees . . . . . . . 271
346 - Peer Support Program . . . . . . . . . . . . . 272
347 - Promotional Exams and Specialty Assignments--Confidentiality . . . . 276
348 - Critical Incident Stress Management (CISM) . . . . . . 277
349 - Honor Guard . . . . . . . . . . . . . . . . 281
350 - Police Facility Security . . . . . . . . . . . . . 282
351 - Community Relations . . . . . . . . . . . . . . 284

**Chapter 4 - Patrol Operations . . . . . . . . . . . 287**

400 - Patrol Function . . . . . . . . . . . . . . . 288
401 - Bias-Based Policing . . . . . . . . . . . . . . 290
402 - Roll Call Briefing Training . . . . . . . . . . . . 292
403 - Crime and Disaster Scene Integrity . . . . . . . . . 293
404 - Special Weapons and Tactics (SWAT) Team . . . . . . 295
405 - Ride-Along Policy . . . . . . . . . . . . . . . 309
406 - Hazardous Material, Trauma Scene Waste and Spilled Loads Response . . . 313
407 - Hostage and Barricade Incidents . . . . . . . . . . 316
408 - Response to Bomb Calls . . . . . . . . . . . . . 321
409 - Crisis Intervention Incidents . . . . . . . . . . . 327
410 - Mental Illness Commitments . . . . . . . . . . . 331
411 - Cite and Release Policy . . . . . . . . . . . . . 336

# Redding Police Department

RPD Policy Manual

412 - Foreign Diplomatic and Consular Representatives . . . . . . . . .   340
413 - Rapid Response and Deployment . . . . . . . . . . . . . . .   344
414 - Immigration Violations . . . . . . . . . . . . . . . . .   347
415 - Aircraft Accidents . . . . . . . . . . . . . . . . . . .   353
416 - Field Training Officer Program . . . . . . . . . . . . . .   357
418 - Contacts and Temporary Detentions . . . . . . . . . . . .   360
419 - Criminal Organizations . . . . . . . . . . . . . . . . .   365
420 - Mobile Digital Computer Use . . . . . . . . . . . . . . .   370
421 - Portable Audio/Video Recorders . . . . . . . . . . . . .   372
422 - Public Recording of Law Enforcement Activity . . . . . . . .   377
424 - Bicycle Patrol Unit . . . . . . . . . . . . . . . . . .   380
425 - Automated License Plate Readers (ALPRs) . . . . . . . . . .   383
426 - Homeless Persons . . . . . . . . . . . . . . . . . . .   386
427 - First Amendment Assemblies . . . . . . . . . . . . . . .   391
428 - Civil Disputes . . . . . . . . . . . . . . . . . . . .   397
429 - Medical Aid and Response . . . . . . . . . . . . . . . .   398
430 - Field Interview Cards . . . . . . . . . . . . . . . . .   402
431 - Embezzled and Stolen Vehicles . . . . . . . . . . . . . .   403
432 - All Terrain Motorcycle Unit . . . . . . . . . . . . . . .   409
433 - Homeland Security Threat Condition Advisory . . . . . . . .   411
434 - Naloxone . . . . . . . . . . . . . . . . . . . . . .   413

**Chapter 5 - Traffic Operations** . . . . . . . . . . . . . . . .   **416**
501 - Traffic Collision Reporting . . . . . . . . . . . . . . .   417
502 - Vehicle Towing and Release . . . . . . . . . . . . . . .   420
503 - Vehicle Impound Hearings . . . . . . . . . . . . . . . .   427
504 - Impaired Driving . . . . . . . . . . . . . . . . . . .   429
505 - Traffic Citations . . . . . . . . . . . . . . . . . . .   435
506 - Disabled Vehicles . . . . . . . . . . . . . . . . . . .   438
507 - Parking Violations and Abandoned Vehicles . . . . . . . . .   439
508 - Collision Administrative Review Boards . . . . . . . . . . .   443
509 - Red Light Photo Enforcement Program . . . . . . . . . . .   444

**Chapter 6 - Investigation Operations** . . . . . . . . . . . . . .   **447**
600 - Investigation and Prosecution . . . . . . . . . . . . . .   448
601 - Sexual Assault Investigations . . . . . . . . . . . . . .   455
602 - Asset Forfeiture . . . . . . . . . . . . . . . . . . .   461
603 - Informants . . . . . . . . . . . . . . . . . . . . .   468
604 - Eyewitness Identification . . . . . . . . . . . . . . . .   473
605 - Brady Material Disclosure . . . . . . . . . . . . . . . .   477
606 - Unmanned Aerial Vehicle (UAV) Operations . . . . . . . . .   480
607 - Warrant Service . . . . . . . . . . . . . . . . . . .   483
608 - Operations Planning and Deconfliction . . . . . . . . . . .   488
609 - Vice Control . . . . . . . . . . . . . . . . . . . . .   493
610 - Seizure of Alleged Stolen Property (Pawn Shops) . . . . . . .   494
611 - Dealer Record of Sales of Revolvers or Pistols . . . . . . . .   497
612 - Access to Restricted Information . . . . . . . . . . . . .   498

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000477

# Redding Police Department

RPD Policy Manual

**Chapter 7 - Equipment** . . . . . . . . . . . . . . . . . . . **500**

700 - Department Owned and Personal Property . . . . . . . . . . 501
701 - Personal Communication Devices . . . . . . . . . . . . 504
702 - Vehicle Maintenance . . . . . . . . . . . . . . . 507
703 - Vehicle Use . . . . . . . . . . . . . . . . . 509
704 - Cash Handling, Security and Management . . . . . . . . . 517
705 - Personal Protective Equipment . . . . . . . . . . . . 518

**Chapter 8 - Support Services** . . . . . . . . . . . . . . . **520**

800 - Crime Analysis . . . . . . . . . . . . . . . . . 521
801 - Shascom Dispatch Services . . . . . . . . . . . . . 522
802 - Property and Evidence . . . . . . . . . . . . . . 524
803 - Records Division . . . . . . . . . . . . . . . . 535
804 - Restoration of Firearm Serial Numbers . . . . . . . . . . 538
805 - Records Maintenance and Release . . . . . . . . . . . 540
806 - Protected Information . . . . . . . . . . . . . . . 549
807 - Electronic Devices and Digital Evidence . . . . . . . . . 552
808 - Services Division Scheduling . . . . . . . . . . . . . 556

**Chapter 9 - Personnel** . . . . . . . . . . . . . . . . . **558**

900 - Recruitment and Selection . . . . . . . . . . . . . . 559
901 - Evaluation of Employees . . . . . . . . . . . . . . 564
902 - Promotional and Transfer Policy . . . . . . . . . . . . 565
903 - Grievance Procedure . . . . . . . . . . . . . . . 570
904 - Anti-Retaliation . . . . . . . . . . . . . . . . . 571
905 - Reporting of Employee Convictions . . . . . . . . . . . 575
906 - Drug- and Alcohol-Free Workplace . . . . . . . . . . . 577
907 - Sick Leave . . . . . . . . . . . . . . . . . . 579
908 - Communicable Diseases . . . . . . . . . . . . . . 581
909 - Smoking and Tobacco Use . . . . . . . . . . . . . 586
910 - Personnel Complaints . . . . . . . . . . . . . . . 587
911 - Seat Belts . . . . . . . . . . . . . . . . . . 597
912 - Body Armor . . . . . . . . . . . . . . . . . . 599
913 - Personnel Records . . . . . . . . . . . . . . . . 601
914 - Commendations and Awards . . . . . . . . . . . . . 610
915 - Fitness for Duty . . . . . . . . . . . . . . . . . 614
916 - Meal Periods and Breaks . . . . . . . . . . . . . . 617
917 - Lactation Break Policy . . . . . . . . . . . . . . . 618
918 - Payroll Records . . . . . . . . . . . . . . . . . 620
919 - Overtime Compensation Requests . . . . . . . . . . . 622
920 - Outside Employment . . . . . . . . . . . . . . . 625
921 - Occupational Disease and Work-Related Injury Reporting . . . . 630
922 - Personal Appearance Standards . . . . . . . . . . . . 633
923 - Uniform Regulations . . . . . . . . . . . . . . . 635
924 - Police Cadets . . . . . . . . . . . . . . . . . 637
925 - Nepotism and Conflicting Relationships . . . . . . . . . . 641
926 - Department Badges . . . . . . . . . . . . . . . . 644

# Redding Police Department

RPD Policy Manual

927 - Temporary Modified-Duty Assignments . . . . . . . . . . . 646
928 - Employee Speech, Expression and Social Networking . . . . . . . 650
929 - Line-of-Duty Deaths . . . . . . . . . . . . . . . 654
930 - Consultants . . . . . . . . . . . . . . . . . 665
931 - Special Assignments . . . . . . . . . . . . . . . 666
932 - ICAC Wellness and Employee Resilience Program . . . . . . . . 668

**Attachments** . . . . . . . . . . . . . . . . . . . **670**
1019.2-Shift Trade Request Form.pdf . . . . . . . . . . . . . 671
305_CRITICAL INCIDENT INVESTIGATION GUIDELINES.pdf . . . . . . . 672
610_Pawn Form 6.pdf . . . . . . . . . . . . . . . . 673
438_Attachment Severe Red (2).pdf . . . . . . . . . . . . . 674
COR IT Policy.pdf . . . . . . . . . . . . . . . . . 675
Hate Crime Checklist.pdf . . . . . . . . . . . . . . . . 676
Commission on Peace Officer Standards and Training Hate Crimes Model Policy 2019.pdf
. . . . . . . . . . . . . . . . . . . . . . 677
Attachment 326.pdf . . . . . . . . . . . . . . . . . 678
TobaccoUsePolicyRev815.pdf . . . . . . . . . . . . . . . 679
610_Pawn Form 3.pdf . . . . . . . . . . . . . . . . 680
610_Pawn Form 5.pdf . . . . . . . . . . . . . . . . 681
Instruction 18-03.pdf . . . . . . . . . . . . . . . . . 682
18-2.pdf . . . . . . . . . . . . . . . . . . . . 683
1024-Uniform Regulations-Attachment.pdf . . . . . . . . . . . 684
CM101SmokefreecampusatCity.pdf . . . . . . . . . . . . . 685
Instruction 18-02.pdf . . . . . . . . . . . . . . . . . 686
438_Attachment High Orange.pdf . . . . . . . . . . . . . . 687
610_Pawn Form 1.pdf . . . . . . . . . . . . . . . . 688
610_Pawn Form 4.pdf . . . . . . . . . . . . . . . . 689
COR Social Media Policy.pdf . . . . . . . . . . . . . . . 690
312-Juvenile In Custody.pdf . . . . . . . . . . . . . . . 691
Shasta County Multi-Agency OICI Protocol Dec 2014.pdf . . . . . . . . 692
Statutes and Legal Requirements.pdf . . . . . . . . . . . . . 693
703.4_City Managers Vehicle Policy.pdf . . . . . . . . . . . . 694
A-59.2 _Proficient - Fluent.pdf . . . . . . . . . . . . . . 695
306-Vehicle Pursuits.pdf . . . . . . . . . . . . . . . . 696
Award Descriptions.pdf . . . . . . . . . . . . . . . . 697
610_Pawn Form 2.pdf . . . . . . . . . . . . . . . . 698

Redding Police Department

RPD Policy Manual

# Chapter 1 - Law Enforcement Role and Authority

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Law Enforcement Authority

## 100.1  PURPOSE AND SCOPE

The purpose of this policy is to affirm the authority of the members of the Redding Police Department to perform their functions based on established legal authority.

## 100.2  POLICY

It is the policy of the Redding Police Department to limit its members to only exercise the authority granted to them by law.

While this Department recognizes the power of peace officers to make arrests and take other enforcement action, officers are encouraged to use sound discretion in the enforcement of the law. This Department does not tolerate the abuse of law enforcement authority.

## 100.3  PEACE OFFICER POWERS

Sworn members of this Department are authorized to exercise peace officer powers pursuant to applicable state law (Penal Code § 830.1 et seq.).

### 100.3.1  ARREST AUTHORITY OUTSIDE THE JURISDICTION OF THE REDDING POLICE DEPARTMENT

The arrest authority outside the jurisdiction of the Redding Police Department includes (Penal Code § 830.1; Penal Code § 836):

(a)  When the officer has probable cause to believe the person committed a felony.

(b)  When the officer has probable cause to believe the person has committed a misdemeanor in the presence of the officer and the officer reasonably believes there is immediate danger to person or property or of escape.

(c)  When the officer has probable cause to believe the person has committed a misdemeanor for which an arrest is authorized even if not committed in the presence of the officer such as certain domestic violence offenses and there is immediate danger to person or property or of escape or the arrest is mandated by statute.

(d)  When authorized by a cross jurisdictional agreement with the jurisdiction in which the arrest is made.

(e)  In compliance with an arrest warrant.

On-duty arrests will not generally be made outside the jurisdiction of this department except in cases of hot or fresh pursuit, while following up on crimes committed within the City, or while assisting another agency.

On-duty officers who discover criminal activity outside the jurisdiction of the City should when circumstances permit, consider contacting the agency having primary jurisdiction before attempting an arrest.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

## Redding Police Department

RPD Policy Manual

*Law Enforcement Authority*

---

100.3.2   DELIVERY TO NEAREST MAGISTRATE

When an officer makes an arrest pursuant to a warrant with bail set, and the warrant was issued in a county other than where the person was arrested, the officer shall inform the person in writing of the right to be taken before a magistrate in the county where the arrest occurred (Penal Code § 821; Penal Code § 822).

100.3.3   ARREST AUTHORITY INSIDE THE JURISDICTION OF THE REDDING POLICE DEPARTMENT

The arrest authority within the jurisdiction of the Redding Police Department includes (Penal Code § 830.1; Penal Code § 836):

    (a)    When the officer has probable cause to believe the person has committed a felony, whether or not committed in the presence of the officer.

    (b)    When the officer has probable cause to believe the person has committed a misdemeanor in this jurisdiction and in the presence of the officer.

    (c)    When the officer has probable cause to believe the person has committed a public offense outside this jurisdiction, in the presence of the officer and the officer reasonably believes there is an immediate danger to person or property, or of escape.

    (d)    When the officer has probable cause to believe the person has committed a misdemeanor for which an arrest is authorized or required by statute even though the offense has not been committed in the presence of the officer such as certain domestic violence offenses.

    (e)    In compliance with an arrest warrant.

100.3.4   TIME OF MISDEMEANOR ARRESTS

Officers shall not arrest a person for a misdemeanor between the hours of 10:00 p.m. of any day and 6:00 a.m. of the next day unless (Penal Code § 840):

    (a)    The arrest is made without a warrant pursuant to Penal Code § 836 which includes:

        1.    A misdemeanor committed in the presence of the officer.

        2.    Misdemeanor domestic violence offenses (See the Domestic Violence Policy).

    (b)    The arrest is made in a public place.

    (c)    The arrest is made with the person in custody pursuant to another lawful arrest.

    (d)    The arrest is made pursuant to a warrant which, for good cause shown, directs that it may be served at any time of the day or night.

100.3.5   OREGON AUTHORITY

Sworn members of this Department who enter the state of Oregon in order to provide or attempt to provide law enforcement assistance have Oregon peace officer authority within 50 miles from the California-Oregon border (ORS 133.405). Such authority shall only apply when officers are acting:

    (a)    In response to a request for law enforcement assistance initiated by an Oregon sheriff, constable, marshal, municipal police officer or member of the Oregon State Police.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)   000482

# Redding Police Department
RPD Policy Manual

*Law Enforcement Authority*

(b) In response to a reasonable belief that emergency law enforcement assistance is necessary to preserve life, and circumstances make it impractical for Oregon law enforcement officials to formally request assistance.

(c) For the purpose of assisting Oregon law enforcement officials with emergency assistance in response to criminal activity, traffic accidents, emergency incidents or other similar public safety situations, regardless of whether an Oregon law enforcement official is present at the scene of the incident.

Redding Police Department officers have no authority to enforce Oregon traffic or motor vehicle laws.

Whenever practicable, officers should seek permission from a Department supervisor before entering Oregon to provide law enforcement services. As soon as practicable, officers exercising law enforcement authority in Oregon shall submit any appropriate written reports concerning the incident to the Oregon agency having primary jurisdiction over the area in which the incident occurred.

## 100.4  CONSTITUTIONAL REQUIREMENTS
All members shall observe and comply with every person's clearly established rights under the United States and California Constitutions.

## 100.4  INTERSTATE PEACE OFFICER POWERS
Peace officer powers may be extended to other states:

(a) As applicable under interstate compacts, memorandums of understanding or mutual aid agreements in compliance with the laws of each state.

(b) When an officer enters an adjoining state in close or fresh pursuit of a person believed to have committed a felony (ARS § 13-3832; NRS 171.158; ORS 133.430).

The person arrested out of state must be taken without unnecessary delay before a magistrate of the county in which the arrest was made (ARS § 13-3833; NRS 171.158; ORS 133.440).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000483

# Chief Executive Officer

**101.1  PURPOSE AND SCOPE**
The California Commission on Peace Officer Standards and Training (POST) has mandated that all sworn officers and dispatchers employed within the State of California shall receive certification by POST within prescribed time periods.

101.1.1  CHIEF EXECUTIVE OFFICER REQUIREMENTS
Any chief executive officer of this department appointed after January 1, 1999, shall, as a condition of continued employment, complete the course of training prescribed by POST and obtain the Basic Certificate by POST within two years of appointment (Penal Code § 832.4).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Oath of Office

## 102.1   PURPOSE AND SCOPE
The purpose of this policy is to ensure that oaths, when appropriate, are administered to department members.

## 102.2   POLICY
It is the policy of the Redding Police Department that, when appropriate, department members affirm the oath of their office as an expression of commitment to the constitutional rights of those served by the Department and the dedication of its members to their duties.

## 102.3   OATH OF OFFICE
All department members, when appropriate, shall take and subscribe to the oaths or affirmations applicable to their positions. All sworn members shall be required to affirm the oath of office expressing commitment and intent to respect constitutional rights in discharging the duties of a law enforcement officer (Cal. Const. Art. 20, § 3; Government Code § 3102). The oath shall be as follows:

"I, (employee name), do solemnly swear that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; and that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter."

## 102.4   MAINTENANCE OF RECORDS
The oath of office shall be filed as prescribed by law (Government Code § 3105).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Policy**
**103**

Redding Police Department
RPD Policy Manual

# Policy Manual

## 103.1  PURPOSE AND SCOPE

The manual of the Redding Police Department is hereby established and shall be referred to as the Policy Manual or the manual. The manual is a statement of the current policies, rules and guidelines of this department. All members are to conform to the provisions of this manual.

All prior and existing manuals, orders and regulations that are in conflict with this manual are rescinded, except to the extent that portions of existing manuals, procedures, orders and other regulations that have not been included herein shall remain in effect, provided that they do not conflict with the provisions of this manual.

## 103.2  POLICY

Except where otherwise expressly stated, the provisions of this manual shall be considered as guidelines. It is recognized that the work of law enforcement is not always predictable and circumstances may arise which warrant departure from these guidelines. It is the intent of this manual to be viewed from an objective standard, taking into consideration the sound discretion entrusted to members of this department under the circumstances reasonably available at the time of any incident.

### 103.2.1  DISCLAIMER

The provisions contained in the Policy Manual are not intended to create an employment contract nor any employment rights or entitlements. The policies contained within this manual are for the internal use of the Redding Police Department and shall not be construed to create a higher standard or duty of care for civil or criminal liability against the City, its officials or members. Violations of any provision of any policy contained within this manual shall only form the basis for department administrative action, training or discipline. The Redding Police Department reserves the right to revise any policy content, in whole or in part.

## 103.3  AUTHORITY

The Chief of Police shall be considered the ultimate authority for the content and adoption of the provisions of this manual and shall ensure compliance with all applicable federal, state and local laws. The Chief of Police or the authorized designee is authorized to issue General Orders, which shall modify those provisions of the manual to which they pertain. General Orders shall remain in effect until such time as they may be permanently incorporated into the manual.

## 103.4  DEFINITIONS

The following words and terms shall have these assigned meanings throughout the Policy Manual, unless it is apparent from the content that they have a different meaning:

**Adult** - Any person 18 years of age or older.

**CCR** - California Code of Regulations (Example: 15 CCR 1151).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000486

# Redding Police Department

RPD Policy Manual

*Policy Manual*

**CHP**- The California Highway Patrol.

**CFR** - Code of Federal Regulations.

**City** - The City of Redding.

**Non-sworn** - Employees and volunteers who are not sworn peace officers.

**Department/RPD** - The Redding Police Department.

**DMV** - The Department of Motor Vehicles.

**Employee** - Any person employed by the Department.

**Juvenile**- Any person under the age of 18 years.

**Manual** - The Redding Police Department Policy Manual.

**May** - Indicates a permissive, discretionary or conditional action.

**Member** - Any person employed or appointed by the Redding Police Department, including:

- Full- and part-time employees
- Sworn peace officers
- Reserve, auxiliary  officers
- Non-sworn employees
- Volunteers.

**Officer** - Those employees, regardless of rank, who are sworn peace officers of the Redding Police Department.

**On-duty** - A member's status during the period when he/she is actually engaged in the performance of his/her assigned duties.

**Order** - A written or verbal instruction issued by a superior.

**POST** - The California Commission on Peace Officer Standards and Training.

**Rank** - The title of the classification held by an officer.

**Shall or will** - Indicates a mandatory action.

**Should** - Indicates a generally required or expected action, absent a rational basis for failing to conform.

**Supervisor** - A person in a position of authority that may include responsibility for hiring, transfer, suspension, promotion, discharge, assignment, reward or discipline of other department members, directing the work of other members or having the authority to adjust grievances. The supervisory exercise of authority may not be merely routine or clerical in nature but requires the use of independent judgment.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000487

Redding Police Department

RPD Policy Manual

*Policy Manual*

The term "supervisor" may also include any person (e.g., officer-in-charge, lead or senior worker) given responsibility for the direction of the work of others without regard to a formal job title, rank or compensation.

When there is only one department member on-duty, that person may also be the supervisor, except when circumstances reasonably require the notification or involvement of the member's off-duty supervisor or an on-call supervisor.

**USC** - United States Code.

### 103.5   ISSUING THE POLICY MANUAL
An electronic version of the Policy Manual will be made available to all members on the department network for viewing and printing. No changes shall be made to the manual without authorization from the Chief of Police or the authorized designee.

Each member shall acknowledge that he/she has been provided access to, and has had the opportunity to review the Policy Manual and General Orders. Members shall seek clarification as needed from an appropriate supervisor for any provisions that they do not fully understand.

### 103.6   PERIODIC REVIEW OF THE POLICY MANUAL
The Chief of Police will ensure that the Policy Manual is periodically reviewed and updated as necessary.

### 103.7   REVISIONS TO POLICIES
All revisions to the Policy Manual will be provided to each member on or before the date the policy becomes effective. Each member will be required to acknowledge that he/she has reviewed the revisions and shall seek clarification from an appropriate supervisor as needed.

Members are responsible for keeping abreast of all Policy Manual revisions.

Each Division Commander will ensure that members under his/her command are aware of any Policy Manual revision.

All department members suggesting revision of the contents of the Policy Manual shall forward their written suggestions to their Division Commander via the chain of command, who will consider the recommendations and forward them to the command staff as appropriate.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000488

Redding Police Department

RPD Policy Manual

# Chapter 2 - Organization and Administration

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000489

**Redding Police Department**

RPD Policy Manual

# Organizational Structure and Responsibility

**200.1  PURPOSE AND SCOPE**
The organizational structure of this Department is designed to create an efficient means to accomplish our mission and goals and to provide for the best possible service to the public.

**200.2  DIVISIONS**
The Chief of Police is responsible for administering and managing the Redding Police Department. There are two divisions in the Police Department as follows:

- Administration Division
- Field Operations Division

200.2.1  ADMINISTRATION DIVISION
The Administration Division is commanded by an Administrative Captain, whose primary responsibility is to provide general management direction and control for the Administration Division. The Administration Division consists of Technical Services, Crime Analysis, Investigations, Property and Evidence, Support Services/Records, and Administrative Services.

200.2.2  FIELD OPERATIONS DIVISION
The Field Operations Division is commanded by a Captain, whose primary responsibility is to provide general management direction and control for the Field Operations Division. The Field Operations Division consists of Uniformed Patrol and Special Operations.

**200.3  COMMAND PROTOCOL**

200.3.1  SUCCESSION OF COMMAND
The Chief of Police exercises command over all personnel in the Department. During planned absences, the Chief of Police will designate a Division Commander to serve as the acting Chief of Police.

Except when designated as above, the order of command authority in the absence or unavailability of the Chief of Police is as follows:

(a)  Field Operations Division Commander

(b)  Administration Division Commander

(c)  Watch Commander

200.3.2  UNITY OF COMMAND
The principles of unity of command ensure efficient supervision and control within the Department. Generally, each employee shall be accountable to one supervisor at any time for a given assignment or responsibility. Except where specifically delegated authority may exist by policy or special assignment (e.g., K-9, SWAT), any supervisor may temporarily direct any subordinate if an operational necessity exists.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000490

## Redding Police Department

RPD Policy Manual

*Organizational Structure and Responsibility*

---

200.3.3  ORDERS

Members shall respond to and make a good faith and reasonable effort to comply with the lawful order of superior officers and other proper authority.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Policy
**201**

**Redding Police Department**
RPD Policy Manual

# General Orders

**201.1  PURPOSE AND SCOPE**
General Orders establish an interdepartmental communication that may be used by the Chief of Police to make immediate changes to policy and procedure consistent with the current Memorandum of Understanding and as permitted by Government Code § 3500 et seq. General Orders will immediately modify or change and supersede sections of this manual to which they pertain.

201.1.1  GENERAL ORDER PROTOCOL
General Orders will be incorporated into the manual as required upon approval of Staff. General Orders will modify existing policies or create a new policy as appropriate and will be rescinded upon incorporation into the manual.

**201.2  RESPONSIBILITIES**

201.2.1  STAFF
The staff shall review and approve revisions of the Policy Manual, which will incorporate changes originally made by a General Order.

201.2.2  CHIEF OF POLICE
The Chief of Police shall issue all General Orders.

**201.3  ACCEPTANCE OF GENERAL ORDERS**
All employees are required to read and obtain any necessary clarification of all General Orders. All employees are required to acknowledge in writing the receipt and review of any new General Order. Signed acknowledgment forms and/or e-mail receipts showing an employee's acknowledgment will be maintained by the Administration Division.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Emergency Management Plan

## 202.1  PURPOSE AND SCOPE

The City has prepared an Emergency Management Plan for use by all employees in the event of a major disaster or other emergency event. The plan provides for a strategic response by all employees and assigns specific responsibilities in the event that the plan is activated (Government Code § 8610).

## 202.2  ACTIVATING THE EMERGENCY PLAN

The Emergency Management Plan can be activated on the order of the official designated by local ordinance.

### 202.2.1  RECALL OF PERSONNEL

In the event that the Emergency Management Plan is activated, all employees of the Redding Police Department are subject to immediate recall. Employees may also be subject to recall during extraordinary circumstances as deemed necessary by the Chief of Police or the authorized designee.

Failure to promptly respond to an order to report for duty may result in discipline.

## 202.3  LOCATION OF THE PLAN

The Emergency Management Plan is available in Administration and the Field Operations Sergeant's office. All supervisors should familiarize themselves with the Emergency Management Plan. The Administration Division should ensure that department personnel are familiar with the roles police personnel will play when the plan is implemented.

## 202.4  UPDATING OF MANUALS

The Chief of Police or designee shall review the Emergency Management Plan Manual at least once every two years to ensure that the manual conforms to any revisions made by the National Incident Management System (NIMS) and the Standardized Emergency Management System (SEMS) and should appropriately address any needed revisions.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Training Policy

### 203.1  PURPOSE AND SCOPE

It is the policy of this Department to administer a training program that will provide for the professional growth and continued development of its personnel. Additionally, training of personnel within the Department will meet statutory requirements and the requirements established by the California Commission on Peace Officer Standards and Training (POST). By doing so, the Department will ensure its personnel possess the knowledge and skills necessary to provide a professional level of service that meets the needs of the community.

### 203.2  PHILOSOPHY

The Department seeks to provide ongoing training and encourages all personnel to participate in advanced training and formal education on a continual basis. Training is provided within the confines of funding, requirements of a given assignment, staffing levels, and legal mandates. Whenever possible, the Department will use courses certified by POST.

### 203.3  OBJECTIVES

The objectives of the Training Program are to:

(a)  Enhance the level of law enforcement service to the public.

(b)  Increase the technical expertise and overall effectiveness of our personnel.

(c)  Provide for continued professional development of department personnel.

### 203.4  TRAINING MANAGER

The Training Manager shall be assigned to the Administrative Services Division under the immediate supervision of the Administrative Services Lieutenant.The Training Manager will be at minimum the rank of Police Sergeant. The Administrative Services Lieutenant will annually review and evaluate the performance of the Training Manager to assure effective performance and achievement of goals. A Department Master Training Plan will be developed and maintained by the Training Sergeant. It is the responsibility of the Training Sergeant to maintain, review, and update the training plan on an annual basis. The plan will address the following areas:

(a)  Identification of Departmental training needs.

(b)  Approval of in-house training programs.

(c)  Scheduling, coordination, and evaluation of training programs.

(d)  Maintain the Department's training records, training budget, calendar, Department Training Bulletin, and training materials.

(e)  Coordinate all other Departmental training as needed and evaluate the quality of training courses.

(f)  Participate in local, regional and state training officers associations.  Act as the Department liaison with the POST Commission, CPOA, LETMA, local colleges, City

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

## Redding Police Department

RPD Policy Manual

---

*Training Policy*

personnel department as it relates to training, and any other associations identified by Command Staff.

(g) Meet with Department managers and supervisors to update training goals and objectives for each Division.

### 203.5   TRAINING NEEDS ASSESSMENT

The Training Manager will develop and maintain the Department Master Training Plan. The Training Manager will be responsible for working with the Management Analyst to ensure the annual training budget is appropriate and followed.

Training will be conducted in accordance with all statutory mandates, POST requirements, and Departmental needs.  Additionally, programs will be scheduled as needed for the effective performance of identified needs and/or proposed assignments.

At the request of the Chief of Police or designee, the Training Manager shall attend staff critiques whenever officer training may be a factor.

### 203.6   TRAINING PROCEDURES

(a) All employees assigned to attend training shall attend as scheduled unless previously excused by their immediate supervisor. Excused absences from mandatory training should be limited to the following:

1. Court appearances,

2. First choice vacation,

3. Sick leave,

4. Physical limitations preventing the employee's participation,

5. Emergency situations.

(b) When an employee is unable to attend mandatory training, that employee shall:

1. Notify his/her supervisor as soon as possible but no later than one hour prior to the start of training.

2. Document his/her absence in a memorandum to his/her supervisor.

3. Make arrangements through his/her supervisor and the Training Sergeant to attend the required training on an alternate date.

### 203.7   DAILY TRAINING BULLETINS

The Lexipol Daily Training Bulletins (DTBs) is a web-accessed system that provides training on the Redding Police Department Policy Manual and other important topics. Generally, one training bulletin is available for each day of the month. However, the number of DTBs may be adjusted by the Training Sergeant.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000495

# Redding Police Department

RPD Policy Manual

## *Training Policy*

Personnel assigned to participate in DTBs should only use the password and login name assigned to them by the Training Sergeant. Personnel should not share their password with others and should frequently change their password to protect the security of the system. After each session, employees should log off the system to prevent unauthorized access. The content of the DTBs is copyrighted material and shall not be shared with others outside of the Department.

Employees who are assigned to participate in the DTB program should complete each DTB at the beginning of their shift or as otherwise directed by their supervisor. Employees should not allow uncompleted DTBs to build up over time. Personnel may be required to complete DTBs missed during extended absences (e.g., vacation, medical leave) upon returning to duty. Although the DTB system can be accessed from any Internet active computer, employees shall only take DTBs as part of their on-duty assignment unless directed otherwise by a supervisor.

Supervisors will be responsible for monitoring the progress of personnel under their command to ensure compliance with this policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000496

# Electronic Mail and Department Phones

### 204.1   PURPOSE AND SCOPE

The purpose of this policy is to establish guidelines for the proper use and application of the Department's electronic mail (email) system and Department phones by employees of this department.

All employees are issued an email account upon appointment and shall be checked at least once per shift. This includes opening the email account and reviewing each email sent to the employee.

Email is a communication tool available to employees to enhance efficiency in the performance of job duties and is to be used in accordance with generally accepted business practices and current law (e.g., California Public Records Act). Messages transmitted over the email system must only be those that involve official business activities or contain information essential to employees for the accomplishment of business-related tasks and/or communication directly related to the business, administration, or practices of the Department.

All sworn officers and community service officers are issued a phone number and voice mailbox upon appointment. Phone numbers will be printed on Department business cards. Employees with voice mail shall check their voicemail messages at least once per shift. Voicemail can be configured to send voice mail messages to Department email. Employees should not make personal calls outside of the local area.

### 204.2   EMAIL RIGHT OF PRIVACY

All email messages, including any attachments, that are transmitted over department networks are considered department records and therefore are Department property. The Department reserves the right to access, audit or disclose, for any lawful reason, any message including any attachment that is transmitted over its email system or that is stored on any department system.

The email system is not a confidential system since all communications transmitted on, to or from the system are the property of the Department. Therefore, the email system is not appropriate for confidential communications. If a communication must be private, an alternative method to communicate the message should be used instead of email. Employees using the Department's email system shall have no expectation of privacy concerning communications utilizing the system.

Employees should not use personal accounts to exchange email or other information that is related to the official business of the Department.

### 204.3   PROHIBITED USE OF EMAIL

Sending derogatory, defamatory, obscene, disrespectful, sexually suggestive and harassing or any other inappropriate messages on the email system is prohibited and may result in discipline.

Email messages addressed to the entire department are only to be used for official business related items that are of particular interest to all users. In most cases, personal advertisements are not acceptable.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000497

# Redding Police Department

RPD Policy Manual

## *Electronic Mail and Department Phones*

It is a violation of this policy to transmit a message under another user's name. Users are strongly encouraged to log off the network when their computer is unattended. This added security measure would minimize the misuse of an individual's email, name and/or password by others.

### 204.4   EMAIL RECORD MANAGEMENT

Email may, depending upon the individual content, be a public record under the California Public Records Act and must be managed in accordance with the established records retention schedule and in compliance with state law.

The Custodian of Records shall ensure that email messages are retained and recoverable as outlined in the Records Maintenance and Release Policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000498

# Administrative Communications

### 205.1  PURPOSE AND SCOPE
Administrative communications of this department are governed by the following policies.

### 205.2  PERSONNEL ORDERS
Personnel Orders may be issued periodically by the Chief of Police, or designee, to announce and document all promotions, transfers, hiring of new personnel, separations, personnel and group commendations, or other changes in status.

### 205.3  CORRESPONDENCE
In order to ensure that the letterhead and name of the Department are not misused, all external correspondence shall be on Department letterhead. All Department letterhead shall bear the signature element of the Chief of Police. Personnel should use Department letterhead only for official businessr.

### 205.4  SURVEYS
All surveys made in the name of the Department shall be authorized by the Chief of Police or a Division Commander.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000499

# Staffing Levels

## 206.1  PURPOSE AND SCOPE

The purpose of this policy is to ensure that proper supervision is available for all shifts. The Department intends to balance the employee's needs against the need to have flexibility and discretion in using personnel to meet operational needs. While balance is desirable, the paramount concern is the need to meet operational requirements of the Department.

## 206.2  MINIMUM STAFFING LEVELS

Minimum staffing levels are set by the Field Operations Division Commander. Minimum staffing levels should result in the scheduling of one supervisor on duty whenever possible. Watch Commanders will ensure that at least one field supervisor is deployed during each watch.

### 206.2.1  SUPERVISION DEPLOYMENTS

In the case of an emergency or exigent circumstances, the senior patrol officer may be upgraded to field supervisor with the approval of a Watch Commander.

### 206.2.2  DEPLOYMENT OF THE TRAFFIC UNIT

Police officers assigned to the Traffic Unit shall be dedicated to traffic law enforcement, except in the following situations:

(a)   A criminal offense committed in the officer's presence.

(b)   Traffic accident investigation.

(c)   Requests for backup by officer(s).

(d)   Priority Code calls when the field officer is unavailable. Traffic officers assigned as a primary unit to these calls will be considered the primary handling officer.

(e)   Traffic unit officers may be utilized to maintain shift minimums in the event of a loss of manpower through illness, schools, emergency leave, planned vacations, or as directed by the Chief of Police.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000500

# License to Carry a Firearm

## 207.1  PURPOSE AND SCOPE
The Chief of Police is given the statutory discretion to issue a license to carry a firearm to residents within the community (Penal Code § 26150; Penal Code § 26155). This policy will provide a written process for the application and issuance of such licenses. Pursuant to Penal Code § 26160, this policy shall be made accessible to the public.

### 207.1.1  APPLICATION OF POLICY

Nothing in this policy shall preclude the Chief or other head of the Redding Police Department from entering into an agreement with the Sheriff of Shasta County to process all applications and license renewals for the carrying of concealed weapons (Penal Code § 26150; Penal Code § 26155).

## 207.2  POLICY
All requests for issuance of an initial or renewal of concealed weapons permit will be referred to the Shasta County Sheriff's Office.

    (a)    The Shasta County Sheriff's Office currently has policy and procedures for issuing CCW permits. In the event the Shasta County Sheriff's Office modifies their policy and no longer issues CCW permits, the Redding Police Department reserves the right to re-instate their CCW permit process for residents of the City of Redding.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000501

# Retiree Concealed Firearms

## 208.1  PURPOSE AND SCOPE

The purpose of this policy is to provide guidelines for the issuance, denial, suspension or revocation of Redding Police Department identification cards under the Law Enforcement Officers' Safety Act (LEOSA) and California law (18 USC § 926C;  Penal Code § 25455).

## 208.2  POLICY

It is the policy of the Redding Police Department to provide identification cards to qualified former or retired officers as provided in this policy.

## 208.3  LEOSA

The Chief of Police may issue an identification card for LEOSA purposes to any qualified former officer of this Department who (18 USC § 926C(c)):

(a)  Separated from service in good standing from this Department as an officer.

(b)  Before such separation, had regular employment as a law enforcement officer for an aggregate of 10 years or more or, if employed as a law enforcement officer for less than 10 years, separated from service after completing any applicable probationary period due to a service-connected disability as determined by this Department.

(c)  Has not been disqualified for reasons related to mental health.

(d)  Has not entered into an agreement with this Department where the officer acknowledges that he/she is not qualified to receive a firearm qualification certificate for reasons related to mental health.

(e)  Is not prohibited by federal law from receiving or possessing a firearm.

### 208.3.1  LEOSA IDENTIFICATION CARD FORMAT

The LEOSA identification card should contain a photograph of the former officer and identify him/her as having been employed as an officer.

If the Redding Police Department qualifies the former officer, the LEOSA identification card or separate certification should indicate the date the former officer was tested or otherwise found by the Department to meet the active duty standards for qualification to carry a firearm.

### 208.3.2  AUTHORIZATION

Any qualified former law enforcement officer, including a former officer of this Department, may carry a concealed firearm under 18 USC § 926C when he/she is:

(a)  In possession of photographic identification that identifies him/her as having been employed as a law enforcement officer and one of the following:

1.  An indication from the person's former law enforcement agency that he/she has, within the past year, been tested or otherwise found by the law enforcement

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000502

*Retiree Concealed Firearms*

agency to meet agency-established active duty standards for qualification in firearms training to carry a firearm of the same type as the concealed firearm.

2.   A certification, issued by either the state in which the person resides or by a certified firearms instructor who is qualified to conduct a firearms qualification test for active duty law enforcement officers within that state, indicating that the person has, within the past year, been tested or otherwise found to meet the standards established by the state or, if not applicable, the standards of any agency in that state.

(b)   Not under the influence of alcohol or another intoxicating or hallucinatory drug or substance.

(c)   Not prohibited by federal law from receiving a firearm.

(d)   Not in a location prohibited by California law or by a private person or entity on his/her property if such prohibition is permitted by California law.

Honorably retired Redding Police Department officers who reside out of jurisdiction may elect to demonstrate proficiency with their firearm(s) at their own expense at the jurisdiction in which they now reside. The retired officer shall provide the Redding Police Department with a signed letter from a law enforcement agency stating the retired officer demonstrated proficiency with the firearm(s). Upon receipt of the letter, the retired officer's CCW endorsement shall remain in effect.

## 208.4   CALIFORNIA IDENTIFICATION CARD ISSUANCE

Any full-time sworn officer of this Department who was authorized to, and did, carry a concealed firearm during the course and scope of his/her employment shall be issued an identification card with a Carrying Concealed Weapon endorsement, "CCW Approved," upon honorable retirement (Penal Code § 25455).

(a)   For the purpose of this policy, honorably retired includes all peace officers who have qualified for, and accepted, a service or disability retirement. It shall not include any officer who retires in lieu of termination.

(b)   No CCW Approved endorsement shall be issued to any officer retiring because of a psychological disability (Penal Code § 26305).

### 208.4.1   CALIFORNIA IDENTIFICATION CARD FORMAT

The identification card issued to any qualified and honorably retired officer shall be 2 inches by 3 inches, and minimally contain (Penal Code § 25460):

(a)   A photograph of the retiree.

(b)   The retiree's name and date of birth.

(c)   The date of retirement.

(d)   The name and address of this Department.

(e)   A stamped CCW Approved endorsement along with the date by which the endorsement must be renewed (not more than one year). If a CCW endorsement has been denied or revoked, the identification card shall be stamped "No CCW Privilege."

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000503

# Redding Police Department

RPD Policy Manual

*Retiree Concealed Firearms*

## 208.4.2   QUALIFIED RETIREES FROM INCORPORATED JURISDICTION

The Redding Police Department shall provide an identification card with a CCW Approved endorsement to honorably retired peace officers from any jurisdiction that this Department now serves under the following conditions (Penal Code § 25905):

(a)   The retiree's previous agency is no longer providing law enforcement services or the relevant government body is dissolved.

(b)   This Department is in possession of the retiree's complete personnel record or can verify the retiree's honorably retired status.

(c)   The retiree is in compliance with all of the requirements of this Department for the issuance of a CCW Approved endorsement.

## 208.4.3   QUALIFIED RETIRED RESERVES

Qualified retired reserve officers who meet the Department requirements shall be provided an identification card with a CCW Approved endorsement (Penal Code § 26300).

## 208.5   FORMER OFFICER RESPONSIBILITIES

A former officer with a card issued under this policy shall immediately notify the Watch Commander of his/her arrest or conviction in any jurisdiction, or that he/she is the subject of a court order, in accordance with the Reporting of Employee Convictions policy.

## 208.5.1   RESPONSIBILITIES UNDER LEOSA

In order to obtain or retain a LEOSA identification card, the former officer shall:

(a)   Sign a waiver of liability of the Department for all acts taken related to carrying a concealed firearm, acknowledging both his/her personal responsibility as a private person for all acts taken when carrying a concealed firearm as permitted by LEOSA and also that these acts were not taken as an employee or former employee of the Department.

(b)   Remain subject to all applicable Department policies and federal, state and local laws.

(c)   Demonstrate good judgment and character commensurate with carrying a loaded and concealed firearm.

(d)   Successfully pass an annual criminal history background check indicating that he/she is not prohibited by law from receiving or possessing a firearm.

## 208.5.2   MAINTAINING A CALIFORNIA IDENTIFICATION CARD CCW ENDORSEMENT

In order to maintain a CCW Approved endorsement on an identification card issued under California law, the retired officer shall (Penal Code § 26305):

(a)   Qualify annually with the authorized firearm at a course approved by this department at the retired officer's expense.

(b)   Remain subject to all applicable department policies and federal, state and local laws.

(c)   Not engage in conduct that compromises public safety.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

## Redding Police Department
RPD Policy Manual

*Retiree Concealed Firearms*

(d)   Only be authorized to carry a concealed firearm inspected and approved by the Department.

## 208.6   DENIAL, SUSPENSION OR REVOCATION OF A LEOSA IDENTIFICATION CARD

A LEOSA identification card may be denied or revoked upon a showing of good cause as determined by the Department. In the event that an identification card is denied, suspended or revoked, the former officer may request a review by the Chief of Police. The decision of the Chief of Police is final.

## 208.7   DENIAL, SUSPENSION OR REVOCATION OF A CALIFORNIA CCW ENDORSEMENT CARD

A CCW endorsement under Penal Code § 25470 for any officer retired from this Department may be denied or revoked only upon a showing of good cause. The CCW endorsement may be immediately and temporarily revoked by the Watch Commander when the conduct of a retired peace officer compromises public safety.

(a)   In the event that a CCW endorsement is initially denied, the retired officer shall have 15 days from the date of denial to request a formal hearing. The failure to submit a timely written request for a hearing shall be deemed a waiver of such right. The hearing, absent written agreement between the parties, shall be held no later than 120 days after the request is received.

(b)   Prior to revocation of any CCW endorsement, the Department shall provide the affected retiree with written notice of a hearing by either personal service or first class mail, postage prepaid, return receipt requested to the retiree's last known address (Penal Code § 26315).

   1.   The retiree shall have 15 days from the date of service to file a written request for a hearing.

   2.   The hearing, absent written agreement between the parties, shall be held no later than 120 days after the request is received (Penal Code § 26315).

   3.   The failure to submit a timely written request for a hearing shall be deemed a waiver of such right.

(c)   A hearing for the denial or revocation of any CCW endorsement shall be conducted before a hearing board composed of three members, one selected by the Department, one selected by the retiree or his/her employee organization and one selected jointly (Penal Code § 26320).

   1.   The decision of such hearing board shall be binding on the Department and the retiree.

   2.   Any retiree who waives the right to a hearing or whose CCW endorsement has been revoked at a hearing shall immediately surrender his/her identification card. The Department will then reissue a new identification card which shall be stamped "No CCW Privilege."

(d)   Members who have reason to suspect the conduct of a retiree has compromised public safety shall notify the Watch Commander as soon as practicable. The Watch

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000505

# Redding Police Department

RPD Policy Manual

*Retiree Concealed Firearms*

Commander should promptly take appropriate steps to look into the matter and, if warranted, contact the retiree in person and advise him/her of the temporary suspension and hearing information listed below.

1. Notification of the temporary suspension should also be promptly mailed to the retiree via first class mail, postage prepaid, return receipt requested (Penal Code § 26312).

2. The Watch Commander should document the investigation, the actions taken and, if applicable, any notification made to the retiree. The memo should be forwarded to the Chief of Police.

3. The personal and written notification should be as follows:

   (a) The retiree's CCW endorsement is immediately and temporarily suspended.

   (b) The retiree has 15 days to request a hearing to determine whether the temporary suspension should become permanent revocation.

   (c) The retiree will forfeit his/her right to a hearing and the CCW endorsement will be permanently revoked if the retiree fails to respond to the notice of hearing within the 15-day period.

4. In the event that personal contact with the retiree cannot be reasonably achieved in a timely manner, the Watch Commander should attempt to make the above notice of temporary suspension through another law enforcement officer. For example, if a retiree was arrested or detained by a distant agency, the Watch Commander may request that a law enforcement officer from that agency act as the agent of the Department to deliver the written notification.

## 208.8   FIREARM QUALIFICATIONS

The Rangemaster may provide former officers from this department an opportunity to qualify. Written evidence of the qualification and the weapons used will be provided and will contain the date of the qualification. The Rangemaster will maintain a record of the qualifications and weapons used.

   (a) Upon successful qualification, the rangemaster will initial and date the retired officer's Range Qualification pocket card.

   (b) The range qualification pocket card shall be carried along with the retiree's identification card whenever the retiree is carrying his CCW.

The Administrative Division shall be responsible for maintaining a list of retired officers who qualify on an annual basis to maintain CCW status pursuant to Federal Code 18 USC, 926C.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000506

# Administrative Leave

### 209.1  PURPOSE AND SCOPE
The purpose of this policy is to define the procedures when an employee has been placed on Administrative Leave.

### 209.2  ADMINISTRATIVE LEAVE
In the event an employee is temporarily placed on Administrative Leave their work days and hours shall be changed to Monday through Friday, 8:00 a.m. to 5:00 p.m. In addition, the employee shall remain available and on call with a maximum one-hour response time during indicated hours of Administrative Leave. Non-disciplinary Administrative Leave will not effect an employees shift differential.

Administrative Leave is designed to ensure employees are available during a normal work week to conduct city-related business. This would include but is not limited to, required appointments, court, interviews, medical appointments, and critical incident stress debriefings.

In some instances, when an employee is placed on Administrative Leave as a result of an Internal Affairs investigation, their duties as a peace officer may be temporarily suspended until the investigation is completed. The employee's badge, identification card, and firearm will be retained by the Department. Additionally, the employee will refrain from acting in an official capacity.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000507

Redding Police Department

RPD Policy Manual

# Chapter 3 - General Operations

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Redding Police Department**
RPD Policy Manual

# Use of Force

## 300.1  PURPOSE AND SCOPE
This policy provides guidelines on the reasonable use of force. While there is no way to specify the exact amount or type of reasonable force to be applied in any situation, every member of this Department is expected to use these guidelines to make such decisions in a professional, impartial and reasonable manner(Government Code § 7286).

In addition to those methods, techniques, and tools set forth below, the guidelines for the reasonable application of force contained in this policy shall apply to all policies addressing the potential use of force, including but not limited to the Control Devices and Techniques (302) and Conducted Energy Device (303) policies.

### 300.1.1   DEFINITIONS
Definitions related to this policy include:

**Deadly force** - Any use of force that creates a substantial risk of causing death or serious bodily injury, including but not limited to the discharge of a firearm (Penal Code § 835a).

**Feasible** - Reasonably capable of being done or carried out under the circumstances to successfully achieve the arrest or lawful objective without increasing risk to the officer or another person (Government Code § 7286(a)).

**Force** - The application of physical techniques or tactics, chemical agents, or weapons to another person. It is not a use of force when a person allows him/herself to be searched, escorted, handcuffed, or restrained.

**Serious bodily injury** - A serious impairment of physical condition, including but not limited to the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement (Penal Code § 243(f)(4)).

**Totality of the circumstances** - All facts known to the officer at the time, including the conduct of the officer and the subject leading up to the use of force (Penal Code § 835a).

## 300.2  POLICY
The use of force by law enforcement personnel is a matter of critical concern, both to the public and to the law enforcement community. Officers are involved on a daily basis in numerous and varied interactions and, when warranted, may use reasonable force in carrying out their duties.

Officers must have an understanding of, and true appreciation for, their authority and limitations. This is especially true with respect to overcoming resistance while engaged in the performance of law enforcement duties.

The Department recognizes and respects the value of all human life and dignity without prejudice to anyone. Vesting officers with the authority to use reasonable force and to protect the public welfare requires monitoring, evaluation and a careful balancing of all interests.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000509

# Redding Police Department

RPD Policy Manual

*Use of Force*

### 300.2.1   DUTY TO INTERCEDE

Any officer present and observing another law enforcement officer or an employee using force that is clearly beyond that which is necessary, as determined by an objectively reasonable officer under the circumstances, shall, when in a position to do so, intercede to prevent the use of unreasonable force.

When observing force used by a law enforcement officer, each officer should take into account the totality of the circumstances and the possibility that other law enforcement officers may have additional information regarding the threat posed by the subject (Government Code § 7286(b)).

### 300.2.2   FAIR AND UNBIASED USE OF FORCE

Officers are expected to carry out their duties, including the use of force, in a manner that is fair and unbiased (Government Code § 7286(b)). See the Bias-Based Policing Policy for additional guidance.

### 300.2.3   DUTY TO REPORT EXCESSIVE FORCE

Any officer who observes a law enforcement officer or an employee use force that potentially exceeds what the officer reasonably believes to be necessary shall promptly report these observations to a supervisor as soon as feasible (Government Code § 7286(b)).

### 300.3   USE OF FORCE

Officers shall use only that amount of force that reasonably appears necessary given the facts and totality of the circumstances known to or perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose (Penal Code § 835a).

The reasonableness of force will be judged from the perspective of a reasonable officer on the scene at the time of the incident. Any evaluation of reasonableness must allow for the fact that officers are often forced to make split-second decisions about the amount of force that reasonably appears necessary in a particular situation, with limited information and in circumstances that are tense, uncertain, and rapidly evolving.

Given that no policy can realistically predict every possible situation an officer might encounter, officers are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident. Officers may only use a level of force that they reasonably believe is proportional to the seriousness of the suspected offense or the reasonably perceived level of actual or threatened resistance (Government Code § 7286(b)).

It is also recognized that circumstances may arise in which officers reasonably believe that it would be impractical or ineffective to use any of the approved tools, weapons, or methods provided by the Department. Officers may find it more effective or reasonable to improvise their response to rapidly unfolding conditions that they are confronting. In such circumstances, the use of any improvised device or method must nonetheless be objectively reasonable and utilized only to the degree that reasonably appears necessary to accomplish a legitimate law enforcement purpose.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000510

# Redding Police Department
RPD Policy Manual

## Use of Force

While the ultimate objective of every law enforcement encounter is to avoid or minimize injury, nothing in this policy requires an officer to retreat or be exposed to possible physical injury before applying reasonable force.

### 300.3.1   USE OF FORCE TO EFFECT AN ARREST
Any peace officer may use objectively reasonable force to effect an arrest, to prevent escape, or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his/her efforts by reason of resistance or threatened resistance on the part of the person being arrested; nor shall an officer be deemed the aggressor or lose his/her right to self-defense by the use of reasonable force to effect the arrest, prevent escape, or to overcome resistance. Retreat does not mean tactical repositioning or other de-escalation techniques (Penal Code § 835a).

### 300.3.2   FACTORS USED TO DETERMINE THE REASONABLENESS OF FORCE
When determining whether to apply force and evaluating whether an officer has used reasonable force, a number of factors should be taken into consideration, as time and circumstances permit (Government Code § 7286(b)). These factors include but are not limited to:

(a)   The apparent immediacy and severity of the threat to officers or others (Penal Code § 835a).

(b)   The conduct of the individual leading up to and while being confronted, as reasonably perceived by the officer at the time (Penal Code § 835a).

(c)   Officer/subject factors (age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, the number of officers available vs. subjects).

(d)   The conduct of the involvedofficer leading up the to the use of force (Penal Code § 835a).

(e)   The effects of suspected drugs or alcohol.

(f)   The individual's apparent mental state or capacity (Penal Code § 835a).

(g)   The individual's apparent ability to understand and comply with officer commands (Penal Code § 835a).

(h)   Proximity of weapons or dangerous improvised devices.

(i)   The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.

(j)   The availability of other reasonable and feasible options and their possible effectiveness (Penal Code § 835a).

(k)   Seriousness of the suspected offense or reason for contact with the individual prior to and at the time force is used.

(l)   Training and experience of the officer.

(m)   Potential for injury to officers, suspects, bystanders, and others.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000511

# Redding Police Department

RPD Policy Manual

*Use of Force*

    (n)    Whether the person appears to be resisting, attempting to evade arrest by flight, or is attacking the officer.

    (o)    The risk and reasonably foreseeable consequences of escape.

    (p)    The apparent need for immediate control of the subject or a prompt resolution of the situation.

    (q)    Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others.

    (r)    Prior contacts with the subject or awareness of any propensity for violence.

    (s)    Any other exigent circumstances.

## 300.3.3   PAIN COMPLIANCE TECHNIQUES

Pain compliance techniques may be effective in controlling a physically or actively resisting individual. Officers may only apply those pain compliance techniques for which they have successfully completed Department-approved training. Officers utilizing any pain compliance technique should consider:

    (a)    The degree to which the application of the technique may be controlled given the level of resistance.

    (b)    Whether the person can comply with the direction or orders of the officer.

    (c)    Whether the person has been given sufficient opportunity to comply.

The application of any pain compliance technique shall be discontinued once the officer determines that compliance has been achieved.

## 300.3.4   CAROTID CONTROL HOLD

A carotid control hold is a technique designed to control an individual by temporarily restricting blood flow through the application of pressure to the side of the neck and, unlike a chokehold, does not restrict the airway. The proper application of the carotid control hold may be effective in restraining a violent or combative individual. However, due to the potential for injury, the use of the carotid control hold is subject to the following:

    (a)    The officer shall have successfully completed Department-approved training in the use and application of the carotid control hold.

    (b)    The carotid control hold may only be used when circumstances perceived by the officer at the time indicate that such application reasonably appears necessary to control an individual in any of the following circumstances:

        1.    Theindividual is violent or physically resisting.

        2.    The individual, by words or actions, has demonstrated an intention to be violent and reasonably appears to have the potential to harm him/herself or others.

    (c)    At all times during the  application of a carotid control hold the response of the individual should be monitored. The carotid control hold should be discontinued when circumstances indicate that the application of the technique was successful or resistance has stopped.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000512

# Redding Police Department
RPD Policy Manual

*Use of Force*

(d)   Any individual who has had the carotid control hold applied, regardless of whether he/ she was rendered unconscious, shall be promptly taken to a hospital for a medical clearance.

(e)   The officer shall inform any person receiving custody, or any person placed in a position of providing care, that the individual has been subjected to the carotid control hold and whether the individual lost consciousness as a result.

(f)   Any officer attempting or applying the carotid control hold shall promptly notify a supervisor of the use or attempted use of such hold.

(g)   The use or attempted use of the carotid control hold shall be thoroughly documented by the officer in any related reports.

## 300.3.5   USE OF FORCE TO SEIZE EVIDENCE
In general, officers may use reasonable force to lawfully seize evidence and to prevent the destruction of evidence. However, officers are discouraged from using force solely to prevent a person from swallowing evidence or contraband. In the instance when force is used, officers should not intentionally use any technique that restricts blood flow to the head, restricts respiration or which creates a reasonable likelihood that blood flow to the head or respiration would be restricted. Officers are encouraged to use techniques and methods taught by the Redding Police Department for this specific purpose.

## 300.3.6   ALTERNATIVE TACTICS - DE-ESCALATION
As time and circumstances reasonably permit, and when community and officer safety would not be compromised, [officers_deputies] should consider actions that may increase officer safety and may decrease the need for using force:

(a)   Summoning additional resources that are able to respond in a reasonably timely manner.

(b)   Formulating a plan with responding officers before entering an unstable situation that does not reasonably appear to require immediate intervention.

(c)   Employing other tactics that do not unreasonably increase officer jeopardy.

In addition, when reasonable, officers should evaluate the totality of circumstances presented at the time in each situation and, when feasible, consider and utilize reasonably available alternative tactics and techniques that may persuade an individual to voluntarily comply or may mitigate the need to use a higher level of force to resolve the situation before applying force (Government Code § 7286(b)(1)). Such alternatives may include but are not limited to:

(a)   Attempts to de-escalate a situation.

(b)   If reasonably available, the use of crisis intervention techniques by properly trained personnel.

## 300.4   DEADLY FORCE APPLICATIONS
Where feasible, the officer shall, prior to the use of deadly force, make reasonable efforts to identify him/herself as a peace officer and to warn that deadly force may be used, unless the officer has

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000513

# Redding Police Department

RPD Policy Manual

*Use of Force*

objectively reasonable grounds to believe the person is aware of those facts (Penal Code 835a(5) (c)(1)(B)).

If an objectively reasonable officer would consider it safe and feasible to do so under the totality of the circumstances, officers should evaluate the use of other reasonably available resources and techniques when determining whether to use deadly force. To the extent that it is reasonably practical, officers should consider their surroundings and any potential risks to bystanders prior to discharging a firearm (Government Code § 7286(b); Government Code § 7286(b)).

The use of deadly force is only justified when the officer reasonably believes it is necessary in the following circumstances (Penal Code § 835a):

    (a)    An officer may use deadly force to protect him/herself or others from what he/she reasonably believes is an imminent threat of death or serious bodily injury to the officer or another person.

    (b)    An officer may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended.

Officers shall not use deadly force against a person based on the danger that person poses to him/herself, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the officer or to another person (Penal Code § 835a).

An "imminent" threat of death or serious bodily injury exists when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the officer or another person. An officer's subjective fear of future harm alone is insufficient as an imminent threat. An imminent threat is one that from appearances is reasonably believed to require instant attention (Penal Code § 835a).

## 300.4.1   SHOOTING AT OR FROM MOVING VEHICLES

Shots fired at or from a moving vehicle are rarely effective  and may involve additional considerations and risks. When feasible, officers should take reasonable steps to moveout of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others (Government Code § 7286(b)).

Officers should not shoot at any part of a vehicle in an attempt to disable the vehicle.

## 300.4.2   DISPLAYING OF FIREARMS

Given that individuals might perceive the display of a firearm as a potential application of force, officers should carefully evaluate each tactical situation and use sound discretion when drawing a firearm in public by considering the following guidelines (Government Code § 7286(b)):

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000514

# Redding Police Department

RPD Policy Manual

*Use of Force*

(a) If the officer does not initially perceive a threat but reasonably believes that the potential for such threat exists, firearms should generally be kept in the low-ready or other position not directed toward an individual.

(b) If the officer reasonably believes that a threat exists based on the totality of circumstances presented at the time (e.g., high-risk stop, tactical entry, armed encounter), firearms may be directed toward such imminent threat until the officer no longer perceives such threat.

Once it is reasonably safe to do so, officers should carefully secure all firearms.

## 300.5   REPORTING THE USE OF FORCE

Any use of force by a member of this Department shall be documented promptly, completely and accurately in an appropriate report, depending on the nature of the incident. The officer should articulate the factors perceived and why he/she believed the use of force was reasonable under the circumstances. To collect data for purposes of training, resource allocation, analysis, and related purposes, the Department may require the completion of additional report forms, as specified in Department policy, procedure or law.

### 300.5.1   NOTIFICATION TO SUPERVISORS

Employees shall notify a supervisor anytime they use a reportable use of force. A reportable use of force is any use of force against a person where any of the following apply:

(a) The use of force involves:

    (a) The discharge of a firearm

    (b) A canine bite

    (c) The use of an impact weapon

    (d) The use of a chemical agent

    (e) The use of the Carotid Restraint Control Hold

    (f) Any use of a TASER

    (g) Use of personal body weapons (hands, feet, knees, elbows or other body parts) as an impact weapon.

    (h) The use of leg restraints and/or a spit hood.

    (i) The use of an improvised weapon (i.e. Flashlight, etc.).

(b) An officer's actions (i.e. control hold, take-down, etc.) causes injury.

    (a) For the purpose of determining if a use of force is reportable, an injury is defined as any visible bodily injury or complaint of bodily injury (non-visible injury). The injury must be reasonably related to the use of force applied. The temporary pain associated with the proper application of  control holds and/or restraints is not an injury for purposes of determining if a use of force is reportable.

(c) An individual alleges any of the above have occurred.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000515

# Redding Police Department
RPD Policy Manual

*Use of Force*

---

### 300.5.2   REPORTING TO CALIFORNIA DEPARTMENT OF JUSTICE

Statistical data regarding all officer-involved shootings and incidents involving use of force resulting in serious bodily injury is to be reported to the California Department of Justice as required by Government Code § 12525.2. See the Records Division policy.

### 300.6   MEDICAL CONSIDERATION

Once it is reasonably safe to do so, properly trained officers should promptly provide or procure medical assistance for any person injured or claiming to have been injured in a use of force incident (Government Code § 7286(b)).

Prior to booking or release, medical assistance shall be obtained for any person who exhibits signs of physical distress, who has sustained visible injury, expresses a complaint of injury or continuing pain, or who was rendered unconscious. Any individual exhibiting signs of physical distress after an encounter should be continuously monitored until he/she can be medically assessed.

Based upon the officer's initial assessment of the nature and extent of the subject's injuries, medical assistance may consist of examination by fire personnel, paramedics, hospital staff or medical staff at the jail. If any such individual refuses medical attention, such a refusal shall be fully documented in related reports and, whenever practicable, should be witnessed by another officer and/or medical personnel. If a recording is made of the contact or an interview with the individual, any refusal should be included in the recording, if possible.

The on-scene supervisor or, if the on-scene supervisor is not available, the primary handling officer shall ensure that any person providing medical care or receiving custody of a person following any use of force is informed that the person was subjected to force. This notification shall include a description of the force used and any other circumstances the officer reasonably believes would be potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration).

Persons who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics and imperviousness to pain (sometimes called "excited delirium"), or who require a protracted physical encounter with multiple officers to be brought under control, may be at an increased risk of sudden death. Calls involving these persons should be considered medical emergencies. Officers who reasonably suspect a medical emergency should request medical assistance as soon as practicable and have medical personnel stage away if appropriate.

### 300.7   SUPERVISOR RESPONSIBILITY

A supervisor should respond to any reported use of force, if reasonably available. The responding supervisor is expected to (Government Code § 7286(b)):

    (a)    Obtain the basic facts from the involved officers. Absent an allegation of misconduct or excessive force, this will be considered a routine contact in the normal course of duties.

    (b)    Ensure that any injured parties are examined and treated.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000516

# Redding Police Department
RPD Policy Manual

*Use of Force*

(c)    When the use of force results in serious bodily injury or there is evidence of excessive force, separately obtain a recorded interview with the subject upon whom force was applied. If this interview is conducted without the person having voluntarily waived his/her *Miranda* rights, the following shall apply:

    1.    The content of the interview should not be summarized or included in any related criminal charges.

    2.    The fact that a recorded interview was conducted should be documented in a property or other report.

    3.    The recording of the interview should be distinctly marked for retention until all potential for civil litigation has expired.

(d)    Once any initial medical assessment has been completed or first aid has been rendered, ensure that photographs have been taken of any areas involving visible injury or complaint of pain, as well as overall photographs of uninjured areas. These photographs should be retained until all potential for civil litigation has expired.

(e)    Identify any witnesses not already included in related reports.

(f)    Review and approve all related reports.

(g)    Determine if there is any indication that the subject may pursue civil litigation.

    1.    If there is an indication of potential civil litigation, the supervisor should complete and route a notification of a potential claim through the appropriate channels.

(h)    Evaluate the circumstances surrounding the incident and initiate an administrative investigation if there is a question of policy non-compliance or if for any reason further investigation may be appropriate.

In the event that a supervisor is unable to respond to the scene of an incident involving the reported application of force, the supervisor is still expected to complete as many of the above items as circumstances permit.

In all instances when a supervisor receives a reported application of force, the supervisor will document the incident utilizing the Blue Team system.

## 300.7.1   WATCH COMMANDER RESPONSIBILITY
The Watch Commander shall review, via Blue Team, each use of force by any personnel within his/her command to ensure compliance with this policy and to address any training issues.

## 300.8   TRAINING

Officers, investigators, and supervisors will receive periodic training on this policy and demonstrate their knowledge and understanding (Government Code § 7286(b)).

Subject to available resources, the Training Sergeant should ensure that officers receive periodic training on de-escalation tactics, including alternatives to force.

Training should also include (Government Code § 7286(b)):

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000517

# Redding Police Department

RPD Policy Manual

---

*Use of Force*

---

    (a)    Guidelines regarding vulnerable populations, including but not limited to children, elderly persons, pregnant individuals, and individuals with physical, mental, and developmental disabilities.

    (b)    Training courses required by and consistent with POST guidelines set forth in Penal Code § 13519.10.

## 300.9   USE OF FORCE COMPLAINTS

The receipt, processing, and investigation of civilian complaints involving use of force incidents should be handled in accordance with the Personnel Complaints Policy (Government Code § 7286(b)).

## 300.10   POLICY REVIEW

The Chief of Police or the authorized designee should regularly review and update this policy to reflect developing practices and procedures (Government Code § 7286(b)).

## 300.11   POLICY AVAILABILITY

The Chief of Police or the authorized designee should ensure this policy is accessible to the public (Government Code § 7286(c)).

## 300.12   PUBLIC RECORDS REQUESTS

Requests for public records involving an officer's personnel records shall be processed in accordance with Penal Code § 832.7 and the Personnel Records and Records Maintenance and Release policies (Government Code § 7286(b)).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000518

**Redding Police Department**

RPD Policy Manual

# Handcuffing and Restraints

## 301.1  PURPOSE AND SCOPE

This policy provides guidelines for the use of handcuffs and other restraints during detentions and arrests.

## 301.2  POLICY

The Redding Police Department authorizes the use of restraint devices in accordance with this policy, the Use of Force Policy and department training. Restraint devices shall not be used to punish, to display authority or as a show of force.

## 301.3  USE OF RESTRAINTS

Only members who have successfully completed Redding Police Department-approved training on the use of restraint devices described in this policy are authorized to use these devices.

When deciding whether to use any restraint, officers should carefully balance officer safety concerns with factors that include, but are not limited to:

- The circumstances or crime leading to the arrest.
- The demeanor and behavior of the arrested person.
- The age and health of the person.
- Whether the person is known to be pregnant.
- Whether the person has a hearing or speaking disability. In such cases, consideration should be given, safety permitting, to handcuffing to the front in order to allow the person to sign or write notes.
- Whether the person has any other apparent disability.

### 301.3.1  RESTRAINT OF DETAINEES

Situations may arise where it may be reasonable to restrain an individual who may, after brief investigation, be released without arrest. Unless arrested, the use of restraints on detainees should continue only for as long as is reasonably necessary to assure the safety of officers and others. When deciding whether to remove restraints from a detainee, officers should continuously weigh the safety interests at hand against the continuing intrusion upon the detainee.

### 301.3.2  RESTRAINT OF PREGNANT PERSONS

Persons who are known to be pregnant shall be restrained in the least restrictive manner that is effective for officer safety.

No person who is in labor, delivery or recovery after delivery shall be handcuffed or restrained except in extraordinary circumstances and only when a supervisor makes a determination that such restraints are necessary for the safety of the arrestee, officers or others (Penal Code § 3407; Penal Code § 6030).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Handcuffing and Restraints*

---

301.3.3 RESTRAINT OF JUVENILES

A juvenile under 14 years of age should not be restrained unless he/she is suspected of a dangerous felony or when the officer has a reasonable suspicion that the juvenile may resist, attempt escape, injure him/herself, injure the officer or damage property.

301.3.4 NOTIFICATIONS

Whenever an officer transports a person with the use of restraints other than handcuffs, the officer shall inform the jail staff upon arrival at the jail that restraints were used. This notification should include information regarding any other circumstances the officer reasonably believes would be potential safety concerns or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration) that may have occurred prior to, or during transportation to the jail.

## 301.4 APPLICATION OF HANDCUFFS

Handcuffs may be used only to restrain a person's hands to ensure officer safety.

Handcuffing is required for all custodial arrests and 5150 detentions that are transported in a Redding Police vehicle unless pre-approved by a supervisor. A supervisor will consider a person's ailments, disability, age, or pregnancy when authorizing an officer to not handcuff.

Handcuffs should be applied with the hands behind the person's back. Correct placement of handcuffs on the prisoner's wrist is essential for preventing injury or escape. Handcuffs should be applied on the subject's bare wrist in accordance with Department training. The shape of the handcuff should correspond with the shape of the subject's wrist. Handcuffs shall be properly adjusted and fitted. Too tight may cause reduced circulation or nerve damage. Too loose could allow the prisoner to escape. Handcuffs should be adjusted for proper fit.

If, during the initial handcuffing, the handcuffs are too tight and/or applied over clothing jewelry, the officer should readjust the handcuffs for proper fit after the situation is stable.

Handcuffs shall be double locked when tactically safe and prior to transporting a prisoner. Double locking reduces the possibility of inflicting injury from handcuffs tightening further on the prisoner's wrists. It also reduces the possibility of the subject picking or slipping the locking mechanism.

In situations where one pair of handcuffs does not appear sufficient to restrain the individual or may cause unreasonable discomfort due to the person's size, officers should consider alternatives, such as using an additional set of handcuffs or plastic/nylon flex-cuffs (see 301.6).

Handcuffs should be removed as soon as it is reasonable or after the person has been searched and is safely confined within a detention facility.

## 301.5 APPLICATION OF LEG RESTRAINTS

The primary purpose of leg restraints is to prevent injury to officers and arrestees. The secondary purpose is to prevent damage to patrol vehicles and equipment by prisoners.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000520

# Redding Police Department

RPD Policy Manual

*Handcuffing and Restraints*

It is recommended the leg restraint system be applied with a minimum of three officers, if available. The application of the device should be as follows:

(a) The first officer should control the subject's legs.

(b) The second officer should control the upper body through leverage and pain compliance, if necessary.

(c) The third officer should place the leg portion (black) of the restraint device around the prisoner's ankles and cinch strap until legs are restrained.

(d) The handcuff portion (red) should be hooked to the chain of the handcuffs using the carabineer. The remaining slack in the black nylon belt should be pulled out until the suspect's leg movement is limited, but no further than necessary, by pulling the prisoner's feet towards the handcuffs. The leg restraints are designed so that they cannot be tightened to less than 13 inches.

The leg restraints are also designed so that only the black portion of the restraints can be applied to the lower legs, allowing for the prisoner to walk using small steps. This method could be used to allow more cooperative prisoners to ride in a patrol vehicle in a seated position and walk to and from the patrol vehicle. An officer should maintain control of the looped portion to assist the prisoner maintain his/her balance while walking. Officers should monitor the suspect's behavior and make a determination whether or not he/she should remain fully restrained.

Anytime leg restraints are used to restrain a prisoner's legs, the prisoner should be in a position which does not restrict breathing (i.e. on the side, back or in a seated position) and the prisoner's condition should be monitored. If placing the prisoner is a seated position, the red belt can be disconnected from the handcuff chain and attached to an eyebolt affixed to the partition behind the front passenger seat. The belt may also be routed around the "B" pillar of the vehicle and secured if an eyebolt is not affixed to the partition.

Anytime the leg restraints are used and attached to the handcuffs, the prisoner must be medically cleared prior to booking at the Shasta County Jail. If the restraints are only attached to the legs and the prisoner is not placed in a position that could cause potential asphyxia the prisoner can be taken to jail without medical clearance.

## 301.6  APPLICATION OF FLEX-CUFFS

Flex-cuffs may be used to temporarily restrain a subject when traditional handcuffs cannot be used or are unavailable.

Flex-cuffs must be properly adjusted once applied. Officers need to be aware that flex-cuffs can cause lacerations, reduce circulation, or cause nerve damage if applied too tightly. Typically, these restraints cannot be adjusted once applied.

Never use a knife to cut off the flex-cuffs. Only use an approved cutting tool, such as diagonal cutters.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Handcuffing and Restraints*

Apply flex-cuffs in accordance with Department training.

## 301.7   APPLICATION OF SPIT HOODS

Spit hoods are temporary protective devices designed to prevent the wearer from biting and/or transferring or transmitting fluids (saliva and mucous) to others.

Spit hoods may be placed upon persons in custody when the officer reasonably believes the person will bite or spit, either on a person or in an inappropriate place. They are generally used during application of a physical restraint, while the person is restrained, or during or after transport.

Officers utilizing spit hoods should ensure that the spit hood is fastened properly to allow for adequate ventilation and that the restrained person can breathe normally. Officers should provide assistance during the movement of restrained individuals due to the potential for impaired or distorted vision on the part of the individual.

Spit hoods should not be used in situations where the restrained person is bleeding profusely from the area around the mouth or nose, or if there are indications that the person has a medical condition, such as difficulty breathing or vomiting. In such cases, prompt medical care should be obtained. If the person vomits while wearing a spit hood, the spit hood should be promptly removed and discarded. Persons who have been sprayed with oleoresin capsicum (OC) spray should be thoroughly decontaminated including hair, head, and clothing prior to application of a spit hood.

Those who have been placed in a spit hood shall be monitored and shall not be left unattended until the spit hood is removed. Spit hoods shall be discarded after each use.

## 301.8   APPLICATION OF AUXILIARY RESTRAINT DEVICES

Auxiliary restraint devices include transport belts, waist or belly chains, transportation chains, leg irons and other similar devices. Auxiliary restraint devices are intended for use during long-term restraint or transportation. They provide additional security and safety without impeding breathing while permitting adequate movement, comfort, and mobility.

Any person in auxiliary restraints should be monitored as reasonably appears necessary.

## 301.9   APPLICATION OF LEG RESTRAINT DEVICES

Leg restraints may be used to restrain the legs of a violent or potentially violent person when it is reasonable to do so during the course of detention, arrest or transportation. Only restraint devices approved by the Department shall be used.

In determining whether to use the leg restraint, officers should consider:

(a)   Whether the officer or others could be exposed to injury due to the assaultive or resistant behavior of a suspect.

(b)   Whether it is reasonably necessary to protect the suspect from his/her own actions (e.g., hitting his/her head against the interior of the patrol unit, running away from the arresting officer while handcuffed, kicking at objects or officers).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000522

# Redding Police Department

RPD Policy Manual

*Handcuffing and Restraints*

(c)   Whether it is reasonably necessary to avoid damage to property (e.g., kicking at windows of the patrol unit).

## 301.9.1   GUIDELINES FOR USE OF LEG RESTRAINTS

When applying leg restraints the following guidelines should be followed:

(a)   In all cases, a supervisor shall be notified as soon as practicable after the application of the leg restraint device.

(b)   If the leg restraint device is attached to the handcuffs at any time, the officer shall transport the subject to a medical facility for medical clearance prior to booking.

(c)   Once applied, absent a medical or other emergency, restraints should remain in place until the officer arrives at the jail or other facility or the person no longer reasonably appears to pose a threat.

(d)   Once secured, the person should be placed in a seated or upright position, secured with a seat belt, and shall not be placed on his/her stomach for an extended period, as this could reduce the person's ability to breathe. If unable to place in a seated position, the person should be placed on his/her side.

(e)   The restrained person shall be monitored by an officer while in the leg restraint. The officer should ensure that the person does not roll onto and remain on his/her stomach.

(f)   The officer should look for signs of labored breathing and take appropriate steps to relieve and minimize any obvious factors contributing to this condition.

(g)   When transported by ambulance/paramedic unit, the restrained person shall be accompanied by an officer when requested by medical personnel. The transporting officer should describe to medical personnel any unusual behaviors or other circumstances the officer reasonably believes would be a potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration).

## 301.10   REQUIRED DOCUMENTATION

If an individual is arrested, the use of restraints other than handcuffs shall be documented in the related report. The officer should include, as appropriate:

(a)   The amount of time the suspect was restrained.

(b)   How the suspect was transported and the position of the suspect.

(c)   Observations of the suspect's behavior and any signs of physiological problems.

(d)   Any known or suspected drug use or other medical problems.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000523

# Control Devices and Techniques

## 302.1  PURPOSE AND SCOPE
This policy provides guidelines for the use and maintenance of control devices that are described in this policy.

## 302.2  POLICY
In order to control subjects who are violent or who demonstrate the intent to be violent, the Redding Police Department authorizes officers to use control devices in accordance with the guidelines in this policy and the Use of Force Policy.

## 302.3  ISSUING, CARRYING AND USING CONTROL DEVICES
Control devices described in this policy may be carried and used by members of this department only if the device has been issued by the Department or approved by the Chief of Police or the authorized designee.

Only officers who have successfully completed department-approved training in the use of any control device are authorized to carry and use the device.

Control devices may be used when a decision has been made to control, restrain or arrest a subject who is violent or who demonstrates the intent to be violent, and the use of the device appears reasonable under the circumstances. When reasonable, a verbal warning and opportunity to comply should precede the use of these devices.

When using control devices, officers should carefully consider potential impact areas in order to minimize injuries and unintentional targets.

## 302.4  RESPONSIBILITIES

### 302.4.1  WATCH COMMANDER RESPONSIBILITIES
The Watch Commander may authorize the use of a control device by selected personnel or members of specialized units who have successfully completed the required training.

### 302.4.2  SWAT TACTICAL COMMANDER RESPONSIBILITIES
The SWAT Tactical Commander or designee shall control the inventory and issuance of all chemical agents and control devices and shall ensure that all damaged, inoperative, outdated or expended control devices or munitions are properly disposed of, repaired or replaced.

Every chemical agent and all control devices will be periodically inspected by the SWAT Tactical Commander or the designated instructor for a particular control device. The inspection shall be documented.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

## Redding Police Department
RPD Policy Manual

*Control Devices and Techniques*

302.4.3   USER RESPONSIBILITIES
All normal maintenance, charging or cleaning shall remain the responsibility of personnel using the various devices.

Any damaged, inoperative, outdated or expended control devices or munitions, along with documentation explaining the cause of the damage, shall be returned to the SWAT Tactical Commander or designee for disposition. Damage to City property forms shall also be prepared and forwarded through the chain of command, when appropriate, explaining the cause of damage.

### 302.5   BATON GUIDELINES
The need to immediately control a suspect must be weighed against the risk of causing serious injury. The head, neck, throat, spine, heart, kidneys and groin should not be intentionally targeted except when the officer reasonably believes the suspect poses an imminent threat of serious bodily injury or death to the officer or others.

When carrying a baton, uniformed personnel shall carry the baton in its authorized holder on the equipment belt or authorized external body armor carrier. Plainclothes and non-field personnel may carry the baton as authorized and in accordance with the needs of their assignment or at the direction of their supervisor.

Officers shall only carry Department approved batons.

Any suspect struck with a baton shall be transported to a Department approved medical facility for medical treatment prior to booking. Officers shall photograph all visible and complained of injuries, even when no evidence is present.

302.5.1   FLASHLIGHTS
If an officer is forced to strike a suspect with a flashlight, all aspects of this policy apply.

### 302.6   CHEMICAL AGENTS GUIDELINES
Tear gas may be used for crowd control, crowd dispersal or against barricaded suspects based on the circumstances. Only the Division Commander, Watch Commander, SWAT Tactical Commander, or Incident Commander may authorize the delivery and use of tear gas, and only after evaluating all conditions known at the time and determining that such force reasonably appears justified and necessary.

When practicable, fire personnel should be alerted or summoned to the scene prior to the deployment of tear gas to control any fires and to assist in providing medical aid or gas evacuation if needed.

### 302.7   OLEORESIN CAPSICUM (OC) GUIDELINES
As with other control devices, oleoresin capsicum (OC) spray may be considered for use to bring under control an individual or groups of individuals who are engaging in or are about to engage in violent behavior. OC spray should not, however, be used against individuals or groups who merely fail to disperse or do not reasonably appear to present a risk to the safety of officers or the public.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000525

# Redding Police Department
#### RPD Policy Manual

## *Control Devices and Techniques*

### 302.7.1   OC SPRAY
Uniformed personnel carrying OC spray shall carry the device in its holster on the equipment belt or load bearing vest. Plainclothes and non-field personnel may carry OC spray as authorized, in accordance with the needs of their assignment or at the direction of their supervisor.

Non-sworn employees may carry OC spray while on duty as a defensive weapon only.OC shall be used only after a determination that avoidance or escape is not possible. Employees must first successfully complete training as established by the training manager and approved by the Chief of Police.Upon successful completion of training, OC spray and a leather holster will be issued. Pursuant to 12403.7 PC, the maximum size of an OC container shall be 2.5 ounces net weight of aerosol spray.

### 302.7.2   CLEAR OUT AEROSOL GRENADE
The tactical use of the locking tab aerosol CS/OC (Clear Out) will only be deployed by sworn personnel trained and equipped for the situation. Authorization for the use of Clear Out in such situations shall be by the on-duty supervisor. For further information see Redding Police Training Bulletin #507.

### 302.7.3   TREATMENT FOR OC SPRAY EXPOSURE
Persons who have been sprayed with or otherwise affected by the use of OC should be promptly provided with clean water to cleanse the affected areas. Those persons who complain of further severe effects shall be examined by appropriate medical personnel.

### 302.8   POST-APPLICATION NOTICE
Whenever tear gas or OC has been introduced into a residence, building interior, vehicle or other enclosed area, officers should provide the owners or available occupants with notice of the possible presence of residue that could result in irritation or injury if the area is not properly cleaned. Information regarding the method of notice and the individuals notified should be included in related reports. The supervisor should notify RISK Management and advise of the incident.

### 302.9   KINETIC ENERGY PROJECTILE GUIDELINES
This Department is committed to reducing the potential for violent confrontations. Kinetic energy projectiles, when used properly, are less likely to result in death or serious physical injury and can be used in an attempt to de-escalate a potentially deadly situation.

### 302.9.1   DEPLOYMENT AND USE
Only Department-approved kinetic energy munitions shall be carried and deployed.  Kinetic energy munitions utilized in the Field Operations Division and Investigations Division are identified by a bright orange stock and fore-end. Kinetic energy munitions used by SWAT are not identified with orange markings.

Approved munitions may be used to compel an individual to cease his/her actions when such munitions present a reasonable option.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000526

# Redding Police Department

RPD Policy Manual

## *Control Devices and Techniques*

The locking device for holding the kinetic energy munitions in patrol cars is the electric solenoid type or rear lock box.  The kinetic energy munitions will be carried in the lock with four bean bag rounds in the magazine and six additional bean bag rounds in the side pack, chamber empty, the action un-cocked and the safety on. Vehicles with kinetic energy munitions will have an orange/ white target sticker in the bottom right-hand rear window for identification.

Officers are not required or compelled to use approved munitions in lieu of other reasonable tactics if the involved officer determines that deployment of these munitions cannot be done safely. The safety of hostages, innocent persons and officers takes priority over the safety of subjects engaged in criminal or suicidal behavior.

Circumstances appropriate for deployment include, but are not limited to, situations in which:

(a)  The suspect is armed with a weapon and the tactical circumstances allow for the safe application of approved munitions.

(b)  The suspect has made credible threats to harm him/herself or others.

(c)  The suspect is engaged in riotous behavior or is throwing rocks, bottles or other dangerous projectiles at people and/or officers.

(d)  There is probable cause to believe that the suspect has already committed a crime of violence and is refusing to comply with lawful orders.

### 302.9.2  DEPLOYMENT CONSIDERATIONS

Before discharging projectiles, the officer should consider such factors as:

(a)  Distance and angle to target.

(b)  Type of munitions employed.

(c)  Type and thickness of subject's clothing.

(d)  The subject's proximity to others.

(e)  The location of the subject.

(f)  Whether the subject's actions dictate the need for an immediate response and the use of control devices appears appropriate.

Except in exigent and extraordinary circumstances, officers should avoid using the less lethal devices on:

(a)  Obviously pregnant women.

(b)  Elderly or otherwise physically frail people.

(c)  Pre-adolescent children.

(d)  A person who could fall from a significant height

(e)  A person operating a moving vehicle or dangerous machinery

(f)  A handcuffed or similarly restrained person unless the actions of the restrained person present violent resistance to officers or an immediate threat of physical injury to officers, the restrained person, or to other people present.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000527

## Redding Police Department
### RPD Policy Manual

*Control Devices and Techniques*

A verbal warning of the intended use of the device should precede its application unless it would otherwise endanger the safety of officers or when it is not practicable due to the circumstances. The purpose of the warning is to give the individual a reasonable opportunity to voluntarily comply and to warn other officers and individuals that the device is being deployed.

Officers should keep in mind the manufacturer's recommendations and their training regarding effective distances and target areas. However, officers are not restricted solely to use according to manufacturer recommendations. Each situation must be evaluated on the totality of circumstances at the time of deployment.

The need to immediately incapacitate the subject must be weighed against the risk of causing serious injury or death. The head and neck should not be intentionally targeted, except when the officer reasonably believes the suspect poses an imminent threat of serious bodily injury or death to the officer or others.

Any person struck by a kinetic energy projectile shall be transported to a hospital for examination and to obtain a medical clearance. Upon receiving medical clearance, the officer shall notify the jail staff of the use of the projectile and the subsequent medical clearance.

### 302.10   TRAINING FOR CONTROL DEVICES
The Training Sergeant shall ensure that all personnel who are authorized to carry a control device have been properly trained to carry the specific control device.

    (a)    Proficiency training shall be monitored and documented by a certified, control-device weapons or tactics instructor.

    (b)    All training and proficiency for control devices will be documented in the officer's training file.

    (c)    Officers who fail to demonstrate proficiency with the control device or knowledge of this agency's Use of Force Policy will be provided remedial training. If an officer cannot demonstrate proficiency with a control device or knowledge of this agency's Use of Force Policy after remedial training, the officer will be restricted from carrying the control device and may be subject to discipline.

### 302.11   REPORTING USE OF CONTROL DEVICES AND TECHNIQUES
Any application of a control device or technique listed in this policy shall be documented pursuant to the Use of Force Policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000528

# Conducted Energy Device

### 303.1  PURPOSE AND SCOPE
This policy provides guidelines for the issuance and use of TASER devices.

### 303.2  POLICY
The TASER® device is intended to control a violent or potentially violent individual, while minimizing the risk of serious injury. The appropriate use of such a device should result in fewer serious injuries to officers and suspects.

### 303.3  ISSUANCE AND CARRYING TASER DEVICES
Only members who have successfully completed department-approved training may be issued and carry the TASER device.

Officers shall only use the TASER device and cartridges that have been issued by the Department. Uniformed officers who have been issued the TASER device shall wear the device in an approved holster on their person or shall keep it secure and readily available in their vehicle. In an emergency, it is permissible for an officer to temporarily store the Taser and associated cartridges in a cargo pocket until the scene is stable.

To confirm proper functioning of the TASER device, members carrying the TASER device should remove the cartridge and cycle the weapon for 5 seconds prior to every shift.

When carried while in uniform officers shall carry the TASER device in a weak-side holster on the side opposite the duty weapon or on the gun side requiring the officer's non-handgun hand to draw the Taser (cross draw).

(a)   Whenever practicable, officers should carry two or more cartridges on their person when carrying the TASER device.

(b)   Officers shall be responsible for ensuring that their issued TASER device is properly maintained and in good working order.

(c)   Officers should not hold both a firearm and the TASER device at the same time.

### 303.4  VERBAL AND VISUAL WARNINGS
A verbal warning of the intended use of the TASER device should precede its application, unless it would otherwise endanger the safety of officers or when it is not practicable due to the circumstances. The purpose of the warning is to:

(a)   Provide the individual with a reasonable opportunity to voluntarily comply.

(b)   Provide other officers and individuals with a warning that the TASER device may be deployed.

After providing verbal warning to the subject, and prior to firing the Taser at the person, the officer using the Taser should loudly announce "Taser" to other officers at the scene in order to minimize

## Redding Police Department
RPD Policy Manual

*Conducted Energy Device*

the possibility of the Taser use being mistaken for the discharge of a firearm. The aiming laser should never be intentionally directed into the eyes of another as it may permanently impair his/her vision.

The fact that a verbal or other warning was given or the reasons it was not given shall be documented by the officer deploying the TASER device in the related report.

### 303.5   USE OF THE TASER DEVICE
The TASER device has limitations and restrictions requiring consideration before its use. The TASER device should only be used when its operator can safely approach the subject within the operational range of the device. Although the TASER device is generally effective in controlling most individuals, officers should be aware that the device may not achieve the intended results and be prepared with other options.

303.5.1   APPLICATION OF THE TASER DEVICE
The TASER device may be used in any of the following circumstances when the circumstances perceived by the officer at the time indicate that such application is reasonably necessary to control a person:

    (a)    The subject is violent or is physically resisting.

    (b)    The subject has demonstrated, by words or action, an intention to be violent or to physically resist, and reasonably appears to present the potential to harm officers, him/herself or others.

Mere flight from a pursuing officer, without other known circumstances or factors, is not good cause for the use of the TASER device to apprehend an individual.

303.5.2   SPECIAL DEPLOYMENT CONSIDERATIONS
The use of the TASER device on certain individuals should generally be avoided unless the totality of the circumstances indicates that other available options reasonably appear ineffective or would present a greater danger to the officer, the subject or others, and the officer reasonably believes that the need to control the individual outweighs the risk of using the device. This includes:

    (a)    Individuals who are known to be pregnant.

    (b)    Elderly individuals or pre-adolescent children.

    (c)    Individuals who are handcuffed or otherwise restrained.

    (d)    Individuals who have been recently sprayed with a flammable chemical agent or who are otherwise in close proximity to any known combustible vapor or flammable material..

    (e)    Individuals whose position or activity may result in collateral injury (e.g., falls from height, falls into a body of water, and operating vehicles/machinery).

Because the application of the TASER device in the drive-stun mode (i.e., direct contact without probes) relies primarily on pain compliance, the use of the drive-stun mode generally should be limited to supplementing the probe-mode to complete the circuit, or as a distraction technique

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000530

# Redding Police Department
RPD Policy Manual

---

*Conducted Energy Device*

---

to gain separation between officers and the subject, thereby giving officers time and distance to consider other force options or actions.

The TASER device shall not be used to psychologically torment, elicit statements or to punish any individual. Furthermore, the Taser shall not be used on passively resisting subjects, such as protestors, who are not complying with a lawful order but do not meet the application of the TASER device criteria.

### 303.5.3 TARGETING CONSIDERATIONS
Reasonable efforts should be made to target lower center mass and avoid the head, neck, chest and groin. If the dynamics of a situation or officer safety do not permit the officer to limit the application of the TASER device probes to a precise target area, officers should monitor the condition of the subject if one or more probes strikes the head, neck, chest or groin until the subject is examined by paramedics or other medical personnel.

### 303.5.4 MULTIPLE APPLICATIONS OF THE TASER DEVICE
Officers should apply the TASER device for only one standard cycle and then evaluate the situation before applying any subsequent cycles. Multiple applications of the TASER device against a single individual are generally not recommended and should be avoided unless the officer reasonably believes that the need to control the individual outweighs the potentially increased risk posed by multiple applications.

If the first application of the TASER device appears to be ineffective in gaining control of an individual, the officer should consider certain factors before additional applications of the TASER device, including:

    (a)    Whether the probes are making proper contact.

    (b)    Whether the individual has the ability and has been given a reasonable opportunity to comply.

    (c)    Whether verbal commands, other options or tactics may be more effective.

### 303.5.5 ACTIONS FOLLOWING DEPLOYMENTS
Officers shall notify a supervisor of all TASER device discharges. AFID tags should be collected and the expended cartridge, along with both probes and wire, should be submitted into evidence. The cartridge serial number should be noted and documented on the evidence paperwork. The evidence packaging should be marked "Biohazard" if the probes penetrated the subject's skin.

### 303.5.6 DANGEROUS ANIMALS
The TASER device may be deployed against an animal as part of a plan to deal with a potentially dangerous animal, such as a dog, if the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000531

# Redding Police Department

RPD Policy Manual

*Conducted Energy Device*

---

303.5.7  OFF-DUTY CONSIDERATIONS

Officers are not authorized to carry department TASER devices while off-duty.

## 303.6  DOCUMENTATION

Officers shall document all TASER device discharges in the related arrest/crime report. Notification shall also be made to a supervisor in compliance with the Use of Force Policy.

303.6.1  TASER DEVICE FORM

Items that shall be included in the TASER device report form are:

(a)  The type and brand of TASER device and cartridge and cartridge serial number.

(b)  Date, time and location of the incident.

(c)  Whether any display, laser or arc deterred a subject and gained compliance.

(d)  The number of TASER device activations, the duration of each cycle, the duration between activations, and (as best as can be determined) the duration that the subject received applications.

(e)  The range at which the TASER device was used.

(f)  The type of mode used (probe or drive-stun).

(g)  Location of any probe impact.

(h)  Location of contact in drive-stun mode.

(i)  Description of where missed probes went.

(j)  Whether medical care was provided to the subject.

(k)  Whether the subject sustained any injuries.

(l)  Whether any officers sustained any injuries.

The Taser Program Supervisor should periodically analyze the report forms to identify trends, including deterrence and effectiveness. The Taser Program Supervisor or his designee should also conduct audits of data downloads and reconcile TASER device report forms with recorded activations.

303.6.2  REPORTS

The officer should include the following in the arrest/crime report:

(a)  Identification of all personnel firing TASER devices

(b)  Identification of all witnesses

(c)  Medical care provided to the subject and the name of the Doctor who provided medical clearance for booking.

(d)  Observations of the subject's physical and physiological actions

(e)  Any known or suspected drug use, intoxication or other medical problems

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000532

*Conducted Energy Device*

---

    (f)    Document the name of the correctional deputy who was advised of the Taser use at the time of booking into the County Jail.

## 303.7  MEDICAL TREATMENT

Probes that appear to be embedded in a person's skin may be removed by a trained officer to prevent further injury to the suspect or involved personnel.  Any probe that is clearly embedded in sensitive areas, I.e., head, neck groin shall be removed by medical personnel.  Any probe that is clearly embedded in clothing and not skin can be removed by an officer in the field. Used TASER device probes shall be treated as a sharps biohazard, similar to a used hypodermic needle, and handled appropriately. Universal precautions should be taken.

All persons who have been struck by TASER device probes or who have been subjected to the electric discharge of the device shall be medically assessed prior to booking. Additionally, any such individual who falls under any of the following categories should, as soon as practicable, be examined by paramedics or other qualified medical personnel:

    (a)    The person is suspected of being under the influence of controlled substances and/or alcohol.

    (b)    The person may be pregnant.

    (c)    The person reasonably appears to be in need of medical attention.

    (d)    The TASER device probes are lodged in a sensitive area (e.g., groin, female breast, head, face, neck).

    (e)    The person requests medical treatment.

Any individual exhibiting signs of distress or who is exposed to multiple or prolonged applications (i.e., more than 15 seconds) shall be transported to a medical facility for examination or medically evaluated prior to booking.

The transporting officer shall inform any person providing medical care or receiving custody that the individual has been subjected to the application of the TASER device.

## 303.8  SUPERVISOR RESPONSIBILITIES

When possible, supervisors should respond to calls when they reasonably believe there is a likelihood the TASER device may be used. A supervisor should respond to all incidents where the TASER device was activated.

A supervisor should review each incident where a person has been exposed to an activation of the TASER device. Photographs of probe sites should be taken and witnesses interviewed.

## 303.9  TRAINING

Personnel who are authorized to carry the TASER device shall be permitted to do so only after successfully completing the initial department-approved training. Any personnel who have not carried the TASER device as a part of their assignment for a period of six months or more shall

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000533

# Redding Police Department

RPD Policy Manual

*Conducted Energy Device*

be recertified by a department-approved TASER device instructor prior to again carrying or using the device.

Proficiency training for personnel who have been issued TASER devices should occur every year. A reassessment of an officer's knowledge and/or practical skill may be required at any time if deemed appropriate by the Training Sergeant. All training and proficiency for TASER devices will be documented in the officer's training file.

Officers who do not carry TASER devices should receive training that is sufficient to familiarize them with the device and with working with officers who use the device.

The Training Sergeant is responsible for ensuring that all members who carry TASER devices have received initial and annual proficiency training.

Application of TASER devices during training could result in injury to personnel and should not be mandatory for certification.

The Training Sergeant should ensure that all training includes:

(a) A review of this policy.

(b) A review of the Use of Force Policy.

(c) Performing weak-hand draws or cross-draws to reduce the possibility of unintentionally drawing and firing a firearm.

(d) Target area considerations, to include techniques or options to reduce the unintentional application of probes near the head, neck, chest and groin.

(e) Handcuffing a subject during the application of the TASER device and transitioning to other force options.

(f) De-escalation techniques.

(g) Restraint techniques that do not impair respiration following the application of the TASER device.

## 303.10  TASER MAINTENANCE

Officers are required to ensure all their equipment is in good and working order. Only department authorized TASER armorers are permitted to perform maintenance on the TASER device.

The TASER Program Supervisor or designated TASER instructor/armorer shall have responsibility for the annual inventory, acquisition, maintenance, and storage of TASERS, munitions, and related supplies and equipment. The TASER Program Supervisor or his/her designee shall regularly inspect the weapons and storage cases.

The TASER Program Supervisor or designee(s), with the assistance of Information Technology staff, shall be responsible for downloading use data from all Department TASER's once a year or when directed to do by the Chief of Police, a Division Commander, or a Watch Commander.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000534

Policy

**304**

# Officer-Involved Shootings and Deaths

## 304.1  PURPOSE AND SCOPE

The purpose of this policy is to establish policy and procedures for the investigation of a critical incident that occurs in the City of Redding involving a Redding Police Department employee where great bodily injury or a fatality occurs, or any incident declared by the Chief of Police as critical. In general, critical incidents do not include fatal or major injury vehicular accidents involving off-duty personnel, not performing a law enforcement function.

In other incidents not covered by this policy, the Chief of Police may decide that the investigation will follow the process provided in this policy.

## 304.2  POLICY

It is the policy of the Redding Police Department to accomplish the police mission with the highest regard for the well-being of its officers and the people of the community it serves.  It is understood that a shooting or critical incident is a traumatic event and often results from unpredictable and spontaneous incidents.  Officers involved often are required to make instant decisions under difficult circumstances which will be subject to careful and thorough examination by the Department, the community, and other concerned citizens or agencies.

The provisions of this policy and use of the Multi-Agency Officer Involved Critical Incident (OICI) Protocol generally apply to all shooting incidents resulting in injury, suspected injury, or death, but may also be applied to any critical incident deemed appropriate by the Chief of Police or appropriate division commander.

Use of the OICI Team for weapons discharge not involving injury, suspected injury, or death will be at the discretion of a watch commander, division commander, or the Chief of Police, depending on the severity and circumstances of the incident.

## 304.3  TYPES OF INVESTIGATIONS

Officer-involved shootings and critical incidents involve several separate investigations. The investigations may include:

- A criminal investigation of the suspect's actions.

- A criminal investigation of the involved officer's actions.

- An administrative investigation as to policy compliance by involved officers.

- A civil investigation to determine potential liability.

## 304.4  CONTROL OF INVESTIGATIONS

Investigators from surrounding agencies may be assigned to work on the criminal investigation of officer-involved shootings and deaths. This may include at least one investigator from the agency that employs the involved officer.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

## Redding Police Department
RPD Policy Manual

*Officer-Involved Shootings and Deaths*

Law enforcement agencies in Shasta County have a Memorandum of Understanding regarding Officer Involved Critical Incidents.The Shasta County Multi-Agency Officer Involved Critical Incident Protocol (see attached) shall be referred to in each of these instances.

### 304.5  INVESTIGATION PROCESS
The following procedures are guidelines used in the investigation of an officer-involved shooting or critical incident.

304.5.1  UNINVOLVED OFFICER RESPONSIBILITIES
Upon arrival at the scene of an officer-involved shooting, the first uninvolved RPD officer will be the officer-in-charge and should, as appropriate:

(a)   Secure the scene and identify and eliminate hazards for all those involved.

(b)   Take reasonable steps to obtain emergency medical attention for injured individuals.

(c)   Request additional resources from the Department or other agencies.

(d)   Coordinate a perimeter or pursuit of suspects.

(e)   Check for injured persons and evacuate as needed.

(f)   Brief the supervisor upon arrival.

304.5.2  SUPERVISOR RESPONSIBILITIES
The Field Operations supervisor shall respond to all incidents of an officer-involved shooting, establish a command post, and ensure total containment of the immediate and surrounding area of the shooting scene as soon as it is tactically possible.  The Field Operations supervisor shall:

(a)   Ensure that medical assistance has been summoned when necessary.

(b)   Secure the inner perimeter with crime scene tape or barricades whenever practical.

(c)   Establish an outer perimeter, when necessary.

(d)   Reassess and confirm the containment area.

(e)   Assign personnel to control entry and maintain a log.  Any personnel entering the scene will write a formal supplemental report.

(f)   Ensure that no disruption of any evidence is permitted; i.e., weapons involved, ammunition, shell casings, police equipment, vehicles.

(g)   Have an officer make a listing of all vehicles in the area of the incident.

(h)   As soon as tactically possible, locate, identify, and isolate civilian witnesses.

(i)   Initiate a neighborhood canvass.

(j)   Identify all on-scene emergency personnel; i.e., fire, paramedics, medical and ambulance personnel, or other persons who have had access to the scene.

(k)   Assign an officer to be with the criminal suspect until relieved by an investigator.

(l)   Shall order the shooting officer to answer questions related to "Public Safety Scene Management."  Questions such as the following are examples:

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000536

*Officer-Involved Shootings and Deaths*

    1.    How many shots were fired in what direction, and

    2.    Are there any other suspect/outstanding weapons? If so, describe, and

    3.    What direction of travel did the suspects flee? Vehicle description?

(m)    Obtain a general account of the incident and actions taken to brief responding investigators and watch commanders. This information should be obtained from non-involved witness officers or any non-shooting involved officers. This information should not be obtained from any involved shooting officer.

(n)    In the absence of the watch commander, establish a temporary Press Information Officer. All press information will be coordinated with the Press Information Officer at the press information center outside the outer perimeter.

(o)    Brief the watch commander or O.I.C.I. Team leader upon arrival.

## 304.5.3   WATCH COMMANDER RESPONSIBILITIES
A watch commander will respond to all officer involved shootings and ensure coordination of on-scene activities until the situation has stabilized and the O.I.C.I. Team is initiated.

## 304.5.4   O.I.C.I. TEAM RESPONSIBILITIES

(a)    To provide the Chief of Police and command staff a briefing on the circumstances surrounding the incident as soon as sufficient details are known or as directed.

(b)    To conduct a complete criminal investigation.

(c)    In cases of death, notify the coroner pursuant to Death Investigations Policy

(d)    To notify the District Attorney.

## 304.5.5   NOTIFICATIONS
The following Departmental notifications will be made in all instances of intentional/accidental weapon discharge involving an injury, suspected injury, or death. The on-duty watch commander or ranking supervisor shall ensure the following notifications are made:

(a)    The Chief of Police;

(b)    The Division Commander of the involved officer;

(c)    The Investigations Division Commander;

(d)    The Departmental Officer Involved Critical Incident Team (O.I.C.I.) consisting of one police lieutenant, one sergeant, and support personnel as needed.

## 304.5.6   INVOLVED OFFICERS
The following shall be considered for the involved officer:

(a)    Any request for legal or union representation will be accommodated.

    (a)    Requests from involved non-RPD officers should be referred to their employing agency.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Officer-Involved Shootings and Deaths*

(b)   Discussions with licensed attorneys will be considered privileged as attorney-client communications.

(c)   Discussions with agency representatives/employee groups will be privileged only as to the discussion of non-criminal information (Government Code § 3303(i)).

(d)   A licensed psychotherapist shall be provided by the Department to each involved RPD officer. A licensed psychotherapist may also be provided to any other affected RPD members, upon request.

    1.   Interviews with a licensed psychotherapist will be considered privileged.

    2.   An interview or session with a licensed psychotherapist may take place prior to the member providing a formal interview or report. However, involved members shall not be permitted to consult or meet collectively or in a group with a licensed psychotherapist prior to providing a formal interview or report.

    3.   A separate fitness-for-duty exam may also be required (see the Fitness for Duty Policy).

(e)   Although the Department will honor the sensitivity of communications with peer counselors, there is no legal privilege to such communications. Peer counselors are cautioned against discussing the facts of any incident with an involved or witness officer.

In cases involving injured officers, a non-involved police officer will be assigned by the Field Operations supervisor to accompany any injured officer(s) to the hospital.  The accompanying officer is not to conduct an investigation by questioning but merely be available for moral support and assist the shooting officer in attending to personal needs.

The assisting officer will ensure that evidence, such as torn clothing, etc., is properly preserved. If practical, the injured officer's weapon and leather equipment will be obtained from them prior to transportation to the hospital and secured for the Department's evidence technician.

(a)   The accompanying officer will remain with the shooting officer until relieved by a Department Peer Support officer.

(b)   Whenever possible, notification of family members will be done by the officer involved. The watch commander of injured officer(s) shall arrange for transportation of family members and other support services as necessary.

(c)   Upon release from the hospital, injured officer(s) will be issued a weapon and leather gear until their personal equipment is available for release.

(d)   Upon release of a non-injured officer from the scene by the O.I.C.I. Team, a Peer Support officer will be assigned to transport the officer(s) involved to the Police Department and stay with him/her until relieved.

(e)   The Peer Support officer is not to conduct an investigation by questioning but merely be available for moral support and assist the officer in attending to personal needs.

(f)   Upon arrival at the Police Department, the involved non-injured officer(s) will have their leather gear, weapon, and possibly uniform collected by an assigned I.D. Technician. The Peer Support officer is responsible for reissuing a replacement

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000538

*Officer-Involved Shootings and Deaths*

weapon and leather gear.  The serial number of the replacement weapon should be reported in writing to the involved officer's division commander.

(g)  The Peer Support officer will make a telephone available to the involved officer for notifying family and/or contacting legal counsel.

Administrative leave, psychological or medical support services are to be provided consistent with the existing Memorandum of Understanding with the Peace Officers' Association, Police Managers Association, and other City policies.  The Chief of Police will grant a minimum of three (3) days paid authorized leave of absence to the officer(s) who actually did the shooting when injury or death occurred.  Paid leave may also be extended to other employees at the discretion of the Chief of Police depending upon the circumstances.

## 304.6  MULTI-AGENCY OFFICER INVOLVED CRITICAL INCIDENT TEAM

### 304.6.1  ACTIVATION PROCEDURES

(a)  The agencies participating on this team are Redding Police Department, Shasta County Sheriff's Office, Shasta County Marshal's Office, California Highway Patrol, Whiskeytown National Park Service, Anderson Police Department, Department of Fish & Game, Shasta County Probation Department, Redding Parole Unit, Bureau of Narcotic Enforcement, and the Shasta County District Attorney's Office.

(b)  When an incident occurs within the Redding Police Department's jurisdiction that is within the guidelines of the Critical Incident Protocol, the on-scene commander shall notify the watch commander and the Field Operations division commander as soon as possible.  If the watch commander or division commander is unavailable, the on-scene commander may make the decision to activate the Multi-Agency Critical Incident Team.

(c)  Requests should be made through the Services Division for the number of personnel and specific specialties needed, as well as the agency the personnel is requested from, i.e., from Shasta County Sheriff's Office, two investigators, and one ID tech. Depending on the nature of the incident, the incident commander shall request only the number of personnel needed to supplement the Redding Police Department's investigative team.

(d)  When an incident occurs in another jurisdiction that is a participant of the Officer Involved Critical Incident Protocol, the outside participating agency may contact the Redding Police Department on-duty supervisor or watch commander with a request that the Redding Police Department Officer Involved Shooting Team participate in an inter-agency investigation.  The on-duty supervisor will verify the number of Redding Police Department personnel needed and their specialties.  The supervisor will then notify the watch commander and Field Operations division commander of the request. Approval of the request may be authorized by the on-duty supervisor if a superior officer cannot be contacted.

(e)  The Officer Involved Critical Incident Team members are entered in the computer system according to their team member specialties.  Agency contact persons are indicated.  These persons will be contacted by the Redding Police Department

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000539

# Redding Police Department

RPD Policy Manual

*Officer-Involved Shootings and Deaths*

Services Division.  The contact person will be responsible for calling out that agency's requested team members.

## 304.7   CRIMINAL INVESTIGATION

The Officer Involved Critical Incident Team is responsible for the criminal investigation into the circumstances of any officer-involved shooting or death.

Once public safety issues have been addressed, criminal investigators should be given the opportunity to obtain a voluntary statement from involved officers and to complete their interviews. The following shall be considered for the involved officer:

(a)   RPD supervisors and Administration Division personnel should not participate directly in any voluntary interview of RPD officers. This will not prohibit such personnel from monitoring interviews or providing the criminal investigators with topics for inquiry.

(b)   If requested, any involved officer will be afforded the opportunity to consult individually with a representative of his/her choosing or an attorney prior to speaking with criminal investigators (Government Code § 3303(i)).

(c)   If any involved officer is physically, emotionally or otherwise not in a position to provide a voluntary statement when interviewed by criminal investigators, consideration should be given to allowing a reasonable period for the officer to schedule an alternate time for the interview.

(d)   Any voluntary statement provided by an involved officer will be made available for inclusion in any related investigation, including administrative investigations. However, no administratively coerced statement will be provided to any criminal investigators unless the officer consents.

### 304.7.1   REPORTS BY INVOLVED RPD OFFICERS

In the event that suspects remain outstanding or subject to prosecution for related offenses, this department shall retain the authority to require involved RPD officers to provide sufficient information for related criminal reports to facilitate the apprehension and prosecution of those individuals (Government Code § 3304(a)).

While the involved officer may write the report, it is generally recommended that such reports be completed by assigned investigators, who should interview all involved officers as victims/ witnesses. Since the purpose of these reports will be to facilitate criminal prosecution, statements of involved officers should focus on evidence to establish the elements of criminal activities by suspects. Care should be taken not to duplicate information provided by involved officers in other reports.

Nothing in this section shall be construed to deprive an involved officer of the right to consult with legal counsel prior to completing any such criminal report.

Reports related to the prosecution of criminal suspects will be processed according to normal procedures but should also be included for reference in the investigation of the officer-involved shooting or death.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000540

# Redding Police Department
RPD Policy Manual

*Officer-Involved Shootings and Deaths*

## 304.7.2   WITNESS IDENTIFICATION AND INTERVIEWS

Because potential witnesses to an officer-involved shooting or death may become unavailable or the integrity of their statements compromised with the passage of time, a supervisor should take reasonable steps to promptly coordinate with criminal investigators to utilize available personnel for the following:

(a)   Identification of all persons present at the scene and in the immediate area.

    1.   When feasible, a recorded statement should be obtained from those persons who claim not to have witnessed the incident but who were present at the time it occurred.

    2.   Any potential witness who is unwilling or unable to remain available for a formal interview should not be detained absent reasonable suspicion to detain or probable cause to arrest. Without detaining the individual for the sole purpose of identification, officers should attempt to identify the witness prior to his/her departure.

(b)   Witnesses who are willing to provide a formal interview should be asked to meet at a suitable location where criminal investigators may obtain a recorded statement. Such witnesses, if willing, may be transported by a member of the Department.

    1.   A written, verbal or recorded statement of consent should be obtained prior to transporting a witness. When the witness is a minor, consent should be obtained from the parent or guardian, if available, prior to transportation.

(c)   Promptly contacting the suspect's known family and associates to obtain any available and untainted background information about the suspect's activities and state of mind prior to the incident.

## 304.8   ADMINISTRATIVE INVESTIGATION

In addition to all other investigations associated with an officer-involved shooting or death, this Department will conduct an internal administrative investigation of RPD officers to determine conformance with Department Policy. The investigation will be conducted under the supervision of the Administration Division and will be considered a confidential officer personnel file.

Interviews of members shall be subject to Department Policies and applicable laws (see the Personnel Complaints Policy).

(a)   Any officer involved in a shooting or death may be requested or administratively compelled to provide a blood sample for alcohol/drug screening. For further see the City of Redding Substance Abuse Policy

(b)   If any officer has voluntarily elected to provide a statement to criminal investigators, the assigned administrative investigator should review that statement before proceeding with any further interview of that involved officer.

    1.   If a further interview of the officer is deemed necessary to determine policy compliance, care should be taken to limit the inquiry to new areas with minimal, if

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000541

## Redding Police Department
RPD Policy Manual

*Officer-Involved Shootings and Deaths*

any, duplication of questions addressed in the voluntary statement. The involved officer shall be provided with a copy of his/her prior statement before proceeding with any subsequent interviews.

(c) In the event that an involved officer has elected to not provide criminal investigators with a voluntary statement, the assigned administrative investigator shall conduct an administrative interview to determine all relevant information.

1. Although this interview should not be unreasonably delayed, care should be taken to ensure that the officer's physical and psychological needs have been addressed before commencing the interview.

2. If requested, the officer shall have the opportunity to select an uninvolved representative to be present during the interview. (Government Code § 3303(i)).

3. Administrative interviews should be recorded by the investigator. The officer may also record the interview (Government Code § 3303(g)).

4. The officer shall be informed of the nature of the investigation. If an officer refuses to answer questions, he/she should be given his/her *Lybarger* or *Garrity* rights and ordered to provide full and truthful answers to all questions. The officer shall be informed that the interview will be for administrative purposes only and that the statement cannot be used criminally.

5. The Administration Division shall compile all relevant information and reports necessary for the Department to determine compliance with applicable policies.

6. Regardless of whether the use of force is an issue in the case, the completed administrative investigation shall be submitted to the Chief of Police through the Division Commander.

7. Any other indications of potential policy violations shall be determined in accordance with standard disciplinary procedures.

## 304.9  CIVIL LIABILITY RESPONSE
A member of this Department may be assigned to work exclusively under the direction of the legal counsel for the Department to assist in the preparation of materials deemed necessary in anticipation of potential civil litigation.

All materials generated in this capacity shall be considered attorney work product and may not be used for any other purpose. The civil liability response is not intended to interfere with any other investigation but shall be given reasonable access to all other investigations.

## 304.10  AUDIO AND VIDEO RECORDINGS
Any officer involved in a shooting or death may be permitted to review available Mobile Audio/Video (MAV), body-worn video,  or other video or audio recordings prior to providing a recorded statement or completing reports.

Upon request, non-law enforcement witnesses who are able to verify their presence and their ability to contemporaneously perceive events at the scene of an incident may also be permitted

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000542

# Redding Police Department

RPD Policy Manual

---

*Officer-Involved Shootings and Deaths*

---

to review available MAV, body-worn video, or other video or audio recordings with approval of assigned investigators or a supervisor.

Any body-worn and other known video or audio recordings of an incident should not be publicly released during an ongoing investigation without consulting the prosecuting attorney or City Attorney's Office, as appropriate.

## 304.11   DEBRIEFING
Following an officer-involved shooting or death, the Redding Police Department should conduct both a critical incident/stress debriefing and a tactical debriefing.

### 304.11.1   CRITICAL INCIDENT/STRESS DEBRIEFING
A critical incident/stress debriefing should occur as soon as practicable. The Peer Support Program Manager or designee is responsible for organizing the debriefing. For further see the CISD policy.

### 304.11.2   TACTICAL DEBRIEFING
A tactical debriefing should take place to identify any training or areas of policy that need improvement. The Chief of Police should identify the appropriate participants. This debriefing should not be conducted until all involved members have provided recorded or formal statements to criminal and/or administrative investigators.

## 304.12   REPORTING
If the death of an individual occurs in the Redding Police Department jurisdiction and qualifies to be reported to the state as a justifiable homicide or an in-custody death, the Field Operations Division Commander will ensure that the Records Supervisor is provided with enough information to meet the reporting requirements (Penal Code § 196; Penal Code § 13022; Government Code § 12525).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000543

# Firearms

### 305.1   PURPOSE AND SCOPE

This policy provides guidelines for issuing firearms, the safe and legal carrying of firearms, firearms maintenance and firearms training.

This policy does not apply to issues related to the use of firearms that are addressed in the Use of Force or Officer-Involved Shootings and Deaths policies.

This policy only applies to those members who are authorized to carry firearms.

### 305.2   POLICY

The Redding Police Department will equip its officers with firearms to address the risks posed to the public and Department members by violent and sometimes well-armed persons. The Department will ensure firearms are appropriate and in good working order and that relevant training is provided as resources allow.

### 305.3   USE OF FIREARMS

(a)   Firearms may be discharged by officers of this Department in the performance of their duties under the following conditions:

1.   In the defense of themselves or other persons from the imminent, actual or perceived threat of death or serious bodily injury.  When possible, officers should issue a warning of their intent to use deadly force.

2.   Once an officer no longer perceives a threat, deadly force is no longer justified.

3.   To prevent a crime where the suspect's conduct places a person or persons in danger of death or serious bodily injury.

4.   To apprehend a fleeing felon suspect for a violent crime involving the use or threatened use of deadly force or where there are other circumstances which reasonably create a threat of death or serious bodily injury to the officer or others if apprehension is delayed.

5.   To kill a dangerous animal or one that is so severely injured that it should be humanely removed from further suffering and other disposition is not practical. The Animal Control Officer shall be called in all such cases when it is practical to do so.

6.   For target practice at an approved range or such interdepartmental competition as shall be approved by the Range Master of this Department.

7.   Under circumstances authorized by the Chief of Police, including but not limited to destruction of old ammunition and testing of weapons and ammunition.

(b)   Warning shots shall not be fired except for the purpose of summoning aid when more conventional communication is not effective and the safety of other persons is ensured.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000544

# Redding Police Department

RPD Policy Manual

*Firearms*

(c) When an employee discharges a firearm, with the exception of section a paragraphs (6) and (7), the employee, as soon as practicable, shall notify the shift supervisor on duty.

(d) Each reportable discharge of a firearm will be investigated in a manner determined by the Department to be appropriate for the circumstances.

(e) The employee who discharged the weapon and the discharge is being investigated by the "Multi-Agency Officer Involved Critical Incident Team" shall not be compelled to provide a statement or written report during the criminal investigation. Employees who decline to provide a consensual, voluntary, and timely detailed account of the discharge incident (either in writing or in an interview, as selected by the Department) may be administratively ordered and compelled by a superior officer, under the authority of the Lybarger and Garrity cases, to provide such an account as part of an administrative investigation.

(f) If the employee who discharged the firearm is incapable of filing the required report, the shift supervisor on duty at the time of occurrence shall be responsible for filing the report.

(g) Each discharge of a firearm that is not being investigated by the "Multi-Agency Officer Involved Critical Incident Team," shall be personally investigated by the shift supervisor on duty at the time of occurrence unless otherwise directed by a division commander.

    1. Upon the conclusion of the investigation, the supervisor conducting the required investigation shall immediately forward a detailed written memorandum to the Chief of Police through the chain of command. This report shall include the conclusion of the investigating officer.

(h) The release of the memoranda or any information pertaining to it shall be cleared through a division commander and/or the Chief of Police.

(i) If in the judgment of the Chief of Police, the circumstances warrant further investigation or action, a Board of Review may be called. The makeup of such a board shall be at the discretion of the Chief and the chairman shall be a commanding officer. The Board shall be authorized to review all circumstances attending the discharge of the firearm and make recommendations to the Chief. The Board shall additionally be responsible to make recommendations as it may deem necessary for changes in firearms policy or training. The recommendations of the Board are not binding on the Chief of Police, whose decision shall be final in all instances.

## 305.4  AUTHORIZED FIREARMS, AMMUNITION AND OTHER WEAPONS

Officers shall only use firearms that are issued or approved by the Department and have been thoroughly inspected by the Rangemaster. Except in an emergency or as directed by a supervisor, no firearm shall be carried by an officer who has not qualified with that firearm at an authorized Department range.

All other weapons not provided by the Redding Police Department, including, but not limited to, edged weapons, chemical or electronic weapons, impact weapons or any weapon prohibited

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000545

# Redding Police Department
RPD Policy Manual

*Firearms*

or restricted by law or that is not covered elsewhere by Department policy, may not be carried by officers in the performance of their official duties without the express authorization of the officer's Division Commander. This exclusion does not apply to the carrying of a single folding pocketknife that is not otherwise prohibited by law.

## 305.4.1   HANDGUNS
The authorized department-issued handgun is the Glock Model 22 (.40 caliber) and shall be used by on-duty, uniformed patrol personnel. The Glock Model 35 (.40 caliber) handgun is also approved for on-duty use by patrol personnel at their own expense.

Alternate handguns are approved for on-duty use by Administration, Investigations, and non-uniformed Sworn Personnel. All alternate-duty weapons shall be a minimum of 9mm and shall not exceed .45 caliber. The weapon must be approved by the Division Commander, inspected by a Department armorer and the officer must successfully pass Department qualification.

## 305.4.2   SHOTGUNS
The authorized department-issued shotgun is the Remington 870 12 gauge.

When not deployed, the shotgun shall be properly secured consistent with department training in a locking weapons rack in the patrol vehicle.

## 305.4.3   PATROL RIFLES
The authorized Department-issued patrol rifle is the AR-15 platform rifle in .223 caliber with a minimum 16" barrel. Motors and SWAT may be authorized by the Division Commander to use shorter barreled rifles.

Officers may deploy the patrol rifle in any circumstance where the officer can articulate a reasonable expectation that the rifle may be needed. Examples of some general guidelines for deploying the patrol rifle may include, but are not limited to:

    (a)    Situations where the member reasonably anticipates an armed encounter.

    (b)    When an officer is faced with a situation that may require accurate and effective fire at long range.

    (c)    Situations where an officer reasonably expects the need to meet or exceed a suspect's firepower.

    (d)    When an officer reasonably believes that there may be a need to fire on a barricaded person or a person with a hostage.

    (e)    When an officer reasonably believes that a suspect may be wearing body armor.

    (f)    When authorized or requested by a supervisor.

    (g)    When needed to euthanize an animal.

When not deployed, the patrol rifle shall be properly secured consistent with department training in a locking weapons rack in the patrol vehicle.Officers shall ensure their issued rifle and each magazine is properly labeled with their name and ID number.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000546

*Firearms*

### 305.4.4   PERSONALLY OWNED DUTY FIREARMS

Officers desiring to carry an authorized but personally owned duty firearm or AR-15 platform rifle must receive approval from the Division Commander and inspection by a Department armorer. Once approved, personally owned duty firearms/rifles are subject to the following restrictions:

(a)   The firearm shall be in good working order and on the department list of approved firearms.

(b)   The firearm and any accessories (e.g., magazines, slings, lights, sights) shall be inspected by a Department armorer prior to being carried and thereafter shall be subject to inspection whenever it is deemed necessary.

(c)   Prior to carrying the firearm, members shall qualify under range supervision and thereafter shall qualify in accordance with the Department qualification schedule. Officers must demonstrate proficiency and safe handling, and that the firearm functions properly.

(d)   Officers shall provide written notice of the make, model, color, serial number and caliber of the firearm to the Department rangemaster, who will maintain a list of the information.

(e)   Rifles must have a minimum 16" barrel and fit into vehicle gun locks.

Personnel are advised that any officer-owned rifle or handgun seized after an officer-involved shooting may be subject to a longer "DOJ hold" period than that of a Department-issued weapon.

### 305.4.5   AUTHORIZED SECONDARY HANDGUN

Officers desiring to carry Department or personally owned secondary handguns are subject to the following restrictions:

(a)   The handgun shall be in good working order and on the department list of approved firearms.

(b)   All secondary/backup weapons shall be a minimum of .380 caliber and shall not exceed .45 caliber.

(c)   The purchase of the handgun and ammunition shall be the responsibility of the officers unless the handgun and ammunition are provided by the Department.

(d)   The handgun shall be carried concealed at all times and in such a manner as to prevent unintentional cocking, discharge or loss of physical control.

(e)   The handgun shall be inspected by the Rangemaster prior to being carried and thereafter shall be subject to inspection whenever it is deemed necessary.

(f)   Ammunition shall be the same as Department issue. If the caliber of the handgun is other than Department issue, the Chief of Police or the authorized designee shall approve the ammunition.

(g)   Prior to carrying the secondary handgun, officers shall qualify under range supervision and thereafter shall qualify in accordance with the department qualification schedule. Officers must demonstrate proficiency and safe handling, and that the handgun functions properly.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Firearms*

    (h)    Officers shall provide written notice of the make, model, color, serial number and caliber of a secondary handgun to the Rangemaster, who will maintain a list of the information.

## 305.4.6  AUTHORIZED OFF-DUTY FIREARMS

The carrying of firearms by officers while off-duty is permitted by the Chief of Police but may be rescinded should circumstances dictate (e.g., administrative leave). Officers who choose to carry a firearm while off-duty, based on their authority as peace officers, will be required to meet the following guidelines:

    (a)    The officers may use his/her duty firearm or may use a personally owned firearm that is carried and inspected in accordance with the Personally Owned Duty Firearms requirements in this policy. An officer carrying his/her duty firearm will be deemed to have complied with (c), (d) and (e) of this section.

        (a)    The purchase of the personally owned firearm and ammunition shall be the responsibility of the officer.

    (b)    The firearm shall be carried concealed at all times and in such a manner as to prevent accidental unintentional cocking, discharge or loss of physical control.

    (c)    It will be the responsibility of the officer to submit the firearm to the Rangemaster for inspection prior to being personally carried. Thereafter the firearm shall be subject to periodic inspection by the Rangemaster.

    (d)    Prior to carrying an off-duty firearm, the officer shall demonstrate to the Rangemaster that he/she is proficient in handling and firing the firearm and that it will be carried in a safe manner.

    (e)    The officer will successfully qualify with the firearm prior to it being carried.

    (f)    Officers shall provide written notice of the make, model, color, serial number and caliber of the firearm to the Rangemaster, who will maintain a list of the information.

    (g)    If an officer desires to use more than one firearm while off-duty, he/she may do so, as long as all requirements set forth in this policy for each firearm are met.

    (h)    When armed, officers should carry their badges and shall carry Redding Police Department identification cards under circumstances requiring possession of such identification.

## 305.4.7  AMMUNITION

Officers shall carry only Department-authorized ammunition. Officers shall be issued fresh duty ammunition in the specified quantity for all Department-issued firearms annually. Replacements for unserviceable or depleted ammunition issued by the Department shall be dispensed by the Rangemaster when needed, in accordance with established policy.

Officers carrying personally owned authorized firearms of a caliber differing from Department-issued firearms shall be responsible for obtaining fresh duty ammunition in accordance with the above, at their own expense.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000548

# Redding Police Department
RPD Policy Manual

*Firearms*

**305.5   EQUIPMENT**
Firearms carried on- or off-duty shall be maintained in a clean, serviceable condition. Maintenance and repair of authorized personally owned firearms are the responsibility of the individual officer.

305.5.1   REPAIRS OR MODIFICATIONS
Each officer shall be responsible for promptly reporting any damage or malfunction of an assigned firearm to a supervisor or the Rangemaster.

Firearms that are the property of the Department or personally owned firearms that are approved for use may be repaired or modified only by a person who is Department-approved and certified as an armorer or gunsmith in the repair of the specific firearm. Such modification or repair must be authorized in advance by the Rangemaster.

Any repairs or modifications to the officer's personally owned firearm shall be done at his/her expense and must be approved by the Rangemaster.

305.5.2   HOLSTERS
Only Department-approved holsters shall be used and worn by on-duty officers. Officers shall periodically inspect their holsters to make sure they are serviceable and provide the proper security and retention of the handgun.

305.5.3   TACTICAL LIGHTS
Optional tactical lights may only be installed on a firearm carried on-duty after they have been examined and approved by the Rangemaster. Once the approved tactical lights have been properly installed on any firearm, the officer shall qualify with the firearm to ensure proper functionality and sighting of the firearm prior to carrying it.

A weapon mounted light shall not be used in situations where only a flashlight is required for illumination.

The light, holster, and batteries are provided to new officers by the Department..

305.5.4   OPTICS OR LASER SIGHTS
Optional holographic weapon sights (HWS), Reflex and Red Dot sight systems may only be installed on a rifle carried on-duty after they have been examined and approved by the Rangemaster. The sights must be of law enforcement or military grade.Sight systems must be non-magnified, non-variable power with a 3 MOA (minutes of angle) dot or less. Any approved sight shall only be installed in strict accordance with manufacturer specifications. Once approved sights have been properly installed on any firearm, the officer shall qualify with the firearm to ensure proper functionality and sighting of the firearm prior to carrying it.

    (a)   The purchase and maintenance of HWS systems shall be the officers' responsibility.

    (b)   Iron sights shall continue to be mounted to all rifles and shall be in useable condition.

    (c)   Except in an approved training situation, a member may only sight in on a target when the member would otherwise be justified in pointing a firearm at the target.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000549

# Redding Police Department

RPD Policy Manual

*Firearms*

The following are approved sighting system manufacturers:

    (a)    Aimpoint, Leopold, Trijicon, and Vortex.

    (b)    EOTech optics manufactured after October 2016.

    (c)    With SWAT Commander approval and qualification by a rangemaster, magnified and/ or variable sight systems may be utilized by SWAT team members.

## 305.6   SAFE HANDLING, INSPECTION AND STORAGE

Members shall maintain the highest level of safety when handling firearms and shall consider the following:

    (a)    Officers shall not unnecessarily display or handle any firearm.

    (b)    While on the range, officers shall be governed by all rules and regulations pertaining to the use of the range and shall obey all orders issued by the Rangemaster. Officers shall not dry fire or practice quick draws except as instructed by the Rangemaster or other firearms training staff.

    (c)    Officers should not clean, repair, load or unload a firearm in the Department, except where clearing barrels are present.

    (d)    Shotguns or rifles removed from vehicles or the equipment storage room shall be loaded and unloaded in the parking lot and outside of the vehicle, using clearing barrels.

    (e)    Officers shall not place or store any firearm or other weapon on Department premises except where the place of storage is locked. No one shall carry firearms into the jail section or any part thereof when securing or processing an arrestee but shall place all firearms in a secured location. Officers providing access to the jail section to persons from outside agencies are responsible for ensuring firearms are not brought into the jail section.

    (f)    Officers shall not use any automatic firearm, heavy caliber rifle, gas or other type of chemical weapon or firearm from the armory, except with the approval of a supervisor.

    (g)    Any firearm authorized by the Department to be carried on- or off-duty that is determined by an officer to be malfunctioning or in need of service or repair shall not be carried. It shall be promptly presented to the Department or a Rangemaster for inspection and repair. Any firearm deemed in need of repair or service by the Rangemaster will be immediately removed from service. If the firearm is the officer's primary duty firearm, a replacement firearm will be issued to the officer until the duty firearm is serviceable.

## 305.6.1   INSPECTION AND STORAGE

Handguns shall be inspected regularly and upon access or possession by another person. Shotguns and rifles shall be inspected at the beginning of the shift by the officer to whom the weapon is issued. The officer shall ensure that the firearm is carried in the proper condition and loaded with approved ammunition. Inspection of the shotgun and rifle shall be done while standing outside of the patrol vehicle. All firearms shall be pointed in a safe direction or into clearing barrels.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000550

# Redding Police Department

RPD Policy Manual

---

*Firearms*

Personally owned firearms may be safely stored in lockers at the end of the shift. Department-owned firearms shall be stored in the appropriate equipment storage room. Handguns may remain loaded if they are secured in an appropriate holster. Shotguns and rifles shall be unloaded in a safe manner outside the building and then stored in the appropriate equipment storage room.

### 305.6.2   STORAGE AT HOME

Officers shall ensure that all firearms and ammunition are locked and secured while in their homes, vehicles or any other area under their control, and in a manner that will keep them inaccessible to children and others who should not have access. Officers shall not permit Department-issued firearms to be handled by anyone not authorized by the Department to do so. Officers should be aware that the negligent storage of a firearm could result in civil and criminal liability (Penal Code § 25100).

### 305.6.3   STORAGE IN VEHICLES

When leaving a handgun in an unattended vehicle, members shall ensure that it is locked in the trunk, or in a locked container that is placed out of view, or in a locked container that is permanently affixed to the vehicle's interior and not in plain view, or in a locked toolbox or utility box permanently affixed to the vehicle (Penal Code § 16850; Penal Code § 25140; Penal Code § 25452).

If the vehicle does not have a trunk or a locked container, then the firearm should be locked within the center utility console that can be locked with a padlock, keylock, combination lock, or other similar locking device (Penal Code § 25140).

Officers are exempt from these requirements during circumstances requiring immediate aid or action in the course of official duties (Penal Code § 25140).

### 305.6.4   ALCOHOL AND DRUGS

Firearms shall not be carried by any officer, either on- or off-duty, who has consumed an amount of an alcoholic beverage, or has taken any drugs or medication, has taken any combination thereof that would tend to adversely affect the officer's senses or judgment.

### 305.6.5   STORAGE IN OR AROUND HOLDING CELLS/JAIL

When handling prisoners in and around holding cells or at the jail, officers shall lock their service handguns in the lockers provided or in the police vehicle trunk or SUV locking cargo box.

## 305.7   FIREARMS TRAINING AND QUALIFICATIONS

### 305.7.1   QUALIFICATION PROCEDURE

All officers who carry a firearm while on-duty are required to successfully complete monthly training with their duty firearms. In addition to this monthly training, all members will qualify at least two times a year with their duty firearms. Officers will qualify with off-duty and secondary firearms at least once a year. Training and qualifications must be on an approved range course.

At least annually, all members carrying a firearm should receive practical training designed to simulate field situations.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000551

# Redding Police Department
RPD Policy Manual

*Firearms*

(a) The term "range" shall include firing facilities used by this Department.

(b) The range is under the authority of the Field Operations Division Commander, who is designated as Chief Range Master, and who is responsible to the Chief of Police for range function and control.

(c) Subject to the approval of the Chief of Police, the Field Operations Division Commander is responsible for the adherence of all rules and regulations governing range operations and procedures, and no regulations or rules may be changed or new rules or regulations established unless approved by him, or by direct authorization of the Chief of Police.

(d) The Chief Range Master may appoint Range Masters whose duties shall include:

1. Development and administration of firearms training programs.

2. Care and maintenance of departmental firearms.

3. Inventory, control, storage, and issuance of ammunition and supplies.

4. Responsibility for the condition and cleanliness of all range facilities.

(e) Cleaning equipment shall be supplied and maintained by a Range Master. Officers using these facilities shall not misuse supplies and shall maintain clean and orderly conditions at all times.

(f) General Safety Rules:

1. The sighting, dry firing, or pointing of a firearm behind the firing line or any other place where accidental discharge might injure any person or property, is prohibited.

2. Firearms shall not be passed to another person unless the cylinder or action is open.

3. Firearms shall always be pointed down-range on the firing line.

4. When a misfire occurs, the shooter shall keep the muzzle of the gun pointed down- range and immediately notify the Range Master. The weapon shall be treated with extreme care until the defective condition has been cleared.

5. An approved form of eye and ear protection must be worn at all times by personnel firing on any of the police ranges.

6. Unholstered weapons shall be carried with the cylinder or the action open and may be benched in an open and safe condition.

7. Weapons should not be loaded or unloaded inside the Department, except for inspection purposes.

## 305.7.2   NON-CERTIFICATION OR NON-QUALIFICATION PROCEDURE
Those who fail to meet minimum standards or qualify on their first shooting attempt shall be provided remedial training and will be subject to the following requirements:

(a) Additional range assignments may be scheduled to assist the officer in demonstrating consistent firearm proficiency.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000552

## Redding Police Department
RPD Policy Manual

*Firearms*

---

    (b)    Officers shall be given credit for a range training or qualification when obtaining a qualifying score or meeting standards after remedial training.

    (c)    No range credit will be given for the following:

        1.    Unauthorized range make-up

        2.    Failure to meet minimum standards or qualify after remedial training

If an officer fails to qualify, the Rangemaster shall notify the on-duty supervisor. Officers who repeatedly fail to meet minimum standards will be removed from field assignment and may be subject to disciplinary action.

### 305.8  RANGEMASTER DUTIES

The range will be under the exclusive control of the Rangemaster. All officers attending will follow the directions of the Rangemaster. The Rangemaster will maintain a roster of all officers attending the range and will submit the roster to the Training Sergeant after each range date. Failure of any officer to sign in and out with the Rangemaster may result in non-qualification.

The range shall remain operational and accessible to department officers during hours established by the Department.

The Rangemaster has the responsibility of making periodic inspection, at least once a year, of all duty firearms carried by officers of this department to verify proper operation. The Rangemaster has the authority to deem any department-issued or personally owned firearm unfit for service. The officer will be responsible for all repairs to his/her personally owned firearm and it will not be returned to service until inspected by the Rangemaster.

The Rangemaster has the responsibility for ensuring each officer meets the minimum requirements during training shoots and, on at least a yearly basis, can demonstrate proficiency in the care, cleaning and safety of all firearms the member is authorized to carry.

The Rangemaster shall complete and submit to the Training Sergeant documentation of the training courses provided. Documentation shall include the qualifications of each instructor who provides the training, a description of the training provided and, on a form that has been approved by the Department, a list of each officer who completes the training. The Rangemaster should keep accurate records of all training shoots, qualifications, repairs, maintenance or other records as directed by the Training Sergeant.

### 305.9  FLYING WHILE ARMED

The Transportation Security Administration (TSA) has imposed rules governing law enforcement officers flying armed on commercial aircraft. The following requirements apply to officers who intend to be armed while flying on a commercial air carrier or flights where screening is conducted (49 CFR 1544.219):

    (a)    Officers wishing to fly while armed must be flying in an official capacity, not for vacation or pleasure, and must have a need to have the firearm accessible, as determined by the Department based on the law and published TSA rules.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod)  000553

*Firearms*

(b)   Officers must carry their Redding Police Department identification card, bearing the officer's name, a full-face photograph, identification number, the officer's signature and the signature of the Chief of Police or the official seal of the Department and must present this identification to airline officials when requested. The officer should also carry the standard photo identification needed for passenger screening by airline and TSA officials (e.g., driver license, passport).

(c)   The Redding Police Department must submit a National Law Enforcement Telecommunications System (NLETS) message prior to the officer's travel. If approved, TSA will send the Redding Police Department an NLETS message containing a unique alphanumeric identifier. The officer must present the message on the day of travel to airport personnel as authorization to travel while armed.

(d)   An official letter signed by the Chief of Police authorizing armed travel may also accompany the officer. The letter should outline the officer's need to fly armed, detail his/her itinerary, and include that the officer has completed the mandatory TSA training for a law enforcement officer flying while armed.

(e)   Officers must have completed the mandated TSA security training covering officers flying while armed. The training shall be given by the department-appointed instructor.

(f)   It is the officer's responsibility to notify the air carrier in advance of the intended armed travel. This notification should be accomplished by early check-in at the carrier's check-in counter.

(g)   Any officer flying while armed should discreetly contact the flight crew prior to take-off and notify them of his/her assigned seat.

(h)   Discretion must be used to avoid alarming passengers or crew by displaying a firearm. The officer must keep the firearm concealed on his/her person at all times. Firearms are not permitted in carry-on luggage and may not be stored in an overhead compartment.

(i)   Officers should try to resolve any problems associated with flying armed through the flight captain, ground security manager, TSA representative or other management representative of the air carrier.

(j)   Officers shall not consume alcoholic beverages while aboard an aircraft, or within eight hours prior to boarding an aircraft.

## 305.10   CARRYING FIREARMS OUT OF STATE

Qualified, active, full-time officers of this Department are authorized to carry a concealed firearm in all other states subject to the following conditions (18 USC § 926B):

(a)   The officer shall carry his/her Redding Police Department identification card whenever carrying such firearm.

(b)   The officer is not the subject of any current disciplinary action.

(c)   The officer may not be under the influence of alcohol or any other intoxicating or hallucinatory drug.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod)  000554

# Redding Police Department

RPD Policy Manual

---

*Firearms*

---

     (d)    The officer will remain subject to this and all other Department policies (including qualifying and training).

Officers are cautioned that individual states may enact local regulations that permit private persons or entities to prohibit or restrict the possession of concealed firearms on their property, or that prohibit or restrict the possession of firearms on any state or local government property, installation, building, base or park. Federal authority may not shield an officer from arrest and prosecution in such locally restricted areas.

Active law enforcement officers from other states are subject to all requirements set forth in 18 USC § 926B.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000555

**Redding Police Department**

RPD Policy Manual

# Vehicle Pursuits

## 306.1  PURPOSE AND SCOPE

Vehicle pursuits expose innocent citizens, law enforcement officers and fleeing violators to the risk of serious injury or death. The primary purpose of this policy is to provide officers with guidance in balancing the safety of the public and themselves against law enforcement's duty to apprehend violators of the law. Another purpose of this policy is to reduce the potential for pursuit-related collisions. Vehicular pursuits require officers to exhibit a high degree of common sense and sound judgment. Officers must not forget that the immediate apprehension of a suspect is generally not more important than the safety of the public and pursuing officers.

Deciding whether to pursue a motor vehicle is a critical decision that must be made quickly and under difficult and unpredictable circumstances. In recognizing the potential risk to public safety created by vehicular pursuits, no officer or supervisor shall be criticized or disciplined for deciding not to engage in a vehicular pursuit because of the risk involved. This includes circumstances where department policy would permit the initiation or continuation of the pursuit. It is recognized that vehicular pursuits are not always predictable and decisions made pursuant to this policy will be evaluated according to the totality of the circumstances reasonably available at the time of the pursuit.

Officers must remember that the most important factors to the successful conclusion of a pursuit are proper self-discipline and sound professional judgment. Officer's conduct during the course of a pursuit must be objectively reasonable; that is, what a reasonable officer would do under the circumstances. An unreasonable individual's desire to apprehend a fleeing suspect at all costs has no place in professional law enforcement.

### 306.1.1  VEHICLE PURSUIT DEFINED

A vehicle pursuit is an event involving one or more law enforcement officers attempting to apprehend a suspect, who is attempting to avoid arrest while operating a motor vehicle by using high-speed driving or other evasive tactics, such as driving off a highway, turning suddenly, or driving in a legal manner but willfully failing to yield to an officer's signal to stop.

## 306.2  OFFICER RESPONSIBILITIES

It shall be the policy of this department that a vehicle pursuit shall be conducted only with red light and siren as required by Vehicle Code § 21055 for exemption from compliance with the rules of the road. The following policy is established to provide officers with guidelines for driving with due regard and caution for the safety of all persons using the highway as required by Vehicle Code § 21056.

### 306.2.1  WHEN TO INITIATE A PURSUIT

Officers are authorized to initiate a pursuit when it is reasonable to believe that a suspect is attempting to evade arrest or detention by fleeing in a vehicle.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

---

*Vehicle Pursuits*

---

The following factors individually and collectively shall be considered in deciding whether to initiate a pursuit:

(a) Seriousness of the known or reasonably suspected crime and its relationship to community safety.

(b) The importance of protecting the public and balancing the known or reasonably suspected offense and the apparent need for immediate capture against the risks to officers, innocent motorists and others.

(c) Apparent nature of the fleeing suspects (e.g., whether the suspects represent a serious threat to public safety).

(d) The identity of the suspects has been verified and there is comparatively minimal risk in allowing the suspects to be apprehended at a later time.

(e) Safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic and the speed of the pursuit relative to these factors.

(f) Pursuing officers familiarity with the area of the pursuit, the quality of radio communications between the pursuing units and the dispatcher/supervisor and the driving capabilities of the pursuing officers under the conditions of the pursuit.

(g) Weather, traffic and road conditions that substantially increase the danger of the pursuit beyond the worth of apprehending the suspect.

(h) Performance capabilities of the vehicles used in the pursuit in relation to the speeds and other conditions of the pursuit.

(i) Vehicle speeds.

(j) Other persons in or on the pursued vehicle (e.g., passengers, co-offenders and hostages).

(k) Availability of other resources such as helicopter assistance.

(l) The police unit is carrying passengers other than police officers. Pursuits should not be undertaken with a prisoner in the police vehicle.

## 306.2.2   WHEN TO TERMINATE A PURSUIT

Pursuits should be discontinued whenever the totality of objective circumstances known or which reasonably ought to be known to the officer or supervisor during the pursuit indicates that the present risks of continuing the pursuit reasonably appear to outweigh the risks resulting from the suspect's escape.

The factors listed in When to Initiate a Pursuit of this policy are expressly included herein and will apply equally to the decision to discontinue as well as the decision to initiate a pursuit. Officers and supervisors must objectively and continuously weigh the seriousness of the offense against the potential danger to innocent motorists and themselves when electing to continue a pursuit. In

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000557

# Redding Police Department

RPD Policy Manual

the context of this policy, the term "terminate" shall be construed to mean discontinue or to stop chasing the fleeing vehicle.

In addition to the factors listed in When to Initiate a Pursuit of this policy, the following factors should also be considered in deciding whether to terminate a pursuit:

(a) Distance between the pursuing officers and the fleeing vehicle is so great that further pursuit would be futile or require the pursuit to continue for an unreasonable time and/or distance.

(b) Pursued vehicle's location is no longer definitely known.

(c) Officer's pursuit vehicle sustains any type of damage that renders it unsafe to drive.

(d) Extended pursuits of violators for misdemeanors not involving violence or risk of serious harm (independent of the pursuit) are discouraged.

(e) There are hazards to uninvolved bystanders or motorists.

(f) If the identity of the offender is known and it does not reasonably appear that the need for immediate capture outweighs the risks associated with continuing the pursuit, officers should strongly consider discontinuing the pursuit and apprehending the offender at a later time.

(g) Pursuit is terminated by a supervisor.

### 306.2.3  SPEED LIMITS

The speed of a pursuit is a factor that should be evaluated on a continuing basis by the officer and supervisor. Evaluation of vehicle speeds shall take into consideration public safety, officer safety and the safety of the occupants of the fleeing vehicle.

Should high vehicle speeds be reached during a pursuit, officers and supervisors shall also consider these factors when determining the reasonableness of the speed of the pursuit:

(a) Pursuit speeds have become unreasonably unsafe for the surrounding conditions.

(b) Pursuit speeds have exceeded the driving ability of the officer.

(c) Pursuit speeds are beyond the capabilities of the pursuit vehicle thus making its operation unsafe.

## 306.3  PURSUIT UNITS

Pursuit units should be limited to three vehicles (two units and a supervisor); however, the number of units involved will vary with the circumstances. An officer or supervisor may request additional units to join a pursuit if, after assessing the factors outlined above, it appears that the number of officers involved would be insufficient to safely arrest the suspects. All other officers should stay out of the pursuit, but should remain alert to its progress and location. Any officer who drops out of a pursuit may then, if necessary, proceed to the termination point.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000558

# Redding Police Department

RPD Policy Manual

---

*Vehicle Pursuits*

---

### 306.3.1   MOTORCYCLE OFFICERS

A distinctively marked patrol vehicle equipped with emergency overhead lighting should replace a police motorcycle as primary and/or secondary pursuit unit as soon as practical.

### 306.3.2   VEHICLES WITHOUT EMERGENCY EQUIPMENT

Vehicles not equipped with red light and siren are generally prohibited from initiating or joining in any pursuit. Officers in such vehicles, however, may become involved in emergency activities involving serious crimes or life threatening situations. Those officers should terminate their involvement in any pursuit immediately upon arrival of a sufficient number of emergency police vehicles or any police helicopter. The exemptions provided by Vehicle Code § 21055 do not apply to officers using vehicles without emergency equipment.

### 306.3.3   PRIMARY UNIT RESPONSIBILITIES

The initial pursuing unit will be designated as the primary pursuit unit and will be responsible for the conduct of the pursuit unless it is unable to remain reasonably close enough to the violator's vehicle. The primary responsibility of the officer initiating the pursuit is the apprehension of the suspects without unreasonable danger to him/herself or other persons.

Notify SHASCOM that a vehicle pursuit has been initiated and as soon as practicable provide information including, but not limited to:

    (a)    Reason for the pursuit.

    (b)    Location and direction of travel.

    (c)    Speed of the fleeing vehicle.

    (d)    Description of the fleeing vehicle and license number, if known.

    (e)    Number of known occupants.

    (f)    The identity or description of the known occupants.

    (g)    Information concerning the use of firearms, threat of force, injuries, hostages or other unusual hazards.

Unless relieved by a supervisor or secondary unit, the officer in the primary unit shall be responsible for the broadcasting of the progress of the pursuit. Unless practical circumstances indicate otherwise, and in order to concentrate on pursuit driving, the primary officer should relinquish the responsibility of broadcasting the progress of the pursuit to a secondary unit or aircraft joining the pursuit.

### 306.3.4   SECONDARY UNITS RESPONSIBILITIES

The second officer in the pursuit is responsible for the following:

    (a)    The officer in the secondary unit should immediately notify the dispatcher of entry into the pursuit.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Redding Police Department

RPD Policy Manual

*Vehicle Pursuits*

---

(b) Remain a safe distance behind the primary unit unless directed to assume the role of primary officer, or if the primary unit is unable to continue the pursuit.

(c) The secondary officer should be responsible for broadcasting the progress of the pursuit unless the situation indicates otherwise.

### 306.3.5  PURSUIT DRIVING TACTICS

The decision to use specific driving tactics requires the same assessment of considerations outlined in the factors to be considered concerning pursuit initiation and termination. The following are tactics for units involved in the pursuit:

(a) Officers, considering their driving skills and vehicle performance capabilities, will space themselves from other involved vehicles such that they are able to see and avoid hazards or react safely to maneuvers by the fleeing vehicle.

(b) Because intersections can present increased risks, the following tactics should be considered:

   1. Available units not directly involved in the pursuit may proceed safely to controlled intersections ahead of the pursuit in an effort to warn cross traffic.

   2. Pursuing units should exercise due caution when proceeding through controlled intersections.

(c) As a general rule, officers should not pursue a vehicle driving left of center (wrong way) on a freeway. In the event that the pursued vehicle does so, the following tactics should be considered:

   1. Requesting assistance from an air unit.

   2. Maintaining visual contact with the pursued vehicle by paralleling it on the correct side of the roadway.

   3. Requesting other units to observe exits available to the suspects.

(d) Notifying the California Highway Patrol (CHP) and/or other jurisdictional agency if it appears that the pursuit may enter their jurisdiction.

(e) Officers involved in a pursuit should not attempt to pass other units unless the situation indicates otherwise or they are requested to do so by the primary unit.

### 306.3.6  TACTICS/PROCEDURES FOR UNITS NOT INVOLVED IN THE PURSUIT

There should be no paralleling of the pursuit route. Officers are authorized to use emergency equipment at intersections along the pursuit path to clear intersections of vehicular and pedestrian traffic to protect the public. Officers should remain in their assigned area and should not become involved with the pursuit unless directed otherwise by a supervisor or exigent circumstances exist.

Non-pursuing personnel needed at the termination of the pursuit should respond in a non-emergency manner, observing the rules of the road.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000560

*Vehicle Pursuits*

The primary and secondary units should be the only units operating under emergency conditions (red light and siren) unless other units are assigned to the pursuit.

### 306.3.7  PURSUIT TRAILING
In the event the initiating unit from this agency either relinquishes control of the pursuit to another unit or jurisdiction, that initiating unit may, with permission of a supervisor, trail the pursuit to the termination point in order to provide necessary information and assistance for the arrest of the suspects.

The term trail means to follow the path of the pursuit at a safe speed while obeying all traffic laws and without activating emergency equipment. If the pursuit is at a slow rate of speed, the trailing unit will maintain sufficient distance from the pursuit units so as to clearly indicate an absence of participation in the pursuit.

### 306.3.8  AIRCRAFT ASSISTANCE
When available, aircraft assistance should be requested. Once the air unit has established visual contact with the pursued vehicle, it should assume control over the pursuit. The primary and secondary ground units should consider the participation of aircraft assistance when determining whether to continue the pursuit.

The air unit should coordinate the activities of resources on the ground, report progress of the pursuit and provide officers and supervisors with details of upcoming traffic congestion, road hazards, or other pertinent information to evaluate whether or not to continue the pursuit. If ground units are not within visual contact and the air unit determines that it is unsafe to continue the pursuit, the air unit may recommend termination of the pursuit.

## 306.4  SUPERVISORY CONTROL AND RESPONSIBILITY
It is the policy of this department that available supervisory and management control will be exercised over all vehicle pursuits involving officers from this department.

The field supervisor of the officer initiating the pursuit, or if unavailable, the nearest field supervisor will be responsible for the following:

    (a)    Upon becoming aware of a pursuit, immediately ascertaining all reasonably available information to continuously assess the situation and risk factors associated with the pursuit in order to ensure that the pursuit is conducted within established department guidelines.

    (b)    Engaging in the pursuit, when appropriate, to provide on-scene supervision.

    (c)    Exercising management and control of the pursuit even if not engaged in it.

    (d)    Ensuring that no more than the number of required police units needed are involved in the pursuit under the guidelines set forth in this policy.

    (e)    Directing that the pursuit be terminated if, in his/her judgment, it is unjustified to continue the pursuit under the guidelines of this policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

*Vehicle Pursuits*

    (f)    Ensuring that aircraft are requested if available.

    (g)    Ensuring that the proper radio channel is being used.

    (h)    Ensuring the notification and/or coordination of outside agencies if the pursuit either leaves or is likely to leave the jurisdiction of this agency.

    (i)    Controlling and managing RPD units when a pursuit enters another jurisdiction.

    (j)    Critique post-pursuit and identify any training issues..

### 306.4.1   WATCH COMMANDER RESPONSIBILITY

Upon becoming aware that a pursuit has been initiated, the Watch Commander should monitor and continually assess the situation and ensure the pursuit is conducted within the guidelines and requirements of this policy. The Watch Commander has the final responsibility for the coordination, control and termination of a vehicle pursuit and shall be in overall command.

The Watch Commander shall review all pertinent reports for content and forward to the Division Commander.

### 306.5   COMMUNICATIONS

If the pursuit is confined within the City limits, radio communications will be conducted on the primary channel unless instructed otherwise by a supervisor or communications dispatcher. If the pursuit leaves the jurisdiction of this department or such is imminent, involved units should, whenever available, switch radio communications to an emergency channel most accessible by participating agencies and units.

### 306.5.1   COMMUNICATION CENTER RESPONSIBILITIES

Upon notification that a pursuit has been initiated, SHASCOM will:

    (a)    Coordinate pursuit communications of the involved units and personnel.

    (b)    Notify and coordinate with other involved or affected agencies as practicable.

    (c)    Ensure that a field supervisor is notified of the pursuit.

    (d)    Assign an incident number and log all pursuit activities.

    (e)    Broadcast pursuit updates as well as other pertinent information as necessary.

    (f)    Notify the Watch Commander as soon as practicable.

### 306.5.2   LOSS OF PURSUED VEHICLE

When the pursued vehicle is lost, the primary unit should broadcast pertinent information to assist other units in locating suspects. The primary unit will be responsible for coordinating any further search for either the pursued vehicle or suspects fleeing on foot.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Redding Police Department

RPD Policy Manual

*Vehicle Pursuits*

---

## 306.6  INTER-JURISDICTIONAL CONSIDERATIONS

When a pursuit enters another agency's jurisdiction, the primary officer or supervisor, taking into consideration distance traveled, unfamiliarity with the area and other pertinent facts, should determine whether to request the other agency to assume the pursuit. Unless entry into another jurisdiction is expected to be brief, it is generally recommended that the primary officer or supervisor ensure that notification is provided to each outside jurisdiction into which the pursuit is reasonably expected to enter, regardless of whether such jurisdiction is expected to assist.

### 306.6.1  ASSUMPTION OF PURSUIT BY ANOTHER AGENCY

Units originally involved will discontinue the pursuit when advised that another agency has assumed the pursuit and assistance of the Redding Police Department is no longer needed. Upon discontinuing the pursuit, the primary unit should proceed to the termination point to assist in the investigation.

The role and responsibilities of officers at the termination of a pursuit initiated by this department shall be coordinated with appropriate consideration of the units from the agency assuming the pursuit.

Notification of a pursuit in progress should not be construed as a request to join the pursuit. Requests to or from another agency to assume a pursuit should be specific. Because of communication limitations between local agencies and CHP units, a request for CHP assistance will mean that they will assume responsibilities for the pursuit. For the same reasons, when a pursuit leaves the freeway and a request for assistance is made to this department, the CHP may relinquish control.

### 306.6.2  PURSUITS EXTENDING INTO THIS JURISDICTION

The agency that initiates a pursuit shall be responsible for conducting the pursuit. Units from this department shall  not join a pursuit unless specifically requested to do so by the agency whose officers are in pursuit. The exception to this is when a single unit from the initiating agency is in pursuit. Under this circumstance, a unit from this department may join the pursuit until sufficient units from the initiating agency join the pursuit. Officers and supervisors shall adhere to the "Shasta County Law Enforcement Inter-Agency Vehicle Pursuit Agreement."

When a request is made for this department to assist or take over a pursuit from another agency that has entered this jurisdiction, the supervisor should consider these additional following factors:

(a)  Ability to maintain the pursuit

(b)  Circumstances serious enough to continue the pursuit

(c)  Adequate staffing to continue the pursuit

(d)  The public's safety within this jurisdiction

(e)  Safety of the pursuing officers

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000563

Redding Police Department

RPD Policy Manual

*Vehicle Pursuits*

As soon as practicable, a supervisor or the Watch Commander should review a request for assistance from another agency. The Watch Commander or supervisor, after consideration of the above factors, may decline to assist in, or assume the other agency's pursuit.

Assistance to a pursuing allied agency by officers of this department will terminate at the City limits provided that the pursuing officers have sufficient assistance from other sources. Ongoing participation from this department may continue only until sufficient assistance is present.

In the event that a pursuit from another agency terminates within this jurisdiction, officers shall provide appropriate assistance to officers from the allied agency including, but not limited to, scene control, coordination, and completion of supplemental reports and any other assistance requested or needed.

**306.7  PURSUIT INTERVENTION**
Pursuit intervention is an attempt to terminate the ability of a suspect to continue to flee in a motor vehicle through tactical application of technology, road spikes, blocking, boxing, PIT (Pursuit Intervention Technique), ramming or roadblock procedures. In this context, ramming shall be construed to mean maneuvering the police unit into contact with the pursued vehicle to mechanically disable or forcibly position it such that further flight is not possible or practicable.

306.7.1   WHEN USE IS AUTHORIZED
Use of pursuit intervention tactics should be employed only after approval of a supervisor. In deciding whether to use intervention tactics, officers/supervisors should balance the risks of allowing the pursuit to continue with the potential hazards arising from the use of each tactic to the public, the officers and persons in or on the pursued vehicle. With these risks in mind, the decision to use any intervention tactic should be reasonable in light of the circumstances confronting the officer at the time of the decision.

It is imperative that officers act within the bounds of legality, good judgment and accepted practices.

306.7.2   DEFINITIONS
**Blocking or vehicle intercept** - A slow-speed coordinated maneuver where two or more patrol vehicles simultaneously intercept and block the movement of a suspect vehicle, the driver of which may be unaware of the impending enforcement stop, with the goal of containment and preventing a pursuit. Blocking is not a moving or stationary road block.

**Boxing-in** - A tactic designed to stop a violator's vehicle by surrounding it with law enforcement vehicles and then slowing all vehicles to a stop.

**Pursuit Intervention Technique (PIT)** - A low-speed maneuver designed to cause the suspect vehicle to spin out and terminate the pursuit.

**Ramming** - The deliberate act of impacting a violator's vehicle with another vehicle to functionally damage or otherwise force the violator's vehicle to stop.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000564

# Redding Police Department

RPD Policy Manual

---

*Vehicle Pursuits*

---

**Roadblocks** - A tactic designed to stop a violator's vehicle by intentionally placing an emergency vehicle or other immovable object in the path of the violator's vehicle.

**Spikes or tack strips** - A device that extends across the roadway designed to puncture the tires of the pursued vehicle.

### 306.7.3   USE OF FIREARMS

The use of firearms to disable a pursued vehicle is not generally an effective tactic and involves all the dangers associated with discharging firearms. Officers should not utilize firearms during an ongoing pursuit unless the conditions and circumstances dictate that such use reasonably appears necessary to protect life. Nothing in this section shall be construed to prohibit any officer from using a firearm to stop a suspect from using a vehicle as a deadly weapon.

### 306.7.4   INTERVENTION STANDARDS

Any pursuit intervention tactic, depending upon the conditions and circumstances under which it is used, may present dangers to the officers, the public or anyone in or on the vehicle being pursued. Certain applications of intervention tactics may be construed to be a use of deadly force and subject to the requirements for such use. Officers shall consider these facts and requirements prior to deciding how, when, where and if an intervention tactic should be employed.

(a) Blocking or vehicle intercept should only be considered in cases involving felony suspects or impaired drivers who pose a threat to public safety when officers reasonably believe that attempting a conventional enforcement stop will likely result in the driver attempting to flee in the vehicle. Because of the potential risks involved, this technique should only be employed by officers who have received training in such tactics after giving consideration to the following:

1. The need to immediately stop the suspect vehicle or prevent it from leaving substantially outweighs the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.

2. All other reasonable intervention techniques have failed or reasonably appear ineffective.

3. Employing the blocking maneuver does not unreasonably increase the risk to officer safety.

4. The target vehicle is stopped or traveling at a low speed.

5. At no time should civilian vehicles be used to deploy this technique.

(b) Only those officers trained in the use of the Pursuit Intervention Technique (PIT) will be authorized to use this procedure and only then with approval of a supervisor upon consideration of the circumstances and conditions presented at the time, including the potential for risk of injury to officers, the public and occupants of the pursued vehicle.

(c) Ramming a fleeing vehicle should be done only after other reasonable tactical means at the officer's disposal have been exhausted. This tactic should be reserved for

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000565

Redding Police Department

RPD Policy Manual

*Vehicle Pursuits*

situations where there does not appear to be another reasonable alternative method. This policy is an administrative guide to direct officers in their decision-making process before ramming another vehicle. When ramming is used as a means to stop a fleeing vehicle, one or more of the following factors should be present:

1. The suspect is an actual or suspected felon who reasonably appears to represent a serious threat to the public if not apprehended.

2. The suspect is driving with willful or wanton disregard for the safety of other persons or is driving in a reckless and life-endangering manner.

3. If there does not reasonably appear to be a present or immediately foreseeable serious threat to the public, the use of ramming is not authorized.

(d) As with all intervention techniques, pursuing officers should obtain supervisor approval before attempting to box a suspect vehicle during a pursuit. The use of such a technique must be carefully coordinated with all involved units, taking into consideration the circumstances and conditions presented at the time as well as the potential risk of injury to officers, the public and occupants of the pursued vehicle.

(e) The use of spike strips should be approved in advance by a supervisor and deployed only when it is reasonably certain that only the pursued vehicle will be affected by their use. Officers should carefully consider the limitations of such devices as well as the potential risks to officers, the public and occupants of the pursued vehicle. If the pursued vehicle is a motorcycle, a vehicle transporting hazardous materials, or a school bus transporting children, officers and supervisors should weigh the potential consequences against the need to immediately stop the vehicle.

(f) Because roadblocks involve a potential for serious injury or death to occupants of the pursued vehicle if the suspect does not stop, the intentional placement of roadblocks in the direct path of a pursued vehicle is generally discouraged and should not be deployed without prior approval of a supervisor and only then under extraordinary conditions when all other reasonable intervention techniques have failed or reasonably appear ineffective and the need to immediately stop the pursued vehicle substantially outweighs the risks of injury or death to occupants of the pursued vehicle, officers or other members of the public.

## 306.7.5  CAPTURE OF SUSPECTS

Proper self-discipline and sound professional judgment are the keys to a successful conclusion of a pursuit and apprehension of evading suspects. Officers shall use only that amount of force, which reasonably appears necessary under the circumstances, to properly perform their lawful duties.

Unless relieved by a supervisor, the primary officer should coordinate efforts to apprehend the suspects following the pursuit. Officers should consider safety of the public and the involved officers when formulating plans to contain and capture the suspects.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000566

# Redding Police Department
RPD Policy Manual

*Vehicle Pursuits*

## 306.8   REPORTING REQUIREMENTS
The following reports should be completed upon conclusion of all pursuits:

    (a)    The primary officer should complete appropriate crime/arrest reports.

    (b)    The Watch Commander shall ensure that an Allied Agency Vehicle Pursuit Report (form CHP 187A) is filed with the CHP not later than 30 days following the pursuit (Vehicle Code § 14602.1). The supervisor should complete as much of the required information on the form as is known and forward the report to the Watch Commander for review and distribution.

### 306.8.1   REGULAR AND PERIODIC PURSUIT TRAINING
In addition to initial and supplementary Police Officer Standard Training (POST) training on pursuits required by Penal Code § 13519.8, all sworn members of this department will participate no less than annually in regular and periodic department training addressing this policy and the importance of vehicle safety and protecting the public at all times, including a recognition of the need to balance the known offense and the need for immediate capture against the risks to officers and others (Vehicle Code § 17004.7(d)).

### 306.8.2   POLICY REVIEW
Each sworn member of this department shall certify in writing that they have received, read and understand this policy initially and upon any amendments. The POST attestation form, or an equivalent form, may be used to document the compliance and should be retained in the member's training file.

## 306.9   APPLICATION OF VEHICLE PURSUIT POLICY
This policy is expressly written and adopted pursuant to the provisions of Vehicle Code § 17004.7, with additional input from the POST Vehicle Pursuit Guidelines.

# Officer Response to Calls

## 307.1   PURPOSE AND SCOPE
This policy provides for the safe and appropriate response to emergency and non-emergency situations whether dispatched or self-initiated.

## 307.2   RESPONSE TO CALLS
Officers dispatched "Code-3" shall consider the call an emergency response and proceed immediately. Officers responding Code-3 shall continuously operate emergency lighting equipment, including at minimum a steady forward facing red light, and shall sound the siren as reasonably necessary pursuant to Vehicle Code § 21055.

Responding with emergency light(s) and siren does not relieve the officer of the duty to continue to drive with due regard for the safety of all persons. The use of any other warning equipment without a red light and siren does not provide any exemption from the Vehicle Code.

Officers should only respond Code-3 when so dispatched or when circumstances reasonably indicate an emergency response is required. Officers not authorized to respond Code-3 shall observe all traffic laws and proceed without the use of emergency lights and siren.

Non-sworn personnel shall not respond to calls for service or drive Department vehicles with the emergency lights or sirens activated. Upon arriving at the scene of an emergency call, non-sworn personnel may use the vehicle's overhead emergency lights to assist with traffic control or other vehicular movement within the area.

### 307.2.1   ESCORTS
Pursuant to Vehicle Code §21057, marked police vehicles sounding a siren and using emergency lights (Code-3) as an escort vehicle is prohibited with the following exceptions:

(a)   Escorting for the purpose of preserving life.

(b)   Expediting the movement of supplies or personnel during a national, state, or local emergency.

When escorting for the purpose of preserving life, officers will consider the nature of the emergency, the dangers and hazards involved, and the emotional condition of the person to be escorted before deciding to escort "Code-3".

Department members will not provide escorts for private vehicle processions except as follows:

(a)   Motor vehicle processions for heads of state, federal, or state government officials and under other situations deemed appropriate by the Chief of Police.

(b)   Official government sponsored or sanctioned functions or events.

(c)   Emergency situations when escorts are furnished to assist in preserving life, protecting public safety, or when expediting movements of supplies or personnel for any federal, state, or local agency during a national, state, or local emergency. (Redding Municipal Code 9.12.)

Redding Police Department

RPD Policy Manual

*Officer Response to Calls*

      (d)    Parades permitted by the Redding Municipal Code Chapter 11.44.

Private funeral procession escorts will not be provided by Department members unless authorized and directed by the Chief of Police or his/her designee.

Private funeral procession permits will be issued by the Redding Police Department when applicants have met all the necessary requirements. Generally, the permit allows limited powers in directing traffic at intersections to allow the funeral procession to proceed as an unbroken chain. (Redding Municipal Code Chapter 11.48.)

### 307.3  REQUESTING EMERGENCY ASSISTANCE

Requests for emergency assistance should be limited to those situations where the involved personnel reasonably believe that there is an immediate threat to the safety of officers, or assistance is needed to prevent imminent serious harm to a citizen. In any event, where a situation has stabilized and emergency response is not required, the requesting officer shall immediately notify SHASCOM.

If circumstances permit, the requesting officer should give the following information.

- The location
- The reason for the request and type of emergency
- The number of units required

### 307.4  INITIATING CODE 3 RESPONSE

Taking the tactics of an incident into account, officers responding to an emergency situation in an emergency response mode (Code-3) should advise SHASCOM of their Code-3 response, their location, and their direction of travel. SHASCOM shall ensure the Field Operations supervisor is notified. The use of Channel 2 is appropriate to minimize radio traffic on the primary channel.

### 307.5  RESPONSIBILITIES OF RESPONDING OFFICERS

Officers shall exercise sound judgment and care with due regard for life and property when responding to an emergency call. Officers shall reduce speed at all street intersections to such a degree that they shall have complete control of the vehicle.

The decision to continue a Code-3 response is at the discretion of the officer. If in the officer's judgment, the roadway conditions or traffic congestion does not permit such a response without unreasonable risk, the officer may elect to respond to the call without the use of red lights and siren at the legal speed limit. In such an event, the officer should notify SHASCOM. The use of Channel 2 is appropriate to minimize radio traffic on the primary channel.An officer shall also discontinue the Code-3 response when directed by a supervisor.

### 307.6  SUPERVISORY RESPONSIBILITIES

Upon being notified that a Code-3 response has been initiated, the field supervisor shall verify the following:

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000569

## Redding Police Department
### RPD Policy Manual

*Officer Response to Calls*

---

     (a)    The proper response has been initiated

     (b)    No more than those units reasonably necessary under the circumstances are involved in the response

     (c)    Affected outside jurisdictions are being notified as practical

The field supervisor shall monitor the response until it has been stabilized or terminated and assert control by directing units into or out of the response if necessary. If, in the supervisor's judgment, the circumstances require additional units to be assigned a Code-3 response, the supervisor may do so.

It is the supervisor's responsibility to terminate a Code-3 response that, in his/her judgment is inappropriate due to the circumstances.

When making the decision to authorize a Code-3 response, the field supervisor should consider the following:

- The type of call

- The necessity of a timely response

- Traffic and roadway conditions

- The location of the responding units

### 307.7  FAILURE OF EMERGENCY EQUIPMENT

If the emergency equipment on the vehicle should fail to operate, the officer must terminate the Code-3 response and respond accordingly. In all cases, the officer shall notify the Watch Commander, field supervisor, or SHASCOM of the equipment failure so that another unit may be assigned to the emergency response.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Redding Police Department
RPD Policy Manual

# Canines

## 308.1   PURPOSE AND SCOPE
This policy establishes guidelines for the use of canines to augment police services in the community, including but not limited to locating individuals and contraband and apprehending criminal offenders.

## 308.2   POLICY
It is the policy of the Redding Police Department that teams of handlers and canines meet and maintain the appropriate proficiency to effectively and reasonably carry out legitimate law enforcement objectives.

## 308.3   ASSIGNMENT
Police canine teams will operate at the direction of the Field Operations Division Commander. The Canine Unit Manager and Canine Unit Supervisor will have direct responsibility of the canine teams. Canine teams should be assigned to assist and supplement the Field Operations Division to function primarily in assist or cover assignments. However, they may be assigned by the Watch Commander to other functions, such as routine calls for service, based on the current operational needs.

## 308.4   CANINE UNIT SUPERVISOR
The canine supervisor shall be appointed by and directly responsible to the Field Operations Division or the authorized designee.

The responsibilities of the supervisor include, but are not limited to:

(a) Reviewing all canine use reports to ensure compliance with policy and to identify training issues and other needs of the program.

(b) Maintaining a liaison with the vendor kennel.

(c) Maintaining a liaison with command staff and functional supervisors.

(d) Maintaining a liaison with other agency canine coordinators.

(e) Maintaining accurate records to document canine activities.

(f) Recommending and overseeing the procurement of equipment and services for the teams of handlers and canines.

(g) Scheduling all canine-related activities.

(h) Ensuring the canine teams are scheduled for regular training to maximize their capabilities.

(i) Maintain liaison with the Redding Animal Regulations Office (ARO) to ensure that information regarding canine bites is not retained by its office.  Canine used by law enforcement agencies are exempt from impoundment and reporting requirements to the Redding ARP (Food and Agriculture Code – 31609(b)).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000571

Redding Police Department

RPD Policy Manual

*Canines*

### 308.5   REQUESTS FOR CANINE TEAMS

Field Operations Division members are encouraged to request the use of a canine. Requests for a canine team from department units outside of the Field Operations Division shall be reviewed by the shift supervisor.

### 308.5.1   OUTSIDE AGENCY REQUEST

All requests for canine assistance from outside agencies must be approved by the Watch Commander and are subject to the following:

(a)   Canine teams shall not be used for any assignment that is not consistent with this policy.

(b)   The canine handler shall have the authority to decline a request for any specific assignment that he/she deems unsuitable.

(c)   Police canine teams should not be called out from an off-duty status without prior approval of the shift supervisor.

(d)   It shall be the responsibility of the canine handler to coordinate operations with agency personnel in order to minimize the risk of unintended injury.

(e)   It shall be the responsibility of the canine handler to complete all necessary reports or as directed.

### 308.5.2   PUBLIC DEMONSTRATIONS

All public requests for a canine team shall be reviewed and, if appropriate, approved by the canine supervisor prior to making any resource commitment. The canine supervisor is responsible for obtaining resources and coordinating involvement in the demonstration to include proper safety protocols.

### 308.6   APPREHENSION GUIDELINES

A canine may be used to locate and apprehend a suspect if the canine handler reasonably believes that the individual has either committed, is committing or threatening to commit any serious offense and if any of the following conditions exist:

(a)   There is a reasonable belief the suspect poses an imminent threat of violence or serious harm to the public, any officer or the handler.

(b)   The suspect is physically resisting or threatening to resist arrest and the use of a canine reasonably appears to be necessary to overcome such resistance.

(c)   The suspect is believed to be concealed in an area where entry by other than the canine would pose a threat to the safety of officers or the public.

It is recognized that situations may arise that do not fall within the provisions set forth in this policy. Such events require consideration of the totality of the circumstances and the use of an objective reasonableness standard applied to the decision to use a canine

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000572

# Redding Police Department

RPD Policy Manual

---

*Canines*

---

Absent a reasonable belief that a suspect has committed, is committing or is threatening to commit a serious offense, mere flight from a pursuing officer, without any of the above conditions, shall not serve as the basis for the use of a canine to apprehend a suspect.

Use of a canine to locate and apprehend a suspect wanted for a lesser criminal offense than those identified above requires approval from the Watch Commander. Absent a change in circumstances that present an imminent threat to officers, the canine or the public, such canine use should be conducted on-leash or under conditions that minimize the likelihood, the canine will bite or otherwise injure the individual.

In all applications, once the suspect has been located and no longer reasonably appears to present a threat or risk of escape, the handler should secure the canine as soon as it becomes reasonably practicable.

If the canine has apprehended the suspect with a secure bite, and the handler believes that the suspect no longer poses a threat, the handler should promptly command the canine to release the suspect.

Police canines, whether on or off leash, shall be under the direct control of their handlers at all times unless officer safety considerations exist.

## 308.6.1  PREPARATION FOR DEPLOYMENT

Prior to the use of a canine to search for or apprehend any suspect, the canine handler and/or the supervisor on-scene should carefully consider all pertinent information reasonably available at the time. The information should include, but is not limited to:

(a)  The nature and seriousness of the suspected offense.

(b)  Whether violence or weapons were used or are anticipated.

(c)  The degree of resistance or threatened resistance, if any, the suspect has shown.

(d)  The suspect's known or perceived age.

(e)  The potential for injury to officers or the public caused by the suspect if the canine is not utilized.

(f)  Any potential danger to the public and/or other officers at the scene if the canine is released.

(g)  The potential for the suspect to escape or flee if the canine is not utilized.

(h)  Whether the suspect is believed to be concealed in an area where entry by other than the police service dog would pose a threat to the safety of officers or the public.

As circumstances permit, the canine handler should make every reasonable effort to communicate and coordinate with other involved members to minimize the risk of unintended injury.

It is the canine handler's responsibility to evaluate each situation and determine whether the use of a canine is appropriate and reasonable. The canine handler shall have the authority to decline the use of the canine whenever he/she deems deployment is unsuitable.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000573

# Redding Police Department

RPD Policy Manual

---

*Canines*

---

A supervisor who is sufficiently apprised of the situation may prohibit deploying the canine.

Unless otherwise directed by a supervisor, assisting members should take direction from the handler in order to minimize interference with the canine.

### 308.6.2   WARNINGS AND ANNOUNCEMENTS

Unless it would increase the risk of injury or escape, a clearly audible warning announcing that a canine will be used if the suspect does not surrender should be made prior to releasing a canine. The handler should allow a reasonable time for a suspect to surrender and should quiet the canine momentarily to listen for any verbal response to the warning. If feasible, other members should be in a location opposite the warning to verify that the announcement could be heard. If available, warnings given in other languages should be used as necessary.

If a warning is not to be given, the canine handler, when practicable, should first advise the supervisor of his/her decision before releasing the canine. In the event of an apprehension, the handler shall document in any related report how the warning was given and, if none was given, the reasons why.

### 308.6.3   REPORTING DEPLOYMENTS, BITES, AND INJURIES

Handlers should document canine deployments in a canine use report. Whenever a canine deployment results in a bite or causes injury to an intended suspect, a supervisor should be promptly notified and the injuries documented in the canine use report. The injured person shall be promptly treated by Emergency Medical Services personnel and, if appropriate, transported to an appropriate medical facility for further treatment. The deployment and injuries should also be included in any related incident or arrest report.

Any unintended bite or injury caused by a canine, whether on- or off-duty, shall be promptly reported to the canine coordinator. Unintended bites or injuries caused by a canine should be documented in an administrative report, not in a canine use report.

If an individual alleges an injury, either visible or not visible, a supervisor shall be notified and both the individual's injured and uninjured areas shall be photographed as soon as practicable after first tending to the immediate needs of the injured party. Photographs shall be retained as evidence in accordance with current department evidence procedures. The photographs shall be retained until the criminal proceeding is completed and the time for any related civil proceeding has expired.

Canines used by law enforcement agencies are generally exempt from impoundment and reporting requirements. However, the canine shall be made available for examination at any reasonable time if requested by the local health department. The canine handler shall also notify the local health department if the canine exhibits any abnormal behavior after a bite (Health and Safety Code § 121685).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000574

## Redding Police Department
RPD Policy Manual

*Canines*

### 308.6.4  TRANSPORTATION OF PRISONERS
Prisoners shall not be transported in a patrol vehicle containing a police canine. Individuals in custody per section 5150 WIC shall not be transported in a patrol vehicle containing any police canine.

### 308.7  NON-APPREHENSION GUIDELINES
Properly trained canines may be used to track or search for non-criminals (e.g., lost children, individuals who may be disoriented or in need of medical attention). The canine handler is responsible for determining the canine's suitability for such assignments based on the conditions and the particular abilities of the canine. When the canine is deployed in a search or other non-apprehension operation, the following guidelines apply:

(a) Absent a change in circumstances that presents an imminent threat to officers, the canine, or the public, such applications should be conducted on-leash or under conditions that minimize the likelihood the canine will bite or otherwise injure the individual, if located.

(b) Unless otherwise directed by a supervisor, assisting members should take direction from the handler in order to minimize interference with the canine.

(c) Throughout the deployment, the handler should periodically give verbal assurances that the canine will not bite or hurt the individual and encourage the individual to make him/herself known.

(d) Once the individual has been located, the handler should place the canine in a down-stay or otherwise secure it as soon as reasonably practicable.

### 308.7.1  ARTICLE DETECTION
A canine trained to find objects or property related to a person or crime may be used to locate or identify articles. A canine search should be conducted in a manner that minimizes the likelihood of unintended bites or injuries.

### 308.7.2  NARCOTICS DETECTION
A canine trained in narcotics detection may be used in accordance with current law and under certain circumstances, including:

(a) The search of vehicles, buildings, bags and other articles.

(b) Assisting in the search for narcotics during a search warrant service.

(c) Obtaining a search warrant by using the narcotics-detection trained canine in support of probable cause.

A narcotics-detection trained canine will not be used to search a person for narcotics unless the canine is trained to passively indicate the presence of narcotics.

### 308.8  HANDLER RESPONSIBILITIES
The canine handler shall ultimately be responsible for the health and welfare of the canine and shall ensure that the canine receives proper nutrition, grooming, training, medical care, affection and living conditions.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod) 000575

# Redding Police Department
RPD Policy Manual

---

*Canines*

---

The canine handler will be responsible for the following:

(a) Except as required during appropriate deployment, the handler shall not expose the canine to any foreseeable and unreasonable risk of harm.

(b) The handler shall maintain all department equipment under his/her control in a clean and serviceable condition.

(c) When not in service, the handler shall maintain the canine vehicle in a locked garage, away from public view.

(d) When a handler is off-duty for an extended number of days, the assigned canine vehicle should be stored at the Redding Police Department facility.

(e) Handlers shall permit the canine supervisor to conduct spontaneous on-site inspections of affected areas of their homes as well as their canine vehicles to verify that conditions and equipment conform to this policy.

(f) Any changes in the living status of the handler that may affect the lodging or environment of the canine shall be reported to the canine supervisor as soon as possible.

(g) When off-duty, the canine shall be in a kennel provided by the City at the home of the handler. When a canine is kenneled at the handler's home, the gate shall be secured with a lock. When off-duty, the canine may be let out of the kennel while under the direct control of the handler.

(h) The canine should be permitted to socialize in the home with the handler's family for short periods of time and under the direct supervision of the handler.

(i) Under no circumstances will the canine be lodged at another location unless approved by the canine supervisor or Watch Commander.

(j) When off-duty, the handler shall not involve the canine in any law enforcement activity or official conduct unless approved in advance by the canine supervisor or Watch Commander.

(k) Whenever a canine handler is off-duty for an extended number of days, it may be necessary to temporarily relocate the canine. In those situations, the handler shall give reasonable notice to the canine supervisor so that appropriate arrangements can be made.

## 308.8.1   CANINE IN PUBLIC AREAS
The canine should be kept on a leash when in areas that allow access to the public. Exceptions to this rule would include specific law enforcement operations for which the canine is trained.

(a) A canine shall not be left unattended in any area to which the public may have access.

(b) When the canine vehicle is left unattended, all windows and doors shall be secured in such a manner as to prevent unauthorized access to the canine. The handler shall also ensure that the unattended vehicle remains inhabitable for the canine.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000576

# Redding Police Department
RPD Policy Manual

*Canines*

---

### 308.9   HANDLER COMPENSATION
The canine handler shall be available for call-out under conditions specified by the canine coordinator.

The canine handler shall be compensated for time spent in the care, feeding, grooming, and other needs of the canine in accordance with the Fair Labor Standards Act (FLSA), and according to the terms of the collective bargaining agreement (29 USC § 207).

### 308.10   CANINE INJURY AND MEDICAL CARE
In the event that a canine is injured, or there is an indication that the canine is not in good physical condition, the injury or condition will be reported to the canine supervisor or Watch Commander as soon as practicable and appropriately documented.

All medical attention shall be rendered by the designated canine veterinarian, except during an emergency where treatment should be obtained from the nearest available veterinarian. All records of medical treatment shall be maintained in the handler's personnel file.

### 308.11   TRAINING
Before assignment in the field, each canine team shall be trained and certified to meet current POST guidelines or other recognized and approved certification standards. Cross-trained canine teams or those canine teams trained exclusively for the detection of narcotics and/or explosives also shall be trained and certified by the California Narcotic Canine Association (CNCA) or other recognized and approved certification standards established for their particular skills.

The canine coordinator shall be responsible for scheduling periodic training for all department members in order to familiarize them with how to conduct themselves in the presence of Department canines.

All canine training should be conducted while on-duty unless otherwise approved by the canine coordinator or Watch Commander.

### 308.11.1   CONTINUED TRAINING
Each canine team shall thereafter be recertified to a current POST, CNCA, or other recognized and approved certification standards on an annual basis. Additional training considerations are as follows:

(a)   Canine teams should receive training as defined in the current contract with the Redding Police Department canine training provider.

(b)   Canine handlers are encouraged to engage in additional training with approval of the canine coordinator.

(c)   To ensure that all training is consistent, no handler, trainer, or outside vendor is authorized to train to a standard that is not reviewed and approved by the Department.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000577

# Redding Police Department

RPD Policy Manual

*Canines*

### 308.11.2  FAILURE TO SUCCESSFULLY COMPLETE TRAINING

Any canine team failing to graduate or obtain certification shall not be deployed in the field for tasks the team is not certified to perform until graduation or certification is achieved. When reasonably practicable, pending successful certification, the canine handler shall be temporarily reassigned to regular patrol duties.

### 308.11.3  TRAINING RECORDS

All canine training records shall be maintained in the canine handler's and the canine's training file.

### 308.11.4  TRAINING AIDS

Training aids are required to effectively train and maintain the skills of canines. Officers possessing, using or transporting controlled substances for canine training purposes must comply with federal and state requirements regarding the same. Alternatively, the Redding Police Department may work with outside trainers with the applicable licenses or permits.

### 308.11.5  CONTROLLED SUBSTANCE TRAINING AIDS

Officers acting in the performance of their official duties may possess or transfer controlled substances for the purpose of narcotics-detection canine training in compliance with state and federal laws (Health & Safety Code § 11367.5; 21 USC § 823(f)).

The Chief of Police or the authorized designee may authorize a member to seek a court order to allow controlled substances seized by the Redding Police Department to be possessed by the member or a narcotics-detection canine trainer who is working under the direction of this department for training purposes, provided the controlled substances are no longer needed as criminal evidence.

As an alternative, the Chief of Police or the authorized designee may request narcotics training aids from the Drug Enforcement Administration (DEA).

These procedures are not required if the canine handler uses commercially available synthetic substances that are not controlled narcotics.

### 308.11.6  CONTROLLED SUBSTANCE PROCEDURES

Due to the responsibilities and liabilities involved with possessing readily usable amounts of controlled substances and the ever-present danger of the canine's accidental ingestion of these controlled substances, the following procedures shall be strictly followed:

(a)  All controlled substance training samples shall be weighed and tested prior to dispensing to the individual canine handler or trainer.

(b)  The weight and test results shall be recorded and maintained by this department.

(c)  Any person possessing controlled substance training samples pursuant to court order or DEA registration shall maintain custody and control of the controlled substances and shall keep records regarding any loss of, or damage to, those controlled substances.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000578

# Redding Police Department

RPD Policy Manual

*Canines*

(d) All controlled substance training samples will be inspected, weighed and tested quarterly. The results of the quarterly testing shall be recorded and maintained by the canine coordinator with a copy forwarded to the dispensing agency.

(e) All controlled substance training samples will be stored in locked, airtight and watertight cases at all times, except during training. The locked cases shall be secured in the trunk of the canine handler's assigned patrol vehicle during transport and stored in an appropriate locked container. There are no exceptions to this procedure.

(f) The canine supervisor shall periodically inspect every controlled substance training sample for damage or tampering and take any appropriate action.

(g) Any unusable controlled substance training samples shall be returned to the Property and Evidence Section or to the dispensing agency.

(h) All controlled substance training samples shall be returned to the dispensing agency upon the conclusion of the training or upon demand by the dispensing agency.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000579

# Domestic Violence

### 309.1  PURPOSE AND SCOPE

The purpose of this policy is to provide the guidelines necessary to deter, prevent and reduce domestic violence through vigorous enforcement and to address domestic violence as a serious crime against society. The policy specifically addresses the commitment of this Department to take enforcement action when appropriate, to provide assistance to victims and to guide officers in the investigation of domestic violence.

### 309.2  POLICY

The Redding Police Department's response to incidents of domestic violence and violations of related court orders shall stress enforcement of the law to protect the victim and shall communicate the philosophy that domestic violence is criminal behavior. It is also the policy of this Department to facilitate victims' and offenders' access to appropriate civil remedies and community resources whenever feasible.

### 309.3  INVESTIGATIONS

The following guidelines should be followed by officers when investigating domestic violence cases:

(a) Calls of reported, threatened, imminent or ongoing domestic violence and the violation of any court order are of extreme importance and should be considered among the highest response priorities. This includes incomplete 9-1-1 calls.

(b) When practicable, officers should obtain and document statements from the victim, the suspect and any witnesses, including children, in or around the household or location of occurrence.

(c) Officers should list the full name and date of birth (and school if available) of each child who was present in the household at the time of the offense. The names of other children who may not have been in the house at that particular time should also be obtained for follow-up.

(d) When practicable and legally permitted, video or audio record all significant statements and observations.

(e) All injuries should be photographed, regardless of severity, taking care to preserve the victim's personal privacy. Where practicable, photographs should be taken by a person of the same sex. Victims whose injuries are not visible at the time of the incident should be asked to contact the Investigations Division in the event that the injuries later become visible.

(f) Officers should request that the victim complete and sign an authorization for release of medical records related to the incident when applicable.

(g) If the suspect is no longer at the scene, officers should make reasonable efforts to locate the suspect to further the investigation, provide the suspect with an opportunity to make a statement and make an arrest or seek an arrest warrant if appropriate.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000580

# Redding Police Department

RPD Policy Manual

*Domestic Violence*

---

(h)    Seize any firearms or other dangerous weapons in the home, if appropriate and legally permitted, for safekeeping or as evidence. If the domestic violence involved threats of bodily harm, any firearm discovered in plain view or pursuant to consent or other lawful search must be taken into temporary custody (Penal Code § 18250).

(i)    When completing an incident or arrest report for violation of a court order, officers should include specific information that establishes that the offender has been served, including the date the offender was served, the name of the agency that served the order and the provision of the order that the subject is alleged to have violated. When reasonably available, the arresting officer should attach a copy of the order to the incident or arrest report.

(j)    Officers should take appropriate enforcement action when there is probable cause to believe an offense has occurred. Factors that should not be used as sole justification for declining to take enforcement action include:

    1.    Marital status of suspect and victim.

    2.    Whether the suspect lives on the premises with the victim.

    3.    Claims by the suspect that the victim provoked or perpetuated the violence.

    4.    The potential financial or child custody consequences of arrest.

    5.    The physical or emotional state of either party.

    6.    Use of drugs or alcohol by either party.

    7.    Denial that the abuse occurred where evidence indicates otherwise.

    8.    A request by the victim not to arrest the suspect.

    9.    Location of the incident (public/private).

    10.    Speculation that the complainant may not follow through with the prosecution.

    11.    The racial, cultural, social, professional position or sexual orientation of the victim or suspect.

## 309.3.1   TENANCY

When a complainant is in lawful possession of the premises and has requested the person leave the premises the responding officer shall:

(a)    Request the person to leave the premises and stand by a reasonable amount of time until the person removes his/her belongings.

(b)    Should the person refuse to leave upon request, the person shall be arrested for the appropriate criminal offense, and thereupon cited and released unless one of the exceptions to PC 853.6 (i) exists.

## 309.3.2   IF A SUSPECT IS ARRESTED

If a suspect is arrested, officers should:

(a)    Advise the victim that there is no guarantee the suspect will remain in custody.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000581

## Redding Police Department
RPD Policy Manual

*Domestic Violence*

> (b)   Provide the victim's contact information to the jail staff to enable notification of the victim upon the suspect's release from jail.
>
> (c)   Advise the victim whether any type of court order will be in effect when the suspect is released from jail.

### 309.3.3   IF NO ARREST IS MADE
If no arrest is made, the officer should:

> (a)   Advise the parties of any options, including but not limited to:
>
> > 1.   Voluntary separation of the parties.
> >
> > 2.   Appropriate resource referrals (e.g., counselors, friends, relatives, shelter homes, victim witness unit).
>
> (b)   Document the resolution in a report.

### 309.4   VICTIM ASSISTANCE
Victims may be traumatized or confused. Officers should:

> (a)   Recognize that a victim's behavior and actions may be affected.
>
> (b)   Provide the victim with the Department's domestic violence information handout, even if the incident may not rise to the level of a crime.
>
> (c)   Alert the victim to any available victim advocates, shelters and community resources.
>
> (d)   Stand by for a reasonable amount of time when an involved person requests law enforcement assistance while removing essential items of personal property.
>
> (e)   Explain the options available to the victim, including the private person's arrest process, temporary restraining and stay-away orders, and in cases of arrest, the follow-up procedures and ensuing criminal proceedings.
>
> (f)   Advise the victim to call One Safe Place and offer to make the call for the victim. If the officer feels it is in the best interest of the victim, an officer should call and arrange for an Advocate to respond and assist.
>
> (g)   Advise the victim of the availability to be notified before the arrested party is released from jail offered through Women's Refuge.
>
> (h)   Acknowledge the right of a victim of Domestic Violence to have an advocate and an additional support person present for follow up investigation by law enforcement.
>
> (i)   Seek medical assistance as soon as practicable for the victim if he/she has sustained injury or complains of pain.
>
> (j)   Ask the victim whether he/she has a safe place to stay. Assist in arranging to transport the victim to an alternate shelter if the victim expresses a concern for his/her safety or if the officer determines that a need exists.
>
> (k)   Make reasonable efforts to ensure that children or dependent adults who are under the supervision of the suspect or victim are being properly cared for.
>
> (l)   Seek or assist the victim in obtaining an emergency order if appropriate.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000582

# Redding Police Department

RPD Policy Manual

*Domestic Violence*

An officer shall advise an individual protected by a Canadian domestic violence protection order of available local victim services (Family Code § 6452).

## 309.5 PROTECTIVE ORDERS

There are different types of protective orders issued by a court in domestic violence situations. Penal Code Section 13710 requires law enforcement agencies to maintain a complete and systematic record of all protection orders with respect to domestic violence incidents, restraining orders, and proofs of service in effect. This section also requires that the systematic record shall be used to inform law enforcement officers responding to domestic violence calls of the existence, terms, and effective dates of protection orders in effect.

If there are multiple, inconsistent orders, criminal restraining orders take precedence over civil restraining orders. If both orders are of the same type, the most recently issued order takes precedence.

These orders remain valid regardless of the actions of the protected person. For example, if the protected person allows the restrained party back into the residence, the order remains valid, PC 13711 (c).

An officer shall make an arrest for the violation of a domestic violence protective or restraining order if the officer has probable cause to believe the violation occurred and the restrained party has notice of the order, even if the offense did not occur in the officer's presence, PC 836 (c) (1).

### 309.5.1 COURT ORDERS

(a) An officer who obtains an emergency protective order from the court shall serve it on the restrained person if the person can be reasonably located, and shall provide the person protected or the person's parent/guardian with a copy of the order. The officer shall file a copy with the court as soon as practicable and shall have the order entered into the computer database system for protective and restraining orders maintained by the Department of Justice (Family Code § 6271; Penal Code § 646.91).

(b) At the request of the petitioner, an officer at the scene of a reported domestic violence incident shall serve a court order on a restrained person (Family Code § 6383; Penal Code § 13710).

(c) Any officer serving a protective order that indicates that the respondent possesses weapons or ammunition shall request that the firearm/ammunition be immediately surrendered (Family Code § 6389(c)(2)).

(d) During the service of a protective order any firearm discovered in plain view or pursuant to consent or other lawful search shall be taken into temporary custody (Penal Code § 18250).

(e) If a valid Canadian order cannot be enforced because the person subject to the order has not been notified or served with the order, the officer shall notify the protected individual that reasonable efforts shall be made to contact the person subject to the order. The officer shall make a reasonable effort to inform the person subject to the order of the existence and terms of the order and provide him/her with a record of the

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000583

Redding Police Department

RPD Policy Manual

*Domestic Violence*

order, if available, and shall allow the person a reasonable opportunity to comply with the order before taking enforcement action (Family Code § 6452).

## 309.5.2   EMERGENCY PROTECTIVE ORDER

Section 6241 of the Family Code provides that the presiding Superior Court Judge shall designate a Judge, Commissioner or Referee to be reasonably available to orally issue, by telephone, emergency protective orders at all times when Superior Court is not in session.

(a) Officers will seek an Emergency Protective Order (EPO) when there are reasonable grounds to believe: a person is in immediate and present danger of domestic violence; a child is in immediate and present danger of domestic violence; a child is in immediate and present danger of being abducted by a parent or relative or an elder or dependent adult is in immediate and present danger of abuse (other than financial abuse).

(b) Officers will consider issuing an EPO even if the suspect is being arrested and booked into jail.

(c) An EPO may be issued by a person designated by the presiding judge of the Superior Court at any time, whether or not the Superior Court is in session.

(d) An EPO shall expire at the earliest of the following times:

    1. Within 5 court days from the date of issuance.

    2. Within 7 calendar days from the date of issuance.

    3. When an officer believes that an EPO is needed they shall:

    4. Complete the "Application for Emergency Protective Order."

    5. The officer shall radio or telephone Records and advise that they need to contact the "on call Judge." The officer shall provide Records with a telephone number so the Judge can call them.

    6. The officer shall advise the Judge of the circumstances and complete the EPO as directed.

    7. If the person to be restrained is still present or can be located, the officer shall serve a copy of the order and the application and advise the person it is a crime to violate the order.

(e) The officer shall give a copy of the order and application to the protected party and explain that the order is only in effect for five (5) court days and no later than seven (7) calendar days.

(f) Upon completion of the investigation, and as soon as practical, the officer shall make a copy of the EPO and give it to the Records Supervisor.  If the restrained person is not located, the copy for him/her shall also be given to the Records Supervisor so that it will be available for service.  The on-duty Field Operations shift supervisor shall be advised of the need for service.

(g) The officer shall complete a report and attach the remaining copies of the EPO and application.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000584

# Redding Police Department

RPD Policy Manual

*Domestic Violence*

---

(h)  The Sergeant reviewing the report shall route a copy to Court, as well as standard routing.

## 309.5.3  RESTRAINING ORDER

Restraining orders are filed in the Services Division of the Redding Police Department.  Officers shall contact the records clerk for information.

Whenever a complainant advises of the existence of a restraining order, the officers shall ascertain:

(a)  Whether a restraining order is on file with the Department or whether the complainant has a copy of the restraining order in his/her possession.

(b)  Whether a restraining order is still valid as to duration/time.

(c)  Whether the proof of service or prior notice exists or that the suspect was in court when the order was made.

(d)  The terms of the restraining order.

## 309.5.4  STAY AWAY ORDER

A stay-away order is issued, by the court at the time of the Defendant's arraignment, in a criminal case where the probability of victim intimidation exists and violation of such is a misdemeanor under Penal Code Section 166.

In domestic violence incidents where a person advises an officer that a stay-away order has been issued, the officer shall attempt to ascertain the terms and validity of the order.

## 309.5.5  FOREIGN PROTECTIVE ORDER

(Full Faith and Credit Provision of the Violence Against Women Act).

Family Code sections 6400-6409 states officers shall enforce a Foreign Protection Order which is presented to them for enforcement. A Foreign Protection Order is valid, FC 6402 (d) if it meets all of the following criteria:

(a)  Identifies the protected individual and respondent.

(b)  Is currently in effect.

(c)  Was issued by a tribunal that had jurisdiction over the parties under the laws of the issuing state.

(d)  Was issued after the respondent was given reasonable notice.

Officers should investigate and check CLETS to determine if the order is the most current order issued. If it can not be confirmed, officers can contact the Duty Judge for an EPO. However, the out-of-state protective or restraining order must still be enforced if it meets the above criteria. Presentation of a certified copy of a protection order is not required for enforcement, FC 6403 (a).

If the out-of-state protective or restraining order is not registered in California, the parties should be advised to immediately register the order through the Family Court.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000585

Redding Police Department
RPD Policy Manual

*Domestic Violence*

---

309.5.6  FOREIGN COURT ORDERS

Various types of orders may be issued in domestic violence cases. Any foreign court order properly issued by a court of another state, Indian tribe or territory shall be enforced by officers as if it were the order of a court in this state. An order should be considered properly issued when it reasonably appears that the issuing court has jurisdiction over the parties and reasonable notice and opportunity to respond was given to the party against whom the order was issued (18 USC § 2265). An otherwise valid out-of-state court order shall be enforced, regardless of whether the order has been properly registered with this state.

Canadian domestic violence protection orders shall also be enforced in the same manner as if issued in this state (Family Code § 6452).

**309.6  PROTECTIVE ORDER ARREST AND ENFORCEMENT PROCEDURE**

A violation of a restraining order is a misdemeanor under either Penal Code Section 166 or 273.6(A). An arrest shall be made when there is reasonable cause to believe the subject of the restraining order has violated the order and any one of the following conditions is met:

(a)  The existence of the order and proof of service on the suspect has been verified by the officer or the provisions of the Full Faith and Credit Act have been met.

(b)  The complainant produces a valid copy of the order bearing a file stamp of a court and a proof of service on the subject.

(c)  The existence of the order has been verified by the officer; no proof of service is required if the order reflects that the suspect was personally present in court when the order was made.

(d)  The existence of the order has been verified, and there is proof that the subject has previously been admonished by an officer.

When the officer verifies that a restraining order exists, but cannot verify proof of service or prior knowledge of the order by the suspect, the officer shall:

(a)  Inform the subject of the terms of the order.

(b)  Admonish the subject of the order, that he/she is now on notice and that a violation of the order will result in his/her arrest.  If the subject continues to violate the order after being advised of the terms, an arrest shall be made. (P.C. Section 273.6)

If the suspect complies after admonishment of the terms, the officer shall make a retrievable report pursuant to Penal Code Section 13730(c) showing:

(a)  The suspect was admonished/advised of the terms of the order.

(b)  The specific terms of the order the suspect was advised about.

(c)  The name of the admonishing officer.

(d)  Time and date of the admonishment.

The Department's copy of the restraining order will be updated to reflect the admonishment information listed above.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
Domestic Violence - 115

COR (McLeod)  000586

# Redding Police Department

RPD Policy Manual

---

*Domestic Violence*

---

In the event the suspect has left the scene of the incident, an investigation shall be made to determine if a crime has been committed. Penal Code Sections 13730(c) and 13701(i) require that a retrievable report shall be made and the complainant shall be advised of the follow-up criminal procedure and the case number of the report.

When the victim is not in possession of the temporary restraining order, officers may not be able to confirm the order's validity. In such cases officers should attempt to confirm the existence of a restraining order and the order's validity.

Penal Code Section 13730(c) requires that an officer shall write a report, give the victim the police report number and direct the victim to contact the appropriate Department unit for follow-up information.

If the victim is not in possession of the order, officers shall advise the victim of the right to make a private person's arrest for the appropriate violation.

## 309.6.1   FIREARMS

A person subject to a protective order, as defined in Family Code Section 6218, shall not own, possess, purchase, or receive a firearm while that protective order is in effect. In the event the court finds by a preponderance of the evidence that the restrained person is likely to use, display or threaten to use a firearm in any further act of violence, the court may order the restrained person to relinquish any firearm in that person's possession or control within 24 hours to the local law enforcement agency for that jurisdiction.

(a)   The relinquishment is for the duration of the restraining order unless a shorter period is specified by the court.

(b)   Firearms may be returned to the person from whom they were ordered seized after the expiration date of the protective order provided (a) the firearm is not stolen, (b) person is not within a prohibited class as specified in 12021 or 12021.1 PC or (c) another protective order is issued and (d) an application for a determination by the Department of Justice as to whether he or she is eligible to possess a firearm pursuant to Penal Code Section 12021.3(a)(1) and the application for return of the seized weapons is approved by the Department of Justice.

(c)   Officers receiving any firearms pursuant to Family Code 6389 will file a 6389 Family Code face sheet offense report listing the weapon(s) as held for safekeeping. The report must be completed at the time the firearm(s) are relinquished. A copy of the report shall be given to the person relinquishing the firearm(s), which will serve as a receipt showing the firearm(s) was surrendered. The condition of relinquished weapon shall be noted in the report. The weapons shall be entered in the CLETS AFS system as held for safekeeping.

(d)   During the period of the relinquishing order, the person surrendering the firearm(s) is entitled to make one sale of their firearm(s) in our possession. The sale must be made to a licensed gun dealer. The licensed gun dealer shall be given the possession of the firearm(s) after presenting a bill of sale at the Redding Police Department, 6389(i) Family Code, within five days.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000587

Redding Police Department
RPD Policy Manual

*Domestic Violence*

---

    (e)    The disposition of any unclaimed property under this section shall be made pursuant to Section 1413 PC and 12028(c) PC.

### 309.6.2   CLETS ENTRIES

Penal Code Section 12021 prohibits any person subject to a restraining order from purchasing or receiving, or attempting to purchase or receive a firearm.  If the subject of a restraining order applies to purchase a firearm, they will be prevented from doing so by the CLETS restraining order or protective entry.

    (a)    Enforcement of 12021(g) requires that persons subject to a restraining order must be given actual knowledge they are prohibited from purchasing a firearm.

    (b)    Services personnel shall be responsible for making CLETS entries of Temporary Restraining Orders and Orders After Hearing for Domestic Violence.

### 309.7   LEGAL MANDATES AND RELEVANT LAWS

California law provides for the following:

### 309.7.1   STANDARDS FOR ARRESTS

Officers investigating a domestic violence report should consider the following:

    (a)    An arrest should be made when there is probable cause to believe that a felony or misdemeanor domestic violence offense has been committed (Penal Code § 13701). Any decision to not arrest an adult when there is probable cause to do so requires supervisor approval.

        1.    Officers are only authorized to make an arrest without a warrant for a misdemeanor domestic violence offense if the officer makes the arrest as soon as probable cause arises (Penal Code § 836).

    (b)    An officer responding to a domestic violence call who cannot make an arrest will advise the victim of his/her right to make a private person's arrest. The advisement should be made out of the presence of the suspect and shall include advising the victim how to safely execute the arrest. Officers shall not dissuade victims from making a lawful private person's arrest. Officers should refer to the provisions in the Private Persons Arrests Policy for options regarding the disposition of private person's arrests (Penal Code § 836(b)).

    (c)    Officers shall not cite and release a person for the following offenses (Penal Code § 853.6(a)(3)):

        1.    Penal Code § 243(e)(1) (battery against spouse, cohabitant)

        2.    Penal Code § 273.5 (corporal injury on spouse, cohabitant, fiancé/fiancée, person of a previous dating or engagement relationship, mother/father of the offender's child)

        3.    Penal Code § 273.6 (violation of protective order) if violence or threats of violence have occurred or the suspect has gone to the workplace or residence of the protected party

        4.    Penal Code § 646.9 (stalking)

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000588

# Redding Police Department
RPD Policy Manual

     5.    Other serious or violent felonies specified in Penal Code § 1270.1

(d)    In responding to domestic violence incidents, including mutual protective order violations, officers should generally be reluctant to make dual arrests. Officers shall make reasonable efforts to identify the dominant aggressor in any incident. The dominant aggressor is the person who has been determined to be the most significant, rather than the first, aggressor (Penal Code § 13701). In identifying the dominant aggressor, an officer shall consider:

    1.    The intent of the law to protect victims of domestic violence from continuing abuse.

    2.    The threats creating fear of physical injury.

    3.    The history of domestic violence between the persons involved.

    4.    Whether either person acted in self-defense.

(e)    An arrest shall be made when there is probable cause to believe that a violation of a domestic violence court order has been committed (Penal Code § 13701; Penal Code § 836), regardless of whether the offense was committed in the officer's presence. After arrest, the officer shall confirm that a copy of the order has been registered, unless the victim provides a copy (Penal Code § 836).

## 309.7.2  PUBLIC ACCESS TO POLICY
A copy of this domestic violence policy will be provided to members of the public upon request (Penal Code § 13701).

## 309.7.3  REPORTS AND RECORDS

(a)    A written report shall be completed on all incidents of domestic violence. All such reports should be documented on the appropriate form, which includes information and notations specific to domestic violence incidents as required by Penal Code § 13730.

(b)    Reporting officers should provide the victim with the case number of the report. The case number may be placed in the space provided on the domestic violence victim information handout provided to the victim. If the case number is not immediately available, an explanation should be given regarding how the victim can obtain the information at a later time.

(c)    Officers who seize any firearm or other deadly weapon in a domestic violence incident shall issue the individual possessing such weapon a receipt that includes the name and residential mailing address of the owner or person who possessed the weapon and notice of where the weapon may be recovered, along with the applicable time limit for recovery (Penal Code § 18250; Penal Code § 18255; Penal Code § 33800; Family Code § 6389(c)(2)).

## 309.7.4  RECORD-KEEPING AND DATA COLLECTION
This Department shall maintain records of court orders related to domestic violence and the service status of each (Penal Code § 13710), as well as records on the number of domestic

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000589

# Redding Police Department

RPD Policy Manual

*Domestic Violence*

violence related calls reported to the Department, including whether weapons were used in the incident or whether the incident involved strangulation or suffocation (Penal Code § 13730). This information is to be reported to the Attorney General monthly. It shall be the responsibility of the Records Supervisor to maintain and report this information as required.

## 309.7.5   DECLARATION IN SUPPORT OF BAIL INCREASE
Any officer who makes a warrantless arrest for a felony or misdemeanor violation of a domestic violence restraining order shall evaluate the totality of the circumstances to determine whether reasonable cause exists to seek an increased bail amount. If there is reasonable cause to believe that the scheduled bail amount is insufficient to assure the arrestee's appearance or to protect the victim or family member of a victim, the officer shall prepare a declaration in support of increased bail (Penal Code § 1269c).

## 309.7.6   COURT ORDERS
(a)   An officer who obtains an emergency protective order from the court shall serve it on the restrained person if the person can be reasonably located, and shall provide the person protected or the person's parent/guardian with a copy of the order. The officer shall file a copy with the court as soon as practicable and shall have the order entered into the computer database system for protective and restraining orders maintained by the Department of Justice (Family Code § 6271; Penal Code § 646.91).

(b)   At the request of the petitioner, an officer at the scene of a reported domestic violence incident shall serve a court order on a restrained person (Family Code § 6383; Penal Code § 13710).

(c)   Any officer serving a protective order that indicates that the respondent possesses weapons or ammunition shall request that the firearm/ammunition be immediately surrendered (Family Code § 6389(c)(2)).

(d)   During the service of a protective order any firearm discovered in plain view or pursuant to consent or other lawful search shall be taken into temporary custody (Penal Code § 18250).

(e)   If a valid Canadian order cannot be enforced because the person subject to the order has not been notified or served with the order, the officer shall notify the protected individual that reasonable efforts shall be made to contact the person subject to the order. The officer shall make a reasonable effort to inform the person subject to the order of the existence and terms of the order and provide him/her with a record of the order, if available, and shall allow the person a reasonable opportunity to comply with the order before taking enforcement action (Family Code § 6452).

## 309.8   FOREIGN COURT ORDERS
Various types of orders may be issued in domestic violence cases. Any foreign court order properly issued by a court of another state, Indian tribe, or territory shall be enforced by officers as if it were the order of a court in this state. An order should be considered properly issued when it reasonably appears that the issuing court has jurisdiction over the parties and reasonable notice and opportunity to respond was given to the party against whom the order was issued (18 USC

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000590

Redding Police Department

RPD Policy Manual

*Domestic Violence*

---

§ 2265). An otherwise valid out-of-state court or foreign order shall be enforced, regardless of whether the order has been properly registered with this state (Family Code § 6403).

Canadian domestic violence protection orders shall also be enforced in the same manner as if issued in this state (Family Code § 6452).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000591

**Redding Police Department**

RPD Policy Manual

# Search and Seizure

### 310.1  PURPOSE AND SCOPE

Both the federal and state Constitutions provide every individual with the right to be free from unreasonable searches and seizures. This policy provides general guidelines for Redding Police Department personnel to consider when dealing with search and seizure issues.

### 310.2  POLICY

It is the policy of the Redding Police Department to respect the fundamental privacy rights of individuals. Members of this Department will conduct searches in strict observance of the Constitutional rights of persons being searched. All seizures by this Department will comply with relevant federal and state law governing the seizure of persons and property.

The Department will provide relevant and current training to officers as guidance for the application of current law, local community standards and prosecutorial considerations regarding specific search and seizure situations, as appropriate.

### 310.3  SEARCHES

The U.S. Constitution generally provides that a valid warrant is required in order for a search to be valid. There are, however, several exceptions that permit a warrantless search.

Examples of law enforcement activities that are exceptions to the general warrant requirement include, but are not limited to, searches pursuant to the following:

- Valid consent
- Incident to a lawful arrest
- Legitimate community caretaking interests
- Vehicle searches under certain circumstances
- Exigent circumstances

Certain other activities are recognized by federal and state courts and by certain statutes as legitimate law enforcement activities that also do not require a warrant. Such activities may include seizure and examination of abandoned property, and observations of activities and property located on open public areas.

Because case law regarding search and seizure is constantly changing and subject to interpretation by the courts, each member of this Department is expected to act in each situation according to current training and his/her familiarity with clearly established rights as determined by case law.

Whenever practicable, officers are encouraged to contact a supervisor to resolve questions regarding search and seizure issues prior to electing a course of action.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000592

# Redding Police Department
RPD Policy Manual

*Search and Seizure*

---

**310.4  SEARCH PROTOCOL**

Although conditions will vary and officer safety and other exigencies must be considered in every search situation, the following guidelines should be followed whenever circumstances permit:

(a)  Members of this department will strive to conduct searches with dignity and courtesy.

(b)  Officers should explain to the person being searched the reason for the search and how the search will be conducted.

(c)  Searches should be carried out with due regard and respect for private property interests and in a manner that minimizes damage. Property should be left in a condition as close as reasonably possible to its pre-search condition.

(d)  In order to minimize the need for forcible entry, an attempt should be made to obtain keys, combinations or access codes when a search of locked property is anticipated.

(e)  When the person to be searched is of the opposite sex as the searching officer, a reasonable effort should be made to summon an officer of the same sex as the subject to conduct the search. When it is not practicable to summon an officer of the same sex as the subject, the following guidelines should be followed:

1.  Another officer or a supervisor should witness the search.

2.  The officer should not search areas of the body covered by tight-fitting clothing, sheer clothing or clothing that could not reasonably conceal a weapon.

**310.5  DOCUMENTATION**

Officers are responsible to document any search and to ensure that any required reports are sufficient including, at minimum, documentation of the following:

- Reason for the search

- Any efforts used to minimize the intrusiveness of any search (e.g., asking for consent or keys)

- What, if any, injuries or damage occurred

- All steps taken to secure property

- The results of the search, including a description of any property or contraband seized

- If the person searched is the opposite sex, any efforts to summon an officer of the same sex as the person being searched and the identification of any witness officer

Supervisors shall review reports to ensure the reports are accurate, that actions are properly documented and that current legal requirements and Department policy have been met.

Policy
**311**

# Temporary Custody of Juveniles

### 311.1  PURPOSE AND SCOPE
This policy provides guidelines consistent with the Juvenile Justice and Delinquency Prevention Act for juveniles taken into temporary custody by members of the Redding Police Department (34 USC § 11133).

Guidance regarding contacting juveniles at schools or who may be victims is provided in the Child Abuse Policy.

#### 311.1.1  DEFINITIONS
Definitions related to this policy include:

**Juvenile non-offender** - An abused, neglected, dependent, or alien juvenile who may be legally held for his/her own safety or welfare. This also includes any juvenile who may have initially been contacted for an offense that would not subject an adult to arrest (e.g., fine-only offense) but was taken into custody for his/her protection or for purposes of reuniting the juvenile with a parent, guardian, or other responsible person. Juveniles 11 years of age or younger are considered juvenile non-offenders even if they have committed an offense that would subject an adult to arrest.

**Juvenile offender** - A juvenile 12 to 17 years of age who is alleged to have committed an offense that would subject an adult to arrest (a non-status offense) (Welfare and Institutions Code § 602). It also includes an offense under Penal Code § 29610 for underage possession of a handgun or concealable firearm (28 CFR 31.303).

**Non-secure custody** - When a juvenile is held in the presence of an officer or other custody employee at all times and is not placed in a locked room, cell, or behind any locked doors. Juveniles in non-secure custody may be handcuffed but not to a stationary or secure object. Personal supervision, through direct visual monitoring and audio two-way communication is maintained. Monitoring through electronic devices, such as video, does not replace direct visual observation (Welfare and Institutions Code § 207.1(d); 15 CCR 1150).

**Safety checks** - Direct, visual observation personally by a member of this department performed at random intervals within time frames prescribed in this policy to provide for the health and welfare of juveniles in temporary custody.

**Secure custody** - When a juvenile offender is held in a locked room, a set of rooms, or a cell. Secure custody also includes being physically secured to a stationary object (15 CCR 1146).

Examples of secure custody include:

(a)  A juvenile left alone in an unlocked room within the secure perimeter of the adult temporary holding area.

(b)  A juvenile handcuffed to a rail.

(c)  A juvenile placed in a room that contains doors with delayed egress devices that have a delay of more than 30 seconds.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000594

Redding Police Department

RPD Policy Manual

*Temporary Custody of Juveniles*

---

(d)   A juvenile being processed in a secure booking area when a non-secure booking area is available.

(e)   A juvenile left alone in a secure booking area after being photographed and fingerprinted.

(f)   A juvenile placed in a cell within the adult temporary holding area, whether or not the cell door is locked.

(g)   A juvenile placed in a room that is capable of being locked or contains a fixed object designed for cuffing or restricting movement.

**Sight and sound separation** - Located or arranged to prevent physical, visual, or auditory contact.

**Status offender** - A juvenile suspected of committing a criminal violation of the law that would not be a criminal violation but for the age of the offender. Examples may include running away, curfew violation, and truancy. A juvenile in custody on a court order or warrant based upon a status offense is also a status offender. This includes the habitually disobedient or truant juvenile under Welfare and Institutions Code § 601 and any juvenile suspected of an offense that would not subject an adult to arrest (e.g., fine-only offense).

## 311.2  POLICY
The Redding Police Department is committed to releasing juveniles from temporary custody as soon as reasonably practicable and keeping juveniles safe while they are in temporary custody at the Redding Police Department. Juveniles should be held in temporary custody only for as long as reasonably necessary for processing, transfer, or release.

## 311.3  JUVENILES WHO SHOULD NOT BE HELD
Juveniles who exhibit any of the following conditions should not be held at the Redding Police Department:

(a)   Unconscious

(b)   Seriously injured

(c)   A known suicide risk or obviously severely emotionally disturbed

(d)   Significantly intoxicated except when approved by the Watch Commander. A medical clearance shall be obtained for minors who are under the influence of drugs, alcohol, or any other intoxicating substance to the extent that they are unable to care for themselves (15 CCR 1151).

(e)   Extremely violent or continuously violent

Officers taking custody of a juvenile who exhibits any of the above conditions should take reasonable steps to provide medical attention or mental health assistance and notify a supervisor of the situation (15 CCR 1142; 15 CCR 1151).

These juveniles should not be held at the Redding Police Department unless they have been evaluated by a qualified medical and/or mental health professional (15 CCR 1142).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000595

# Redding Police Department

RPD Policy Manual

---

*Temporary Custody of Juveniles*

---

If the officer taking custody of the juvenile believes the juvenile may be a suicide risk, the juvenile shall be under continuous direct supervision until evaluation, release, or a transfer is completed (15 CCR 1142).

### 311.3.1   EMERGENCY MEDICAL CARE OF JUVENILES IN CUSTODY

When emergency medical attention is required for a juvenile, medical assistance will be called immediately. The Watch Commander shall be notified of the need for medical attention for the juvenile. Department members should administer first aid as applicable (15 CCR 1142).

### 311.3.2   SUICIDE PREVENTION OF JUVENILES IN CUSTODY

Department members should be alert to potential symptoms based upon exhibited behavior that may indicate the juvenile is a suicide risk. These symptoms may include depression, refusal to communicate, verbally threatening to kill him/herself, or any unusual behavior which may indicate the juvenile may harm him/herself while in either secure or non-secure custody (15 CCR 1142).

## 311.4   CUSTODY OF JUVENILES

Officers should take custody of a juvenile and temporarily hold the juvenile at the Redding Police Department when there is no other lawful and practicable alternative to temporary custody. Refer to the Child Abuse Policy for additional information regarding detaining a juvenile that is suspected of being a victim.

No juvenile should be held in temporary custody at the Redding Police Department without authorization of the arresting officer's supervisor or the Watch Commander. Juveniles taken into custody shall be held in non-secure custody unless otherwise authorized by this policy.

Any juvenile taken into custody shall be released to the care of the juvenile's parent or other responsible adult or transferred to a juvenile custody facility or to other authority as soon as practicable and in no event shall a juvenile be held beyond six hours from the time of his/her entry into the Redding Police Department (34 USC § 11133; Welfare and Institutions Code § 207.1(d)).

### 311.4.1   CUSTODY OF JUVENILE NON-OFFENDERS

Non-offenders taken into protective custody in compliance with the Child Abuse Policy should generally not be held at the Redding Police Department. Custodial arrangements should be made for non-offenders as soon as reasonably possible. Juvenile non-offenders shall not be held in secure custody (34 USC § 11133; Welfare and Institutions Code § 206).

Juveniles 11 years of age or younger who have committed an offense that would subject an adult to arrest may be held in non-secure custody for the offenses listed in Welfare and Institutions Code § 602(b) (murder and the sexual assault offenses) and should be referred to a probation officer for a placement determination.

### 311.4.2   CUSTODY OF JUVENILE STATUS OFFENDERS

Status offenders should generally be released by citation or with a warning rather than taken into temporary custody. However, officers may take custody of a status offender if requested to do so

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000596

Redding Police Department

RPD Policy Manual

---

*Temporary Custody of Juveniles*

---

by a parent or legal guardian in order to facilitate reunification (e.g., transported home or to the station to await a parent). Status offenders shall not be held in secure custody (42 USC § 5633).

Juveniles who are in violation of Redding Municipal Code, Section 10.50.010 (Curfew), are deemed status offenders. Curfew violators may be cited to the Juvenile Hearing Officer as authorized in Section 256 of the Welfare and Institutions Code. The juvenile shall be cited on a "Notice to Appear", however, no mug and key number are to be obtained as this is not an arrestable/bookable offense.

### 311.4.3  CUSTODY OF JUVENILE OFFENDERS

Juvenile offenders should be held in non-secure custody while at the Redding Police Department unless another form of custody is authorized by this policy or is necessary due to exigent circumstances.

Generally, a juvenile offender may be taken into custody when authorized by a court order or when there is probable cause to believe the juvenile has committed an offense that would subject an adult to arrest (Welfare and Institutions Code § 625).

A juvenile offender who is 14 years of age or older and suspected of using a firearm in violation of Welfare and Institutions Code § 625.3 shall be transported to a juvenile facility.

A juvenile offender suspected of committing murder or a sex offense that may subject a juvenile to criminal jurisdiction under Welfare and Institutions Code § 602(b), or a serious or violent felony should be referred to a probation officer for a decision on further detention.

In all other cases the juvenile offender may be:

    (a)    Released upon warning or citation.

    (b)    Released to a parent or other responsible adult after processing at the Department.

    (c)    Referred to a probation officer for a decision regarding whether to transport the juvenile offender to a juvenile facility.

    (d)    Transported to his/her home or to the place where the juvenile offender was taken into custody (Welfare and Institutions Code § 207.2).

In determining which disposition is appropriate, the investigating officer or supervisor shall prefer the alternative that least restricts the juvenile's freedom of movement, provided that alternative is compatible with the best interests of the juvenile and the community (Welfare and Institutions Code § 626).

Whenever a juvenile offender under the age of 14 is taken into custody, the officer should take reasonable steps to verify and document the child's ability to differentiate between right and wrong, particularly in relation to the alleged offense (Penal Code § 26).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000597

## Redding Police Department

RPD Policy Manual

*Temporary Custody of Juveniles*

---

**311.5  ADVISEMENTS**

Officers shall take immediate steps to notify the juvenile's parent, guardian, or a responsible relative that the juvenile is in custody, the location where the juvenile is being held, and the intended disposition (Welfare and Institutions Code § 627).

Whenever a juvenile is taken into temporary custody, he/she shall be given the *Miranda* rights advisement regardless of whether questioning is intended (Welfare and Institutions Code § 625).

Anytime a juvenile offender is placed in secure custody, he/she shall be informed of the purpose of the secure custody, the length of time the secure custody is expected to last, and of the maximum six-hour limitation (Welfare and Institutions Code § 207.1(d)).

Juveniles taken into custody for an offense shall immediately be advised (or at least within one hour from being taken into custody, if possible) that they may make three telephone calls: one call completed to his/her parent or guardian; one to a responsible relative or his/her employer; and another call completed to an attorney. The calls shall be at no expense to the juvenile when completed to telephone numbers within the local calling area. Juveniles should be asked whether they are a caregiver and provided two more phone calls in the same manner as provided to adults in the Temporary Custody of Adults Policy (Welfare and Institutions Code § 627; Penal Code § 851.5).

**311.6  JUVENILE CUSTODY LOGS**

Any time a juvenile is held in custody at the Department, the custody shall be promptly and properly documented in the juvenile custody log, including:

(a)   Identifying information about the juvenile.

(b)   Date and time of arrival and release from the Redding Police Department (15 CCR 1150).

(c)   Watch Commander notification and approval to temporarily hold the juvenile.

(d)   Any charges for which the juvenile is being held and classification of the juvenile as a juvenile offender, status offender, or non-offender.

(e)   Any changes in status (e.g., emergency situations, unusual incidents).

(f)   Time of all safety checks.

(g)   Any medical and other screening requested and completed (15 CCR 1142).

(h)   Circumstances that justify any secure custody (Welfare and Institutions Code § 207.1(d); 15 CCR 1145).

(i)   Any other information that may be required by other authorities, such as compliance inspectors or a local juvenile court authority.

The Watch Commander shall initial the log to approve the custody, including any secure custody, and shall also initial the log when the juvenile is released.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000598

# Redding Police Department
RPD Policy Manual

*Temporary Custody of Juveniles*

## 311.7  NO-CONTACT REQUIREMENTS

Sight and sound separation shall be maintained between all juveniles and adults while in custody at the Department (34 USC § 11133; Welfare and Institutions Code § 207.1(d); Welfare and Institutions Code § 208; 15 CCR 1144). There should also be sight and sound separation between non-offenders and juvenile and status offenders.

In situations where brief or accidental contact may occur (e.g., during the brief time a juvenile is being fingerprinted and/or photographed in booking), a member of the Redding Police Department (trained in the supervision of persons in custody) shall maintain a constant, immediate, side-by-side presence with the juvenile or the adult to minimize any contact. If inadvertent or accidental contact does occur, reasonable efforts shall be taken to end the contact (15 CCR 1144).

## 311.8  TEMPORARY CUSTODY REQUIREMENTS

Members and supervisors assigned to monitor or process any juvenile at the Redding Police Department shall ensure the following:

(a)  The Watch Commander should be notified if it is anticipated that a juvenile may need to remain at the Redding Police Department more than four hours. This will enable the Watch Commander to ensure no juvenile is held at the Redding Police Department more than six hours.

(b)  A staff member of the same sex shall supervise personal hygiene activities and care, such as changing clothing or using the restroom, without direct observation to allow for privacy.

(c)  Personal safety checks and significant incidents/activities shall be noted on the log.

(d)  Juveniles in custody are informed that they will be monitored at all times, except when using the toilet.

    1.  There shall be no viewing devices, such as peep holes or mirrors, of which the juvenile is not aware.

    2.  This does not apply to surreptitious and legally obtained recorded interrogations.

(e)  Juveniles shall have reasonable access to toilets and wash basins (15 CCR 1143).

(f)  Food shall be provided if a juvenile has not eaten within the past four hours or is otherwise in need of nourishment, including any special diet required for the health of the juvenile (15 CCR 1143).

(g)  Juveniles shall have reasonable access to a drinking fountain or water (15 CCR 1143).

(h)  Juveniles shall have reasonable opportunities to stand and stretch, particularly if handcuffed or restrained in any way.

(i)  Juveniles shall have privacy during family, guardian, and/or lawyer visits (15 CCR 1143).

(j)  Juveniles shall be permitted to remain in their personal clothing unless the clothing is taken as evidence or is otherwise unsuitable or inadequate for continued wear while in custody (15 CCR 1143).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000599

# Redding Police Department

RPD Policy Manual

*Temporary Custody of Juveniles*

    (k)    Blankets shall be provided as reasonably necessary (15 CCR 1143).

           1.    The supervisor should ensure that there is an adequate supply of clean blankets.

    (l)    Adequate shelter, heat, light, and ventilation should be provided without compromising security or enabling escape.

    (m)    Juveniles shall have adequate furnishings, including suitable chairs or benches.

    (n)    Juveniles shall have the right to the same number of telephone calls as an adult in temporary custody.

    (o)    No discipline may be administered to any juvenile, nor may juveniles be subjected to corporal or unusual punishment, humiliation, or mental abuse (15 CCR 1142).

## 311.9   USE OF RESTRAINT DEVICES

Juvenile offenders may be handcuffed in accordance with the Handcuffing and Restraints Policy. A juvenile offender may be handcuffed at the Redding Police Department when the juvenile presents a heightened risk. However, non-offenders and status offenders should not be handcuffed unless they are combative or threatening (15 CCR 1142).

Other restraints shall only be used after less restrictive measures have failed and with the approval of the Watch Commander. Restraints shall only be used so long as it reasonably appears necessary for the juvenile's protection or the protection of others (15 CCR 1142).

Juveniles in restraints shall be kept away from other unrestrained juveniles or monitored in such a way as to protect the juvenile from abuse (15 CCR 1142).

## 311.10   PERSONAL PROPERTY

The officer taking custody of a juvenile offender or status offender at the Redding Police Department shall ensure a thorough search of the juvenile's property is made and all property is removed from the juvenile, especially those items that could compromise safety, such as pens, pencils, and belts.

The personal property of a juvenile should be placed in a property bag. The property should be inventoried in the juvenile's presence and sealed into the bag. The property should be kept in a monitored or secure location until the juvenile is released from the custody of the Redding Police Department.

## 311.11   SECURE CUSTODY

Only juvenile offenders 14 years of age or older may be placed in secure custody (Welfare and Institutions Code § 207; 15 CCR 1145). Watch Commander approval is required before placing a juvenile offender in secure custody.

Secure custody should only be used for juvenile offenders when there is a reasonable belief that the juvenile is a serious risk of harm to him/herself or others. Factors to be considered when determining if the juvenile offender presents a serious security risk to him/herself or others include the following (15 CCR 1145):

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000600

## Redding Police Department

RPD Policy Manual

*Temporary Custody of Juveniles*

    (a)    Age, maturity, and delinquent history

    (b)    Severity of offense for which the juvenile was taken into custody

    (c)    The juvenile offender's behavior

    (d)    Availability of staff to provide adequate supervision or protection of the juvenile offender

    (e)    Age, type, and number of other individuals in custody at the facility

Members of this department shall not use secure custody for convenience when non-secure custody is, or later becomes, a reasonable option (15 CCR 1145).

When practicable and when no locked enclosure is available, handcuffing one hand of a juvenile offender to a fixed object while otherwise maintaining the juvenile in non-secure custody should be considered as the method of secure custody. An employee must be present at all times to ensure the juvenile's safety while secured to a stationary object (15 CCR 1148).

Juveniles shall not be secured to a stationary object for more than 60 minutes. Supervisor approval is required to secure a juvenile to a stationary object for longer than 60 minutes and every 30 minutes thereafter (15 CCR 1148). Supervisor approval should be documented.

The decision for securing a minor to a stationary object for longer than 60 minutes and every 30 minutes thereafter shall be based upon the best interests of the juvenile offender (15 CCR 1148).

### 311.11.1   LOCKED ENCLOSURES

A thorough inspection of the area shall be conducted before placing a juvenile into the enclosure. A second inspection shall be conducted after removing the juvenile. Any damage noted to the room should be photographed and documented in the crime report.

The following requirements shall apply to a juvenile offender who is held inside a locked enclosure:

    (a)    The juvenile shall constantly be monitored by an audio/video system during the entire custody.

    (b)    Juveniles shall have constant auditory access to department members (15 CCR 1147).

    (c)    Initial placement into and removal from a locked enclosure shall be logged (Welfare and Institutions Code § 207.1(d)).

    (d)    Unscheduled safety checks to provide for the health and welfare of the juvenile by a staff member, no less than once every 15 minutes, shall occur (15 CCR 1147; 15 CCR 1151).

        1.    All safety checks shall be logged.

        2.    The safety check should involve questioning the juvenile as to his/her well-being (sleeping juveniles or apparently sleeping juveniles should be awakened).

        3.    Requests or concerns of the juvenile should be logged.

    (e)    Males and females shall not be placed in the same locked room (15 CCR 1147).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000601

# Redding Police Department
RPD Policy Manual

*Temporary Custody of Juveniles*

(f)     Juvenile offenders should be separated according to severity of the crime (e.g., felony or misdemeanor).

(g)     Restrained juveniles shall not be mixed in a cell or room with unrestrained juveniles.

## 311.12   SUICIDE ATTEMPT, DEATH OR SERIOUS INJURY OF A JUVENILE
The Watch Commander will ensure procedures are in place to address the suicide attempt, death or serious injury of any juvenile held at the Redding Police Department (15 CCR 1142; 15 CCR 1047). The procedures will address:

(a)     Immediate notification of the on-duty supervisor, Chief of Police and Investigation Division Supervisor.

(b)     Notification of the parent, guardian or person standing in loco parentis, of the juvenile.

(c)     Notification of the appropriate prosecutor.

(d)     Notification of the City attorney.

(e)     Notification to the coroner.

(f)     Notification of the juvenile court.

(g)     In the case of a death, providing a report to the Attorney General under Government Code § 12525 within 10 calendar days of the death, and forwarding the same report to the Board of State and Community Corrections within the same time frame (15 CCR 1046).

(h)     A medical and operational review of deaths and suicide attempts pursuant to 15 CCR 1046.

(i)     Evidence preservation.

## 311.13   INTERVIEWING OR INTERROGATING JUVENILE SUSPECTS
No interview or interrogation of a juvenile should occur unless the juvenile has the apparent capacity to consent, and does consent to an interview or interrogation.

Prior to conducting a custodial interrogation, including the waiver of *Miranda* rights, an officer shall permit a juvenile 15 years of age or younger to consult with legal counsel in person, by telephone, or by video conference. The consultation may not be waived by the juvenile. The requirement to consult with legal counsel does not apply when (Welfare and Institutions Code § 625.6):

(a)     Information is necessary to protect life or property from an imminent threat.

(b)     The questions are limited to what is reasonably necessary to obtain the information relating to the threat.

### 311.13.1   MANDATORY RECORDINGS OF JUVENILES
Any interrogation of an individual under 18 years of age who is in custody and suspected of committing murder shall be audio and video recorded when the interview takes place at a department facility, jail, detention facility, or other fixed place of detention. The recording shall

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000602

*Temporary Custody of Juveniles*

include the entire interview and a *Miranda* advisement preceding the interrogation (Penal Code § 859.5).

This recording is not mandatory when (Penal Code § 859.5):

(a)   Recording is not feasible because of exigent circumstances that are later documented in a report.

(b)   The individual refuses to have the interrogation recorded, including a refusal any time during the interrogation, and the refusal is documented in a report. If feasible, the refusal shall be electronically recorded.

(c)   The custodial interrogation occurred in another state by law enforcement officers of that state, unless the interrogation was conducted with the intent to avoid the requirements of Penal Code § 859.5.

(d)   The interrogation occurs when no member conducting the interrogation has a reason to believe that the individual may have committed murder. Continued custodial interrogation concerning that offense shall be electronically recorded if the interrogating member develops a reason to believe the individual committed murder.

(e)   The interrogation would disclose the identity of a confidential informant or would jeopardize the safety of an officer, the individual being interrogated, or another individual. Such circumstances shall be documented in a report.

(f)   A recording device fails despite reasonable maintenance and the timely repair or replacement is not feasible.

(g)   The questions are part of a routine processing or booking, and are not an interrogation.

(h)   The suspect is in custody for murder and the interrogation is unrelated to a murder. However, if any information concerning a murder is mentioned during the interrogation, the remainder of the interrogation shall be recorded.

These recordings shall be retained until a conviction is final and all direct and habeas corpus appeals are exhausted, a court no longer has any jurisdiction over the individual, or the prosecution for that offense is barred (Penal Code § 859.5; Welfare and Institutions Code § 626.8).

## 311.14   REMOVING STUDENTS FROM SCHOOL FOR INTERVIEW PURPOSES
When an officer needs to interview a juvenile at school, the officer shall notify school officials of his/her presence prior to contacting the juvenile. The officer should also advise the school officials of the estimated length of time the juvenile will be away from class.

## 311.15   FORMAL BOOKING
No juvenile offender shall be formally booked without the authorization of the arresting officer's supervisor, or in his/her absence, the Watch Commander.

Any juvenile 14 years of age or older who is taken into custody for a felony, or any juvenile whose acts amount to a sex crime, shall be booked, fingerprinted, and photographed.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000603

# Redding Police Department
### RPD Policy Manual

## *Temporary Custody of Juveniles*

For all other acts defined as crimes, juveniles may be booked, fingerprinted or photographed upon the approval from the Watch Commander or Investigations Division supervisor, giving due consideration to the following:

    (a)    The gravity of the offense

    (b)    The past record of the offender

    (c)    The age of the offender

## 311.16  RELEASE OF INFORMATION CONCERNING JUVENILES

Court decisions and legislation have combined to carefully specify situations in which information may be given out or exchanged when a case involves a juvenile. Members of this department shall not divulge any information regarding juveniles unless they are certain of the legal authority to do so.

A copy of the current policy of the juvenile court concerning authorized release of information and appropriate acknowledgment forms shall be kept with copies of this procedure in the Redding Police Department Policy Manual. Such releases are authorized by Welfare and Institutions Code § 827.

Welfare and Institutions Code § 828 authorizes the release of certain information to other agencies. It shall be the responsibility of the Records Supervisor and the appropriate Investigations Division supervisors to ensure that personnel of those divisions act within legal guidelines.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000604

**Redding Police Department**

RPD Policy Manual

# Adult Abuse

## 312.1  PURPOSE AND SCOPE

The purpose of this policy is to provide guidelines for the investigation and reporting of suspected abuse of certain adults who may be more vulnerable than others. This policy also addresses mandatory notification for Redding Police Department members as required by law.

### 312.1.1   DEFINITIONS

Definitions related to this policy include:

**Adult abuse** - Any offense or attempted offense involving violence or neglect of an adult victim when committed by a person responsible for the adult's care, or any other act that would mandate reporting or notification to a social service agency or law enforcement (Penal Code § 368).

**Abuse of an elder (age 65 or older) or dependent adult** - Physical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering; or the deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering. Neglect includes self-neglect (Welfare and Institutions Code § 15610.07; Penal Code § 368.5).

## 312.2  POLICY

The Redding Police Department will investigate all reported incidents of alleged adult abuse and ensure proper reporting and notification as required by law.

## 312.3  INVESTIGATIONS AND REPORTING

All reported or suspected cases of adult abuse require investigation and a report, even if the allegations appear unfounded or unsubstantiated.

Investigations and reports related to suspected cases of adult abuse should address, as applicable:

(a) The overall basis for the contact. This should be done by the investigating officer in all circumstances where a suspected adult abuse victim is contacted.

(b) Any relevant statements the victim may have made and to whom he/she made the statements.

(c) If a person is taken into protective custody, the reasons, the name and title of the person making the decision, and why other alternatives were not appropriate.

(d) Documentation of any visible injuries or any injuries identified by the victim. This should include photographs of such injuries, if practicable.

(e) Whether the victim was transported for medical treatment or a medical examination.

(f) Whether the victim identified a household member as the alleged perpetrator, and a list of the names of any other potential victims or witnesses who may reside in the residence.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000605

## Redding Police Department
RPD Policy Manual

*Adult Abuse*

---

(g)  Identification of any prior related reports or allegations of abuse, including other jurisdictions, as reasonably known.

(h)  Previous addresses of the victim and suspect.

(i)  Other potential witnesses who have not yet been interviewed, such as relatives or others close to the victim's environment.

(j)  Results of investigations shall be provided to those agencies (Adult Protective Services (APS), long-term ombudsman) that referred or reported the adult abuse (Welfare and Institutions Code § 15640(f)).

(k)  Whether a death involved the End of Life Option Act:

1.  Whether or not assistance was provided to the person beyond that allowed by law (Health and Safety Code § 443.14)

2.  Whether an individual knowingly altered or forged a request for an aid-in-dying drug to end a person's life without his/her authorization, or concealed or destroyed a withdrawal or rescission of a request for an aid-in-dying drug (Health and Safety Code § 443.17)

3.  Whether coercion or undue influence was exerted on the person to request or ingest an aid-in-dying drug or to destroy a withdrawal or rescission of a request for such medication (Health and Safety Code § 443.17)

4.  Whether an aid-in-dying drug was administered to a person without his/her knowledge or consent (Health and Safety Code § 443.17).

Any unexplained death of an adult who was in the care of a guardian or caretaker should be considered as potential adult abuse and investigated similarly.

## 312.4   QUALIFIED INVESTIGATORS
Qualified investigators should be available to investigate cases of adult abuse. These investigators should:

(a)  Conduct interviews in appropriate interview facilities.

(b)  Be familiar with forensic interview techniques specific to adult abuse investigations.

(c)  Present all cases of alleged adult abuse to the prosecutor for review.

(d)  Coordinate with other enforcement agencies, social service agencies and facility administrators as needed.

(e)  Provide referrals to therapy services, victim advocates, guardians and support for the victim and family as appropriate.

(f)  Participate in or coordinate with multidisciplinary investigative teams as applicable (Welfare and Institutions Code § 15610.55).

## 312.5   MANDATORY NOTIFICATION
Members of the Redding Police Department shall notify the local office of the California Department of Social Services (CDSS) APS agency when they reasonably suspect, have

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000606

# Redding Police Department

RPD Policy Manual

*Adult Abuse*

observed, or have knowledge of an incident that reasonably appears to be abuse of an elder (age 65 or older) or dependent adult, or are told by an elder or dependent adult that he/she has experienced abuse (Welfare and Institutions Code § 15630(b)).

Notification shall be made by telephone as soon as practicable and a written report shall be provided within two working days as provided in Welfare and Institutions Code § 15630(b)(c)).

A dependent adult is an individual, regardless of whether the individual lives independently, between 18 and 64 years of age who has physical or mental limitations that restrict his/her ability to carry out normal activities or to protect his/her rights, including but not limited to persons who have physical or developmental disabilities or whose physical or mental abilities have diminished because of age. This also includes those admitted as inpatients to a 24-hour health facility, as defined in state law (Welfare and Institutions Code § 15610.23).

Notification shall also be made to the following agencies as soon as practicable or as provided below (Welfare and Institutions Code § 15630):

    (a)    If the abuse is physical abuse and occurred in a long-term care facility (not a state mental health hospital or a state developmental center) notification shall be made as follows (Welfare and Institutions Code § 15630(b)(1)):

        1.    If there is serious bodily injury, notification shall be made by telephone and, within two hours, a written report shall be made to the local ombudsman and the corresponding licensing agency.

        2.    If there is physical abuse and no serious bodily injury, notification shall be made by telephone and, within 24 hours, a written report shall be made to the local ombudsman and the corresponding licensing agency.

        3.    If the abuse is allegedly caused by a resident with dementia and there is no serious bodily injury, notification shall be made by telephone and a written report to the local ombudsman within 24 hours.

        4.    When a report of abuse is received by the Department, the local ombudsman shall be called to coordinate efforts to provide the most immediate and appropriate response (Welfare and Institutions Code § 15630(b)).

    (b)    If the abuse is in a long-term care facility (not a state mental health or a state developmental center) and is other than physical abuse, a telephone report and a written report shall be made to the local ombudsman as soon as practicable (Welfare and Institutions Code § 15630(b)).

    (c)    The California Department of Public Health (DPH) shall be notified of all known or suspected abuse in a long-term care facility.

    (d)    The SDSS shall be notified of all known or suspected abuse occurring in a residential care facility for the elderly or in an adult day program.

    (e)    If the abuse occurred in an adult day health care center, DPH and the California Department of Aging shall be notified.

    (f)    The Bureau of Medi-Cal Fraud and Elder Abuse shall be notified of all abuse that constitutes criminal activity in a long-term care facility.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000607

# Redding Police Department

RPD Policy Manual

*Adult Abuse*

(g) The District Attorney's office shall be notified of all cases of physical abuse and financial abuse in a long-term care facility.

(h) If the abuse occurred at a state mental hospital or a state developmental center, notification shall be made to the designated investigators of the California Department of State Hospitals or the California Department of Developmental Services as soon as practicable but no later than two hours after law enforcement becomes aware of the abuse (Welfare and Institutions Code § 15630(b)).

  1. When a report of abuse is received by the Department, investigation efforts shall be coordinated with the designated investigators of the California Department of State Hospitals or the California Department of Developmental Services (Welfare and Institutions Code § 15630(b)).

(i) If during an investigation it is determined that the adult abuse is being committed by a licensed health practitioner as identified in Welfare and Institutions Code § 15640(b), the appropriate licensing agency shall be immediately notified (Welfare and Institutions Code 15640(b)).

(j) When the Department receives a report of abuse, neglect or abandonment of an elder or dependent adult alleged to have occurred in a long-term care facility, the licensing agency shall be notified by telephone as soon as practicable (Welfare and Institutions Code § 15640(e)).

The Investigations Division supervisor is responsible for ensuring that proper notifications have occurred to the District Attorney's Office and any other regulatory agency that may be applicable based upon where the abuse took place (e.g., care facility, hospital) per Welfare and Institutions Code § 15630(b).

Notification is not required for a person who was merely present when a person self-administered a prescribed aid-in-dying drug or a person prepared an aid-in-dying drug so long as the person did not assist the individual in ingesting the aid-in-dying drug (Health and Safety Code § 443.14; Health and Safety Code § 443.18).

## 312.5.1   NOTIFICATION PROCEDURE

Notification should include the following information, if known (Welfare and Institutions Code § 15630(e)):

(a) The name of the person making the report.

(b) The name and age of the elder or dependent adult.

(c) The present location of the elder or dependent adult.

(d) The names and addresses of family members or any other adult responsible for the care of the elder or dependent adult.

(e) The nature and extent of the condition of the elder or dependent adult.

(f) The date of incident.

(g) Any other information, including information that led the person to suspect elder or dependent adult abuse.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000608

# Redding Police Department
RPD Policy Manual

*Adult Abuse*

### 312.6  PROTECTIVE CUSTODY

Before taking an adult abuse victim into protective custody when facts indicate the adult may not be able to care for him/herself, the officer should make reasonable attempts to contact APS. Generally, removal of an adult abuse victim from his/her family, guardian or other responsible adult should be left to the welfare authorities when they are present or have become involved in an investigation.

Generally, members of this department should remove an adult abuse victim from his/her family or guardian without a court order only when no other effective alternative is reasonably available and immediate action reasonably appears necessary to protect the victim. Prior to taking an adult abuse victim into protective custody, the officer should take reasonable steps to deliver the adult to another qualified legal guardian, unless it reasonably appears that the release would endanger the victim or result in abduction. If this is not a reasonable option, the officer shall ensure that the adult is delivered to APS.

Whenever practicable, the officer should inform a supervisor of the circumstances prior to taking an adult abuse victim into protective custody. If prior notification is not practicable, officers should contact a supervisor promptly after taking the adult into protective custody.

When adult abuse victims are under state control, have a state-appointed guardian or there are other legal holdings for guardianship, it may be necessary or reasonable to seek a court order on behalf of the adult victim to either remove the adult from a dangerous environment (protective custody) or restrain a person from contact with the adult.

### 312.6.1  EMERGENCY PROTECTIVE ORDERS

In any situation which an officer reasonably believes that an elder or dependent adult is in immediate and present danger of abuse based on an allegation of a recent incident of abuse or threat of abuse (other than financial abuse alone), the officer may seek an emergency protective order against the person alleged to have committed or threatened such abuse (Family Code § 6250(d)).

### 312.7  INTERVIEWS

### 312.7.1  PRELIMINARY INTERVIEWS

Absent extenuating circumstances or impracticality, officers should audio record the preliminary interview with a suspected adult abuse victim. Officers should avoid multiple interviews with the victim and should attempt to gather only the information necessary to begin an investigation. When practicable, investigating officers should defer interviews until a person who is specially trained in such interviews is available.

### 312.7.2  DETAINING VICTIMS FOR INTERVIEWS

An officer should not detain an adult involuntarily who is suspected of being a victim of abuse solely for the purpose of an interview or physical exam without his/her consent or the consent of a guardian unless one of the following applies:

# Redding Police Department
RPD Policy Manual

*Adult Abuse*

(a) Exigent circumstances exist, such as:

1. A reasonable belief that medical issues of the adult need to be addressed immediately.

2. A reasonable belief that the adult is or will be in danger of harm if the interview or physical exam is not immediately completed.

3. The alleged offender is a family member or guardian and there is reason to believe the adult may be in continued danger.

(b) A court order or warrant has been issued.

## 312.8   MEDICAL EXAMINATIONS
When an adult abuse investigation requires a medical examination, the investigating officer should obtain consent for such examination from the victim, guardian, agency or entity having legal custody of the adult. The officer should also arrange for the adult's transportation to the appropriate medical facility.

In cases where the alleged offender is a family member, guardian, agency or entity having legal custody and is refusing to give consent for the medical examination, officers should notify a supervisor before proceeding. If exigent circumstances do not exist or if state law does not provide for officers to take the adult for a medical examination, the supervisor should consider other government agencies or services that may obtain a court order for such an examination.

## 312.9   TRAINING
The Department should provide training on best practices in adult abuse investigations to members tasked with investigating these cases. The training should include:

(a) Participating in multidisciplinary investigations, as appropriate.

(b) Conducting interviews.

(c) Availability of therapy services for adults and families.

(d) Availability of specialized forensic medical exams.

(e) Cultural competence (including interpretive services) related to adult abuse investigations.

(f) Availability of victim advocates or other support.

## 312.10   RECORDS BUREAU RESPONSIBILITIES
The Records Division is responsible for:

(a) Providing a copy of the adult abuse report to the APS, ombudsman or other agency as applicable within two working days or as required by law (Welfare and Institutions Code § 15630; Welfare and Institutions Code § 15640(c)).

(b) Retaining the original adult abuse report with the initial case file.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
Adult Abuse - 139

COR (McLeod)  000610

# Redding Police Department
RPD Policy Manual

*Adult Abuse*

---

**312.11   JURISDICTION**

The Redding Police Department has concurrent jurisdiction with state law enforcement agencies when investigating elder and dependent adult abuse and all other crimes against elder victims and victims with disabilities (Penal Code § 368.5).

Adult protective services agencies and local long-term care ombudsman programs also have jurisdiction within their statutory authority to investigate elder and dependent adult abuse and criminal neglect and may assist in criminal investigations upon request in such cases. However, this department will retain responsibility for the criminal investigations (Penal Code § 368.5).

**312.12   RELEVANT STATUTES**
**Penal Code § 368 (c)**

Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health may be endangered, is guilty of a misdemeanor.

**Penal Code § 368 (f)**

(f) A person who commits the false imprisonment of an elder or a dependent adult by the use of violence, menace, fraud, or deceit is punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years.

**Welfare and Institutions Code § 15610.05**

"Abandonment" means the desertion or willful forsaking of an elder or a dependent adult by anyone having care or custody of that person under circumstances in which a reasonable person would continue to provide care and custody.

**Welfare and Institutions Code § 15610.06**

"Abduction" means the removal from this state and the restraint from returning to this state, or the restraint from returning to this state, of any elder or dependent adult who does not have the capacity to consent to the removal from this state and the restraint from returning to this state, or the restraint from returning to this state, as well as the removal from this state or the restraint from returning to this state, of any conservatee without the consent of the conservator or the court.

**Welfare and Institutions Code § 15610.30**

(a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

(1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000611

# Redding Police Department

RPD Policy Manual

*Adult Abuse*

(2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

(3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.

(b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.

(c) For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.

(d) For purposes of this section, "representative" means a person or entity that is either of the following:

(1) A conservator, trustee, or other representative of the estate of an elder or dependent adult.

(2) An attorney-in-fact of an elder or dependent adult who acts within the authority of the power of attorney.

## Welfare and Institutions Code § 15610.43

(a) "Isolation" means any of the following:

(1) Acts intentionally committed for the purpose of preventing, and that do serve to prevent, an elder or dependent adult from receiving his or her mail or telephone calls.

(2) Telling a caller or prospective visitor that an elder or dependent adult is not present, or does not wish to talk with the caller, or does not wish to meet with the visitor where the statement is false, is contrary to the express wishes of the elder or the dependent adult, whether he or she is competent or not, and is made for the purpose of preventing the elder or dependent adult from having contact with family, friends, or concerned persons.

(3) False imprisonment, as defined in Section 236 of the Penal Code.

(4) Physical restraint of an elder or dependent adult, for the purpose of preventing the elder or dependent adult from meeting with visitors.

(b) The acts set forth in subdivision (a) shall be subject to a rebuttable presumption that they do not constitute isolation if they are performed pursuant to the instructions of a physician and surgeon licensed to practice medicine in the state, who is caring for the elder or dependent adult at the time the instructions are given, and who gives the instructions as part of his or her medical care.

(c) The acts set forth in subdivision (a) shall not constitute isolation if they are performed in response to a reasonably perceived threat of danger to property or physical safe

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000612

# Redding Police Department

RPD Policy Manual

---

*Adult Abuse*

---

**Welfare and Institutions Code § 15610.57**

(a) "Neglect" means either of the following:

(1) The negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise.

(2) The negligent failure of an elder or dependent adult to exercise that degree of self care that a reasonable person in a like position would exercise.

(b) Neglect includes, but is not limited to, all of the following:

(1) Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter.

(2) Failure to provide medical care for physical and mental health needs. No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.

(3) Failure to protect from health and safety hazards.

(4) Failure to prevent malnutrition or dehydration.

(5) Failure of an elder or dependent adult to satisfy the needs specified in paragraphs (1) to (4), inclusive, for himself or herself as a result of poor cognitive functioning, mental limitation, substance abuse, or chronic poor health.

**Welfare and Institutions Code §  15610.63**

15610.63. "Physical abuse" means any of the following:

(a) Assault, as defined in Section 240 of the Penal Code.

(b) Battery, as defined in Section 242 of the Penal Code.

(c) Assault with a deadly weapon or force likely to produce great bodily injury, as defined in Section 245 of the Penal Code.

(d) Unreasonable physical constraint, or prolonged or continual deprivation of food or water.

(e) Sexual assault, that means any of the following:

(1) Sexual battery, as defined in Section 243.4 of the Penal Code.

(2) Rape, as defined in Section 261 of the Penal Code.

(3) Rape in concert, as described in Section 264.1 of the Penal Code.

(4) Spousal rape, as defined in Section 262 of the Penal Code.

(5) Incest, as defined in Section 285 of the Penal Code.

(6) Sodomy, as defined in Section 286 of the Penal Code.

(7) Oral copulation, as defined in Section 287 or former Section 288a of the Penal Code.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000613

# Redding Police Department

RPD Policy Manual

*Adult Abuse*

(8) Sexual penetration, as defined in Section 289 of the Penal Code.

(9) Lewd or lascivious acts as defined in paragraph (2) of subdivision (b) of Section 288 of the Penal Code.

(f) Use of a physical or chemical restraint or psychotropic medication under any of the following conditions:

(1) For punishment.

(2) For a period beyond that for which the medication was ordered pursuant to the instructions of a physician and surgeon licensed in the State of California, who is providing medical care to the elder or dependent adult at the time the instructions are given.

(3) For any purpose not authorized by the physician and surgeon.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000614

# Discriminatory Harassment

## 313.1  PURPOSE AND SCOPE

The purpose of this policy is to prevent Department members from being subjected to discriminatory harassment, including sexual harassment and retaliation. Nothing in this policy is intended to create a legal or employment right or duty that is not created by law.

## 313.2  POLICY

The Redding Police Department is an equal opportunity employer and is committed to creating and maintaining a work environment that is free of all forms of discriminatory harassment, including sexual harassment and retaliation (Government Code § 12940(k); 2 CCR 11023). The Department will not tolerate discrimination against a member in hiring, promotion, discharge, compensation, fringe benefits and other privileges of employment. The Department will take preventive and corrective action to address any behavior that violates this policy or the rights it is designed to protect.

The non-discrimination policies of the Department may be more comprehensive than state or federal law. Conduct that violates this policy may not violate state or federal law but still could subject a member to discipline.

## 313.3  DEFINITIONS

Definitions related to this policy include:

### 313.3.1  DISCRIMINATION

The Department prohibits all forms of discrimination, including any employment-related action by a member that adversely affects an applicant or member and is based on the actual or perceived race, ethnicity, national origin, religion, sex, sexual orientation, gender identity or expression, age, disability, pregnancy, genetic information, veteran status, marital status and other classifications protected by law.

Discriminatory harassment, including sexual harassment, is verbal or physical conduct that demeans or shows hostility or aversion toward an individual based upon that individual's protected class. It has the effect of interfering with an individual's work performance or creating a hostile or abusive work environment.

Conduct that may, under certain circumstances, constitute discriminatory harassment, can include making derogatory comments, crude and offensive statements or remarks; making slurs or off-color jokes, stereotyping; engaging in threatening acts; making indecent gestures, pictures, cartoons, posters or material; making inappropriate physical contact; or using written material or Department equipment and/or systems to transmit or receive offensive material, statements or pictures. Such conduct is contrary to Department policy and to a work environment that is free of discrimination.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000615

# Redding Police Department

RPD Policy Manual

---

*Discriminatory Harassment*

---

### 313.3.2   RETALIATION

Retaliation is treating a person differently or engaging in acts of reprisal or intimidation against the person because he/she has engaged in protected activity, filed a charge of discrimination, participated in an investigation or opposed a discriminatory practice. Retaliation will not be tolerated.

### 313.3.3   SEXUAL HARASSMENT

The Department prohibits all forms of discrimination and discriminatory harassment, including sexual harassment. It is unlawful to harass an applicant or a member because of that person's sex.

Sexual harassment includes, but is not limited to, unwelcome sexual advances, requests for sexual favors or other verbal, visual or physical conduct of a sexual nature when:

(a)   Submission to such conduct is made either explicitly or implicitly a term or condition of employment, position or compensation.

(b)   Submission to, or rejection of, such conduct is used as the basis for any employment decisions affecting the member.

(c)   Such conduct has the purpose or effect of substantially interfering with a member's work performance or creating an intimidating, hostile, or offensive work environment.

### 313.3.4   ADDITIONAL CONSIDERATIONS

Discrimination and discriminatory harassment do not include actions that are in accordance with established rules, principles or standards, including:

(a)   Acts or omission of acts based solely upon bona fide occupational qualifications under the Equal Employment Opportunity Commission (EEOC) and the California Fair Employment and Housing Council guidelines.

(b)   Bona fide requests or demands by a supervisor that a member improves his/her work quality or output, that the member report to the job site on time, that the member complies with City or Department rules or regulations, or any other appropriate work-related communication between supervisor and member.

## 313.4   RESPONSIBILITIES

This policy applies to all Department personnel. All members shall follow the intent of these guidelines in a manner that reflects Department policy, professional law enforcement standards and the best interest of the Department and its mission.

Members are encouraged to promptly report any discriminatory, retaliatory or harassing conduct or known violations of this policy to a supervisor. Any member who is not comfortable with reporting violations of this policy to his/her immediate supervisor may bypass the chain of command and make the report to a higher-ranking supervisor or manager. Complaints may also be filed with the Chief of Police, the Personnel Director or the City Manager.

Any member who believes, in good faith, that he/she has been discriminated against, harassed or subjected to retaliation, or who has observed harassment or discrimination, is encouraged to promptly report such conduct in accordance with the procedures set forth in this policy.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000616

Redding Police Department
RPD Policy Manual

*Discriminatory Harassment*

Supervisors and managers receiving information regarding alleged violations of this policy shall determine if there is any basis for the allegation and shall proceed with resolution as stated below.

### 313.4.1   SUPERVISOR RESPONSIBILITIES

The responsibilities of each supervisor and manager shall include, but are not limited to:

(a)   Continually monitoring the work environment and striving to ensure that it is free from all types of unlawful discrimination, including harassment or retaliation.

(b)   Taking prompt, appropriate action within their work units to avoid and minimize the incidence of any form of discrimination, harassment or retaliation.

(c)   Ensuring that his/her subordinates understand their responsibilities under this policy.

(d)   Ensuring that members who make complaints or who oppose any unlawful employment practices are protected from retaliation and that such matters are kept confidential to the extent possible.

(e)   Making a timely determination regarding the substance of any allegation based upon all available facts.

(f)   Notifying the Chief of Police or Personnel Director in writing of the circumstances surrounding any reported allegations or observed acts of discrimination, harassment or retaliation no later than the next business day.

### 313.4.2   SUPERVISOR'S ROLE

Because of differences in individual values, supervisors and managers may find it difficult to recognize that their behavior or the behavior of others is discriminatory, harassing or retaliatory. Supervisors and managers shall be aware of the following considerations:

(a)   Behavior of supervisors and managers should represent the values of the Department and professional law enforcement standards.

(b)   False or mistaken accusations of discrimination, harassment or retaliation can have negative effects on the careers of innocent members.

Nothing in this section shall be construed to prevent supervisors or managers from discharging supervisory or management responsibilities, such as determining duty assignments, evaluating or counseling members or issuing discipline, in a manner that is consistent with established procedures.

### 313.5   INVESTIGATION OF COMPLAINTS

Various methods of resolution exist. During the pendency of any such investigation, the supervisor of the involved member should take prompt and reasonable steps to mitigate or eliminate any continuing abusive or hostile work environment. It is the policy of the Department that all complaints of discrimination, retaliation or harassment shall be fully documented and promptly and thoroughly investigated.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000617

# Redding Police Department

RPD Policy Manual

---

*Discriminatory Harassment*

---

### 313.5.1   SUPERVISORY RESOLUTION

Members who believe they are experiencing discrimination, harassment or retaliation should be encouraged to inform the individual that his/her behavior is unwelcome, offensive, unprofessional or inappropriate. However, if the member feels uncomfortable or threatened or has difficulty expressing his/her concern, or if this does not resolve the concern, assistance should be sought from a supervisor or manager who is a rank higher than the alleged transgressor.

A supervisor or manager encountering any of the aforementioned forms of misconduct shall be proactive and take the following minimal actions:

(a)   Contact the complaining party, or the person experiencing this type of conduct and advise the employee of options available, and the actions that will be taken.

(b)   Investigate the action complained of or observed and affect the necessary disciplinary action.  Notify the Chief of Police, and the City Personnel Director, via the chain-of-command, at the earliest opportunity, regarding the nature of the complaint and what action has been initiated.

(c)   Contact the complaining party, or the person experiencing this type of violation, and advise them of the results of the Supervisor's investigation and action.  Determine if the complaining party is satisfied with this resolution and, if not, advise the employee on what alternative courses of action are available to remedy their complaint.

(d)   Take reasonable steps to protect the complainant from further harassment, discrimination, or retaliation.

(e)   Document the entire process and finding and forward it through the chain-of-command to the Chief of Police, to include the City Personnel Director.

### 313.5.2   FORMAL INVESTIGATION

If the complaint cannot be satisfactorily resolved through the process described above, a formal investigation will be conducted. The Chief of Police will determine whether an Internal Affairs investigation is required.

The person assigned to investigate the complaint will have full authority to investigate all aspects of the complaint. Investigative authority includes access to records and the cooperation of any members involved. No influence will be used to suppress any complaint and no member will be subject to retaliation or reprisal for filing a complaint, encouraging others to file a complaint or for offering testimony or evidence in any investigation.

Formal investigation of the complaint will be confidential to the extent possible and will include, but is not limited to, details of the specific incident, frequency and dates of occurrences and names of any witnesses. Witnesses will be advised regarding the prohibition against retaliation, and that a disciplinary process, up to and including termination, may result if retaliation occurs.

Members who believe they have been discriminated against, harassed or retaliated against because of their protected status, are encouraged to follow the chain of command but may also file a complaint directly with the Chief of Police, Personnel Director or the City Manager.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000618

# Redding Police Department

RPD Policy Manual

---

*Discriminatory Harassment*

---

### 313.5.3  ALTERNATIVE COMPLAINT PROCESS

No provision of this policy shall be construed to prevent any member from seeking legal redress outside the Department. Members who believe that they have been harassed, discriminated or retaliated against are entitled to bring complaints of employment discrimination to federal, state and/or local agencies responsible for investigating such allegations. Specific time limitations apply to the filing of such charges. Members are advised that proceeding with complaints under the provisions of this policy does not in any way affect those filing requirements.

## 313.6  DOCUMENTATION OF COMPLAINTS

All complaints or allegations shall be thoroughly documented on forms and in a manner designated by the Chief of Police. The outcome of all reports shall be:

- Approved by the Chief of Police, the City Manager or the Personnel Director, depending on the ranks of the involved parties.

- Maintained in accordance with the Department's established records retention schedule.

### 313.6.1  NOTIFICATION OF DISPOSITION

The complainant and/or victim will be notified in writing of the disposition of the investigation and the actions taken to remedy or address the circumstances giving rise to the complaint.

## 313.7  TRAINING

All new members shall be provided with a copy of this policy as part of their orientation. The policy shall be reviewed with each new member. The member shall certify by signing the prescribed form that he/she has been advised of this policy, is aware of and understands its contents and agrees to abide by its provisions during his/her term with the Department.

All members shall receive annual training on the requirements of this policy and shall certify by signing the prescribed form that they have reviewed the policy, understand its contents and agree that they will continue to abide by its provisions.

### 313.7.1  STATE-REQUIRED TRAINING

The Training Sergeant should ensure that employees receive the required state training and education regarding sexual harassment, prevention of abusive conduct, and harassment based on gender identity, gender expression, and sexual orientation as follows (Government Code § 12950.1; 2 CCR 11024):

(a) Supervisory employees shall receive two hours of classroom or other effective interactive training and education within six months of assuming a supervisory position.

(b) All other employees shall receive one hour of classroom or other effective interactive training and education within six months of their employment or sooner for seasonal or temporary employees as described in Government Code § 12950.1.

(c) All employees shall receive refresher training every two years thereafter.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000619

# Redding Police Department
RPD Policy Manual

*Discriminatory Harassment*

If the required training is to be provided by DFEH online training courses, the Training Sergeant should ensure that employees are provided the link or website address to the training course (Government Code § 12950).

### 313.7.2   TRAINING RECORDS
The Training Sergeant shall be responsible for maintaining records of all discriminatory harassment training provided to members. Records shall be retained in accordance with established records retention schedules and for a minimum of two years (2 CCR 11024).

## 313.8   REQUIRED POSTERS
The Department shall display the required posters regarding discrimination, harassment and transgender rights in a prominent and accessible location for members (Government Code § 12950).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000620

Policy
**314**

# Child Abuse

## 314.1   PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for the investigation of suspected child abuse. This policy also addresses when Redding Police Department members are required to notify Shasta County Child and Family Services (CFS) of suspected child abuse.

### 314.1.1   DEFINITIONS
Definitions related to this policy include:

**Child** - Unless otherwise specified by a cited statute, a child is any person under the age of 18 years.

**Child abuse** - Any offense or attempted offense involving violence or neglect with a child victim when committed by a person responsible for the child's care or any other act that would mandate notification to a social service agency or law enforcement (Penal Code § 11165.9; Penal Code § 11166).

## 314.2   POLICY
The Redding Police Department will investigate all reported incidents of alleged criminal child abuse and ensure CFS is notified as required by law.

## 314.3   MANDATORY NOTIFICATION
Shasta County Children and Family Services shall be notified when (Penal Code § 11166):

(a)   There is a known or suspected instance of child abuse or neglect reported, which is alleged to have occurred as a result of the action of a person responsible for the child's welfare, or

(b)   A person responsible for the child's welfare fails to adequately protect the child from abuse when the person knew or reasonably should have known that the child was in danger of abuse.

The District Attorney's office shall be notified in all instances of known or suspected child abuse or neglect reported to this department. Reports only involving neglect by a person, who has the care or custody of a child, to provide adequate food, clothing, shelter, medical care or supervision where no physical injury to the child has occurred should not be reported to the District Attorney (Penal Code § 11166).

When the abuse or neglect occurs at a licensed facility or is alleged to have resulted from the actions of a person who is required to have a state license (e.g., foster homes, group homes, day care), notification shall also be made to the California Department of Social Services or other applicable licensing authority (Penal Code 11166.1; Penal Code 11166.2).

For purposes of notification, the abuse or neglect includes physical injury or death inflicted by other than accidental means upon a child by another person; sexual abuse (Penal Code § 11165.1); neglect (Penal Code § 11165.2); the willful harming or injuring of a child or the endangering of the

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000621

# Redding Police Department
RPD Policy Manual

*Child Abuse*

person or health of a child (Penal Code § 11165.3); and unlawful corporal punishment or injury (Penal Code § 11165.4). Child abuse or neglect does not include a mutual affray between minors, nor does it include an injury caused by the reasonable and necessary force used by a peace officer acting within the course and scope of his/her employment as a peace officer.

## 314.3.1   NOTIFICATION PROCEDURE
Notification should occur as follows (Penal Code § 11166):

    (a)    Notification shall be made immediately, or as soon as practicable, by telephone, fax or electronic transmission.

    (b)    A written follow-up report should be forwarded within 36 hours of receiving the information concerning the incident.

## 314.4   QUALIFIED INVESTIGATORS
Qualified investigators should be available for child abuse investigations. These investigators should:

    (a)    Conduct interviews in child appropriate interview facilities.

    (b)    Be familiar with forensic interview techniques specific to child abuse investigations.

    (c)    Present all cases of alleged child abuse to the prosecutor for review.

    (d)    Coordinate with other enforcement agencies, social service agencies and school administrators as needed.

    (e)    Provide referrals to therapy services, victim advocates, guardians and support for the child and family as appropriate.

    (f)    Participate in or coordinate with multidisciplinary investigative teams as applicable (Welfare and Institutions Code § 18961.7).

## 314.5   INVESTIGATIONS AND REPORTING
Officers shall document each report of suspected child abuse that is not determined to be unfounded or unsubstantiated. Documentation will include a police report, as well as a suspected child abuse report.

Investigations and reports related to suspected cases of child abuse should address, as applicable:

    (a)    The overall basis for the contact. This should be done by the investigating officer in all circumstances where a suspected child abuse victim was contacted.

    (b)    The exigent circumstances that existed if officers interviewed the child victim without the presence of a parent or guardian.

    (c)    Any relevant statements the child may have made and to whom he/she made the statements.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000622

# Redding Police Department

RPD Policy Manual

*Child Abuse*

---

    (d)    If a child was taken into protective custody, the reasons, the name and title of the person making the decision, and why other alternatives were not appropriate.

    (e)    Documentation of any visible injuries or any injuries identified by the child. This should include photographs of such injuries, if practicable.

    (f)    Whether the child victim was transported for medical treatment or a medical examination.

        (a)    Sexual assault examinations of children under the age of 12 should be done by trained personnel at Shasta Community Health Center. Appointments can only be made by investigators or CFS employees.

        (b)    Child victims of sexual assault should be examined by emergency room personnel only as a last resort. This is reserved for incidents that have been reported within 72 hours of the incident and Shasta Community Health Center is unable to provide the exam.

    (g)    Whether the victim identified a household member as the alleged perpetrator and a list of the names of any other children who may reside in the residence.

    (h)    Identification of any prior related reports or allegations of child abuse, including other jurisdictions, as reasonably known.

    (i)    Previous addresses of the victim and suspect.

    (j)    Other potential witnesses who have not yet been interviewed, such as relatives or others close to the victim's environment.

All cases of the unexplained death of a child should be investigated as thoroughly as if it had been a case of suspected child abuse (e.g., a sudden or unexplained death of an infant).

Investigations Division personnel will process all Department of Justice forms and coordinate inter-agency reporting and compliance.

## 314.5.1   EXTRA JURISDICTIONAL REPORTS

If a report of known or suspected child abuse or neglect that is alleged to have occurred outside this jurisdiction is received, department members shall ensure that the caller is immediately transferred to the agency with proper jurisdiction for the investigation of the case. If the caller cannot be successfully transferred to the appropriate agency, a report shall be taken and immediately referred by telephone, fax or electronic transfer to the agency with proper jurisdiction (Penal Code 11165.9).

## 314.6   PROTECTIVE CUSTODY

Before taking any child into protective custody, the officer should make reasonable attempts to contact CFS.

Generally, members of this department should remove a child from his/her parent or guardian without a court order only when no other effective alternative is reasonably available and immediate action reasonably appears necessary to protect the child. Prior to taking a child into protective custody, the officer should take reasonable steps to deliver the child to another qualified

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Child Abuse*

parent or legal guardian, unless it reasonably appears that the release would endanger the child or result in an abduction. If this is not a reasonable option, the officer shall ensure that the child is delivered to CFS.

Whenever practicable, the officer should inform a supervisor of the circumstances prior to taking a child into protective custody. If prior notification is not practicable, officers should contact a supervisor promptly after taking a child into protective custody.

Children may only be removed from a parent or guardian in the following situations when a court order cannot reasonably be obtained in a timely manner (Welfare and Institutions Code § 305):

(a) The officer reasonably believes the child is a person described in Welfare and Institutions Code § 300 or a commercially exploited child under Penal Code § 647 and Penal Code § 653.22, and further has good cause to believe that any of the following conditions exist:

1. The child has an immediate need for medical care.

2. The child is in immediate danger of physical or sexual abuse.

3. The physical environment or the fact that the child is left unattended poses an immediate threat to the child's health or safety. In the case of a child left unattended, the officer shall first attempt to locate and determine if a responsible parent or guardian is available and capable of assuming custody before taking the child into protective custody.

(b) The officer reasonably believes the child requires protective custody under the provisions of Penal Code § 279.6, in one of the following circumstances:

1. It reasonably appears to the officer that a person is likely to conceal the child, flee the jurisdiction with the child or, by flight or concealment, evade the authority of the court.

2. There is no lawful custodian available to take custody of the child.

3. There are conflicting custody orders or conflicting claims to custody and the parties cannot agree which party should take custody of the child.

4. The child is an abducted child.

(c) The child is in the company of, or under the control of, a person arrested for Penal Code § 278 (Detainment or concealment of a child from legal custodian) or Penal Code § 278.5 (Deprivation of custody of a child or right to visitation) (Penal Code § 279.6).

A child taken into protective custody shall be delivered to CFS unless otherwise directed by court order.

## 314.6.1   CALIFORNIA SAFELY SURRENDERED BABY LAW

An individual having lawful custody of an infant less than 72 hours old is not guilty of abandonment if the individual voluntarily surrenders physical custody of the infant to personnel on-duty at a safe-surrender site, such as a hospital or fire department (Penal Code § 271.5). The law requires the surrender site to notify CFS

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000624

Redding Police Department
RPD Policy Manual

*Child Abuse*

314.6.2  NEWBORNS TESTING POSITIVE FOR DRUGS
Under certain circumstances, officers can be prohibited from taking a newborn who is the subject of a proposed adoption into protective custody, even when the newborn has tested positive for illegal drugs or the birth mother tested positive for illegal drugs.

Officers shall instead follow the provisions of Welfare and Institutions Code § 305.6 to ensure that the newborn is placed with the adoptive parents when it is appropriate.

**314.7  INTERVIEWS**

314.7.1  PRELIMINARY INTERVIEWS
Absent extenuating circumstances or impracticality, officers should record the preliminary interview with suspected child abuse victims. Officers should avoid multiple interviews with a child victim and should attempt to gather only the information necessary to begin an investigation. When practicable, investigating officers should defer interviews until a person who is specially trained in such interviews is available. Generally, child victims should not be interviewed in the home or location where the alleged abuse occurred.

314.7.2  DETAINING SUSPECTED CHILD ABUSE VICTIMS FOR AN INTERVIEW
An officer should not detain a child involuntarily who is suspected of being a victim of child abuse solely for the purpose of an interview or physical exam without the consent of a parent or guardian unless one of the following applies:

    (a)    Exigent circumstances exist, such as:

        1.    A reasonable belief that medical issues of the child need to be addressed immediately.

        2.    A reasonable belief that the child is or will be in danger of harm if the interview or physical exam is not immediately completed.

        3.    The alleged offender is the custodial parent or guardian and there is reason to believe the child may be in continued danger.

    (b)    A court order or warrant has been issued.

314.7.3  INTERVIEWS AT A SCHOOL
Any student at school who is a suspected victim of child abuse shall be afforded the option of being interviewed in private or selecting any qualified available adult member of the school staff to be present. The purpose of the staff member's presence is to provide comfort and support. The staff member shall not participate in the interview. The selection of a staff member should be such that it does not burden the school with costs or hardship (Penal Code § 11174.3).

**314.8  MEDICAL EXAMINATIONS**
If the child has been the victim of abuse that requires a medical examination, the investigating officer should obtain consent for such examination from the appropriate parent, guardian or agency

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod) 000625

# Redding Police Department

RPD Policy Manual

*Child Abuse*

having legal custody of the child. The officer should also arrange for the child's transportation to the appropriate medical facility.

In cases where the alleged offender is the custodial parent or guardian and is refusing consent for the medical examination, officers should notify a supervisor before proceeding. If exigent circumstances do not exist or if state law does not provide for officers to take the child for a medical examination, the notified supervisor should consider obtaining a court order for such an examination.

## 314.9  DRUG-ENDANGERED CHILDREN
A coordinated response by law enforcement and social services agencies is appropriate to meet the immediate and longer-term medical and safety needs of children exposed to the manufacturing, trafficking or use of narcotics.

### 314.9.1  SUPERVISOR RESPONSIBILITIES
The Investigation Division supervisor should:

(a) Work with professionals from the appropriate agencies, including CFS, other law enforcement agencies, medical service providers and local prosecutors to develop community specific procedures for responding to situations where there are children endangered by exposure to methamphetamine labs or the manufacture and trafficking of other drugs.

(b) Activate any available interagency response when an officer notifies the Investigations Division supervisor that the officer has responded to a drug lab or other narcotics crime scene where a child is present or where evidence indicates that a child lives there.

(c) Develop a report format or checklist for use when officers respond to drug labs or other narcotics crime scenes. The checklist will help officers document the environmental, medical, social and other conditions that may affect the child.

### 314.9.2  OFFICER RESPONSIBILITIES
Officers responding to a drug lab or other narcotics crime scene where a child is present or where there is evidence that a child lives should:

(a) Document the environmental, medical, social and other conditions of the child using photography as appropriate and the checklist or form developed for this purpose.

(b) Notify the Investigation Division supervisor so an interagency response can begin.

## 314.10  STATE MANDATES AND OTHER RELEVANT LAWS
California requires or permits the following:

### 314.10.1  RELEASE OF REPORTS
Information related to incidents of child abuse or suspected child abuse shall be confidential and may only be disclosed pursuant to state law and the Records Maintenance and Release Policy (Penal Code 841.5; Penal Code § 11167.5).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000626

# Redding Police Department
RPD Policy Manual

---

*Child Abuse*

---

**314.10.2   REQUESTS FOR REMOVAL FROM THE CHILD ABUSE CENTRAL INDEX (CACI)**
Any person whose name has been forwarded to the California Department of Justice (DOJ) for placement in California's CACI, as a result of an investigation, may request that his/her name be removed from the CACI list. Requests shall not qualify for consideration if there is an active case, ongoing investigation or pending prosecution that precipitated the entry to CACI (Penal Code § 11169). All requests for removal shall be submitted in writing by the requesting person and promptly routed to the CACI hearing officer.

**314.10.3   CACI HEARING OFFICER**
The Investigation Division supervisor will normally serve as the hearing officer but must not be actively connected with the case that resulted in the person's name being submitted to CACI. Upon receiving a qualified request for removal, the hearing officer shall promptly schedule a hearing to take place during normal business hours and provide written notification of the time and place of the hearing to the requesting party.

**314.10.4   CACI HEARING PROCEDURES**
The hearing is an informal process where the person requesting removal from the CACI list will be permitted to present relevant evidence (e.g., certified copy of an acquittal, factual finding of innocence) as to why his/her name should be removed. The person requesting the hearing may record the hearing at his/her own expense.

Formal rules of evidence will not apply and the hearing officer may consider, in addition to evidence submitted by the person requesting the hearing, any relevant information including, but not limited to, the following:

    (a)    Case reports including any supplemental reports

    (b)    Statements by investigators

    (c)    Statements from representatives of the District Attorney's Office

    (d)    Statements by representatives of a child protective agency who may be familiar with the case

After considering all information presented, the hearing officer shall make a determination as to whether the requesting party's name should be removed from the CACI list. Such determination shall be based on a finding that the allegations in the investigation are not substantiated (Penal Code § 11169).

If, after considering the evidence, the hearing officer finds that the allegations are not substantiated, he/she shall cause a request to be completed and forwarded to the DOJ that the person's name be removed from the CACI list. A copy of the hearing results and the request for removal will be attached to the case reports.

The findings of the hearing officer shall be considered final and binding.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000627

# Redding Police Department
RPD Policy Manual

---

*Child Abuse*

---

314.10.5  CHILD DEATH REVIEW TEAM

This Department should cooperate with any interagency child death review team investigation. Written and oral information relating to the death of a child that would otherwise be subject to release restrictions may be disclosed to the child death review team upon written request and approval of a supervisor (Penal Code § 11174.32).

**314.11  TRAINING**

The Department should provide training on best practices in child abuse investigations to members tasked with investigating these cases. The training should include:

    (a)    Participating in multidisciplinary investigations, as appropriate.

    (b)    Conducting forensic interviews.

    (c)    Availability of therapy services for children and families.

    (d)    Availability of specialized forensic medical exams.

    (e)    Availability of victim advocate or guardian ad litem support.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000628

**Redding Police Department**
RPD Policy Manual

---

# Missing Persons

### 315.1   PURPOSE AND SCOPE
This policy provides guidance for handling missing person investigations.

### 315.1.1   DEFINITIONS
**At risk** - Includes, but is not limited to (Penal Code § 14215):

- A victim of a crime or foul play.

- A person missing and in need of medical attention.

- A missing person with no pattern of running away or disappearing.

- A missing person who may be the victim of parental abduction.

- A mentally impaired missing person, including cognitively impaired or developmentally disabled.

**Missing person** - Any person who is reported missing to law enforcement when the person's location is unknown. This includes a child who has been taken, detained, concealed, enticed away or kept by a parent in violation of the law (Penal Code § 277 et seq.). It also includes any child who is missing voluntarily, involuntarily or under circumstances that do not conform to his/her ordinary habits or behavior, and who may be in need of assistance (Penal Code § 14215).

**Missing person networks** - Databases or computer networks available to law enforcement and that are suitable for information related to missing persons investigations. These include the National Crime Information Center (NCIC), the California Law Enforcement Telecommunications System (CLETS), Missing Person System (MPS) and the Unidentified Persons System (UPS).

### 315.2   POLICY
The Redding Police Department does not consider any report of a missing person to be routine and assumes that the missing person is in need of immediate assistance until an investigation reveals otherwise. The Redding Police Department gives missing person cases priority over property-related cases and will not require any time frame to pass before beginning a missing person investigation (Penal Code § 14211).

### 315.3   REQUIRED FORMS AND BIOLOGICAL SAMPLE COLLECTION KITS
The Investigation Division supervisor, or designee should ensure the forms and kits are developed and available in accordance with this policy, state law, federal law and the California Peace Officer Standards and Training (POST) Missing Persons Investigations guidelines, including:

- Department report form for use in missing person cases

- Missing person investigation checklist that provides investigation guidelines and resources that could be helpful in the early hours of a missing person investigation (Penal Code § 13519.07)

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000629

# Redding Police Department

RPD Policy Manual

---

*Missing Persons*

---

- Missing person school notification form

- Medical records release form from the California Department of Justice

- California DOJ missing person forms as appropriate

- Biological sample collection kits

## 315.4  ACCEPTANCE OF REPORTS

Any member encountering a person who wishes to report a missing person or runaway shall render assistance without delay (Penal Code § 14211). This can be accomplished by accepting the report via telephone or in-person and initiating the investigation. Those members who do not take such reports or who are unable to render immediate assistance shall promptly dispatch or alert a member who can take the report.

A report shall be accepted in all cases and regardless of where the person was last seen, where the person resides or any other question of jurisdiction (Penal Code § 14211).

## 315.5  INITIAL INVESTIGATION

Officers or other members conducting the initial investigation of a missing person should take the following investigative actions, as applicable:

(a) Respond to a dispatched call for service as soon as practicable.

(b) Interview the reporting party and any witnesses to determine whether the person qualifies as a missing person and, if so, whether the person may be at risk.

(c) Notify a supervisor immediately if there is evidence that a missing person is either at risk or may qualify for a public alert, or both (see the Public Alerts Policy).

(d) Broadcast a "Be on the Look-Out" (BOLO) bulletin if the person is under 21 years of age or there is evidence that the missing person is at risk. The BOLO should be broadcast as soon as practicable but in no event more than one hour after determining the missing person is under 21 years of age or may be at risk (Penal Code § 14211).

(e) Ensure that entries are made into the appropriate missing person networks as follows:

   1. Immediately, when the missing person is at risk.

   2. In all other cases, as soon as practicable, but not later than two hours from the time of the initial report.

(f) Complete the appropriate report forms accurately and completely and initiate a search as applicable under the facts.

(g) Collect and/or review:

   1. A photograph and a fingerprint card of the missing person, if available.

   2. A voluntarily provided biological sample of the missing person, if available (e.g., toothbrush, hairbrush).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000630

# Redding Police Department

RPD Policy Manual

3. Any documents that may assist in the investigation, such as court orders regarding custody.

4. Any other evidence that may assist in the investigation, including personal electronic devices (e.g., cell phones, computers).

(h) When circumstances permit and if appropriate, attempt to determine the missing person's location through his/her telecommunications carrier.

(i) Contact the appropriate agency if the report relates to a previously made missing person report and another agency is actively investigating that report. When this is not practical, the information should be documented in an appropriate report for transmission to the appropriate agency. If the information relates to an at-risk missing person, the member should notify a supervisor and proceed with reasonable steps to locate the missing person.

## 315.6  REPORT PROCEDURES AND ROUTING

Employees should complete all missing person reports and forms promptly and advise the appropriate supervisor as soon as a missing person report is ready for review.

### 315.6.1  SUPERVISOR RESPONSIBILITIES

The responsibilities of the supervisor shall include, but are not limited to:

(a) Reviewing and approving missing person reports upon receipt.

1. The reports should be promptly sent to the Records Division.

(b) Ensuring resources are deployed as appropriate.

(c) Initiating a command post as needed.

(d) Ensuring applicable notifications and public alerts are made and documented.

(e) Ensuring that records have been entered into the appropriate missing persons networks.

(f) Taking reasonable steps to identify and address any jurisdictional issues to ensure cooperation among agencies.

If the case falls within the jurisdiction of another agency, the supervisor should facilitate transfer of the case to the agency of jurisdiction.

### 315.6.2  RECORDS DIVISION RESPONSIBILITIES

The receiving member shall:

(a) As soon as reasonable under the circumstances, notify and forward a copy of the report to the law enforcement agency having jurisdiction over the missing person's residence in cases where the missing person is a resident of another jurisdiction (Penal Code § 14211).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000631

# Redding Police Department

RPD Policy Manual

*Missing Persons*

(b)  Notify and forward a copy of the report to the law enforcement agency in whose jurisdiction the missing person was last seen (Penal Code § 14211).

(c)  Notify and forward a copy of the report to the law enforcement agency having jurisdiction over the missing person's intended or possible destination, if known.

(d)  Forward a copy of the report to the Investigations Division.

(e)  Coordinate with the NCIC Terminal Contractor for California to have the missing person record in the NCIC computer networks updated with additional information obtained from missing person investigations (34 USC § 41308).

## 315.7  INVESTIGATIONS DIVISION FOLLOW-UP

In addition to completing or continuing any actions listed above, the investigator assigned to a missing person investigation:

(a)  Shall ensure that the missing person's school is notified within 10 days if the missing person is a juvenile.

   1.  The notice shall be in writing and should also include a photograph (Education Code § 49068.6).

   2.  The investigator should meet with school officials regarding the notice as appropriate to stress the importance of including the notice in the child's student file, along with contact information if the school receives a call requesting the transfer of the missing child's files to another school.

(b)  Should recontact the reporting person and/or other witnesses within 30 days of the initial report and within 30 days thereafter to determine if any additional information has become available via the reporting party.

(c)  Should consider contacting other agencies involved in the case to determine if any additional information is available.

(d)  Shall verify and update CLETS, NCIC and any other applicable missing person networks within 30 days of the original entry into the networks and every 30 days thereafter until the missing person is located (34 USC § 41308).

(e)  Should continue to make reasonable efforts to locate the missing person and document these efforts at least every 30 days.

(f)  Shall maintain a close liaison with state and local child welfare systems and the National Center for Missing and Exploited Children® (NCMEC) if the missing person is under the age of 21 and shall promptly notify NCMEC when the person is missing from a foster care family home or childcare institution (34 USC § 41308).

(g)  Should make appropriate inquiry with the Coroner.

(h)  Should obtain and forward medical and dental records, photos, X-rays and biological samples pursuant to Penal Code § 14212 and Penal Code § 14250.

(i)  Shall attempt to obtain the most recent photograph for persons under 18 years of age if it has not previously been obtained and forward the photograph to California DOJ (Penal Code § 14210) and enter the photograph into applicable missing person networks (34 USC § 41308).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000632

# Redding Police Department

RPD Policy Manual

*Missing Persons*

---

(j) Should consider making appropriate entries and searches in the National Missing and Unidentified Persons System (NamUs).

(k) In the case of an at-risk missing person or a person who has been missing for an extended time, should consult with a supervisor regarding seeking federal assistance from the FBI and the U.S. Marshals Service (28 USC § 586).

## 315.8   WHEN A MISSING PERSON IS FOUND

When any person reported missing is found, the assigned investigator shall document the location of the missing person in the appropriate report, notify the relatives and/or reporting party, as appropriate, and other involved agencies and refer the case for additional investigation if warranted.

The Records Supervisor shall ensure that, upon receipt of information that a missing person has been located, the following occurs (Penal Code § 14213):

(a) Notification is made to California DOJ.

(b) The missing person's school is notified.

(c) Entries are made in the applicable missing person networks.

(d) Immediately notify the Attorney General's Office.

(e) Notification shall be made to any other law enforcement agency that took the initial report or participated in the investigation within 24 hours.

### 315.8.1   UNIDENTIFIED PERSONS

Department members investigating a case of an unidentified person who is deceased or a living person who cannot assist in identifying him/herself should:

(a) Obtain a complete description of the person.

(b) Enter the unidentified person's description into the NCIC Unidentified Person File.

(c) Use available resources, such as those related to missing persons, to identify the person.

## 315.9   CASE CLOSURE

The Investigation Division supervisor may authorize the closure of a missing person case after considering the following:

(a) Closure is appropriate when the missing person is confirmed returned or evidence has matched an unidentified person or body.

(b) If the missing person is a resident of Redding or this Department is the lead agency, the case should be kept under active investigation for as long as the person may still be alive. Exhaustion of leads in the investigation should not be a reason for closing a case.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000633

# Redding Police Department

RPD Policy Manual

## *Missing Persons*

(c)   If this Department is not the lead agency, the case can be made inactivate if all investigative leads have been exhausted, the lead agency has been notified and entries are made in the applicable missing person networks as appropriate.

(d)   A missing person case should not be closed or reclassified because the person would have reached a certain age or adulthood or because the person is now the subject of a criminal or civil warrant.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000634

# Public Alerts

## 316.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for alerting the public to important information and soliciting public aid when appropriate.

## 316.2  POLICY
Public alerts may be employed using the Emergency Alert System (EAS), local radio, television and press organizations and other groups to notify the public of incidents, or enlist the aid of the public, when the exchange of information may enhance the safety of the community. Various types of alerts may be available based upon each situation and the alert system's individual criteria.

## 316.3  RESPONSIBILITIES

### 316.3.1  EMPLOYEE RESPONSIBILITIES
Employees of the Redding Police Department should notify their supervisor as soon as practicable upon learning of a situation where public notification, a warning or enlisting the help of the media and public could assist in locating a missing person, apprehending a dangerous person or gathering information.

### 316.3.2  SUPERVISOR RESPONSIBILITIES
A supervisor apprised of the need for a public alert is responsible to make the appropriate notifications based upon the circumstances of each situation. The supervisor in charge of the investigation to which the alert relates is responsible for the following:

(a)    Updating alerts

(b)    Canceling alerts

(c)    Ensuring all appropriate reports are completed

## 316.4  AMBER ALERTS
The AMBER Alert™ Program is a voluntary partnership between law enforcement agencies, broadcasters, transportation agencies and the wireless industry, to activate urgent bulletins in child abduction cases.

### 316.4.1  CRITERIA FOR AMBER ALERT
The following conditions must be met before activating an AMBER Alert (Government Code § 8594(a)):

(a)    A child has been abducted or taken by anyone, including but not limited to a custodial parent or guardian.

(b)    The victim is 17 years of age or younger, or has a proven mental or physical disability.

(c)    The victim is in imminent danger of serious injury or death.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000635

*Public Alerts*

(d)   There is information available that, if provided to the public, could assist in the child's safe recovery.

### 316.4.2   PROCEDURE FOR AMBER ALERT

The supervisor in charge will ensure the following:

(a)   An initial press release is prepared that includes all available information that might aid in locating the child:

1.   The child's identity, age and description

2.   Photograph if available

3.   The suspect's identity, age and description, if known

4.   Pertinent vehicle description

5.   Detail regarding location of incident, direction of travel, potential destinations, if known

6.   Name and telephone number of the Public Information Officer or other authorized individual to handle media liaison

7.   A telephone number for the public to call with leads or information

(b)   The local California Highway Patrol communications center should be contacted to initiate a multi-regional or statewide EAS broadcast, following any policies and procedures developed by CHP (Government Code § 8594).

(c)   The press release information is forwarded to Shascom so that general broadcasts can be made to local law enforcement agencies.

(d)   Information regarding the missing person should be entered into the California Law Enforcement Telecommunication System (CLETS).

(e)   Information regarding the missing person should be entered into the California Department of Justice Missing and Unidentified Persons System (MUPS)/National Crime Information Center (NCIC).

(f)   The following resources should be considered as circumstances dictate:

1.   The local FBI office

2.   National Center for Missing and Exploited Children (NCMEC)

### 316.5   BLUE ALERTS

Blue Alerts may be issued when an officer is killed, injured or assaulted and the suspect may pose a threat to the public or other law enforcement personnel.

### 316.5.1   CRITERIA FOR BLUE ALERTS

All of the following conditions must be met before activating a Blue Alert (Government Code § 8594.5):

(a)   A law enforcement officer has been killed, suffered serious bodily injury or has been assaulted with a deadly weapon, and the suspect has fled the scene of the offense.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod)  000636

# Redding Police Department
RPD Policy Manual

*Public Alerts*

    (b)    The investigating law enforcement agency has determined that the suspect poses an imminent threat to the public or other law enforcement personnel.

    (c)    A detailed description of the suspect's vehicle or license plate is available for broadcast.

    (d)    Public dissemination of available information may help avert further harm or accelerate apprehension of the suspect.

## 316.5.2   PROCEDURE FOR BLUE ALERT
The supervisor in charge should ensure the following:

    (a)    An initial press release is prepared that includes all available information that might aid in locating the suspect:

        1.    The license number and/or any other available description or photograph of the vehicle

        2.    Photograph, description and/or identification of the suspect

        3.    The suspect's identity, age and description, if known

        4.    Detail regarding location of incident, direction of travel, potential destinations, if known

        5.    Name and telephone number of the Public Information Officer or other authorized individual to handle media liaison

        6.    A telephone number for the public to call with leads or information

    (b)    The local California Highway Patrol communications center is contacted to initiate a multi-regional or statewide EAS broadcast.

    (c)    The information in the press release is forwarded to Shascom so that general broadcasts can be made to local law enforcement agencies.

    (d)    The following resources should be considered as circumstances dictate:

        1.    Entry into the California Law Enforcement Telecommunication System (CLETS)

        2.    The FBI local office

## 316.6   SILVER ALERTS
Silver Alerts® is an emergency notification system for people who are 65 years of age or older, developmentally disabled or cognitively impaired and have been reported missing (Government Code § 8594.10).

## 316.6.1   CRITERIA FOR SILVER ALERTS
All of the following conditions must be met before activating a Silver Alert (Government Code § 8594.10):

    (a)    The missing person is 65 years of age or older, developmentally disabled or cognitively impaired.

    (b)    The department has utilized all available local resources.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000637

# Redding Police Department

RPD Policy Manual

*Public Alerts*

---

(c)   The investigating officer or supervisor has determined that the person is missing under unexplained or suspicious circumstances.

(d)   The investigating officer or supervisor believes that the person is in danger because of age, health, mental or physical disability, environment or weather conditions, that the person is in the company of a potentially dangerous person, or that there are other factors indicating that the person may be in peril.

(e)   There is information available that, if disseminated to the public, could assist in the safe recovery of the missing person.

## 316.6.2   PROCEDURE FOR SILVER ALERT

Requests for a Silver Alert shall be made through the California Highway Patrol (Government Code § 8594.10).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000638

# Victim and Witness Assistance

## 317.1   PURPOSE AND SCOPE

The purpose of this policy is to ensure that crime victims and witnesses receive appropriate assistance, that they are provided with information from government and private resources, and that the agency meets all related legal mandates.

## 317.2   POLICY

The Redding Police Department is committed to providing guidance and assistance to the victims and witnesses of crime. The members of the Redding Police Department will show compassion and understanding for victims and witnesses and will make reasonable efforts to provide the support and information identified in this policy.

## 317.3   CRIME VICTIM LIAISON

The Chief of Police shall appoint a member of the Department to serve as the crime victim liaison (2 CCR 649.36). The crime victim liaison will be the point of contact for individuals requiring further assistance or information from the Redding Police Department regarding benefits from crime victim resources. This person shall also be responsible for maintaining compliance with all legal mandates related to crime victims and/or witnesses.

### 317.3.1   CRIME VICTIM LIAISON DUTIES

The crime victim liaison is specifically tasked with the following:

(a)   Developing and implementing written procedures for notifying and providing forms for filing with the California Victim Compensation Board (CalVCB) to crime victims, their dependents, or family. Access to information or an application for victim compensation shall not be denied based on the victim's or derivative victim's designation as a gang member, associate, or affiliate, or on the person's documentation or immigration status (Government Code § 13962; 2 CCR 649.35; 2 CCR 649.36).

(b)   Responding to inquiries concerning the procedures for filing a claim with CalVCB (2 CCR 649.36).

(c)   Providing copies of crime reports requested by CalVCB or victim witness assistance centers. Disclosure of reports must comply with the Records Maintenance and Release Policy.

(d)   Annually providing CalVCB with his/her contact information (Government Code § 13962).

(e)   Developing in consultation with sexual assault experts a sexual assault victim card explaining the rights of victims under California law (Penal Code § 680.2).

    1.   Ensuring that sufficient copies of the rights of sexual assault victim card are provided to each provider of medical evidentiary examinations or physical examinations arising out of sexual assault in the Redding Police Department jurisdiction (Penal Code § 680.2).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000639

# Redding Police Department

RPD Policy Manual

---

*Victim and Witness Assistance*

---

**317.4  CRIME VICTIMS**

Officers should provide all victims with the applicable victim information handouts.

Officers should never guarantee a victim's safety from future harm but may make practical safety suggestions to victims who express fear of future harm or retaliation. Officers should never guarantee that a person qualifies as a victim for the purpose of compensation or restitution but may direct him/her to the proper written department material or available victim resources.

317.4.1  VICTIMS OF HUMAN TRAFFICKING

Officers investigating or receiving a report involving a victim of human trafficking shall inform the victim, or the victim's parent or guardian if the victim is a minor, that upon the request of the victim the names and images of the victim and his/her immediate family members may be withheld from becoming a matter of public record until the conclusion of the investigation or prosecution (Penal Code § 293).

**317.5  VICTIM INFORMATION**

The Administration Supervisor shall ensure that victim information handouts are available and current. These should include as appropriate:

(a) Shelters and other community resources for victims of domestic violence.

(b) Community resources for victims of sexual assault.

(c) Assurance that sexual assault victims will not incur out-of-pocket expenses for forensic medical exams, and information about evidence collection, storage and preservation in sexual assault cases (34 USC § 10449; 34 USC § 20109; Penal Code § 13823.95(a)).

(d) An explanation that victims of sexual assault who seek a medical evidentiary examination shall not be required to participate or agree to participate in the criminal justice system, either prior to the examination or at any other time (Penal Code § 13823.95(b)).

(e) An advisement that a person who was arrested may be released on bond or some other form of release and that the victim should not rely upon an arrest as a guarantee of safety.

(f) A clear explanation of relevant court orders and how they can be obtained.

(g) Information regarding available compensation for qualifying victims of crime (Government Code § 13962).

(h) VINE® information (Victim Information and Notification Everyday), including the telephone number and whether this free service is available to allow victims to check on an offender's custody status and to register for automatic notification when a person is released from jail.

(i) Notice regarding U Visa and T Visa application processes.

(j) Resources available for victims of identity theft.

(k) A place for the officer's name, badge number and any applicable case or incident number.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000640

## Redding Police Department

RPD Policy Manual

*Victim and Witness Assistance*

(l) The "Victims of Domestic Violence" card containing the names, phone numbers or local county hotlines of local shelters for battered women and rape victim counseling centers within the county and their 24-hour counseling service telephone numbers (Penal Code § 264.2).

(m) The rights of sexual assault victims card with the required information as provided in Penal Code § 680.2.

(n) Any additional information required by state law (Penal Code § 13701; Penal Code § 679.02; Penal Code § 679.04; Penal Code § 679.05; Penal Code § 679.026).

## 317.6 WITNESSES

Officers should never guarantee a witness' safety from future harm or that his/her identity will always remain confidential. Officers may make practical safety suggestions to witnesses who express fear of future harm or retaliation.

Officers should investigate allegations of witness intimidation and take enforcement action when lawful and reasonable.

# Hate Crimes

## 318.1  PURPOSE AND SCOPE

The purpose of this policy is to meet or exceed the provisions of Penal Code § 13519.6(c) and provides members of this Department with guidelines for identifying and investigating incidents and crimes that may be motivated by hatred or other bias.

### 318.1.1  DEFINITIONS

**Hate crimes** - A criminal act committed in whole or in part, because of one or more of the following actual or perceived characteristics of the victim (Penal Code § 422.55; Penal Code § 422.56; Penal Code § 422.57):

  (a)  Disability

  (b)  Gender

  (c)  Nationality

  (d)  Race or ethnicity

  (e)  Religion

  (f)  Sexual orientation

  (g)  Association with a person or group with one or more of these actual or perceived characteristics

  (h)  Examples of hate crimes include, but are not limited to:

  1.  Interfering with, oppressing or threatening any other person in the free exercise or enjoyment of any right or privilege secured by the constitution or laws because of one or more of the actual or perceived characteristics of the victim (Penal Code § 422.6).

  2.  Defacing a person's property because of one or more of the actual or perceived characteristics of the victim (Penal Code § 422.6(b)).

  3.  Terrorizing a person with a swastika or burning cross (Penal Code § 11411).

  4.  Vandalizing a place of worship (Penal Code § 594.3).

The federal Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act expands federal hate crimes to include crimes motivated by a victim's actual or perceived sex, sexual orientation, gender identity or disability (18 USC § 249).

**Hate Incident** - A hatred incident is any non-criminal act, including words, directed against a person(s) based on the person(s) actual or perceived race, nationality, religion, sexual orientation, disability, or gender.Hatred incidents include, but are not limited to, epithets, distribution of hate material in public places, posting of hate material that does not result in property damage, and the display of offensive material on one's property.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000642

# Redding Police Department

RPD Policy Manual

---

*Hate Crimes*

---

**Victim** - Includes, but is not limited to, a community center, educational facility, entity, family, group, individual, office, meeting hall, person, place of worship, private institution, public agency, library or other victim or intended victim of the offense (Penal Code § 422.56).

## 318.2   POLICY

The Redding Police Department recognizes and places a high priority on the rights of all individuals guaranteed under the state and federal constitution and incorporated in state and federal law.

Responding officers shall document the crime or incident using an offense or arrest report. The hate crimes box shall be checked on the face page is a crime has occurred. The hate crimes box is not checked for hate incidents.

## 318.3   PREVENTION AND PREPARATION

While it is recognized that not all crime can be prevented, this Department is committed to taking a proactive approach to preventing and preparing for likely hate crimes by, among other things:

(a) Make an affirmative effort to establish contact with persons and groups within the community who are likely targets of hate crimes and forming networks that address prevention and response.

(b) Accessing assistance by, among other things, activating the California Department of Justice Hate Crime Rapid Response Protocol when necessary.

(c) Providing victim assistance and community follow-up as outlined below.

(d) Educating community and civic groups about hate crime laws.

(e) Establishing a community relations liaison to work with community organizations and leaders to coordinate public meetings, local group meetings and school assemblies on recognizing, preparing for and preventing hate crimes.

## 318.4   INVESTIGATIONS

Whenever any member of this Department receives a report of a suspected hate crime or other activity that reasonably appears to involve a potential hate crime, the following should occur:

(a) Assigned officers should promptly contact the victim, witness or reporting party to investigate the matter further as circumstances may dictate

(b) A supervisor should be notified of the circumstances as soon as practical.

(c) Once in-progress aspects of any such situation have been stabilized (e.g., treatment of victims, apprehension of suspects at the scene), the assigned officers should take all reasonable steps to preserve evidence that establishes a possible hate crime.

(d) Based upon available information, officers should take appropriate action to mitigate further injury or damage to potential victims or the community.

    1. Officers should contact the property owner to remove any evidence that cannot be physically removed (i.e., painted words or signs on a wall) by the officer once the offense is documented.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000643

# Redding Police Department

RPD Policy Manual

*Hate Crimes*

---

(e) The assigned officers should interview available witnesses, victims and others to determine what circumstances, if any, indicate that the situation may involve a hate crime.

  (a) No victim of or a witness to a hate crime who is not otherwise charged with or convicted of a crime under state law may be detained for or turned over to federal authorities exclusively for any actual or suspected immigration violation (Penal Code § 422.93(b))

  (b) Statements of victims and witnesses should be audio or video recorded if practicable (see the Portable Audio/Video Recorders Policy).

(f) Depending on the situation, the assigned officers or supervisor may request additional assistance from detectives or other resources.

(g) The assigned officers should include all available evidence indicating the likelihood of a hate crime in the relevant reports. All related reports should be clearly marked as "Hate Crimes" and, absent prior approval of a supervisor, should be completed and submitted by the assigned officers before the end of the shift.

(h) The assigned officers will provide the victims of any suspected hate crime with a brochure on hate crimes (Penal Code § 422.92). Such brochures will also be available to members of the general public upon request. The assigned officers should also make reasonable efforts to assist the victims by providing available information on local assistance programs and organizations.

(i) The assigned officers and supervisor should take reasonable steps to ensure that any such situation does not escalate further and should provide information to the victim regarding legal aid (e.g., Possible Temporary Restraining Order through the District Attorney or City Attorney Penal Code § 136.2 or Civil Code § 52.1 as indicated).

## 318.4.1  SUPERVISOR RESPONSIBILITY

The supervisor should confer with the initial responding officers to identify reasonable and appropriate preliminary actions. The supervisor should:

(a) Review related reports to verify whether the incident is appropriately classified as a hate crime for federal and state bias crime-reporting purposes.

(b) Notify other appropriate personnel in the chain of command, depending on the nature and seriousness of the offense and its potential inflammatory and related impact on the community. Reports of hate crimes and hate incidents shall be routed to the Chief of Police, the Field Operations Division Commander, and the Crime Statistician. The Division Commander will contact the Civil Rights Liaison and notify when deemed appropriate by the Division Commander.

(c) Consider the need for further action to be taken for the protection of the victims or vulnerable sites, such as assigning an officer at specific locations that could become targets or increase neighborhood surveillance.

(d) Ensure that members who are responsible for the conduct and maintenance of information on criminal groups are notified and that they make appropriate inquiries and entries into criminal intelligence systems (see Criminal Organizations Policy).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000644

## Redding Police Department

RPD Policy Manual

---

*Hate Crimes*

---

318.4.2   INVESTIGATIONS DIVISION RESPONSIBILITY

If a hate crime case is assigned to the Investigations Division, the assigned detective will be responsible for:

(a)   Coordinating further investigation with the District Attorney and other appropriate law enforcement agencies.

(b)   Maintaining contact with the victims and other involved individuals, as needed. This will include the Civil Rights Liaison when deemed appropriate by the Division Commander.

(c)   Maintaining statistical data and tracking on suspected hate crimes as indicated for required reporting to the Attorney General (Penal Code § 13023). See the Records Division Policy.

(d)   Make reasonable efforts to identify additional witnesses.

(e)   Utilize available criminal intelligence systems as appropriate (see Criminal Organizations Policy).

(f)   Provide the supervisor and the Public Information Officer (PIO) with information that can be responsibly reported to the media.

1.   When appropriate, the PIO should reiterate that the hate crime will not be tolerated and will be taken seriously.

318.4.3   CRIME STATISTICIAN RESPONSIBILITIES

The Crime Statistician shall report all necessary hate crime data to the Department of Justice Law Enforcement Information Center at the end of each month on the form provided by the Department of Justice, per 13023 PC.

In the event there are no hate crimes to report, a negative report must be submitted to the Department of Justice.

**318.5   TRAINING**

All members of this department will receive POST-approved training on hate crime recognition and investigation as provided by Penal Code § 13519.6. Training should also include recognition of bias motivators such as ranges of attitudes and perceptions toward a specific characteristic or group.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000645

# Standards of Conduct

## 319.1  PURPOSE AND SCOPE

The purpose of this policy is to provide employees of this department with guidelines for their conduct in order that they may participate in meeting the goals of this department in serving the community.  This policy shall apply to all sworn and non-sworn members of this department (including part-time employees). This policy is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient department service.

## 319.2  POLICY

Police Department employees are granted a public trust which requires they consistently demonstrate the highest degree of integrity.  To be worthy of this public trust, and to ensure their professional conduct is above reproach, members of the Police Department must abide by high ethical standards.

Employees shall recognize the primary responsibility of their profession is the protection of the people within the jurisdiction of the United States through upholding of their laws, the most important of which are the Constitution of the United States and the Constitution of the State of California.  Employees are expected to protect the civil rights and civil liberties of all persons.

The continued employment of every employee of this department shall be based on conduct that reasonably conforms to the guidelines set forth herein.  Failure of any employee to meet the guidelines set forth in this policy, whether on-duty or off-duty, may be cause for disciplinary action.

An employee's off-duty conduct shall be governed by this policy to the extent that it is related to act(s) that may materially affect the employee's ability to perform official duties or to the extent that it may be indicative of unfitness for his/her position.

## 319.3  CAUSES FOR DISCIPLINE

### 319.3.1  ATTENDANCE

(a) Leaving a job assignment during duty hours without a viable reason and proper permission or approval.

(b) Unexcused or unauthorized absence or tardiness on scheduled day(s) of work.

(c) Failure to report to work or an assignment at a time specified, fully prepared to perform duties.

(d) Using sick leave for other than legitimate medical reasons.

### 319.3.2  CONDUCT

(a) Unauthorized or unlawful fighting, threatening or attempting to inflict unlawful bodily injury on another.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000646

# Redding Police Department

RPD Policy Manual

*Standards of Conduct*

---

(b)   Engaging in horseplay or mischievous behavior at the workplace resulting in injury or property damage.

(c)   Unauthorized possession of, use of, loss of, or damage to City property or the property of others or endangering said property through unreasonable carelessness or maliciousness. Wrongfully loaning, selling, giving away, theft or appropriating any City property for the personal use of the employee or any unauthorized person(s).

(d)   Failing to report criminal behavior or actions which may violate policy.

(e)   Failing to promptly and fully report activities that have resulted in official contact by any other law enforcement agency.  This includes, but is not limited to, being a suspect, or defendant in a criminal case, including traffic misdemeanors. This does not include casual contact with law enforcement, to include warnings, traffic infractions, or parking violations.

(f)   Using or disclosing one's status as an employee with the department in any way that could reasonably be perceived as an attempt to gain influence or authority for non-departmental business or activity.

(g)   Disclosing or soliciting for financial or personal gain any information, photograph, or video obtained or accessed as a result of employment with the Department (Penal Code Section 146g). Unauthorized, intentional release of designated confidential information, materials, data, forms or reports.

(h)   Conducting themselves in a manner which discredits the department. Employees shall be courteous and respectful, including avoiding the use of offensive language, in their official dealings with the public, fellow employees, superiors, and subordinates.  In certain circumstances, it may become necessary to use profane language in a tactical manner to gain control or compliance from a suspect in a potentially volatile or unstable situation.  This should be for extreme circumstances, not normal circumstances.

(i)   Unwelcome solicitation of a personal or sexual relationship while on duty or through the use of official capacity.

(j)   Engaging in on-duty sexual relations including, but not limited to sexual intercourse, excessive displays of public affection or other sexual contact.

(k)   Peace officers shall follow legal practices in such areas as interrogation, arrest or detention, searches, seizures, use of informants, and collection and preservation of evidence.

(l)   Officers shall not use their police powers to resolve personal grievances (e.g., those involving the officer, family members, relatives, or friends) except under circumstances that would justify the use of self-defense, actions to prevent injury to another person, or when a serious offense has been committed that would justify an arrest. If action is/was necessary, officers shall summon on-duty police personnel and a supervisor.

(m)   Off-duty officers shall not detain, arrest, issue citations or warnings to traffic violators on sight, except when the violation is of such a dangerous nature that officers would reasonably be expected to take appropriate action. If action is/was necessary, on-duty personnel shall be notified.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000647

# Redding Police Department
RPD Policy Manual

*Standards of Conduct*

---

### 319.3.3   DISCRIMINATION

Employees shall not discriminate against any person because of age, race, color, creed, religion, sex, sexual orientation, national origin, ancestry, marital status, physical or mental disability or medical condition. Employees shall follow the principles of integrity, fairness, and impartiality in connection with their duties. Employees shall not allow their personal convictions, beliefs, prejudices, or biases to interfere unreasonably with their official acts or decisions.

### 319.3.4   PERFORMANCE

(a)   Unauthorized sleeping during on-duty time or assignments.

(b)   Unsatisfactory work performance, including but not limited to, failure, incompetence, inefficiency, or delay in performing and/or carrying out proper orders, work assignments or instructions of supervisors without a legal and valid reason.

(c)   Insubordination including refusal or deliberate failure to carry out or follow lawful directives and orders from any supervisor. Any knowing or negligent violation of the provisions of department policy, operating procedures, or other written directive of an authorized supervisor.

(d)   The wrongful or unlawful exercise of authority on the part of any employee for malicious purpose, personal gain, willful deceit or any other improper purpose. The unauthorized use of any badge, uniform, identification card, or other department equipment or property for personal gain or any other improper purpose.

(e)   Knowingly make false, misleading, or malicious statements that are reasonably calculated to harm or destroy the reputation, authority, or official standing of the department or the City.

(f)   The falsification of any work-related records, the making of misleading entries or statements with the intent to deceive, or the willful and unauthorized destruction and/or mutilation of any department record, book, paper, or document. Failure to disclose, or misrepresenting material facts, or the making of any false or misleading statement on any application, examination form, or other official document, report or form, or during the course of any work-related investigation. Giving false or misleading statements, or misrepresenting or omitting material information to a supervisor, or other people in a position of authority, in connection with any investigation or in the reporting of any department-related business.

(g)   The receipt or acceptance of a reward, fee, or gift from any person for service incident to the performance of the employee's duties.

(h)   Criminal, dishonest, inappropriate conduct adversely affecting the employee/employer relationship, whether on or off duty. Violating any misdemeanor or felony statute. Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the department or its members. Employees will conduct their public and private life such that they exemplify the high standards of integrity and morality demanded of a member of the department. Employees shall not participate in any incident involving moral turpitude. Employees shall not engage in any activity which would create a conflict of interest.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000648

# Redding Police Department
RPD Policy Manual

## *Standards of Conduct*

    (i)    Failure to take reasonable action while on-duty and when required by law, statute, resolution, or approved department practices or procedures.

    (j)    Substantiated, active, continuing association with or membership in organized crime and/or criminal syndicates, except as specifically directed and authorized by the department. Excluding immediate family members, substantiated, active, continuing association on a personal basis with a person or persons who engage in or are continuing to engage in serious violations of state or federal laws, where the employee knows or reasonably should have known of such criminal activities, except where specifically directed and authorized by the department.

    (k)    Misappropriation or misuse of public funds.

    (l)    Engaging in political activities during assigned working hours.

### 319.3.5   SAFETY

    (a)    Violating departmental safety standards or safe working practices. Failure to observe posted rules, signs, and written or oral safety instructions while on duty and/or within department facilities or to use required protective clothing or equipment.

    (b)    Employees shall make every effort to report on-the-job or work-related injuries within 24 hours or as soon as known. Accidents are to be reported immediately.

    (c)    Any personal action contributing to involvement in a preventable traffic collision, or other unsafe or improper driving habits or actions in the course of employment.

### 319.3.6   SUPERVISION RESPONSIBILITIES

    (a)    Failure of a supervisor or commander to take appropriate action to ensure that employees adhere to the policies and procedures of this department and the actions of all personnel comply with all laws.

    (b)    The Chief of Police shall accept the responsibility of utilizing all available resources and the authority of their office to maintain the integrity of their agency and the competency of their officers.

### 319.3.7   SUBSTANCE ABUSE
Various types of substance abuse are prohibited as listed in the Substance Abuse Policy attached to the Memorandums of Understanding for the Redding Police Managers Association, Redding Peace Officers Association, and Redding Peace Officers Association, Miscellaneous, and the City of Redding Alcohol and Drug Abuse Policy.

### 319.3.8   HARASSMENT
Harassment in the workplace in the form of verbal, physical, visual, and sexual are strictly prohibited and detailed in General Order A-61.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000649

Policy

**320**

# Information Technology Use

### 320.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for the proper use of Department information technology resources, including computers, electronic devices, hardware, software and systems.

#### 320.1.1  DEFINITIONS
Definitions related to this policy include:

**Computer system** - All computers (on-site and portable), electronic devices, hardware, software, and resources owned, leased, rented or licensed by the Redding Police Department that are provided for official use by its members. This includes all access to, and use of, Internet Service Providers (ISP) or other service providers provided by or through the Department or Department funding.

**Hardware** - Includes, but is not limited to, computers, computer terminals, network equipment, electronic devices, telephones, including cellular and satellite, pagers, modems or any other tangible computer device generally understood to comprise hardware.

**Software** - Includes, but is not limited to, all computer programs, systems and applications, including shareware. This does not include files created by the individual user.

**Temporary file, permanent file or file** - Any electronic document, information or data residing or located, in whole or in part, on the system including, but not limited to, spreadsheets, calendar entries, appointments, tasks, notes, letters, reports, messages, photographs or videos.

### 320.2  POLICY
It is the policy of the Redding Police Department that members shall use information technology resources, including computers, software and systems, that are issued or maintained by the Department in a professional manner and in accordance with this policy. This policy is to be in addition to the City Policy in regard to Information Technology Use. Refer to the City Policy for further.

See attachment: COR IT Policy.pdf

### 320.3  PRIVACY EXPECTATION
Members forfeit any expectation of privacy with regard to emails, texts, or anything published, shared, transmitted, or maintained through file-sharing software or any internet site that is accessed, transmitted, received, or reviewed on any department computer system.

The Department reserves the right to access, audit, and disclose, for whatever reason, any message, including attachments, and any information accessed, transmitted, received, or reviewed over any technology that is issued or maintained by the Department, including the department email system, computer network, and/or any information placed into storage on any department system or device. This includes records of all keystrokes or Web-browsing history

# Redding Police Department

RPD Policy Manual

---

*Information Technology Use*

---

made at any department computer or over any department network. The fact that access to a database, service, or website requires a username or password will not create an expectation of privacy if it is accessed through department computers, electronic devices, or networks.

The Department shall not require a member to disclose a personal username or password for accessing personal social media or to open a personal social website; however, the Department may request access when it is reasonably believed to be relevant to the investigation of allegations of work-related misconduct (Labor Code § 980).

## 320.4  RESTRICTED USE

Members shall not access computers, devices, software or systems for which they have not received prior authorization or the required training. Members shall immediately report unauthorized access or use of computers, devices, software or systems by another member to their supervisors or Watch Commanders.

Members shall not use another person's access passwords, logon information and other individual security data, protocols and procedures unless directed to do so by a supervisor.

### 320.4.1  SOFTWARE

Members shall not copy or duplicate any copyrighted or licensed software except for a single copy for backup purposes in accordance with the software company's copyright and license agreement.

To reduce the risk of a computer virus or malicious software, members shall not install any unlicensed or unauthorized software on any Department computer. Members shall not install personal copies of any software onto any Department computer.

When related to criminal investigations, software program files may be downloaded only with the approval of the information systems technology (IT) staff and with the authorization of the Chief of Police or the authorized designee.

No member shall knowingly make, acquire or use unauthorized copies of computer software that is not licensed to the Department while on Department premises, computer systems or electronic devices. Such unauthorized use of software exposes the Department and involved members to severe civil and criminal penalties.

Introduction of software by members should only occur as part of the automated maintenance or update process of Department- or City-approved or installed programs by the original manufacturer, producer or developer of the software.

Any other introduction of software requires prior authorization from IT staff and a full scan for malicious attachments.

### 320.4.2  HARDWARE

Access to technology resources provided by or through the Department shall be strictly limited to Department-related activities. Data stored on or available through Department computer systems shall only be accessed by authorized members who are engaged in an active investigation

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000651

Redding Police Department
RPD Policy Manual

*Information Technology Use*

or assisting in an active investigation, or who otherwise have a legitimate law enforcement or Department-related purpose to access such data. Any exceptions to this policy must be approved by a supervisor.

320.4.3  INTERNET USE
Internet access provided by or through the Department shall be strictly limited to department-related activities. Internet sites containing information that is not appropriate or applicable to department use and which shall not be intentionally accessed include, but are not limited to, adult forums, pornography, gambling, chat rooms and similar or related Internet sites. Certain exceptions may be permitted with the express approval of a supervisor as a function of a member's assignment.

Downloaded information shall be limited to messages, mail and data files.

320.4.4  OFF-DUTY USE
Members shall only use technology resources provided by the Department while on-duty or in conjunction with specific on-call assignments unless specifically authorized by a supervisor. This includes the use of telephones, cell phones, texting, email or any other "off the clock" work-related activities. This also applies to personally owned devices that are used to access department resources. This does not apply to exempt members at the Department.

Refer to the Personal Communication Devices Policy for guidelines regarding off-duty use of personally owned technology.

**320.5  PROTECTION OF AGENCY SYSTEMS AND FILES**
All members have a duty to protect the computer system and related systems and devices from physical and environmental damage and are responsible for the correct use, operation, care and maintenance of the computer system.

Members shall ensure department computers and access terminals are not viewable by persons who are not authorized users. Computers and terminals should be secured, users logged off and password protections enabled whenever the user is not present. Access passwords, logon information and other individual security data, protocols and procedures are confidential information and are not to be shared. Password length, format, structure and content shall meet the prescribed standards required by the computer system or as directed by a supervisor and shall be changed at intervals as directed by IT staff or a supervisor.

It is prohibited for a member to allow an unauthorized user to access the computer system at any time or for any reason. Members shall promptly report any unauthorized access to the computer system or suspected intrusion from outside sources (including the Internet) to a supervisor.

**320.6  INSPECTION OR REVIEW**
A supervisor or the authorized designee has the express authority to inspect or review the computer system, all temporary or permanent files, related electronic systems or devices, and any

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000652

# Redding Police Department

RPD Policy Manual

## *Information Technology Use*

contents thereof, whether such inspection or review is in the ordinary course of his/her supervisory duties or based on cause.

Reasons for inspection or review may include, but are not limited to, computer system malfunctions, problems or general computer system failure, a lawsuit against the Department involving one of its members or a member's duties, an alleged or suspected violation of any department policy, a request for disclosure of data, or a need to perform or provide a service.

The IT staff may extract, download or otherwise obtain any and all temporary or permanent files residing or located in or on the department computer system when requested by a supervisor or during the course of regular duties that require such information.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000653

# Department Use of Social Media

### 321.1  PURPOSE AND SCOPE
This policy provides guidelines to ensure that any use of social media on behalf of the Department is consistent with the department mission.

This policy does not address all aspects of social media use. Specifically, it does not address:

- Personal use of social media by department members (see the Employee Speech, Expression and Social Networking Policy).
- Use of social media in personnel processes (see the Recruitment and Selection Policy).
- Use of social media as part of a criminal investigation, other than disseminating information to the public on behalf of this department (see the Investigation and Prosecution Policy).

#### 321.1.1  DEFINITIONS
Definitions related to this policy include:

**Social media** - Any of a wide array of Internet-based tools and platforms that allow for the sharing of information, such as the department website or social networking services

### 321.2  POLICY
The Redding Police Department may use social media as a method of effectively informing the public about department services, issues, investigations and other relevant events.

Department members shall ensure that the use or access of social media is done in a manner that protects the constitutional rights of all.

Members also are required to follow the City Policy in regard to social media. For further see attached City Policy - Social Media Use Policy and Procedures.

See attachment: COR Social Media Policy.pdf

### 321.3  AUTHORIZED USERS
The Redding Police Department will have a Social Media Team supervised by a Corporal and/ or Sergeant.A Lieutenant and/or Captain will serve as the Program Manager.Only members authorized by the Chief of Police or the authorized designee may utilize social media on behalf of the Department. Authorized members shall use only department-approved equipment during the normal course of duties to post and monitor department-related social media, unless they are specifically authorized to do otherwise by their supervisors.

The Chief of Police may develop specific guidelines identifying the type of content that may be posted. Any content that does not strictly conform to the guidelines should be approved by a supervisor prior to posting.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000654

# Redding Police Department
RPD Policy Manual

---

*Department Use of Social Media*

---

Requests to post information over department social media by members who are not authorized to post should be made through the RPD Social email and/or reddingpolice.org. A social media team member will approve and post the request, if deemed appropriate.

## 321.4  AUTHORIZED CONTENT

Only content that is appropriate for public release, that supports the department mission and conforms to all department policies regarding the release of information may be posted.

Examples of appropriate content include:

(a)  News releases.

(b)  Announcements.

(c)  Tips and information related to crime prevention.

(d)  Investigative requests for information.

(e)  Requests that ask the community to engage in projects that are relevant to the department mission.

(f)  Real-time safety information that is related to in-progress crimes, geographical warnings or disaster information.

(g)  Traffic information.

(h)  Press releases.

(i)  Recruitment of personnel.

### 321.4.1  INCIDENT-SPECIFIC USE

In instances of active incidents where speed, accuracy and frequent updates are paramount (e.g., crime alerts, public safety information, traffic issues), the Public Information Officer or the authorized designee will be responsible for the compilation of information to be released, subject to the approval of the Incident Commander.

## 321.5  PROHIBITED CONTENT

Content that is prohibited from posting includes, but is not limited to:

(a)  Content that is abusive, discriminatory, inflammatory or sexually explicit.

(b)  Any information that violates individual rights, including confidentiality and/or privacy rights and those provided under state, federal or local laws.

(c)  Any information that could compromise an ongoing investigation.

(d)  Any information that could tend to compromise or damage the mission, function, reputation or professionalism of the Redding Police Department or its members.

(e)  Any information that could compromise the safety and security of department operations, members of the Department, victims, suspects or the public.

(f)  Any content posted for personal use.

(g)  Any content that has not been properly authorized by this policy or a supervisor.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000655

# Redding Police Department

RPD Policy Manual

---

*Department Use of Social Media*

---

Any member who becomes aware of content on this department's social media site that he/she believes is unauthorized or inappropriate should promptly report such content to the Social Media Team supervisor or program manager. The on-duty supervisor should be contacted if they are not available. The supervisor will ensure its removal from public view and investigate the cause of the entry.

### 321.5.1   PUBLIC POSTING PROHIBITED
Department social media sites shall be designed and maintained to prevent posting of content by the public.

The Department may provide a method for members of the public to contact department members directly.

### 321.6   MONITORING CONTENT
The Social Media Team will review, at least annually, the use of department social media and report back on the resources being used, the effectiveness of the content, any unauthorized or inappropriate content and the resolution of any issues.

### 321.7   RETENTION OF RECORDS
Retention of social media records will be in accordance outlined in the City Social Media Policy.

### 321.8   TRAINING
Authorized members should receive training that, at a minimum, addresses legal issues concerning the appropriate use of social media sites, as well as privacy, civil rights, dissemination and retention of information posted on department sites.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000656

# Report Preparation

## 322.1  PURPOSE AND SCOPE

Report preparation is a major part of each officer's job. The purpose of reports is to document sufficient information to refresh the officer's memory and to provide sufficient information for follow-up investigation and successful prosecution. Report writing is the subject of substantial formalized training and on-the-job training.

### 322.1.1  REPORT PREPARATION

Employees should ensure that reports are sufficiently detailed for their purpose and free from errors prior to submission. It is the responsibility of the assigned employee to complete and submit all reports taken during the shift before going off-duty unless permission to hold the report has been approved by a supervisor. Generally, reports requiring prompt follow-up action on active leads, or arrest reports where the suspect remains in custody should not be held.

Handwritten reports must be prepared legibly. If the report is not legible, the submitting employee will be required by the reviewing supervisor to promptly make corrections and resubmit the report. Employees who dictate reports shall use appropriate grammar, as content is not the responsibility of the typist. Employees who generate reports on computers are subject to all requirements of this policy.

All reports shall accurately reflect the identity of the persons involved, all pertinent information seen, heard or assimilated by any other sense, and any actions taken. Employees shall not suppress, conceal or distort the facts of any reported incident, nor shall any employee make a false report orally or in writing. Generally, the reporting employee's opinions should not be included in reports unless specifically identified as such.

### 322.1.2  REPORT ASSIGNMENT

(a)   SHASCOM shall be responsible for making original assignments as soon as possible after receipt of a report and shall notify the officer(s)/CSO(s) assigned. The assigned officer(s)/CSO(s) shall give prompt attention to the case so assigned. Officers/CSO(s) can also request a call for service by self-assigning.

(b)   Field activity assignments may be altered by supervisory personnel when reassignment is determined to be in the Department's and/or community's best interest.

(c)   Felony offenses shall be the responsibility of the Investigations Division for purposes of continuing investigation. Exceptions to this may include

1.   Felony traffic-related offenses,

2.   Stolen/embezzled vehicle investigations,

3.   Felony investigations where the officer/CSO has requested or is assigned to complete the follow-up with supervisory approval.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000657

# Redding Police Department

RPD Policy Manual

*Report Preparation*

---

(d) Requests by appropriate personnel or other agencies for records assistance shall be assigned to the Services Unit. If such requests should require outside investigation, follow-up, or a report, an officer/CSO shall be assigned.

(e) No original report shall be assigned to a Police Records Technician (PRT) of the Services Unit. A supplement may be completed by a PRT concerning serialized property.

(f) When an item of digital evidence is brought to the front counter for an officer (DVD or photos ONLY) the PRT may complete a supplemental property form and book the item into property.

## 322.2  REQUIRED REPORTING

Written reports are required in all of the following situations on the appropriate department approved form unless otherwise approved by a supervisor.

### 322.2.1  CRIMINAL ACTIVITY

When a member responds to a call for service, or as a result of self-initiated activity becomes aware of any activity where a crime has occurred, the member shall document the incident regardless of whether a victim desires prosecution. Activity to be documented in a report includes:

(a) All arrests

(b) All felony crimes

(c) Non-Felony incidents involving threats or stalking behavior

(d) Situations covered by a separate policy, include:

    1. Use of Force Policy

    2. Domestic Violence Policy

    3. Child Abuse Policy

    4. Adult Abuse Policy

    5. Hate Crimes Policy

    6. Suspicious Activity Reporting Policy

(e) All misdemeanor crimes

A log report may be completed by the initial officer/CSO on misdemeanor crimes if none of the following factors are present:

(a) Additional follow-up is needed.

(b) There are identifiable suspect(s) and/or suspect leads.

(c) There is identifiable property stolen or recovered.

(d) The crime involves Domestic Violence or a violation of a court-ordered restraining or protective order.

(e) Hate crime.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000658

# Redding Police Department
RPD Policy Manual

*Report Preparation*

---

    (f)    Indecent exposure/obscene exhibition.

    (g)    Any other types of crime for which reporting are mandated by statute.

    (h)    At the direction of the field supervisor.

The Redding Police Department will no longer investigate calls for service in the following categories:

    (a)    Child custody court order violations.

    (b)    Overdue vehicle complaints.

    (c)    Incorrigible juveniles, unless there is associated violence.

    (d)    Extra patrols (unless required by a supervisor).

    (e)    Found property with a value of less than $100, unless it contains ID such as driver's license, credit cards, etc.

    (f)    Civil advice on none-criminal matters.

## 322.2.2   NON-CRIMINAL ACTIVITY
The following incidents shall be documented using the appropriate approved report:

    (a)    Any use of force against any person by a member of this department (see the Use of Force Policy)

    (b)    Any firearm discharge (see the Firearms Policy)

    (c)    Anytime a person is reported missing, regardless of jurisdiction (see the Missing Persons Policy)

    (d)    Suspicious incidents that may indicate a potential for crimes against children or that a child's safety is in jeopardy

    (e)    All protective custody detentions

    (f)    Suspicious incidents that may place the public or others at risk

    (g)    Whenever the employee believes the circumstances should be documented or at the direction of a supervisor

## 322.2.3   DEATH CASES
Death investigations require specific investigation methods depending on circumstances and should be handled in accordance with the Death Investigations Policy. The handling officer shall notify and apprise a supervisor of the circumstances surrounding the incident to determine how to proceed. The following cases shall be appropriately investigated and documented using the approved report:

    (a)    Sudden or accidental deaths.

    (b)    Suicides.

    (c)    Homicide or suspected homicide.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Report Preparation*

(d)   Unattended deaths (No physician or qualified hospice care in the 20 days preceding death).

(e)   Found dead bodies or body parts.

## 322.2.4   INJURY OR DAMAGE BY CITY PERSONNEL

Reports shall be taken if an injury occurs that is a result of an act of a City employee.

## 322.2.5   MISCELLANEOUS INJURIES

Any injury that is reported to this department shall require a report when:

(a)   The injury is a result of a drug overdose

(b)   Attempted suicide

(c)   The injury is major/serious, whereas death could result

(d)   The circumstances surrounding the incident are suspicious in nature and it is desirable to record the event

(e)   The injury occurred on City property (ensure Risk Management is notified)

The above reporting requirements are not intended to be all-inclusive. A supervisor may direct an employee to document any incident he/she deems necessary.

## 322.2.6   MANDATORY REPORTING OF JUVENILE GUNSHOT INJURIES

A report shall be taken when any incident in which a child 18 years or younger suffered an unintentional or self-inflicted gunshot wound. The Records Division shall notify the California Department of Public Health (CDPH) of the incident as required by CDPH (Penal Code § 23685).

## 322.2.7   ONLINE REPORTING (COPLOGIC)

Reports that may be submitted by the public via online or other self-completed reporting processes include:

(a)   Abandoned vehicles.

(b)   Fraudulent use of a credit card

(c)   Harassment using an electronic device

(d)   Identity theft

(e)   Lost property

(f)   Non-injury assault/battery

(g)   Theft

(h)   Theft from a vehicle (including locked vehicles)

(i)   Theft of credit card

(j)   Theft of mail

(k)   Trash dumping

(l)   Vandalism - excluding graffiti

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000660

# Redding Police Department
RPD Policy Manual

*Report Preparation*

    (m)   Violation of Court Order

The reviewing supervisor will review the report and import approved report in the Online Reporting System queue in a timely manner. If the citizen report was misclassified, the reviewer will classify the report according to the elements of the offense described by the citizen. The reviewing supervisor will refrain from making grammatical corrections to the citizen's report unless they are minor in nature.

If there is a question as to the report's content, the reviewer should attempt to telephone contact with the citizen or send an email using the "system follow-up" function.

If the incident was minor in nature and occurred in another jurisdiction and the citizen is a resident of Redding the report may be reclassified as an outside assist and approved.

If the reviewer rejects the report, the reason for the rejection will be appropriately noted in the rejection box, which sent via email to the citizen a duplicate to a Department storage mailbox. If the report does not meet the online reporting criteria, the reviewer shall print the report, reject the report, and state in the rejection box that an officer will contact them. Th supervisor should assign the report to an officer and have a case number created through SHASCOM.

Officers at the scene of one of the above incidents shall not refer the reporting party to an alternate means of reporting. Officers may refer victims to online victim assistance programs (e.g., Federal Communications Commission (FCC) website for identity theft, Internet Crime Complaint Center (IC3) website for computer crimes).

## 322.3 GENERAL POLICY OF EXPEDITIOUS REPORTING
In general, all officers and supervisors shall act with promptness and efficiency in the preparation and processing of all reports. An incomplete report, unorganized reports or reports delayed without supervisory approval are not acceptable. Reports shall be processed according to established priorities or according to special priority necessary under exceptional circumstances.

No officer/CSO shall fail to submit any report at the end of his tour of duty without the supervisor's approval.No officer/CSO shall hold any reports over during their scheduled days off, except for an unusual circumstance and only with a supervisor's approval.

### 322.3.1 GENERAL POLICY OF HANDWRITTEN REPORTS
Some incidents and report forms lend themselves to block print rather than typing. In general, the narrative portion of those reports where an arrest is made or when there is a long narrative should be typed or dictated.

Supervisors may require, with the foregoing general policy in mind, block printing or typing of reports of any nature for department consistency.

# Redding Police Department
RPD Policy Manual

*Report Preparation*

---

322.3.2   GENERAL USE OF OTHER HANDWRITTEN FORMS

County, state and federal agency forms may be block printed as appropriate. In general, the form itself may make the requirement for typing apparent.

## 322.4   REPORT CORRECTIONS

Supervisors shall review reports for content and accuracy. If a correction is necessary, the reviewing supervisor should complete the Report Correction form stating the reasons for rejection. The original report and the correction form should be returned to the reporting employee for correction as soon as practical. It shall be the responsibility of the originating officer to ensure that any report returned for correction is processed in a timely manner.

## 322.5   REPORT CHANGES OR ALTERATIONS

Reports that have been approved by a supervisor and submitted to the Records Division for filing and distribution shall not be modified or altered except by way of a supplemental report. Reviewed reports that have not yet been submitted to the Records Division may be corrected or modified by the authoring officer only with the knowledge and authorization of the reviewing supervisor.

## 322.6   ELECTRONIC SIGNATURES

The Redding Police Department has established an electronic signature procedure for use by all employees of the Redding Police Department. The Field Operations Division Commander shall be responsible for maintaining the electronic signature system and ensuring that each employee creates a unique, confidential password for his/her electronic signature.

- Employees may only use their electronic signature for official reports or other official communications.

- Each employee shall be responsible for the security and use of his/her electronic signature and shall promptly notify a supervisor if the electronic signature has or may have been compromised or misused.

## 322.7   REPORT ROUTING--CRIMINAL COMPLAINT

The report review officer or supervisor shall, when approving a report that is to be routed to the Shasta County District Attorney's Office, complete the electronic criminal complaint form.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000662

**Policy**

**323**

# Media Relations

## 323.1  PURPOSE AND SCOPE

This policy provides guidelines for media releases and media access to scenes of disasters, criminal investigations, emergencies and other law enforcement activities.

## 323.2  RESPONSIBILITIES

The ultimate authority and responsibility for the release of information to the media shall remain with the Chief of Police, however, in situations not warranting immediate notice to the Chief of Police and in situations where the Chief of Police has given prior approval, Division Commanders, Watch Commanders, supervisors, and designated Public Information Officer(s) may prepare and release information to the media in accordance with this policy and the applicable law.

### 323.2.1  MEDIA REQUEST

Any media request for information or access to a law enforcement situation shall be referred to the first available supervisor or designated PIO. Prior to releasing any information to the media, employees shall consider the following:

(a)  At no time shall any employee of this Department make any comment or release any official information to the media without prior approval from a supervisor or the designated PIO.

(b)  In situations involving multiple law enforcement agencies, every reasonable effort should be made to coordinate media releases with the authorized representative of each involved agency prior to the release of any information by this Department.

(c)  Under no circumstance should any member of this Department make any comments to the media regarding any law enforcement incident not involving this department without prior approval of the Chief of Police.

## 323.3  MEDIA ACCESS

Authorized members of the media shall be provided access to scenes of a flood, storm, fire, earthquake, explosion, accident, or other disaster subject to the following conditions (Penal Code § 409.5(d)):

(a)  The media representative shall produce valid press credentials that shall be prominently displayed at all times while in areas otherwise closed to the public.

(b)  Media representatives may be prevented from interfering with emergency operations and criminal investigations, which includes command posts for these operations (409.5(b) PC).

1.  Reasonable effort should be made to provide a safe staging area for the media that is near the incident and that will not interfere with emergency or criminal investigation operations. All information released to the media should be coordinated through the Department Public Information Officer or other designated spokesperson.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000663

Redding Police Department

RPD Policy Manual

*Media Relations*

2. Whenever the presence of media or other aircraft pose a threat to public or officer safety or significantly hampers incident operations, the field supervisor should consider requesting a Temporary Flight Restriction (TFR). All requests for a TFR should be routed through the Watch Commander. The TFR request should include specific information regarding the perimeter and altitude necessary for the incident and should be requested through the appropriate control tower. If the control tower is not known, the Federal Aviation Administration should be contacted (14 CFR 91.137).

(c) No member of this Department who is under investigation shall be subjected to media visits or interviews without the consent of the involved employee (Government Code § 3303(e)).

(d) Media interviews with individuals who are in custody should not be permitted without the approval of the Chief of Police and the express consent of the person in custody.

A tactical operation should be handled in the same manner as a crime scene, subject to any restrictions as determined by the supervisor in charge. Department members shall not jeopardize a tactical operation in order to accommodate the news media. All comments to the media shall be coordinated through a supervisor or the Public Information Officer.

## 323.4   SCOPE OF INFORMATION SUBJECT TO RELEASE
The Department will maintain a daily information log of significant law enforcement activities that shall be made available, upon request, to media representatives through the Watch Commander. This log will generally contain the following information:

(a) The date, time, location, case number, type of crime, extent of injury or loss, and names of individuals (except confidential informants and their city and state of residence), involved in crimes occurring within this jurisdiction unless the release of such information would endanger the safety of any individual or jeopardize the successful completion of any ongoing investigation

(b) The date, time, location, case number, name, city and state of residence, birth date and charges for each person arrested by this department unless the release of such information would endanger the safety of any individual or jeopardize the successful completion of any ongoing investigation

(c) The time and location of other significant law enforcement activities or requests for service with a brief summary of the incident subject to the restrictions of this policy and applicable law

At no time shall identifying information pertaining to a juvenile arrestee (13 years of age and under), victim or witness be publicly released without prior approval of a competent court. The identity of a minor 14 years of age or older shall not be publicly disclosed unless the minor has been arrested for a serious felony and the release of such information has been approved by the Chief of Police (Welfare and Institutions Code § 827.5).

Identifying information concerning deceased individuals shall not be released to the media until notification of next of kin or otherwise cleared through the Coroner's Office.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000664

# Redding Police Department

RPD Policy Manual

*Media Relations*

Any requests for copies of related reports or additional information not contained in this log shall be referred to the designated department media representative, the custodian of records, or if unavailable, to the Watch Commander. Such requests will generally be processed in accordance with the provisions of the Public Records Act (Government Code § 6250, et seq.).

### 323.4.1  RESTRICTED INFORMATION

It shall be the responsibility of the authorized employee dealing with media requests to ensure that restricted information is not inappropriately released to the media by this department. When in doubt, authorized and available legal counsel should be obtained.

Restricted information includes, but is not limited to the following:

(a) The identity of an elder or abused dependent per 15663 W&I.

(b) Information regarding victims of sex crimes.

(c) Any information that would jeopardize the successful completion of an investigation or related investigation or endanger a person involved in an incident under investigation.

(d) The amount of money taken during a robbery.

(e) Specific information relating to injuries sustained.

# Subpoenas and Court Appearances

## 324.1  PURPOSE AND SCOPE

This policy establishes the guidelines for department members who must appear in court. It will allow the Redding Police Department to cover any related work absences and keep the Department informed about relevant legal matters.

## 324.2  POLICY

Redding Police Department members will respond appropriately to all subpoenas and any other court-ordered appearances.

The Warrant/Subpoena Technician shall process all subpoenas promptly and ensure they are routed to the appropriate division for service on the employee. A Police Records Technician will be assigned to check the website for the District Attorney each business day after 1700 hours to obtain information regarding canceled subpoenas.

.

## 324.3  SUBPOENAS

Only Department members authorized to receive a subpoena on behalf of this Department or any of its members may do so. This may be accomplished by personal service to the officer or by delivery of two copies of the subpoena to the officer's supervisor or other authorized departmental agent (Government Code § 68097.1; Penal Code § 1328(c)).

The party that issues a civil subpoena to an officer to testify as a witness must tender the statutory fee of $275 with the subpoena for each day that an appearance is required before service is accepted of the subpoena (Government Code § 68097.2).

An immediate supervisor or authorized individual may refuse to accept service for a criminal subpoena if (Penal Code § 1328(d)(e)):

   (a)   He/she knows that he/she will be unable to deliver a copy of the subpoena to the named officer within sufficient time for the named officer to comply with the subpoena.

   (b)   It is less than five working days prior to the date listed for an appearance and he/she is not reasonably certain that service can be completed.

If, after initially accepting service of a criminal subpoena, a supervisor or other authorized individual determines that he/she is unable to deliver a copy of the subpoena to the named officer within sufficient time for the named officer to comply with the subpoena, the supervisor or the subpoena clerk shall notify the server or the attorney named on the subpoena of such not less than 48 hours prior to the date listed for the appearance (Penal Code § 1328(f)).

Members will receive subpoenas via the PlanIt Police system utilized by the Redding Police Department. Department members subpoenas will be entered into PlanIt by the subpoena clerk.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000666

Redding Police Department

RPD Policy Manual

*Subpoenas and Court Appearances*

The member will receive email (and text, if selected) notification of the subpoena. The member shall accept the subpoena service prompt when notified.

Subpoena cancellation and/or changes will be updated by the subpoena clerk. Members will be updated by email (and text, if selected) for cancellation and/or changes.

### 324.3.1   SPECIAL NOTIFICATION REQUIREMENTS

Any member who is subpoenaed to testify, agrees to testify or provides information on behalf of or at the request of any party other than the City Attorney or the prosecutor shall notify his/her immediate supervisor without delay regarding:

    (a)    Any civil case where the City or one of its members, as a result of his/her official capacity, is a party.

    (b)    Any civil case where any other city, county, state or federal unit of government or a member of any such unit of government, as a result of his/her official capacity, is a party.

    (c)    Any criminal proceeding where the member is called to testify or provide information on behalf of the defense.

    (d)    Any civil action stemming from the member's on-duty activity or because of his/her association with the Redding Police Department.

    (e)    Any personnel or disciplinary matter when called to testify or to provide information by a government entity other than the Redding Police Department.

The supervisor will then notify the Chief of Police and the appropriate prosecuting attorney as may be indicated by the case. The Chief of Police should determine if additional legal support is necessary.

No member shall be retaliated against for testifying in any matter.

### 324.3.2   CIVIL SUBPOENAS

Civil subpoenas from private attorneys will be accepted by Services personnel at the front counter. Received subpoenas will be given to the Warrant/Subpoena technician for processing.

Civil subpoenas for Department personnel must have a receipt from the Treasurer's Office showing a deposit has been posted prior to acceptance by the front counter personnel. The civil subpoena will then be given to the Warrant/Subpoena Technician for processing.

If the employee is eligible for overtime from a civil court appearance, the employee must fill out an overtime card with the words "Civil Subpoena" written at the top of the card.

Employees who are unable or cannot appear on civil subpoena shall contact the issuer to make arrangements for a continuance. If an employee is on industrial injury status and cannot attend, the employee shall submit a doctor's note to their immediate supervisor in addition to contacting the issuer of the subpoena.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000667

# Redding Police Department
RPD Policy Manual

*Subpoenas and Court Appearances*

---

### 324.3.3  OFF-DUTY RELATED SUBPOENAS
Members receiving valid subpoenas for off-duty actions not related to their employment or appointment will not be compensated for their appearance. Arrangements for time off shall be coordinated through their immediate supervisors.

### 324.3.4  DEPARTMENT OF MOTOR VEHICLE HEARINGS
The DMV may subpoena officers and witnesses for a telephone hearing in the form of a conference call or to appear in person. If an officer's testimony is needed, the DMV will subpoena the officer and provide the date and time for the officer to appear. If the subpoena is for a telephonic response, a phone number will be provided on the subpoena. If the hearing is by phone, the designated DMV Hearing Officer will conduct the conference so that the defendant, the officer, and any witness may testify.

If at the time of the hearing the DMV is unable to contact the defendant and/or the telephone hearing is canceled, the DMV Hearing Officer will notify the officer of the cancellation by telephone. If the officer is not notified by the DMV of the cancellation within 30 minutes, the hearing is considered canceled and the officer may leave.

### 324.3.5  INFRACTION VIOLATION HEARINGS
When a civilian witness is needed for testimony in a non-traffic accident infraction case, the officer requesting the witness should contact the misdemeanor secretary at the District Attorney's Office to obtain a subpoena. If the District Attorney is not present at the hearing, the officer should introduce the witness for the Judge's examination. To avoid the appearance of practicing law without a license, the officer should not ask questions of the defendant or any witnesses.

### 324.4  SUBPOENAS ISSUED BY THE DISTRICT ATTORNEY
The court officer or assigned designee will pick up criminal subpoenas from the District Attorney's Office and deliver them to the Services Warrant/Subpoena Technician for processing.

To determine whether or not the employee is still needed for the court appearance, the employee should view the District Attorney's website. If the case on which the officer subpoenaed is listed on the website, the officer need not appear and the subpoena is canceled. The employee may also call the subpoena telephone line after 1700 hours the day prior to the appearance. If the case on which the officer is subpoenaed is not listed, the officer should call the telephone for the attorney issuing the subpoena for further instructions. The website address and subpoena telephone number will be stamped on the subpoena.

Employees who are unable to appear on a subpoena issued by the District Attorney may request a continuance of a court case when good cause can be shown. To request a continuance, employees shall file a written declaration with the District Attorney's Office using a Shasta County D.A. Declaration. The declaration shall include the specific reasons and facts of why the continuance is needed. The declaration and original subpoena shall be routed to the Warrant/Subpoena Technician to be delivered to the District Attorney's Office for review and filing.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000668

# Redding Police Department

RPD Policy Manual

*Subpoenas and Court Appearances*

After filing the continuance declaration, it is the subpoenaed employee's responsibility to contact the specific Deputy D.A. handling the case and obtain authorization to be released from the subpoena.

### 324.4.1   SUBPOENAS ISSUED BY DEFENSE ATTORNEYS

Subpoenas from defense attorneys will be accepted by Services personnel at the front counter. Received subpoenas will be given to the Warrant/Subpoena Technician for processing.

Employees who are unable or cannot appear on a defense subpoena shall contact the issuing agency to make arrangements for a continuance. If an employee is on industrial injury status and cannot attend, the employee shall submit a doctor's note to their immediate supervisor in addition to contacting the issuer of the subpoena.

### 324.5   FAILURE TO APPEAR

Any member who fails to comply with the terms of any properly served subpoena or court-ordered appearance may be subject to discipline. This includes properly served orders to appear that were issued by a state administrative agency.

### 324.6   STANDBY

Any employee who is placed on "court standby" by the District Attorney's office, a defense attorney or any other attorney in conjunction with an issued subpoena shall immediately contact the on-duty supervisor with the attorney's name and contact phone number when the request will result in overtime. The supervisor shall then contact the attorney to discuss the court standby request when the standby would result in overtime. The supervisor shall notify the affected employee of any change to the court appearance date or time.

To facilitate standby agreements, members are required to provide and maintain current information on their addresses and contact telephone numbers with the Department.

If a member on standby changes his/her location during the day, the member shall notify the designated Department member of how he/she can be reached. Members are required to remain on standby until released by the court or the party that issued the subpoena.

### 324.7   COURTROOM PROTOCOL

When appearing in court, members shall:

(a)   Be punctual and prepared to proceed immediately with the case for which they are scheduled to appear.

(b)   Dress in the department uniform or business attire.

(c)   Observe all rules of the court in which they are appearing and remain alert to changes in the assigned courtroom where their matter is to be heard.

### 324.7.1   TESTIMONY

Before the date of testifying, the subpoenaed member should request a copy of relevant reports and become familiar with the content in order to be prepared for court.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000669

## Redding Police Department

RPD Policy Manual

*Subpoenas and Court Appearances*

---

### 324.8  OVERTIME APPEARANCES

When a member appears in court on his/her off-duty time, he/she will be compensated in accordance with the current memorandum of understanding or collective bargaining agreement.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Reserve Officers

## 325.1  PURPOSE AND SCOPE

The Redding Police Department Reserve Program is an organization comprised of sworn and non-sworn personnel as authorized by California Penal Code Section 830.6 and the City of Redding. The primary function of the Police Reserve is to provide support to the operations of the Police Department.

The Reserve Officer Program shall not be used to supplant or replace paid officer positions.

## 325.2  SELECTION AND APPOINTMENT OF POLICE RESERVE OFFICERS

The Redding Police Department Reserve Program is administered through the Redding Police Department and the Volunteer Services Unit of the City of Redding. The following reserve officer Levels are recognized by the Redding Police Department:

   (a)   Level III as defined in California Penal Code Section 832.6(a)(3).

### 325.2.1  RESERVE OFFICER SELECTION AND CLEARANCE

Applicants for the position of reserve officer will meet the following qualifications:

   (a)   Be a citizen of the United States or a permanent resident alien who is eligible for and has applied for citizenship.

   (b)   Be at least 21 years of age.

   (c)   Be fingerprinted for purposes of search of local, state, and national fingerprint files to disclose any criminal record.

   (d)   Pass a POST approved background investigation.

   (e)   Be a high school graduate, pass the General Education Development (GED) test or have attained a two-year or four-year degree from an accredited institution.

   (f)   Be free of any felony convictions and sexual related convictions.

   (g)   Complete a volunteer services section application.

   (h)   Complete an oral interview by a qualification appraisal board to determine his/her motivation, tact, judgment problem-solving ability, and oral communications skills.

   (i)   Complete a written examination that tests the applicant's general knowledge.

   (j)   Be of good health and complete a medical examination by the City of Redding.

   (k)   Complete the same psychological evaluation as performed by officers seeking full-time employment.

   (l)   Complete a polygraph examination.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000671

# Redding Police Department

RPD Policy Manual

---

*Reserve Officers*

---

### 325.2.2   APPOINTMENT

Final selection of reserve officers will be determined by the Field Operations Division Captain or Chief of Police.  If rejected, the applicant will be advised by the Reserve Officer Program Manager. All reserve officers will be appointed by the Chief of Police.

### 325.2.3   COMPENSATION FOR POLICE RESERVE OFFICERS

Compensation for reserve officers is provided as follows:

All reserve officer appointees are issued two sets of uniforms and all designated attire and safety equipment. All property issued to the reserve officer shall be returned to the Department upon termination or resignation.

### 325.2.4   EMPLOYEES WORKING AS RESERVE OFFICERS

Qualified employees of this department, when authorized, may also serve as reserve officers. However, the Department must not utilize the services of a reserve or volunteer in such a way that it would violate employment laws or labor agreements (e.g., a detention officer working as a reserve officer for reduced or no pay). Therefore, the Reserve Coordinator should consult the Personnel Department prior to an employee serving in a reserve or volunteer capacity (29 CFR 553.30).

## 325.3   DUTIES OF RESERVE OFFICERS

Level III reserve officers may perform specified limited support duties and other duties that are not likely to result in physical arrests, while supervised in the accessible vicinity by a full-time regular officer.  Additionally, Level III reserve officers may transport prisoners without immediate supervision.

Immediate supervision refers to POST Level III reserve officers working under the direction and control of the supervisor or full-time officer who possesses a Basic POST Certificate, who is routinely in the physical proximity of, and available to the reserve officer, and who is deemed qualified to instruct by the Chief of Police or his designee.

Reserve officers will not take enforcement actions under the color of the law enforcement authority while off duty.  Reserve officers who are off-duty are permitted to perform those actions that are permitted by a citizen of the State only.

Active participation in the Police Reserve Program is defined as completing 10 hours of volunteer service each month. A minimum of 10 hours per month and attendance of all applicable trainings are mandatory unless excused by the Reserve Coordinator or his/her designee.

A practice of failure to work the required number of hours may result in discipline up to and including termination.  Reserve officers attending a basic academy, or working a designated assignment, may be exempted from the minimum monthly requirement.

Every reserve officer will report their total number of hours of service to the Reserve Program Manager on a monthly basis.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000672

# Redding Police Department

RPD Policy Manual

---

*Reserve Officers*

---

Reserve officers must meet the minimum continuous professional standard training (CPT) requirement as identified by POST for their skill level. Reserve officers must meet the requirements for individual weapons qualifications as identified by the Redding Police Department established standards.

### 325.3.1  POLICY COMPLIANCE

Police reserve officers shall be required to adhere to all departmental policies and procedures. A copy of the policies and procedures will be made available to each reserve officer upon appointment and he/she shall become thoroughly familiar with these policies.

Whenever a rule, regulation, or guideline in this manual refers to a sworn regular full-time officer, it shall also apply to a sworn reserve officer unless by its nature it is inapplicable.

### 325.3.2  RESERVE PROGRAM MANAGER

The Chief of Police shall delegate the responsibility for administering the Reserve Officer Program to a Reserve Program Manager.

The Reserve Program Manager shall have the responsibility of, but not be limited to:

(a)  Assignment of reserve personnel

(b)  Conducting reserve meetings

(c)  Establishing and maintaining a reserve call-out roster

(d)  Maintaining and ensuring performance evaluations are completed

(e)  Monitoring individual reserve officer performance

(f)  Monitoring overall Reserve Program

(g)  Maintaining liaison with other agency Reserve Coordinators

### 325.4  FIELD TRAINING

Level III reserve officers shall complete the Redding Police Department approved orientation program. The orientation program shall include as a minimum:

(a)  Review all Police and City of Redding applicable policies and procedures.

(b)  A tour of all City of Redding and Redding Police Department facilities.

(c)  A review of the officer-involved shooting protocol.

(d)  A review of City of Redding vehicle accident reporting procedures.

(e)  A review of common Redding Police Department report forms.

(f)  Firearms qualification.

(g)  All reserve officers, regardless of level, shall complete racial profiling training according to 13519.4(p) CPC.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000673

# Redding Police Department
RPD Policy Manual

---

*Reserve Officers*

---

325.4.1   RESERVE OFFICER CHAIN OF COMMAND
The Chain of Command for the volunteers assigned to the Reserve Officer Program will follow that of the Field Operations Division.

## 325.5   IDENTIFICATION OF RESERVE OFFICERS
All reserve officers will be issued a uniform badge and a Department identification card. The uniform badge shall be the same as that worn by a regular full-time officer. The identification card will be the standard identification card with the exception that "Reserve" will be indicated on the card.

## 325.6   UNIFORM
Reserve officers shall conform to all uniform regulation and appearance standards of this department.

## 325.7   INVESTIGATIONS AND COMPLAINTS
If a reserve officer has a complaint made against him/her or becomes involved in an internal investigation, that complaint or internal investigation shall be investigated by the Redding Police Department.

Reserve officers are considered at-will employees. Government Code § 3300 et seq. applies to reserve officers with the exception that the right to hearing is limited to the opportunity to clear their name.

Any disciplinary action that may have to be administered to a reserve officer shall be accomplished as outlined in the Policy Manual.

## 325.8   RESERVE OFFICER EVALUATIONS
Reserves will be evaluated annually using performance dimensions applicable to the duties and authorities granted to that reserve.

325.8.1   PERSONNEL RECORDS
Personnel files will be maintained by the Reserve Program Coordinator on all reserve officers in the same manner as sworn officers.

As a minimum, these files will contain: personnel evaluations, original application, personnel forms, commendations and complaints, certificates of training and awards, background packets, and other pertinent information.  These records will be maintained in locked cabinets consistent with established City of Redding and Redding Police Department policies.  Personal history questionnaires and background files will be maintained in the same manner.  Reserve officers personnel files are not subject to public inspection except for official, legitimate business.  Except as required by an order of a court of competent jurisdiction, personnel files will only be shared with agencies who present written permission from the officer or past officer.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000674

Redding Police Department

RPD Policy Manual

*Reserve Officers*

---

**325.9  FIREARMS REQUIREMENTS**

Penal Code § 830.6(a)(1) designates a reserve officer as having peace officer powers during his/her assigned tour of duty, provided the reserve officer qualifies or falls within the provisions of Penal Code § 832.6.

325.9.1  CARRYING WEAPON ON DUTY

Penal Code § 830.6(a)(1) permits qualified reserve officers to carry a loaded firearm while on-duty.

When on-duty, whether in or out of uniform, reserve officers shall carry their Department issued firearm and have their police ID card on their person while:

    (a)    Performing assigned activities.

    (b)    Emergency "call-outs".

    (c)    To and from training sessions.

    (d)    To and from the Police Department (directly from and to home).

Backup weapons must be approved in the same manner as the Redding Police Department Firearms policy.

325.9.2  CONCEALED FIREARMS PROHIBITED

No reserve officer will be permitted to carry a concealed firearm while in an off-duty capacity, other than to and from work, except those reserve officers who possess a valid CCW permit. Reserve officers may apply, in writing, via the chain of command, to the Chief of Police for a California Concealed Weapons permit after completing twelve months of service in the Reserve Program, unless previously obtained.

325.9.3  RESERVE OFFICER FIREARM TRAINING

All reserve officers are required to maintain proficiency with firearms used in the course of their assignments. Reserve officers shall comply with all areas of the firearms training section of the Policy Manual.

**325.10  USE AND CARE OF EQUIPMENT**

Reserve officers will be issued all required safety equipment.  Reserve officers shall not work without the proper safety equipment.  Off-duty loss or damage to equipment issued by the City of Redding/Redding Police Department shall be the officer's responsibility to repair or replace. Damage or loss of departmental equipment while on-duty will be replaced or repaired by the Redding Police Department.  Failure to exercise reasonable care in the use of such equipment or property may result in disciplinary action.

325.10.1  REQUIREMENT UPON RESIGNATION OR TERMINATION

Reserve officers who resign or are terminated are required to report to the Reserve Officer Program Manager.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000675

# Redding Police Department
## RPD Policy Manual

*Reserve Officers*

---

325.10.2   RETURN ALL ISSUED EQUIPMENT

If the reserve officer has resigned, a letter of resignation will be prepared by the reserve officer. The letter will be addressed to the Chief of Police via the chain of command. The letter, upon acceptance, will become an official part of the reserve officer's personnel file.

If a reserve officer has been terminated, a termination report shall be prepared by the program's manager.  This will be reviewed by the Field Operations Division Commander and, upon return, shall become a part of the reserve officer's personnel file.  A copy of the report will be provided to the reserve officer and the Chief of Police.  The reserve officer may write a response to the action; which will be given to the Field Operations Division Commander and placed in the reserve officer's personnel file.

**325.11   EMERGENCY CALL-OUT FOR RESERVE PERSONNEL**

The Reserve Program Manager shall develop a plan outlining an emergency call-out procedure for reserve personnel.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000676

**Redding Police Department**

RPD Policy Manual

# Outside Agency Assistance

## 326.1  PURPOSE AND SCOPE

The purpose of this policy is to provide guidance to members when requesting or responding to a request for mutual aid or when assisting another law enforcement agency.

## 326.2  POLICY

It is the policy of the Redding Police Department to promptly respond to requests for assistance by other law enforcement agencies, subject to available resources and consistent with the applicable laws and policies of this department.

## 326.3  ASSISTING OUTSIDE AGENCIES

Requests for any type of assistance from another agency should be routed to the on duty supervisor for approval. In some instances, a memorandum of understanding or other established protocol may exist that eliminates the need for approval of individual requests.

When another law enforcement agency requests assistance from this Department, the supervisor may authorize, if available, an appropriate number of personnel to assist. Employees rendering assistance must conform with applicable laws and be consistent with the policies of this Department. The supervisor shall notify the Watch Commander as soon as pratical.

Officers may respond to a request for emergency assistance, however, they shall notify a supervisor of their activity as soon as practicable.

### 326.3.1  MEMORANDUM OF UNDERSTANDING--CALIFORNIA HIGHWAY PATROL

As it is the mutual desire of both the California Highway Patrol and the Redding Police Department to provide the highest level of service possible to all citizens who reside or work with the City of Redding, as well as provide for the community of crime reporting, analysis, and prevention, the California Highway Patrol will assume primary responsibility for investigating crimes which occur on state-owned or leased property.

The California Highway Patrol shall have the primary responsibility for taking an initial report and completing any and all follow-up necessary to complete the case; this includes criminal, non-criminal, and traffic-related calls.

When a call is received where there is an immediate threat to the safety of individuals at a state-owned or leased facility, and the California Highway Patrol is unable to respond immediately, the California Highway Patrol shift supervisor should contact SHASCOM and request the Redding Police Department respond to the incident.This agency may either take the initial report and forward a copy to the California Highway Patrol for follow-up or stabilize the incident and standby until their personnel are able to respond.

See attachment: CHP/RPD MOU - Attachment 326.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000677

# Redding Police Department
### RPD Policy Manual

*Outside Agency Assistance*

## 326.4  REQUESTING OUTSIDE ASSISTANCE

If assistance is needed from another agency, the employee requesting assistance should if practicable, first notify a supervisor. The supervisor or designee should direct assisting personnel to where they are needed and to whom they should report when they arrive.

The requesting supervisor should arrange for appropriate radio communication capabilities, if necessary and available so that communication can be coordinated between assisting personnel.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Registered Offender Information

## 327.1  PURPOSE AND SCOPE

This policy establishes guidelines by which the Redding Police Department will address issues associated with certain offenders who are residing in the jurisdiction and how the Department will disseminate information and respond to public inquiries for information about registered sex, arson and drug offenders.

## 327.2  POLICY

It is the policy of the Redding Police Department to identify and monitor registered offenders living within this jurisdiction and to take reasonable steps to address the risks those persons may pose.

## 327.3  REGISTRATION

The Investigations Division supervisor shall establish a process to reasonably accommodate registration of certain offenders. The process should rebut any allegation on the part of the offender that the registration process was too confusing, burdensome, or difficult for compliance. If it is reasonable to do so, an investigator assigned to related investigations should conduct the registration in order to best evaluate any threat the person may pose to the community. Those assigned to register offenders should receive appropriate training regarding the registration process.

Upon conclusion of the registration process, the Records Division shall ensure that the registration information is provided to the California Department of Justice (DOJ) in accordance with applicable law (Penal Code § 457.1; Penal Code § 290 et seq.).

The refusal of a registrant to provide any of the required information or complete the process should initiate a criminal investigation for failure to register.

### 327.3.1  CONTENTS OF REGISTRATION

The information collected from the registering offenders shall include a signed statement as required by the California DOJ, fingerprints and a photograph, and any other information required by applicable law (Penal Code § 457.1; Penal Code § 290 et seq.).

## 327.4  MONITORING OF REGISTERED OFFENDERS

An Investigation Division supervisor should establish a system to periodically, and at least once annually, verify that a registrant remains in compliance with his/her registration requirements after the initial registration. This verification should include:

(a) Efforts to confirm residence using an unobtrusive method, such as an internet search or drive-by of the declared residence.

(b) Review of information on the California DOJ website for sex offenders.

(c) Contact with a registrant's parole or probation officer.

Any discrepancies should be reported to the California DOJ.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000679

# Redding Police Department

RPD Policy Manual

---

*Registered Offender Information*

---

The Investigation Division supervisor should also establish a procedure to routinely disseminate information regarding registered offenders to Redding Police Department personnel, including timely updates regarding new or relocated registrants.

## 327.5  DISSEMINATION OF PUBLIC INFORMATION

Members will not unilaterally make a public notification advising the community of a particular registrant's presence in the community. Members who identify a significant risk or other public safety issue associated with a registrant should promptly advise their supervisor. The supervisor should evaluate the request and forward the information to the Chief of Police if warranted. A determination will be made by the Chief of Police, with the assistance of legal counsel as necessary, whether such a public alert should be made.

Members of the public requesting information on sex registrants should be provided the Megan's Law website or the Redding Police Department's website. Information on sex registrants placed on the Redding Police Department's website shall comply with the requirements of Penal Code § 290.46.

The Records Supervisor may release local registered offender information to residents only in accordance with applicable law (Penal Code § 290.45; Penal Code § 290.46; Penal Code § 457.1), and in compliance with a California Public Records Act (Government Code § 6250-6276.48) request.

### 327.5.1  LIMITED RELEASE WITHIN COLLEGE CAMPUS COMMUNITY

California law allows the following additional information regarding a registered sex offender on campus, whose information is not available to the public via the internet website, to be released to a campus community (Penal Code § 290.01(d)):

- (a)   The offender's full name
- (b)   The offender's known aliases
- (c)   The offender's sex
- (d)   The offender's race
- (e)   The offender's physical description
- (f)   The offender's photograph
- (g)   The offender's date of birth
- (h)   Crimes resulting in the registration of the offender under Penal Code § 290
- (i)   The date of last registration

For purposes of this section, campus community shall be defined as those persons present at or regularly frequenting any place constituting campus property, satellite facilities, laboratories, public areas contiguous to the campus and other areas set forth in Penal Code § 290.01(d).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000680

Redding Police Department
RPD Policy Manual

*Registered Offender Information*

### 327.5.2   RELEASE NOTIFICATIONS

Registrant information that is released should include notification that:

(a) The offender registry includes only those persons who have been required by law to register and who are in compliance with the offender registration laws.

(b) The information is provided as a public service and may not be current or accurate.

(c) Persons should not rely solely on the offender registry as a safeguard against offenses in their communities.

(d) The crime for which a person is convicted may not accurately reflect the level of risk.

(e) Anyone who uses information contained in the registry to harass registrants or commit any crime may be subject to criminal prosecution.

(f) The purpose of the release of information is to allow members of the public to protect themselves and their children from sex offenders (Penal Code 290.45).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000681

# Death Investigation

## 328.1  PURPOSE AND SCOPE
The investigations of cases involving death include those ranging from natural cause to homicide. Some causes of death may not be readily apparent and some cases differ substantially from what they appeared to be initially. The thoroughness of death investigations cannot be emphasized enough.

## 328.2  INVESTIGATION CONSIDERATIONS
Death investigation cases require certain actions be taken. Paramedics shall be called in all suspected death cases unless the death is obvious (e.g., decapitated, decomposed). A supervisor shall be notified in all death investigations.

### 328.2.1  CORONER REQUEST
Government Code § 27491 and Health & Safety Code § 102850 direct the Coroner to inquire into and determine the circumstances, manner and cause of certain deaths. The Coroner shall be called in any of the following cases:

(a)  Unattended deaths (No physician in attendance or during the continued absence of the attending physician. Also, includes all deaths outside hospitals and nursing care facilities).

(b)  Deaths where the deceased has not been attended by either a physician or a registered nurse, who is a member of a hospice care interdisciplinary team, as defined by Health and Safety Code § 1746 in the 20 days prior to death.

(c)  Physician unable to state the cause of death. Unwillingness does not apply. Includes all sudden, unexpected and unusual deaths and fetal deaths when the underlying cause is unknown.

(d)  Known or suspected homicide.

(e)  Known or suspected suicide.

(f)  Involving any criminal action or suspicion of a criminal act. Includes child and dependent adult negligence and abuse.

(g)  Related to or following known or suspected self-induced or criminal abortion.

(h)  Associated with a known or alleged rape or crime against nature.

(i)  Following an accident or injury (primary or contributory). Deaths known or suspected as resulting (in whole or in part) from or related to accident or injury, either old or recent.

(j)  Drowning, fire, hanging, gunshot, stabbing, cutting, starvation, exposure, alcoholism, drug addiction, strangulation or aspiration.

(k)  Accidental poisoning (food, chemical, drug, therapeutic agents).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000682

Redding Police Department

RPD Policy Manual

*Death Investigation*

---

(l)   Occupational diseases or occupational hazards.

(m)   Known or suspected contagious disease and constituting a public hazard.

(n)   All deaths in operating rooms and all deaths where a patient has not fully recovered from an anesthetic, whether in surgery, recovery room or elsewhere.

(o)   In prison or while under sentence. Includes all in-custody and police involved deaths.

(p)   All deaths of unidentified persons.

(q)   All deaths of state hospital patients.

(r)   Suspected Sudden Infant Death Syndrome (SIDS) deaths.

(s)   All deaths where the patient is comatose throughout the period of the physician's attendance. Includes patients admitted to hospitals unresponsive and expire without regaining consciousness.

The body shall not be disturbed or moved from the position or place of death without permission of the coroner.

### 328.2.2   BODY REMOVAL CONSIDERATIONS
Situations when an RPD Officer should not assist the coroner with body removal:

(a)   When the body weight, position, or terrain would likely cause injury to the lifting person

(b)   When decomposition, parasites, or body fluids are present, and obviously create a potential health hazard to the on-scene personnel

(c)   Officers will not request additional officers or Department employees to assist in body removal unless authorized by the on-duty supervisor.

### 328.2.3   SEARCHING DEAD BODIES
The Coroner or Deputy Coroner is generally the only person permitted to search a body known to be dead from any of the circumstances set forth in Government Code § 27491.  The only exception is that an officer is permitted to search the body of a person killed in a traffic collision for the limited purpose of locating an anatomical donor card (Government Code § 27491.3). If such a donor card is located, the Coroner or a designee shall be promptly notified. Should exigent circumstances indicate to an officer that any search of a known dead body is warranted prior to the arrival of the Coroner or a designee; the investigating officer shall first obtain verbal consent from the Coroner or a designee (Government Code § 27491.2).

Whenever possible, a witness, preferably a relative to the deceased or a member of the household, should be requested to remain at the scene with the officer pending the arrival of the Coroner or a designee. The name and address of this person shall be included in the narrative of the death report. Whenever personal effects are removed from the body of the deceased by the Coroner or a designee, a receipt shall be obtained. This receipt shall be attached to the death report.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000683

*Death Investigation*

328.2.4   DEATH NOTIFICATION

When practical, and if not handled by the Coroner's Office, notification to the next-of-kin of the deceased person should be made, in person. When possible, a police chaplain will make the notification. If the next-of-kin lives in another jurisdiction, a law enforcement official from that jurisdiction shall be requested to make the personal notification. If the relatives live outside this county, the Coroner may be requested to make the notification. The Coroner needs to know if notification has been made. Assigned investigators may need to talk to the next-of-kin.

328.2.5   UNIDENTIFIED DEAD BODIES

If the identity of a dead body cannot be established after the Coroner arrives, the Coroner's office will issue a "John Doe" or "Jane Doe" number for the report.

328.2.6   DEATH INVESTIGATION REPORTING

All reports of deceased persons which are received by this Department shall require the response of an officer. The responding officer will then determine whether the death was natural or suspicious and notify the shift supervisor.

    (a)   If any death is believed to be from natural causes and occurred while the victim was under the care of a physician or healthcare provider, the shift supervisor may authorize the incident to be closed as a log report only.

    (b)   If the victim was not under the care of physician or health care provider at the time of death, the shift supervisor will notify the Investigations Division commander either immediately or by administrative watch briefing.

All incidents involving a death resulting from any criminal act, suicide, accident, injury or suspicious circumstances, require a shift supervisor be notified immediately. The supervisor will determine the need to notify the Investigations Division and the Coroner's Office.

The primary officer shall prepare an offense report or a supplemental report if an investigator is assigned the case.

328.2.7   SUSPECTED HOMICIDE

If the initially assigned officer suspects that the death involves a homicide or other suspicious circumstances, the Investigations Division shall be notified to determine the possible need for a detective to respond to the scene for further immediate investigation.

328.2.8   EMPLOYMENT RELATED DEATHS OR INJURIES

Any member of this agency who responds to and determines that a death, serious illness, or serious injury has occurred as a result of an accident at or in connection with the victim's employment shall ensure that the nearest office of Cal-OSHA is notified by telephone immediately or as soon as practicable with all pertinent information (8 CCR 342(b)).

## 328.3  SUICIDE INVESTIGATIONS

Whenever a suicide involves the death of a minor, the minor's school principal shall be notified. When possible a police chaplain will make the notification.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000684

# Redding Police Department

RPD Policy Manual

## *Death Investigation*

Any evidence found at the scene of a suicide shall be given to and held by the Coroner's Office.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000685

**Redding Police Department**

RPD Policy Manual

# Identity Theft

## 329.1  PURPOSE AND SCOPE

Identity theft is a growing trend that frequently involves related crimes in multiple jurisdictions. This policy is intended to provide guidelines for the reporting and investigation of such crimes.

## 329.2  REPORTING

(a)  In an effort to maintain uniformity in reporting, officers presented with the crime of identity theft (Penal Code § 530.6) shall initiate a report for victims residing within the jurisdiction of this department when the crime occurred. For incidents of identity theft occurring outside this jurisdiction, officers should observe the following:

　1.  For any victim not residing within this jurisdiction, the officer may either take a courtesy report to be forwarded to the victim's residence agency or the victim should be encouraged to promptly report the identity theft to the law enforcement agency where he or she resides.

(b)  While the crime of identity theft should be reported to the law enforcement agency where the victim resides, officers of this Department should investigate and report crimes occurring within this jurisdiction which have resulted from the original identity theft (e.g., the identity theft occurred elsewhere, but the credit card fraud occurred and is reported in this jurisdiction).

(c)  Officers should include all known incidents of fraudulent activity (e.g., credit card number applied for in victim's name when the victim has never made such an application).

(d)  Officers should also cross-reference all known reports made by the victim (e.g., U.S. Secret Service, credit reporting bureaus, U.S. Postal Service and DMV) with all known report numbers.

(e)  The reporting officer should inform victims of identity theft that the California Identity Theft Registry is available to help those who are wrongly linked to crimes. The registry can be checked by law enforcement and other authorized persons to investigate whether a criminal history or want was created in the victim's name (Penal Code § 530.7). Information regarding the California Identity Theft Registry can be obtained by calling toll free (888) 880-0240.

(f)  Following supervisory review and departmental processing, the initial report should be forwarded to the appropriate detective for follow up investigation, coordination with other agencies and prosecution as circumstances dictate.

## 329.3  EVIDENCE

When an officer takes an initial identity theft or financial crime report, all evidence should be seized and booked into evidence by that officer.In some circumstances, particularly major, complex fraud cases, it may not be practical to seize large quantities of documents and business records.The officer may then leave all evidence with the victim for inspection by the follow-up investigator at a later time.This action should be noted in the original report.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000686

# Redding Police Department

RPD Policy Manual

---

## *Identity Theft*

With identity theft cases involving obtaining credit, using credit cards, debit cards, checks or obtaining credit and/or bank account information; renting property, obtaining utilities or other services; or opening any account without the permission of the victim, it may not be necessary to obtain credit reports, bill, statements, or other written documentation as evidence.If there is no information which might identify a suspect, such cases should be listed as inactive.The victim should be advised to retain the above documents which are evidence of the crime.

Forgery cases will be initially handled by Field Operations personnel and ensure that appropriate action is taken; i.e., arrest, seizure of evidence, report.The case may be forwarded to the Investigations Division if further follow-up is necessary.In most cases, complete and comprehensive arrest reports will not require investigator follow-up.

The Redding Police Department does not accept check cases written by the account holder(s) on closed accounts, or accounts containing non-sufficient funds, 476(a) PC.These matters should be referred to the Shasta County District Attorney's Bad Check Unit.

Counterfeit currency reports shall be taken by Field Operations personnel and evidence should be seized and booked into property.The Investigations Division may forward the report and evidence to the nearest U.S. Secret Service field officer for their review and investigation.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000687

Policy
**330**

**Redding Police Department**
RPD Policy Manual

# Communications with Persons with Disabilities

### 330.1  PURPOSE AND SCOPE
This policy provides guidance to members when communicating with individuals with disabilities, including those who are deaf or hard of hearing, have impaired speech or vision, or are blind.

#### 330.1.1  DEFINITIONS
Definitions related to this policy include:

**Auxiliary aids** - Tools used to communicate with people who have a disability or impairment. They include, but are not limited to, the use of gestures or visual aids to supplement oral communication; a notepad and pen or pencil to exchange written notes; a computer or typewriter; an assistive listening system or device to amplify sound; a teletypewriter (TTY) or videophones (video relay service or VRS); taped text; qualified readers; or a qualified interpreter.

**Disability or impairment** - A physical or mental impairment that substantially limits a major life activity, including hearing or seeing, regardless of whether the disabled person uses assistive or adaptive devices or auxiliary aids. Individuals who wear ordinary eyeglasses or contact lenses are not considered to have a disability (42 USC § 12102).

**Qualified interpreter** - A person who is able to interpret effectively, accurately and impartially, both receptively and expressively, using any necessary specialized vocabulary. Qualified interpreters include oral interpreters, translators, sign language interpreters and intermediary interpreters.

### 330.2  POLICY
It is the policy of the Redding Police Department to reasonably ensure that people with disabilities, including victims, witnesses, suspects and arrestees have equal access to law enforcement services, programs and activities. Members must make efforts to communicate effectively with individuals with disabilities.

The Department will not discriminate against or deny any individual access to services, rights or programs based upon disabilities.

### 330.3  AMERICANS WITH DISABILITIES (ADA) COORDINATOR
The Chief of Police shall delegate certain responsibilities to an ADA Coordinator (28 CFR 35.107). The ADA Coordinator shall be appointed by, and directly responsible, to the Field Operations Division Commander or the authorized designee.

The responsibilities of the ADA Coordinator shall include, but not be limited to:

(a)  Working with the City ADA coordinator regarding the Redding Police Department's efforts to ensure equal access to services, programs and activities.

(b)  Developing reports, new procedures, or recommending modifications to this policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000688

# Redding Police Department

RPD Policy Manual

*Communications with Persons with Disabilities*

    (c)    Acting as a liaison with local disability advocacy groups or other disability groups regarding access to department services, programs and activities.

    (d)    Ensuring that a list of qualified interpreter services is maintained and available to each Watch Commander and Dispatch Supervisor. The list should include information regarding the following:

        1.    Contact information

        2.    Availability

    (e)    Developing procedures that will enable members to access auxiliary aids or services, including qualified interpreters, and ensure the procedures are available to all members.

    (f)    Ensuring signage is posted in appropriate areas, indicating that auxiliary aids are available free of charge to people with disabilities.

    (g)    Ensuring appropriate processes are in place to provide for the prompt and equitable resolution of complaints and inquiries regarding discrimination in access to department services, programs and activities.

## 330.4   FACTORS TO CONSIDER

Because the nature of any law enforcement contact may vary substantially from one situation to the next, members of this department should consider all information reasonably available to them when determining how to communicate with an individual with a disability. Members should carefully balance all known factors in an effort to reasonably ensure people who are disabled have equal access to services, programs and activities. These factors may include, but are not limited to:

    (a)    Members should not always assume that effective communication is being achieved. The fact that an individual appears to be nodding in agreement does not always mean he/she completely understands the message. When there is any doubt, members should ask the individual to communicate back or otherwise demonstrate their understanding.

    (b)    The nature of the disability (e.g., deafness or blindness vs. hard of hearing or low vision).

    (c)    The nature of the law enforcement contact (e.g., emergency vs. non-emergency, custodial vs. consensual contact).

    (d)    The availability of auxiliary aids. The fact that a particular aid is not available does not eliminate the obligation to reasonably ensure access. However, in an emergency, availability may factor into the type of aid used.

## 330.5   INITIAL AND IMMEDIATE CONSIDERATIONS

Recognizing that various law enforcement encounters may be potentially volatile and/or emotionally charged, members should remain alert to the possibility of communication problems.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000689

# Redding Police Department

RPD Policy Manual

*Communications with Persons with Disabilities*

Members should exercise special care in the use of all gestures, and verbal and written communication to minimize initial confusion and misunderstanding when dealing with any individual with known or suspected disabilities.

In a non-emergency situation, when a member knows or suspects an individual requires assistance to effectively communicate, the member shall identify the individual's choice of auxiliary aid or service.

The individual's preferred communication method must be honored unless another effective method of communication exists under the circumstances (28 CFR 35.160).

Factors to consider when determining whether an alternative method is effective include:

    (a)    The methods of communication usually used by the individual.

    (b)    The nature, length and complexity of the communication involved.

    (c)    The context of the communication.

In emergency situations involving an imminent threat to the safety or welfare of any person, members may use whatever auxiliary aids and services that reasonably appear effective under the circumstances. This may include, for example, exchanging written notes or using the services of a person who knows sign language but is not a qualified interpreter, even if the person who is deaf or hard of hearing would prefer a qualified sign language interpreter or another appropriate auxiliary aid or service. Once the emergency has ended, the continued method of communication should be reconsidered. The member should inquire as to the individual's preference and give primary consideration to that preference.

If an individual who is deaf, hard of hearing or has impaired speech must be handcuffed while in the custody of the Redding Police Department, consideration should be given, safety permitting, to placing the handcuffs in the front of the body to facilitate communication using sign language or writing.

## 330.6  TYPES OF ASSISTANCE AVAILABLE

Redding Police Department members shall never refuse to assist an individual with disabilities who is requesting assistance. The Department will not charge anyone to receive auxiliary aids, nor shall they require anyone to furnish their own auxiliary aid or service as a condition for receiving assistance. The Department will make every reasonable effort to provide equal access and timely assistance to individuals who are disabled through a variety of services.

A person who is disabled may choose to accept department-provided auxiliary aids or services or they may choose to provide their own.

Department-provided auxiliary aids or services may include, but are not limited to, the assistance methods described in this policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000690

Redding Police Department

RPD Policy Manual

*Communications with Persons with Disabilities*

---

### 330.7   AUDIO RECORDINGS AND ENLARGED PRINT

The Department may develop audio recordings to assist people who are blind or have a visual impairment with accessing important information. If such a recording is not available, members may read aloud from the appropriate form, for example a personnel complaint form, or provide forms with enlarged print.

### 330.8   QUALIFIED INTERPRETERS

A qualified interpreter may be needed in lengthy or complex transactions (e.g., interviewing a victim, witness, suspect or arrestee), if the individual to be interviewed normally relies on sign language or speechreading (lip-reading) to understand what others are saying. The qualified interpreter should not be a person with an interest in the case or investigation involving the disabled individual. A person providing interpretation services may be required to establish the accuracy and trustworthiness of the interpretation in a court proceeding.

Qualified interpreters should be:

(a)   Available within a reasonable amount of time but in no event longer than one hour if requested.

(b)   Experienced in providing interpretation services related to law enforcement matters.

(c)   Familiar with the use of VRS and/or video remote interpreting services.

(d)   Certified in either American Sign Language (ASL) or Signed English (SE).

(e)   Able to understand and adhere to the interpreter role without deviating into other roles, such as counselor or legal adviser.

(f)   Knowledgeable of the ethical issues involved when providing interpreter services.

Members should use department-approved procedures to request a qualified interpreter at the earliest reasonable opportunity, and generally not more than 15 minutes after a request for an interpreter has been made or it is reasonably apparent that an interpreter is needed. No individual who is disabled shall be required to provide his/her own interpreter (28 CFR 35.160).

### 330.9   TTY AND RELAY SERVICES

In situations where an individual without a disability would have access to a telephone (e.g., booking or attorney contacts), members must also provide those who are deaf, hard of hearing or have impaired speech the opportunity to place calls using an available TTY (also known as a telecommunications device for deaf people, or TDD). Members shall provide additional time, as needed, for effective communication due to the slower nature of TTY and TDD communications.

The Department will accept all TTY or TDD calls placed by those who are deaf or hard of hearing and received via a telecommunications relay service (28 CFR 35.162).

Note that relay services translate verbatim, so the conversation must be conducted as if speaking directly to the caller.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000691

Redding Police Department

RPD Policy Manual

*Communications with Persons with Disabilities*

---

**330.10  COMMUNITY VOLUNTEERS**

Interpreter services may be available from community volunteers who have demonstrated competence in communication services, such as ASL or SE, and have been approved by the Department to provide interpreter services.

Where qualified interpreters are unavailable to assist, approved community volunteers who have demonstrated competence may be called upon when appropriate. However, department members must carefully consider the nature of the contact and the relationship between the individual with the disability and the volunteer to ensure that the volunteer can provide neutral and unbiased assistance.

**330.11  FAMILY AND FRIENDS**

While family or friends may offer to assist with interpretation, members should carefully consider the circumstances before relying on such individuals. The nature of the contact and relationship between the individual with the disability and the person offering services must be carefully considered (e.g., victim/suspect).

Children shall not be relied upon except in emergency or critical situations when there is no qualified interpreter reasonably available.

Adults may be relied upon when (28 CFR 35.160):

    (a)   There is an emergency or critical situation and there is no qualified interpreter reasonably available.

    (b)   The person with the disability requests that the adult interpret or facilitate communication and the adult agrees to provide such assistance, and reliance on that adult for such assistance is reasonable under the circumstances.

**330.12  REPORTING**

Whenever any member of this department is required to complete a report or other documentation, and communication assistance has been provided, such services should be noted in the related report. Members should document the type of communication services utilized and whether the individual elected to use services provided by the Department or some other identified source. If the individual's express preference is not honored, the member must document why another method of communication was used.

All written communications exchanged in a criminal case shall be attached to the report or placed into evidence.

**330.13  FIELD ENFORCEMENT**

Field enforcement will generally include such contacts as traffic stops, pedestrian stops, serving warrants and restraining orders, crowd/traffic control and other routine field contacts that may involve individuals with disabilities. The scope and nature of these activities and contacts will inevitably vary.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000692

# Redding Police Department

RPD Policy Manual

## *Communications with Persons with Disabilities*

The Department recognizes that it would be virtually impossible to provide immediate access to complete communication services to every member of this department. Members and/or supervisors must assess each situation and consider the length, complexity and importance of the communication, as well as the individual's preferred method of communication, when determining the type of resources to use and whether a qualified interpreter is needed.

Although not every situation can be addressed in this policy, it is important that members are able to effectively communicate the reason for a contact, the need for information and the meaning or consequences of any enforcement action. For example, it would be meaningless to verbally request consent to search if the officer is unable to effectively communicate with an individual who is deaf or hard of hearing and requires communications assistance.

If available, officers should obtain the assistance of a qualified interpreter before placing an individual with a disability under arrest. Individuals who are arrested and are assisted by service animals should be permitted to make arrangements for the care of such animals prior to transport.

### 330.13.1   FIELD RESOURCES

Examples of methods that may be sufficient for transactions, such as checking a license or giving directions to a location or for urgent situations such as responding to a violent crime in progress, may, depending on the circumstances, include such simple things as:

(a)   Hand gestures or visual aids with an individual who is deaf, hard of hearing or has impaired speech.

(b)   Exchange of written notes or communications.

(c)   Verbal communication with an individual who can speechread by facing the individual and speaking slowly and clearly.

(d)   Use of computer, word processing, personal communication device or similar device to exchange texts or notes.

(e)   Slowly and clearly speaking or reading simple terms to individuals who have a visual or mental impairment.

Members should be aware that these techniques may not provide effective communication as required by law and this policy depending on the circumstances.

### 330.14   CUSTODIAL INTERROGATIONS

In an effort to ensure that the rights of individuals who are deaf, hard of hearing or have speech impairment are protected during a custodial interrogation, this department will provide interpreter services before beginning an interrogation, unless exigent circumstances exist or the individual has made a clear indication that he/she understands the process and desires to proceed without an interpreter. The use of a video remote interpreting service should be considered, where appropriate, if a live interpreter is not available. *Miranda* warnings shall be provided to suspects who are deaf or hard of hearing by a qualified interpreter or by providing a written *Miranda* warning card.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000693

# Redding Police Department
### RPD Policy Manual

*Communications with Persons with Disabilities*

In order to ensure that communications during custodial investigations are accurately documented and are admissible as evidence, interrogations should be recorded whenever reasonably possible. See guidance on recording custodial interrogations in the Investigation and Prosecution Policy.

## 330.15   ARREST AND BOOKINGS

If an individual with speech or hearing disabilities is arrested, the arresting officer shall use department-approved procedures to provide a qualified interpreter at the place of arrest or booking as soon as reasonably practicable, unless the individual indicates that he/she prefers a different auxiliary aid or service or the officer reasonably determines another effective method of communication exists under the circumstances.

When gathering information during the booking process, members should remain alert to the impediments that often exist when communicating with those who are deaf, hard of hearing, who have impaired speech or vision, are blind, or have other disabilities. In the interest of the arrestee's health and welfare, the safety and security of the facility and to protect individual rights, it is important that accurate medical screening and booking information be obtained. If necessary, members should seek the assistance of a qualified interpreter whenever there is concern that accurate information cannot be obtained or that booking instructions may not be properly understood by the individual.

Individuals who require and possess personally owned communication aids (e.g., hearing aids, cochlear processors) should be permitted to retain them while in custody.

## 330.16   COMPLAINTS

The Department shall ensure that individuals with disabilities who wish to file a complaint regarding members of this department are able to do so. The Department may provide a qualified interpreter or forms in enlarged print, as appropriate. Complaints will be referred to the department ADA Coordinator.

Investigations into such complaints shall be handled in accordance with the Personnel Complaints Policy. Qualified interpreters used during the investigation of a complaint should not be members of this Department.

## 330.17   COMMUNITY OUTREACH

Community outreach programs and other such services offered by this department are important to the ultimate success of more traditional law enforcement duties. This department will continue to work with community groups, local businesses and neighborhoods to provide equal access to such programs and services.

## 330.18   TRAINING

To ensure that all members who may have contact with individuals who are disabled are properly trained, the Department will provide periodic training that should include:

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000694

# Redding Police Department

RPD Policy Manual

## *Communications with Persons with Disabilities*

    (a)    Awareness and understanding of this policy and related procedures, related forms and available resources.

    (b)    Procedures for accessing qualified interpreters and other available resources.

    (c)    Working with in-person and telephone interpreters and related equipment.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000695

# Private Persons Arrests

## 331.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidance for the handling of private person's arrests made pursuant to Penal Code § 837.

## 331.2  ADVISING PRIVATE PERSONS OF THE ARREST PROCESS
Penal Code § 836(b) expressly mandates that all officers shall advise victims of domestic violence of the right to make a private person's arrest, including advice on how to safely execute such an arrest. In all other situations, officers should use sound discretion in determining whether or not to advise an individual of the arrest process.

(a)     When advising any individual regarding the right to make a private person's arrest, officers should refrain from encouraging or dissuading any individual from making such an arrest and should instead limit advice to the legal requirements for such an arrest as listed below.

(b)     Private individuals should be discouraged from using force to effect a private person's arrest, and absent immediate threat to their own safety or the safety of others, private individuals should be encouraged to refer matters to law enforcement officials for further investigation or arrest.

## 331.3  ARRESTS BY PRIVATE PERSONS
Penal Code § 837 provides that a private person may arrest another:

(a)     For a public offense committed or attempted in his or her presence;

(b)     When the person arrested has committed a felony, although not in his or her presence;

(c)     When a felony has been in fact committed, and he or she has reasonable cause for believing the person arrested has committed it.

## 331.4  ARRESTS BY PRIVATE SECURITY PERSONNEL FOR SHOPLIFTING
When an officer is dispatched to a business with a shoplifter in their custody:

(a)     The investigating officer may process a juvenile by counseling or citing and releasing to a parent or guardian, or booking at Juvenile Hall.

(b)     In the event of a misdemeanor arrest of an adult, the officer shall determine whether the defendant can be released pursuant to Section 853.6(i) PC. If the defendant meets the criteria they shall be released by issuance of a citation. If they do not meet the criteria, they may be booked at the Shasta County Jail.

Officers responding to shoplifting arrests at businesses with loss prevention personnel shall confirm the offender's identification and check for warrants, probation/parole status, and prior convictions. Loss Prevention personnel may complete the face page of the arrest report and attach to their written statement.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

---

*Private Persons Arrests*

---

It is the officer's responsibility to ensure the arrest report is complete and forward it to the District Attorney's Office.

The officer shall release the offender on a signed notice to appear and attach it to the completed report with the "booking required" box checked.

Stolen property held by a business pursuant to a shoplifting report should remain in the custody of the business. The officer shall describe the property in detail in the arrest report.

### 331.4.1   PROSECUTION BY COMPLAINT PROGRAM (SHOPLIFTING)

This program is designed to allow trained loss prevention personnel to submit cases to the Shasta County District Attorney for prosecution via the Redding Police Department.

Officers assigned to the Prosecution by Complaint Program will provide training to selected loss prevention personnel. The training will include report preparation as well as which incidents qualify for the program.A list of trained loss prevention personnel shall be maintained in the Resource File.

The following cases may qualify for the Prosecution by Complaint Program:

(a)   The suspect has a valid government-issued photo identification, or their identification can be verified by a patrol officer.

(b)   The suspect is cooperative.

(c)   The suspect is not on probation or parole.

(d)   For juvenile suspects, a parent or guardian must be available to take custody of the juvenile.

(e)   The suspect has no outstanding warrants.

Trained loss prevention personnel shall adhere to the following protocol for prosecution:

(a)   When the suspect has been detained, loss prevention personnel shall contact SHASCOM and provide the full name and date of birth of the suspect, as indicated on the government issued identification.

(b)   SHASCOM personnel will determine if the suspect qualifies for the program, The loss prevention caller will be provided with a case number for their report. If the suspect does not have identification, but otherwise meets the criteria for the program, a patrol officer will be dispatched to the scene. If the patrol officer is able to verify the suspect's identity, they may provide the loss prevention personnel with a log report number and log out the call using the call type 488LP. The patrol officer will have SHASCOM note in the comments of the log report the manner in which the suspect was identified (i.e. — via Cal-Photo, tattoos, and prior contacts, etc.).

(c)   The loss prevention agent will complete their report and mail or deliver the report to the Redding Police Department with 48 hours of the incident.

Police Records Technicians will run and attach RAP sheets and the report will be placed in the report review tray in the Sergeants Office.

Report Review:

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000697

# Redding Police Department

RPD Policy Manual

*Private Persons Arrests*

   (a)   The shift supervisor shall review reports submitted by loss prevention agents. The shift supervisor shall confirm the information in the RAP sheets matches the information on the report.When the reports are approved, they will be routed to the Shasta County District Attorney for a complaint.

   (b)   If there are errors, omissions or other circumstances which require further follow-up, the case will be assigned to a beat officer.

## 331.5  OFFICER RESPONSIBILITIES

Any officer presented with a private person wishing to make an arrest must determine whether or not there is reasonable cause to believe that such an arrest would be lawful (Penal Code § 847).

   (a)   Should any officer determine that there is no reasonable cause to believe that a private person's arrest is lawful, the officer should take no action to further detain or restrain the individual beyond that which reasonably appears necessary to investigate the matter, determine the lawfulness of the arrest and protect the public safety.

        1.   Any officer who determines that a private person's arrest appears to be unlawful should promptly release the arrested individual pursuant to Penal Code § 849(b)(1).  The officer must include the basis of such a determination in a related report.

        2.   Absent reasonable cause to support a private person's arrest or other lawful grounds to support an independent arrest by the officer, the officer should advise the parties that no arrest will be made and that the circumstances will be documented in a related report.

   (b)   Whenever an officer determines that there is reasonable cause to believe that a private person's arrest is lawful, the officer may exercise any of the following options:

        1.   Take the individual into physical custody for booking

        2.   Release the individual pursuant to a Notice to Appear

        3.   Release the individual pursuant to Penal Code § 849

## 331.6  REPORTING REQUIREMENTS

In all circumstances in which a private person is claiming to have made an arrest, the individual must complete and sign a Department Private Person's Arrest form under penalty of perjury.

In addition to the Private Person's Arrest Form (and any other related documents such as citations, booking forms, etc.), officers shall complete a narrative report regarding the circumstances and disposition of the incident.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000698

**Policy**

**332**

# Anti-Reproductive Rights Crimes Reporting

### 332.1  PURPOSE AND SCOPE
This policy shall establish a procedure for the mandated reporting of Anti-Reproductive Rights Crimes (ARRC) to the Attorney General pursuant to the Reproductive Rights Law Enforcement Act (Penal Code § 13775 et seq.).

### 332.2  DEFINITIONS
Penal Code § 423.2 provides that the following acts shall be considered Anti-Reproductive Rights Crimes (ARRC) when committed by any person, except a parent or guardian acting towards his or her minor child or ward:

(a)   By force, threat of force, or physical obstruction that is a crime of violence, intentionally injures, intimidates, interferes with, or attempts to injure, intimidate, or interfere with any person or entity because that person or entity is a reproductive health services client, provider, or assistant, or in order to intimidate any person or entity, or any class of persons or entities, from becoming or remaining a reproductive health services client, provider, or assistant

(b)   By non-violent physical obstruction, intentionally injures, intimidates, or interferes with, or attempts to injure, intimidate, or interfere with, any person or entity because that person or entity is a reproductive health services client, provider, or assistant, or in order to intimidate any person or entity, or any class of persons or entities, from becoming or remaining a reproductive health services client, provider or assistant

(c)   Intentionally damages or destroys the property of a person, entity, or facility, or attempts to do so, because the person, entity, or facility is a reproductive health services client, provider, assistant, or facility

### 332.3  REPORTING REQUIREMENTS TO THE ATTORNEY GENERAL

(a)   Upon the receipt of the report of an ARRC, it shall be the responsibility of the employee taking such a report to also complete an ARRC Data Collection Worksheet (BCIA 8371) in accordance with the instructions contained on such forms.

(b)   The ARRC Data Collection Worksheet shall be processed with all related reports and forwarded to the Investigation Division Commander.

(c)   By the tenth day of each month, it shall be the responsibility of the Investigation Division Commander to ensure that a Summary Worksheet (BCIA 8370) is submitted to the Department of Justice Criminal Justice Statistics Center.

1.   In the event that no ARRC(s) were reported during the previous month, a Summary Worksheet shall be submitted to Department of Justice with an indication that no such crimes were reported.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000699

# Redding Police Department

RPD Policy Manual

## *Anti-Reproductive Rights Crimes Reporting*

2.    Any ARRC(s) reported in the Summary Worksheet shall be accompanied by a copy of the related Data Collection Worksheet(s).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000700

# Limited English Proficiency Services

## 333.1  PURPOSE AND SCOPE

This policy provides guidance to members when communicating with individuals with limited English proficiency (LEP) (42 USC § 2000d).

### 333.1.1  DEFINITIONS

Definitions related to this policy include:

**Authorized interpreter** - A person who has been screened and authorized by the Department to act as an interpreter and/or translator for others.

**Interpret or interpretation** - The act of listening to a communication in one language (source language) and orally converting it to another language (target language), while retaining the same meaning.

**Limited English proficient (LEP)** - Any individual whose primary language is not English and who has a limited ability to read, write, speak or understand English. These individuals may be competent in certain types of communication (e.g., speaking or understanding) but still be LEP for other purposes (e.g., reading or writing). Similarly, LEP designations are context-specific; an individual may possess sufficient English language skills to function in one setting but these skills may be insufficient in other situations.

**Qualified bilingual member** - A member of the Redding Police Department, designated by the Department, who has the ability to communicate fluently, directly and accurately in both English and another language. Bilingual members may be fluent enough to communicate in a non-English language but may not be sufficiently fluent to interpret or translate from one language into another.

**Translate or translation** - The replacement of written text from one language (source language) into an equivalent written text (target language).

## 333.2  POLICY

It is the policy of the Redding Police Department to reasonably ensure that LEP individuals have meaningful access to law enforcement services, programs and activities, while not imposing undue burdens on its members.

The Department will not discriminate against or deny any individual access to services, rights or programs based upon national origin or any other protected interest or right.

## 333.3  LEP COORDINATOR

The Professional Standards Sergeant will serve as the LEP Coordinator. The responsibilities of the LEP Coordinator include, but are not limited to:

(a)  Coordinating and implementing all aspects of the Redding Police Department's LEP services to LEP individuals.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000701

# Redding Police Department
RPD Policy Manual

*Limited English Proficiency Services*

    (b)   Developing procedures that will enable members to access LEP services, including telephonic interpreters, and ensuring the procedures are available to all members.

    (c)   Ensuring that a list of all qualified bilingual members and authorized interpreters is maintained and available to each Watch Commander and Dispatch Supervisor. The list should include information regarding the following:

        1.   Languages spoken

        2.   Contact information

        3.   Availability

## 333.4  FOUR-FACTOR ANALYSIS

Since there are many different languages that members could encounter, the Department will utilize the four-factor analysis outlined in the U.S. Department of Justice (DOJ) Guidance to Federal Financial Assistance Recipients, available at the DOJ website, to determine which measures will provide meaningful access to its services and programs. It is recognized that law enforcement contacts and circumstances will vary considerably. This analysis, therefore, must remain flexible and will require an ongoing balance of four factors, which are:

    (a)   The number or proportion of LEP individuals eligible to be served or likely to be encountered by department members, or who may benefit from programs or services within the jurisdiction of the Department or a particular geographic area.

    (b)   The frequency with which LEP individuals are likely to come in contact with department members, programs or services.

    (c)   The nature and importance of the contact, program, information or service provided.

    (d)   The cost of providing LEP assistance and the resources available.

## 333.5  TYPES OF LEP ASSISTANCE AVAILABLE

Redding Police Department members should never refuse service to an LEP individual who is requesting assistance, nor should they require an LEP individual to furnish an interpreter as a condition for receiving assistance. The Department will make every reasonable effort to provide meaningful and timely assistance to LEP individuals through a variety of services.

The Department will utilize all reasonably available tools, such as language identification cards when attempting to determine an LEP individual's primary language.

LEP individuals may choose to accept Department-provided LEP services at no cost or they may choose to provide their own.

Department-provided LEP services may include but are not limited to, the assistance methods described in this policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000702

## Redding Police Department
RPD Policy Manual

---

*Limited English Proficiency Services*

---

### 333.6  WRITTEN FORMS AND GUIDELINES
Vital documents or those that are frequently used should be translated into languages most likely to be encountered. The LEP Coordinator will arrange to make these translated documents available to members and other appropriate individuals, as necessary.

### 333.7  AUDIO RECORDINGS
The Department may develop audio recordings of important or frequently requested information in a language most likely to be understood by those LEP individuals who are representative of the community being served.

### 333.8  QUALIFIED BILINGUAL MEMBERS
Bilingual members may be qualified to provide LEP services when they have demonstrated through established department procedures a sufficient level of skill and competence to fluently communicate in both English and a non-English language. Members utilized for LEP services must demonstrate knowledge of the functions of an interpreter/translator and the ethical issues involved when acting as a language conduit. Additionally, bilingual members must be able to communicate technical and law enforcement terminology, and be sufficiently proficient in the non-English language to perform complicated tasks, such as conducting interrogations, taking statements, collecting evidence or conveying rights or responsibilities.

When a qualified bilingual member from this department is not available, personnel from other City departments, who have been identified by the Department as having the requisite skills and competence, may be requested.

### 333.9  AUTHORIZED INTERPRETERS
Any person designated by the Department to act as an authorized interpreter and/or translator must have demonstrated competence in both English and the involved non-English language, must have an understanding of the functions of an interpreter that allows for correct and effective translation, and should not be a person with an interest in the Department case or investigation involving the LEP individual. A person providing interpretation or translation services may be required to establish the accuracy and trustworthiness of the interpretation or translation in a court proceeding.

Authorized interpreters must pass a screening process established by the LEP Coordinator which demonstrates that their skills and abilities include:

    (a)    The competence and ability to communicate information accurately in both English and in the target language.

    (b)    Knowledge, in both languages, of any specialized terms or concepts peculiar to this Department and of any particularized vocabulary or phraseology used by the LEP individual.

    (c)    The ability to understand and adhere to the interpreter role without deviating into other roles, such as a counselor or legal adviser.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000703

# Redding Police Department
RPD Policy Manual

## *Limited English Proficiency Services*

    (d)    Knowledge of the ethical issues involved when acting as a language conduit.

### 333.9.1   SOURCES OF AUTHORIZED INTERPRETERS
The Department may contract with authorized interpreters who are available over the telephone. Members may use these services with the approval of a supervisor and in compliance with established procedures.

Other sources may include:

- Qualified bilingual members of this Department or personnel from other City departments.

- Individuals employed exclusively to perform interpretation services.

- Contracted in-person interpreters, such as state or federal court interpreters, among others.

- Interpreters from other agencies who have been qualified as interpreters by this department, and with whom the Department has a resource-sharing or other arrangement that they will interpret according to department guidelines.

### 333.9.2   COMMUNITY VOLUNTEERS AND OTHER SOURCES OF LANGUAGE ASSISTANCE
Language assistance may be available from community volunteers who have demonstrated competence in either monolingual (direct) communication and/or in interpretation or translation (as noted in above), and have been approved by the Department to communicate with LEP individuals.

Where qualified bilingual members or other authorized interpreters are unavailable to assist, approved community volunteers who have demonstrated competence may be called upon when appropriate. However, department members must carefully consider the nature of the contact and the relationship between the LEP individual and the volunteer to ensure that the volunteer can provide neutral and unbiased assistance.

While family or friends of an LEP individual may offer to assist with communication or interpretation, members should carefully consider the circumstances before relying on such individuals. For example, children should not be relied upon except in exigent or very informal and non-confrontational situations.

### 333.9.3   BILINGUAL TESTING PROCEDURES
Bilingual pay will be added to the base pay of qualified employees designated by the Chief of Police or his designee to encourage bilingual skills.

Employees requesting bilingual pay will be tested using the criteria found in attachment "A".

Testing will be conducted by an interpreter, designated by the Chief of Police. The Chief of Police will create a list of interpreters for bilingual specialties.

Employees will be certified as either "Proficient" or "Fluent". Following initial testing and certification, employees rated as "Proficient" or "Fluent" will be required to be retest every five years.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000704

# Redding Police Department
RPD Policy Manual

*Limited English Proficiency Services*

Bilingual specialties language include, but are not limited to, Spanish, German, French, Hmong, Laotian and sign language.

## 333.10  CONTACT AND REPORTING

While all law enforcement contacts, services and individual rights are important, this department will utilize the four-factor analysis to prioritize service to LEP individuals so that such services may be targeted where they are most needed, according to the nature and importance of the particular law enforcement activity involved.

Whenever any member of this department is required to complete a report or other documentation, and interpretation services are provided to any involved LEP individual, such services should be noted in the related report. Members should document the type of interpretation services utilized and whether the individual elected to use services provided by the Department or some other identified source.

## 333.11  RECEIVING AND RESPONDING TO REQUESTS FOR ASSISTANCE

The Redding Police Department will take reasonable steps and will work with the Personnel Department to develop in-house language capacity by hiring or appointing qualified members proficient in languages representative of the community being served.

### 333.11.1  EMERGENCY CALLS TO 9-1-1

Department members will make every reasonable effort to promptly accommodate LEP individuals utilizing 9-1-1 lines. When a 9-1-1 call-taker receives a call and determines that the caller is an LEP individual, the call-taker shall quickly determine whether sufficient information can be obtained to initiate an appropriate emergency response. If language assistance is still needed, the language is known and a qualified bilingual member is available in SHASCOM, the call shall immediately be handled by the qualified bilingual member.

If a qualified bilingual member is not available or the call-taker is unable to identify the caller's language, the call-taker will contact the contracted telephone interpretation service and establish a three-way call between the call-taker, the LEP individual and the interpreter.

Dispatchers will make every reasonable effort to dispatch a qualified bilingual member to the assignment, if available and appropriate.

While 9-1-1 calls shall receive top priority, reasonable efforts should also be made to accommodate LEP individuals seeking routine access to services and information by utilizing the resources listed in this policy.

## 333.12  FIELD ENFORCEMENT

Field enforcement will generally include such contacts as traffic stops, pedestrian stops, serving warrants and restraining orders, crowd/traffic control and other routine field contacts that may involve LEP individuals. The scope and nature of these activities and contacts will inevitably vary. Members and/or supervisors must assess each situation to determine the need and availability of

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000705

# Redding Police Department

RPD Policy Manual

---

## *Limited English Proficiency Services*

language assistance to all involved LEP individuals and utilize the methods outlined in this policy to provide such assistance.

Although not every situation can be addressed in this policy, it is important that members are able to effectively communicate the reason for a contact, the need for information and the meaning or consequences of any enforcement action. For example, it would be meaningless to request consent to search if the officer is unable to effectively communicate with an LEP individual.

If available, officers should obtain the assistance of a qualified bilingual member or an authorized interpreter before placing an LEP individual under arrest.

### 333.13   INVESTIGATIVE FIELD INTERVIEWS

In any situation where an interview may reveal information that could be used as the basis for arrest or prosecution of an LEP individual and a qualified bilingual member is unavailable or lacks the skills to directly communicate with the LEP individual, an authorized interpreter should be used. This includes interviews conducted during an investigation with victims, witnesses and suspects. In such situations, audio recordings of the interviews should be made when reasonably possible. Identification and contact information for the interpreter (e.g., name, address) should be documented so that the person can be subpoenaed for trial if necessary.

If an authorized interpreter is needed, officers should consider calling for an authorized interpreter in the following order:

- An authorized Department member or allied agency interpreter
- An authorized telephone interpreter
- Any other authorized interpreter

Any *Miranda* warnings shall be provided to suspects in their primary language by an authorized interpreter or, if the suspect is literate, by providing a translated *Miranda* warning card.

The use of an LEP individual's bilingual friends, family members, children, neighbors or bystanders may be used only when a qualified bilingual member or authorized interpreter is unavailable and there is an immediate need to interview an LEP individual.

### 333.14   CUSTODIAL INTERROGATIONS

Miscommunication during custodial interrogations may have a substantial impact on the evidence presented in a criminal prosecution. Only qualified bilingual members or, if none is available or appropriate, authorized interpreters shall be used during custodial interrogations. *Miranda* warnings shall be provided to suspects in their primary language by the qualified bilingual member or an authorized interpreter.

In order to ensure that translations during custodial interrogations are accurately documented and are admissible as evidence, interrogations should be recorded whenever reasonably possible. See guidance on recording custodial interrogations in the Investigation and Prosecution Policy.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000706

## Redding Police Department
RPD Policy Manual

*Limited English Proficiency Services*

### 333.15  BOOKINGS

When gathering information during the booking process, members should remain alert to the impediments that language barriers can create. In the interest of the arrestee's health and welfare, the safety and security of the facility, and to protect individual rights, it is important that accurate medical screening and booking information be obtained. Members should seek the assistance of a qualified bilingual member whenever there is concern that accurate information cannot be obtained or that booking instructions may not be properly understood by an LEP individual.

### 333.16  COMPLAINTS

The Department shall ensure that LEP individuals who wish to file a complaint regarding members of this Department are able to do so. The Department may provide an authorized interpreter or translated forms, as appropriate. Complaints will be referred to the LEP Coordinator.

Investigations into such complaints shall be handled in accordance with the Personnel Complaints Policy. Authorized interpreters used for any interview with an LEP individual during an investigation should not be members of this department.

Any notice required to be sent to an LEP individual as a complaining party pursuant to the Personnel Complaints Policy should be translated or otherwise communicated in a language-accessible manner.

### 333.17  COMMUNITY OUTREACH

Community outreach programs and other such services offered by this Department are important to the ultimate success of more traditional law enforcement duties. This Department will continue to work with community groups, local businesses and neighborhoods to provide equal access to such programs and services.

### 333.18  TRAINING

To ensure that all members who may have contact with LEP individuals are properly trained, the Department will provide periodic training on this policy and related procedures, including how to access department-authorized telephonic and in-person interpreters and other available resources.

The Training Sergeant shall be responsible for ensuring new members receive LEP training. Those who may have contact with LEP individuals should receive refresher training at least once every two years thereafter. The Training Sergeant shall maintain records of all LEP training provided, and will retain a copy in each member's training file in accordance with established records retention schedules.

### 333.18.1  TRAINING FOR AUTHORIZED INTERPRETERS

All members on the authorized interpreter list must successfully complete prescribed interpreter training. To complete interpreter training successfully, an interpreter must demonstrate proficiency in and ability to communicate information accurately in both English and in the target language, demonstrate knowledge in both languages of any specialized terms or phraseology, and

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000707

# Redding Police Department

RPD Policy Manual

## *Limited English Proficiency Services*

understand and adhere to the interpreter role without deviating into other roles, such as counselor or legal adviser.

Members on the authorized interpreter list must receive refresher training annually or they will be removed from the authorized interpreter list. This annual training should include language skills competency (including specialized terminology) and ethical considerations.

The Training Sergeant shall be responsible for coordinating the annual refresher training and will maintain a record of all training the interpreters have received.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000708

Policy

**334**

# Mandatory Employer Notification

## 334.1  PURPOSE AND SCOPE
The purpose of this policy is to describe the requirements and procedures to follow when a public or private school employee (teacher and non-teacher) has been arrested under certain circumstances.

## 334.2  POLICY
The Redding Police Department will meet  the reporting requirements of California law to minimize the risks to children and others.

## 334.3  MANDATORY SCHOOL EMPLOYEE ARREST REPORTING
In the event a school employee is arrested for any offense enumerated below, the Chief of Police or his/her designee is required to report the arrest as follows.

### 334.3.1   ARREST OF PUBLIC SCHOOL TEACHER
In the event a public school teacher is arrested for any controlled substance offense enumerated in Health and Safety Code § 11590 or Health and Safety Code § 11364, in so far as that section relates to Health and Safety Code § 11054(d)(12), or for any of the offenses enumerated in Penal Code § 290, Penal Code § 261(a) or Education Code § 44010, the Chief of Police or his/her designee is mandated to immediately notify by telephone the superintendent of the school district employing the teacher and to immediately give written notice of the arrest to the Commission on Teacher Credentialing and to the superintendent of schools in the county where the person is employed (Health and Safety Code § 11591; Penal Code § 291).

### 334.3.2   ARREST OF PUBLIC SCHOOL NON-TEACHER EMPLOYEE
In the event a public school non-teacher employee is arrested for any controlled substance offense enumerated in Health and Safety Code § 11590 or Health and Safety Code § 11364, in so far as that section relates to Health and Safety Code § 11054(d)(12), or for any of the offenses enumerated in Penal Code § 290, Penal Code § 261(a) or Education Code § 44010, the Chief of Police or his/her designee is mandated to immediately notify by telephone the superintendent of the school district employing the non-teacher and to immediately give written notice of the arrest to the governing board of the school district employing the person (Health and Safety Code § 11591; Penal Code § 291).

### 334.3.3   ARREST OF PRIVATE SCHOOL TEACHER
In the event a private school teacher is arrested for any controlled substance offense enumerated in Health and Safety Code § 11590 or Health and Safety Code § 11364, in so far as that section relates to Health and Safety Code § 11054(d)(12), or for any of the offenses enumerated in Penal Code § 290 or Education Code § 44010, the Chief of Police or his/her designee is mandated to immediately notify by telephone the private school authority employing the teacher

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Redding Police Department

RPD Policy Manual

*Mandatory Employer Notification*

and to immediately give written notice of the arrest to the private school authority employing the teacher (Health and Safety Code § 11591; Penal Code § 291.1).

### 334.3.4   ARREST OF COMMUNITY COLLEGE INSTRUCTOR

In the event a teacher or instructor employed in a community college district school is arrested for any controlled substance offense enumerated in Health and Safety Code § 11590 or Health and Safety § 11364, in so far as that section relates to Health and Safety Code § 11054(d)(9), or for any of the offenses enumerated in Penal Code § 290 or in Penal Code § 261(a)(1), the Chief of Police or the authorized designee is mandated to immediately notify by telephone the superintendent of the community college district employing the person, and shall immediately give written notice of the arrest to the California Community Colleges Chancellor's Office (Health and Safety Code § 11591.5; Penal Code § 291.5).

### 334.4   ARREST OF PERSONS EMPLOYED IN COMMUNITY CARE FACILITIES

In the event an employee of a community treatment facility, a day treatment facility, a group home, a short-term residential therapeutic program or a foster family agency is arrested for child abuse (as defined in Penal Code § 11165.6) and the employee is free to return to work where children are present, the investigating member shall notify the licensee of the charge of abuse (Health and Safety Code § 1522.2).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000710

# Biological Samples

### 335.1  PURPOSE AND SCOPE
This policy provides guidelines for the collection of biological samples from those individuals required to provide samples upon conviction or arrest for certain offenses. This policy does not apply to biological samples collected at a crime scene or taken from a person in conjunction with a criminal investigation. Nor does it apply to biological samples from those required to register, for example, sex offenders.

### 335.2  POLICY
The Redding Police Department will assist in the expeditious collection of required biological samples from offenders in accordance with the laws of this state and with as little reliance on force as practicable.

### 335.3  PERSONS SUBJECT TO DNA COLLECTION
Those who must submit a biological sample include (Penal Code § 296):

(a)  A person, including a juvenile, upon conviction or other adjudication of any felony offense.

(b)  A person, including a juvenile, upon conviction or other adjudication of any offense if the person has a prior felony on record.

(c)  An adult arrested or charged with any felony.

### 335.4  PROCEDURE
When an individual is required to provide a biological sample, a trained employee shall obtain the sample in accordance with this policy.

### 335.4.1  COLLECTION
The following steps should be taken to collect a sample:

(a)  Verify that the individual is required to provide a sample pursuant to Penal Code § 296; Penal Code § 296.1.

(b)  Verify that a biological sample has not been previously collected from the offender by querying the individual's criminal history record for a DNA collection flag or, during regular business hours, calling the California Department of Justice (DOJ) designated DNA laboratory. There is no need to obtain a biological sample if one has been previously obtained.

(c)  Use a DNA buccal swab collection kit provided by the California DOJ to perform the collection and take steps to avoid cross contamination.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000711

# Redding Police Department

RPD Policy Manual

*Biological Samples*

---

**335.5  USE OF FORCE TO OBTAIN SAMPLES**

If a person refuses to cooperate with the sample collection process, officers should attempt to identify the reason for refusal and seek voluntary compliance without resorting to using force. Force will not be used in the collection of samples except as authorized by court order and only with the approval of a supervisor.

The supervisor shall review and approve any plan to use force and be present to document the process.

335.5.1   VIDEO RECORDING

A video recording should be made anytime force is used to obtain a biological sample. The recording should document all staff participating in the process, in addition to the methods and all force used during the collection. The recording should be part of the investigation file, if any, or otherwise retained in accordance with the department's records retention schedule (15 CCR 1059).

**335.6  LEGAL MANDATES AND RELEVANT LAWS**

California law provides for the following:

335.6.1   DOCUMENTATION RELATED TO FORCE

The Watch Commander shall prepare prior written authorization for the use of any force (15 CCR 1059). The written authorization shall include information that the subject was asked to provide the requisite specimen, sample or impression and refused, as well as the related court order authorizing the force.

335.6.2   BLOOD SAMPLES

A blood sample should only be obtained under this policy when:

(a)   The California DOJ requests a blood sample and the subject consents, or

(b)   A court orders a blood sample following a refusal.

The withdrawal of blood may only be performed in a medically approved manner by health care providers trained and qualified to draw blood. A California DOJ collection kit shall be used for this purpose (Penal Code § 298(a); Penal Code § 298(b)(2)).

335.6.3   LITIGATION

The Chief of Police or authorized designee should notify the California DOJ's DNA Legal Unit in the event this Department is named in a lawsuit involving the DNA Data Bank sample collection, sample use or any aspect of the state's DNA Data Bank Program.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000712

**Redding Police Department**

RPD Policy Manual

# Chaplains

## 336.1  PURPOSE AND SCOPE

This policy establishes the guidelines for Redding Police Department chaplains to provide, practical, spiritual, or emotional support to members of the Department, their families and members of the public.

## 336.2  POLICY

The Redding Police Department shall ensure that department chaplains are properly appointed, trained and supervised to carry out their responsibilities without financial compensation.

## 336.3  ELIGIBILITY

Requirements for participation as a chaplain for the Department may include, but are not limited to:

(a)   Being above reproach, temperate, prudent, respectable, hospitable, able to teach, be free from addiction to alcohol or other drugs, and excessive debt.

(b)   Managing their households, families and personal affairs well.

(c)   Having a good reputation in the community.

(d)   Successful completion of an appropriate-level background investigation.

(e)   Skilled in ministry and pastoral care.

(f)   Possession of a valid driver's license.

The Chief of Police may apply exceptions for eligibility based on organizational needs and the qualifications of the individual.

## 336.4  RECRUITMENT, SELECTION AND APPOINTMENT

The Redding Police Department shall endeavor to recruit and appoint only those applicants who meet the high ethical, moral and professional standards set forth by this department.

All applicants shall be required to meet and pass the same pre-employment procedures as department personnel before appointment.

### 336.4.1  SELECTION AND APPOINTMENT

Chaplain candidates shall successfully complete the following process prior to appointment as a chaplain:

(a)   Completion of the 12 Basic Core classes as outlined by the International Conference of Police Chaplains (icpc4cops.org). See training section below.

(b)   Submit the appropriate written application.

(c)   Be an ordained or licensed minister or a member in good standing of a recognized religious denomination or group and include a recommendation from said denomination or group.

(d)     Interview with the Chief of Police, Program Manager, and Senior Chaplain

(e)     Successfully complete an appropriate-level background investigation.

(f)     Complete an appropriate probationary period as designated by the Chief of Police.

Chaplains are volunteers and serve at the discretion of the Chief of Police. Chaplains shall have no property interest in continued appointment. However, if a chaplain is removed for alleged misconduct, the chaplain will be afforded an opportunity solely to clear his/her name through a liberty interest hearing, which shall be limited to a single appearance before the Chief of Police or the authorized designee.

## 336.5  IDENTIFICATION AND UNIFORMS

As representatives of the Department, chaplains are responsible for presenting a professional image to the community. Chaplains shall dress appropriately for the conditions and performance of their duties. Uniforms and necessary safety equipment will be provided for each chaplain. Identification symbols worn by chaplains shall be different and distinct from those worn by officers through the inclusion of "Chaplain" on the uniform and not reflect any religious affiliation.

Chaplains will be issued Redding Police Department identification cards, which must be carried at all times while on-duty. The identification cards will be the standard Redding Police Department identification cards, with the exception that "Chaplain" will be indicated on the cards. Chaplains shall be required to return any issued uniforms or department property at the termination of service.

Chaplains shall conform to all uniform regulations and appearance standards of this department.

## 336.6  CHAPLAIN COORDINATOR

The Chaplaincy Program will be governed by the Chief of Police, administered through the Field Operations Division Commander by the Program Manager of the rank of lieutenant.Day to day operations will be coordinated by a senior chaplain.The senior chaplain may be a paid employee. Assistant coordinators/assistant senior chaplains may also be appointed.

The Program Manager shall serve as the liaison between the chaplains and the Chief of Police. The function of the Program Manager is to provide a central coordinating point for effective chaplain management within the Department and to direct and assist efforts to jointly provide more productive chaplain services. Under the general direction of the Chief of Police or the authorized designee, chaplains shall report to the Senior Chaplain who reports to the Program Manager.

The Program Manager will appoint a senior chaplain to assist in the coordination of chaplains and their activities.

The responsibilities of the senior chaplain include, but are not limited to:

(a)     Recruiting, selecting and training qualified chaplains.

(b)     Conducting chaplain meetings.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000714

Redding Police Department

RPD Policy Manual

*Chaplains*

(c)   Establishing and maintaining a chaplain callout roster.

(d)   Maintaining records for each chaplain.

(e)   Tracking and evaluating the contribution of chaplains.

(f)   Maintaining a record of chaplain schedules and work hours.

(g)   Completing and disseminating, as appropriate, all necessary paperwork and information.

(h)   Planning periodic recognition events.

(i)   Maintaining liaison with other agency chaplain agencies.

An evaluation of the overall use of chaplains will be conducted on an annual basis by the coordinator.

**336.7  DUTIES AND RESPONSIBILITIES**

Chaplains assist the Department, its members, and the community, as needed. Chaplains should be placed only in assignments or programs that are consistent with their knowledge, skills, abilities and the needs of the Department.

All chaplains will be assigned to duties by the Senior Chaplain or the authorized designee.

Chaplains may not proselytize or attempt to recruit members of the Department or the public into a religious affiliation while representing themselves as chaplains with this department. If there is any question as to the receiving person's intent, chaplains should verify that the person is desirous of spiritual counseling or guidance before engaging in such discussion.

Chaplains may not accept gratuities for any service or any subsequent actions or follow-up contacts that were provided while functioning as a chaplain for the Redding Police Department.

336.7.1  COMPLIANCE

Chaplains are volunteer members of this department, and except as otherwise specified within this policy, are required to comply with the Volunteer Program Policy and other applicable policies.

336.7.2  OPERATIONAL GUIDELINES

(a)   Chaplains will be scheduled to be on-call.

(b)   Generally, each chaplain will serve with Redding Police Department personnel a minimum of eight hours per month.

(c)   At the end of each month, the chaplain will complete a monthly statistics report and submit it to the Senior Chaplain who records the information to be presented to the Chief of Police, Program Manager, Chaplain Board members, and community or civic groups if requested.

(d)   Chaplains shall be permitted to ride with officers during any shift and observe Redding Police Department operations, provided the Watch Commander has been notified and has approved the activity.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000715

# Redding Police Department

RPD Policy Manual

*Chaplains*

(e)   Chaplains shall not be evaluators of members of the Department.

(f)   In responding to incidents, a chaplain shall never function as an officer.

(g)   When responding to in-progress calls for service, chaplains may be required to stand-by in a secure area until the situation has been deemed safe.

(h)   Chaplains shall serve only within the jurisdiction of the Redding Police Department and Redding Fire Department, unless otherwise authorized by the Chief of Police or the authorized designee.

(i)   The Senior Chaplain shall have access to current department member rosters, addresses, telephone numbers, duty assignments and other information that may assist in his/her duties. Such information will be considered confidential and the Senior Chaplain will exercise appropriate security measures to prevent the distribution of the data. Information will be provided to other chaplains on an as needed basis.

336.7.3   CALL-OUT PROCEDURES FOR CHAPLAINS

(a)   When an officer or supervisor requests a chaplain call-out via SHASCOM, the following directions must be given:

1.   Location to respond.

2.   Chaplain point of contact at the scene.

(b)   SHASCOM should contact the scheduled on-call Chaplain in the following manner:

1.   By calling chaplain on call phone, 524-2275.

2.   Telephone contact to the secondary number, 941-9792.  If no response to a cell phone.

(c)   Advise on-scene officer of Chaplain's response and ETA.

1.   Note times of contact, en route to scene, arrival, and finish the assignment.

2.   Give Chaplain a brief description of the type of call, directions to the scene, and person to contact upon arrival.

(d)   Chaplains will respond to the call out in the following manner:

1.   Obtain information regarding call location, circumstances, and contact person.

2.   Advise SHASCOM by radio when: en route to the scene, arrival, change of location, and call completed.

3.   On arrival contact the person, officer or supervisor as indicated by SHASCOM.

4.   On arrival, the assigned Chaplain should assess the need for additional Chaplains.  They should be called out directly by the on-scene Chaplain.

(e)   The assigned chaplain shall ensure the call out is documented as follows:

1.   Complete chaplains contact form and return to Senior Chaplain.

2.   Problems with the call out shall be forwarded to the Senior Chaplain.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000716

## Redding Police Department
RPD Policy Manual

*Chaplains*

---

(f)   The following are examples of call out situations, but do not include all possible situations:

  1.   Officer injury/death/accident.

  2.   Death notifications.

  3.   SIDS death.

  4.   Suicides.

  5.   Homicides.

  6.   Major disasters - natural or accidental.

  7.   Major injury vehicle collisions.

  8.   Death scenes.

  9.   Major structure fires.

### 336.7.4   ASSISTING DEPARTMENT MEMBERS
The responsibilities of a chaplain related to department members include, but are not limited to:

(a)   Assisting in making notification to families of members who have been seriously injured or killed and, after notification, responding to the hospital or home of the member.

(b)   Visiting sick or injured members in the hospital or at home.

(c)   Attending and participating, when requested, in funerals of active or retired members.

(d)   Serving as a resource for members when dealing with the public in incidents, such as accidental deaths, suicides, suicidal subjects, serious accidents, drug and alcohol abuse and other such situations that may arise.

(e)   Providing practical, emotional, and spiritual for members and their families.

(f)   Being alert to the needs of members and their families.

### 336.7.5   ASSISTING THE DEPARTMENT
The responsibilities of a chaplain related to this department include, but are not limited to:

(a)   Assisting members in the diffusion of a conflict or incident, when requested.

(b)   Responding to natural and accidental deaths, suicides and attempted suicides, family disturbances and any other incident that in the judgment of the Watch Commander or supervisor aids in accomplishing the mission of the Department.

(c)   Responding to all major disasters, such as natural disasters, bombings and similar critical incidents.

(d)   Being on-call and, if possible, on-duty during major demonstrations or any public function that requires the presence of a large number of department members.

(e)   Attending department and academy graduations, ceremonies and social events and offering invocations and benedictions, as requested.

(f)   Participating in in-service training classes.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000717

# Redding Police Department
RPD Policy Manual

(g)   Willingness to train others to enhance the effectiveness of the Department.

## 336.7.6 ASSISTING THE COMMUNITY
The duties of a chaplain related to the community include, but are not limited to:

(a)   Fostering familiarity with the role of law enforcement in the community.

(b)   Providing an additional link between the community, other chaplain coordinators and the Department.

(c)   Providing liaison with various civic, business and religious organizations.

(d)   Promptly facilitating requests for representatives or leaders of various denominations.

(e)   Assisting the community in any other function as needed or requested.

(f)   Making referrals in cases where specialized attention is needed or in cases that are beyond the chaplain's ability to assist.

## 336.7.7 CHAPLAIN MEETINGS
All chaplains are required to attend scheduled meetings. Any absences must be satisfactorily explained to the Senior Chaplain.

## 336.8 PRIVILEGED COMMUNICATIONS
No person who provides chaplain services to members of the Department may work or volunteer for the Redding Police Department in any capacity other than that of chaplain.

Department chaplains shall be familiar with state evidentiary laws and rules pertaining to the limits of the clergy-penitent, psychotherapist-patient and other potentially applicable privileges and shall inform members when it appears reasonably likely that the member is discussing matters that are not subject to privileged communications. In such cases, the chaplain should consider referring the member to a non-department counseling resource.

No chaplain shall provide counsel to or receive confidential communications from any Redding Police Department  member concerning an incident personally witnessed by the chaplain or concerning an incident involving the chaplain.

## 336.9 TRAINING
The Department will establish a minimum number of training hours and standards for department chaplains. The training, as approved by a certified and credentialed instructor through ICPC, may include, but is not limited to:

• Stress management

• Death notifications

• Symptoms of post-traumatic stress

• Burnout for members of law enforcement and chaplains

• Legal liability and confidentiality

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000718

# Redding Police Department
RPD Policy Manual

## *Chaplains*

- Ethics
- Responding to crisis situations
- The law enforcement family
- Substance abuse
- Suicide
- Officer injury or death
- Sensitivity and diversity

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Child and Dependent Adult Safety

### 337.1  PURPOSE AND SCOPE
This policy provides guidelines to ensure that children and dependent adults are not left without appropriate care in the event their caregiver or guardian is arrested or otherwise prevented from providing care due to actions taken by members of this department (Penal Code § 833.2(a)).

This policy does not address the actions to be taken during the course of a child abuse or dependent adult investigation. These are covered in the Child Abuse and Adult Abuse policies.

### 337.2  POLICY
It is the policy of this department to mitigate, to the extent reasonably possible, the stressful experience individuals may have when their parent or caregiver is arrested. The Redding Police Department will endeavor to create a strong, cooperative relationship with local, state and community-based social services to ensure an effective, collaborative response that addresses the needs of those affected, including call-out availability and follow-up responsibilities.

### 337.3  PROCEDURES DURING AN ARREST
When encountering an arrest or prolonged detention situation, officers should make reasonable attempts to determine if the arrestee is responsible for children or dependent adults. In some cases this may be obvious, such as when children or dependent adults are present. However, officers should inquire if the arrestee has caregiver responsibilities for any children or dependent adults who are without appropriate supervision. The following steps should be taken (Penal Code § 13517.7(b)(1)):

    (a)    Inquire about and confirm the location of any children or dependent adults.

    (b)    Look for evidence of children and dependent adults. Officers should be mindful that some arrestees may conceal the fact that they have a dependent for fear the individual may be taken from them.

    (c)    Consider inquiring of witnesses, neighbors, friends and relatives of the arrestee as to whether the person is responsible for a child or dependent adult.

Whenever reasonably possible, officers should take reasonable steps to accomplish the arrest of a parent, guardian or caregiver out of the presence of his/her child or dependent adult. Removing children or dependent adults from the scene in advance of the arrest will generally ensure the best outcome for the individual.

Whenever it is safe to do so, officers should allow the parent or caregiver to assure children or dependent adults that they will be provided care. If this is not safe or if the demeanor of the parent or caregiver suggests this conversation would be non-productive, the officer at the scene should explain the reason for the arrest in age-appropriate language and offer reassurance to the child or dependent adult that he/she will receive appropriate care.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000720

# Redding Police Department

RPD Policy Manual

*Child and Dependent Adult Safety*

---

### 337.3.1   AFTER AN ARREST

Whenever an arrest is made, the officer should take all reasonable steps to ensure the safety of the arrestee's disclosed or discovered children or dependent adults.

Officers should allow the arrestee reasonable time to arrange for care of children and dependent adults. Temporary placement with family or friends may be appropriate. However, any decision should give priority to a care solution that is in the best interest of the child or dependent adult. In such cases the following guidelines should be followed:

  (a)   If possible allow the person reasonable time to arrange for the care of children and dependent adults with a responsible party, as appropriate.

  (b)   Officers should respect the parent or caregiver's judgment regarding arrangements for care.

  (a)   Except when a court order exists limiting contact, the officer should attempt to locate and place children or dependent adults with the non-arrested parent, guardian or caregiver.

  (c)   Provide for the immediate supervision of children or dependent adults until an appropriate caregiver arrives.

  (d)   Notify Child Protective Services or the Adult Protective Services, if appropriate.

  (e)   Document the temporary placement resolution in the police report, including the names of those in temporary placement and the person/agency taking possession.

If children or dependent adults are at school or another known location outside the household at the time of arrest, the arresting officer should attempt to contact the school or other known location and inform the principal or appropriate responsible adult of the caregiver's arrest and of the arrangements being made for the care of the arrestee's dependent.

### 337.3.2   DURING THE BOOKING PROCESS

During the booking process, the arrestee shall be allowed to make additional telephone calls to relatives or other responsible individuals as is reasonably necessary to arrange for the care of any child or dependent adult. These telephone calls should be given as soon as practicable and are in addition to any other telephone calls allowed by law (Penal Code § 851.5(c)).

If an arrestee is unable to resolve the care of any child or dependent adult through this process, the officer shall contact Child Protective Services or Adult Protective Services.

### 337.4   DEPENDENT WELFARE SERVICES

Whenever an arrestee is unwilling or incapable of arranging for the appropriate care of any child or dependent adult, the handling officer should contact the appropriate welfare service or other department-approved social service to determine whether protective custody is appropriate (Welfare and Institutions Code § 305).

Only when other reasonable options are exhausted should a child or dependent adult be transported to the police facility, transported in a marked patrol car or taken into formal protective custody.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000721

# Redding Police Department

RPD Policy Manual

*Child and Dependent Adult Safety*

Under no circumstances should a child or dependent adult be left unattended or without appropriate care.

## 337.5  TRAINING

The Training Sergeant is responsible to ensure that all personnel of this department who may be involved in arrests affecting children or dependent adults receive approved POST-approved training on effective safety measures when a parent, guardian or caregiver is arrested (Penal Code § 13517.7).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000722

# Service Animals

## 338.1  PURPOSE AND SCOPE

The purpose of this policy is to provide the guidelines necessary to ensure the rights of individuals who use service animals to assist with disabilities are protected in accordance with Title II of the Americans with Disabilities Act of 1990 (ADA).

### 338.1.1  DEFINITIONS

Definitions related to this policy include:

**Service animal** - A dog that is trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual or other mental disability. The work or tasks performed by a service animal must be directly related to the individual's disability (28 CFR 35.104; Health and Safety Code § 113903).

Service animal also includes a miniature horse if the horse is trained to do work or perform tasks for people with disabilities, provided the horse is housebroken, is under the handler's control, the facility can accommodate the horse's type, size and weight, and the horse's presence will not compromise legitimate safety requirements necessary for safe operation of the facility (28 CFR 35.136(i)).

## 338.2  POLICY

It is the policy of the Redding Police Department to provide services and access to persons with service animals in the same manner as those without service animals. Department members shall protect the rights of persons assisted by service animals in accordance with state and federal law.

## 338.3  IDENTIFICATION AND USE OF SERVICE ANIMALS

Some service animals may be readily identifiable. However, many do not have a distinctive symbol, harness or collar.

Service animals may be used in a number of ways to provide assistance, including:

- Guiding people who are blind or have low vision.

- Alerting people who are deaf or hard of hearing.

- Retrieving or picking up items, opening doors or flipping switches for people who have limited use of their hands, arms or legs.

- Pulling wheelchairs.

- Providing physical support and assisting with stability and balance.

- Doing work or performing tasks for persons with traumatic brain injury, intellectual disabilities or psychiatric disabilities, such as reminding a person with depression to take medication.

- Alerting a person with anxiety to the onset of panic attacks, providing tactile stimulation to calm a person with post-traumatic stress disorder, assisting people with

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000723

# Redding Police Department

RPD Policy Manual

schizophrenia to distinguish between hallucinations and reality, and helping people with traumatic brain injury to locate misplaced items or follow daily routines.

## 338.4   MEMBER RESPONSIBILITIES

Service animals that are assisting individuals with disabilities are permitted in all public facilities and areas where the general public is allowed. Department members are expected to treat individuals with service animals with the same courtesy and respect that the Redding Police Department affords to all members of the public (28 CFR 35.136).

### 338.4.1   INQUIRY

If it is apparent or if a member is aware that an animal is a service animal, the individual generally should not be asked any questions as to the status of the animal. If it is unclear whether an animal meets the definition of a service animal, the member should ask the individual only the following questions (28 CFR 35.136(f)):

- Is the animal required because of a disability?

- What task or service has the service animal been trained to perform?

If the individual explains that the animal is required because of a disability and has been trained to work or perform at least one task, the animal meets the definition of a service animal and no further questions as to the animal's status should be asked. The individual should not be questioned about his/her disability nor should the person be asked to provide any license, certification or identification card for the service animal.

### 338.4.2   CONTACT

Service animals are not pets. Department members should not interfere with the important work performed by a service animal by talking to, petting or otherwise initiating contact with a service animal.

### 338.4.3   REMOVAL

If a service animal is not housebroken or exhibits vicious behavior, poses a direct threat to the health of others, or unreasonably disrupts or interferes with normal business operations, an officer may direct the handler to remove the animal from the premises. Barking alone is not a threat nor does a direct threat exist if the person takes prompt, effective action to control the service animal (28 CFR 35.136(b)).

Each incident must be considered individually and past incidents alone are not cause for excluding a service animal. Removal of a service animal may not be used as a reason to refuse service to an individual with disabilities. Members of this department are expected to provide all services as are reasonably available to an individual with a disability, with or without a service animal.

### 338.4.4   COMPLAINTS

When handling calls of a complaint regarding a service animal, members of this department should remain neutral and should be prepared to explain the ADA requirements concerning service

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000724

# Redding Police Department

RPD Policy Manual

## *Service Animals*

animals to the concerned parties. Businesses are required to allow service animals to accompany their handlers into the same areas that other customers or members of the public are allowed (28 CFR 36.302).

Absent a violation of law independent of the ADA, officers should take no enforcement action beyond keeping the peace. Individuals who believe they have been discriminated against as a result of a disability should be referred to the Civil Rights Division of the U.S. Department of Justice (DOJ).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000725

# Volunteer Program

## 339.1  PURPOSE AND SCOPE

It is the policy of this Department to use qualified volunteers for specified tasks and duties in order to create efficiencies for the Department and improve services to the community. Volunteers are intended to supplement and support, rather than supplant, sworn officers and civilian personnel. Volunteers can be an important part of any organization and are proven to be a valuable asset to law enforcement agencies. Volunteers help to increase Departmental responsiveness, delivery of services and information input and provide new program opportunities. In addition, volunteers bring new skills and expertise to the Department and prompt new enthusiasm.

### 339.1.1  DEFINITION OF VOLUNTEER

An individual who performs a service for the Department without promise, expectation or receipt of compensation for services rendered.

## 339.2  VOLUNTEER MANAGEMENT

### 339.2.1  VOLUNTEER COORDINATOR

The Department Volunteer Coordinator shall be appointed by the Administration Division Commander. The function of the Department Volunteer Coordinator is to provide a central coordinating point for the Department Volunteers.

City Volunteer Coordinator with the City of Redding Personnel Department. The Volunteer Coordinator, or his/her designee, shall be responsible for the following:

    (a)    Recruiting, selecting and training qualified volunteers for various positions.

    (b)    Facilitating the implementation of new volunteer activities and assignments.

    (c)    Administering discipline when warranted.

    (d)    Maintaining liaison with the City Volunteer Coordinator.

### 339.2.2  RECRUITMENT

Volunteers should be recruited on a continuous and ongoing basis consistent with Department policy on equal opportunity nondiscriminatory employment. A primary qualification for participation in the application process should be an interest in, and an ability to assist the Department in serving the public.

Requests for volunteers should be submitted in writing by interested staff to the City of Redding Volunteer Coordinator through the Department Volunteer Coordinator. A complete position description and a requested time-frame should be included in the request.

### 339.2.3  SCREENING

All prospective volunteers should complete the volunteer application form with the City of Redding Volunteer Coordinator in the Personnel Department.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

---

*Volunteer Program*

---

A documented background investigation shall be completed on each volunteer applicant and shall include, but not necessarily be limited to, the following:

(a) Traffic and criminal background check. Fingerprints shall be obtained from all applicants and processed through the California Criminal Information Index.

(b) Employment

(c) References

### 339.2.4  TRAINING
Volunteers will be provided with an orientation program to acquaint them with the Department, personnel, policies and procedures that have a direct impact on their work assignment.

Volunteers should receive position-specific training to ensure they have adequate knowledge and skills to complete tasks required by the position and should receive periodic ongoing training as deemed appropriate by their supervisor or the Volunteer Coordinator.

Training should reinforce to volunteers that they may not intentionally represent themselves as, or by omission infer that they are sworn officers or other full-time members of the Department. They shall always represent themselves as volunteers.

All volunteers shall comply with the rules of conduct and with all orders and directives, either oral or written, issued by the Department.

### 339.2.5  FITNESS FOR DUTY
No volunteer shall report to work or be on-duty when his/her judgment or physical condition has been impaired by alcohol, medication, other substances, illness or injury.

Volunteers shall report to their supervisor any changes in status that may affect their ability to fulfill their duties. This includes, but is not limited to, the following:

(a) Driver license

(b) Medical condition

(c) Arrests

(d) Criminal investigations

All volunteers shall adhere to the guidelines set forth by this department regarding drug and alcohol use.

### 339.2.6  DRESS CODE
As representatives of the Department, volunteers are responsible for presenting a professional image to the community. Volunteers shall dress as outlined in the Department Uniform Manual.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000727

# Redding Police Department

RPD Policy Manual

*Volunteer Program*

### 339.3  CONFIDENTIALITY

With appropriate security clearance, volunteers may have access to confidential information such as criminal histories or investigative files. Unless otherwise directed by a supervisor or Departmental policy, all information shall be considered confidential. Only that information specifically identified and approved by authorized personnel shall be released. Confidential information shall be given only to persons who have a need and a right to know as determined by departmental policy and supervisory personnel.

Volunteers shall not address public gatherings, appear on radio or television, prepare any article for publication, act as correspondents to a newspaper or other periodical, release or divulge any information concerning the activities of the Department, or maintain that they represent the Department in such matters without permission from the proper Department personnel.

### 339.4  PROPERTY AND EQUIPMENT

Volunteers will be issued an identification card that must be worn at all times while on-duty. Any fixed and portable equipment issued by the Department shall be for official and authorized use only. Any property or equipment issued to a volunteer shall remain the property of the Department and shall be returned at the termination of service.

#### 339.4.1   VEHICLE USE

Volunteers assigned to duties that require the use of a vehicle must first complete the following:

(a)   A driving safety briefing with a Department Driving Instructor.

(b)   Verification that the volunteer possesses a valid California Driver License.

(c)   Verification that the volunteer carries current vehicle insurance.

The Volunteer Coordinator should ensure that all volunteers receive safety briefing updates and license and insurance verification at least once a year.

When operating a Department vehicle, volunteers shall obey all rules of the road, including seat belt requirements. Smoking is prohibited in all Department vehicles.

Volunteers should not operate a marked patrol car unless there is a prominently placed sign indicating that it is out of service and are not authorized to operate a Department vehicle Code-3.

#### 339.4.2   RADIO AND MDC USAGE

Volunteers shall successfully complete CLETS and radio procedures training prior to using the police radio or MDC and comply with all related provisions. The Volunteer Coordinator should ensure that radio and CLETS training is provided for volunteers whenever necessary.

### 339.5  DISCIPLINARY PROCEDURES/TERMINATION

A volunteer may be removed from the volunteer program at the discretion of the Chief of Police, the Department Volunteer Coordinator, or the City Volunteer Coordinator. Volunteers shall have no property interests in their continued appointment. However, if a volunteer is removed for alleged misconduct, the volunteer will be afforded an opportunity solely to clear his/her name through a

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000728

Redding Police Department

RPD Policy Manual

*Volunteer Program*

liberty interest hearing which shall be limited to a single appearance before the Chief of Police or authorized designee.

Volunteers may resign from volunteer service with the Department at any time. It is requested that volunteers who intend to resign provide advance notice of their departure and a reason for their decision.

## 339.6 EVALUATION

An evaluation of the overall volunteer program will be conducted on an annual basis by the Volunteer Coordinator. Regular evaluations should be conducted with volunteers to ensure the best use of human resources available, to ensure personnel problems can be identified and dealt with promptly and fairly, and to ensure optimum satisfaction on the part of volunteers.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000729

**Redding Police Department**

RPD Policy Manual

# Off-Duty Law Enforcement Actions

### 340.1  PURPOSE AND SCOPE
The decision to become involved in a law enforcement action when off-duty can place an officer as well as others at great risk and must be done with careful consideration. This policy is intended to provide guidelines for officers of the Redding Police Department with respect to taking law enforcement action while off-duty.

### 340.2  POLICY
Initiating law enforcement action while off-duty is generally discouraged. Officers should not attempt to initiate enforcement action when witnessing minor crimes, such as suspected intoxicated drivers, reckless driving or minor property crimes. Such incidents should be promptly reported to the appropriate law enforcement agency.

Any sworn member of this Department who becomes aware of an incident or circumstance that he/she reasonably believes poses an imminent threat of serious bodily injury or death, or significant property damage may take reasonable action to minimize the threat.

When public safety or the prevention of major property damage requires immediate action, officers should first consider reporting and monitoring the activity and only take direct action as a last resort.

### 340.3  FIREARMS
Officers of this Department should carry firearms while off-duty in accordance with federal regulations and Department policy. All firearms and ammunition must meet guidelines as described in the Department Firearms Policy. When carrying firearms while off-duty officers shall also carry their Department-issued identification.

Firearms shall not be carried by any officer who has consumed an amount of an alcoholic beverage or taken any drugs or medications or any combination thereof that render the officer intoxicated.

### 340.4  DECISION TO INTERVENE
There is no legal requirement for off-duty officers to take law enforcement action. However, should officers decide to intervene, they must evaluate whether the action is necessary or desirable, and should take into consideration the following:

(a)  The tactical disadvantage of being alone and the fact there may be multiple or hidden suspects.

(b)  The inability to communicate with responding units.

(c)  The lack of equipment, such as handcuffs, OC or baton.

(d)  The lack of cover.

(e)  The potential for increased risk to bystanders if the off-duty officer were to intervene.

# Redding Police Department

RPD Policy Manual

*Off-Duty Law Enforcement Actions*

    (f)    Unfamiliarity with the surroundings.

    (g)    The potential for the off-duty officer to be misidentified by other peace officers or members of the public.

Officers should consider waiting for on-duty uniformed officers to arrive, and gather as much accurate intelligence as possible instead of immediately intervening.

### 340.4.1   INTERVENTION PROCEDURE

If involvement is reasonably necessary the officer should attempt to call or have someone else call 9-1-1 to request immediate assistance. The dispatcher should be informed that an off-duty officer is on-scene and should be provided a description of the officer if possible.

Whenever practicable, the officer should loudly and repeatedly identify him/herself as a police officer until acknowledged. Official identification should also be displayed.

### 340.4.2   INCIDENTS OF PERSONAL INTEREST

Officers should refrain from handling incidents of personal interest, (e.g., family or neighbor disputes) and should remain neutral. In such circumstances officers should call the responsible agency to handle the matter.

### 340.4.3   NON-SWORN RESPONSIBILITIES

Non-sworn personnel should not become involved in any law enforcement actions while off-duty except to notify the local law enforcement authority and remain at the scene, if safe and practicable.

## 340.5   REPORTING

Any off-duty officer who engages in any law enforcement activity, regardless of jurisdiction, shall notify the Watch Commander as soon as practicable. The Watch Commander shall determine whether a report should be filed by the employee.

Officers should cooperate fully with the agency having jurisdiction in providing statements or reports as requested or as appropriate.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000731

**Policy**

**341**

**Redding Police Department**

RPD Policy Manual

# Gun Violence Restraining Orders

## 341.1  PURPOSE AND SCOPE

The purpose of this policy is to provide guidelines for petitioning and serving gun violence restraining orders and accounting for the firearms obtained pursuant to those orders.

### 341.1.1  DEFINITIONS

Definitions related to this policy include:

**Gun violence restraining order** - Civil restraining order prohibiting a named person from controlling, owning, purchasing, possessing, receiving, or otherwise having custody of any firearms or ammunition, including an ammunition magazine (Penal Code § 18100).

## 341.2  POLICY

It is the policy of the Redding Police Department to petition and serve gun violence restraining orders in compliance with state law and to properly account for firearms and ammunition obtained by the Department pursuant to such orders.

## 341.3  GUN VIOLENCE RESTRAINING ORDERS

An officer who reasonably believes a person is a present danger to him/herself or another person by controlling, owning, purchasing, possessing, receiving, or otherwise having custody of a firearm may request permission from his/her supervisor to petition the court for a gun violence restraining order.

Officers petitioning the court should use the forms established by the Judicial Council (Penal Code § 18105). The petition should describe the number, types, and locations of any firearms and ammunition that the officer believes to be possessed or controlled by the person (Penal Code § 18107). The petition should also describe why less-restrictive alternatives are ineffective or inadequate for the circumstances (Penal Code § 18125; Penal Code § 18150; Penal Code § 18175).

If it is not practical under the circumstances to submit a written petition, an officer may orally request an order, and then prepare and sign a declaration under penalty of perjury that recites the oral statements provided to the judicial officer and memorialize the order of the court on the appropriate Judicial Council form (Penal Code § 18140).

## 341.4  SERVICE OF GUN VIOLENCE RESTRAINING ORDERS

An officer serving any gun violence restraining order shall:

(a) Verbally ask the subject of the order if he/she has any firearm, ammunition, or magazine in his/her possession or under his/her custody or control (Penal Code § 18160).

(b) Request that any firearms or ammunition be immediately surrendered and issue a receipt for the surrendered items (Penal Code § 18120).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000732

# Redding Police Department

RPD Policy Manual

*Gun Violence Restraining Orders*

    (c)    Take into temporary custody any firearm or other deadly weapon discovered in plain view or pursuant to consent or other lawful search (Penal Code § 18250).

    (d)    Inform the restrained person of any scheduled hearing regarding the order (Penal Code § 18160).

    (e)    Transmit the original proof of service form to the issuing court as soon as practicable but within one business day (Penal Code § 18115).

    (f)    As soon as practicable, but by the end of his/her shift, submit proof of service to the Records Supervisor for prompt entry into the California Restraining and Protective Order System (Penal Code § 18115).

The officer should also inform the restrained person that he/she is required, within 24 hours, to surrender to a law enforcement agency any other firearms and ammunition he/she owns or that are in his/her custody or control or sell them to a firearms dealer. This notification should be documented.

All firearms and ammunition collected shall be handled and booked in accordance with the Property and Evidence Policy.

## 341.4.1  SERVICE OF ORAL GUN VIOLENCE RESTRAINING ORDERS

If a gun violence restraining order is obtained orally, the officer shall (Penal Code § 18140):

    (a)    Serve the order on the restrained person in the manner outlined above, if the restrained person can reasonably be located.

    (b)    File a copy of the order with the court as soon as practicable after issuance.

    (c)    Ensure the order is provided to the Records Division for entry into the computer database system for protective and restraining orders  maintained by the Department of Justice.

## 341.5  SEARCH WARRANTS

If a person who has been served with a gun violence restraining order refuses to surrender any firearm or ammunition, the officer should consider whether to seek a search warrant. If a search warrant is to be obtained, the preparation and service of the search warrant shall be done in accordance with the Warrant Service Policy. Additionally, (Penal Code § 1542.5):

    (a)    The officer serving the warrant shall take custody of any firearm or ammunition that is controlled, possessed or owned by the person who is the subject of the gun violence restraining order, including any discovered pursuant to the warrant, a consensual search or other lawful search.

    (b)    If the location being searched is jointly occupied and the firearm or ammunition is owned by a person other than the restrained person, the firearm or ammunition should not be seized if the following conditions are met:

        1.    The firearm or ammunition can be stored in a manner that does not allow the restrained person to have control or access.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000733

# Redding Police Department

RPD Policy Manual

*Gun Violence Restraining Orders*

2.  There is no evidence that the owner unlawfully possesses the firearm or ammunition.

(c)  If a locked gun safe belonging to someone other than the subject of a gun violence restraining order is discovered, the officer shall not search the contents of the safe unless the owner consents or there is a valid search warrant for the safe. Any search of the safe must be done in the owner's presence.

## 341.6  RECORDS SUPERVISOR RESPONSIBILITIES

The Records Supervisor is responsible for ensuring:

(a)  Proof of service of any gun violence restraining order served by an officer or received from the clerk of the court is entered in the computer database system for protective and restraining orders maintained by the Department of Justice within one business day of service if served by an officer, or within one business day of receipt of proof of service if served by a person other than a law enforcement officer (Penal Code § 18115).

(b)  Oral orders are entered into the California Restraining and Protective Order System (Penal Code § 18140).

(c)  Copies of receipts of surrendered firearms or ammunition issued by other agencies for gun violence restraining orders issued by the Department are properly maintained (Penal Code § 18120).

## 341.7  COURT-ORDERED FIREARMS AND AMMUNITION SURRENDERS

Authorized members shall accept firearms and ammunition from any individual who is the subject of a gun violence restraining order. The member receiving any firearm or ammunition shall:

(a)  Record the individual's name, address and telephone number.

(b)  Record the serial number of the firearm.

(c)  Prepare an incident report and property report.

(d)  Provide a property receipt to the individual who surrendered the firearms and ammunition.

(e)  Package and submit the firearms and ammunition in accordance with the Property and Evidence Policy.

## 341.8  RELEASE OF FIREARMS AND AMMUNITION

Firearms and ammunition that were taken into temporary custody or surrendered pursuant to a gun violence restraining order shall be returned to the restrained person upon the expiration of the order and in accordance with Penal Code § 18120 and the Property and Evidence Policy.

COR (McLeod)  000734

# Native American Graves Protection and Repatriation

### 342.1  PURPOSE AND SCOPE
This policy is intended ensure the protection and security of ancient or historic grave sites, including notification of personnel responsible for cultural items, in compliance with the Native American Graves Protection and Repatriation Act (NAGPRA) (25 USC § 3001 et seq.).

#### 342.1.1  DEFINITIONS
Definitions related to this policy include (43 CFR 10.2):

**Funerary objects and associated funerary objects** - Objects that, as part of the death rite or ceremony of a culture, are reasonably believed to have been placed intentionally at the time of death or later with or near individual human remains, or that were made exclusively for burial purposes or to contain human remains.

**Native American human remains** - The physical remains of the body of a person of Native American ancestry.

**Objects of cultural patrimony** - Objects having ongoing historical, traditional or cultural importance that is central to the Native American group or culture itself and therefore cannot be appropriated or conveyed by any individual, including members of the Native American group or Native Hawaiian organization. Such objects must have been considered inalienable by the Native American group at the time the object was separated from the group.

**Sacred objects** - Specific ceremonial objects needed by traditional Native American religious leaders for the practice of traditional Native American religions.

### 342.2  POLICY
It is the policy of the Redding Police Department that the protection of Native American human remains, funerary objects, associated funerary objects, sacred objects or objects of cultural patrimony is the responsibility of all members. Such protection includes minimizing destruction, contamination, inadvertent disruption or complicated custody transfer processes.

### 342.3  COMPLIANCE WITH THE NATIVE AMERICAN GRAVES PROTECTION AND REPATRIATION ACT
Upon discovery or arrival upon a scene where it reasonably appears that a Native American grave, human remains, funerary objects, associated funerary objects, sacred objects or objects of cultural patrimony are exposed or otherwise unsecured, members shall secure the site in the same manner as a crime scene. All activity at the scene other than scene preservation activity must cease (43 CFR 10.4).

No photography or video recording may be permitted by the media or any group or individual who may wish to exhibit the remains.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000735

# Redding Police Department

RPD Policy Manual

## *Native American Graves Protection and Repatriation*

Without delay, the appropriate agency or group shall be notified to respond and take control of the scene. These include the following (43 CFR 10.4):

- Federal land - Appropriate agency at the U.S. Department of the Interior or U.S. Department of Agriculture

- State land/Private land - Coroner, when appropriate (Health and Safety Code § 7050.5)

- Tribal land - Responsible Indian tribal official

## 342.4  EVIDENCE AND PROPERTY

If the location has been investigated as a possible homicide scene prior to identification as a NAGPRA site, investigators shall work with other appropriate agencies and individuals to ensure the proper transfer and repatriation of any material collected. Members shall ensure that any remains or artifacts located at the site are expediently processed (43 CFR 10.6).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Drug Recognition Expert Program (DRE)

## 343.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for the Redding Police Department's Drug Recognition Expert (DRE) program.The DRE program will be the responsibility of the Field Operations Commander.

### 343.1.1  DEFINITIONS
A drug recognition expert or drug recognition evaluator (DRE) is a police officer trained to recognize impairment in drivers under the influence of drugs other than, or in addition to, alcohol. The International Association of Chiefs of Police (IACP) coordinates the International Drug Evaluation and Classification (DEC) Program with support from the National Highway Traffic Safety Administration (NHTSA) of the U.S. Department of Transportation.

## 343.2  DRE PROGRAM STRUCTURE
The DRE program will consist of a Program Manager (Lieutenant), Supervisor (Sergeant or Corporal), and DRE trained officers.The DRE Supervisor will also serve as the Department's DRE coordinator.Officers on the DRE team are expected to maintain their certification if they wish to stay active in the program.

## 343.3  PROCEDURES
In driving cases, the initial detaining officer should make the decision to arrest the driver based on all relevant factors including, but not limited to: driving pattern, objective signs of intoxication, statements made by the driver or other witnesses, physical evidence located, and performance on the field sobriety tests.If the initial detaining officer suspects drug use or the driver's blood alcohol level is inconsistent with the demonstrated impairment, that officer may request the assistance of a DRE.

A DRE trained officer may be called out at the discretion of the on-duty supervisor in the case of a major injury or fatal traffic collision, where drug or alcohol use is suspected among one of the involved parties, or any other circumstance deemed appropriate by the on-duty supervisor.

## 343.4  REPORTING
All DRE evaluations shall be documented using the CHP-202DRE form.This form shall only be used by members of the DRE team.The DRE report shall be submitted as a supplement to the original crime report and the evaluation logged into the DRE tracking system as required.Generally, the DRE Supervisor will review DRE supplemental reports.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Policy
**344**

# Child Abduction/Endangered Missing Children

## 344.1  PURPOSE AND SCOPE

This policy established guidelines for and responsibilities of officers investigating reports of abduction/kidnapping of a child 17 years old or younger or circumstances in which a child 17 years or younger is missing and in imminent danger of sexual abuse, serious bodily injury, or death.

## 344.2  INITIAL INVESTIGATION

1. Responding officers should immediately respond to the scene of the report to:

   (a) Interview the reporting party and confirm the incident involves child abduction/kidnapping or another circumstance in which the child is in imminent danger of sexual abuse, serious bodily injury, or death.

   (b) identify and interview the person who last had contact with the missing child, along with other witnesses at the scene.

   (c) Identify the parameters of the initial search.

   (d) Obtain comprehensive information on the suspect, including suspect vehicle information.

2. If the reporting party is not a parent or legal guardian, an officer should contact the missing child's parents or a legal guardian as soon as possible to:

   (a) Verify the child is missing.

   (b) Obtain a description of the missing child, including recent photographs and video.

   (c) Confirm the child's custody status.

   (d) Determine if the child has access to a cellular telephone, other electronic communications devices, an online computer, an e-mail account, or any internet social networking accounts.

   (e) Ascertain if the child has a passport and the passport's location.

3. One of the responding officers shall make the following notifications:

   (a) Contact SHASCOM to make a local broadcast to law enforcement agencies regarding the incident.Update the broadcast as needed.

   (b) Notify the on-duty Field Operations supervisor of the incident.

   (c) Contact the Services Division and request an immediate "at-risk missing person" entry into the NCIC Missing Persons File.

   (d) If there is an identified suspect, notify the Services Division and request an immediate entry in the NCIC Wanted Person File, using the Child Abduction flag if appropriate.

   (e) Consider use of the Communicator system at SHASCOM, if appropriate.

   (f) Conduct a thorough search of the scene.If necessary, secure the location of the disappearance as a potential crime scene.Conduct a search of the child's home, even

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000738

Redding Police Department

RPD Policy Manual

*Child Abduction/Endangered Missing Children*

if the child was reported missing at another location. Secure items which might have evidentiary value, including items which can be used to track the victim's scent or items which may contain the child's DNA.

## 344.3  SUPERVISOR RESPONSIBILITIES

(a)   The Field Operations supervisor should respond to the scene and obtain a briefing from the primary officer or other officers a the scene.

(b)   Determine if additional personnel and resources are needed to assist in the investigation.

(c)   Consider use of the AMBER Alert System or Endangered Missing Advisory (EMA) and follow the procedures listed in Instruction 11-02 (AMBER ALERT SYSTEM).

(d)   Notify an Investigations Division supervisor.

(e)   Establish a command post.

(f)   Organize and coordinate search efforts.

(g)   Assign a liaison officer and chaplain to the victim family.

(h)   Assign a temporary Press Information Officer (PIO) if necessary. Have the PIO meet with any members of the media away from the command post.

## 344.4  INVESTIGATIONS DIVISION RESPONSIBILITIES

(a)   Investigations Division personnel shall be called out for cases of child abduction/ kidnapping or other circumstances in which a child is missing and in imminent danger of sexual abuse, serious bodily injury, or death.

(b)   The lead investigator and/or Investigations Division supervisor should obtain a briefing from Field Operations personnel at the scene.

(c)   The Investigations Division supervisor should relieve the Field Operations supervisor of command of the investigation, if possible.

(d)   Establish a PIO at a location away from the command post. The PIO will coordinate the release of any information to the media or the public with the lead investigator, including information distributed through Critical Reach or the RPD website.

(e)   Investigations Division personnel will coordinate the investigation, including taking the following investigative actions:

1.   Conduct a canvass of people, vehicles, and surveillance systems in the area of disappearance.

2.   Conduct in-depth interviews of the victim's family members.

3.   Review and analyze the information gathered from the beginning of the investigation.

4.   If appropriate, identify sex crime registrants who live or work in the area of the disappearance.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000739

# Redding Police Department
### RPD Policy Manual

*Child Abduction/Endangered Missing Children*

    5.    If an AMBER Alert, EMA, or other media outreach is initiated, establish phone numbers for incoming tips and assessing staff to handle the calls.

    6.    Update the NCIC Missing Person File and Wanted Person File entries as needed.

    7.    Coordinate the preparation and distribution of flyers, including on the Redding Police Department website, if necessary.

(f)    Notify the following agencies of the incident, request assistance as necessary, and coordinate their response:

    1.    Federal Bureau of Investigation (FBI).

    2.    National Center for Missing & Exploited Children (NCMEC), Project ALERT/ Team Adam.

    3.    California Highway Patrol (CHP), including Air Operations.

    4.    Shasta County Sheriff's Department, including the Search and Rescue Team.

    5.    Shasta County District Attorney's Office, Child Abduction Unit.

    6.    Northern California Regional CART (Child Abduction Response Team).

## 344.5  REPORTING/INVESTIGATIVE CHECKLIST

(a)    The personnel responsible for completing reports in these cases shall follow the Missing Persons Policy requirements.

(b)    Officers, investigators, and supervisors shall carry and utilize the **NCMEC Investigative Checklist for First Responders** issued by the Redding Police Department.

## 344.6  RECOVERY/RETURN OF A CHILD

(a)    In cases investigated under this policy, an officer or investigator shall personally verify the return or recovery of any missing child.

(b)    If investigations Division personnel have been called out, an investigator will conduct an interview of the returned child.

(c)    The officer or investigator who interviews the returned child will evaluate whether medical examination or support services are needed, including for the family. The officer or investigator will arrange for such services, as appropriate.

## 344.7  REFERENCES

•    RPD Missing Persons Policy

•    RPD Instruction 11-02 AMBER Alert System

•    NCMEC Law Enforcement Policy and Procedures for the Reports of Missing and Abducted Children (Model Policy)

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000740

Redding Police Department

RPD Policy Manual

*Child Abduction/Endangered Missing Children*

- NCMEC investigative Checklist for First Responders

- NCMEC/OJJDP Missing and Abducted Children: A Law Enforcement Guide to Case Investigation and Program Management

- FBI Child Abduction Response Plan: An Investigative Guide

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Misconduct and Arrest of City Employees

### 345.1   POLICY

It is the policy of this Department to immediately report and thoroughly document misconduct of City employees.

(a)   When a city employee is arrested, the arresting officer shall prepare an arrest report and ensure that the Watch Commander is notified by email and forwarded to the Division Commander and Chief of Police.

(b)   The procedures in paragraph one also apply to any report of a city employee's misconduct, even if an arrest is not made.

(c)   The Chief of Police shall notify the appropriate Department head, the Director of Personnel and the City Manager as early as practical. Should the report involve a Department head, the City Manager shall be notified.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000742

Policy
**346**

# Peer Support Program

## 346.1  PURPOSE AND SCOPE

The purpose of the Redding Police Department Peer Support Program (PSP) is to provide all employees with the opportunity for peer support through times of personal or professional crises. The goals of the program are:

(a)   To provide a readily accessible support network of employees willing to be of service to other employees who express a need for assistance.

(b)   To promote trust, appropriate anonymity, and confidentially for employees participating in the Peer Support Program.

(c)   To develop employee ability to anticipate personal conflicts and an awareness of available alternatives for self-help.

(d)   To maintain an effective, ongoing Peer Support Program training process.

(e)   To provide services, upon request, to personnel off duty due to injury or illness.

(f)   To identify quality service providers in the community and surrounding area who can be used as counseling referrals.

(g)   To provide assistance, upon request, to the critical incident stress management (CISM) team.

## 346.2  PROGRAM STRUCTURE

The Peer Support Coordinator will hold the rank of lieutenant under the direction of the Chief of Police.

The Peer Support Supervisors will hold the rank of sergeant and/or corporal.

The duties of the Peer Support Coordinator are:

(a)   Maintain and coordinate a liaison between PSP, resource persons, and the Department.

(b)   Recruit and coordinate PSP applicants.

(c)   Coordinate training of PSP.

(d)   Create a list of qualified referral services for the use of the PSP. Referral sources will be researched fully by the coordinator prior to being included on the list.

The duties of the Peer Support Supervisor are:

(a)   Supervisors shall manage the overall program and maintain a liaison between peer support resource persons and the Department.

The overall program will be so established to enable the support personnel to have input into the administration of the program. Information will be periodically distributed by the coordinator to the support personnel regarding the program. This information will consist of training workshops, suggested reading material, helpful counseling hints, and referral information.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000743

Redding Police Department

RPD Policy Manual

*Peer Support Program*

---

### 346.3   NOTIFICATION OF SUPPORT PERSONNEL

Support personnel may be contacted directly, using the Department resource assignment roster.

Support personnel may be utilized to assist the critical incident stress management (CISM) team, by contacting the peer support coordinator.If unavailable, contact the assistant coordinator or program managers using the Department resource assignment roster.

### 346.4   PARTICIPATION IN THE PEER SUPPORT PROGRAM

Personnel selected for participation in the Peer Support Program will be chosen using the following criteria:

(a)   Expressed desire to be a member of the Peer Support Program

(b)   No work restrictions involving psychological stress.

(c)   Full-time paid employees of the Redding Police Department who have successfully completed the FTO program (or equivalent training program prior to appointment), and police chaplains who have completed a chaplain's program.

(d)   A written request shall be submitted to the Peer Support Coordinator.

Support personnel may be removed, for cause, by the Peer Support Coordinator, supervisors, and at the discretion of the Chief of Police. In such cases, a decision will not be made until the facts of the situation are reviewed by the Peer Support Coordinator, the Peer Support Supervisors, and reviewed with the Chief of Police.

### 346.5   TRAINING OBJECTIVES

The initial peer support training will be a POST approved workshop under the direction of a licensed psychologist, or Critical Incident Stress Management Trainer. The workshop is intended to provide a basic understanding of the following areas:

(a)   Crisis Identification

(b)   Crisis intervention and counseling

(c)   Listening skills

(d)   Assessment skills

(e)   Suicide assessment

(f)   Alcohol and substance abuse

(g)   Knowledge of abnormal behavior

A series of continuing mandatory training programs may be provided for support personnel, including, but not limited to:

(a)   Problem-solving workshops

(b)   Referral update information

(c)   Sharing workshops

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000744

Redding Police Department

RPD Policy Manual

*Peer Support Program*

(d)     Advanced skills workshops

(e)     POST approved updates

The Peer Support Program Supervisors and Coordinators or his/her designee will be responsible for developing the training and submitting the training plan to the department Training Manager for approval. This shall include the use of outside consultants, coordination of counselor's schedules, and establishing of training and workshop sessions.

## 346.6  SUPPORT PERSONNEL RESPONSIBILITIES AND GUIDELINES

One of the most important responsibilities of support personnel is the promotion of trust, anonymity, and confidentially for employees who seek the assistance of the Peer Support Program. Therefore, communications between support personnel and a counselee are considered privileged by the Department. Some exceptions to confidentiality are either required by law or because sworn members who become support personnel cannot abdicate their responsibilities as police officers in the process.

The following situations are required to be reported:

(a)     Where child or elder abuse is involved.

(b)     Where the person seeking support is involved in a felony crime.

(c)     Where there is a reason to believe the person seeking support intends to seriously injure another person and a duty to warn exists.

(d)     Where the person seeking support is a clear and present danger to self, citizens, or fellow employees; i.e. substance abuse, mental illness.

In these cases, the affected employee's watch commander shall be promptly notified. In the case of serious threats of injury, the intended victim shall also be warned.

*Although some situations fall under the mandatory reporting requirements, the support personnel's role shall remain as one of care and support!

Personnel selected for the Peer Support Program are expected to adhere to the following guidelines:

(a)     Maintain strict confidentiality in all matters not deemed as "mandatory reporting."

(b)     Work to develop and maintain a sincere rapport with the person seeking support.

(c)     Strive to be a good listener; avoid lecturing or providing unnecessary or excessive advice.

(d)     Do not force unwanted assistance (with the exception of the person seeking support being a danger to himself or others).

(e)     Recognize situations wherein a potential for conflict of interest arises. In such cases, the support personnel shall refer the person to another support personnel.

(f)     Limit or not participate in the program in time of serious personal crisis.

(g)     Maintain personal integrity in both professional and personal life.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000745

# Redding Police Department
RPD Policy Manual

*Peer Support Program*

     (h)    Keep the coordinator aware of support activity.

     (i)    Actively participate in the program and attend mandatory meetings.

## 346.7  INTERNAL INVESTIGATIONS

When a support personnel is supporting an individual who becomes the subject of a disciplinary investigation, a support personnel should follow the confidentiality policy of the program. However, support personnel may not hamper or impede the actual investigation nor may they attempt to shelter the individual from the Department. The support personnel's role in disciplinary situations should be one of support in helping individuals through the problems they face in the disciplinary process. If at any time a support personnel finds it necessary to invoke the confidentiality provisions of the program, they should consult the Peer Support Program Coordinator or Supervisor for guidance and assistance.

Support personnel may participate as witnesses before boards and hearings as any department employee would. They are free to testify on behalf of another employee, and with the permission of the employee, providing information which would be considered confidential. When asked or served with a subpoena by the Department or another board or body to provide testimony, support personnel shall appear and testify. They shall make it known their relationship with the individual has been that of a Peer Support personnel. They should freely respond to questions regarding their knowledge of the individual but must not violate the confidentiality of the relationship, except as required by law.

## 346.8  OVERTIME/COMPENSATION GUIDELINES

In most cases, peer support will take the form of on-duty meetings or relatively short duration; however, if overtime is necessary, support personnel must have prior authorization from a supervisor.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000746

**Policy**
**347**

Redding Police Department
RPD Policy Manual

# Promotional Exams and Specialty Assignments--Confidentiality

### 347.1  PURPOSE AND SCOPE
The purpose of this general order is to provide policy and procedure for managers, supervisors, and personnel who participate in confidential staff input sessions for the purpose of evaluating candidates for promotional examinations and specialty assignments.

### 347.2  POLICY
It is the policy of the Redding Police Department to maintain a reasonable level of confidentiality when evaluating candidates for promotional examinations and specialty assignments.

### 347.3  PROCEDURE
Personnel who participate in confidential staff input sessions, for the purpose of evaluating candidates for promotion or specialty assignment, shall not discuss any comments or conversations made by other managers, supervisors or other personnel during the staff input session with anyone outside of the session, except for the Chief of Police or his designee.

Managers, supervisors and personnel are permitted and encouraged to discuss their own comments with each individual candidate and will be supplied with a copy of their rating sheets.Managers, supervisors and personnel shall not hand out, copy for, or give away the rating sheets to the candidates.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Critical Incident Stress Management (CISM)

## 348.1  PURPOSE AND SCOPE

The purpose of the Redding Police Department Critical Incident Stress Management (CISM) Program is to provide defusing, debriefings, and follow-up after a critical incident.The goals of the program are:

(a)   To provide a rapid response to any department member after a critical incident.

(b)   To minimize the harmful effects of stress resulting from a crisis or emergency response situations.

(c)   To develop employer ability to anticipate employee conflicts and an awareness of alternatives for self-help.

(d)   To maintain an on-going training process.

(e)   To provide crisis intervention no psychotherapy.

(f)   To help prevent negative effects of post-traumatic stress.

## 348.2  CISM PROGRAM STRUCTURE

Coordination of the CISM team shall be the responsibility of the Peer Support coordinator, assistant coordinator, and program manager (see policy #346, Peer Support Program).

## 348.3  NOTIFICATION PROCEDURES

To notify the CISM team of a critical incident, contact the Peer Support Coordinator.If unavailable, contact the Assistant Coordinator or program manager using the departmental resource assignment roster.

(a)   The on-call member, once notified, shall appraise the type of actions that are most appropriate.

(b)   The on-call member may respond to the location of an event or to the Redding Police Department to continue appraisal of the type of action that is most appropriate.

(c)   The on-call member should determine if the event is still in progress, and if so, assess the need for additional CISM team members, peer support personnel, associate members, or chaplains.

Response during an in-progress event and/or a large scale incident.

(a)   The CISM team member should report to the incident commander or their representative.

(b)   Monitor the event, be visible and accessible to individuals who may be in need of assistance.

(c)   Develop a list of officers who may need CISM team services.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000748

# Redding Police Department

RPD Policy Manual

## Critical Incident Stress Management (CISM)

(d)    If the event is protracted and/or there is a need for additional CISM team support, direct incoming team members to a location separate from the tactical command post.

(e)    On regular interval gather CISM team members and brief each other on the situation.

(f)    CISM team members may be re-directed to areas in need of additional support.

(g)    Ensure the CISM team debriefing report is completed.

Critical incidents the CISM team may respond to include, but are not limited to:

(a)    Officer discharging their weapon.

(b)    Officer/fellow officer injured.

(c)    Suspect seriously injured.

(d)    Child seriously injured or killed.

(e)    Disasters.

(f)    Sensational media coverage.

(g)    Any other precipitating incident or situation.

Defusing, debriefing and demobilization process should be implemented as follows:

(a)    Diffusing should be implemented immediately or shortly after a traumatic event. The defusing usually takes between 20 and 45 minutes to complete. Location of defusing should be large enough to accommodate the group and free from distractions.

(b)    Debriefing should be implemented with 48 to 72 hours after the traumatic event. The debriefing usually takes between 2 and 2-1/2 hours. The location of the debriefing should be large enough to accommodate the group and free from distractions, preferably away from the Police Department building.

(c)    Demobilization should be implemented immediately after personnel are released from a large-scale scene and before they return to normal duties. Demobilization usually takes between 10 and 15 minutes. Demobilization should be large enough to accommodate the group and free from distractions.

(d)    Confidentiality should be respected. Individuals should be informed about the confidentiality limits of statements made in an open forum. Individuals should make statements only from a personal perspective (no speaking for anyone else).In sensitive situations (i.e., under investigation), individual's may share their feelings and emotional responses.

### 348.4   PARTICIPATION IN THE PROGRAM

Redding Police Department personnel, chaplains, and associate members selected for participation in the CISM program will be chosen via the following criteria:

(a)    Expressed desire to be a member of the CISM team.

(b)    No work restrictions involving psychological stress.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000749

# Redding Police Department

RPD Policy Manual

*Critical Incident Stress Management (CISM)*

    (c)    Full-time paid employees of the Redding Police Department who have successfully completed the Field Training Program (or equivalent training program prior to appointment).

    (d)    Membership in the Redding Police Department Peer Support Program.

    (e)    Associate members (chaplains/mental health professionals) who have received necessary training and approval by the program coordinator.

CISM personnel may be removed for cause by the Peer Support/CISM program managers and supervisors or by the Chief of Police or his designee.

    (a)    In such cases, a decision will not be made until the facts of the situations are reviewed by the Peer Support/CISM managers and supervisors and reviewed by the Chief of Police.

## 348.5  CISM TEAM MEMBERS DUTIES

CISM team members are Redding Police Department personnel responsible for assisting in the debriefing process.The following is a list of CISM team member duties:

    (a)    Attend team meetings and in-service training.

    (b)    Serve as team member during debriefing process.

    (c)    Initiate contact wih individuals involved in or affected by a critical incident.

    (d)    Assist in the team selection process.

    (e)    Have the ability to lead/facilitate the debriefing process.

    (f)    Represent the CISM team to the community.

    (g)    Follow-up on individuals as needed.

## 348.6  PEER SUPPORT MEMBERS DUTIES

Members of the Redding Police Department Peer Support Program who are selected to assist with the CISM team have the following duties:

    (a)    Attend team meetings.

    (b)    Assist the CISM team.

    (c)    Follow-up on individuals as needed.

## 348.7  CISM TEAM ASSOCIATE MEMBERS DUTIES

The CISM team associate members are mental health professionals or police chaplains and have the following duties:

    (a)    Attend team meetings and in-service training.

    (b)    Assist in debriefing process.

    (c)    Assist as a professional referral for individuals affected by a critical incident.

    (d)    Follow-up on individuals as needed.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Critical Incident Stress Management (CISM)*

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Redding Police Department**
RPD Policy Manual

# Honor Guard

### 349.1  PURPOSE AND SCOPE
The purpose of this order is to establish the duties of the Honor Guard and the procedures by which to activate the team. The Honor Guard Program will be the responsibility of the Field Operations Division Commander

### 349.2  STRUCTURE
The Honor Guard will consist of a Program Manager (lieutenant), supervisor (sergeant), and eight police officers.

### 349.3  DUTIES
The Honor Guard will be utilized for specific functions, including, but not limited to, law enforcement funerals, law enforcement memorial ceremonies, and special functions, as authorized by the Chief of Police or his designee.

### 349.4  ACTIVATION PROCEDURES
When police department employees become aware of a law enforcement death within the Northern California Region, the Honor Guard supervisor should be notified. If the deceased officer is from a local agency (neighboring or bordering counties to Shasta County), the honor Guard supervisor or Program Manager should be notified immediately.

Any routine request for the service of the Honor Guard should be submitted to the Program Manager.

Final approval for the deployment of the Honor Guard will rest with the Chief of Police or his designee.

**Note**: For additional details, refer to the Line-Of-Duty Death policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000752

# Police Facility Security

## 350.1 PURPOSE AND SCOPE

It is the policy of the Redding Police Department to maintain a reasonable level of security within police facilities in order to provide a safe working environment for employees, volunteer, and visitors. Access to police facilities will be restricted as needed for official business.

This general order is exempt from disclosure under the Public Records Act as "Records of Intelligence information or security procedures," 6254(f) G.C. **Do not discuss or divulge any aspect of the Police Facility Security Policy with non-law enforcement personnel.**

## 350.2 POLICY

(a) All visitors, unless authorized by the Chief of Police or his designee, shall be escorted by department personnel while inside the main building or the patrol building. When a visitor arrives at the Services Division, the appropriate employee will be notified of the visitor's arrival and recorded on a visitor's log maintained by Services personnel. All visitors shall be issued a visitor badge and instructed to wear the badge at all times while in the building or compound. The exceptions to this rule are department tours, when victims, witnesses, and/or suspects are in the building on official business and are escorted or monitored by an RPD employee, or prior arrangements were made between an employee and visitor (refer to subsection c).

(b) Allied agency personnel are not required to sign in at the Services Division lobby nor be escorted as long as they are in uniform or display current identification on their outer clothing. Allied agency personnel should be escorted to their destination or met by a department employee to gain entrance to a building.

(c) If an employee makes prior arrangements to meet their visitor, the visitor does not need to contact the Services Division. The employee should have a badge to provide their visitor and maintain a visitor log in their division. The visitor should leave the visitor badge with the employee or return it to the Services Division.

(d) Employees from other City departments (Building Maintenance, Information Technology) and any person pre-approved by the Chief of Police, or his designee, are not required to be escorted or recorded on a visitor log. Each City employee will be required to comply with Department of Justice policies.

(e) Visitors and allied agency personnel utilizing the Force Options room for training should be recorded on a visitor's log and wear a visitor's badge unless they are in uniform or display current identification on their outer clothing. Visitors utilizing the Force Options room are not allowed to wander throughout the police facility. It is the responsibility of the meeting facilitator to ensure procedures are followed.

(f) The Services Division will maintain a vendor list and have the vendor escorted by a City or department employee. Vendors who provide services to the department on a regular basis will be fingerprinted. Unless it is an emergency, vendors should respond during business hours.

# Redding Police Department

RPD Policy Manual

---

*Police Facility Security*

---

(g)   Family members of police department employees do not need to sign in or display a visitor badge as long as they are escorted by the employee.

(h)   Employees who observe anyone inside the building not displaying a visitor badge or ID card are required to contact the subject and ensure they have proper authority to be in the building, or immediately notify a supervisor.

(i)   At no time should department keys or key cards be duplicated or provided to anyone other than designated City employees, department employees, and volunteers. The Executive Secretary for Administration should be contacted immediately upon an employee or volunteer separating employment.

(j)   Completed visitor logs will be maintained in the Services Division and retained per the City of Redding retention schedule.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000754

# Community Relations

## 351.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for community relationship-building.

Additional guidance on community relations and outreach is provided in other policies, including the:

- Hate Crimes Policy.

- Limited English Proficiency Services Policy.

- Communications with Persons with Disabilities Policy.

- Chaplains Policy.

- Patrol Function Policy.

- Suspicious Activity Reporting Policy.

## 351.2  POLICY
It is the policy of the Redding Police Department to promote positive relationships between members of the Department and the community by treating community members with dignity and respect and engaging them in public safety strategy development and relationship-building activities, and by making relevant policy and operations information available to the community in a transparent manner.

## 351.3  MEMBER RESPONSIBILITIES
Officers should, as time and circumstances reasonably permit:

(a)  Make casual and consensual contacts with community members to promote positive community relationships (see the Detentions and Photographing Detainees Policy).

(b)  Become reasonably familiar with the schools, businesses and community groups in their assigned jurisdictional areas.

(c)  Work with community members to identify issues and solve problems related to community relations and public safety.

(d)  Conduct periodic foot patrols of their assigned areas to facilitate interaction with community members. Officers carrying out foot patrols should notify SHASCOM of their status (i.e., on foot patrol) and location before beginning and upon completion of the foot patrol. They should also periodically inform SHASCOM of their location and status during the foot patrol.

## 351.4  SURVEYS
The Department should arrange for a survey of community members and Department members to be conducted at least annually to assess the condition of the relationship between the Department and the community. Survey questions should be designed to evaluate perceptions of the following:

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department
RPD Policy Manual

---

*Community Relations*

---

    (a)    The overall performance of the Department

    (b)    Overall competence of Department members

    (c)    Attitude and behavior of Department members

    (d)    Level of community trust in the Department

    (e)    Safety, security or other concerns

A written summary of the compiled results of the survey should be provided to the Chief of Police.

## 351.5  COMMUNITY AND YOUTH ACTIVITIES AND PROGRAMS
The Department should organize or assist with programs and activities that create opportunities for department members and community members, especially youth, to interact in a positive setting. Examples of such programs and events include:

    (a)    Department-sponsored athletic programs (e.g., baseball, basketball, soccer, bowling).

    (b)    Youth leadership and life skills mentoring.

    (c)    School resource officer/Shasta Youth Leadership Camp.

    (d)    Neighborhood Watch and crime prevention programs.

## 351.6  INFORMATION SHARING
The Social Media Team should develop methods and procedures for the convenient sharing of information (e.g., major incident notifications, significant changes in department operations, comments, feedback, positive events) between the Department and community members.

## 351.7  LAW ENFORCEMENT OPERATIONS EDUCATION
The Department should develop methods to educate community members on general law enforcement operations so they may understand the work that officers do to keep the community safe. Examples of educational methods include:

    (a)    Development and distribution of informational cards/flyers.

    (b)    Department website postings.

    (c)    Instruction in schools.

    (d)    Department ride-alongs (see the Ride-Along Policy).

    (e)    Force options with community member participation.

    (f)    Youth internships at the Department.

    (g)    Citizen academies.

Instructional information should include direction on how community members should interact with the police during enforcement or investigative contacts and how community members can make a complaint to the department regarding alleged misconduct or inappropriate job performance by department members.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000756

# Redding Police Department

RPD Policy Manual

*Community Relations*

---

### 351.8  SAFETY AND OTHER CONSIDERATIONS

Department members responsible for community relations activities should consider the safety of the community participants and, as much as reasonably practicable, not allow them to be present in any location or situation that would jeopardize their safety.

Department members in charge of community relations events should ensure that participating community members have completed waiver forms before participation, if appropriate. A parent or guardian must complete the waiver form if the participating community member has not reached 18 years of age.

Community members are subject to a criminal history check before approval for participation in certain activities, such as citizen academies.

### 351.9  TRANSPARENCY

The Department should periodically publish statistical data and analysis regarding the department's operations. The reports should not contain the names of officers, suspects or case numbers. The community relations coordinator should work with the community advisory committee to identify information that may increase transparency regarding department operations.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000757

Redding Police Department

RPD Policy Manual

# Chapter 4 - Patrol Operations

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000758

# Patrol Function

## 400.1  PURPOSE AND SCOPE
The purpose of this policy is to define the patrol function and address organizational cooperation and information sharing.

## 400.2  INFORMATION SHARING
To the extent feasible, all information relevant to the mission of the Department should be shared among all divisions and specialized units on a timely basis. Members should be provided with opportunities on a regular basis to share information during the daily roll call briefings and to attend roll call briefings of other divisions or specialized units.

Additionally, information should be shared with outside agencies and the public in conformance with Department policies and applicable laws. Members are encouraged to share information with other units and divisions.

## 400.3  CROWDS, EVENTS AND GATHERINGS
Officers may encounter gatherings of people, including but not limited to, civil demonstrations, civic, social and business events, public displays, parades, and sporting events. Officers should monitor such events as time permits in an effort to keep the peace and protect the safety and rights of those present. A patrol supervisor should be notified when it becomes reasonably foreseeable that such an event may require increased monitoring, contact, or intervention.

Officers responding to an event or gathering that warrants law enforcement involvement should carefully balance the speech and association rights of those present with applicable public safety concerns before taking enforcement action.

Generally, officers should consider seeking compliance through advisements and warnings for minor violations and should reserve greater enforcement options for more serious violations or when voluntary compliance with the law is not achieved.

Officers are encouraged to contact organizers or responsible persons to seek voluntary compliance that may address relevant public safety/order concerns.

Officers should consider enforcement of applicable state and local laws, such as Penal Code 602.1 (obstructing or intimidating business operators), when the activity blocks the entrance or egress of a facility or location and when voluntary compliance with the law is not achieved.

## 400.4  POLICY
The Redding Police Department provides patrol services 24 hours a day, 7 days a week and will prioritize responses to requests for emergency services using available resources to enhance the safety of the public and Department members.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000759

# Redding Police Department

RPD Policy Manual

*Patrol Function*

## 400.5 FUNCTION

Patrol will generally be conducted by uniformed officers in clearly marked law enforcement vehicles in assigned jurisdictional areas of Redding. The function of patrol is to respond to calls for assistance and reports of criminal activity, act as a deterrent to crime, enforce state and local laws, identify community needs, provide support and assistance to the community and respond to emergencies.

Patrol services include, but are not limited to:

(a) Responding to emergency calls for service.

(b) Apprehending criminal offenders.

(c) Providing mutual aid and assistance to other agencies for emergency and law enforcement-related activities.

(d) Preventing criminal acts, traffic violations and collisions, maintaining public order and discovering hazardous situations or conditions.

(e) Responding to reports of criminal and non-criminal acts.

(f) Responding to routine calls for service, such as public assistance or public safety.

(g) Carrying out crime prevention activities such as residential inspections, business inspections and community presentations.

(h) Carrying out community oriented policing and problem-solving activities including the application of resources to improve or resolve specific problems or situations and contacting or assisting members of the public in a positive way.

(i) Directing and controlling traffic.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000760

**Policy**
**401**

**Redding Police Department**
RPD Policy Manual

# Bias-Based Policing

## 401.1  PURPOSE AND SCOPE
This policy provides guidance to Department members that affirms the Redding Police Department's commitment to policing that is fair and objective.

Nothing in this policy prohibits the use of specified characteristics in law enforcement activities designed to strengthen the Department's relationship with its diverse communities (e.g., cultural and ethnicity awareness training, youth programs, community group outreach, partnerships).

### 401.1.1  DEFINITIONS
Definitions related to this policy include:

**Bias-based policing** - An inappropriate reliance on characteristics such as race, ethnicity, national origin, religion, sex, sexual orientation, gender identity or expression, economic status, age, cultural group, disability or affiliation with any non-criminal group (protected characteristics) as the basis for providing differing law enforcement service or enforcement (Penal Code § 13519.4).

## 401.2  POLICY
The Redding Police Department is committed to providing law enforcement services to the community with due regard for the racial, cultural or other differences of those served. It is the policy of this Department to provide law enforcement services and to enforce the law equally, fairly, objectively and without discrimination toward any individual or group.

## 401.3  BIAS-BASED POLICING PROHIBITED
Bias-based policing is strictly prohibited.

However, nothing in this policy is intended to prohibit an officer from considering protected characteristics in combination with credible, timely and distinct information connecting a person or people of a specific characteristic to a specific unlawful incident, or to specific unlawful incidents, specific criminal patterns or specific schemes.

### 401.3.1  CALIFORNIA RELIGIOUS FREEDOM ACT
Members shall not collect information from a person based on religious belief, practice, affiliation, national origin or ethnicity unless permitted under state or federal law (Government Code § 8310.3).

Members shall not assist federal government authorities with the following (Government Code § 8310.3):

    (a)   In compiling personal information about a person's religious belief, practice, affiliation, national origin or ethnicity.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Bias-Based Policing*

---

    (b)    By investigating, enforcing or assisting with the investigation or enforcement of any requirement that a person register with the federal government based on religious belief, practice, or affiliation, or national origin or ethnicity.

## 401.4  MEMBER RESPONSIBILITIES

Every member of this Department shall perform his/her duties in a fair and objective manner and is responsible for promptly reporting any suspected or known instances of bias-based policing to a supervisor. Members should, when reasonable to do so, intervene to prevent any biased-based actions by another member.

## 401.5  REPORTING TO CALIFORNIA DEPARTMENT OF JUSTICE

The Department Statistician shall ensure that all data required by the California Department of Justice (DOJ) regarding complaints of racial bias against officers is collected and provided to the Records Supervisor for required reporting to the DOJ (Penal Code § 13012; Penal Code § 13020). See the Records Division Policy.

## 401.6  TRAINING

Training on fair and objective policing and review of this policy should be conducted as directed by the Training Sergeant.

    (a)    All sworn members of this Department will be scheduled to attend Peace Officer Standards and Training (POST)-approved training on the subject of bias-based policing.

    (b)    Each sworn member of this Department who received initial bias-based policing training will thereafter be required to complete an approved refresher course every five years, or sooner if deemed necessary, in order to keep current with changing racial, identity and cultural trends (Penal Code § 13519.4(i)).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000762

**Policy**
**402**

# Roll Call Briefing Training

## 402.1  PURPOSE AND SCOPE

Roll Call Briefing training is generally conducted at the beginning of the officer's assigned shift. Roll Call Briefing provides an opportunity for important exchange between employees and supervisors. A supervisor generally will conduct Roll Call Briefing; however officers may conduct Roll Call Briefing for training purposes with supervisor approval.

Roll Call Briefing should accomplish, at a minimum, the following basic tasks:

(a) Briefing officers with information regarding daily patrol activity, with particular attention given to unusual situations and changes in the status of wanted persons, stolen vehicles, and major investigations

(b) Notifying officers of changes in schedules and assignments

(c) Notifying officers of new General Orders or changes in General Orders

(d) Reviewing recent incidents for training purposes

(e) Providing training on a variety of subjects

## 402.2  PREPARATION OF MATERIALS

The supervisor conducting Roll Call Briefing is responsible for preparation of the materials necessary for a constructive briefing. Supervisors may delegate this responsibility to a subordinate officer in his or her absence or for training purposes.

## 402.3  RETENTION OF ROLL CALL BRIEFING TRAINING RECORDS

A training log should be completed to document the topics covered. The log shall be forwarded to the Training Sergeant.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Crime and Disaster Scene Integrity

### 403.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidance in handling a major crime or disaster.

### 403.2  POLICY
It is the policy of the Redding Police Department to secure crime or disaster scenes so that evidence is preserved, and to identify and mitigate the dangers associated with a major crime or disaster scene for the safety of the community and those required to enter or work near the scene.

### 403.3  SCENE RESPONSIBILITY
The first officer at the scene of a crime or major incident is generally responsible for the immediate safety of the public and preservation of the scene. Officers shall also consider officer safety and the safety of those persons entering or exiting the area, including those rendering medical aid to any injured parties. Once an officer has assumed or been assigned to maintain the integrity and security of the crime or disaster scene, the officer shall maintain the crime or disaster scene until he/she is properly relieved by a supervisor or other designated person.

### 403.4  FIRST RESPONDER CONSIDERATIONS
The following list generally describes the first responder's function at a crime or disaster scene. This list is not intended to be all-inclusive, is not necessarily in order and may be altered according to the demands of each situation:

(a)   Broadcast emergency information, including requests for additional assistance and resources.

(b)   Provide for the general safety of those within the immediate area by mitigating, reducing or eliminating threats or dangers.

(c)   Locate or identify suspects and determine whether dangerous suspects are still within the area.

(d)   Provide first aid to injured parties if it can be done safely.

(e)   Evacuate the location safely as required or appropriate.

(f)   Secure the inner perimeter.

(g)   Protect items of apparent evidentiary value.

(h)   Secure an outer perimeter.

(i)   Identify potential witnesses.

(j)   Start a chronological log noting critical times and personnel allowed access.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000764

# Redding Police Department

RPD Policy Manual

*Crime and Disaster Scene Integrity*

## 403.5  SEARCHES

Officers arriving at crime or disaster scenes are often faced with the immediate need to search for and render aid to victims, and to determine if suspects are present and continue to pose a threat. Once officers are satisfied that no additional suspects are present and/or there are no injured persons to be treated, those exigent circumstances will likely no longer exist. Officers should thereafter secure the scene and conduct no further search until additional or alternate authority for the search is obtained, such as consent or a search warrant.

### 403.5.1  CONSENT

When possible, officers should seek written consent to search from authorized individuals. However, in the case of serious crimes or major investigations, it may be prudent to also obtain a search warrant. Consent as an additional authorization may be sought, even in cases where a search warrant has been granted.

## 403.6  EXECUTION OF HEALTH ORDERS

Any sworn member of this Department is authorized to enforce all orders of the local health officer that have been issued for the purpose of preventing the spread of any contagious, infectious or communicable disease (Health and Safety Code § 120155).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000765

**Policy**

**404**

# Special Weapons and Tactics (SWAT) Team

## 404.1  PURPOSE AND SCOPE

The Special Weapons and Tactics (SWAT) team has been established to provide specialized support in handling critical field operations where special tactical deployment methods beyond the capacity of field officers appear to be necessary. The presence of a highly trained, highly skilled, police tactical unit has been shown to substantially reduce the risk of injury or loss of life to citizens, police officers, and suspects.   The SWAT Team's goal is to respond to and successfully resolve any critical incident utilizing the minimal amount of force necessary.  This policy is written to comply with the guidelines established in the Attorney General's Commission on Special Weapons and Tactics Report (September 2002) and the POST 2005 SWAT Operational Guidelines and Standardized Training Recommendations (Penal Code §13514.1).

### 404.1.1  SWAT TEAM DEFINED

A SWAT team is a designated unit of law enforcement officers that is specifically trained and equipped to work as a coordinated team to resolve critical incidents that are so hazardous, complex, or unusual that they may exceed the capabilities of first responders or investigative units including, but not limited to, hostage taking, barricaded suspects, snipers, terrorist acts and other high-risk incidents. As a matter of Department policy, such a unit may also be used to serve high-risk warrants, both search and arrest, where public and officer safety issues warrant the use of such a unit.

## 404.2  POLICY

It shall be the policy of this Department to maintain a SWAT team and to provide the equipment, manpower, and training necessary to maintain a SWAT team. The SWAT team should develop sufficient resources to perform three basic operational functions:

(a)   Command and Control

(b)   Containment

(c)   Entry/Apprehension/Rescue

It is understood it is difficult to categorize specific capabilities for critical incidents. Training needs may vary based on the experience level of the team personnel, team administrators and potential incident commanders. Nothing in this policy shall prohibit individual teams from responding to a situation that exceeds their training levels due to the exigency of the circumstances. The preservation of innocent human life is paramount.

### 404.2.1  POLICY CONSIDERATIONS

A needs assessment should be conducted to determine the type and extent of SWAT missions and operations appropriate to this department. The assessment should consider the team's capabilities and limitations and should be reviewed annually by the SWAT Commander or his/her designee.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

## Redding Police Department
### RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

404.2.2   STANDARD OPERATING PROCEDURES

This Department shall develop a written set of standard operational procedures (SOP) in accordance with the determination of their level of capability, using sound risk reduction practices. Such procedures are specific to SWAT members and outline tactical and officer safety issues, therefore they are not included within this policy. The operational procedures should include, at a minimum, the following:

    (a)    Designated personnel responsible for developing an operational or tactical plan prior to, and/or during SWAT operations (time permitting).

        1.    All SWAT team members should have an understanding of operational planning.

        2.    SWAT team training should consider planning for both spontaneous and planned events.

        3.    SWAT teams should incorporate medical emergency contingency planning as part of the SWAT operational plan.

    (b)    Plans for mission briefings conducted prior to an operation, unless circumstances require immediate deployment.

        1.    When possible, briefings should include the specialized units and supporting resources.

    (c)    Protocols for a sustained operation should be developed which may include relief, rotation of personnel and augmentation of resources.

    (d)    A generic checklist to be worked through prior to initiating a tactical action as a means of conducting a threat assessment to determine the appropriate response and resources necessary, including the use of SWAT.

    (e)    The appropriate role for a trained negotiator.

    (f)    A standard method of determining whether or not a warrant should be regarded as high-risk.

    (g)    A method for deciding how best to serve a high-risk warrant with all reasonably foreseeable alternatives being reviewed in accordance with risk/benefit criteria prior to selecting the method of response.

    (h)    Post-incident scene management including:

        1.    Documentation of the incident (After Action Report).

        2.    Transition to investigations and/or other units.

        3.    Debriefing after every deployment of the SWAT team.

            (a)    After-action team debriefing provides evaluation and analysis of critical incidents and affords the opportunity for individual and team assessments help to identify training needs and reinforces sound risk management practices.

            (b)    Such debriefing should not be conducted until involved officers have had the opportunity to individually complete necessary reports or provide formal statements.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
Special Weapons and Tactics (SWAT) Team - 296

COR (McLeod)  000767

# Redding Police Department
RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

    (c)    In order to maintain candor and a meaningful exchange, debriefing will generally not be recorded.

    (d)    When appropriate, debriefing should include specialized units and resources.

(i)    Sound risk management analysis.

(j)    Standardization of equipment deployed.

## 404.3   TRAINING NEEDS ASSESSMENT
The SWAT Tactical Commander, Assistant Tactical Commander, and Tactical Coordinator shall conduct an annual SWAT training needs assessment to ensure that training is conducted within team capabilities, department policy and the training guidelines as established by POST (11 C.C.R. § 1084).

### 404.3.1   INITIAL TRAINING
SWAT team operators should not be deployed until successful completion of the POST-certified Basic SWAT Course or its equivalent.

### 404.3.2   UPDATED TRAINING
Appropriate team training for the specialized SWAT functions and other supporting resources should be completed prior to full deployment of the team. All team members will receive at least 24 hours of advanced POST-certified SWAT training every 24 months.

### 404.3.3   SUPERVISION AND MANAGEMENT TRAINING
Command and executive personnel are encouraged to attend training for managing the SWAT function at the organizational level to ensure personnel who provide active oversight at the scene of SWAT operations understand the purpose and capabilities of the teams.

Command personnel who may assume incident command responsibilities should attend SWAT or Critical Incident Commander course or its equivalent. SWAT command personnel should attend a POST-certified SWAT commander or tactical commander course, or its equivalent.

### 404.3.4   SWAT PHYSICAL FITNESS TESTING
Testing shall be coordinated by the SWAT Tactical Coordinator under the direction of the SWAT Tactical Commander. Testing shall consist of the following:

    (a)    Each operational SWAT member shall perform a physical fitness test three times each year. A minimum qualifying score must be attained by each team member.

    (b)    Any SWAT team member failing to attain the minimum physical fitness qualification score will be notified of the requirement to retest and attain a qualifying score. Within 30 days of the previous physical fitness test date, the member required to qualify shall report to the Tactical Coordinator and complete the entire physical fitness test. Failure to qualify after a second attempt may result in dismissal from the team.

    (c)    Those members who are on vacation, ill, or are on light duty status with a doctor's note of approval on the test date, shall be responsible for reporting to the Tactical

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

*Special Weapons and Tactics (SWAT) Team*

Coordinator and taking the test within 30 days of their return to regular duty. Any member, who fails to arrange for and perform the physical fitness test within the 30-day period, shall be considered as having failed to attain a qualifying score for that test period.

**NOTE**: SWAT team members returning from a serious injury that could prevent them from completing the physical fitness test, must complete the test prior to being operational. Members will be given a six-month time period from the date they return to full duty to complete the physical fitness test. During this six-month period, members may continue to attend SWAT training but will be non-operational.  If at the end of this six-month period the member is unable to complete the test, they will be removed from the SWAT team.

### 404.3.5   SWAT FIREARMS QUALIFICATIONS

SWAT firearms testing will consist of the following:

(a)   Bi-annually, SWAT team members shall perform the designated SWAT handgun qualification course. This qualification is in addition to the required department firearms qualification standards.  Failure to qualify will require that officer to seek remedial training from a team range master approved by the Tactical Coordinator. Team members who fail to qualify must retest within 30 days. Failure to qualify within 30 days with or without remedial training may result in dismissal from the team.

(b)   Each operational SWAT team member shall complete the bi-annual SWAT qualification course for any specialty weapon issued to, or used by, the team member during SWAT operations. Failure to qualify will require the team member to seek remedial training from the Rangemaster who has been approved by the Tactical Commander. Team members who fail to qualify on their specialty weapon may not utilize the specialty weapon on SWAT operations until qualified. Team members who fail to qualify must retest within 30 days. Failure to qualify with specialty weapons within 30 days may result in the team member being removed from the team or permanently disqualified from use of that particular specialty weapon.

### 404.3.6   TRAINING SAFETY

Use of a designated safety officer should be considered for all tactical training.

### 404.3.7   SCENARIO BASED TRAINING

SWAT teams should participate in scenario-based training that simulates the tactical operational environment. Such training is an established method of improving performance during an actual deployment.

### 404.3.8   TRAINING DOCUMENTATION

Individual and team training shall be documented on a Department training log and records maintained in the department training system. Such documentation shall be maintained in each member's individual training file.

(a)   SWAT members shall attend monthly training unless absences are pre-approved by the Tactical Coordinator.  SWAT team members who fail to attend three 10 hour

# Redding Police Department
RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

trainings in a 12 month period are subject to administrative removal from the SWAT team.

(b) All team members will receive at least 24 hours of advanced POST-certified SWAT training every 24 months.

## 404.4  UNIFORMS, EQUIPMENT, AND FIREARMS

### 404.4.1  UNIFORMS
SWAT teams from this agency should wear uniforms that clearly identify team members as law enforcement officers. It is recognized that certain tactical conditions may require covert movement. Attire may be selected appropriate to the specific mission.

### 404.4.2  EQUIPMENT
Recognizing that the Redding Police Department's SWAT Team performs in a hazardous environment and recognizing that the safety of innocent citizens, officers, and suspects is often jeopardized by hazardous conditions, it shall be the intent of the SWAT team to utilize special equipment, as listed below, in an attempt to lessen the risk of injury or death to all involved during the performance of SWAT operations.  The SWAT team recognizes, however, that the use of special equipment in no way implies or guarantees that injury or death will not occur during a SWAT operation.

(a) **Primary Entry Weapons**:  Entry submachine guns, assault rifles, entry shotguns, or other short-barrel weapons which enable the team member to acquire rapid target acquisition which will enhance levels of accuracy and provide maneuverability, reliability, stopping power, and sustained fire capability.

(b) **High-Caliber Rifles**:  Commonly referred to as counter-sniper rifles, these weapons will allow the team member to place highly accurate rounds where needed to help resolve life-threatening incidents.

(c) **Less Lethal Weapons or Ammunition**:  Weapons or ammunition which propel a round or device that is not normally lethal in nature.  Designed to offer an alternative to the use of deadly force when appropriate.

(d) **Light/Sound Diversionary Devices**: Designed to save lives and reduce the potential for shooting situations by providing a diversion for the entry of SWAT team members into hazardous areas.  Utilizes a bright flash of light followed immediately by a loud noise.

(e) **Breaching Tools and Ammunition**: Items such as rams, pry bars, hydraulic or electronic machines, special breaching shotgun rounds, which are designed to force entry into a barricaded or secured area.

(f) **Chemical Agents**: Includes CS, OC, or CN.  Delivery devices may include the firing of long-range projectiles, hand-thrown devices, or aerosol sprays.

The SWAT Team Tactical Commander will ensure that only those team members properly trained and certified in the use of specialized equipment will utilize the equipment.  The SWAT Team Tactical Commander will be responsible for establishing the certification criteria for the team.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000770

# Redding Police Department
RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

Special equipment used by the SWAT team shall only be used in authorized SWAT team call outs or training. All other uses of the specialized equipment of the SWAT team shall only be used upon the approval of the Tactical Commander or Field Operations Division Commander, with the exception of individually assigned rifles or entry weapons, which may be used for patrol rifle functions.

SWAT team equipment shall not be used by anyone other than SWAT personnel unless authorized by the Tactical Commander or Field Operations Division Commander.

### 404.4.3  FIREARMS
Weapons and equipment used by SWAT, the specialized units, and the supporting resources should be agency-issued or approved, including any modifications, additions, or attachments. Any non-department weapons must be approved by the Tactical Commander and inspected by a department armorer selected by the Tactical Commander.

Use of the .50 caliber Sniper Rifle:

    (a)    SWAT members must obtain SWAT Tactical Commander approval prior to training with the .50 rifle.Training must be at sites approved by the SWAT Tactical Commander.

    (b)    The rifle should only be deployed during a crisis with SWAT Tactical Commander approval unless exigent circumstances justify an immediate deployment.

    (c)    Only trained officers may deploy the rifle.

### 404.4.4  OPERATIONAL READINESS INSPECTIONS
The Tactical Coordinator shall perform operational readiness inspections of all unit equipment on a quarterly basis. The inspection will include personal equipment issued to members of the unit, operational equipment maintained in the SWAT facility and equipment maintained or used in SWAT vehicles.

## 404.5  MANAGEMENT/SUPERVISION OF SWAT
The SWAT Tactical Commander shall be selected by the Field Operations Division Commander.

### 404.5.1  TACTICAL COMMANDER
Under the direction of the Chief of Police, through the Field Operations Division Commander, SWAT shall be managed by a Tactical Commander who shall be a command staff officer with a rank minimally of lieutenant. The Tactical Commander shall have prior tactical experience, a strong working knowledge of the current SWAT team and its personnel, regularly attend training with the SWAT team, and attend advanced training for command officers.

A second lieutenant will be appointed as the Assistant Tactical Commander to serve in the absence of the Tactical Commander.

### 404.5.2  TEAM SUPERVISORS
The SWAT team will be supervised by a sergeant or corporal, designated as the Tactical Coordinator. The Tactical Coordinator shall be selected by the Field Operations Division

# Redding Police Department
RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

Commander upon specific recommendation by the Tactical Commander. The following represents the supervisory responsibilities for the SWAT team:

(a)  The Special Weapons and Tactics Team supervisor's primary responsibility is to supervise the operations of the SWAT team, which will include deployment, training, first line participation, and other duties as directed by the SWAT Tactical Commander.

## 404.6   SWAT TEAM ADMINISTRATIVE PROCEDURES

The Special Weapons and Tactics (SWAT) team was established to provide a skilled and trained team which may be deployed during events requiring specialized training and tactics.

The following procedures serve as directives for the administrative operation of the SWAT team.

### 404.6.1   SELECTION OF PERSONNEL

Applicants wishing to become a part of the Redding Police Department SWAT team must establish eligibility as follows:

(a)  Must have at least three years of law enforcement experience and off probation.  These standards may be changed if not enough qualified officers apply (or at the direction of the Chief of Pollice or designee).

(b)  Must successfully pass an oral interview conducted by the Team Commander, Tactical Coordinator, and Team Leader.

(c)  Must demonstrate and maintain above-average proficiency with Department duty weapons.

(d)  Must have maintained average or above-average performance ratings in the following areas:

   1.  **Field enforcement**

   2.  **External/internal relations**

   3.  **Officer safety**

   4.  **Work habits**

   5.  **Complete investigations and thorough police reports**

(e)  Personnel evaluation review shall be conducted by the SWAT Tactical Commander.

(f)  Must be in good physical condition, successfully pass the SWAT physical agility tests, and maintain this level of fitness while on the team.

(g)  Acceptance to the team will be on a provisional basis for a period of one year.

(h)  Provisional members must attend all training as specified by the Tactical Coordinator.

(i)  Final approval for selection of SWAT team members will be done by the Field Operations Division Commander and the Chief of Police.

(j)  SWAT physical fitness testing.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000772

*Special Weapons and Tactics (SWAT) Team*

All operational Redding Police Department SWAT team members must complete and pass the established physical fitness test at least three times every calendar year. Failure to do so may result in removal from the team. The physical fitness test will consist of the following events:

(a) **Rescue Climb** – 5 pull-ups (both palms forward, non-kipping).

(b) **Assault/Dash** - While wearing SWAT body armor and carrying an unloaded 870 shotgun, members will complete a 40-yard dash from the prone position in 8 seconds or less.

(c) **Obstacle Course** – While wearing personal exercise clothing, members will run 880 yards while completing 3 job-related tasks. At the 220-yard mark, members must weave between 9 cones placed 5 yards apart and offset by an additional 5 yards. At the 440-yard mark, members must lift a supine team member from behind and under the arms and drag them 10 yards without assistance. At the 660-yard mark, members must again weave through the 9 cones, while dropping at each cone and completing a push-up. Members will then complete the run and finish in less than 4 minutes 30 seconds.

## 404.7  OPERATION GUIDELINES FOR SWAT
The following procedures serve as guidelines for the operational deployment of the SWAT team.

### 404.7.1  ON-SCENE DETERMINATION
When the on-duty shift supervisor or Watch Commander has a situation wherein he/she feels the SWAT Team should be activated, that supervisor shall first contact the SWAT Team Tactical Commander and the Field Operations Division Commander to advise them of the circumstances. If the Field Operations Division Commander is not available, the Administration Division Commander shall be notified.  A decision shall then be made regarding the appropriate response to the incident. Upon notification, the SWAT Team Tactical Commander shall arrange for all team members to be alerted and affect the necessary response.  The Chief of Police shall also be advised of the team activation as soon as is practical.

The Redding Police Department SWAT team is available to any requesting law enforcement agency with approval by the Field Operations Division Commander.  When a request for the team is received, it shall be immediately forwarded to the SWAT Team Tactical Commander who will determine if, in fact, the situation warrants activation of the team.  If the situation warrants activation of the team, the SWAT Tactical Commander will contact the Field Operations Division Commander and will request activation of the team.  Once permission is granted, the activation will follow standard procedures. The SWAT Tactical Commander will remain responsible for the deployment of the SWAT team while assisting another law enforcement agency.

Any division within the Redding Police Department may request the assistance of the SWAT team in planning or conducting appropriate operations.  A supervisor will contact the SWAT Tactical Commander with the request.  The SWAT Tactical Commander, if approving the request, will then follow the above-described procedures for team activation.

# Redding Police Department
### RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

404.7.2  APPROPRIATE SITUATIONS FOR USE OF SWAT

Redding Police Department SWAT Team will support the Redding Police Department and any other requesting law enforcement agency with a tactical response to critical incidents.  Critical incidents are defined as follows:

(a) **Hostage Situations** - The holding of any person against their will by an armed or potentially armed suspect.

(b) **Barricade Situations** - The standoff created by an armed or potentially armed suspect in any location, whether fortified or not, who is refusing to comply with police demands for surrender.

(c) **Sniper Situations** - The firing upon citizens and/or police by an armed suspect, whether stationary or mobile.

(d) **Apprehension** - The arrest or apprehension of armed or potentially armed suspects where there is a likelihood of armed resistance.

(e) **Warrant Service** - The service of arrest or search warrants wherein there is a likelihood of armed or potentially armed suspects and there is the potential of armed resistance.

(f) **Personal Protection** - The security of a special person, such as VIPs, witnesses, or suspects, based on a threat or potential threat to the well being of those persons.

(g) **Special Assignments** - Any assignment approved by the Chief of Police, Division Commnader, or SWAT Tactical Commander based on the level of threat or the need for special expertise.

404.7.3  OUTSIDE AGENCY REQUESTS

Deployment of the SWAT team in response to requests by other agencies must be authorized by the Field Operations Division Commander.

404.7.4  MULTI-JURISDICTIONAL SWAT OPERATIONS

The SWAT team should develop protocols, agreements, and/or working relationships to support multi-jurisdictional or regional responses.

(a) If it is anticipated that multi-jurisdictional SWAT operations will regularly be conducted; SWAT multi-agency and multi-disciplinary joint training exercises are encouraged.

(b) Members of the Redding Police Department SWAT team shall operate under the policies, procedures and command of the Redding Police Department when working in a multi-agency situation.

404.7.5  ACTIVATION RESPONSE

Upon notification and approval of a SWAT deployment, the SWAT Team Tactical Commander or designee shall utilize the PlanIt callout process. A recorded message will be delivered through phone call, text and/or email alerting all team members to the type of situation and instructions regarding a response.  Each team member will respond accordingly to PlanIt prompts which notify of the responding officers' estimated time of arrival or unavailability.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000774

# Redding Police Department

RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

In the event of a PlanIt call-out system failure, the Tactical Commander or designee will contact the Services Supervisor and request a SWAT callout be conducted via phone calls, text message, and/or email. Services personnel will keep a list of who is responding and their estimated time of arrival or unavailability.

All SWAT personnel shall update any changes in their contact numbers within the PlanIt program.

404.7.6   FIELD UNIT RESPONSIBILITIES
While waiting for the SWAT Team to respond to an incident, field personnel should, if safe, practical and sufficient resources exist:

(a)   Establish an inner and outer perimeter.

(b)   Establish a command post outside of the inner perimeter.

(c)   Establish an arrest/response team. The team actions may include:

    1.   Securing any subject or suspect who may surrender.

    2.   Taking action to mitigate a deadly threat or behavior.

(d)   Evacuate any injured persons or citizens in the zone of danger.

(e)   Attempt to establish preliminary communication with the suspect.

(f)   Be prepared to brief the SWAT Commander on the situation.

(g)   Plan for, and stage, anticipated resources.

404.7.7   ON-SCENE COMMAND RESPONSIBILITIES
Upon arrival of SWAT at the scene, the Incident Commander shall brief the SWAT Tactical Commander about the situation incident. Upon review, it will be the SWAT Commander's decision, with input from the Incident Commander, whether to deploy SWAT. Once the SWAT Commander authorizes deployment, the SWAT Commander will be responsible for the tactical portion of the operation. The Incident Commander shall continue supervision of the command post operation, outer perimeter security, and support for the SWAT team. The Incident Commander and the SWAT Tactical Commander (or his or her designee) shall maintain communications at all times. Unless the SWAT Team Tactical Commander relinquishes his control to another person outside the SWAT Team, no non-SWAT personnel should attempt to direct, supervise, or control any element or member of the SWAT Team.

## 404.8   MISSION PLANNING
The SWAT team will utilize a written operation plan for all pre-planned operations.  The operation plan will document how the operation is to be:

(a)   Conducted

(b)   Command

(c)   Control

(d)   Communications

---

Redding Police Department

RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

---

    (e)    Support required

All operational plans and relevant documents will be stored and maintained in a file for five years.

The SWAT Team Tactical Commander will ensure a log of events to be recorded on all SWAT operations and ensure all planning or decision-making documents are recorded. These tasks may be completed by the Tactical Support Unit.

### 404.9   DOCUMENTATION OF ACTIVATION

The SWAT Tactical Commander will ensure that an after action report is completed detailing the activation and use of SWAT. This report will contain facts pertinent to the operation. The Tactical Commander will maintain a file of the teams post-operation reports.

### 404.10   EXPLOSIVE BREACHING PROCEDURE

It is the standard operating procedure of the Redding Police Department Special Weapon and Tactics (SWAT) Team to utilize a SWAT team member or member of the Shasta County Bomb Squad who has attended the necessary training required to provide the option of explosive breaching. Explosive breaching is a SWAT team tactical option and can be employed when a rapid entry is critical to the success of the SWAT mission.

Explosive breaching should only be considered after other reasonable methods or procedures have been exhausted or deemed inappropriate. Explosive breaching can provide a sufficient tactical advantage which should also be considered to justify its use.

An explosive breach should be viewed as a breaching tool to be used in dangerous situations with minimal risk to officers and occupants of target structures. A secondary breaching plan should be prepared and considered failure of the explosive breach.

Explosive breaching techniques may not be appropriate in all breaching situations. An explosive breach should not be employed in the following circumstances:

    (a)    The construction of walls, doors or the building is not known.

    (b)    The location of the occupants/victims is not known.

    (c)    There is a known presence of unstable chemicals or other incendiary materials.

### 404.10.1   COMPOSITION OF STRUCTURE

Explosive Breaching Personnel are assigned as a subunit of the SWAT team which is under the control of a Tactical Commander.

### 404.10.2   COMMAND AND CONTROL

The explosive breaching unit is commanded by the SWAT  Tactical Commander consistent with Policy 404. The SWAT Tactical Commander is responsible for the deployment of the SWAT team, tactical decision making and tactical resolution of the incident.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000776

## Redding Police Department
RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

### 404.10.3   ACTIVATION PROCESS
Activation shall be consistent with this policy. Explosive breaching personnel will receive notification to deploy concurrently with the SWAT team and shall be included on the call out list.

### 404.10.4   EXECUTION
Explosive breaching personnel shall attend a SWAT briefing of the circumstances prior to initiating a breach. The explosive breaching personnel should complete an analysis of the target to be breached. Placement of the explosive breaching device should be placed by explosive breaching personnel. The explosive breaching device should be initiated by the explosive breacher upon direction from the Tactical Commander or designee.

If time allows a breaching plan should be drawn up by the explosive breaching personnel after analysis of the intended target is conducted. This breaching plan should include a recommended explosive charge, safe standoff distance and the corresponding PSI values associated with the charge to minimize the risk to officers, suspects and any other potential subjects that could be put in harms way. This breaching plan should also include a sketch which should show an estimate of the potential damage which could be incurred from the explosive charge to surrounding property. This information shall be provided to the Tactical Commander.

No explosive breach will be conducted unless a trained explosive breacher is on the scene. CAL-OSHA regulations do allow the placement of charges by non-licensed personnel; however, non-licensed personnel should only be used if they have received training on the safe handling and placement of explosives by a licensed explosive breacher.

### 404.10.5   TRAINING STANDARDS
Explosive breaching personnel shall train with SWAT at minimum two times annually and often enough to be proficient in the practice of explosive breaching. All explosive breaching personnel shall attend a certified breaching school.

### 404.10.6   HANDLING AND STORAGE
To maintain safety, access, and control to the explosives used for this program, explosives will be kept at the following locations and will be restricted to those personnel who need to handle them.

Explosives in this program will be defined primarily under the following two categories.

Primary explosives: This classification of explosive will generally be defined as those explosives which are more susceptible to shock, friction or heat. These types of explosives are likely to be encountered in the form of a blasting cap.

Secondary explosives: These explosives are generally classified as those explosives that are less susceptible to heat, shock, and friction. These types of explosives will likely be encountered in the form of detonating cord, C-4 and sheet explosives which also are commonly referred to as "Deta-Sheet."

# Redding Police Department
RPD Policy Manual

*Special Weapons and Tactics (SWAT) Team*

The explosives used for this program will be stored in magazines as outlined in this policy and within ATF regulations. Access to these explosive magazines and their contents will be restricted to those approved by the Tactical Commander..

Additional explosive charges can be placed and stored in magazines inside of the vehicle assigned to the explosive breacher/s. Current ATF regulations allow for the storage of less than 2.5lbs of explosives in an explosive magazine in a vehicle as long as the magazines are checked at least once every 7 days.

Any explosives contained in these magazines will be the minimal amount necessary to conduct an emergency breach if the breacher is required to respond from a location other then the main magazines.

Explosives can also be stored in these magazines for the purpose of transporting the explosives from the main magazines to a training site or to the location of a SWAT incident.

Any explosives stored in a breacher vehicle will be secured in the following manner:

    (a)    Blasting caps will be secured in a type two magazine pursuant to ATF regulations and will be secured with a keyed padlock with a shackle at least 3/8 inches thick. These explosives will not be stored with secondary explosives with the exception of a firing assembly. A firing assembly consisting of two non-electric blasting caps and a small amount of detonating cord consisting of 12 inches or less of 50 grain detonating cord may be kept in the primary explosive magazine.

    (b)    A separate type two magazine will be used for the storage of secondary explosives and also will be kept locked with a keyed padlock with a shackle at least 3/8 inches thick.

    (c)    Access to magazines contained inside of a breacher vehicle will be limited so as to keep an accurate account of the explosives and limit access to these explosives by non-essential personnel.

The breacher will maintain control and access to the magazines by maintaining control of the keys for the magazines.

It is recognized the need could arise for personnel other than the breacher to have access to the explosive magazines. Two additional sets of keys will be kept to allow access to the magazines in case of an emergency.

One set of keys will be maintained by the Tactical Commander. The second set of keys will be kept by the Assistant Tactical Commander. Under no circumstances should personnel who are not trained in the proper handling of explosives handle any explosives.

A log book will be kept with the breacher vehicle and will detail what explosives are placed in and removed or used by the breacher.  This log shall be reviewed by the Tactical Commander bi-annually.

In the event that explosives are stored in the magazines of the breacher vehicle, the breacher will maintain control over the vehicle and make sure the following steps are taken to maintain the security of the explosives.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000778

# Redding Police Department
RPD Policy Manual

---

*Special Weapons and Tactics (SWAT) Team*

---

The vehicle will be locked and an alarm will be activated on the vehicle whenever the breacher is out of the vehicle.

If the breacher will be away from the vehicle for an extended amount of time the vehicle will be locked and parked inside of the locked compound at the Redding Police Department.

Under no circumstances will a breaching vehicle be left at the police department with explosives contained in it without notifying the Tactical Commander and the on-duty patrol supervisor.

404.10.7   DOCUMENTATION
An after-action report will be conducted by the explosive breacher anytime explosives are placed on a target or actually detonated. If an explosive breach is conducted an after-action report will include pictures of the breach and respective damage to the target and surrounding area. This report will be attached to the SWAT after action report.

404.10.8   EQUIPMENT STANDARDS AND SPECIAL EQUIPMENT
Blasting Caps: All blasting caps used will be limited to non-electric caps which are ignited by percussion initiators and the use of shock tube. No electric or time fuse blasting caps will be used, unless the licensed breacher is certified by CAL-OSHA to use these items.

404.10.9   PERIODIC REVIEW
The Tactical Commander will annually review and, when necessary, update this program. The standards and requirements of this program will meet or exceed the standards set by P.O.S.T and CAL-OSHA.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Ride-Along Policy

## 405.1 PURPOSE AND SCOPE
The Ride-Along Program is designed to allow interested citizens to become familiar with the police department, its functions, and its responsibilities in the community.

### 405.1.1 ELIGIBILITY
The Redding Police Department Ride-Along Program is offered to all citizens meeting the program requirements of this policy. Every attempt will be made to accommodate interested citizens, however, an applicant may be disqualified without cause.

## 405.2 PROCEDURE TO REQUEST A RIDE-ALONG
Citizens shall be permitted to participate in the Ride-Along Program only after completion of a ride-along application/waiver and approval of the Ride-Along Coordinator and/or the shift supervisor. The signed application/waiver shall be turned into the on-duty supervisor before the participant rides.

Ride-Along participants who do not meet the criteria or follow the guidelines in this policy may not be allowed to participate in the program. The decision to allow the Ride-Along is at the discretion of the on-duty supervisor or Watch Commander.

If an officer, relative, or friend wishes to participate in the Ride-Along Program, the on-duty shift supervisor may schedule a ride-along. Riders falling under this category must complete and sign an application/waiver and may not ride more than once during a 4 month shift rotation. Previously scheduled riders shall not be canceled to accommodate an unscheduled rider. The Watch Commander or, in his absence, the on-duty supervisor shall have the final authority in canceling or discontinuing any ride-along.

### 405.2.1 PROGRAM REQUIREMENTS
Any interested citizen, 16 years or older, may apply as follows:

(a) An application/waiver may be obtained at the front counter of the Department.

(b) Complete and submit the application/waiver, which will be forwarded to the Coordinator.

(c) Citizens shall participate in no more than one, four-hour ride-along within a six-month period.

(d) Citizens shall satisfactorily pass a record check and warrant check, including a criminal history via the California Department of Justice and the Federal Bureau of Investigations records.

(e) No rider will be allowed to ride between 0200 and 0600 hours unless cleared by a Watch Commander.

(f) Whenever possible all riders shall stay within or at the police unit until the situation is stabilized.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000780

Redding Police Department

RPD Policy Manual

*Ride-Along Policy*

(g)     Riders are prohibited from possessing any type of weapon. This includes firearms, chemical agents, knives, stun-guns, or any weapon deemed inappropriate by the on-duty supervisor (see 405.2.4 for exceptions).

(h)     Attire for riders shall conform to acceptable standards. The wearing of shorts, tank tops, or other exceptionally informal or provocative attire is prohibited. Shoes shall be worn. Reasonable dress shall be casual business attire. Acceptable personal hygiene is required. A Ride-Along who is distracting or in any way interferes with the officer may not be allowed to participate in the Ride-Along.

(i)     An officer assigned a rider has the responsibility to act with due care and shall make every effort to prevent the rider from being placed in a position of danger. In the event, the officer elects to leave the rider in an "open" public location while en route to a dangerous call, the officer is responsible for making arrangements to have the rider picked up as soon as possible.

(j)     A Ride-Along who exhibits behavior which prevents them from riding shall be documented by the Ride-Along coordinator on the Ride-Along application

All ride-along participants will be required to display a ride-along identification card. The supervisor will issue the ride-along ID card to the rider at the beginning of the ride-along and ensure the ride-along card is returned at the conclusion of the ride-along. The ride-along ID card number will be recorded on the rider application/waiver in the upper right-hand corner. The ID card is not required for Redding Police Department employees or uniformed chaplains, explorers, or volunteers.

## 405.2.2  RIDE-ALONG CRIMINAL HISTORY CHECK

All Ride-along applicants are subject to a criminal history check.  The criminal history check may include a local records check and a Department of Justice Automated Criminal History System check through CLETS prior to their approval as a ride-along with a law enforcement officer (provided that the ride-along is not an employee of the Redding Police Department) (Policies, Practices CLETS and Procedures Manual § 1.6.1.F.2.).

## 405.2.3  RIDE ALONG COORDINATOR

A Ride-Along Coordinator will be designated by the Field Operations Division Commander. The Coordinator shall:

(a)     Strive to balance riders on shifts.

(b)     Ensure that all scheduled riders are listed on the Ride-Along calendar.

(c)     Ensure that no more than two riders will be allowed per shift unless authorized by the shift supervisor.

(d)     Ensure that the completed application/waiver is placed in the historical file for two years.

(e)     After meeting the program requirements, the Program Coordinator shall:

(f)     Contact the applicant and schedule the ride or inform the applicant he/she will not be allowed to participate.

(g)     Enter the applicant's name, assigned date, and time on the ride-along calendar.

# Redding Police Department
RPD Policy Manual

(h)   Enter the date and time on the application/waiver and forward it to the appropriate shift supervisor.

## 405.2.4   PEACE OFFICER RIDE-ALONGS
A peace officer ride-along will not be permitted with on-duty officers without supervisor approval. In the event that such a ride-along is permitted, the peace officer shall not represent themselves as a peace officer or participate in any law enforcement activity, except as emergency circumstances may require.

(a)   Only sworn peace officers authorized by their employing agency to carry firearms off-duty may possess a firearm during a ride-along.

(b)   Sworn peace officer riders will comply with the ride-along dress code and may wear concealed body armor.

(c)   Information will be given out in roll-calls and via an MDC announcement whenever there is an armed rider. This information will include which officer the rider is with, which beat he is on, and a clothing description of the rider.

(d)   Armed ride-along officers should never be assigned to cover or assist in any way unless their own safety or the safety of other officers are in jeopardy.

(e)   Armed ride-along officers should never take the place of back-up from other RPD units.

(f)   Armed ride-along officers' firearms shall be carried concealed on their person.

## 405.2.5   DEPARTMENT EMPLOYEES
Redding Police Department cadets, explorers, chaplains, and employees are exempt from the requirement to complete ride-along applications/waivers.

The cadet, explorer, and chaplain supervisor shall coordinate their riders with the Ride-Along Coordinator. The frequency of ride-alongs by cadets, explorers, and chaplains shall be established by their supervisors in concurrence with the Field Operations Division Commander.

## 405.3   OFFICER'S RESPONSIBILITY
The officer shall advise the dispatcher that a ride-along is present in the vehicle before going into service. Officers shall consider the safety of the ride-along at all times. Officers should use sound discretion when encountering a potentially dangerous situation, and if feasible, let the participant out of the vehicle in a well-lighted place of safety. The dispatcher will be advised of the situation and as soon as practical have another police unit respond to pick up the participant at that location. The ride-along may be continued or terminated at this time.

## 405.3.1   CONTROL OF RIDE-ALONG
The assigned employee shall maintain control over the ride-along at all times and instruct him/her in the conditions that necessarily limit their participation. These instructions should include:

(a)   The ride-along will follow the directions of the officer;

(b)   The ride-along will not become involved in any investigation, handling of evidence, discussions with victims or suspects, or handling any police equipment;

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000782

# Redding Police Department

RPD Policy Manual

*Ride-Along Policy*

(c) The ride-along may terminate the ride at any time and the officer may return the observer to their home or to the station if the ride-along interferes with the performance of the officer's duties;

(d) Ride-alongs may be allowed to continue riding during the transportation and booking process provided this does not jeopardize their safety;

(e) Officers will not allow any ride-alongs to be present in any residences or situations that would jeopardize their safety or cause undue stress or embarrassment to a victim or any other citizen;

(f) Under no circumstance shall a civilian ride along be permitted to enter a private residence with an officer without the expressed consent of the resident or other authorized person.

## 405.4  SHIFT SUPERVISOR RESPONSIBILITIES

The shift supervisor will assign the rider to an officer, complete the application/waiver, and forward it to the Coordinator.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

| Policy |
|--------|
| **406** |

# Hazardous Material, Trauma Scene Waste and Spilled Loads Response

## 406.1   PURPOSE AND SCOPE
Hazardous materials present a potential harm to employees resulting from their exposure. To comply with Title 8, California Code of Regulations, § 5194, the following is to be the policy of this department.

### 406.1.1   HAZARDOUS MATERIAL DEFINED
A hazardous material is a substance which by its nature, containment and reactivity, has the capability of inflicting harm during exposure; characterized as being toxic, corrosive, flammable, reactive, an irritant or strong sensitizer and thereby posing a threat to health when improperly managed.

Public property is defined as City-owned property; private property is defined as all other property.

## 406.2   HAZARDOUS MATERIAL RESPONSE
Employees may encounter situations involving suspected hazardous materials, such as at the scene of a traffic accident, chemical spill or fire. When employees come into contact with a suspected hazardous material, certain steps should be taken to protect themselves and citizens.

Pursuant to City Manager Police CM03-01, Redding Fire Department personnel shall serve as the Incident Commander for any hazardous material incidents. The on-duty Police Department watch commander, or supervisorin their absence,shall respond to all cases of reported hazardous material incidents and coordinate the police response to those incidents. The Police Department in conjunction with the Streets Division shall be responsible for traffic and crowd control.

The following steps should be considered at any scene involving suspected hazardous materials:

    (a)    Attempt to identify the type of hazardous substance. (Identification can be determined by placard, driver's manifest or statements from the person transporting).

    (b)    Notify the Fire Department.

    (c)    Provide first-aid for injured parties if it can be done safely and without contamination.

    (d)    Begin evacuation of the immediate area and surrounding areas, depending on the substance. Voluntary evacuation should be considered; however, depending on the substance, mandatory evacuation may be necessary.

    (e)    Notify the local health authority. Such notification is mandatory when a spilled or released item is a pesticide (Health and Safety Code § 105215).

    (f)    Notify the Department of Toxic Substances Control. This is mandatory when an officer comes in contact with, or is aware of, the presence of a suspected hazardous substance at a site where an illegal controlled substance is or was manufactured (Health and Safety § 25354.5).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department
### RPD Policy Manual

## *Hazardous Material, Trauma Scene Waste and Spilled Loads Response*

Pursuant to the City Manager Policy, if the hazardous material has been identified and is non-threatening, the Incident Commander may delegate responsibility to the applicable City department for incident management until the incident is resolved. The Fire Department maintains a list of available hazardous material cleanup companies to respond to assist with cleanup.

## 406.3   REPORTING EXPOSURE(S)

Department personnel who believe that they have been exposed to a hazardous material shall immediately report the exposure to a supervisor. Each exposure shall be documented by a city incident report that shall be forwarded via the chain of command to the Division Commander.Should the affected employee be unable to document the exposure for any reason, it shall be the responsibility of the notified supervisor to complete the memorandum.

Injury or illness caused or believed to be caused from exposure to hazardous materials shall be reported the same as any other on-duty injury or illness in addition to a crime report or incident report.

### 406.3.1   SUPERVISOR RESPONSIBILITY

When a supervisor has been informed that an employee has been exposed to a hazardous material, he/she shall ensure that immediate medical treatment is obtained and appropriate action is taken to lessen the exposure. The supervisor should fill out a City of Redding Incident Report to document the exposure.

To ensure the safety of employees, safety equipment is available through supervisory personnel. Safety items not maintained by the Department will be obtained through the Fire Department.

## 406.4   TRAUMA SCENE WASTE

Trauma scene waste is defined in Section 5193, Title 8, California Code of Regulations, as human blood, body fluids, or other residues from the scene of a serious human injury, illness, or death.

Trauma scene wastes are often present at the scene of crimes, accidents, natural illnesses, and death.The procedures for cleanup, transportation, and disposal of these wastes are regulated by the California Department of Health Services, Medical Waste Management Program.

Trauma scene waste is required to be removed by a trauma scene waste management practitioner on public property. Private property is at the discretion of the property owner.

Personnel locating or working at a scene where trauma scene waste is present shall attempt to avoid coming into contact with the material to prevent exposure and attempt to secure the area to prevent spreading the waste material.

Identification Technicians (ID Techs) who encounter a minor amount of blood, body fluids or other residues on public property may elect to clean up the minor amount of trauma scene waste. Any trauma scene waste shall be placed in a red biohazard bag and disposed of in an approved biohazard box located in the ID room.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000785

# Redding Police Department

RPD Policy Manual

## Hazardous Material, Trauma Scene Waste and Spilled Loads Response

Employees that encounter large spills or major incidents such as fatal traffic collisions or homicides on public property shall notify the on-duty supervisor who will coordinate through SHASCOM for a call out of a trauma scene waste management practitioner.The trauma scene waste management practitioner is responsible for cleanup, transportation, and disposal of the material located on public property.

Employees who encounter large spills or major incidents such as homicide or other incidents on private property shall notify the owner of the property of their responsibility to have the trauma scene waste removed by an approved trauma scene waste management practitioner. The owner of the private property is responsible for the cleanup, transportation, and disposal of the material.

Personnel who encounter trauma scene waste on either public or private property shall also notify the Shasta County Department of Resource Management, Environmental Health Division at (530) 225-5787. After 1700 hours, supervisors shall have SHASCOM contact a member of the Environmental Health Division using their resource file and advise them of the situation. Environmental Health Division is responsible to follow-up and ensure the appropriate measures have been taken to clean-up the trauma scene waste.

When trauma scene waste is located on private property and the owner cannot be located, personnel are required to notify the Environmental Health Division and advise them of the location and amount of material prior to clearing the scene.

### 406.5  SPILLED LOADS

Personnel who respond to or encounter spilled loads on roadways shall take all necessary precautions to ensure the safety of the public.

If the load is determined to be hazardous the above-listed protocols will be followed.

If the load is determined to be non-threatening, the appropriate agency with responsibility for the roadway (Cal Trans or City of Redding Streets Division) shall be notified to assist with traffic control if the roadway is to be closed for an extended length of time. The on-duty supervisor will assess the situation and be responsible for calling out the appropriate resources to handle the incident.

Due to environmental and medical regulations, personnel shall not call out the Fire Department to provide a "wash down" for the purposes of cleaning up any hazardous materials, trauma scene waste or spilled loads. If the Redding Fire Department has already arrived on scene and is providing assistance, and the amount of material is determined to be minor in nature, they may decide on a case-by-case basis, to provide assistance with "wash downs".

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Redding Police Department**

RPD Policy Manual

# Hostage and Barricade Incidents

## 407.1  PURPOSE AND SCOPE

The  purpose of this policy is to provide guidelines for situations where officers have legal cause to contact, detain or arrest a person, and the person refuses to submit to the lawful requests of the officers by remaining in a structure or vehicle and/or by taking a hostage.

The scope of this policy is not intended to address all variables that officers encounter during their initial response or when a hostage or barricade situation has developed. This policy does not require or purport to recommend specific strategies or tactics for resolution as each incident is a dynamic and rapidly evolving event.

### 407.1.1  DEFINITIONS

Definitions related to this policy include:

**Barricade situation** - An incident where a person maintains a position of cover or concealment and ignores or resists law enforcement personnel, and it is reasonable to believe the subject is armed with a dangerous or deadly weapon.

**Hostage situation** - An incident where it is reasonable to believe a person is:

(a)    Unlawfully held by a hostage-taker as security so that specified terms or conditions will be met.

(b)    Unlawfully held against his/her will under threat or actual use of force.

## 407.2  POLICY

It is the policy of the Redding Police Department to address hostage and barricade situations with due regard for the preservation of life and balancing the risk of injury, while obtaining the safe release of hostages, apprehending offenders and securing available evidence.

## 407.3  COMMUNICATION

When circumstances permit, initial responding officers should try to establish and maintain lines of communication with a barricaded person or hostage-taker. Officers should attempt to identify any additional subjects, inquire about victims and injuries, seek the release of hostages, gather intelligence information, identify time-sensitive demands or conditions and obtain the suspect's surrender.

When available, department-authorized negotiators should respond to the scene as soon as practicable and assume communication responsibilities. Negotiators are permitted to exercise flexibility in each situation based upon their training, the circumstances presented, suspect actions or demands and the available resources.

### 407.3.1  EMERGENCY COMMUNICATIONS

Only an officer who has been designated by the District Attorney or Attorney General may use or authorize the use of an electronic amplifying or recording device to eavesdrop on or record,

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000787

Redding Police Department

RPD Policy Manual

*Hostage and Barricade Incidents*

or both, oral communication in response to an emergency situation involving a hostage or the barricading of a location, and only when (Penal Code § 633.8(b)):

(a) The officer reasonably determines an emergency situation exists that involves the immediate danger of death or serious physical injury to any person within the meaning of 18 USC § 2518(7)(a)(i),

(b) The officer reasonably determines that the emergency situation requires that eavesdropping on oral communication occur immediately, and

(c) There are grounds upon which an order could be obtained pursuant to 18 USC § 2516(2).

(d) An application for an order approving the eavesdropping and complying with the requirements of Penal Code § 629.50 is made within 48 hours of the beginning of the eavesdropping.

(e) The contents of any oral communications overheard are recorded on tape or other comparable device.

## 407.4 FIRST RESPONDER CONSIDERATIONS

First responding officers should promptly and carefully evaluate all available information to determine whether an incident involves, or may later develop into, a hostage or barricade situation.

The first responding officer should immediately request a supervisor's response as soon as it is determined that a hostage or barricade situation exists. The first responding officer shall assume the duties of the supervisor until relieved by a supervisor or a more qualified responder. The officer shall continually evaluate the situation, including the level of risk to officers, to the persons involved and to bystanders, and the resources currently available.

The handling officer should brief the arriving supervisor of the incident, including information about suspects and victims, the extent of any injuries, additional resources or equipment that may be needed, and current perimeters and evacuation areas.

### 407.4.1 BARRICADE SITUATION

Unless circumstances require otherwise, officers handling a barricade situation should attempt to avoid a forceful confrontation in favor of stabilizing the incident by establishing and maintaining lines of communication while awaiting the arrival of specialized personnel and trained negotiators. During the interim the following options, while not all-inclusive or in any particular order, should be considered:

(a) Ensure injured persons are evacuated from the immediate threat area if it is reasonably safe to do so. Request medical assistance.

(b) Assign personnel to a contact/react team to control the subject should he/she attempt to exit the building, structure or vehicle, and attack, use deadly force, attempt to escape or surrender prior to additional resources arriving.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000788

## Redding Police Department
### RPD Policy Manual

*Hostage and Barricade Incidents*

---

    (c)    Request additional personnel, resources and equipment as needed (e.g., SWAT, HNT, canine team, air support).

    (d)    Provide responding emergency personnel with a safe arrival route to the location.

    (e)    Evacuate uninjured persons in the immediate threat area if it is reasonably safe to do so.

    (f)    Attempt or obtain a line of communication and gather as much information on the subject as possible, including weapons, other involved parties, additional hazards or injuries.

    (g)    Establish an inner and outer perimeter as circumstances require and resources permit to prevent unauthorized access.

    (h)    Evacuate bystanders, residents, and businesses within the inner and then outer perimeter as appropriate. Check for injuries, the presence of other involved subjects, witnesses, evidence or additional information.

    (i)    Determine the need for and notify the appropriate persons within and outside the Department, such as command officers and the Public Information Officer (PIO).

    (j)    If necessary and available, establish a tactical or exclusive radio frequency for the incident.

    (k)    Establish a command post.

### 407.4.2   HOSTAGE SITUATION

Officers presented with a hostage situation should attempt to avoid a forceful confrontation in favor of controlling the incident in anticipation of the arrival of specialized personnel and trained hostage negotiators. However, it is understood that hostage situations are dynamic and can require that officers react quickly to developing or changing threats. The following options, while not all-inclusive or in any particular order, should be considered:

    (a)    Ensure injured persons are evacuated from the immediate threat area if it is reasonably safe to do so. Request medical assistance.

    (b)    Assign personnel to a contact/react team to control the subject should he/she attempt to exit the building, structure or vehicle, and attack, use deadly force, attempt to escape or surrender prior to additional resources arriving.

    (c)    Establish a rapid response team in the event it becomes necessary to rapidly enter a building, structure or vehicle, such as when the suspect is using deadly force against any hostages (see the Rapid Response and Deployment Policy).

    (d)    Assist hostages or potential hostages to escape if it is reasonably safe to do so. Hostages should be kept separated if practicable pending further interview.

    (e)    Request additional personnel, resources and equipment as needed (e.g., SWAT, HNT, canine team, air support).

    (f)    Provide responding emergency personnel with a safe arrival route to the location.

    (g)    Evacuate uninjured persons in the immediate threat area if it is reasonably safe to do so.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000789

# Redding Police Department

RPD Policy Manual

*Hostage and Barricade Incidents*

(h) Coordinate pursuit or surveillance vehicles and control of travel routes.

(i) Attempt to obtain a line of communication and gather as much information about the suspect as possible, including any weapons, victims and their injuries, additional hazards, other involved parties and any other relevant intelligence information.

(j) Establish an inner and outer perimeter as resources and circumstances permit to prevent unauthorized access.

(k) Evacuate bystanders, residents and businesses within the inner and then outer perimeter as appropriate. Check for injuries, the presence of other involved subjects, witnesses, evidence or additional information.

(l) Determine the need for and notify the appropriate persons within and outside the Department, such as command officers and the PIO.

(m) If necessary and available, establish a tactical or exclusive radio frequency for the incident.

## 407.5  SUPERVISOR RESPONSIBILITIES

Upon being notified that a hostage or barricade situation exists, the supervisor should immediately respond to the scene, assess the risk level of the situation, establish a proper chain of command and assume the role of Incident Commander until properly relieved. This includes requesting a Special Weapons and Tactics Team (SWAT) response if appropriate and apprising the SWAT Tactical Commander of the circumstances. In addition, the following options should be considered:

(a) Ensure injured persons are evacuated and treated by medical personnel.

(b) Ensure the completion of necessary first responder responsibilities or assignments.

(c) Request the hostage negotiationteam, specialized units, additional personnel, resources or equipment as appropriate.

(d) Establish a command post location as resources and circumstances permit.

(e) Designate assistants who can help with intelligence information and documentation of the incident.

(f) If it is practicable to do so, arrange for video documentation of the operation.

(g) Consider contacting utility and communication providers to restrict such services (e.g., restricting electric power, gas, telephone service).

  1. When considering restricting communication services, a supervisor should make the determination that there is reason to believe an emergency situation exists involving immediate danger of death or great bodily harm and that an interruption to communication services is necessary to protect public safety (Penal Code § 11471). The supervisor must ensure the Department obtains a court order, in accordance with Penal Code § 11472, prior to requesting the interruption. In the case of an extreme emergency when there is insufficient time to obtain an order prior to the request, application for the order must be submitted within six hours after initiating the interruption. If six hours is not possible, then the application for the court order shall be made at the first reasonably available opportunity, but no later than 24 hours in accordance with Penal Code § 11475.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000790

# Redding Police Department

RPD Policy Manual

*Hostage and Barricade Incidents*

---

(h) Ensure adequate law enforcement coverage for the remainder of the City during the incident. The supervisor should direct non-essential personnel away from the scene unless they have been summoned by the supervisor or SHASCOM.

(i) Identify a media staging area outside the outer perimeter and have the department Public Information Officer or a designated temporary media representative provide media access in accordance with the Media Relations Policy.

(j) Identify the need for mutual aid and the transition or relief of personnel for incidents of extended duration.

(k) Debrief personnel and review documentation as appropriate.

## 407.6  SWAT RESPONSIBILITIES

The SWAT Commander will decide, with input from the Incident Commander, whether to deploy the SWAT during a hostage or barricade situation. Once the SWAT Commander authorizes deployment, the SWAT Tactical Commander or the authorized designee will be responsible for the tactical portion of the operation. The Incident Commander shall continue supervision of the command post operation, outer perimeter security and evacuation, media access and support for the SWAT. The Incident Commander and the SWAT Tactical Commander or the authorized designee shall maintain communications at all times.

## 407.7  REPORTING

Unless otherwise relieved by a supervisor or Incident Commander, the handling officer at the scene is responsible for completion and/or coordination of incident reports.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000791

**Redding Police Department**

RPD Policy Manual

# Response to Bomb Calls

## 408.1  PURPOSE AND SCOPE

The purpose of this policy is to provide guidelines to assist members of the Redding Police Department in their initial response to incidents involving explosives, explosive devices, explosion/ bombing incidents or threats of such incidents. Under no circumstances should these guidelines be interpreted as compromising the safety of first responders or the public. When confronted with an incident involving explosives, safety should always be the primary consideration.

## 408.2  POLICY

It is the policy of the Redding Police Department to place a higher priority on the safety of persons and the public over damage or destruction to public or private property. This policy is exempt from disclosure under the Public Records Act as "Records of intelligence information or security procedures," 6254(f) Government Code. **Do not discuss or divulge any aspect of this policy with non-law enforcement personnel.**

## 408.3  RECEIPT OF BOMB THREAT

Department members receiving a bomb threat should obtain as much information from the individual as reasonably possible, including the type, placement and alleged detonation time of the device.

If the bomb threat is received on a recorded line, reasonable steps should be taken to ensure that the recording is preserved in accordance with established Department evidence procedures.

The member receiving the bomb threat should ensure that the Watch Commander is immediately advised and informed of the details. This will enable the Watch Commander to ensure that the appropriate personnel are dispatched, and, as appropriate, the threatened location is given an advance warning.

## 408.4  GOVERNMENT FACILITY OR PROPERTY

A bomb threat targeting a government facility may require a different response based on the government agency.

### 408.4.1  REDDING POLICE DEPARTMENT FACILITY

If the bomb threat is against the Redding Police Department facility, the Watch Commander will direct and assign officers as required for coordinating a general building search or evacuation of the police department, as he/she deems appropriate.

### 408.4.2  OTHER COUNTY OR MUNICIPAL FACILITY OR PROPERTY

If the bomb threat is against a county or municipal facility within the jurisdiction of the Redding Police Department that is not the property of this Department, the appropriate agency will be promptly informed of the threat. Assistance to the other entity may be provided as the Watch Commander deems appropriate.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Response to Bomb Calls*

---

### 408.4.3   FEDERAL BUILDING OR PROPERTY

If the bomb threat is against a federal building or property, the Federal Protective Service should be immediately notified. The Federal Protective Service provides a uniformed law enforcement response for most facilities, which may include use of its Explosive Detector Dog teams.

If the bomb threat is against a federal government property where the Federal Protective Service is unable to provide a timely response, the appropriate facility's security or command staff should be notified.

Bomb threats against a military installation should be reported to the military police or other military security responsible for the installation.

### 408.5   PRIVATE FACILITY OR PROPERTY

When a member of this Department receives notification of a bomb threat at a location in the City of Redding, the member receiving the notification should obtain as much information as reasonably possible from the notifying individual, including:

    (a)    The location of the facility.

    (b)    The nature of the threat.

    (c)    Whether the type and detonation time of the device is known.

    (d)    Whether the facility is occupied and if so, the number of occupants currently on-scene.

    (e)    Whether the individual is requesting police assistance at the facility.

    (f)    Whether there are any internal facility procedures regarding bomb threats in place, such as:

        1.    No evacuation of personnel and no search for a device.

        2.    Search for a device without evacuation of personnel.

        3.    Evacuation of personnel without a search for a device.

        4.    Evacuation of personnel and a search for a device.

The member receiving the bomb threat information should ensure that the Watch Commander is immediately notified so that he/she can communicate with the person in charge of the threatened facility.

An officer shall NOT order an evacuation unless:

    (a)    A suspicious package or device is located,

    (b)    Other exigent circumstances are present,

    (c)    The facility is a City-owned or leased building.

An officer may advise the person in charge, they may:

    (a)    Evacuate the building for a search,

    (b)    Assist in searching without evacuation,

    (c)    Take no action.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000793

# Redding Police Department

RPD Policy Manual

*Response to Bomb Calls*

---

408.5.1   ASSISTANCE

The Watch Commander should be notified when police assistance is requested. The Watch Commander will make the decision whether the Department will render assistance and at what level. Information and circumstances that indicate a reasonably apparent, imminent threat to the safety of either the facility or the public may require a more active approach, including police control over the facility.

Should the Watch Commander determine that the Department will assist or control such an incident, he/she will determine:

    (a)    The appropriate level of assistance.

    (b)    The plan for assistance.

    (c)    Whether to evacuate and/or search the facility.

    (d)    Whether to involve facility staff in the search or evacuation of the building.

        1.    The person in charge of the facility should be made aware of the possibility of damage to the facility as a result of a search.

        2.    The safety of all participants is the paramount concern.

    (e)    The need for additional resources, including:

        1.    Notification and response, or standby notice, for fire and emergency medical services.

Even though a facility does not request police assistance to clear the interior of a building, based upon the circumstances and known threat, officers may be sent to the scene to evacuate other areas that could be affected by the type of threat, or for traffic and pedestrian control.

## 408.6   FOUND DEVICE

When handling an incident involving a suspected explosive device, the following guidelines, while not all inclusive, should be followed:

    (a)    No known or suspected explosive item should be considered safe regardless of its size or apparent packaging.

    (b)    The device should not be touched or moved except by the bomb squad or military explosive ordnance disposal team.

    (c)    Personnel should not transmit on any equipment that is capable of producing radio frequency energy within the evacuation area around the suspected device. This includes the following:

        1.    Two-way radios

        2.    Cell phones

        3.    Other personal communication devices

    (d)    The appropriate bomb squad or military explosive ordnance disposal team should be summoned for assistance.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000794

# Redding Police Department

RPD Policy Manual

*Response to Bomb Calls*

(e)   The largest perimeter reasonably possible should initially be established around the device based upon available personnel and the anticipated danger zone.

(f)   A safe access route should be provided for support personnel and equipment.

(g)   Search the area for secondary devices as appropriate and based upon available resources.

(h)   Consider evacuation of buildings and personnel near the device or inside the danger zone and the safest exit route.

(i)   Promptly relay available information to the Watch Commander including:

1.   The time of discovery.

2.   The exact location of the device.

3.   A full description of the device (e.g., size, shape, markings, construction).

4.   The anticipated danger zone and perimeter.

i.   minimum of 300 feet in every direction behind solid cover

ii.   1000 feet in every direction with no cover.

5.   The areas to be evacuated or cleared.

## 408.6.1  TYPES OF EXPLOSIVE DEVICES

Military Ordinance

(a)   Officers shall not touch or handle any military ordnance, including but not limited to hand grenades, mortars, mines, etc.

(b)   Ammunition over .60 caliber shall be considered an explosive device and a Bomb Technician shall be notified.

(c)   If military ordnance are encountered, the officer shall establish a perimeter and evacuate to a distance of 1000 feet.

Incendiary device

(a)   Any breakable container believed to be a fire-bomb, with or without a wick, shall not be handled.

(b)   The area around the device shall be evacuated and secured pending the arrival of Bomb Technicians.

Dry Ice and CO2 Bombs

(a)   Dry ice and CO2 bombs are classified as an explosive device under Penal Code section 12301.

(b)   Any container which is believed to be a dry ice or chemical bomb shall not be handled.

(c)   The area around the device shall be evacuated and secured pending the arrival of Bomb Technicians.

Fireworks

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000795

*Response to Bomb Calls*

(a) Fireworks should always be handled with care and caution because they contain a pyrotechnic composition that is explosive by nature.

(b) Certain types of fireworks, i.e. small bottle rockets, roman candles, and small firecrackers maybe booked into property only if necessary. These items need to be safely packaged and stored in an OUTSIDE storage area. Packaging shall be clearly marked "FIREWORKS."

(c) Bomb Technicians shall be notified, take possession, and dispose of any:

1. Fireworks in poor condition (wrappers old, containers wet or bent).

2. Fuse cardboard container constructed to produce an audible effect (M80, M100, etc.).

3. Homemade fireworks.

## 408.7 EXPLOSION/BOMBING INCIDENTS

When an explosion has occurred, there are multitudes of considerations which may confront the responding officers. As in other catastrophic events, a rapid response may help to minimize injury to victims, minimize contamination of the scene by gathering crowds, or minimize any additional damage from fires or unstable structures.

### 408.7.1 CONSIDERATIONS

Officers responding to explosions, whether accidental or a criminal act, should consider the following actions:

(a) Assess the scope of the incident, including the number of victims and the extent of injuries.

(b) Request additional personnel and resources, as appropriate.

(c) Assist with first aid.

(d) Identify and take appropriate precautions to mitigate scene hazards, such as collapsed structures, bloodborne pathogens, and hazardous materials.

(e) Assist with the safe evacuation of victims, if possible.

(f) Establish an inner perimeter to include entry points and evacuation routes. Search for additional or secondary devices.

(g) Preserve evidence.

(h) Establish an outer perimeter and evacuate if necessary.

(i) Identify witnesses.

(j) Inquire about secondary threats (I.e. Chlorine storage, gas lines, etc.)

(k) Work with the Fire Department to establish a Command Post and staging area.

### 408.7.2 NOTIFICATIONS

When an explosion has occurred, the following people should be notified as appropriate:

• Fire Department

Redding Police Department
RPD Policy Manual

*Response to Bomb Calls*

- Bomb Squad

- Additional Department personnel, such as investigators and forensic services

- Field Supervisor

- Watch Commander

- Other law enforcement agencies, including local, state or federal agencies, such as the FBI and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

- Other government agencies, as appropriate

### 408.7.3  CROWD CONTROL
Only authorized members with a legitimate need should be permitted access to the scene. Spectators and other unauthorized individuals should be restricted to a safe distance as is reasonably practicable given the available resources and personnel.

### 408.7.4  PRESERVATION OF EVIDENCE
As in any other crime scene, steps should immediately be taken to preserve the scene. The Watch Commander should assign officers to protect the crime scene area, which could extend over a long distance. Consideration should be given to the fact that evidence may be imbedded in nearby structures or hanging in trees and bushes.

### 408.8  REPORTING
The patrol officer assigned to investigate a bomb threat or explosion/detonation shall prepare a written offense report.

# Crisis Intervention Incidents

## 409.1   PURPOSE AND SCOPE
This policy provides guidelines for interacting with those who may be experiencing a mental health or emotional crisis. Interaction with such individuals has the potential for miscommunication and violence. It often requires an officer to make difficult judgments about a person's mental state and intent in order to effectively and legally interact with the individual.

### 409.1.1   DEFINITIONS
Definitions related to this policy include:

**Person in crisis** - A person whose level of distress or mental health symptoms have exceeded the person's internal ability to manage his/her behavior or emotions. A crisis can be precipitated by any number of things, including an increase in the symptoms of mental illness despite treatment compliance; non-compliance with treatment, including a failure to take prescribed medications appropriately; or any other circumstance or event that causes the person to engage in erratic, disruptive or dangerous behavior that may be accompanied by impaired judgment.

## 409.2   POLICY
The Redding Police Department is committed to providing a consistently high level of service to all members of the community and recognizes that persons in crisis may benefit from intervention. The Department will collaborate, where feasible, with mental health professionals to develop an overall intervention strategy to guide its members' interactions with those experiencing a mental health crisis. This is to ensure equitable and safe treatment of all involved.

## 409.3   SIGNS
Members should be alert to any of the following possible signs of mental health issues or crises:

    (a)   A known history of mental illness

    (b)   Threats of or attempted suicide

    (c)   Loss of memory

    (d)   Incoherence, disorientation or slow response

    (e)   Delusions, hallucinations, perceptions unrelated to reality or grandiose ideas

    (f)   Depression, pronounced feelings of hopelessness or uselessness, extreme sadness or guilt

    (g)   Social withdrawal

    (h)   Manic or impulsive behavior, extreme agitation, lack of control

    (i)   Lack of fear

    (j)   Anxiety, aggression, rigidity, inflexibility or paranoia

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000798

Redding Police Department

RPD Policy Manual

*Crisis Intervention Incidents*

Members should be aware that this list is not exhaustive. The presence or absence of any of these should not be treated as proof of the presence or absence of a mental health issue or crisis.

## 409.4   COORDINATION WITH MENTAL HEALTH PROFESSIONALS

The Chief of Police should designate an appropriate Division Commander or Watch Commander to collaborate with mental health professionals to develop an education and response protocol. It should include a list of community resources, to guide Department interaction with those who may be suffering from mental illness or who appear to be in a mental health crisis.

## 409.5   FIRST RESPONDERS

Safety is a priority for first responders. It is important to recognize that individuals under the influence of alcohol, drugs or both may exhibit symptoms that are similar to those of a person in a mental health crisis. These individuals may still present a serious threat to officers; such a threat should be addressed with reasonable tactics. Nothing in this policy shall be construed to limit an officer's authority to use reasonable force when interacting with a person in crisis.

Officers are reminded that mental health issues, mental health crises and unusual behavior alone are not criminal offenses. Individuals may benefit from treatment as opposed to incarceration.

An officer responding to a call involving a person in crisis should:

(a)   Promptly assess the situation independent of reported information and make a preliminary determination regarding whether a mental health crisis may be a factor.

(b)   Request available backup officers and specialized resources as deemed necessary and, if it is reasonably believed that the person is in a crisis situation, use conflict resolution and de-escalation techniques to stabilize the incident as appropriate.

(c)   If feasible, and without compromising safety, turn off flashing lights, bright lights or sirens.

(d)   Attempt to determine if weapons are present or available.

1.   Prior to making contact, and whenever possible and reasonable, conduct a search of the Department of Justice Automated Firearms System via the California Law Enforcement Telecommunications System (CLETS) to determine whether the person is the registered owner of a firearm (Penal Code § 11106.4).

(e)   Take into account the person's mental and emotional state and potential inability to understand commands or to appreciate the consequences of his/her action or inaction, as perceived by the officer.

(f)   Secure the scene and clear the immediate area as necessary.

(g)   Employ tactics to preserve the safety of all participants.

(h)   Determine the nature of any crime.

(i)   Request a supervisor, as warranted.

(j)   Evaluate any available information that might assist in determining cause or motivation for the person's actions or stated intentions.

## Redding Police Department
RPD Policy Manual

*Crisis Intervention Incidents*

(k)  If circumstances reasonably permit, consider and employ alternatives to force.

## 409.6  DE-ESCALATION

Officers should consider that taking no action or passively monitoring the situation may be the most reasonable response to a mental health crisis.

Once it is determined that a situation is a mental health crisis and immediate safety concerns have been addressed, responding members should be aware of the following considerations and should generally:

- Evaluate safety conditions.

- Introduce themselves and attempt to obtain the person's name.

- Be patient, polite, calm, courteous and avoid overreacting.

- Speak and move slowly and in a non-threatening manner.

- Moderate the level of direct eye contact.

- Remove distractions or disruptive people from the area.

- Demonstrate active listening skills (e.g., summarize the person's verbal communication).

- Provide for sufficient avenues of retreat or escape should the situation become volatile.

## 409.7  INCIDENT ORIENTATION

When responding to an incident that may involve mental illness or a mental health crisis, the officer should request that the dispatcher provide critical information as it becomes available. This includes:

(a)  Whether the person relies on drugs or medication, or may have failed to take his/her medication.

(b)  Whether there have been prior incidents, suicide threats/attempts, and whether there has been previous police response.

(c)  Contact information for a treating physician or mental health professional.

Additional resources and a supervisor should be requested as warranted.

## 409.8  SUPERVISOR RESPONSIBILITIES

A supervisor should respond to the scene of any interaction with a person in crisis. Responding supervisors should:

(a)  Attempt to secure appropriate and sufficient resources.

(b)  Closely monitor any use of force, including the use of restraints, and ensure that those subjected to the use of force are provided with timely access to medical care (see the Handcuffing and Restraints Policy).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000800

# Redding Police Department
RPD Policy Manual

*Crisis Intervention Incidents*

---

    (c)    Consider strategic disengagement. Absent an imminent threat to the public and, as circumstances dictate, this may include removing or reducing law enforcement resources or engaging in passive monitoring.

    (d)    Ensure that all reports are completed and that incident documentation uses appropriate terminology and language.

## 409.9   INCIDENT REPORTING

Members engaging in any oral or written communication associated with a mental health crisis should be mindful of the sensitive nature of such communications and should exercise appropriate discretion when referring to or describing persons and circumstances.

Members having contact with a person in crisis should keep related information confidential, except to the extent that revealing information is necessary to conform to department reporting procedures or other official mental health or medical proceedings.

### 409.9.1   DIVERSION

Individuals who are not being arrested should be processed in accordance with the Mental Illness Commitments Policy.

## 409.10   NON-SWORN INTERACTION WITH PEOPLE IN CRISIS

Non-sworn members may be required to interact with persons in crisis in an administrative capacity, such as dispatching and records request.

    (a)    Members should treat all individuals equally and with dignity and respect.

    (b)    If a member believes that he/she is interacting with a person in crisis, he/she should proceed patiently and in a calm manner.

    (c)    Members should be aware and understand that the person may make unusual or bizarre claims or requests.

If a person's behavior makes the member feel unsafe, if the person is or becomes disruptive or violent, or if the person acts in such a manner as to cause the member to believe that the person may be harmful to him/herself or others, an officer should be promptly summoned to provide assistance.

## 409.11   TRAINING

In coordination with the mental health community and appropriate stakeholders, the Department will develop and provide comprehensive education and training to all Department members to enable them to effectively interact with persons in crisis.

This Department will endeavor to provide Peace Officer Standards and Training (POST)-approved advanced officer training on interaction with persons with mental disabilities, welfare checks and crisis intervention (Penal Code § 11106.4; Penal Code § 13515.25; Penal Code § 13515.27; Penal Code § 13515.30).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000801

# Mental Illness Commitments

## 410.1 PURPOSE AND SCOPE
This policy provides guidelines for when officers may take a person into custody for psychiatric evaluation and treatment (5150 commitment) (Welfare and Institutions Code § 5150).

## 410.2 POLICY
It is the policy of the Redding Police Department to protect the public and individuals through legal and appropriate use of the 72-hour treatment and evaluation commitment (5150 commitment) process.

## 410.3 AUTHORITY
An officer having probable cause may take a person into custody and place the person in an approved mental health facility for 72-hour treatment and evaluation when the officer believes that, as a result of a mental disorder, the person is a danger to him/herself or others or the person is gravely disabled (Welfare and Institutions Code § 5150; Welfare and Institutions Code § 5585.50).

When determining whether to take a person into custody, officers are not limited to determining the person is an imminent danger and shall consider reasonably available information about the historical course of the person's mental disorder, which may include evidence presented from any of the following (Welfare and Institutions Code § 5150; Welfare and Institutions Code § 5150.05):

(a) An individual who is providing or has provided mental health treatment or related support services to the person

(b) A family member

(c) The person subject to the determination or anyone designated by the person

### 410.3.1 VOLUNTARY EVALUATION
If an officer encounters an individual who may qualify for a 5150 commitment, he/she may inquire as to whether the person desires to voluntarily be evaluated at an appropriate facility. If the person so desires, the officers should:

(a) Transport the person to an appropriate facility that is able to conduct the evaluation and admit the person pursuant to a 5150 commitment.

(b) If at any point the person changes his/her mind regarding voluntary evaluation, officers should proceed with the 5150 commitment, if appropriate.

(c) Document the circumstances surrounding the individual's desire to pursue voluntary evaluation and/or admission.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000802

# Redding Police Department

RPD Policy Manual

*Mental Illness Commitments*

---

### 410.3.2   APPREHENSION AND DELIVERY OF ESCAPED MENTAL HEALTH CONSERVATEES

(a)  Section 7325 (a) WIC requires any Peace Officer upon a written request from a Conservator to apprehend, take into custody, and deliver to a designated facility an AWOL conservative.

(b)  When a public guardian has a case involving an AWOL conservative, they will contact SHASCOM requesting an officer to assist in apprehending the conservative.

(c)  The public guardian will meet with the officer at a designated location to coordinate the apprehension and transportation of the conservative to the approved mental health facility.

(d)  The public guardian will provide the officer with a written request and a certified copy of the letters of conservatorship showing the requestor as the legal conservator.

(e)  The public guardian will provide the physical description of the conservative, the address where the conservative is believed to be located, and if there are any known dangers to the conservative or others. The public guardian shall advise if the conservative is gravely disabled.

(f)  The public guardian will have made arrangements for the admission of the conservative to the approved mental health facility prior to contacting the Redding Police Department.

(g)  The officer, upon receiving the written request for apprehension by the public guardian, shall accompany the guardian to the location of the AWOL conservative, take the person into custody, and transport them to the approved mental health facility.

(h)  The officer shall obtain a case number, prepare an offense report describing the detention, and shall include the reporting person's name and the name of the conservative in the disposition.

(i)  Whenever possible, the officer shall dress in plain clothes and travel in an unmarked vehicle (as directed in section 7325 (a) WIC).

## 410.4   CONSIDERATIONS AND RESPONSIBILITIES

Any officer handling a call involving an individual who may qualify for a 5150 commitment should consider, as time and circumstances reasonably permit:

(a)  Available information that might assist in determining the cause and nature of the person's action or stated intentions.

(b)  Community or neighborhood mediation services.

(c)  Conflict resolution and de-escalation techniques.

(d)  Community or other resources available to assist in dealing with mental health issues.

While these steps are encouraged, nothing in this section is intended to dissuade officers from taking reasonable action to ensure the safety of the officers and others.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000803

## Redding Police Department
RPD Policy Manual

*Mental Illness Commitments*

---

Officers should consider a 5150 commitment over arrest when mental health issues appear to be a mitigating factor for people who are suspected of committing minor crimes or creating other public safety issues.

### 410.4.1   SECURING OF PROPERTY
When a person is taken into custody for evaluation, or within a reasonable time thereafter, and unless a responsible relative, guardian or conservator is in possession of the person's personal property, the officer shall take reasonable precautions to safeguard the individual's personal property in his/her possession or on the premises occupied by the person (Welfare and Institutions Code § 5150).

The officer taking the person into custody shall provide a report to the court that describes the person's property and its disposition in the format provided in Welfare and Institutions Code § 5211, unless a responsible person took possession of the property, in which case the officer shall only include the name of the responsible person and the location of the property (Welfare and Institutions Code § 5150).

### 410.5   TRANSPORTATION
When transporting any individual for a 5150 commitment, the transporting officer should have SHASCOM notify the receiving facility of the estimated time of arrival, the level of cooperation of the individual and whether any special medical care is needed.

Officers may transport individuals in a patrol unit and shall secure them in accordance with the Handcuffing and Restraints Policy. Should the detainee require transport in a medical transport vehicle and the safety of any person, including the detainee, requires the presence of an officer during the transport, supervisor approval is required before transport commences.

### 410.6   TRANSFER TO APPROPRIATE FACILITY
Upon arrival at the facility, the officer will escort the individual into a treatment area designated by a facility staff member. If the individual is not seeking treatment voluntarily, the officer should provide the staff member with the written application for a 5150 commitment and remain present to provide clarification of the grounds for detention, upon request.

Absent exigent circumstances, the transporting officer should not assist facility staff with the admission process, including restraint of the individual. However, if the individual is transported and delivered while restrained, the officer may assist with transferring the individual to facility restraints and will be available to assist during the admission process, if requested. Under normal circumstances, officers will not apply facility-ordered restraints.

### 410.7   DOCUMENTATION
The officer shall complete an application for a 72-Hour detention for evaluation and treatment, provide it to the facility staff member assigned to that patient and retain a copy of the application for inclusion in the case report.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000804

# Redding Police Department
RPD Policy Manual

---

*Mental Illness Commitments*

The application shall include the circumstances for officer involvement; the probable cause to believe the person is, as a result of a mental health disorder, a danger to others or him/herself or gravely disabled; and all information used for the determination of probable cause (Welfare and Institutions Code § 5150; Welfare and Institutions Code § 5150.05).

The officer should also provide a verbal summary to any evaluating staff member regarding the circumstances leading to the involuntary detention.

## 410.7.1 ADVISEMENT
The officer taking a person into custody for evaluation shall advise the person of:

(a) The officer's name and agency.

(b) The fact that the person is not under criminal arrest but is being taken for examination by mental health professionals and the mental health staff will advise him/her of their rights.

(c) The name of the facility to which the person is being taken.

(d) If the person is being taken into custody at his/her residence, he/she should also be advised that he/she may take a few personal items, which the officer must approve, and may make a telephone call or leave a note indicating where he/she is being taken. The officer should also ask if the person needs assistance turning off any appliance or water.

The advisement shall be given in a language the person understands. If the person cannot understand an oral advisement, the information shall be provided in writing (Welfare and Institutions Code § 5150).

## 410.8 CRIMINAL OFFENSES
Officers investigating an individual who is suspected of committing a minor criminal offense and who is being taken on a 5150 commitment should resolve the criminal matter by issuing a warning or a Notice to Appear as appropriate.

When an individual who may qualify for a 5150 commitment has committed a serious criminal offense that would normally result in an arrest and transfer to a jail facility, the officer should:

(a) Arrest the individual when there is probable cause to do so.

(b) Notify the appropriate supervisor of the facts supporting the arrest and the facts that would support the 5150 commitment.

(c) Facilitate the individual's transfer to jail.

(d) Thoroughly document in the related reports the circumstances that indicate the individual may qualify for a 5150 commitment.

In the supervisor's judgment, the individual may instead be arrested or booked and transported to the appropriate mental health facility. The supervisor should consider the seriousness of the offense, the treatment options available, the ability of this Department to regain custody of the

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000805

# Redding Police Department
RPD Policy Manual

## *Mental Illness Commitments*

individual, Department resources (e.g., posting a guard) and other relevant factors in making this decision.

## 410.9   FIREARMS AND OTHER WEAPONS

Whenever a person is taken into custody for a 5150 commitment, the handling officers should seek to determine if the person owns or has access to any firearm or other deadly weapon defined in Welfare and Institutions Code § 8100. Officers should consider whether it is appropriate and consistent with current search and seizure law under the circumstances to seize any such firearms or other dangerous weapons (e.g., safekeeping, evidence, consent).

Officers are cautioned that a search warrant may be needed before entering a residence or other place to search, unless lawful, warrantless entry has already been made (e.g., exigent circumstances, consent). A search warrant may also be needed before searching for or seizing weapons

The handling officers shall issue a receipt describing the deadly weapon or any firearm seized, and list any serial number or other identification that is on the firearm. Officers shall advise the person of the procedure for the return of any firearm or other weapon that has been taken into custody (Welfare and Institutions Code § 8102 (b)) (see Property and Evidence Policy).

### 410.9.1   PETITION FOR RETURN OF FIREARMS AND OTHER WEAPONS

Whenever the handling officer has cause to believe that the future return of any confiscated weapon might endanger the person or others, the officer shall detail those facts and circumstances in a report. The handling officer shall be responsible for initiating a petition to the Superior Court for a hearing in accordance with Welfare and Institutions Code § 8102(c), to determine whether the weapon will be returned.

The petition to the Superior Court shall be initiated within 30 days of the release of the individual from whom such weapon has been confiscated, unless the Department makes an ex parte application to the court to extend the time to file such a petition, up to a maximum of 60 days. At the time any such petition is initiated, the Department shall send written notice to the individual informing him/her of the right to a hearing on the issue, that he/she has 30 days to confirm with the court clerk any desire for a hearing and that the failure to do so will result in the forfeiture of any confiscated weapon.

## 410.10   TRAINING

This Department will endeavor to provide Peace Officer Standards and Training (POST)-approved advanced officer training on interaction with persons with mental disabilities, 5150 commitments and crisis intervention.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Cite and Release Policy

## 411.1   PURPOSE AND SCOPE
This policy provides guidance on when to release adults who are arrested for a criminal misdemeanor offense on a written notice to appear (citation) and when to hold for court or bail.

## 411.2   POLICY
It is the policy of the Redding Police Department to release all persons arrested on misdemeanor or other qualifying charges on a citation with certain exceptions (Penal Code § 853.6).

If there is a reason for non-release, the Department's mission to protect the community will be the primary consideration when determining whether to release any individual in lieu of holding for court or bail.

## 411.3   RELEASE BY CITATION
Except in cases where a reason for non-release as described below exists, adults arrested for a misdemeanor offense, including a private persons arrest, shall be released from custody on a citation (Penal Code § 853.6).

The citing officer shall, at the time the defendant signs the notice to appear, call attention to the time and place for appearance and take any other steps he/she deems necessary to ensure that the defendant understands his/her written promise to appear.

### 411.3.1   FIELD CITATIONS
In most cases an adult arrested for a misdemeanor offense may be released in the field on a citation in lieu of physical arrest when booking and fingerprinting is not practicable or immediately required provided the individual can be satisfactorily identified, there is no outstanding arrest warrant for the individual and none of the below described disqualifying circumstances are present (Penal Code § 853.6; Penal Code § 1270.1). In such cases the arresting officer should check the booking required box on the citation form to indicate that the person will be photographed and fingerprinted at a later time when ordered by the court.

When a booking photo or fingerprints are needed for the furtherance of any investigation, the person should be booked.

### 411.3.2   RELEASE AFTER BOOKING
In some cases, it may not be feasible or desirable to release a person in the field. The person should instead be booked at the jail.

### 411.3.3   CITATION NARRATIVES
Officers issuing misdemeanor citations for Vehicle Code or Municipal Code violations may complete a narrative on the back of the citation copy in lieu of completing a full offense report. If an incident mentioned above has any separate victims, witnesses, or property that was booked into evidence, a full offense report is required.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Cite and Release Policy*

---

### 411.4  NON-RELEASE

411.4.1  DISQUALIFYING OFFENSES

An adult arrested on any of the following disqualifying charges shall not be released on citation and shall be transported to the appropriate detention facility or held for court or bail after booking (Penal Code § 1270.1):

    (a)   Misdemeanor domestic battery (Penal Code § 243(e)(1))

    (b)   Felony domestic battery (Penal Code § 273.5)

    (c)   Serious or violent felonies (Penal Code § 1270.1(a)(1))

    (d)   Felony intimidation of witnesses and victims (Penal Code § 136.1)

    (e)   Rape of a spouse (Penal Code § 262)

    (f)   Violation of a protective order and the arrested person has made threats, used violence, or has gone to the protected person's workplace or residence (Penal Code § 273.6)

    (g)   Stalking (Penal Code § 646.9)

    (h)   Misdemeanor violations of a protective order relating to domestic violence if there is a reasonable likelihood the offense will continue or the safety of the individuals or property would be endangered (Penal Code § 853.6)

411.4.2  REASONS FOR NON-RELEASE

A person arrested for a misdemeanor shall be released on a citation unless there is a reason for non-release. The supervisor may authorize a release on citation regardless of whether a reason for non-release exists when it is determined to be in the best interest of the Department and does not present an unreasonable risk to the community (e.g., release of an intoxicated or ill person to a responsible adult).

Reasons for non-release include (Penal Code § 853.6(i)):

    (a)   The person arrested is so intoxicated that he/she could be a danger to him/herself or to others. Release may occur as soon as this condition no longer exists.

    (b)   The person arrested requires medical examination or medical care or is otherwise unable to care for his/her own safety

        1.   The Redding Police Department shall not release an arrestee from custody for the purpose of allowing that person to seek medical care at a hospital, and then immediately re-arrest the same individual upon discharge from the hospital, unless the hospital determines this action will enable it to bill and collect from a third-party payment source (Penal Code § 4011.10).

    (c)   The person is arrested for one or more of the offenses listed in Vehicle Code § 40302, Vehicle Code § 40303, and Vehicle Code § 40305.

    (d)   The person has been cited, arrested, or convicted for theft from a store or vehicle in the previous six months, or there is probable cause to believe the person is guilty of committing organized retail theft, as defined in Penal Code § 490.4(a).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000808

# Redding Police Department

RPD Policy Manual

*Cite and Release Policy*

---

(e)   There are one or more outstanding arrest warrants for the person or failures to appear in court on previous misdemeanor citations that have not been resolved (see Misdemeanor Warrants elsewhere in this policy).

(f)   The person could not provide satisfactory evidence of personal identification.

   1.   If a person released on citation does not have satisfactory identification in his/her possession, a right thumbprint or fingerprint should be obtained on the citation form.

(g)   The prosecution of the offense or offenses for which the person was arrested or the prosecution of any other offense or offenses would be jeopardized by the immediate release of the person arrested.

(h)   There is a reasonable likelihood that the offense or offenses would continue or resume, or that the safety of persons or property would be imminently endangered by the release of the person arrested.

(i)   The person arrested demands to be taken before a magistrate or has refused to sign the notice to appear.

(j)   There is reason to believe that the person would not appear at the time and place specified in the notice to appear. The basis for this determination shall be specifically documented. An arrest warrant or failure to appear that is currently pending shall constitute reason to believe that the person will not appear. Other reasons may include:

   (a)   Previous failure to appear is on record

   (b)   The person lacks ties to the area, such as a residence, job, or family

   (c)   Unusual circumstances lead the officer responsible for the release of prisoners to conclude that the suspect should be held for further investigation

When a person is arrested on a misdemeanor offense and is not released by criminal citation, the reason for non-release shall be noted on the booking form.

## 411.5  MISDEMEANOR WARRANTS

An adult arrested on a misdemeanor warrant may be released unless any of the following conditions exist:

(a)   The misdemeanor cited in the warrant involves violence

(b)   The misdemeanor cited in the warrant involves a firearm

(c)   The misdemeanor cited in the warrant involves resisting arrest

(d)   The misdemeanor cited in the warrant involves giving false information to a peace officer

(e)   The person arrested is a danger to him/herself or others due to intoxication or being under the influence of drugs or narcotics

(f)   The person requires medical examination or medical care or was otherwise unable to care for his/her own safety

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000809

# Redding Police Department
RPD Policy Manual

*Cite and Release Policy*

> (g)    The person has other ineligible charges pending against him/her
>
> (h)    There is reasonable likelihood that the offense or offenses would continue or resume, or that the safety of persons or property would be immediately endangered by the release of the person
>
> (i)    The person refuses to sign the notice to appear
>
> (j)    The person cannot provide satisfactory evidence of personal identification
>
> (k)    The warrant of arrest indicates that the person is not eligible to be released on a notice to appear

Release under this section shall be done in accordance with the provisions of this policy.

## 411.6  JUVENILE CITATIONS

Completion of criminal citations for juveniles is generally not appropriate with the following exceptions:

- Misdemeanor traffic violations of the Vehicle Code
- Violations of the Redding City codes

All other misdemeanor violations for juveniles shall be documented with a case number and the case should be referred to Juvenile Probation for further action.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000810

**Policy**

**412**

Redding Police Department
RPD Policy Manual

# Foreign Diplomatic and Consular Representatives

## 412.1  PURPOSE AND SCOPE

This policy provides guidelines to ensure that members of the Redding Police Department extend appropriate privileges and immunities to foreign diplomatic and consular representatives in accordance with international law.

## 412.2  POLICY

The Redding Police Department respects international laws related to the special privileges and immunities afforded foreign diplomatic and consular representatives assigned to the United States.

All foreign diplomatic and consular representatives shall be treated with respect and courtesy, regardless of any privileges or immunities afforded them.

## 412.3  CLAIMS OF IMMUNITY

If a member comes into contact with a person where law enforcement action may be warranted and the person claims diplomatic or consular privileges and immunities, the member should, without delay:

(a) Notify a supervisor.

(b) Advise the person that his/her claim will be investigated and he/she may be released in accordance with the law upon confirmation of the person's status.

(c) Request the person's identification card, either issued by the U.S. Department of State (DOS), Office of the Chief of Protocol, or in the case of persons accredited to the United Nations, by the U.S. Mission to the United Nations. These are the only reliable documents for purposes of determining privileges and immunities.

(d) Contact the DOS Diplomatic Security Command Center at 571-345-3146 or toll free at 866-217-2089, or at another current telephone number and inform the center of the circumstances.

(e) Verify the immunity status with DOS and follow any instructions regarding further detention, arrest, prosecution and/or release, as indicated by the DOS representative. This may require immediate release, even if a crime has been committed.

Identity or immunity status should not be presumed from the type of license plates displayed on a vehicle. If there is a question as to the status or the legitimate possession of a Diplomat or Consul license plate, a query should be run via the National Law Enforcement Telecommunications System (NLETS), designating "US" as the state.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000811

## Redding Police Department

RPD Policy Manual

*Foreign Diplomatic and Consular Representatives*

---

**412.4  ENFORCEMENT**

If the DOS is not immediately available for consultation regarding law enforcement action, members shall be aware of the following:

(a)  Generally, all persons with diplomatic and consular privileges and immunities may be issued a citation or notice to appear. However, the person may not be compelled to sign the citation.

(b)  All persons, even those with a valid privilege or immunity, may be reasonably restrained in exigent circumstances for purposes of self-defense, public safety or the prevention of serious criminal acts.

(c)  An impaired foreign diplomatic or consular representative may be prevented from driving a vehicle, even if the person may not be arrested due to privileges and immunities.

    1.  Investigations, including the request for field sobriety tests, chemical tests and any other tests regarding impaired driving may proceed but they shall not be compelled.

(d)  The following persons may not be detained or arrested, and any property or vehicle owned by these persons may not be searched or seized:

    1.  Diplomatic-level staff of missions to international organizations and recognized family members

    2.  Diplomatic agents and recognized family members

    3.  Members of administrative and technical staff of a diplomatic mission and recognized family members

    4.  Career consular officers, unless the person is the subject of a felony warrant

(e)  The following persons may generally be detained and arrested:

    1.  International organization staff; however, some senior officers are entitled to the same treatment as diplomatic agents.

    2.  Support staff of missions to international organizations

    3.  Diplomatic service staff and consular employees; however, special bilateral agreements may exclude employees of certain foreign countries.

    4.  Honorary consular officers

    5.  Whenever an officer arrests and incarcerates, or detains for investigation for over two hours, a person with diplomatic and consular privileges and immunities, the officer shall promptly advise the person that he/she is entitled to have his/her government notified of the arrest or detention (Penal Code § 834c). If the individual wants his/her government notified, the officer shall begin the notification process.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000812

# Redding Police Department

RPD Policy Manual

*Foreign Diplomatic and Consular Representatives*

## 412.5 DOCUMENTATION

All contacts with persons who have claimed privileges and immunities afforded foreign diplomatic and consular representatives should be thoroughly documented and the related reports forwarded to DOS.

## 412.6 DIPLOMATIC IMMUNITY TABLE

Reference table on diplomatic immunity:

| Category | Arrested or Detained | Enter Residence Subject to Ordinary Procedures | Issued Traffic Citation | Subpoenaed as Witness | Prosecuted | Recognized Family Members |
|---|---|---|---|---|---|---|
| **Diplomatic Agent** | No (note (b)) | No | Yes | No | No | Same as sponsor (full immunity & inviolability) |
| **Member of Admin and Tech Staff** | No (note (b)) | No | Yes | No | No | Same as sponsor (full immunity & inviolability) |
| **Service Staff** | Yes (note (a)) | Yes | Yes | Yes | No for official acts. Yes otherwise (note (a)) | No immunity or inviolability (note (a)) |
| **Career Consul Officer** | Yes if for a felony and pursuant to a warrant (note (a)) | Yes (note (d)) | Yes | No for official acts Testimony may not be compelled in any case | No for official acts. Yes otherwise (note (a)) | No immunity or inviolability |
| **Honorable Consul Officer** | Yes | Yes | Yes | No for official acts Yes otherwise. | No for official acts Yes otherwise | No immunity or inviolability |
| **Consulate Employees** | Yes (note (a)) | Yes | Yes | No for official acts Yes otherwise. | No for official acts. Yes otherwise (note (a)) | No immunity or inviolability (note (a)) |
| **Int'l Org Staff (note (b))** | Yes (note (c)) | Yes (note (c)) | Yes | Yes (note (c)) | No for official acts. Yes otherwise (note (c)) | No immunity or inviolability |

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000813

## Redding Police Department
RPD Policy Manual

*Foreign Diplomatic and Consular Representatives*

| | | | | | | |
|---|---|---|---|---|---|---|
| **Diplomatic-Level Staff of Missions to Int'l Org** | No (note (b)) | No | Yes | No | No | Same as sponsor (full immunity & inviolability) |
| **Support Staff of Missions to Int'l Orgs** | Yes | Yes | Yes | Yes | No for official acts Yes otherwise | No immunity or inviolability |

Notes for diplomatic immunity table:

(a) This table presents general rules. The employees of certain foreign countries may enjoy higher levels of privileges and immunities on the basis of special bilateral agreements.

(b) Reasonable constraints, however, may be applied in emergency circumstances involving self-defense, public safety, or in the prevention of serious criminal acts.

(c) A small number of senior officers are entitled to be treated identically to diplomatic agents.

(d) Note that consul residences are sometimes located within the official consular premises. In such cases, only the official office space is protected from police entry.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000814

# Rapid Response and Deployment

## 413.1  PURPOSE AND SCOPE
Violence that is committed in schools, workplaces and other locations by individuals or a group of individuals who are determined to target and kill persons and to create mass casualties presents a difficult situation for law enforcement. The purpose of this policy is to identify guidelines and factors that will assist responding officers in situations that call for rapid response and deployment.

## 413.2  POLICY
The Redding Police Department will endeavor to plan for rapid response to crisis situations, and to coordinate response planning with other emergency services as well as with those that are responsible for operating sites that may be the target of a critical incident.

Nothing in this policy shall preclude the use of reasonable force, deadly or otherwise, by members of the Department in protecting themselves or others from death or serious injury.

## 413.3  CONSIDERATIONS
When dealing with a crisis situation members should:

(a) Assess the immediate situation and take reasonable steps to maintain operative control of the incident.

(b) Obtain, explore and analyze sources of intelligence and known information regarding the circumstances, location and suspect involved in the incident.

(c) Attempt to attain a tactical advantage over the suspect by reducing, preventing or eliminating any known or perceived threat.

(d) Attempt, if feasible and based upon the suspect's actions and danger to others, a negotiated surrender of the suspect and release of the hostages.

## 413.4  FIRST RESPONSE
If there is a reasonable belief that acts or threats by a suspect are placing lives in imminent danger, first responding officers should consider reasonable options to reduce, prevent or eliminate the threat. Officers must decide, often under a multitude of difficult and rapidly evolving circumstances, whether to advance on the suspect, take other actions to deal with the threat or wait for additional resources.

If a suspect is actively engaged in the infliction of serious bodily harm or other life-threatening activity toward others, officers should take immediate action, if reasonably practicable, while requesting additional assistance.

Officers should remain aware of the possibility that an incident may be part of a coordinated multi-location attack that may require some capacity to respond to other incidents at other locations.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000815

Redding Police Department

RPD Policy Manual

*Rapid Response and Deployment*

When deciding on a course of action officers should consider:

(a)   Whether to advance on or engage a suspect who is still a possible or perceived threat to others. Any advance or engagement should be based on information known or received at the time.

(b)   Whether to wait for additional resources or personnel. This does not preclude an individual officer from taking immediate action.

(c)   Whether individuals who are under imminent threat can be moved or evacuated with reasonable safety.

(d)   Whether the suspect can be contained or denied access to victims.

(e)   Whether the officers have the ability to effectively communicate with other personnel or resources.

(f)   Whether planned tactics can be effectively deployed.

(g)   The availability of rifles, shotguns, shields, breaching tools, control devices, and any other appropriate tools, and whether the deployment of these tools will provide a tactical advantage.

In a case of a barricaded suspect with no hostages and no immediate threat to others, officers should consider summoning and waiting for additional assistance (SWAT and/or hostage negotiation team response).

**413.5  PLANNING**
The Field Operations Division Commander should coordinate critical incident planning. Planning efforts should consider:

(a)   Identification of likely critical incident target sites, such as schools, shopping centers, entertainment and sporting event venues.

(b)   Availability of building plans and venue schematics of likely critical incident target sites.

(c)   Communications interoperability with other law enforcement and emergency service agencies.

(d)   Training opportunities in critical incident target sites, including joint training with site occupants.

(e)   Evacuation routes in critical incident target sites.

(f)   Patrol first-response training.

(g)   Response coordination and resources of emergency medical and fire services.

(h)   Equipment needs.

(i)   Mutual aid agreements with other agencies.

(j)   Coordination with private security providers in critical incident target sites.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000816

Redding Police Department

RPD Policy Manual

*Rapid Response and Deployment*

**413.6  TRAINING**

The Training Sergeant should include rapid response to critical incidents in the training plan. This training should address:

(a)  Orientation to likely critical incident target sites, such as schools, shopping centers, entertainment and sporting event venues.

(b)  Communications interoperability with other law enforcement and emergency service agencies.

(c)  Patrol first-response training, including patrol rifle, shotgun, breaching tool and control device training.

     1.  This should include the POST terrorism incident training required for officers assigned to field duties (Penal Code § 13519.12).

(d)  First aid, including gunshot trauma.

(e)  Reality-based scenario training (e.g., active shooter, disgruntled violent worker).

**Redding Police Department**

RPD Policy Manual

# Immigration Violations

## 414.1  PURPOSE AND SCOPE

The purpose of this policy is to provide guidelines to members of the Redding Police Department relating to immigration and interacting with federal immigration officials.

### 414.1.1  DEFINITIONS

The following definitions apply to this policy (Government Code § 7284.4):

**Criminal immigration violation** - Any federal criminal immigration violation that penalizes a person's presence in, entry, or reentry to, or employment in, the United States. This does not include any offense where a judicial warrant already has been issued.

**Immigration enforcement** - Any and all efforts to investigate, enforce, or assist in the investigation or enforcement of any federal civil immigration law, including any and all efforts to investigate, enforce, or assist in the investigation or enforcement of any federal criminal immigration law that penalizes a person's presence in, entry or reentry to, or employment in the United States.

**Judicial warrant** - An arrest warrant for a violation of federal criminal immigration law and issued by a federal judge or a federal magistrate judge.

## 414.2  POLICY

It is the policy of the Redding Police Department that all members make personal and professional commitments to equal enforcement of the law and equal service to the public. Confidence in this commitment will increase the effectiveness of this Department in protecting and serving the entire community and recognizing the dignity of all persons, regardless of their national origin or immigration status.

## 414.3  VICTIMS AND WITNESSES

To encourage crime reporting and cooperation in the investigation of criminal activity, all individuals, regardless of their immigration status, must feel secure that contacting or being addressed by members of law enforcement will not automatically lead to immigration inquiry and/or deportation. While it may be necessary to determine the identity of a victim or witness, members shall treat all individuals equally and not in any way that would violate the United States or California constitutions.

## 414.4  IMMIGRATION INQUIRIES PROHIBITED

Officers shall not inquire into an individual's immigration status for immigration enforcement purposes (Government Code § 7284.6).

### 414.4.1  CALIFORNIA LAW ENFORCEMENT TELECOMMUNICATIONS SYSTEM (CLETS)

Members shall not use information transmitted through CLETS for immigration enforcement purposes except for criminal history information and only when consistent with the California Values Act (Government Code § 15160).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000818

# Redding Police Department
RPD Policy Manual

*Immigration Violations*

Members shall not use the system to investigate immigration violations of 8 USC § 1325 (improper entry) if that violation is the only criminal history in an individual's record (Government Code § 15160).

## 414.5  DETENTIONS AND ARRESTS

An officer shall not detain any individual, for any length of time, for a civil violation of federal immigration laws or a related civil warrant (Government Code § 7284.6).

An officer who has a reasonable suspicion that an individual already lawfully contacted or detained has committed a criminal violation of 8 USC § 1326(a) (unlawful reentry) that may be subject to an enhancement due to a previous conviction of an aggravated felony under 8 USC § 1326(b) (2), may detain the person for a reasonable period of time to contact federal immigration officials to verify whether the United States Attorney General has granted the individual permission for reentry and whether the violation is subject to enhancement (Government Code § 7284.6). No individual who is otherwise ready to be released should continue to be detained only because questions about the individual's status are unresolved.

If the officer has facts that establish probable cause to believe that a person already lawfully detained has violated 8 USC § 1326(a) and the penalty may be subject to enhancement due to prior conviction for specified aggravated felonies, he/she may arrest the individual for that offense (Government Code § 7284.6).

An officer shall not detain any individual, for any length of time, for any other criminal immigration violation of federal immigration laws (Government Code § 7284.6).

An officer should notify a supervisor as soon as practicable whenever an individual is arrested for violation of 8 USC § 1326(a).

### 414.5.1  SUPERVISOR RESPONSIBILITIES

When notified that an officer has arrested an individual for violation of 8 USC § 1326(a) or under the authority of a judicial warrant, the supervisor should determine whether it is appropriate to:

    (a)    Transfer the person to federal authorities.

    (b)    Transfer the person to jail.

## 414.6  FEDERAL REQUESTS FOR ASSISTANCE

Absent an urgent issue of officer safety or other emergency circumstances, requests by federal immigration officials for assistance from this Department should be directed to a watch commander. The watch commander is responsible for determining whether the requested assistance would be permitted under the California Values Act (Government Code § 7284.2 et seq.).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000819

## Redding Police Department
RPD Policy Manual

*Immigration Violations*

**414.7   INFORMATION SHARING**

No member of this Department will prohibit, or in any way restrict, any other member from doing any of the following regarding the citizenship or immigration status, lawful or unlawful, of any individual (8 USC § 1373; Government Code § 7284.6):

(a)   Sending information to, or requesting or receiving such information from federal immigration officials

(b)   Maintaining such information in Department records

(c)   Exchanging such information with any other federal, state, or local government entity

Nothing in this policy restricts sharing information that is permissible under the California Values Act.

414.7.1   IMMIGRATION DETAINERS

No individual should be held based solely on a federal immigration detainer under 8 CFR 287.7 (Government Code § 7284.6).

Notification to a federal authority may be made prior to release of an individual who is the subject of a notification request only if the individual meets one of the following conditions (Government Code § 7282.5; Government Code § 7284.6):

(a)   The individual has been arrested and had a judicial probable cause determination for a serious or violent felony identified in Penal Code § 667.5(c) or Penal Code § 1192.7(c).

(b)   The individual has been arrested and had a judicial probable cause determination for a felony punishable by time in a state prison.

(c)   The individual has been convicted of an offense as identified in Government Code § 7282.5(a).

(d)   The individual is a current registrant on the California Sex and Arson Registry.

(e)   The individual is identified by the U.S. Department of Homeland Security's Immigration and Customs Enforcement as the subject of an outstanding federal felony arrest warrant.

414.7.2   NOTICE TO INDIVIDUALS

Individuals in custody shall be given a copy of documentation received from U.S. Immigration and Customs Enforcement (ICE) regarding a hold, notification, or transfer request along with information as to whether the Redding Police Department intends to comply with the request (Government Code § 7283.1).

If the Redding Police Department provides ICE with notification that an individual is being, or will be, released on a certain date, the same notification shall be provided in writing to the individual and to his/her attorney or to one additional person who the individual may designate (Government Code § 7283.1).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000820

# Redding Police Department

RPD Policy Manual

---

*Immigration Violations*

---

### 414.7.3  ICE INTERVIEWS

Before any interview regarding civil immigration violations takes place between ICE personnel and an individual in custody, the Redding Police Department shall provide the individual with a written consent form that explains the purpose of the interview, that the interview is voluntary, and that he/she may decline to be interviewed or may choose to be interviewed only with his/her attorney present. The consent form must be available in the languages specified in Government Code § 7283.1.

### 414.7.4  TRANSFERS TO IMMIGRATION AUTHORITIES

Members shall not transfer an individual to immigration authorities unless one of the following circumstances exist (Government Code § 7282.5; Government Code § 7284.6):

(a)  Transfer is authorized by a judicial warrant or judicial probable cause determination.

(b)  The individual has been convicted of an offense as identified in Government Code § 7282.5(a).

(c)  The individual is a current registrant on the California Sex and Arson Registry.

(d)  The individual is identified by the U.S. Department of Homeland Security's Immigration and Customs Enforcement as the subject of an outstanding federal felony arrest warrant.

### 414.7.5  REPORTING TO CALIFORNIA DEPARTMENT OF JUSTICE

The Investigation Division supervisor shall ensure that data regarding the number of transfers of an individual to immigration authorities, as permitted by Government Code § 7284.6(a)(4), and the offense that allowed for the transfer is collected and provided to the Records Division for required reporting to the DOJ (Government Code § 7284.6(c)(2)(see the [Records Bureau] Policy).

### 414.8  U VISA AND T VISA NONIMMIGRANT STATUS

Under certain circumstances, federal law allows temporary immigration benefits, known as a U visa, to victims and witnesses of certain qualifying crimes (8 USC § 1101(a)(15)(U)).

Similar immigration protection, known as a T visa, is available for certain qualifying victims of human trafficking (8 USC § 1101(a)(15)(T)).

Any request for assistance in applying for U visa or T visa status should be forwarded in a timely manner to the Investigation Division supervisor assigned to oversee the handling of any related case. The Investigation Division supervisor should:

(a)  Consult with the assigned investigator to determine the current status of any related case and whether further documentation is warranted.

(b)  Contact the appropriate prosecutor assigned to the case, if applicable, to ensure the certification or declaration has not already been completed and whether a certification or declaration is warranted.

(c)  Address the request and complete the certification or declaration, if appropriate, in a timely manner.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000821

Redding Police Department

RPD Policy Manual

*Immigration Violations*

> (a) The instructions for completing certification and declaration forms can be found on the U.S. Department of Homeland Security (DHS) website.
>
> (b) Form I-918 Supplement B certification shall be completed if the victim qualifies under Penal Code § 679.10 (multiple serious offenses). Form I-914 Supplement B certification shall be completed if the victim qualifies under Penal Code § 236.5 or Penal Code § 679.11 (human trafficking).

(d) Ensure that any decision to complete, or not complete, a certification or declaration form is documented in the case file and forwarded to the appropriate prosecutor. Include a copy of any completed form in the case file.

(e) Inform the victim liaison of any requests and their status.

### 414.8.1   TIME FRAMES FOR COMPLETION
Officers and their supervisors who are assigned to investigate a case of human trafficking as defined by Penal Code § 236.1 shall complete the above process and the documents needed for indicating the individual is a victim for the T visa application within 15 business days of the first encounter with the victim, regardless of whether it is requested by the victim (Penal Code § 236.5).

Officers and their supervisors shall complete the above process and the documents needed certifying victim cooperation for a U visa or T visa application pursuant to Penal Code § 679.10 and Penal Code § 679.11 within 30 days of a request from the victim, victim's family, or authorized representative (as defined in Penal Code § 679.10 and Penal Code § 679.11) related to one of their assigned cases. If the victim is in removal proceedings, the certification shall be processed within seven days of the first business day following the day the request was received.

### 414.8.2   REPORTING TO LEGISLATURE
The Investigation Division supervisor or the authorized designee should ensure that certification requests are reported to the Legislature in January of each year and include the number of certifications signed and the number denied. The report shall comply with Government Code § 9795 (Penal Code § 679.10; Penal Code § 679.11).

### 414.8.3   POLICE REPORTS
Upon request, an officer or supervisor should provide a victim or authorized representative with a copy of the report filed by the victim within seven days of the request (Penal Code § 679.10).

### 414.9   TRAINING
The Training Sergeant should ensure that all appropriate members receive training on immigration issues.

Training should include:

(a) Identifying civil versus criminal immigration violations.

(b) Factors that may be considered in determining whether a criminal immigration violation has been committed.

(c) Prohibitions contained in the California Values Act (Government Code § 7284 et seq.).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000822

# Redding Police Department

RPD Policy Manual

*Immigration Violations*

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000823

# Aircraft Accidents

## 415.1  PURPOSE AND SCOPE
The purpose of this policy is to provide department members with guidelines for handling aircraft accidents.

This policy does not supersede, and is supplementary to, the Redding Municipal Airport Emergency Plan, the applicable portions of the Crime and Disaster Scene Integrity, Emergency Management Plan and Hazardous Material Response policies.

### 415.1.1  DEFINITIONS
Definitions related to this policy include:

**Aircraft** - Any fixed wing aircraft, rotorcraft, balloon, blimp/dirigible or glider that is capable of carrying a person or any unmanned aerial vehicle other than those intended for non-commercial recreational use.

**Aircraft Accident -** An occurrence associated with the operation of an aircraft which takes place between the time any person boards that aircraft with the intention of flight and the time such person disembarked; and in which any person suffers death or serious injury; or in which the aircraft receives substantial damage. The term substantial damage means damage or failure which adversely affects the structural strength, performance, or flight characteristics of the aircraft and which would normally require major repair or replacement.  This does not necessarily include such things as engine failure or damage to a single engine of a multi-engine aircraft, bent fairings or cowling, puncture holes or dented skin or the aircraft, ground damage to rotor or propeller blades, and damage to landing gear, wheels, ties, flaps, engine accessories, brakes or wingtips.

**Aircraft Incidents** - An aircraft incident is an occurrence other than an accident, associated with the operation of an aircraft, which affects or could affect the safety of operation and is normally considered less serious than an aircraft accident.

## 415.2  POLICY
It is the policy of the Redding Police Department to provide an appropriate emergency response to aircraft accidents. This includes emergency medical care and scene management.

## 415.3  ARRIVAL AT SCENE
Officers or other authorized members tasked with initial scene management should establish an inner and outer perimeter to:

    (a)    Protect persons and property.

    (b)    Prevent any disturbance or further damage to the wreckage or debris, except to preserve life or rescue the injured.

    (c)    Preserve ground scars and marks made by the aircraft.

Redding Police Department

RPD Policy Manual

*Aircraft Accidents*

(d)   Manage the admission and access of public safety and medical personnel to the extent necessary to preserve life or to stabilize hazardous materials.

(e)   Maintain a record of persons who enter the accident site.

(f)   Consider implementation of an Incident Command System (ICS).

**NOTE**:  If an accident or incident takes place inside the perimeter security fence of the Redding Municipal Airport, proceed no further than Fire Station 7 and contact Redding Fire Department for assistance in gaining permission to access the field

### 415.4   NOTIFICATIONS

When an aircraft accident is reported to this department, the responding supervisor shall ensure notification is or has been made to NTSB, the Federal Aviation Administration (FAA), and when applicable, the appropriate branch of the military.

If an accident or incident has occurred, and it is on City property, notify the Airport Manager immediately. In his absence, notify the Assistant Airport Director, or in his absence the Assistant City Manager.If the accident or incident is not on city property, the Airport Manager should be notified and can provide technical assistance.

When on City property, the Airport Manager or his designee will notify the FAA. In their absence, this agency shall notify the FAA. Provide the FAA with the number and extent of injuries and the extent of damage to the aircraft.

Supervisors shall ensure other notifications are made once an aircraft accident has been reported. The notifications will vary depending on the type of accident, extent of injuries or damage, and the type of aircraft involved. When an aircraft accident has occurred, it is generally necessary to notify the following:

(a)   Fire department

(b)   Appropriate airport tower

(c)   Emergency medical services (EMS)

### 415.5   CONTROLLING ACCESS AND SCENE AUTHORITY

The primary function of police personnel is to support the Fire Department and the Airport Manager.This will normally involve crowd control and scene security.Prior to NTSB arrival, scene access should be limited to authorized personnel from the:

(a)   FAA.

(b)   Fire department, EMS or other assisting law enforcement agencies.

(c)   Coroner.

(d)   Air Carrier/Operators investigative teams with NTSB approval.

(e)   Appropriate branch of the military, when applicable.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000825

# Redding Police Department
RPD Policy Manual

*Aircraft Accidents*

(f)     Other emergency services agencies (e.g., hazardous materials teams, biohazard decontamination teams, fuel recovery specialists, explosive ordnance disposal specialists).

The NTSB has primary responsibility for investigating accidents involving civil aircraft. In the case of a military aircraft accident, the appropriate branch of the military will have primary investigation responsibility.

After the NTSB or military representative arrives on-scene, the efforts of this department will shift to a support role for those agencies.

If NTSB or a military representative determines that an aircraft or accident does not qualify under its jurisdiction, the on-scene department supervisor should ensure the accident is still appropriately investigated and documented.

## 415.6  INJURIES AND CASUALTIES
Members should address emergency medical issues and provide care as a first priority.

Those tasked with the supervision of the scene should coordinate with the National Transportation Safety Board (NTSB) before the removal of bodies. If that is not possible, the scene supervisor should ensure documentation of what was disturbed, including switch/control positions and instrument/gauge readings.

## 415.7  DANGEROUS MATERIALS
Members should be aware of potentially dangerous materials that might be present. These may include, but are not limited to:

(a)     Fuel, chemicals, explosives, biological or radioactive materials and bombs or other ordnance.

(b)     Pressure vessels, compressed gas bottles, accumulators and tires.

(c)     Fluids, batteries, flares and igniters.

(d)     Evacuation chutes, ballistic parachute systems and composite materials.

## 415.8  DOCUMENTATION
All aircraft accidents occurring within the City of Redding shall be documented. At a minimum the documentation should include the date, time and location of the accident; any witness statements, if taken; the names of RPD members deployed to assist; other City resources that were utilized; and cross-reference information to other investigating agencies. Suspected criminal activity should be documented on the appropriate crime report.

### 415.8.1  WRECKAGE
When reasonably safe, members should:

(a)     Obtain the aircraft registration number (N number) and note the type of aircraft.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000826

# Redding Police Department

RPD Policy Manual

*Aircraft Accidents*

---

(b)   Attempt to ascertain the number of casualties.

(c)   Obtain photographs or video of the overall wreckage, including the cockpit and damage, starting at the initial point of impact, if possible, and any ground scars or marks made by the aircraft.

  (a)   Military aircraft may contain classified equipment and therefore shall not be photographed unless authorized by a military commanding officer (18 USC § 795).

(d)   Secure, if requested by the lead authority, any electronic data or video recorders from the aircraft that became dislodged or cell phones or other recording devices that are part of the wreckage.

(e)   Acquire copies of any recordings from security cameras that may have captured the incident.

(f)   If on City property, the Airport Manager will assist in coordination with the FAA for aircraft removal.

(g)   If on private property the aircraft owner has the responsibility of aircraft removal. The FAA must be notified of the owner's permission to remove the aircraft.

(h)   If on private property, it is the owner's responsibility to provide security of the aircraft. This agency is not to authorize the removal of any aircraft.RPD shall provide security for the aircraft only until the aircraft owner or agent has their own security in place.

415.8.2   WITNESSES

Members tasked with contacting witnesses should obtain:

(a)   The location of the witness at the time of his/her observation relative to the accident site.

(b)   A detailed description of what was observed or heard.

(c)   Any photographs or recordings of the accident witnesses may be willing to voluntarily surrender.

(d)   The names of all persons reporting the accident, even if not yet interviewed.

(e)   Any audio recordings of reports to 9-1-1 regarding the accident and dispatch records.

## 415.9   MEDIA RELATIONS

The Public Information Officer (PIO) should coordinate a response to the media, including access issues, road closures, detours and any safety information that is pertinent to the surrounding community. Any release of information regarding details of the accident itself should be coordinated with the NTSB or other authority who may have assumed responsibility for the investigation.

Depending on the type of aircraft, the airline or the military may be responsible for family notifications and the release of victims' names. The PIO should coordinate with other involved entities before the release of information.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000827

# Field Training Officer Program

## 416.1  PURPOSE AND SCOPE

The Field Training Officer Program is intended to provide a standardized program to facilitate the officer's transition from the academic setting to the actual performance of general law enforcement duties of the Redding Police Department.

It is the policy of this Department to assign all new police officers to a structured Field Training Officer Program that is designed to prepare the new officer to perform in a patrol assignment and possessing all skills needed to operate in a safe, productive and professional manner.

## 416.2  FIELD TRAINING OFFICER - SELECTION AND TRAINING

The Field Training Officer (FTO) is an experienced officer trained in the art of supervising, training and evaluating entry level and lateral police officers in the application of their previously acquired knowledge and skills.

### 416.2.1  SELECTION PROCESS

FTOs will be selected based on the following requirements:

    (a)    100 percent oral board.

    (b)    Oral board shall be comprised of the FTO manager/supervisor, FTO team member, and Division Commander or designee.

### 416.2.2  TRAINING

An officer selected as a Field Training Officer shall successfully complete a POST certified (40-hour) Field Training Officer's Course prior to being assigned as an FTO.

All FTOs must complete a 24-hour Field Training Officer update course every three years while assigned to the position of FTO (11 CCR 1004).

All FTOs must meet any training mandate regarding crisis intervention behavioral health training pursuant to Penal Code § 13515.28.

## 416.3  FIELD TRAINING OFFICER PROGRAM SUPERVISOR

The FTO Program supervisor should be selected from the rank of corporal, sergeant, or above by the Field Operations Division Commander or a designee and should possess, or be eligible to receive, a POST Supervisory Certificate.

The responsibilities of the FTO Program supervisor include the following:

    (a)    Assignment of trainees to FTOs

    (b)    Conduct FTO meetings

    (c)    Maintain and ensure FTO/trainee performance evaluations are completed

    (d)    Maintain, update and issue the Field Training Manual to each trainee

    (e)    Monitor individual FTO performance

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000828

# Redding Police Department
RPD Policy Manual

## Field Training Officer Program

     (f)     Monitor overall FTO Program

     (g)     Maintain liaison with FTO coordinators of other agencies

     (h)     Maintain liaison with academy staff on recruit performance during the academy

     (i)     Develop ongoing training for FTOs

The FTO Program supervisor will be required to successfully complete a POST approved Field Training Administrator's Course within one year of appointment to this position (11 CCR 1004(c)).

## 416.4  TRAINEE DEFINED
Any entry level or lateral police officer newly appointed to the Redding Police Department who has successfully completed a POST approved Basic Academy.

## 416.5  REQUIRED TRAINING
Entry level officers shall be required to successfully complete the Field Training Program, consisting of a minimum of 10 weeks (11 CCR 1004; 11 CCR 1005).

The training period for a lateral officer may be modified depending on the trainee's demonstrated performance and level of experience. A lateral officer may be exempt from the Field Training Program requirement if the officer qualifies for an exemption as provided in 11 CCR 1005(a)(B).

To the extent practicable, entry level and lateral officers should be assigned to a variety of Field Training Officers, shifts, and geographical areas during their Field Training Program.

### 416.5.1  FIELD TRAINING MANUAL
Each new officer will be issued a Field Training Manual at the beginning of his/her Primary Training Phase. This manual is an outline of the subject matter and/or skills necessary to properly function as an officer with the Redding Police Department. The officer shall become knowledgeable of the subject matter as outlined. He/she shall also become proficient with those skills as set forth in the manual.

The Field Training Manual will specifically cover those policies, procedures, rules, and regulations adopted by the Redding Police Department.

## 416.6  EVALUATIONS
Evaluations are an important component of the training process and shall be completed as outlined below.

### 416.6.1  FIELD TRAINING OFFICER
The FTO will be responsible for the following:

     (a)     Complete and submit a written evaluation on the performance of his/her assigned trainee to the FTO Coordinator on a daily basis.

     (b)     Review the Daily Trainee Performance Evaluations with the trainee each day.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod) 000829

# Redding Police Department
RPD Policy Manual

## *Field Training Officer Program*

(c)    Complete a detailed end-of-phase performance evaluation on his/her assigned trainee at the end of each phase of training.

(d)    Sign off all completed topics contained in the Field Training Manual, noting the method(s) of learning and evaluating the performance of his/her assigned trainee.

### 416.6.2   IMMEDIATE SUPERVISOR
The immediate supervisor shall review and approve the Daily Trainee Performance Evaluations and forward them to the Field Training Administrator.

### 416.6.3   FIELD TRAINING ADMINISTRATOR
The Field Training Administrator will review and approve the Daily Trainee Performance Evaluations submitted by the FTO through his/her immediate supervisor.

### 416.6.4   TRAINEE
At the completion of the Field Training Program, the trainee shall submit a confidential performance evaluation on each of their FTOs and on the Field Training Program.

## 416.7   DOCUMENTATION
All documentation of the Field Training Program will be retained in the officer's training files and will consist of the following:

(a)    Daily Trainee Performance Evaluations

(b)    End-of-phase evaluations

(c)    A Certificate of Completion certifying that the trainee has successfully completed the required number of hours of field training

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000830

# Contacts and Temporary Detentions

## 418.1  PURPOSE AND SCOPE

The purpose of this policy is to establish guidelines for temporarily detaining but not arresting persons in the field, conducting field interviews (FI) and pat-down searches, and the taking and disposition of photographs.

### 418.1.1  DEFINITIONS

Definitions related to this policy include:

**Consensual encounter** - When an officer contacts an individual but does not create a detention through words, actions, or other means. In other words, a reasonable individual would believe that his/her contact with the officer is voluntary.

**Field interview** - The brief detainment of an individual, whether on foot or in a vehicle, based on reasonable suspicion for the purpose of determining the individual's identity and resolving the officer's suspicions.

**Field photographs** - Posed photographs taken of a person during a contact, temporary detention, or arrest in the field. Undercover surveillance photographs of an individual and recordings captured by the normal operation of a Mobile Audio Video (MAV) system, body-worn camera, or public safety camera when persons are not posed for the purpose of photographing are not considered field photographs.

**Pat-down search** - A type of search used by officers in the field to check an individual for dangerous weapons. It involves a thorough patting-down of clothing to locate any weapons or dangerous items that could pose a danger to the officer, the detainee, or others.

**Reasonable suspicion** - When, under the totality of the circumstances, an officer has articulable facts that criminal activity may be afoot and a particular person is connected with that possible criminal activity.

**Temporary detention** - When an officer intentionally, through words, actions, or physical force, causes an individual to reasonably believe he/she is required to restrict his/her movement without an actual arrest. Temporary detentions also occur when an officer actually restrains a person's freedom of movement.

## 418.2  POLICY

The Redding Police Department respects the right of the public to be free from unreasonable searches or seizures. Due to an unlimited variety of situations confronting the officer, the decision to temporarily detain a person and complete a field interview (FI), pat-down search, or field photograph shall be left to the officer based on the totality of the circumstances, officer safety considerations, and constitutional safeguards.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000831

## Redding Police Department
### RPD Policy Manual

*Contacts and Temporary Detentions*

**418.3  FIELD INTERVIEWS**

Based on observance of suspicious circumstances or upon information from investigation, an officer may initiate the stop of a person, and conduct an FI, when there is articulable, reasonable suspicion to do so. A person, however, shall not be detained longer than is reasonably necessary to resolve the officer's suspicion.

Nothing in this policy is intended to discourage consensual contacts. Frequent casual contact with consenting individuals is encouraged by the Redding Police Department to strengthen community involvement, community awareness, and problem identification.

418.3.1  INITIATING A FIELD INTERVIEW

When initiating the stop, the officer should be able to point to specific facts which, when considered with the totality of the circumstances, reasonably warrant the stop. Such facts include but are not limited to an individual's:

  (a)  Appearance or demeanor suggesting that he/she is part of a criminal enterprise or is engaged in a criminal act

  (b)  Actions suggesting that he/she is engaged in a criminal activity

  (c)  Presence in an area at an inappropriate hour of the day or night

  (d)  Presence in a particular area is suspicious

  (e)  Carrying of suspicious objects or items

  (f)  Excessive clothes for the climate or clothes bulging in a manner that suggest he/she is carrying a dangerous weapon

  (g)  Location in proximate time and place to an alleged crime

  (h)  Physical description or clothing worn that matches a suspect in a recent crime

  (i)  Prior criminal record or involvement in criminal activity as known by the officer

**418.4  PAT-DOWN SEARCHES**

Once a valid stop has been made, and consistent with the officer's training and experience, an officer may pat a suspect's outer clothing for weapons if the officer has a reasonable, articulable suspicion the suspect may pose a safety risk. The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue the investigation without fear of violence. Circumstances that may establish justification for performing a pat-down search include but are not limited to:

  (a)  The type of crime suspected, particularly in crimes of violence where the use or threat of deadly weapons is involved.

  (b)  Where more than one suspect must be handled by a single officer.

  (c)  The hour of the day and the location or neighborhood where the stop takes place.

  (d)  Prior knowledge of the suspect's use of force and/or propensity to carry weapons.

  (e)  The actions and demeanor of the suspect.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000832

# Redding Police Department

RPD Policy Manual

*Contacts and Temporary Detentions*

---

(f)     Visual indications which suggest that the suspect is carrying a firearm or other weapon.

## 418.5  FIELD PHOTOGRAPHS

All available databases should be searched before photographing any field detainee. If a photograph is not located, or if an existing photograph no longer resembles the detainee, the officer shall carefully consider, among other things, the factors listed below.

### 418.5.1  FIELD PHOTOGRAPHS TAKEN WITH CONSENT

Field photographs may be taken when the subject of the photograph knowingly and voluntarily gives consent. When taking a consensual photograph, the officer should document the consent in a report or FI card.

### 418.5.2  FIELD PHOTOGRAPHS TAKEN WITHOUT CONSENT

Field photographs may be taken without consent only if they are taken during a detention that is based upon reasonable suspicion of criminal activity, and the photograph serves a legitimate law enforcement purpose related to the detention. The officer must be able to articulate facts that reasonably indicate that the subject was involved in or was about to become involved in criminal conduct. The subject should not be ordered to remove or lift any clothing for the purpose of taking a photograph.

If, prior to taking a photograph, the officer's reasonable suspicion of criminal activity has been dispelled, the detention must cease and the photograph should not be taken.

All field photographs and related reports shall be retained in compliance with this policy.

### 418.5.3  DISPOSITION OF PHOTOGRAPHS

All detainee photographs must be adequately labeled and submitted with either an associated FI card or other documentation explaining the nature of the contact. If an individual is photographed as a suspect in a particular crime, the photograph should be submitted as an evidence item in the related case, following standard evidence procedures.

When a photograph is taken in association with a particular case, the investigator may use such photograph in a photo lineup. Thereafter, the individual photograph should be retained as a part of the case file. All other photographs shall be retained in accordance with the established records retention schedule.

### 418.5.4  SUPERVISOR RESPONSIBILITIES

While it is recognized that field photographs often become valuable investigative tools, supervisors should monitor such practices in view of the above listed considerations. This is not to imply that supervisor approval is required before each photograph is taken.

Access to, and use of, field photographs shall be strictly limited to law enforcement purposes.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000833

# Redding Police Department

RPD Policy Manual

*Contacts and Temporary Detentions*

## 418.6   WITNESS IDENTIFICATION AND INTERVIEWS

Because potential witnesses to an incident may become unavailable or the integrity of their statements compromised with the passage of time, officers should, when warranted by the seriousness of the case, take reasonable steps to promptly coordinate with an on-scene supervisor and/or criminal investigator to utilize available members for the following:

(a) Identifying all persons present at the scene and in the immediate area.

　1. A recorded statement should be obtained from those who claim not to have witnessed the incident but who were present at the time it occurred.

　2. Any potential witness who is unwilling or unable to remain available for a formal interview should not be detained absent reasonable suspicion to detain or probable cause to arrest. Without detaining the individual for the sole purpose of identification, officers should attempt to identify the witness prior to his/her departure.

(b) Witnesses who are willing to provide a formal interview should be asked to meet at a suitable location where criminal investigators may obtain a recorded statement. Such witnesses, if willing, may be transported by Redding Police Department members.

　1. A written, verbal, or recorded statement of consent should be obtained prior to transporting a witness. When the witness is a minor, consent should be obtained from the parent or guardian, if available, prior to transport.

## 418.7   UPLOAD OF PHOTOGRAPHS

All detainee photographs must be submitted with the case number.  This is done by submitting the SD card containing the photos or by emailing the photos to the Department Crime Scene Photos email.  The Crime Scene Investigator, or designee, will be responsible for uploading the photos to the server file.

Alternatively, photographs can be uploaded to CommandCentral Vault using the related law incident number.

If an individual is photographed as a suspect in a particular crime, the photograph should be submitted as an evidence item in the related case, following standard evidence procedures.

When a photograph is taken in association with a particular case, the investigator/officer may use the photograph in a photo lineup. Thereafter, the individual photograph should be retained as a part of the case file.

### 418.7.1   PURGING THE FIELD PHOTO FILE

Property and Evidence will annually issue a property inventory list to all employees. Employees will be responsible for ensuring that photographs that are more than one year old and no longer serve a law enforcement purpose are purged and destroyed. Photographs that continue to serve a legitimate law enforcement purpose may be retained longer than one year provided that a notation of that fact is added to the file for each additional year that they are retained. Access to the Crime Scene Photo file shall be strictly limited to law enforcement purposes.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000834

# Redding Police Department

RPD Policy Manual

*Contacts and Temporary Detentions*

A photograph need not be purged but may be retained as an updated photograph in a prior booking file if the person depicted in the photograph has been booked at the Redding Police Department.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000835

# Criminal Organizations

## 419.1  PURPOSE AND SCOPE

The purpose of this policy is to ensure that the Redding Police Department appropriately utilizes criminal intelligence systems and temporary information files to support investigations of criminal organizations and enterprises.

### 419.1.1  DEFINITIONS

Definitions related to this policy include:

**Criminal intelligence system** - Any record system that receives, stores, exchanges or disseminates information that has been evaluated and determined to be relevant to the identification of a criminal organization or enterprise, its members or affiliates. This does not include temporary information files.

## 419.2  POLICY

The Redding Police Department recognizes that certain criminal activities, including but not limited to gang crimes and drug trafficking, often involve some degree of regular coordination and may involve a large number of participants over a broad geographical area.

It is the policy of this department to collect and share relevant information while respecting the privacy and legal rights of the public.

## 419.3  CRIMINAL INTELLIGENCE SYSTEMS

No department member may create, submit to or obtain information from a criminal intelligence system unless the Chief of Police has approved the system for department use.

Any criminal intelligence system approved for department use should meet or exceed the standards of 28 CFR 23.20.

A designated supervisor will be responsible for maintaining each criminal intelligence system that has been approved for department use. The supervisor or the authorized designee should ensure the following:

    (a)    Members using any such system are appropriately selected and trained.

    (b)    Use of every criminal intelligence system is appropriately reviewed and audited.

    (c)    Any system security issues are reasonably addressed.

### 419.3.1  SYSTEM ENTRIES

It is the designated supervisor's responsibility to approve the entry of any information from a report, field interview (FI), photo or other relevant document into an authorized criminal intelligence system. If entries are made based upon information that is not on file with this department, such as open or public source documents or documents that are on file at another agency, the designated supervisor should ensure copies of those documents are retained. Any supporting documentation

# Redding Police Department
RPD Policy Manual

## *Criminal Organizations*

for an entry shall be retained in accordance with the established records retention schedule and for at least as long as the entry is maintained in the system.

The designated supervisor should ensure that any documents retained are appropriately marked as intelligence information. Supervisors may not purge such documents without the approval of the designated supervisor.

### 419.3.2   GANG DATABASES
The Chief of Police may approve participation by the gang unit in a shared criminal gang intelligence database, such as CALGANG®. Members must obtain the requisite training before accessing any such database.

It is the Investigation Division supervisor's responsibility to determine whether any report or FI contains information that would qualify for entry into the database. Prior to designating any person as a suspected gang member, associate or affiliate in a shared gang database; or submitting a document to the Attorney General's office for the purpose of designating a person in a shared gang database; or otherwise identifying the person in a shared gang database, the gang unit supervisor shall provide written notice to the person and, if the person is under the age of 18, to his/her parent or guardian of the designation and the basis for the designation, unless providing that notification would compromise an active criminal investigation or compromise the health or safety of a minor. Notice shall also describe the process to contest the designation (Penal Code § 186.34).

The person, an attorney working on his/her behalf or his/her parent or guardian (if the person is under 18 years of age) may request, in writing, information as to whether the person is designated as a suspected gang member, associate or affiliate in a shared gang database accessible by the department, the basis for that designation and the name of the agency that made the designation. The department shall respond to a valid request in writing within 30 days, and shall provide the information requested unless doing so would compromise an active investigation or compromise the health and safety of the person if he/she is under 18 years of age (Penal Code § 186.34).

The person, or his/her parent or guardian if the person is under 18 years of age, may contest the designation by submitting written documentation which shall be reviewed by the Investigation Division supervisor. If it is determined that the person is not a suspected gang member, associate or affiliate, the person shall be removed from the database. The person and the parent or guardian shall be provided written verification of the department's decision within 30 days of receipt of the written documentation contesting the designation and shall include the reason for a denial when applicable (Penal Code § 186.34).

The Investigation Division supervisor should clearly mark the report/FI as gang intelligence information.

It is the responsibility of the Investigation Division supervisor to retain reports and FIs in compliance with the database rules and any applicable end user agreement.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Criminal Organizations - 366

COR (McLeod) 000837

# Redding Police Department

RPD Policy Manual

*Criminal Organizations*

---

Records contained in a shared gang database shall not be disclosed for employment or military screening purposes, and shall not be disclosed for the purpose of enforcing federal immigration law unless required by state or federal statute or regulation (Penal Code § 186.36).

## 419.4   TEMPORARY INFORMATION FILE

No member may create or keep files on individuals that are separate from the approved criminal intelligence system. However, members may maintain temporary information that is necessary to actively investigate whether a person or group qualifies for entry into the department-approved criminal intelligence system only as provided in this section. Once information qualifies for inclusion, it should be submitted to the supervisor responsible for consideration of criminal intelligence system entries.

### 419.4.1   FILE CONTENTS

A temporary information file may only contain information and documents that, within one year, will have a reasonable likelihood to meet the criteria for entry into an authorized criminal intelligence system.

Information and documents contained in a temporary information file:

    (a)    Must only be included upon documented authorization of the responsible department supervisor.

    (b)    Should not be originals that would ordinarily be retained by the Records Division or Property and Evidence Section, but should be copies of, or references to, retained documents such as copies of reports, FI forms, SHASCOM records or booking forms.

    (c)    Shall not include opinions. No person, organization or enterprise shall be labeled as being involved in crime beyond what is already in the document or information.

    (d)    May include information collected from publicly available sources or references to documents on file with another government agency. Attribution identifying the source should be retained with the information.

### 419.4.2   FILE REVIEW AND PURGING

The contents of a temporary information file shall not be retained longer than one year. At the end of one year, the contents must be purged.

The designated supervisor shall periodically review the temporary information files to verify that the contents meet the criteria for retention. Validation and purging of files is the responsibility of the supervisor.

## 419.5   INFORMATION RECOGNITION

Department members should document facts that suggest an individual, organization or enterprise is involved in criminal activity and should forward that information appropriately. Examples include, but are not limited to:

    (a)    Gang indicia associated with a person or residence.

    (b)    Information related to a drug-trafficking operation.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000838

# Redding Police Department

RPD Policy Manual

*Criminal Organizations*

(c)    Vandalism indicating an animus for a particular group.

(d)    Information related to an illegal gambling operation.

Department supervisors who utilize an authorized criminal intelligence system should work with the Training Sergeant to train members to identify information that may be particularly relevant for inclusion.

## 419.6   RELEASE OF INFORMATION

Department members shall comply with the rules of an authorized criminal intelligence system regarding inquiries and release of information.

Information from a temporary information file may only be furnished to department members and other law enforcement agencies on a need-to-know basis and consistent with the Records Maintenance and Release Policy.

When an inquiry is made by the parent or guardian of a juvenile as to whether that juvenile's name is in a temporary information file, such information should be provided by the supervisor responsible for the temporary information file, unless there is good cause to believe that the release of such information might jeopardize an ongoing criminal investigation.

## 419.7   CRIMINAL STREET GANGS

The Investigation Division supervisor should ensure that there are an appropriate number of department members who can:

(a)    Testify as experts on matters related to criminal street gangs, and maintain an above average familiarity with:

    1.    Any organization, associate or group of three or more persons that meets the definition of a criminal street gang under Penal Code § 186.22(f).

    2.    Identification of a person as a criminal street gang member and criminal street gang-related crimes.

    3.    The California Street Terrorism Enforcement and Prevention Act (Penal Code § 186.21 et seq.), associated crimes and what defines a criminal street gang (Penal Code § 186.22).

(b)    Coordinate with other agencies in the region regarding criminal street gang-related crimes and information.

(c)    Train other members to identify gang indicia and investigate criminal street gang-related crimes.

## 419.8   GANG MEMBER VALIDATION

The criteria used to place information about an individual or group into the Criminal Gang Intelligence File has been established using a point system with established criteria. Officers must complete a "Gang Member Documentation/Validation Report" on a suspected gang member. In order for an individual to qualify, supporting documentation or evidence must be submitted with

# Redding Police Department

RPD Policy Manual

## *Criminal Organizations*

the Gang Member Documentation/Validation Report to the Investigations Division supervisor for approval. Once approved, the original file will be kept in the Investigations Division. Information contained in the file may be placed in the Department's automated records system.

### 419.9  TRAINING

The Training Sergeant should provide training on best practices in the use of each authorized criminal intelligence system to those tasked with investigating criminal organizations and enterprises. Training should include:

(a)   The protection of civil liberties.

(b)   Participation in a multiagency criminal intelligence system.

(c)   Submission of information into a multiagency criminal intelligence system or the receipt of information from such a system, including any governing federal and state rules and statutes.

(d)   The type of information appropriate for entry into a criminal intelligence system or temporary information file.

(e)   The review and purging of temporary information files.

**Redding Police Department**

RPD Policy Manual

# Mobile Digital Computer Use

### 420.1  PURPOSE AND SCOPE

The purpose of this policy is to establish guidelines for the proper access, use and application of the Mobile Digital Computer (MDC) system in order to ensure appropriate access to confidential records from local, state and national law enforcement databases, and to ensure effective electronic communications between department employees and SHASCOM.

### 420.2  POLICY

Redding Police Department employees using the MDC shall comply with all appropriate federal and state rules and regulations and shall use the MDC in a professional manner, in accordance with this policy.

### 420.3  PRIVACY EXPECTATION

Employees forfeit any expectation of privacy with regard to messages accessed, transmitted, received or reviewed on any department technology system (see the Information Technology Use Policy for additional guidance).

### 420.4  RESTRICTED ACCESS AND USE

MDC use is subject to the Information Technology Use and Protected Information policies.

Employees shall not access the MDC system if they have not received prior authorization and the required training. Employees shall immediately report unauthorized access or use of the MDC by another employee to their supervisors or Watch Commanders.

Use of the MDC system to access law enforcement databases or transmit messages is restricted to official activities, business-related tasks, and communications that are directly related to the business, administration or practices of the Department. In the event that an employee has questions about sending a particular message or accessing a particular database, the employee should seek prior approval from his/her supervisor.

Sending derogatory, defamatory, obscene, disrespectful, sexually suggestive, harassing or any other inappropriate messages on the MDC system is prohibited and may result in discipline.

It is a violation of this policy to transmit a message or access a law enforcement database under another employee's name or to use the password of another employee to log in to the MDC system unless directed to do so by a supervisor. Employees are required to log off the MDC or secure the MDC when it is unattended. This added security measure will minimize the potential for unauthorized access or misuse.

### 420.4.1  USE WHILE DRIVING

Use of the MDC by the vehicle operator should be limited to times when the vehicle is stopped. Information that is required for immediate enforcement, investigative, tactical or safety needs should be transmitted over the radio.

## Redding Police Department

RPD Policy Manual

*Mobile Digital Computer Use*

Short transmissions, such as a license plate check, are permitted if it reasonably appears that it can be done safely.

### 420.5   DOCUMENTATION OF ACTIVITY

Except as otherwise directed by the supervisor or other department-established protocol, all calls for service assigned by a dispatcher should be communicated by voice over the police radio or electronically via the MDC. The priority of call will dictate the communication used.  Certain calls may not be communicated this way due to security or confidentiality which would prevent such broadcasting.

MDC and voice transmissions are used to document the member's daily activity. To ensure accuracy:

  (a)   All contacts or activity shall be documented at the time of the contact.

  (b)   Whenever the activity or contact is initiated by voice, it should be documented by a dispatcher.

  (c)   Whenever the activity or contact is not initiated by voice, the member shall document it via the MDC.

### 420.5.1   STATUS CHANGES

All changes in status (e.g., arrival at scene, meal periods, in service) will be transmitted over the police radio or through the MDC system.

Employees responding to in-progress calls should advise changes in status over the radio to assist other members responding to the same incident. Other changes in status can be made on the MDC when the vehicle is not in motion.

### 420.5.2   EMERGENCY ACTIVATION

If there is an emergency activation and the employee does not respond to a request for confirmation of the need for emergency assistance or confirms the need, available resources will be sent to assist in locating the employee. If the location is known, the nearest available officer should respond in accordance with the Officer Response to Calls Policy.

Employees should ensure a supervisor is notified of the incident without delay.

Officers/employees not responding to the emergency shall refrain from transmitting on the police radio until a no-further-assistance broadcast is made or if they are also handling an emergency.

### 420.6   EQUIPMENT CONSIDERATIONS

### 420.6.1   MALFUNCTIONING MDC

Whenever possible, employees will not use vehicles with malfunctioning MDCs. Whenever employees must drive a vehicle in which the MDC is not working, they shall notify SHASCOM and submit an IT ticket for repair. It shall be the responsibility of the dispatcher to document all information that will then be transmitted verbally over the police radio.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000842

# Portable Audio/Video Recorders

### 421.1  PURPOSE AND SCOPE
This policy provides guidelines for the use of portable audio/video recording devices by members of this department while in the performance of their duties. Portable audio/video recording devices include all recording systems whether body-worn, hand held or integrated into portable equipment.

This policy does not apply to mobile audio/video recordings, interviews or interrogations conducted at any Redding Police Department facility, authorized undercover operations, wiretaps or eavesdropping (concealed listening devices).

### 421.2  POLICY
The Redding Police Departmentwill provide members witha portable recorder for use during the performance of their duties. The use of recorders is intended to enhance the mission of the Department by accurately capturing contacts between members of the Department and the public.

### 421.3  COORDINATOR
The Chief of Police or the authorized designee shall appoint a member of the Department to coordinate the use and maintenance of portable audio/video recording devices and the storage of recordings, including (Penal Code § 832.18):

    (a)    Establishing a system for downloading, storing and security of recordings.

    (b)    Designating persons responsible for downloading recorded data.

    (c)    Establishing a maintenance system to ensure availability of operable portable audio/video recording devices.

    (d)    Establishing a system for tagging and categorizing data according to the type of incident captured.

    (e)    Establishing a system to prevent tampering, deleting and copying recordings and ensure chain of custody integrity.

    (f)    Working with counsel to ensure an appropriate retention schedule is being applied to recordings and associated documentation.

    (g)    Maintaining logs of access and deletions of recordings.

### 421.4  MEMBER PRIVACY EXPECTATION
All recordings made by members on any department-issued device at any time, and any recording made while acting in an official capacity for this department, regardless of ownership of the device it was made on, shall remain the property of the Department. Members shall have no expectation of privacy or ownership interest in the content of these recordings.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000843

# Redding Police Department
RPD Policy Manual

*Portable Audio/Video Recorders*

---

### 421.5   MEMBER RESPONSIBILITIES

Prior to going into service, each uniformed member will be responsible for making sure that he/ she is equipped with a portable recorder issued by the Department, and that the recorder is in good working order. If the recorder is not in working order or the member becomes aware of a malfunction at any time, the member shall promptly report the failure to his/her supervisor and obtain a functioning device as soon as reasonably practicable. Uniformed members shall wear the recorder or have it on their person while on duty.

Any member assigned to a non-uniformed position may carry an approved portable recorder at any time the member believes that such a device may be useful. Unless conducting a lawful recording in an authorized undercover capacity, non-uniformed members should wear the recorder in a conspicuous manner when in use or otherwise notify persons that they are being recorded, whenever reasonably practicable.

Members should document the existence of a recording in any report or other official record of the contact, including any instance where the recorder malfunctioned or the member deactivated the recording. Members should include the reason for deactivation.

#### 421.5.1   SUPERVISOR RESPONSIBILITIES

Supervisors should take custody of a portable audio/video recording device as soon as practicable when the device may have captured an incident involving the use of force, an officer-involved shooting or death or other serious incident, and ensure the data is downloaded (Penal Code § 832.18).

### 421.6   ACTIVATION OF THE PORTABLE RECORDER

Members should activate the recorder any time the member believes it would be appropriate or valuable to record an incident.

At no time is a member expected to jeopardize his/her safety in order to activate a portable recorder or change the recording media. However, the recorder should be activated in situations described above as soon as reasonably practicable.

#### 421.6.1   CESSATION OF RECORDING

Once activated, the portable recorder should remain on continuously until the member reasonably believes that his/her direct participation in the incident is complete or the situation no longer fits the criteria for activation. Recording may be stopped during significant periods of inactivity such as report writing or other breaks from direct participation in the incident.

Members shall cease audio recording whenever necessary to ensure conversations are not recorded between a person in custody and the person's attorney, religious advisor or physician, unless there is explicit consent from all parties to the conversation (Penal Code § 636).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000844

# Redding Police Department

RPD Policy Manual

*Portable Audio/Video Recorders*

---

### 421.6.2  SURREPTITIOUS USE OF THE PORTABLE RECORDER

Members of the Department may surreptitiously record any conversation during the course of a criminal investigation in which the member reasonably believes that such a recording will be lawful and beneficial to the investigation (Penal Code § 633).

Members shall not surreptitiously record another department member without a court order unless lawfully authorized by the Chief of Police or the authorized designee.

### 421.6.3  EXPLOSIVE DEVICE

Many portable recorders emit radio waves that could trigger an explosive device. Therefore, these devices should not be used where an explosive device may be present.

## 421.7  PROHIBITED USE OF PORTABLE RECORDERS

Members are prohibited from using department-issued portable recorders and recording media for personal use and are prohibited from making personal copies of recordings created while on-duty or while acting in their official capacity.

Members are also prohibited from retaining recordings of activities or information obtained while on-duty, whether the recording was created with department-issued or personally owned recorders. Members shall not duplicate or distribute such recordings, except for authorized legitimate department business purposes. All such recordings shall be retained at the Department.

Members are prohibited from using personally owned recording devices while on-duty without the express consent of the Watch Commander. Any member who uses a personally owned recorder for department-related activities shall comply with the provisions of this policy, including retention and release requirements, and should notify the on-duty supervisor of such use as soon as reasonably practicable.

Recordings shall not be used by any member for the purpose of embarrassment, harassment or ridicule.

### 421.7.1  PROHIBITED USE OF BIOMETRIC SURVEILLANCE SYSTEM

The installation, activation, or use of biometric surveillance systems, including facial recognition, in connection with portable recorders is prohibited (Penal Code § 832.19).

## 421.8  IDENTIFICATION AND PRESERVATION OF RECORDINGS

To assist with identifying and preserving data and recordings, members should download these in accordance with procedure and document the existence of the recording in any related case report.

A member should transfer, tag or mark recordings when the member reasonably believes:

   (a)   The recording contains evidence relevant to potential criminal, civil or administrative matters.

   (b)   A complainant, victim or witness has requested non-disclosure.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000845

# Redding Police Department
RPD Policy Manual

*Portable Audio/Video Recorders*

    (c)     A complainant, victim or witness has not requested non-disclosure but the disclosure of the recording may endanger the person.

    (d)     Disclosure may be an unreasonable violation of someone's privacy.

    (e)     Medical or mental health information is contained.

    (f)     Disclosure may compromise an undercover officer or confidential informant.

Any time a member reasonably believes a recorded contact may be beneficial in a non-criminal matter (e.g., a hostile contact), the member should promptly notify a supervisor of the existence of the recording.

## 421.9   RETENTION OF RECORDINGS
Recordings of the following should be retained for a minimum of two years (Penal Code § 832.18):

    (a)     Incidents involving use of force by an officer

    (b)     Officer-involved shootings

    (c)     Incidents that lead to the detention or arrest of an individual

    (d)     Recordings relevant to a formal or informal complaint against an officer or the Redding Police Department

Recordings containing evidence that may be relevant to a criminal prosecution should be retained for any additional period required by law for other evidence relevant to a criminal prosecution (Penal Code § 832.18).

All other recordings should be retained for a period consistent with the requirements of the organization's records retention schedule but in no event for a period less than 180 days.

Records or logs of access and deletion of recordings should be retained permanently (Penal Code § 832.18).

### 421.9.1   RELEASE OF AUDIO/VIDEO RECORDINGS
Requests for the release of audio/video recordings shall be processed in accordance with the Records Maintenance and Release Policy.

## 421.10   REVIEW OF RECORDED MEDIA FILES
When preparing written reports, members should review their recordings as a resource (see the Officer-Involved Shootings and Deaths Policy for guidance in those cases). However, members shall not retain personal copies of recordings. Members should not use the fact that a recording was made as a reason to write a less detailed report.

Supervisors are authorized to review relevant recordings any time they are investigating alleged misconduct or reports of meritorious conduct or whenever such recordings would be beneficial in reviewing the member's performance.

Recorded files may also be reviewed:

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000846

# Redding Police Department

RPD Policy Manual

*Portable Audio/Video Recorders*

     (a)    Upon approval by a supervisor, by any member of the Department who is participating in an official investigation, such as a personnel complaint, administrative investigation or criminal investigation.

     (b)    Pursuant to lawful process or by court personnel who are otherwise authorized to review evidence in a related case.

     (c)    By media personnel with permission of the Chief of Police or the authorized designee.

     (d)    In compliance with a public records request, if permitted, and in accordance with the Records Maintenance and Release Policy.

All recordings should be reviewed by the Custodian of Records prior to public release (see the Records Maintenance and Release Policy). Recordings that unreasonably violate a person's privacy or sense of dignity should not be publicly released unless disclosure is required by law or order of the court.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000847

Policy

**422**

Redding Police Department

RPD Policy Manual

# Public Recording of Law Enforcement Activity

### 422.1  PURPOSE AND SCOPE

This policy provides guidelines for handling situations in which members of the public photograph or audio/video record law enforcement actions and other public activities that involve members of this Department. In addition, this policy provides guidelines for situations where the recordings may be evidence.

### 422.2  POLICY

The Redding Police Department recognizes the right of persons to lawfully record members of this Department who are performing their official duties. Members of this Department will not prohibit or intentionally interfere with such lawful recordings. Any recordings that are deemed to be evidence of a crime or relevant to an investigation will only be collected or seized lawfully.

Officers should exercise restraint and should not resort to highly discretionary arrests for offenses such as interference, failure to comply or disorderly conduct as a means of preventing someone from exercising the right to record members performing their official duties.

### 422.3  RECORDING LAW ENFORCEMENT ACTIVITY

Members of the public who wish to record law enforcement activities are limited only in certain aspects.

(a)   Recordings may be made from any public place or any private property where the individual has the legal right to be present (Penal Code § 69; Penal Code § 148).

(b)   Beyond the act of photographing or recording, individuals may not interfere with the law enforcement activity.  Examples of interference include, but are not limited to:

1.   Tampering with a witness or suspect.

2.   Inciting others to violate the law.

3.   Being so close to the activity as to present a clear safety hazard to the officers.

4.   Being so close to the activity as to interfere with an officer's effective communication with a suspect or witness.

(c)   The individual may not present an undue safety risk to the officers, him/herself or others.

### 422.4  OFFICER RESPONSE

Officers should request that a supervisor respond to the scene whenever it appears that anyone recording activities may be interfering with an investigation or it is believed that the recording may be evidence. If practicable, officers should wait for the supervisor to arrive before taking enforcement action or seizing any cameras or recording media.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000848

# Redding Police Department

RPD Policy Manual

---

*Public Recording of Law Enforcement Activity*

---

Whenever practicable, officers or supervisors should give clear and concise warnings to individuals who are conducting themselves in a manner that would cause their recording or behavior to be unlawful.

If an arrest or other significant enforcement activity is taken as the result of a recording that interferes with law enforcement activity, officers shall document in a report the nature and extent of the interference or other unlawful behavior and the warnings that were issued.

## 422.5  SUPERVISOR RESPONSIBILITIES

A supervisor should respond to the scene when requested or any time the circumstances indicate a likelihood of interference or other unlawful behavior.

The supervisor should review the situation with the officer and:

(a)  Request any additional assistance as needed to ensure a safe environment.

(b)  Take a lead role in communicating with individuals who are observing or recording regarding any appropriate limitations on their location or behavior. When practical, the encounter should be recorded.

(c)  When practicable, allow adequate time for individuals to respond to requests for a change of location or behavior.

(d)  Ensure that any enforcement, seizure or other actions are consistent with this policy and constitutional and state law.

(e)  Explain alternatives for individuals who wish to express concern about the conduct of Department members, such as how and where to file a complaint.

## 422.6  SEIZING RECORDINGS AS EVIDENCE

Officers should not seize recording devices or media unless (42 USC § 2000aa):

(a)  There is probable cause to believe the person recording has committed or is committing a crime to which the recording relates, and the recording is reasonably necessary for prosecution of the person.

 1.  Absent exigency or consent, a warrant should be sought before seizing or viewing such recordings. Reasonable steps may be taken to prevent erasure of the recording.

(b)  There is reason to believe that the immediate seizure of such recordings is necessary to prevent serious bodily injury or death of any person.

(c)  The person consents.

 1.  To ensure that the consent is voluntary, the request should not be made in a threatening or coercive manner.

 2.  If the original recording is provided, a copy of the recording should be provided to the recording party, if practicable. The recording party should be permitted to be present while the copy is being made, if feasible. Another way to obtain the

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000849

# Redding Police Department

RPD Policy Manual

## Public Recording of Law Enforcement Activity

evidence is to transmit a copy of the recording from a device to a department-owned device.

Recording devices and media that are seized will be submitted within the guidelines of the Property and Evidence Policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Bicycle Patrol Unit

## 424.1  PURPOSE AND SCOPE

The Redding Police Department has established the Bicycle Patrol Unit  for the purpose of enhancing patrol efforts in the community. Bicycle patrol has been shown to be an effective way to increase officer visibility in congested areas and their quiet operation can provide a tactical approach to crimes in progress. The purpose of this policy is to provide guidelines for the safe and effective operation of the patrol bicycle.

## 424.2  POLICY

Patrol bicycles may be used for regular patrol duty, traffic enforcement, parking control, or special events. The use of the patrol bicycle will emphasize their mobility and visibility to the community.

Bicycles may be deployed to any area at all hours of the day or night, according to Department needs and as staffing levels allow.

Requests for specific deployment of bicycle patrol officers shall be coordinated through the Bicycle Patrol Unit supervisor or the Watch Commander.

## 424.3  SELECTION OF PERSONNEL

Interested sworn personnel, who are off probation, shall submit a memo of interest to the program manager of the Bicycle Patrol Unit via the chain of command. Interested personnel shall be evaluated by the following criteria:

(a)   Recognized competence and ability as evidenced by performance.

(b)   Special skills or training as it pertains to the assignment.

(c)   Good physical condition.

(d)   Willingness to perform duties using the bicycle as a mode of transportation.

### 424.3.1  BICYCLE PATROL UNIT SUPERVISOR

The Bicycle Patrol Unit supervisor will be selected from the rank of corporal or sergeant by the Field Operations Division Commander or his/her designee.

The Bicycle Patrol Unit supervisor shall have responsibility for the following:

(a)   Organizing bicycle patrol training.

(b)   Inspecting and maintaining inventory of patrol bicycles and program equipment.

(c)   Scheduling maintenance and repairs.

(d)   Evaluating performance of bicycle officers.

(e)   Coordinating activities with the Field Operations Division.

(f)   Other activities as required to maintain the efficient operation of the Bicycle Patrol Unit.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department
RPD Policy Manual

*Bicycle Patrol Unit*

### 424.4  TRAINING

Participants in the program must complete an initial Department approved bicycle-training course after acceptance into the program. Thereafter bicycle patrol officers should receive yearly in-service training to improve skills and refresh safety, health and operational procedures. The initial training shall minimally include the following:

- Bicycle patrol strategies.

- Bicycle safety and accident prevention.

- Operational tactics using bicycles.

### 424.5  UNIFORMS AND EQUIPMENT

Officers shall wear the Department-approved uniform and safety equipment while operating the Department bicycle. Safety equipment includes Department-approved helmet, riding gloves, protective eyewear and approved footwear.

Bicycle patrol officers shall carry the same equipment on the bicycle patrol duty belt as they would on a regular patrol assignment.

Officers will be responsible for obtaining the necessary forms, citation books and other Department equipment needed while on bicycle patrol.

### 424.6  CARE AND USE OF PATROL BICYCLES

Officers will be assigned a specially marked and equipped patrol bicycle.

Bicycles utilized for uniformed bicycle patrol shall be marked with a "POLICE" decal affixed to each side of the crossbar or the bike's saddlebag. Every such bicycle shall be equipped with front and rear reflectors front lights.

Each bicycle should be equipped with a steady or flashing blue warning light that is visible from the front, sides, or rear of the bicycle. (Vehicle Code § 21201.3)

Bicycle officers shall conduct an inspection of the bicycle and equipment prior to use to insure proper working order of the equipment. Officers are responsible for the routine care and maintenance of their assigned equipment (e.g., tire pressure, chain lubrication, overall cleaning).

If a needed repair is beyond the ability of the bicycle officer, a repair work order will be completed and forwarded to the program supervisor for repair by an approved technician.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000852

# Redding Police Department

RPD Policy Manual

*Bicycle Patrol Unit*

Each bicycle will have scheduled maintenance yearly to be performed by a Department approved repair shop/technician.

At the end of a bicycle assignment, the bicycle shall be returned clean and ready for the next tour of duty.

Electric patrol bicycle batteries shall be rotated on the assigned charger at the end of each tour of duty. During prolonged periods of non-use, each officer assigned an electric bicycle shall periodically rotate the batteries on the respective charges to increase battery life.

Officers shall not modify the patrol bicycle, remove, modify or add components except with the expressed approval of the bicycle supervisor, or in the event of an emergency.

Vehicle bicycle racks are available should the officer need to transport the patrol bicycle. Due to possible component damage, transportation of the patrol bicycle in a trunk or on a patrol car push-bumper is discouraged.

Bicycles shall be properly secured when not in the officer's immediate presence.

## 424.7  OFFICER RESPONSIBILITY

Officers must operate the bicycle in compliance with the vehicle code under normal operation. Officers may operate the bicycle without lighting equipment during hours of darkness when such operation reasonably appears necessary for officer safety and tactical considerations. Officers must use caution and care when operating the bicycle without lighting equipment.

Officers are exempt from the rules of the road under the following conditions (Vehicle Code § 21200(b)(1)):

(a)   In response to an emergency call.

(b)   While engaged in rescue operations.

(c)   In the immediate pursuit of an actual or suspected violator of the law.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000853

# Automated License Plate Readers (ALPRs)

## 425.1   PURPOSE AND SCOPE
The purpose of this policy is to provide guidance for the capture, storage and use of digital data obtained through the use of Automated License Plate Reader (ALPR) technology.

## 425.2   POLICY
The policy of the Redding Police Department is to utilize ALPR technology to capture and store digital license plate data and images while recognizing the established privacy rights of the public.

All data and images gathered by the ALPR are for the official use of this Department. Because such data may contain confidential information, it is not open to public review.

## 425.3   ADMINISTRATION
The ALPR technology, also known as License Plate Recognition (LPR), allows for the automated detection of license plates. It is used by the Redding Police Department to convert data associated with vehicle license plates for official law enforcement purposes, including identifying stolen or wanted vehicles, stolen license plates and missing persons. It may also be used to gather information related to active warrants, homeland security, electronic surveillance, suspect interdiction and stolen property recovery.

All installation and maintenance of ALPR equipment, as well as ALPR data retention and access, shall be managed by the Field Operations Division Commander, or designee. The Field Operations Division Commander will assign members under his/her command to administer the day-to-day operation of the ALPR equipment and data.

### 425.3.1   ALPR ADMINISTRATOR
The Field Operations Division Commander, or designee, shall be responsible for developing guidelines and procedures to comply with the requirements of Civil Code § 1798.90.5 et seq. This includes, but is not limited to (Civil Code § 1798.90.51; Civil Code § 1798.90.53):

(a)   A description of the job title or other designation of the members and independent contractors who are authorized to use or access the ALPR system or to collect ALPR information.

(b)   Training requirements for authorized users.

(c)   A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.

(d)   Procedures for system operators to maintain records of access in compliance with Civil Code § 1798.90.52.

(e)   The title and name of the current designee in overseeing the ALPR operation.

(f)   Working with the Custodian of Records on the retention and destruction of ALPR data.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000854

*Automated License Plate Readers (ALPRs)*

    (g)    Ensuring this policy and related procedures are conspicuously posted on the department's website.

## 425.4  OPERATIONS

Use of an ALPR is restricted to the purposes outlined below. Department members shall not use, or allow others to use the equipment or database records for any unauthorized purpose (Civil Code § 1798.90.51; Civil Code § 1798.90.53).

    (a)    An ALPR shall only be used for official law enforcement business.

    (b)    An ALPR may be used in conjunction with any routine patrol operation or criminal investigation. Reasonable suspicion or probable cause is not required before using an ALPR.

    (c)    While an ALPR may be used to canvass license plates around any crime scene, particular consideration should be given to using ALPR-equipped cars to canvass areas around homicides, shootings and other major incidents. Partial license plates reported during major crimes should be entered into the ALPR system in an attempt to identify suspect vehicles.

    (d)    No member of this department shall operate ALPR equipment or access ALPR data without first completing department-approved training.

    (e)    No ALPR operator may access department, state or federal data unless otherwise authorized to do so.

    (f)    If practicable, the officer should verify an ALPR response through the California Law Enforcement Telecommunications System (CLETS) before taking enforcement action that is based solely on an ALPR alert.

## 425.5  DATA COLLECTION AND RETENTION

The Administration Division Commander is responsible for ensuring systems and processes are in place for the proper collection and retention of ALPR data. Data will be transferred from vehicles to the designated storage in accordance with Department procedures.

All ALPR data downloaded to the server should be stored for a minimum of one year (Government Code § 34090.6) and in accordance with the established records retention schedule. Thereafter, ALPR data should be purged unless it has become, or it is reasonable to believe it will become, evidence in a criminal or civil action or is subject to a discovery request or other lawful action to produce records. In those circumstances the applicable data should be downloaded from the server onto portable media and booked into evidence.

## 425.6  ACCOUNTABILITY

All data will be closely safeguarded and protected by both procedural and technological means. The Redding Police Department will observe the following safeguards regarding access to and use of stored data (Civil Code § 1798.90.51; Civil Code § 1798.90.53):

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000855

## Redding Police Department
RPD Policy Manual

*Automated License Plate Readers (ALPRs)*

(a)   All ALPR data downloaded to the mobile workstation and in storage shall be accessible only through a login/password-protected system capable of documenting all access of information by name, date and time (Civil Code § 1798.90.52).

(b)   Members approved to access ALPR data under these guidelines are permitted to access the data for legitimate law enforcement purposes only, such as when the data relate to a specific criminal investigation or department-related civil or administrative action.

(c)   ALPR system audits should be conducted on a regular basis.

For security or data breaches, see the Records Release and Maintenance Policy.

### 425.7  RELEASING ALPR DATA
The ALPR data may be shared only with other law enforcement or prosecutorial agencies for official law enforcement purposes or as otherwise permitted by law, using the following procedures:

(a)   The agency makes a written request for the ALPR data that includes:

1.   The name of the agency.

2.   The name of the person requesting.

3.   The intended purpose of obtaining the information.

(b)   The request is reviewed by the Administration Division Commander or the authorized designee and approved before the request is fulfilled.

(c)   The approved request is retained on file.

Requests for ALPR data by non-law enforcement or non-prosecutorial agencies will be processed as provided in the Records Maintenance and Release Policy (Civil Code § 1798.90.55).

### 425.8  TRAINING
The Training Sergeant should ensure that members receive Department-approved training for those authorized to use or access the ALPR system (Civil Code § 1798.90.51; Civil Code § 1798.90.53).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000856

**Policy**
**426**

Redding Police Department
RPD Policy Manual

# Homeless Persons

## 426.1 PURPOSE AND SCOPE

The purpose of this policy is to ensure that personnel understand the needs and rights of the homeless and to establish procedures to guide officers during all contacts with the homeless, whether consensual or for enforcement purposes. The Redding Police Department recognizes that members of the homeless community are often in need of special services.

### 426.1.1 POLICY

It is the policy of the Redding Police Department to provide law enforcement services to all members of the community, while protecting the rights, dignity and private property of the homeless. Homelessness is not a crime and members of this Department will not use homelessness solely as a basis for detention or law enforcement action.

## 426.2 HOMELESS OUTREACH OFFICER

The Chief of Police will designate a member(s) of this Department to act as the Homeless Outreach Officer. The responsibilities of the Homeless Outreach Officer include the following:

A. Maintain and make available to all Department employees a list of assistance programs and other resources that are available to the homeless.

B. Meet with social services (Shasta County Health and Human Services Agency) and representatives of other organizations that render assistance to the homeless.

C. Maintain a list of the areas within and near this jurisdiction that are used as frequent homeless encampments.

D. Remain current of laws pertaining to the removal and/or destruction of the personal property of the homeless. This will include:

1. Proper posting of notices of trespass and clean-up operations.

2. Proper retention of property after clean-up, to include procedures for owners to reclaim their property in accordance with the Property and Evidence Policy and other established procedures.

E. Participate in any significant clean-up operation conducted by the Department involving the removal of personal property of the homeless.

F. Develop training to assist officers in understanding current legal and social issues relating to the homeless.

## 426.3 COMMUNITY WORK PROGRAM OFFICER

The Community Work Program Officer(s) are non-sworn Community Service Officer(s) that are responsible for coordinating the cleanup of illegal campsites and blight in the City of Redding.

Requests by officers or the public for clean-up of a homeless camp should be referred to the Community Work Program Officer (CWPO).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000857

*Homeless Persons*

### 426.4  COMMUNITY WORK PROGRAM OFFICER DUTIES - ILLEGAL CAMPSITES - PUBLIC PROPERTY

A.   Upon notification of an illegal campsite, the Community Work Program Officer (CWPO) will respond to the location. If the camp is occupied, the CWPO may request a police officer respond for enforcement action as outlined in section 426.5. The CWPO will ask for voluntary compliance to immediately vacate the property and will provide information to camp occupants regarding available services.

B.   In all cases, the CWPO will post the campsite, whether occupied or unoccupied. If the campsite is occupied, the CWPO will explain the 48 hour notice for property removal and cleanup. In the event of a significant health or safety hazard, removal/cleanup may be conducted. All postings should include:

   1.   The address and phone number of the Redding Police Department.

   2.   Procedure for retrieval of personal property.

   3.   Notice that property having no personal, medical or economic value at the discretion of the CWPO may be destroyed after the 48 hours.

   4.   Date all trash and property will be removed.

C.   Upon expiration of the 48 hour posted time frame, if compliance is not gained, the CWPO should make arrangements to cleanup and/or store items of apparent personal, medical, and/or economic value as safekeeping. These items shall be stored no more than 90 days. After 90 days all unclaimed property should be disposed.

D.   The CWPO should photograph the general condition of the camp prior to removal. These photographs should document the general condition of the property. All photographs shall be submitted in accordance with Department policy.

E.   If the homeless are present during cleanup, they should be allowed to retain possession of their personal belongings. Due to the many potential health hazards, the CWPO is not expected to extensively sort through property. Potential bio-hazardous materials shall be packaged in a sealed, identifiable sanitary bag or other appropriate container and destroyed.

F.   The posted 48 hour period may be extended at the discretion of the CWPO based on the complexity of the camp and the willingness of the occupants to make arrangements to transition to permanent housing. In the event an extension is granted, the posted notice must be updated or replaced so that it accurately states the new date by the campsite will cleaned up. No such extension should be granted verbally without modification of the notice.

G.   Enforcement action by officers may be initiated at any time prior to or after posting the 48 hour illegal camping notice as warranted.

### 426.4.1  COMMUNITY WORK PROGRAM OFFICER DUTIES - ILLEGAL CAMPSITES - PRIVATE PROPERTY

Redding Municipal Code 10.40.020 allows for a property owner to camp on their own land for a period of time not exceeding seven consecutive days without an interruption of at least seven consecutive non-camping days.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000858

# Redding Police Department

RPD Policy Manual

---

*Homeless Persons*

---

Camping on private property is also allowed for persons with the written consent of the property owner, provided that consent is in their possession at the time and is shown upon demand of any peace officer. Camping is allowed for a period of time not exceeding seven consecutive days with out an interruption of at least seven consecutive non-camping days.

Illegal campsites on private property that do not meet the above exemption, or in violation of the above listed exemption, shall be posted and removed as outlined above in 426.4.

Private property illegal campsite enforcement and/or cleanup shall not be done without prior Chief of Police approval.

## 426.5  OCCUPIED CAMPSITE CITATIONS

Upon arrival at an occupied campsite, the investigating officer should determine if a criminal violation is occurring, i.e., littering, trespassing, camping and fire activity on public property, or camping on private property.

    A.    A citation should be issued for a violation of Redding Municipal Code 10.40.010 (public property) or 10.40.020 (private property) only if the individual to be cited has other shelter available. Shelter is available if a public or private shelter has available overnight space open to an individual or family unit experiencing homelessness at no charge.

        1.    Prior to issuing a citation for Unlawful Camping, the investigating officer shall contact the Good News Rescue Mission to determine if shelter is available to the individual.

           (a)    If the shelter has available space, a citation should be issued.

           (b)    If the person has exceeded the 30 day stay limitation and it has not been more than 30 days out of the shelter, a citation shall not be issued.

           (c)    Behavior, drugs, alcohol, etc. does not constitute unavailable shelter and a citation should be issued.

           (d)    If a citation is issued, officers should ask homeless persons why they are not staying in available shelters and document their response.

           (e)    All information, including date, time and method of contact shall be documented on the citation narrative.

## 426.6  FIELD CONTACTS

Officers are encouraged to contact the homeless for purposes of rendering aid, support and for community-oriented policing purposes. Nothing in this policy is meant to dissuade an officer from taking reasonable enforcement action when facts support a reasonable suspicion of criminal activity.

Officers should provide homeless persons with resource and assistance information whenever it is reasonably apparent that such services may be appropriate.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000859

# Redding Police Department

RPD Policy Manual

*Homeless Persons*

---

### 426.6.1   OTHER CONSIDERATIONS

Homeless members of the community will receive the same level and quality of service provided to other members of the community. The fact that a victim or witness is homeless can, however, require special considerations for a successful investigation and prosecution. Officers should consider the following when handling investigations involving homeless victims, witnesses or suspects:

    A.   Document alternate contact information. This may include obtaining addresses and phone numbers of relatives and friends.

    B.   Document places the homeless person may frequent.

    C.   Provide homeless victims with victim/witness resources when appropriate.

    D.   Obtain statements from all available witnesses in the event that a homeless victim is unavailable for a court appearance.

    E.   Consider whether the person may be a dependent adult or elder, and if so, proceed in accordance with the Adult Abuse Policy.

    F.   Arrange for transportation for investigation-related matters.

    G.   Consider whether a crime should be reported and submitted for prosecution, even when a homeless victim indicates that he/she does not desire prosecution.

### 426.7   PERSONAL PROPERTY

The personal property of homeless persons must not be treated differently than the property of other members of the public. Officers should use reasonable care when handling, collecting and retaining the personal property of homeless persons and should not destroy or discard the personal property of a homeless person.

When a homeless person is arrested or otherwise removed from a public place, officers should make reasonable accommodations to permit the person to lawfully secure his/her personal property. Otherwise, the personal property should be collected for safekeeping. If the arrestee has more personal property than can reasonably be collected and transported by the officer, a supervisor should be consulted. The property should be photographed and documented.

Officers who encounter unattended camps, bedding or other personal property in public areas should not remove or destroy the property. If such property appears to involve a trespass, blight to the community or is the subject of a complaint, it should be referred to the CWPO. The CWPO will be responsible for the coordination to best resolve the issue.

### 426.8   MENTAL ILLNESS AND MENTAL IMPAIRMENT

Some homeless persons may suffer from a mental illness or a mental impairment. Officers shall not detain a homeless person under a mental illness commitment unless facts and circumstances warrant such a detention (see the Crisis Intervention Incidents Policy).

When a mental illness hold is not warranted, the contacting officer should provide the homeless person with contact information for mental health assistance as appropriate. In these

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000860

# Redding Police Department

RPD Policy Manual

*Homeless Persons*

circumstances, officers may provide transportation to a mental health specialist if requested by the person and approved by a supervisor.

## 426.9  ECOLOGICAL ISSUES

Sometimes homeless encampments can impact the ecology and natural resources of the community and may involve criminal offenses beyond mere littering. Officers are encouraged to notify other appropriate agencies or departments when a significant impact to the environment has or is likely to occur. Significant impacts to the environment may warrant a crime report, investigation, supporting photographs and supervisor notification.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000861

# First Amendment Assemblies

## 427.1 PURPOSE AND SCOPE
This policy provides guidance for responding to public assemblies or demonstrations.

## 427.2 POLICY
The Redding Police Department respects the rights of people to peacefully assemble. It is the policy of this Department not to unreasonably interfere with, harass, intimidate or discriminate against persons engaged in the lawful exercise of their rights, while also preserving the peace, protecting life and preventing the destruction of property.

## 427.3 GENERAL CONSIDERATIONS
Individuals or groups present on the public way, such as public facilities, streets or walkways, generally have the right to assemble, rally, demonstrate, protest or otherwise express their views and opinions through varying forms of communication, including the distribution of printed matter. These rights may be limited by laws or ordinances regulating such matters as the obstruction of individual or vehicle access or egress, trespass, noise, picketing, distribution of handbills and leafleting, and loitering. However, officers shall not take action or fail to take action based on the opinions being expressed.

Participant behavior during a demonstration or other public assembly can vary. This may include, but is not limited to:

- Lawful, constitutionally protected actions and speech.

- Civil disobedience (typically involving minor criminal acts).

- Rioting.

All of these behaviors may be present during the same event. Therefore, it is imperative that law enforcement actions are measured and appropriate for the behaviors officers may encounter. This is particularly critical if force is being used. Adaptable strategies and tactics are essential. The purpose of a law enforcement presence at the scene of public assemblies and demonstrations should be to preserve the peace, to protect life and prevent the destruction of property.

Officers should not:

(a) Engage in assembly or demonstration-related discussion with participants.

(b) Harass, confront or intimidate participants.

(c) Seize the cameras, cell phones or materials of participants or observers unless an officer is placing a person under lawful arrest.

Supervisors should continually observe Department members to ensure that members' interaction with participants and their response to crowd dynamics is appropriate.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000862

# Redding Police Department

RPD Policy Manual

---

*First Amendment Assemblies*

---

427.3.1  PHOTOGRAPHS AND VIDEO RECORDINGS

Photographs and video recording, can serve a number of purposes, including support of criminal prosecutions by documenting criminal acts; assistance in evaluating Department performance; serving as training material; recording the use of dispersal orders; and facilitating a response to allegations of improper law enforcement conduct.

Photographs and videos will not be used or retained for the sole purpose of collecting or maintaining information about the political, religious or social views of associations, or the activities of any individual, group, association, organization, corporation, business or partnership, unless such information directly relates to an investigation of criminal activities and there is reasonable suspicion that the subject of the information is involved in criminal conduct.

**427.4  UNPLANNED EVENTS**

When responding to an unplanned or spontaneous public gathering, the first responding officer should conduct an assessment of conditions, including, but not limited to, the following:

- Location

- Number of participants

- Apparent purpose of the event

- Leadership (whether it is apparent and/or whether it is effective)

- Any initial indicators of unlawful or disruptive activity

- Indicators that lawful use of public facilities, streets or walkways will be impacted

- Ability and/or need to continue monitoring the incident

Initial assessment information should be promptly communicated to SHASCOM, and a supervisor should be requested. Additional resources should be requested as appropriate. The responding supervisor shall assume command of the incident and the assumption of command is communicated to the involved members. A clearly defined command structure that is consistent with the Incident Command System (ICS) should be established as resources are deployed.

**427.5  PLANNED EVENT PREPARATION**

For planned events, comprehensive, incident-specific operational plans should be developed. The ICS should be considered for such events.

427.5.1  INFORMATION GATHERING AND ASSESSMENT

In order to properly assess the potential impact of a public assembly or demonstration on public safety and order, relevant information should be collected and vetted. This may include:

- Information obtained from outreach to group organizers or leaders.

- Information about past and potential unlawful conduct associated with the event or similar events.

- The potential time, duration, scope and type of planned activities.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000863

# Redding Police Department
RPD Policy Manual

## *First Amendment Assemblies*

- Any other information related to the goal of providing a balanced response to criminal activity and the protection of public safety interests.

Information should be obtained in a transparent manner, and the sources documented. Relevant information should be communicated to the appropriate parties in a timely manner.

Information will be obtained in a lawful manner and will not be based solely on the purpose or content of the assembly or demonstration, or the race, ethnicity, national origin or religion of the participants (or any other characteristic that is unrelated to criminal conduct or the identification of a criminal subject).

### 427.5.2   OPERATIONAL PLANS
An operational plans should be developed for the event.

The operational plan will minimally provide for:

(a)   Command assignments, chain of command structure, roles and responsibilities.

(b)   Staffing and resource allocation.

(c)   Management of criminal investigations.

(d)   Designation of uniform of the day and related safety equipment (e.g., helmets, shields).

(e)   Deployment of specialized resources.

(f)   Event communications and interoperability in a multi jurisdictional event.

(g)   Liaison with demonstration leaders and external agencies.

(h)   Liaison with City government and legal staff.

(i)   Media relations.

(j)   Logistics: food, fuel, replacement equipment, duty hours, relief and transportation.

(k)   Traffic management plans.

(l)   First aid and emergency medical service provider availability.

(m)   Prisoner transport and detention.

(n)   Review of policies regarding public assemblies and use of force in crowd control.

(o)   Parameters for declaring an unlawful assembly.

(p)   Arrest protocol, including management of mass arrests.

(q)   Protocol for recording information flow and decisions.

(r)   Rules of engagement, including rules of conduct, protocols for field force extraction and arrests, and any authorization required for the use of force.

(s)   Protocol for handling complaints during the event.

### 427.5.3   MUTUAL AID AND EXTERNAL RESOURCES
The magnitude and anticipated duration of an event may necessitate interagency cooperation and coordination. The assigned Incident Commander should ensure that any required memorandums

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000864

# Redding Police Department

RPD Policy Manual

*First Amendment Assemblies*

of understanding or other agreements are properly executed, and that any anticipated mutual aid is requested and facilitated (see the Mutual Aid and Outside Agency Assistance Policy).

## 427.6  UNLAWFUL ASSEMBLY DISPERSAL ORDERS

If a public gathering or demonstration remains peaceful and nonviolent, and there is no reasonably imminent threat to persons or property, the Incident Commander should generally authorize continued monitoring of the event.

Should the Incident Commander make a determination that public safety is presently or is about to be jeopardized, he/she or the authorized designee should attempt to verbally persuade event organizers or participants to disperse of their own accord. Warnings and advisements may be communicated through established communications links with leaders and/or participants or to the group.

When initial attempts at verbal persuasion are unsuccessful, the Incident Commander or the authorized designee should make a clear standardized announcement to the gathering that the event is an unlawful assembly, and should order the dispersal of the participants. The announcement should be communicated by whatever methods are reasonably available to ensure that the content of the message is clear and that it has been heard by the participants. The announcement should be amplified, made in different languages as appropriate, made from multiple locations in the affected area and documented by audio and video. The announcement should provide information about what law enforcement actions will take place if illegal behavior continues and should identify routes for egress. A reasonable time to disperse should be allowed following a dispersal order.

## 427.7  USE OF FORCE

Use of force is governed by current Department policy and applicable law (see the Use of Force, Handcuffing and Restraints, Control Devices and Techniques, and Conducted Energy Device policies).

Individuals refusing to comply with lawful orders (e.g., nonviolent refusal to disperse) should be given a clear verbal warning and a reasonable opportunity to comply. If an individual refuses to comply with lawful orders, the Incident Commander shall evaluate the type of resistance and adopt a reasonable response in order to accomplish the law enforcement mission (such as dispersal or arrest of those acting in violation of the law). Control devices and TASER® devices should be considered only when the participants' conduct reasonably appears to present the potential to harm officers, themselves or others, or will result in substantial property loss or damage (see the Control Devices and Techniques and the Conducted Energy Device policies).

Force or control devices, including oleoresin capsaicin (OC), should be directed toward individuals and not toward groups or crowds, unless specific individuals cannot reasonably be targeted due to extreme circumstances, such as a riotous crowd.

Any use of force by a member of this Department shall be documented promptly, completely and accurately in an appropriate report.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000865

# Redding Police Department

RPD Policy Manual

*First Amendment Assemblies*

## 427.8  ARRESTS

The Redding Police Department should respond to unlawful behavior in a manner that is consistent with the operational plan. If practicable, warnings or advisements should be communicated prior to arrest.

Mass arrests should be employed only when alternate tactics and strategies have been, or reasonably appear likely to be, unsuccessful. Mass arrests shall only be undertaken upon the order of the Incident Commander or the authorized designee. There must be probable cause for each arrest.

If employed, mass arrest protocols should fully integrate:

    (a)    Reasonable measures to address the safety of officers and arrestees.

    (b)    Dedicated arrest, booking and report writing teams.

    (c)    Timely access to medical care.

    (d)    Timely access to legal resources.

    (e)    Timely processing of arrestees.

    (f)    Full accountability for arrestees and evidence.

    (g)    Coordination and cooperation with the prosecuting authority, jail and courts (see the Cite and Release Policy).

## 427.9  MEDIA RELATIONS

The Public Information Officer should use all available avenues of communication, including press releases, briefings, press conferences and social media to maintain open channels of communication with media representatives and the public about the status and progress of the event, taking all opportunities to reassure the public about the professional management of the event (see the News Media Relations Policy).

## 427.10  DEMOBILIZATION

When appropriate, the Incident Commander or the authorized designee should implement a phased and orderly withdrawal of law enforcement resources. All relieved personnel should promptly complete any required reports, including use of force reports, and account for all issued equipment and vehicles to their supervisors prior to returning to normal operational duties.

## 427.11  POST EVENT

The Incident Commander should designate a member to assemble full documentation of the event, to include the following:

    (a)    Operational plan

    (b)    Any incident logs

    (c)    Any assignment logs

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000866

## Redding Police Department
RPD Policy Manual

*First Amendment Assemblies*

    (d)    Vehicle, fuel, equipment and supply records

    (e)    Incident, arrest, use of force, injury and property damage reports

    (f)    Photographs, audio/video recordings, SHASCOM records/tapes

    (g)    Media accounts (print and broadcast media)

### 427.11.1   AFTER-ACTION REPORTING
The Incident Commander should prepare an after-action report of the event, explaining the following:

    (a)    Date, time and description of the event

    (b)    Actions taken and outcomes (e.g., injuries, property damage, arrests)

    (c)    Significant events or issues.

    (d)    Recommendations for improvement, training opportunities.

### 427.12   TRAINING
Department members should receive periodic training regarding this policy, as well as the dynamics of crowd control and incident management (Penal Code § 13514.5).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000867

# Civil Disputes

### 428.1  PURPOSE AND SCOPE

This policy provides members of the Redding Police Department with guidance for addressing conflicts between persons when no criminal investigation or enforcement action is warranted (e.g., civil matters), with the goal of minimizing any potential for violence or criminal acts.

The Domestic Violence Policy will address specific legal mandates related to domestic violence court orders. References in this policy to "court orders" apply to any order of a court that does not require arrest or enforcement by the terms of the order or by California law.

### 428.2  STANDBY REQUESTS

It is the policy of the Redding Police Department to no longer respond to civil standby requests.

When SHASCOM receives a call requesting a civil standby, SHASCOM will advise the caller that the Redding Police Department does not respond to civil standbys. This does not apply to civil standby requests in domestic violence situations. Those instances will be referred to the on-duty supervisor for approval.

Under limited circumstances, staff from One Safe Place or Shasta County Victim/Witness program may require police assistance for their clients. In those cases, staff is directed to call the Police Department's non-emergency line to speak with a supervisor. SHASCOM will notify the on-duty supervisor of the request for assistance.

The on-duty supervisor is responsible to call the advocate or staff of the agency to determine the level of assistance required. Only upon the approval of a Redding Police Supervisor will Department personnel respond to a request for standby assistance.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000868

# Medical Aid and Response

### 429.1  PURPOSE AND SCOPE
This policy recognizes that members often encounter persons in need of medical aid and establishes a law enforcement response to such situations.

### 429.2  POLICY
It is the policy of the Redding Police Department that all officers and other designated members be trained to provide emergency medical aid and to facilitate an emergency medical response.

### 429.3  FIRST RESPONDING MEMBER RESPONSIBILITIES
Whenever practicable, members should take appropriate steps to provide initial medical aid (e.g., first aid, CPR, use of an automated external defibrillator (AED)) in accordance with their training and current certification levels. This should be done for those in need of immediate care and only when the member can safely do so.

Prior to initiating medical aid, the member should contact SHASCOM and request response by Emergency Medical Services (EMS) as the member deems appropriate.

Members should follow universal precautions when providing medical aid, such as wearing gloves and avoiding contact with bodily fluids, consistent with the Communicable Diseases Policy. Members should use a barrier or bag device to perform rescue breathing.

When requesting EMS, the member should provide SHASCOM with information for relay to EMS personnel in order to enable an appropriate response, including:

(a)   The location where EMS is needed.

(b)   The nature of the incident.

(c)   Any known scene hazards.

(d)   Information on the person in need of EMS, such as:

    1.   Signs and symptoms as observed by the member.

    2.   Changes in apparent condition.

    3.   Number of patients, sex, and age, if known.

    4.   Whether the person is conscious, breathing, and alert, or is believed to have consumed drugs or alcohol.

    5.   Whether the person is showing signs or symptoms of excited delirium or other agitated chaotic behavior.

Members should stabilize the scene whenever practicable while awaiting the arrival of EMS.

Members should not direct EMS personnel whether to transport the person for treatment.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000869

# Redding Police Department

RPD Policy Manual

*Medical Aid and Response*

---

### 429.4  TRANSPORTING ILL AND INJURED PERSONS

Except in extraordinary cases where alternatives are not reasonably available, members should not transport persons who are unconscious, who have serious injuries or who may be seriously ill. EMS personnel should be called to handle patient transportation.

Officers should search any person who is in custody before releasing that person to EMS for transport.

An officer should accompany any person in custody during transport in an ambulance when requested by EMS personnel, when it reasonably appears necessary to provide security, when it is necessary for investigative purposes or when so directed by a supervisor.

Members should not provide emergency escort for medical transport or civilian vehicles.

### 429.5  PERSONS REFUSING EMS CARE

If a person who is not in custody refuses EMS care or refuses to be transported to a medical facility, an officer shall not force that person to receive care or be transported. However, members may assist EMS personnel when EMS personnel determine the person lacks mental capacity to understand the consequences of refusing medical care or to make an informed decision and the lack of immediate medical attention may result in serious bodily injury or the death of the person.

In cases where mental illness may be a factor, the officer should consider proceeding with a 72-hour treatment and evaluation commitment (5150 commitment) process in accordance with the Mental Illness Commitments Policy.

If an officer believes that a person who is in custody requires EMS care and the person refuses, he/she should encourage the person to receive medical treatment. The officer may also consider contacting a family member to help persuade the person to agree to treatment or who may be able to authorize treatment for the person.

If the person who is in custody still refuses, the officer will require the person to be transported to the nearest medical facility. In such cases, the officer should consult with a supervisor prior to the transport.

Members shall not sign refusal-for-treatment forms or forms accepting financial responsibility for treatment.

### 429.6  MEDICAL ATTENTION RELATED TO USE OF FORCE

Specific guidelines for medical attention for injuries sustained from a use of force may be found in the Use of Force, Handcuffing and Restraints, Control Devices and Techniques, and Conducted Energy Device policies.

### 429.7  ADMINISTRATION OF OPIOID OVERDOSE MEDICATION

Trained members may administer opioid overdose medication (Civil Code § 1714.22; Business and Professions Code § 4119.9).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000870

*Medical Aid and Response*

### 429.7.1  OPIOID OVERDOSE MEDICATION USER RESPONSIBILITIES

Members who are qualified to administer opioid overdose medication, such as naloxone, should handle, store and administer the medication consistent with their training. Members should check the medication and associated administration equipment at the beginning of their shift to ensure they are serviceable and not expired. Any expired medication or unserviceable administration equipment should be removed from service and given to the First Aid Instructor Program Manager. Also see Policy 434 - Naloxone

Any member who administers an opioid overdose medication should contact SHASCOM as soon as possible and request response by EMS.

### 429.7.2  OPIOID OVERDOSE MEDICATION REPORTING

Any member administering opioid overdose medication should detail its use in an appropriate report.

The First Aid Instructor Program Manager will ensure that the Records Supervisor is provided enough information to meet applicable state reporting requirements.

### 429.7.3  OPIOID OVERDOSE MEDICATION TRAINING

The First Aid Instructor Program Manager should ensure initial and refresher training is provided to members authorized to administer opioid overdose medication. Training should be coordinated with the local health department and comply with the requirements in 22 CCR 100019 and any applicable POST standards (Civil Code § 1714.22).

### 429.7.4  DESTRUCTION OF OPIOID OVERDOSE MEDICATION

The First Aid Instructor Program Manager shall ensure the destruction of any expired opioid overdose medication (Business and Professions Code § 4119.9).

### 429.7.5  OPIOID OVERDOSE MEDICATION RECORD MANAGEMENT

Records regarding acquisition and disposition of opioid overdose medications shall be maintained and retained in accordance with the established records retention schedule and at a minimum of three years from the date the record was created (Business and Professions Code § 4119.9).

### 429.8  ADMINISTRATION OF EPINEPHRINE AUTO-INJECTORS

The Field Operations Division Commander may authorize the acquisition of epinephrine auto-injectors for use by Department members as provided by Health and Safety Code § 1797.197a. The Training Sergeant shall create and maintain an operations plan for the storage, maintenance, use and disposal of epinephrine auto-injectors as required by Health and Safety Code § 1797.197a(f).

Trained members who possess valid certification may administer an epinephrine auto-injector for suspected anaphylaxis (Health and Safety Code § 1797.197a(b); 22 CCR 100019).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000871

# Redding Police Department
RPD Policy Manual

*Medical Aid and Response*

---

429.8.1   EPINEPHRINE USER RESPONSIBILITIES
Members should handle, store and administer epinephrine auto-injectors consistent with their training and the Department operations plan. Members should check the auto-injectors at the beginning of their shift to ensure the medication is not expired. Any expired medication should be removed from service in accordance with the Department Operations Plan.

Any member who administers an epinephrine auto-injector medication should contact SHASCOM as soon as possible and request response by EMS (Health and Safety Code § 1797.197a(b)).

429.8.2   EPINEPHRINE AUTO-INJECTOR REPORTING
Any member who administers an epinephrine auto-injector should detail its use in an appropriate report.

The First Aid Instructor Program Manager should ensure that the Records Supervisor is provided enough information for required reporting to the EMS Authority within 30 days after each use (Health and Safety Code § 1797.197a(f)).

Records regarding the acquisition and disposition of epinephrine auto-injectors shall be maintained pursuant to the established records retention schedule but no less than three years (Business and Professions Code § 4119.4(d)).

429.8.3   EPINEPHRINE AUTO-INJECTOR TRAINING
The First Aid Instructor Program Manager should ensure that members authorized to administer epinephrine auto-injectors are provided with initial and refresher training that meets the requirements of Health and Safety Code § 1797.197a(c) and 22 CCR 100019.

## 429.9   SICK OR INJURED ARRESTEE
If an arrestee appears ill or injured, or claims illness or injury, he/she should be medically cleared prior to booking. If the officer has reason to believe the arrestee is feigning injury or illness, the officer should contact a supervisor, who will determine whether medical clearance will be obtained prior to booking.

If the jail or detention facility refuses to accept custody of an arrestee based on medical screening, the officer should note the name of the facility person refusing to accept custody and the reason for refusal, and should notify a supervisor to determine the appropriate action.

Arrestees who appear to have a serious medical issue should be transported by ambulance.

Nothing in this section should delay an officer from requesting EMS when an arrestee reasonably appears to be exhibiting symptoms that appear to be life threatening, including breathing problems or an altered level of consciousness, or is claiming an illness or injury that reasonably warrants an EMS response in accordance with the officer's training.

## 429.10   FIRST AID TRAINING
The Training Sergeant should ensure officers receive initial first aid training within one year of employment and refresher training every two years thereafter (22 CCR 100016; 22 CCR 100022).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000872

# Field Interview Cards

## 430.1  PURPOSE AND SCOPE
The purpose of this policy is to establish guidelines for the use of Field Interview (FI) cards.

## 430.2  PROCEDURE

(a)   The FI card is to be used by Field Operations personnel to document contact with persons in suspicious or unusual situations.

(b)   Accurate and complete FI cards provide immediate and long-term benefit to the Department. Fully completed checkbox sections enhance data searches for particular suspect descriptions or unique identifiers. Descriptive narratives provide expanded detail for investigative use. Both elements are critical for the effective use of FI cards.

(c)   Valid reasons for documentation on an FI card include, but are not limited to the following:

1.   Identifying persons in a known or suspected vehicle used in a crime

2.   Identifying suspicious persons

3.   Identifying persons in an unusual place

4.   Identifying persons at an unusual time

5.   Identifying persons with known or suspected gang affiliation

6.   Identifying persons associating with persons which are known or believed to be involved with criminal activity

7.   Documentation of any other person that may be of interest to investigations or Field Operations Division personnel

8.   To document persons who have been released from custody and are listed in the "Supervised Release File" (SRF).

(d)   FI cards will be entered by cadets and/or volunteers into Spillman. Officers may also complete and enter field interviews into Spillman mobile.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000873

# Embezzled and Stolen Vehicles

## 431.1 PURPOSE AND SCOPE
The purpose of this policy is to define and delineate the investigative process regarding stolen vehicles. The Redding Police Department considers the theft of motor vehicles a serious offense and shall thoroughly investigate each incident.

### 431.1.1 DEFINITION
For the purpose of this policy, a vehicle is defined as "a device by which any person or property may be propelled, moved or drawn upon a highway, excepting a device moved exclusively upon stationary rails or tracks." (670 CVC)

## 431.2 EMBEZZLED VEHICLES

(a) Each embezzled vehicle case in which there is a written contract must be reviewed on its individual merits. The rental-theft prevention and/or prosecution must begin with the agency leasing the vehicle.

(b) Vehicle rental theft is thefts by embezzlement. To prove the commission of theft by embezzlement, each of the following elements must be proved:

1. A written contract existed between two persons;

2. Pursuant to such a contract, one of those persons accepted property entrusted to him by the other person; and

3. With the specific intent to deprive the other person of his property, the person fraudulently appropriated or converted it for his own use.

(c) The rental agency must follow the established District Attorney's procedure. The leasing agency shall obtain the following information prior to the signing of a contract:

1. Proper identification, preferably a driver's license with a photograph.

2. At a minimum, the following information:

    i. First, middle, and last name.

    ii. Both addresses if the lessee is moving.

    iii. Date of birth.

    iv. Driver's license number.

    v. Complete description of the vehicle.

    vi. Social security number.

    vii. Place of employment.

3. If the lessee appears to be suspicious, the residence or place of employment should be verified prior to the consummation of the contract.

4. Leasing agencies shall establish a documenting procedure on the extension of leases.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Embezzled and Stolen Vehicles*

(d) The District Attorney requires upon the expiration of the rental contract, the rental agency shall make a written demand by certified or registered mail to the last known address of the lessee requesting the immediate return of the vehicle.  This request must be mailed within 30 days after the expiration of the contract.

    1. Officers may initiate a stolen vehicle report, on the sixth day after the contract expires, as provided in 10855 CVC.

    2. If the stolen vehicle is recovered by the rental agency, recovery procedures should be followed as outlined in this policy (Recovery Procedures).

(e) Vehicles embezzled after the expiration of a loan period.

    1. The theory of prosecution for vehicle loan thefts is theft by embezzlement, each of the following elements must be proved:

        i. A relationship of trust and confidence existed between two persons.

        ii. Pursuant to such relationship, one of those persons accepted property entrusted to him by the other person; and

        iii. With the specific intent to deprive the other person of his property, the person fraudulently appropriated or converted it for his own use.

    2. Each theft after loan case must be reviewed on its individual merits to determine if the borrowing party has converted the vehicle to his/her own use. This determination must be made on a case by case basis, based on the specific facts of each case.  Consultation with the District Attorney's office may be made if necessary.An officer should have probable cause to believe the borrowing party has fraudulently appropriated or converted the vehicle to their own use before entering the vehicle into the Stolen Vehicle System (SVS).

(f) 10502 CVC requires that in embezzlement cases a warrant is issued for the suspect's arrest prior to entering the vehicle into SVS. 10855 CVC presumes a leased/rented vehicle is embezzled on the sixth day after the rental agreement has expired.A report may be taken at that time and the vehicle entered into SVS.

(g) If one or more of the below-listed elements are present and have been substantiated, and the officer shall make a stolen vehicle report:

    1. Evidence of fraud on the face of the contract, i.e., verified false information on the contract.

    2. Use of NSF/Account Closed checks or stolen credit cards.

    3. A vehicle is not returned but found. The officer shall list where the vehicle is recovered and the condition of the vehicle, e.g., stripped or altered in appearance or license plate(s).

## 431.3  STOLEN VEHICLES

(a) A stolen vehicle is one which has been taken without the consent of the owner, with all the elements of CVC Section 10851 present. Examples of vehicles include passenger automobiles, pick-up trucks, trucks and trailers, motorcycles and off-road vehicles.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000875

# Redding Police Department

RPD Policy Manual

*Embezzled and Stolen Vehicles*

---

(b)   An officer receiving a vehicle theft report shall determine the validity of the report.When there is a reason to believe it is not an authentic report, the individual shall be cautioned as to the criminal consequences of making a false report (Penal Code Seciton148.5). A report must be accepted, however, and the investigating officer and/or the follow-up officer shall investigate the validity prior to making an entry into the Stolen Vehicle System (SVS).

(c)   Factors which may help to determine the validity of the report are:

1.   Registered owner's name as it appears on the registration.

2.   Legal owner's name as it appears on the registration.

3.   Whether payments are current (repossession notice on file with the Redding Police Department).

4.   Marital status.

5.   How many sets of keys exist and who has possession of the keys.

6.   The sobriety of the reporting party.

7.   Amount of gas in the vehicle and the mechanical condition of the vehicle.

(d)   In all investigations, officers should ensure that the victim signs the Citizen's Arrest Statement located on the RPD signature page.If the victim is out of the area and unable to sign the Citizen's Arrest Statement, the officer can still take the report and after taking steps to confirm the identity of the victim and legal owner of the stolen vehicle.

(e)   The theft of devices normally associated with motorized toys such as pocket bikes, motorized ride-on toys, motorized scooters, motorized skateboards, and surfboards shall be reported stolen using a regular offense report.The theft shall be classified as either a grand or petty theft depending upon the value of the item stolen.

(f)   Any identifiable property in the vehicle at the time of the theft shall be recorded and entered into the Department of Justice Automated Property File, or Automated Firearms Systems.

(g)   The officer shall ensure care is exercised when entering VIN numbers and out of state license plates.

(h)   Upon completion of the initial investigation, officers shall ensure the vehicle is entered into the SVS system and broadcasts are made to allied agencies.

## 431.4   RECOVERED VEHICLES

A recovered vehicle is one which has been located and identified as a vehicle previously reported stolen or embezzled and which had been stored or returned to the owner. All pertinent information shall be placed in a supplemental report by the employee who causes the action to be initiated.

(a)   Upon the recovery of an out of area reported stolen vehicle, the employee shall complete the following:

1.   Enter a "Locate" message into SVS; and

2.   Notify the reporting authority.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000876

# Redding Police Department

RPD Policy Manual

*Embezzled and Stolen Vehicles*

        i.     A teletype, in addition to the "Locate" message, shall be sent to provide a written record of the recovery and pertinent additional information.

(b)    When the Department is notified an RPD reported stolen vehicle has been recovered, an employee shall immediately:

    1.    Enter a "Clear" message into SVS

    2.    Notify the victim

    3.    Document the above information in a supplemental report.

(c)    Processing of recovered stolen vehicles shall be handled in the following manner, which is in addition to the procedure already outlined:

    1.    Out of area recovery:

        i.     Request that a copy of the recovery report is mailed or faxed.

        ii.    Determine if there is any evidence available.

        iii.   If an arrest is made, determine:

            (a)    If there are local charges pending;

            (b)    If the suspect made any statements;

            (c)    The date the suspect will be ready for release;

            (d)    The full physical description of the suspect;

            (e)    If the suspect will waive extradition; and

            (f)    the date, time, and location of the arrest. Enter the name of the officer making the arrest and the circumstances/reason for the arrest.

    2.    Local Recovery:

        i.     The officer or CSO will be dispatched to the scene to process the vehicle for evidence. The on-duty supervisor shall determine how far units shall respond out of RPD jurisdiction. The supervisor may request assistance from CHP, SCSO, and APD.

        ii.    When a stolen vehicle is recovered, supplemental report shall be prepared at the time the vehicle is placed in storage or returned to the owner.

        iii.   On-call tow service shall be used unless there is a specific request by the R/O or his agent. All recovered vehicles (including motorcycles) shall be taken to a tow yard unless the RO/LO or their authorized representative accepts responsibility, or the vehicle had evidence value and must be stored at a City facility. A CHP 180 report shall be completed if the stolen vehicle is towed/stored. The Lien Sales Officer will receive a copy of the Notice of Stored vehicle form. The Lien Sales Officer will send a copy of the Notice of Stored Vehicle form to:

            (a)    Originating agency

            (b)    Registered owner; via certified mail, return receipt requested

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000877

   (c)  Legal owner (if different) via certified mail, return receipt requested

   (d)  Storing agency (tow company)

  3.  Vehicle Inventory:

   i.  Officers ordering vehicles impounded or stored shall complete the vehicle inventory section of the CHP-180.

   ii.  Members of this Department shall inventory the contents of all vehicles which they store or impound.

   iii.  Upon completion of any additional vehicle inventory forms, the officer shall sign the inventory listing and, before releasing the vehicle to the garage keeper, shall require the garage keeper or his agent to sign any additional inventory form.

(d) Follow-Up Investigation

  1.  Copies of all stolen/embezzled vehicle cases, supplementals, and teletypes shall be routed to the officer who took the initial report if there is suspect information and/or investigative leads.If there is no suspect information or investigative leads the case status will be listed as INACTIVE.

(e) Suspects Arrested for 10851 CVC

  1.  Arrests made by the Redding Police Department for vehicles stolen out of Shasta County require the arresting officer to notify the original reporting agency.

   i.  The officer shall advise the original reporting agency that the Shasta County District Attorney's Office will not normally file charges on out of county reported stolen vehicles which result in an arrest in Shasta County. The original agency must file a complaint within 48 hours or the suspect will be released.

   ii.  The arresting officer's report shall include the date, time, and person contacted at the original reporting agency.

  2.  When an "out of county" agency arrests a suspect in a Redding Police Department reported stolen vehicle, the same 48 hour time frame applies.

   i.  When arrest information is received, Records shall notify the shift supervisor or watch commander immediately.

   ii.  The shift supervisor shall assign an officer to the case.

   iii.  The assigned recovering officer shall contact the arresting agency and request a copy of the arrest report. If the report is not available, obtain a statement from the arresting officer. The statement or report should contain the necessary information for an arrest warrant, including date and time of arrest, the suspect's full name, date of birth, description, details of the arrest, and statements made by the suspect.

  3.  It shall be the responsibility of the assigned recovering officer to contact the registered owner of the 10851 CVC vehicle and advise him/her of the recovery and the location of the vehicle. This notification or attempted notification shall

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000878

# Redding Police Department

RPD Policy Manual

*Embezzled and Stolen Vehicles*

be documented in the recovery report. The vehicle shall then be removed from SVS system by records.

4. The assigned officer shall complete the report immediately and place a "priority one" on the report package. The report shall be given to the Records Supervisor to be transcribed by 0800 hours the next morning.

   i. The Records supervisor shall give the transcribed report to the shift supervisor for approval and routing. A copy shall be routed to the Investigations Division.

   ii. The shift supervisor shall notify the Investigations Supervisor or Auto Theft Coordinator of the "out of county" arrest.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
Embezzled and Stolen Vehicles - 408

COR (McLeod)  000879

# All Terrain Motorcycle Unit

## 432.1   PURPOSE AND SCOPE

The Redding Police Department has established the All-Terrain Motorcycle Unit (ATMU) for the purpose of enhancing patrol efforts in the community. All-terrain motorcycles have proven to be a valuable patrol asset when utilized to patrol areas otherwise inaccessible to patrol vehicles. The purpose of this policy is to provide guidelines for the safe and effective operation of the all-terrain motorcycle.

## 432.2   POLICY

All-terrain motorcycles may be used for special events or special assignments. The use of the all-terrain motorcycle will emphasize their mobility and visibility to the community.

All-terrain motorcycles may be deployed to any area at all hours, according to Department needs, and as staffing levels allow.

Requests for the specific deployment of ATMU officers shall be coordinated through the shift supervisor or the Watch Commander.

## 432.3   SELECTION OF PERSONNEL

Interested sworn personnel, who are off probation and possess an M1 or M1 permit, shall submit a request to join the ATMU to their appropriate Division Commander.  A copy will be forwarded to the ATMU supervisor.  Qualified applicants may be required to complete a skills test to evaluate the motorcycle competence level. Officers will be ranked by their riding skill level and placed on a ranking list for the next available training class.

### 432.3.1   ATMU SUPERVISOR

The ATMU supervisor will be the Traffic Sergeant. The ATMU supervisor shall have responsibility for the following:

(a)   Organizing ATMU training.

(b)   Inspecting and maintaining an inventory of ATMU motorcycles and program equipment.

(c)   Scheduling maintenance and repairs.

(d)   Evaluating the performance of ATMU officers as it pertains to this unit.

(e)   Coordinating activities with Field Operations.

(f)   Other activities as required to maintain the efficient operation of the All-Terrain Motorcycle Unit.

# Redding Police Department

RPD Policy Manual

*All Terrain Motorcycle Unit*

## 432.4  TRAINING

Participants in the program must complete a Department approved or P.O.S.T. approved all-terrain motorcycle 40-hour training course. Once an officer completes the training course and approved by the Chief of Police, the officer will be assigned to the All Terrain Motorcycle Unit.

A quarterly training/qualification session will be provided by a department-approved motorcycle instructor. The session will be held at a department approved training site and use department approved qualification course.

ATMU personnel must successfully complete the qualification course at least once every six months to participate in ATMU assignments.

ATMU personnel will be required to qualify with their duty firearm while wearing motorcycle safety equipment including the helmet and riding gloves.

## 432.5  UNIFORMS AND EQUIPMENT

ATMU officers shall wear the Department-approved uniform and safety equipment while operating the Department motorcycle. Safety equipment includes a Department-approved helmet, riding gloves, protective eyewear, and approved footwear.

## 432.6  CARE AND USE OF ALL-TERRAIN MOTORCYCLE

Officers will use an assigned and specially marked all-terrain motorcycle. Motorcycles utilized for uniformed specialized patrol operations shall be equipped with a rear rack sufficient to carry all necessary equipment such as first aid kit, citations, and report forms.

Officers shall conduct an inspection of the all-terrain motorcycle and its equipment prior to use to ensure its proper working order.Officers are responsible for the routine care and maintenance of the assigned equipment (e.g., tire pressure, chain lubrication, overall cleaning).If a needed repair is beyond the ability of the ATMU officer, a repair work order will be completed and forwarded to the program supervisor for repair by an approved technician.Officers shall not modify, add, or remove components except with the expressed approval of the ATMU supervisor, or in the event of an emergency.

At the end of a special assignment, the all-terrain motorcycle shall be returned clean and ready for the next tour of duty.

All-terrain motorcycles shall be properly secured when not in the officer's immediate presence.

## 432.7  OFFICER RESPONSIBILITY

Officers must operate the all-terrain motorcycle in compliance with the vehicle code. "Code-3" operation of an all-terrain motorcycle is not authorized, as the motorcycle is not equipped with a siren.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000881

# Homeland Security Threat Condition Advisory

### 433.1  PURPOSE AND SCOPE

The purpose of this policy is to provide guidelines for Redding Police Department personnel in response to a Department of Homeland security threat condition of RED or ORANGE.

### 433.2  DEFINITION OF THREAT LEVELS

The Homeland Security Advisory System provides warnings in the form of graduated threat conditions that increase as the risk of a threat increases:

(a)   Red — Severe risk or an attack has occurred

(b)   Orange — High Risk of terrorist attack

(c)   Yellow — Elevated, significant risk

(d)   Blue — Guarded, general risk

(e)   Green — Low Risk

### 433.3  CONDITION RED RESPONSE

On-duty supervisor (Sergeant, Corporal, Acting):

(a)   Has authority to hold current shift resources and call in oncoming shift resources;

(b)   Shall deploy resources as needed to protect life and property:

  1.   Follow RPD red and orange target list (attached).

  2.   Target vulnerability list (attached).

  3.   Other strategic locations as directed by the Chief of Police. Shall notify the Watch Commander with as much information as possible.

(c)   Watch Commander:

  1.   Notify Division Commanders of Field Operations, Investigations and Administrative Services.

(d)   Field Operations Commander:

  1.   Notify the Chief of Police.

(e)   Chief of Police:

  1.   Notify the City Manager and City Department Heads.

  2.   Emergency staffing plan — 12-hour shifts, as directed by the Chief of Police.

### 433.4  CONDITION ORANGE RESPONSE

On duty supervisor (Sergeant, Corporal, Acting):

(a)   Has the authority to hold current shift resources and call in oncoming shift resources;

(b)   Notify oncoming supervisor of graduated threat condition;

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000882

# Redding Police Department

RPD Policy Manual

*Homeland Security Threat Condition Advisory*

    (c)    Notify the on-duty Watch Commander;

    (d)    Deploy resources as needed to protect life and property;

    (e)    Deploy resources as directed by the Field Operations Commander and/or Chief of Police;

    (f)    Follow RPD target ORANGE list.

Watch Commander:

    (a)    Notify the Field Operations Commander

## 433.5  SECURITY

This policy is exempt from disclosure under the Public Records Act as "Records of intelligence information or security procedures," 6254(f) G.C. **Do not discuss or divulge** any aspect of this policy with non-law enforcement personnel.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Homeland Security Threat Condition Advisory
- 412
COR (McLeod)  000883

# Naloxone

### 434.1  PURPOSE AND SCOPE

Redding Police personnel are occasionally the first responders to a person who is experiencing or suspected of experiencing an opioid-related overdose. The purpose of this policy is to establish procedures to govern an "Overdose Prevention Pilot Program" through the deployment of Naloxone by Redding Police Department personnel. The objective is to reduce injuries and fatalities resulting from opioid overdoses, in the instances where emergency medical personnel have not yet arrived.

The initial phase of the "Overdose Prevention Pilot Program" will be a trial phase of six months. At the end of this trial phase, the program's effectiveness will be evaluated by personnel from the Shasta County Public Health and the Redding Police Department.

### 434.2  POLICY

It is the policy of the Redding Police Department that officers shall be trained to administer Naloxone in accordance with mandated training guidelines established by the Sierra Sacramento Valley EMS Authority and Shasta County Public Health Department pursuant to Health & Safety Code 1797.197.

(a)  Officers who are trained in accordance with mandated training guidelines shall deploy with Naloxone kits in the field. However, the officer will retain the discretion to administer or not administer Naloxone to persons experiencing or suspected of experiencing opioid-related overdoses. There is no legal obligation to administer Naloxone.

(b)  Pursuant to Civil Code section 1714.22, officers who administer Naloxone, are protected from civil and criminal liability if they "act with reasonable care" and "in good faith." This is accomplished by administering Naloxone with established and approved training protocol.

### 434.3  PROGRAM COORDINATOR

The Field Operations Division Commander will serve as the Department's Program Coordinator and will work in collaboration with Shasta County Public Health. The Program Coordinator may designate a Program Manager to provide support to the Program Coordinator. The Program Coordinator or his/her designee will be responsible for tracking, storage, maintenance, replacement of Naloxone kits, and reporting Naloxone usage to the appropriate agencies.

### 434.4  TRAINING

Officers may not administer Naloxone without the completion of the Department approved training. The initial training will include, at a minimum, an overview of California Civil Code 1714.22, patient assessment (signs/symptomology of overdose), universal precautions, rescue breathing, seeking medical attention, and the use of intra-nasal Naloxone. Upon completion of

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000884

## Redding Police Department
RPD Policy Manual

*Naloxone*

training, officers will have their training recorded with the Program Coordinator and Training Sergeant. Officers will receive update training as deemed appropriate by the Program Coordinator.

### 434.5  NALOXONE KITS
Naloxone kits will include at a minimum: gloves, mask, eye protection, atomizer, and Naloxone. Officers authorized to carry these kits shall have them either on their person or available in their assigned vehicles.

### 434.6  KIT STORAGE
At the beginning of each patrol shift, a shift supervisor will issue a Naloxone kit for each beat officer who has completed the Department approved training. At the end of each shift, the Naloxone kits are to be returned to the shift supervisor. Kits will not be stored in patrol vehicles for extended periods of time.

### 434.7  NALOXONE USE
Officers who have completed the required Naloxone administration training are authorized to administer Naloxone when they believe someone is experiencing an opioid-related overdose. Personnel will treat the incident as a medical emergency and shall follow these steps when performing this intervention:

    (a)   Confirm emergency personnel are responding;

    (b)   Maintain universal precautions;

    (c)   Perform patient assessment;

    (d)   Determine unresponsiveness;

    (e)   Update SHASCOM of potential patient overdose condition;

    (f)   Follow Naloxone use protocol;

    (g)   Immediately notify responding emergency personnel that Naloxone has been administered; and

    (h)   Notify patrol sergeant.

### 434.8  DOCUMENTATION OF NALOXONE DEPLOYMENT
Upon deployment of Naloxone, Officers shall complete a police report. Naloxone usage shall be documented along with the notification of the usage to responding EMS personnel and the shift supervisor. When detailing the nature of the incident, the care the patient received and the fact Naloxone was deployed shall be included. Prior to the end of shift, a Naloxone Utilization Patient Care Report shall be completed and provided to the on-duty shift supervisor and the Program Coordinator.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod) 000885

# Redding Police Department
RPD Policy Manual

*Naloxone*

## 434.9  MAINTENANCE AND REPLACEMENT
The daily inspection of Naloxone kits will be the responsibility of the officer deploying the kit. The maintenance and pre-placement of Naloxone kits will be the responsibility of the Program Coordinator or his/her designee. Used, lost, expired, or damaged Naloxone kits will be reported to the shift supervisor and returned to the local Program Manager for replacement.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000886

Redding Police Department

RPD Policy Manual

# Chapter 5 - Traffic Operations

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000887

**Policy**

**501**

# Traffic Collision Reporting

## 501.1 PURPOSE AND SCOPE

The Redding Police Department prepares traffic collision reports in compliance with the California Statewide Integrated Traffic Records System (SWITRS) Collision Investigation Manual (CIM) and as a public service makes traffic collision reports available to the community with some exceptions.

## 501.2 RESPONSIBILITY

All traffic collision reports taken by members of this Department shall be forwarded to the Traffic Unit for approval and data entry into the Records Management System. The Traffic Sergeant will be responsible for monthly traffic statistics to be forwarded to the Field Operations Commander via the chain of command, or other persons as required.

Traffic collisions shall be reported in the form of full investigations, reports, or log entries.

Risk Management shall be notified of all collisions involving City of Redding vehicles or City of Redding property.

## 501.3 REPORTING SITUATIONS

The on-duty supervisor has the discretion to authorize whether a traffic report and/or traffic investigation should be taken, or if a log report is acceptable.

### 501.3.1 LOG REPORT

(a) Collisions with property damage only, including those late reported.

(b) Private-property collisions with complaint of pain or property damage only.

(c) Hit-and-run collisions with less than $1000 damage, no injuries and no reasonable likelihood of developing suspect information.

(d) Late reported collisions withcomplaint of pain or property damage only, when all the involved parties cannot be sufficiently identified.

(e) Hit-and-run collisions to City of Redding property, other than city vehicle, with less than $1000 damage and no reasonable likelihood of developing suspect information.

(f) Late reported non-injury traffic collision with any party involved not having proof of insurance, or provided false proof of insurance.

(g) Collisions involving City of Redding property, other than a city vehicle, resulting in less than $1000 damage and no injuries.

(h) Collisions involving City of Redding vehicles resulting in less than $1000 damage and no injuries. For RPD emergency vehicles see 501.4.

(i) Hit-and-run collisions involving City of Redding vehicles resulting in less than $1000 damage, no injuries, and no reasonable likelihood of developing suspect information. For RPD emergency vehicles see 501.4.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000888

# Redding Police Department

RPD Policy Manual

*Traffic Collision Reporting*

---

### 501.3.2   TRAFFIC COLLISION REPORT

(a)   Collisions with complaint of pain and the involved parties can be sufficiently identified. This includes late reported collisions. Private property is excluded (see 501.3.1(a)).

(b)   Collisions with visible injuries, including late reported.

(c)   Property damage only (including City of Redding property) collisions involving a party that is unlicensed, suspended, does not have valid insurance, or is arrested for driving under the influence.

(d)   Collisions involving City of Redding property (non-vehicle) with damage of more than $1000.

(e)   All collisions involving City of Redding vehicles when there is a complaint of pain, other visible injury, or damage of more than $1000.

(f)   Hit-and-run collisions with damage of more than $1000, possible or suspected injury, and no reasonable likelihood of identifying the suspect.

(g)   Hit-and-run collisions where the suspect is identified during the initial investigation or there is sufficient information to conduct a follow-up investigation.

(h)   Collisions involving a train in an intersection with a minor injury or suspected minor injury.

### 501.3.3   FULL INVESTIGATION REPORT

(a)   All suspected serious injury and fatal collisions, including late-reported and hit-and-run.

(b)   All suspected serious injury and fatal collisions involving a train in an intersection.

### 501.3.4   TRAFFIC COLLISIONS INVOLVING A DUI DRIVER

(a)   All suspected minor injury, possible injury and property damage only collisions shall be documented in a traffic collision report.

(b)   All suspected serious injury and fatalities shall be documented in a traffic investigation.

**NOTE**: Officers preparing the report involving a DUI driver shall compute the hours spent on the investigation by all RPD personnel and other city personnel.  The time shall be documented in the collision report, in the miscellaneous box on page 3 of the CHP 555.

### 501.3.5   COLLISION REPORTS - RPD EMERGENCY VEHICLES

(a)   Log Report and City of Redding Incident Report:

    1.   Collisions involving on-duty RPD emergency vehicle resulting in damage less than $1000 and no injuries.

    2.   Hit-and-run collisions with damage of less than $1000, no injuries, and no reasonable likelihood of developing suspect information.

(b)   Traffic Collision Report and City of Redding Incident Report:

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000889

# Redding Police Department

RPD Policy Manual

---

*Traffic Collision Reporting*

---

      1.    Collisions involving an on-duty RPD emergency vehicle resulting in damage of more than $1000.

      2.    Collisions involving an on-duty RPD emergency vehicle resulting complaint of pain or minor visible injury.

      3.    Hit-and-run collisions with damage of more than $1000, no injuries, and no reasonable likelihood of developing suspect information.

(c)    Full Investigation Report and City of Redding Incident Report:

      1.    All collisions involving on-duty RPD emergency vehicle with any moderate or major injury.

(d)    All RPD Emergency Vehicle collisions shall include digital photos by the supervisor or designee.

## 501.3.6   OPERATIONAL DAMAGE - RPD VEHICLES

(a)    At the supervisor's discretion, operational damage to any RPD vehicle may be documented on a City of Redding Incident Report.

(b)    Operational Damage is limited to minor damage, such as a bent tailpipe, broken light lens, broken mirror, minor scrapes, minor dents, damage to wheel rim or a broken antenna.

(c)    Operational damage includes incidents with damage only to Department equipment/ vehicles and no other involved party.

(d)    An incident report documenting the circumstances and damage shall be completed by the on-duty supervisor and forwarded, via chain of command, to the Division Commander.  Damage to the vehicle/equipment shall also be documented with digital photographs.

## 501.3.7   OUTSIDE AGENCY REPORT REQUESTS

All outside agency requests for a traffic collision report should be reviewed and approved by a supervisor. The supervisor will determine the type of report required.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000890

# Vehicle Towing and Release

## 502.1  PURPOSE AND SCOPE
This policy provides the procedures for towing a vehicle by or at the direction of the Redding Police Department. Nothing in this policy shall require the Department to tow a vehicle.

## 502.2  STORAGE AND IMPOUNDS
When circumstances permit, for example when towing a vehicle for parking or registration violations, the handling employee should, prior to having the vehicle towed, make a good faith effort to notify the owner of the vehicle that it is subject to removal. This may be accomplished by personal contact, telephone or by leaving a notice attached to the vehicle at least 24 hours prior to removal. If a vehicle presents a hazard, such as being abandoned on the roadway, it may be towed immediately.

The responsibilities of those employees towing, storing or impounding a vehicle are listed below.

### 502.2.1  VEHICLE STORAGE REPORT
Department members requesting towing, storage or impound of a vehicle shall complete CHP Form 180 and accurately record the mileage and a description of property within the vehicle (Vehicle Code § 22850). A copy of the storage report should be given to the tow truck operator and the original shall be submitted to the Lien Sale Officer/Traffic Supervisor as soon as practicable after the vehicle is stored.

### 502.2.2  REMOVAL FROM TRAFFIC COLLISION SCENES
When a vehicle has been involved in a traffic collision and must be removed from the scene, the officer shall have the driver select a towing company, if possible, and shall relay the request for the specified towing company to the dispatcher. When there is no preferred company requested, a company will be selected from the rotational list of towing companies in SHASCOM.

If the owner is incapacitated, or for any reason it is necessary for the Department to assume responsibility for a vehicle involved in a collision, the officer shall request the dispatcher to call the towing company next on the rotational tow list. The officer will then store the vehicle using a CHP Form 180.

### 502.2.3  STORAGE AT ARREST SCENES
Whenever a person in charge or in control of a vehicle is arrested, it is the policy of this Department to provide reasonable safekeeping by storing the arrestee's vehicle subject to the exceptions described below. The vehicle, however, shall be stored whenever it is needed for the furtherance of the investigation or prosecution of the case, or when the community caretaker doctrine would reasonably suggest that the vehicle should be stored (e.g., traffic hazard, high crime area).

The following are examples of situations where consideration should be given to leaving a vehicle at the scene in lieu of storing, provided the vehicle can be lawfully parked and left in a reasonably secured and safe condition:

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

## Redding Police Department

RPD Policy Manual

*Vehicle Towing and Release*

- Traffic-related warrant arrest.

- Situations where the vehicle was not used to further the offense for which the driver was arrested.

- Whenever the licensed owner of the vehicle is present, willing, and able to take control of any vehicle not involved in criminal activity.

- Whenever the vehicle otherwise does not need to be stored and the owner requests that it be left at the scene. In such cases, the owner shall be informed that the Department will not be responsible for theft or damages.

### 502.2.4  IMPOUNDMENT AT SOBRIETY CHECKPOINTS

Whenever a driver is stopped at a sobriety checkpoint and the only violation is that the operator is driving without a valid driver's license, the officer shall make a reasonable attempt to identify the registered owner of the vehicle (Vehicle Code § 2814.2). The officer shall release the vehicle to the registered owner if the person is a licensed driver, or to another licensed driver authorized by the registered owner, provided the vehicle is claimed prior to the conclusion of the checkpoint operation.

If the vehicle is released at the checkpoint, the officer shall list on his/her copy of the notice to appear the name and driver's license number of the person to whom the vehicle is released.

When a vehicle cannot be released at the checkpoint, it shall be towed (Vehicle Code § 22651(p)). When a vehicle is removed at the checkpoint, it shall be released during the normal business hours of the storage facility to the registered owner or his/her agent upon presentation of a valid driver's license and current vehicle registration.

### 502.2.5  DRIVING A NON-CITY VEHICLE

Vehicles which have been towed by or at the direction of the Department should not be driven by police personnel unless it is necessary to move a vehicle a short distance to eliminate a hazard, prevent the obstruction of a fire hydrant or to comply with posted signs.

### 502.2.6  DISPATCHER'S RESPONSIBILITIES

Upon receiving a request for towing, the dispatcher shall promptly telephone the specified authorized towing service. The officer shall be advised when the request has been made and the towing service has been dispatched.

When there is no preferred company requested, the dispatcher shall call the next firm in rotation from the list of approved towing companies and shall make appropriate entries on that form to ensure the following firm is called on the next request.

### 502.2.7  RECORDS DIVISION RESPONSIBILITY

Records personnel shall promptly enter pertinent data from the completed storage form (CHP Form 180) into the Stolen Vehicle System and return the form to the Watch Commander for approval (Vehicle Code § 22651.5(b); Vehicle Code § 22851.3(b); Vehicle Code § 22854.5).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000892

## Redding Police Department

RPD Policy Manual

---

*Vehicle Towing and Release*

---

Approved storage forms shall be promptly placed into the auto-file so that they are immediately available for release or review should inquiries be made.

Within 48 hours, excluding weekends and holidays, of the storage of any such vehicle it shall be the responsibility of the Lien Sale Officer to determine the names and addresses of any individuals having an interest in the vehicle through DMV or CLETS computers. A notice shall be sent to all such individuals by first-class mail (Vehicle Code § 22851.3(d); Vehicle Code § 22852(a); Vehicle Code § 14602.6(a)(2)). The notice shall include the following (Vehicle Code § 22852(b)):

(a)   The name, address, and telephone number of this Department.

(b)   The location of the place of storage and description of the vehicle, which shall include, if available, the name or make, the manufacturer, the license plate number, and the mileage.

(c)   The authority and purpose for the removal of the vehicle.

(d)   A statement that, in order to receive their post-storage hearing, the owners, or their agents, shall request the hearing in person, writing, or by telephone within 10 days of the date appearing on the notice.

### 502.2.8   STORAGE AND IMPOUND OF VEHICLES FOR SUSPENDED, REVOKED AND UNLICENSED DRIVERS

(a)   An officer shall store a vehicle pursuant to 22651(p) CVC when it is determined through a DMV inquiry that the driver's license is none issued, suspended, or revoked and the DMV service code is "I" or "R".The officer shall issue a Notice to Appear for the appropriate vehicle code section in regard to the suspension or revocation.

(b)   An officer shall impound a vehicle pursuant to 14602.6 CVC (30-day hold) when it determined through a DMV inquiry that the driver's license is suspended or revoked and the DMV service code is any other code than "I" or "R", and in any case where the driver admits prior knowledge of the current suspension or revocation. The officer should document knowledge on the CHP 180 Form.

(c)   The officer shall complete a CHP 180 form for the storage/impound of a vehicle and provide the driver with a copy of the "Vehicle Release Procedure" form.

(d)   The officer storing the vehicle shall notify the Services Division as soon as possible regarding the storage of the vehicle and provide them with the necessary information for CLETS/SVS entry.

(e)   The officer shall attach the notice to appear, CHP 180, DMV driver history teletypes (2), DMV vehicle registration (2), and the "Stored/Impounded Report Narrative" and provide them to the Lien Sale Officer for review.

(f)   In the event of extenuating circumstances, an officer may request permission from a Redding Police Supervisor to forego storage/impoundment of a vehicle.

### 502.3   TOWING SERVICES

The City of Redding periodically selects a firm to act as the official tow service and awards a contract to that firm. This firm will be used in the following situations:

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000893

# Redding Police Department

RPD Policy Manual

## Vehicle Towing and Release

(a) When it is necessary to safeguard a vehicle due to the inability of the owner or operator to take the required action.

(b) When a vehicle is being held as evidence in connection with an investigation.

(c) When it is otherwise necessary to store a motor vehicle. This would include situations involving the recovery of stolen or abandoned vehicles, and the removal of vehicles obstructing traffic in violation of state or local regulations.

### 502.3.1   ROTATIONAL TOW SERVICES

(a) In order to assure equal opportunity for all qualified tow service operators to participate in the Redding Police Department rotational tow service list, all tow service operators meeting the specified criteria in the tow service agreement shall be added to the rotational tow services list.

(b) Applicants for placement on the rotational tow services list who are not accepted shall be advised in writing of the reason(s) and informed that denial does not preclude them from operating a tow service.

(c) Redding Police Department employees will follow the order established on the rotational tow services list. When an emergency or hazardous situation exists, or when it is not practical to honor a driver's or owner's request, the services of another tow company (other than the next one on the rotation) may be utilized.

(d) Requests by drivers or owners of private vehicles for a specific tow service shall be honored and will not constitute a rotation call. Officers shall not make any recommendations regarding tow companies.

(e) Tow service operators may be denied placement on the rotational tow services list for the following reasons:

    1. The tow service operator has failed to meet the conditions of the tow service agreement

    2. The tow service operator is not clearly independent of another tow company which is already on the rotational tow services list.

(f) The existence of one or more violations of the tow services agreement may be grounds for removal from the rotational tow services list.

(g) All complaints against a tow service operator and/or the firm's employees shall be investigated by the lien sale/AVA officer or by another officer designated by the Traffic Unit Lieutenant. Any sustained complaints may result in disciplinary action as indicated in the tow service agreement.

(h) Whenever a tow service operator is removed from the rotational services list or has completed a term of suspension, and the Traffic Unit Lieutenant is satisfied that compliance with the towing agreement will be maintained, the tow service operator shall be restored to the rotational tow services list, if requested by the tow service operator.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000894

Redding Police Department

RPD Policy Manual

*Vehicle Towing and Release*

    (i)    If a tow service operator is added to the rotational tow services list or removed from the list, the lien sale/AVA officer shall advise SHASCOM supervisor to update the rotational tow services list maintained by SHASCOM.

502.3.2   ANNUAL INSPECTION OF TOW SERVICE, TAXIS, AND LIMOUSINES

    (a)    The lien sale/AVA officer will provide an annual inspection of the tow trucks and taxis once the required inspection fee is paid for each vehicle inspected.

    (b)    The Redding Police Department tow truck inspection guide will be used for each tow truck inspected.

    (c)    A vehicle inspection sticker will be issued to each tow truck or taxi that passes inspection.

    (d)    The annual vehicle inspection sticker is to be displayed in the lower right-hand corner of the inspected vehicle's windshield. Only vehicles displaying a current vehicle inspection sticker may be operated for routine business in the City of Redding in accordance with the Redding Municipal Codes.

    (e)    All tow trucks used on the rotational tow services list must display the vehicle inspection sticker. Tow service operators are required to dispatch a tow truck that has passed the annual inspection and displays the current vehicle inspection sticker.

    (f)    If a tow truck on the rotational tow services list is requested and it arrives on the scene without a current vehicle inspection sticker, the requesting officer should direct the tow truck driver to pass and then request another tow truck from the rotational tow services list. The officer shall then notify the lien sale/AVA officer of the tow truck operating without the vehicle inspection sticker.

502.3.3   TOW SERVICES FOR RPD VEHICLES, EVIDENCE AND ABANDONED VEHICLES

    (a)    Disabled Redding Police Department vehicles shall be towed by the tow service operator awarded the contract for tow services to City vehicles.

    (b)    Vehicles determined to be held as evidence shall be towed by the tow service operator awarded the contract for tow services to City vehicles and shall be held at at the City of Redding Corporation Yard storage facility.

    (c)    Abandoned vehicles shall be towed by the tow service operator awarded the abandoned vehicle abatement contract. If an abandoned vehicle poses a hazard and it is after normal business hours, a tow company on the rotational tow services list can be requested.

## 502.4   VEHICLE INVENTORY

All property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form. This includes the trunk and any compartments or containers, even if closed and/or locked. Members conducting inventory searches should be as thorough and accurate as practical in preparing an itemized inventory. These inventory procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of officers, and to protect the Department against fraudulent claims of lost, stolen, or damaged property.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000895

# Redding Police Department

RPD Policy Manual

*Vehicle Towing and Release*

## 502.5  SECURITY OF VEHICLES AND PROPERTY

Unless it would cause an unreasonable delay in the completion of a vehicle impound/storage or create an issue of officer safety, officers should make reasonable accommodations to permit a driver/owner to retrieve small items of value or personal need (e.g., cash, jewelry, cell phone, prescriptions) that are not considered evidence or contraband.

If a search of a vehicle leaves the vehicle or any property contained therein vulnerable to unauthorized entry, theft, or damage, personnel conducting the search shall take such steps as are reasonably necessary to secure and/or preserve the vehicle or property from such hazards.

## 502.6  RELEASE OF VEHICLE

The Department will maintain a listed, 24-hour telephone number to provide information regarding impoundment of vehicles and the right of the registered owner to request a storage hearing. Releases for towed vehicles will be made available during regular, non-emergency business hours (Vehicle Code § 14602.6).

(a)   Vehicles removed pursuant to Vehicle Code § 22850 shall be released after proof of current registration is provided by the owner or the person in control of the vehicle and after all applicable fees are paid (Vehicle Code § 22850.3; Vehicle Code § 22850.5).

(b)   Vehicles removed that require payment of parking fines or proof of valid driver's license shall only be released upon presentation of proof of compliance, proof of payment, completion of affidavit, and payment of applicable fees related to the removal (Vehicle Code § 22651 et seq., Vehicle Code § 22652 et seq., Vehicle Code § 22850.3; Vehicle Code § 22850.5).

(c)   A vehicle removed pursuant to Vehicle Code § 14602.6(a) shall be released to the registered owner or his/her agent with proof of current registration, proof of a valid driver's license, and applicable fees paid prior to the end of the 30-day impoundment period under any of the following circumstances:

1.   The vehicle was stolen.

2.   If the driver reinstates his/her driver's license or acquires a license and provides proof of proper insurance.

3.   Any other circumstance as set forth in Vehicle Code § 14602.6.

4.   When there is no remaining community caretaking need to continue impound of the vehicle or the continued impound would not otherwise comply with the Fourth Amendment.

(d)   An autonomous vehicle removed under authority of Vehicle Code § 22651(o)(1)(D) shall be released to the registered owner or person in control of the autonomous vehicle if the requirements of Vehicle Code § 22651(o)(3)(B) are met.

Personnel whose duties include releasing towed vehicles should consult the Vehicle Code under which the vehicle was towed or impounded for any specific requirements prior to release.

Employees who suspect that a vehicle was impounded in error should promptly advise a supervisor. Supervisors should approve, when appropriate, the release of the vehicle without

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000896

# Redding Police Department

RPD Policy Manual

*Vehicle Towing and Release*

requiring the registered owner or his/her agent to request a hearing, as described in the Vehicle Impound Hearings Policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Vehicle Impound Hearings

## 503.1  PURPOSE AND SCOPE
This policy establishes a procedure for the requirement to provide vehicle storage or impound hearings pursuant to Vehicle Code § 22852.

## 503.2  STORED OR IMPOUND HEARING
When a vehicle is stored or impounded by any member of the Redding Police Department, a hearing will be conducted upon the request of the registered or legal owner of the vehicle or his/her agent (Vehicle Code § 22650(a); Vehicle Code § 22852(a)).

The hearing shall be conducted within 48 hours of the request, excluding weekends and holidays. The hearing officer must be a person other than the person who directed the storage or impound of the vehicle (Vehicle Code § 22852(c)).

### 503.2.1  HEARING PROCEDURES
The vehicle storage hearing is an informal process to evaluate the validity of an order to store or impound a vehicle. The employee who caused the storage or removal of the vehicle does not need to be present for this hearing.

All requests for a hearing on a stored or impounded vehicle shall be submitted in person, in writing or by telephone within 10 days of the date appearing on the notice (Vehicle Code § 22852(b)). The Lien Sale Officer will generally serve as the hearing officer. The person requesting the hearing may record the hearing at his/her own expense.

The failure of either the registered or legal owner or interested person or his/her agent to request a hearing in a timely manner or to attend a scheduled hearing shall be considered a waiver of and satisfaction of the post-storage hearing requirement (Vehicle Code § 22851.3(e)(2); Vehicle Code § 22852(d)).

Any relevant evidence may be submitted and reviewed by the hearing officer to determine if reasonable grounds have been established for the storage or impound of the vehicle. The initial burden of proof established by a preponderance of the evidence that the storage/impound was based on probable cause rests with the Department.

After consideration of all information, the hearing officer shall determine the validity of the storage or impound of the vehicle in question and then render a decision. The hearing officer shall also consider any mitigating circumstances attendant to the storage that reasonably would warrant the release of the vehicle or a modification or reduction of the period the vehicle is impounded (Vehicle Code §14602.6(b); Vehicle Code § 14602.8(b)).

Aside from those mitigating circumstances enumerated in the Vehicle Code, the registered owner's lack of actual knowledge that the driver to whom the vehicle was loaned was not validly licensed may constitute a mitigating circumstance under Vehicle Code § 14602.6(b) or 14602.8(b), warranting release of the vehicle. This mitigating circumstance exception is not limited to situations

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000898

# Redding Police Department

RPD Policy Manual

## *Vehicle Impound Hearings*

where the owner made a reasonable inquiry as to the licensed status of the driver before lending the vehicle.

The legislative intent and this department's policy is to prevent unlicensed driving pursuant to Vehicle Code §14602.6. If this purpose is not furthered by the continued impoundment of a vehicle, release is most often appropriate.

(a) If a decision is made that reasonable grounds for storage or impound have been established, the hearing officer shall advise the inquiring party of the decision and that the inquiring party may pursue further civil remedies if desired.

1. If mitigating circumstances are found to be relevant, the hearing officer shall make reasonable adjustments to the impound period, storage or assessment of fees as warranted.

(b) If a decision is made that reasonable grounds for storage or impound have not been established or sufficient mitigating circumstances exist, the vehicle in storage shall be released immediately. Towing and storage fees will be paid at the Department's expense (Vehicle Code § 22852(e)).

(c) If a decision is made that reasonable grounds for storage have not been established or sufficient mitigating circumstances exist, and the vehicle has been released with fees having been paid, the receipt for such fees will be forwarded with a letter to the appropriate Division Commander. The hearing officer will recommend to the appropriate Division Commander that the fees paid by the registered or legal owner of the vehicle in question or their agent be reimbursed by the Department.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000899

# Impaired Driving

## 504.1  PURPOSE AND SCOPE

This policy provides guidance to those department members who play a role in the detection and investigation of driving under the influence (DUI).

## 504.2  POLICY

The Redding Police Department is committed to the safety of the roadways and the community and will pursue fair but aggressive enforcement of California's impaired driving laws.

## 504.3  INVESTIGATIONS

Officers should not enforce DUI laws to the exclusion of their other duties unless specifically assigned to DUI enforcement. All officers are expected to enforce these laws with due diligence.

The Traffic Sergeant will develop and maintain, in consultation with the prosecuting attorney, report forms with appropriate checklists to assist investigating officers in documenting relevant information and maximizing efficiency. Any DUI investigation will be documented using these forms. Information documented elsewhere on the form does not need to be duplicated in the report narrative. Information that should be documented includes, at a minimum:

(a)  The field sobriety tests (FSTs) administered and the results.

(b)  The officer's observations that indicate impairment on the part of the individual, and the officer's health-related inquiries that may help to identify any serious health concerns (e.g., diabetic shock).

(c)  Sources of additional information (e.g., reporting party, witnesses) and their observations.

(d)  Information about any audio and/or video recording of the individual's driving or subsequent actions.

(e)  The location and time frame of the individual's vehicle operation and how this was determined.

(f)  Any prior related convictions in California or another jurisdiction.

## 504.4  FIELD TESTS

The Traffic Sergeant should identify standardized FSTs and any approved alternate tests for officers to use when investigating violations of DUI laws.

## 504.5  CHEMICAL TESTS

A person implies consent to a chemical test or tests, and to providing the associated chemical sample, under any of the following (Vehicle Code § 23612):

(a)  The person is arrested for driving a vehicle while under the influence, pursuant to Vehicle Code § 23152.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000900

*Impaired Driving*

(b)    The person is under 21 years of age and is arrested by an officer having reasonable cause to believe that the person's blood alcohol content is 0.05 or more (Vehicle Code § 23140).

(c)    The person is under 21 years of age and detained by an officer having reasonable cause to believe that the person was driving a vehicle while having a blood alcohol content of 0.01 or more (Vehicle Code § 23136).

(d)    The person was operating a vehicle while under the influence and proximately caused bodily injury to another person (Vehicle Code § 23153).

If a person withdraws this implied consent, or is unable to withdraw consent (e.g., the person is unconscious), the officer should consider implied consent revoked and proceed as though the person has refused to provide a chemical sample.

## 504.5.1   STATUTORY NOTIFICATIONS
Officers requesting that a person submit to chemical testing shall provide the person with the mandatory warning pursuant to Vehicle Code § 23612(a)(1)(D) and Vehicle Code § 23612(a)(4).

## 504.5.2   PRELIMINARY ALCOHOL SCREENING
Officers may use a preliminary alcohol screening (PAS) test to assist in establishing reasonable cause to believe a person is DUI. The officer shall advise the person that the PAS test is being requested to assist in determining whether the person is under the influence of alcohol or drugs, or a combination of the two. Unless the person is under the age of 21, or is on probation or parole with an alcohol and/or drug search condition, he/she shall be advised that the PAS test is voluntary. The officer shall also advise the person that submitting to a PAS test does not satisfy his/her obligation to submit to a chemical test as otherwise required by law (Vehicle Code § 23612).

## 504.5.3   PRELIMINARY ALCOHOL SCREENING FOR A PERSON UNDER AGE 21
If an officer lawfully detains a person under 21 years of age who is driving a motor vehicle and the officer has reasonable cause to believe that the person has a blood alcohol content of 0.01 or more, the officer shall request that the person take a PAS test to determine the presence of alcohol in the person, if a PAS test device is immediately available. If a PAS test device is not immediately available, the officer may request the person to submit to chemical testing of his/her blood, breath or urine, conducted pursuant to Vehicle Code § 23612 (Vehicle Code § 13388).

If the person refuses to take or fails to complete the PAS test or other chemical test, or if the result of either test reveals a blood alcohol content of 0.01 or more, the officer shall proceed to serve the person with a notice of order of suspension pursuant to this policy (Vehicle Code § 13388).

## 504.5.4   CHOICE OF TESTS
Officers shall respect a viable choice of chemical test made by an arrestee, as provided for by law (e.g., breath will not be acceptable for suspected drug influence).

A person arrested for DUI has the choice of whether the test is of his/her blood or breath, and the officer shall advise the person that he/she has that choice. If the person arrested either is

# Redding Police Department

RPD Policy Manual

*Impaired Driving*

incapable, or states that he/she is incapable, of completing the chosen test, the person shall submit to the remaining test.

If the person chooses to submit to a breath test and there is reasonable cause to believe that the person is under the influence of a drug or the combined influence of alcohol and any drug, the officer may also request that the person submit to a blood test. If the person is incapable of completing a blood test, the person shall submit to and complete a urine test (Vehicle Code § 23612(a)(2)(C)).

### 504.5.5   BREATH SAMPLES

The Traffic Sergeant, or his designee, should ensure that all devices used for the collection and analysis of breath samples are properly serviced and tested, and that a record of such service and testing is properly maintained.

Officers obtaining a breath sample should monitor the device for any sign of malfunction. Any anomalies or equipment failures should be noted in the appropriate report and promptly reported to the Traffic Sergeant, or his designee.

When the arrested person chooses a breath test, the handling officer shall advise the person that the breath-testing equipment does not retain a sample, and the person may, if desired, provide a blood or urine specimen, which will be retained to facilitate subsequent verification testing (Vehicle Code § 23614).

The officer should also require the person to submit to a blood test if the officer has a clear indication that a blood test will reveal evidence of any drug or the combined influence of an alcoholic beverage and any drug. Evidence of the officer's belief shall be included in the officer's report (Vehicle Code § 23612(a)(2)(C)).

### 504.5.6   BLOOD SAMPLES

Only persons authorized by law to draw blood shall collect blood samples (Vehicle Code § 23158). The blood draw should be witnessed by the assigned officer. No officer, even if properly certified, should perform this task.

Officers should inform an arrestee that if he/she chooses to provide a blood sample, a separate sample can be collected for alternate testing.

The blood sample shall be packaged, marked, handled, stored and transported as required by the testing facility.

If an arrestee cannot submit to a blood draw because he/she has a bleeding disorder or has taken medication that inhibits coagulation, he/she shall not be required to take a blood test. Such inability to take a blood test should not be considered a refusal. However, that arrestee may be required to complete another available and viable test.

### 504.5.7   URINE SAMPLES

If a urine test will be performed, the arrestee should be promptly transported to the appropriate testing site. The officer shall follow any directions accompanying the urine evidence collection kit.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000902

# Redding Police Department

RPD Policy Manual

*Impaired Driving*

Urine samples shall be collected and witnessed by an officer or jail staff member of the same sex as the individual giving the sample. The arrestee should be allowed sufficient privacy to maintain his/her dignity, to the extent possible, while still ensuring the accuracy of the sample (Vehicle Code § 23158(i)).

The sample shall be packaged, marked, handled, stored and transported as required by the testing facility.

## 504.6 REFUSALS

When an arrestee refuses to provide a viable chemical sample, officers should:

    (a)    Advise the arrestee of the requirement to provide a sample (Vehicle Code § 23612).

    (b)    Audio- and/or video-record the admonishment when it is practicable.

    (c)    Document the refusal in the appropriate report.

### 504.6.1 BLOOD SAMPLE WITHOUT CONSENT

A blood sample may be obtained from a person who refuses a chemical test when any of the following conditions exist:

    (a)    A search warrant has been obtained (Penal Code § 1524).

    (b)    The officer can articulate that exigent circumstances exist. Exigency does not exist solely because of the short time period associated with the natural dissipation of alcohol or controlled or prohibited substances in the person's bloodstream. Exigency can be established by the existence of special facts such as a lengthy time delay in obtaining a blood sample due to an accident investigation or medical treatment of the person.

    (c)    The person is on probation, parole, or Post Release Community Supervision, and their terms include that they not refuse a chemical test or that they are subject to search and seizure for anything.

### 504.6.2 FORCED BLOOD SAMPLE

If an arrestee indicates by word or action that he/she will physically resist a blood draw, the officer should request a supervisor to respond.

The responding supervisor should:

    (a)    Evaluate whether using force to obtain a blood sample is appropriate under the circumstances.

    (b)    Ensure that all attempts to obtain a blood sample through force cease if the person agrees to, and completes a viable form of testing in a timely manner.

    (c)    Advise the person of his/her duty to provide a sample (even if this advisement was previously done by another officer) and attempt to persuade the individual to submit to such a sample without physical resistance.

        1.    This dialogue should be recorded on audio and/or video if practicable.

    (d)    Ensure that the blood sample is taken in a medically approved manner.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000903

# Redding Police Department
#### RPD Policy Manual

*Impaired Driving*

(e)     Ensure the forced blood draw is recorded on audio and/or video when practicable.

(f)     Monitor and ensure that the type and level of force applied appears reasonable under the circumstances:

(g)     Ensure the use of force and methods used to accomplish the collection of the blood sample are documented in the related report.

If a supervisor is unavailable, officers are expected to use sound judgment and perform as a responding supervisor, as set forth above.

### 504.7   ARREST AND INVESTIGATION

#### 504.7.1   WARRANTLESS ARREST
In addition to the arrest authority granted to officers pursuant to Penal Code § 836, an officer may make a warrantless arrest of a person that the officer has reasonable cause to believe has been driving under the influence of an alcoholic beverage or any drug, or under the combined influence of the same when (Vehicle Code § 40300.5):

(a)     The person is involved in a traffic accident.

(b)     The person is observed in or about a vehicle that is obstructing the roadway.

(c)     The person will not be apprehended unless immediately arrested.

(d)     The person may cause injury to him/herself or damage property unless immediately arrested.

(e)     The person may destroy or conceal evidence of a crime unless immediately arrested.

#### 504.7.2   OFFICER RESPONSIBILITIES
The officer serving the arrested person with a notice of an order of suspension shall immediately (Vehicle Code § 23612) provide the required documentation to Records personnel so they can complete the following:

(a)     Forward a copy of the completed notice of suspension or revocation form and any confiscated driver's license to the Department of Motor Vehicles (DMV).

(b)     Forward a sworn report to DMV that contains the required information in Vehicle Code § 13380.

(c)     Forward the results to the appropriate forensic laboratory if the person submitted to a blood or urine test.

#### 504.7.3   COST RECOVERY
When any person who is under the influence of an alcoholic beverage or any drug, or the comobined influence of an alcoholic beverage and any drug, whose negligent operation of a motor vehicle caused by that influence proximately causes any incident resulting in an appropriate emergency response, and any person whose intentionally wrongful conduct proximately causes any incident resulting in an appropriate emergency response, is liable for the expense of an

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000904

# Redding Police Department

RPD Policy Manual

*Impaired Driving*

---

emergency response by a public agency to include the incident. Example: traffic collision with the primary collision factor being DUI.

The officer preparing the report shall compute total hours spent in the investigation by all RPD personnel.The number of hours shall be written in the miscellaneous box on page 3 of the CHP 555 form, i.e., Cost Recovery Hours — 10 hours.

If other City personnel respond to the collision, this should be document in the miscellaneous box as well.Example: RFD Response, REU Response etc.

### 504.8  RECORDS DIVISION RESPONSIBILITIES

The Records Supervisor will ensure that all case-related records are transmitted according to current records procedures and as required by the prosecuting attorney's office.

### 504.8  ADMINISTRATIVE HEARINGS

The Records Supervisor will ensure that all appropriate reports and documents related to administrative license suspensions are reviewed and forwarded to DMV.

Any officer who receives notice of required attendance to an administrative license suspension hearing should promptly notify the prosecuting attorney.

### 504.9  TRAINING

The Training Sergeant should ensure that officers participating in the enforcement of DUI laws receive regular training. Training should include, at minimum, current laws on impaired driving, investigative techniques and rules of evidence pertaining to DUI investigations. The Training Sergeant should confer with the prosecuting attorney's office and update training topics as needed.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000905

Policy
**505**

**Redding Police Department**
RPD Policy Manual

# Traffic Citations

## 505.1  PURPOSE AND SCOPE
This policy outlines the responsibility for traffic citations, the procedure for dismissal, correction, and voiding of traffic citations.

## 505.2  RESPONSIBILITIES
The Traffic Sergeant shall be responsible for the development and design of all Department traffic citations in compliance with state law and the Judicial Council.

## 505.3  DISMISSAL OF TRAFFIC CITATIONS
Employees of this Department do not have the authority to dismiss a citation once it has been issued. Only the court has the authority to dismiss a citation that has been issued (Vehicle Code § 40500(d)). Any request from a recipient to dismiss a citation shall be referred to the Traffic Sergeant. Upon a review of the circumstances involving the issuance of the traffic citation, the Traffic Sergeant may request the Field Operations Division Commander to recommend dismissal of the traffic citation. If approved, the citation will be forwarded to the appropriate court with a request for dismissal. All recipients of traffic citations whose request for the dismissal of a traffic citation has been denied shall be referred to the appropriate court.

Should an officer determine during a court proceeding that a traffic citation should be dismissed in the interest of justice or where prosecution is deemed inappropriate the officer may request the court to dismiss the citation.

## 505.4  VOIDING TRAFFIC CITATIONS
Voiding a traffic citation may occur when a traffic citation has not been completed or where it is completed, but not issued.

## 505.5  CORRECTION OF TRAFFIC CITATIONS
When a traffic citation is issued and in need of correction, the officer issuing the citation shall submit the citation and a notice of correction . The citation and notice of correction  forwarded to the court having jurisdiction and to the recipient of the citation.

## 505.6  DISPOSITION OF TRAFFIC CITATIONS
The citation shall be filed with the Records Division.

Upon separation from employment with the this Department, all employees issued traffic citations books shall return any unused citations to the Records Division.

## 505.7  NOTICE OF PARKING VIOLATION APPEAL PROCEDURE
Disposition of notice of parking violation appeals is conducted pursuant to Vehicle Code § 40215.

# Redding Police Department
RPD Policy Manual

*Traffic Citations*

### 505.7.1   APPEAL STAGES
Appeals may be pursued sequentially at three different levels:

(a) Administrative reviews are conducted by the Traffic Unit who will review written/ documentary data. Requests for administrative reviews are available at the front desk or Traffic Unit of the Redding Police Department. These requests are informal written statements outlining why the notice of parking violation should be dismissed. Copies of documentation relating to the notice of parking violation and the request for dismissal must be mailed to the current mailing address of the processing agency.

(b) If the appellant wishes to pursue the matter beyond administrative review, an administrative hearing may be conducted in person or by written application, at the election of the appellant. Independent referees review the existent administrative file, amendments, and/or testimonial material provided by the appellant and may conduct further investigation or follow-up on their own.

(c) If the appellant wishes to pursue the matter beyond an administrative hearing, a Superior Court review may be presented in person by the appellant after an application for review and designated filing fees have been paid to The Superior Court of California.

### 505.7.2   TIME REQUIREMENTS
Administrative review or appearance before a hearing examiner will not be provided if the mandated time limits are not adhered to by the violator.

(a) Requests for an administrative review must be postmarked within 21 calendar days of issuance of the notice of parking violation, or within 14 calendar days of the mailing of the Notice of Delinquent Parking Violation (Vehicle Code § 40215(a)).

(b) Requests for administrative hearings must be made no later than 21 calendar days following the notification mailing of the results of the administrative review (Vehicle Code § 40215(b)).

(c) An administrative hearing shall be held within 90 calendar days following the receipt of a request for an administrative hearing, excluding time tolled pursuant to Vehicle Code § 40200 - 40225. The person requesting the hearing may request one continuance, not to exceed 21 calendar days (Vehicle Code § 40215).

(d) Registered owners of vehicles may transfer responsibility for the violation via timely affidavit of non-liability when the vehicle has been transferred, rented or under certain other circumstances (Vehicle Code § 40209; Vehicle Code § 40210).

### 505.7.3   COSTS

(a) There is no cost for an administrative review.

(b) Appellants must deposit the full amount due for the citation before receiving an administrative hearing, unless the person is indigent, as defined in Vehicle Code § 40220, and provides satisfactory proof of inability to pay (Vehicle Code § 40215).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Redding Police Department

RPD Policy Manual

*Traffic Citations*

---

(c) An appeal through Superior Court requires prior payment of filing costs, including applicable court charges and fees. These costs will be reimbursed to the appellant in addition to any previously paid fines if appellant's liability is overruled by the Superior Court.

## 505.8 JUVENILE CITATIONS

Completion of traffic citation forms for juveniles are not given a date/time to appear. Officers are to check the "to be notified" box on the citation for juveniles.The juvenile's age, place of residency, and the type of offense should be considered before issuing the juvenile a citation.

## 505.9 CITATIONS ISSUED DURING COLLISION INVESTIGATIONS

(a) Officers should pursue prosecution of persons involved in a collision if there is sufficient evidence to prove a violation was committed.If a citation is not issued the officer shall list the reason in the report (i.e., no independent witness).Citations issued shall be attached to collision reports.

(b) Per 40600 CVC, officers who have completed a course in the investigation of traffic accidents may issue a citation to any person they have reasonable cause to believe caused a traffic accident.

(c) Officers should use the following criteria to determine whether issuing a citation is appropriate:

1. Officers should not issue a citation when the driver is arrested or a complaint is sought for more serious violations, and the issuance of the citation could result in a "double jeopardy" situation.

2. Officers may decide not to issue a citation when the party at fault is the only injured party and/or the vehicle of the party at fault is the only damaged vehicle.

3. Officers may decide not to issue a citation when there is only minor damage to the vehicle of the party not most at fault for the collision.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000908

# Disabled Vehicles

## 506.1  PURPOSE AND SCOPE

Vehicle Code § 20018 provides that all law enforcement agencies having responsibility for traffic enforcement may develop and adopt a written policy to provide assistance to motorists in disabled vehicles within their primary jurisdiction.

## 506.2  OFFICER RESPONSIBILITY

When an on-duty officer observes a disabled vehicle on the roadway, the officer should make a reasonable effort to provide assistance. If that officer is assigned to a call of higher priority, the dispatcher should be advised of the location of the disabled vehicle and the need for assistance. The dispatcher should then assign another available officer to respond for assistance as soon as practical.

## 506.3  EXTENT OF ASSISTANCE

In most cases, a disabled motorist will require assistance. After arrangements for assistance are made, continued involvement by department personnel will be contingent on the time of day, the location, the availability of Departmental resources, and the vulnerability of the disabled motorist.

### 506.3.1  MECHANICAL REPAIRS

Department personnel should not make mechanical repairs to a disabled vehicle. The use of push bumpers to relocate vehicles to a position of safety is not considered a mechanical repair.

### 506.3.2  RELOCATION OF DISABLED VEHICLES

The relocation of disabled vehicles by members of this Department by pushing or pulling a vehicle should only occur when the conditions reasonably indicate that immediate movement is necessary to reduce a hazard presented by the disabled vehicle. The disabled motorist should be advised that unintentional damage can occur when moving the vehicle.

### 506.3.3  RELOCATION OF DISABLED MOTORIST

The relocation of a disabled motorist should only occur with the person's consent and should be suggested when conditions reasonably indicate that immediate movement is necessary to mitigate a potential hazard. The department member may stay with the disabled motorist or transport him/her to a safe area to await pickup.

## 506.4  PUBLIC ACCESS TO THIS POLICY

This written policy is available upon request.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Policy**

**507**

# Parking Violations and Abandoned Vehicles

### 507.1  PURPOSE AND SCOPE

This policy provides procedures for the marking, recording, and storage of vehicles parked in violation of the Redding City Ordinance regulating 72-hour parking violations, parking violation citations, and abandoned vehicles under the authority of Vehicle Code § 22669.

### 507.2  PARKING VIOLATION CITATIONS

(a)  The Parking Violation citation shall be used for parking violations; all other violations shall be written on the standard citation (Notice to Appear). Parking violations cannot be placed on the same citation with other California Vehicle Code, Business and Professions, or Health and Safety Code violations. Only one violation may be marked on a citation.

(b)  Employees issuing Parking Violation citations shall fill in all boxes at the top of the citation and shall check the appropriate violation box. Employees shall include, on the citation, the last four digits on the VIN, and, if applicable, the parking meter number. If the parking violation is not listed, it shall be written in the blank space provided and the box shall be checked.

(c)  Subsections must be entered after the appropriate code section. Should the issuing officer feel that clarification is necessary, he or she can print the information between code columns.

(d)  The employee issuing the Parking Violation shall leave the yellow copy, with the attached envelope, conspicuously on the violator's vehicle. The white copy shall be routed in the same manner as Notice to Appear citations.

(e)  Officer's notes relative to the citation should be made on the reverse side of the white copy. Should a hearing be requested, the original will be in the court's possession. The officer can request to review the citation and their notes at that time.

(f)  Parking citations shall be submitted daily for processing.

(g)  Equipment violations written on parked vehicles shall not be written on a parking citation.

### 507.2.1  PARKING REGULATIONS

(a)  With the exception of disabled persons and disabled veterans, no vehicle is exempt from parking regulations, including vehicles with exempt license plates.

(b)  Employees of the Redding Police Department are responsible for parking citations issued to vehicles under their operation and control.

### 507.2.2  PARKING ON PRIVATE PROPERTY

The following guidelines have been established for the enforcement of Redding Municipal Code Section 11.24.260 (Parking on Private Property):

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000910

*Parking Violations and Abandoned Vehicles*

(a)   It is unlawful for the operator of any vehicle to park or stand his vehicle in any private property area within the city, and which is situated on private property without the consent of the owner, manager, or lessee, provided the area is conspicuously posted against such parking with signs referring to the ordinance codified in this section and bearing the name and telephone number of the Police Department.

(b)   The Police Department shall require the notarized signature of the owner, manager, or lessee of the property, parking lot, or space on a "Consent to Enforcement" form which shall be kept on file at the Police Department, and give to the Police Department the authorization to enforce parking restrictions in the parking facilities properly posted pursuant to section 11.24.260 of the Redding Municipal Code.

   1.   If a violation is observed, and the owner, manager, or lessee has complied with paragraphs A and B, an officer may issue a parking citation without obtaining a signature from the owner, manager, or lessee.

   2.   If the private area is properly posted but the "Consent to Enforcement" form has not been signed, the owner, manager, or lessee must co-sign the citation in the space designated for complainant's signature.

   3.   For red zone parking violations on private property, if the private area is properly posted but the "Consent to Enforcement" form has not been signed, the owner, manager, or lessee must co-sign the citation in the space designated for complainant's signature. The citation violation will be 22500.1 CVC, Prohibited Stopping, Standing, or Parking: Fire Lane.

   4.   The complainant's name, address, and phone number shall be recorded on the citation and the complainant shall be advised his appearance will be required in court if the citation is contested.

## 507.2.3   PARKING FOR DISABLED PERSONS
Section 22511.5 CVC allows disabled persons to park free of charge in restricted, metered, or disabled persons zones if the vehicle has proper identification, which includes the following:

(a)   Disabled Person or Disabled Veteran special identification license plates authorized by the California Vehicle Code.

(b)   Disabled Person placard authorized by the California Vehicle Code.

(c)   A special identification Disabled Person license plate or placard issued by another stated or foreign jurisdiction.

   1.   Officers, CSOs, and Cadets may enforce disabled parking violations on both public and/or privately owned and maintained off-street parking facilities.

   2.   Prior to issuing citations for Disabled Person parking violations, officers shall ensure that the space is properly painted/posted as per 22511.7 or 22511.8 CVC.

   3.   Section 22652 CVC authorizes officers to tow vehicle illegally parked in Disabled Person zones. Redding Police Department officers will not tow a violator unless there are extenuating circumstances and approval of the shift supervisor has been obtained.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000911

# Redding Police Department
RPD Policy Manual

*Parking Violations and Abandoned Vehicles*

507.2.4   DISMISSING PARKING CITATIONS

Section 40215 CVC provides guidelines for the dismissal of parking citations. Section 40215 CVC provides for an officer who has written a parking citation to recommend in writing the citation to be dismissed in the interest of justice.

The City Treasurer reviews the recommendation. If grounds for dismissal exist, the notice of parking violation may be canceled pursuant to section 40215 CVC.

If an officer, after issuing a citation, determines the citation should be canceled, he/she should complete a "Request for Cancellation of Parking Violation" form (Form A92-001). This form should be placed in an envelope and forwarded to the City Treasurer, it should not be placed with the citation.

In order for the City Treasurer's office to cancel the parking citation, there must be a valid reason for the recommendation. Under no circumstances shall a personal relationship with any officer, public official, or law enforcement agency be grounds for dismissal.

## 507.3   ABANDONED VEHICLES

(a)   Abandoned vehicles, including, but not limited to, automobiles, pick-up trucks, trailers, recreational vehicles, motorcycles, all-terrain vehicles, motorized scooters, mopeds, vehicle frames, and vehicle engines shall not be held as "found property" or in "safekeeping" at a Police Department facility.

(b)   When a suspected abandoned vehicle is observed or reported to the Police Department, the responsible officer shall conduct a registration and stolen vehicle check on the vehicle.If the vehicle is on a public street or public property, and cannot be towed pursuant to 22669(d), 22651(o) or 22651(b) CVC, the following steps shall be completed:

1.   Complete an abandoned vehicle Tow Away Warning or Private Property Tow Away Warning and affix the top portion of the tag to the suspected abandoned vehicle in a conspicuous place.

2.   Initiate a log report and obtain a case number from SHASCOM.

3.   Place the bottom portion of the Tow Away Warning or Private Property Tow Away Warning in the AVA officers tray.

(c)   The AVA officer (or other assigned officer) shall complete the following investigation and take the following actions, when necessary:

1.   Determine if the suspected abandoned vehicle has been moved within the required time frame.

2.   If the vehicle is still present at its prior location and has not been moved within the required time period, the AVA officer shall conduct another registration and stolen vehicle check.

3.   If the AVA officer determines the vehicle is abandoned, the AVA officer shall complete a tow report using the CHP 180/RPD 180 form, obtain a new case number from SHASCOM, and request an abandoned vehicle tow. The AVA

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000912

# Redding Police Department
RPD Policy Manual

*Parking Violations and Abandoned Vehicles*

officer shall advise SHASCOM of the tow report and provide Redding Police Department Services personnel with the necessary vehicle information for entry into SVS in a timely manner.

## 507.4  MARKING VEHICLES

Vehicles suspected of being in violation of the City of Redding 72-Hour Parking Ordinance shall be marked and noted on the Redding Police Department Marked Vehicle Card. No case number is required at this time.

A visible chalk mark should be placed on the left rear tire tread at the fender level unless missing tires or other vehicle conditions prevent marking. Any deviation in markings shall be noted on the Marked Vehicle Card. The investigating employee should make a good faith effort to notify the owner of any vehicle subject to towing prior to having the vehicle removed. This may be accomplished by personal contact, telephone or by leaving notice attached to the vehicle at least 24 hours prior to removal.

All Marked Vehicle Cards shall be submitted to the Traffic Bureau for computer data entry.

If a marked vehicle has been moved or the markings have been removed during a 72-hour investigation period, the vehicle shall be marked again for the 72-hour parking violation and a Marked Vehicle Card completed and forwarded to the Traffic Bureau.

Parking citations for the 72-hour parking ordinance shall not be issued when the vehicle is stored for the 72-hour parking violation.

### 507.4.1  MARKED VEHICLE FILE

The Traffic Unit shall be responsible for maintaining a file for all Marked Vehicle Cards.

Parking control officers assigned to the Traffic Unit shall be responsible for the follow up investigation of all 72-hour parking violations noted on the Marked Vehicle Cards.

### 507.4.2  VEHICLE STORAGE

Any vehicle in violation shall be stored by the authorized towing service and a vehicle storage report shall be completed by the officer authorizing the storage of the vehicle.

The storage report form shall be submitted to the Records Division immediately following the storage of the vehicle. It shall be the responsibility of the Records Division to immediately notify the Stolen Vehicle System (SVS) of the Department of Justice in Sacramento ( Vehicle Code § 22851.3(b)). Notification may also be made to the National Law Enforcement Telecommunications System (NLETS)(Vehicle Code § 22854.5).

Within 48 hours of the storage of any such vehicle, excluding weekends and holidays, it shall be the responsibility of the Records Division to determine the names and addresses of any individuals having an interest in the vehicle through DMV or CLETS computers. Notice to all such individuals shall be sent first-class or certified mail pursuant to Vehicle Code § 22851.3(d).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000913

# Collision Administrative Review Boards

## 508.1 PURPOSE AND SCOPE

It is the policy of the City of Redding and the Redding Police Department that all employees drive with due regard and caution for others, with the general public's safety in mind at all times.

(a) Traffic collisions, operational damage, and pursuit intervention are subject to internal review.

(b) At the discretion of the Division Commander, a Traffic Accident Review Board may be held.

(c) A Traffic Accident Review Board is not required under the following circumstances:

1. Neither party is injured as a result of the collision;

2. CHP or RPD has investigated the collision and has determined the officer is not at fault;

3. The RPD employee's driving actions were not the primary collision factor or an associated factor in the collision;

4. And there is only minor damage to either vehicle.

5. The Division Commander will review both the incident report and traffic collision report to determine if there are training issues or policy violations involved.

(d) Traffic Accident Review Board (TARB):

1. An investigative hearing or TARB will be held within 30 days of the incident or within 30 working days upon receipt of a CHP collision investigation (when applicable).

2. A police lieutenant shall chair the TARB and may select a supervisor to assist. The Division Commander or Chief of Police shall have the authority to designate substitutes.

3. If the involved party is injured, ill, or otherwise unavailable within the specified period, the TARB chair shall schedule a hearing at the earliest date practical.

4. The TARB shall review any report documenting the incident. The TARB is authorized to interview any witnesses in order to obtain the necessary information to properly investigate the incident.

5. The TARB shall submit its findings and any recommendation for administrative action in writing to the Chief of Police.

6. The Chief of Police shall review the findings and take such action deemed appropriate.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Redding Police Department**

RPD Policy Manual

# Red Light Photo Enforcement Program

## 509.1  PURPOSE AND SCOPE

It is the policy of the Redding Police Department to use a Red Light Photo Enforcement System where necessary to improve traffic safety and reduce collisions, injuries, and fatalities.

## 509.2  RED LIGHT SYSTEM MANAGEMENT

The Redding Police Department Traffic Lieutenant is responsible for the Red Light Photo Enforcement Program.The Redding Police Department Traffic Supervisor is responsible for the daily operations of the Red Light Photo Enforcement Program.The Redding Police Department shall maintain overall control and supervision of the system per Vehicle Code Section 21455.5(d).Only Red Light Enforcement Specialists and other personnel trained in the use of the system are authorized to issue citations arising from the use of red light photo enforcement cameras.

## 509.3  PROCEDURE

(a)  The Redding Police Department is under contract with Redflex Traffic Systems to solely provide equipment and data processing of potential red-light violations at intersections selected by the City of Redding. The vendor shall have no responsibility for traffic enforcement in the City of Redding.

(b)  All requests for information regarding the Red-Light Photo Enforcement Program will be referred to the Traffic Supervisor or their designee

(c)  Notwithstanding Section 6253 of the Government Code or any other provision of law, photographic records made by an automated enforcement system shall be confidential and shall be made available only to governmental agencies and law enforcement agencies per Vehicle Code Section 21455(e)(1).

(d)  Confidential information obtained from the Department of Motor Vehicles for the administration or enforcement of this system shall be held confidential and may not be used for any other purpose per Vehicle Code Section 2145.5(e)(2).

(e)  Except for court records described in Section 68152 of the Government Code, Redflex will destroy all records three years following receipt of information relating to any incident/violation unless otherwise instructed by the Redding Police Department, or by using the "HOLD" flag in the Violation Authorization module. Upon placement of the "HOLD" flag, Redflex will continue to retain the information until such time as otherwise instructed by the Redding Police Department. Without this instruction, "HOLD" flag or disposition information, Redflex will set the purge date six months from the date of receipt. Once this data is purged, it cannot be retrieved. The confidential records and information described above shall be destroyed in a manner that will preserve the confidentiality of any person included in the record or information per Vehicle Code Section 21455.5(e)(3).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000915

# Redding Police Department

RPD Policy Manual

---

*Red Light Photo Enforcement Program*

---

(f) Photographs used outside of the Redding Police Department for evidence purposes for violation of Vehicle Code Sections 21453(a) and 21453(c) shall have the faces of all passengers blocked out so they are not recognizable in the photographs.

(g) At red light photo enforced intersections, the following photographic evidence must exist for a red light violation to be considered:

1. Photograph of vehicle prior to the limit line with the red light signal phase also showing in the photograph.

2. Photograph depicting the license plate of the violating vehicle.

3. Photograph of the driver of the vehicle.

4. Photograph of the vehicle beyond the limit line with the red light signal phase also showing in the photograph.

(h) In the event all criteria are met, the reviewer may utilize the computer program to issue the citation. Drivers of authorized emergency vehicles engaged in an emergency response as allowed by California Vehicle Code will not be subject to citations from the Red Light Photo Enforcement Program.

(i) When a police officer witnesses a violation of Vehicle Code Sections 22101(d), 21453(a) or 21453(c) at a red light photo enforced intersection, the officer may initiate an enforcement stop to detain the driver for the violation. If no citation is issued the officer shall complete a field interview card and forward the information to the Traffic Supervisor. If a citation is issued or other enforcement activity is initiated, a copy of the citation or report shall be forwarded to the Traffic Supervisor to ensure a duplicate citation is not issued by the Red Light Enforcement Specialist.

## 509.4   DUTIES OF THE RED LIGHT ENFORCEMENT SPECIALIST

Red Light Enforcement Specialists are assigned to the Traffic Unit, under the command of the Field Operations Division. The duties of the Red Light Enforcement Specialists are:

(a) Review red light camera violations and issue traffic citations.

(b) Prepare and present court cases when subpoenaed.

(c) Meet with citizens during office hours to discuss and/or show video evidence.

(d) Return phone messages and voicemails.

(e) Perform miscellaneous duties as directed by the Traffic Unit Supervisor.

Red Light Enforcement Specialists are expected to:

(a) Inform supervisors regarding work progress, problems that arise, unusual circumstances, potential liability issues, and issues concerning the Police Department and/or the Red Light Photo Enforcement Program.

(b) Notify the supervisor of any change in working hours. Arrive for duty on time and prepared for work. Do not loiter or socialize excessively. Keep on task.

(c) Keep work area clean and orderly.

(d) Maintain acceptable grooming and uniform standards.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000916

# Redding Police Department

RPD Policy Manual

*Red Light Photo Enforcement Program*

    (e)    Maintain proper interpersonal skill which fosters good internal and external relations.

    (f)    Wear professional business attire for court appearances.

    (g)    Conform to State and Federal laws as they relate to concealed weapons.

    (h)    Be familiar with and adhere to City of Redding policies regarding civilian and unrepresented employees.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Redding Police Department

RPD Policy Manual

# Chapter 6 - Investigation Operations

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000918

# Investigation and Prosecution

## 600.1  PURPOSE AND SCOPE

The purpose of this policy is to set guidelines and requirements pertaining to the handling and disposition of criminal investigations.

## 600.2  POLICY

It is the policy of the Redding Police Department to investigate crimes thoroughly and with due diligence, and to evaluate and prepare criminal cases for appropriate clearance or submission to a prosecutor.

(a)  The Investigative Division shall be under the command of a Captain.

(b)  The Investigative Division has a dual function:

    1.  Its primary function is to investigate crime.

    2.  Its secondary function is career development.

(c)  Officers assigned to the Investigative Division will serve at the direction of the Division Commander or Chief of Police. The length of service will be determined by Division needs, officer performance, training and expertise in a particular field, and other factors that would affect the overall effectiveness of the Division. The length of service will be determined by Departmental needs, efficiency of the employee in the assignment, training expertise in a particular field, and other factors which contribute to the overall effectiveness of the Department.

(d)  The Investigations Division assignments are divided into the following subunits:

    1.  Property Crimes

    2.  Persons Crimes

    3.  Narcotics Task Force

    4.  High Tech Crimes

(e)  The Investigations Division, with the assistance of Records, is responsible for the following:

    1.  Processing Card Room Applications

    2.  Conducting Card Room Inspections

    3.  Issuing Card Room Employee Permits

    4.  Issuing Secondhand Dealer and Firearms Dealer Licenses

    5.  Registering Sex Offenders and Arson Offenders

    6.  Issuing Pawn Shop Licenses

## 600.3  INITIAL INVESTIGATION

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Investigation and Prosecution*

600.3.1   OFFICER RESPONSIBILITIES

An officer responsible for an initial investigation shall complete no less than the following:

(a)   Make a preliminary determination of whether a crime has been committed by completing, at a minimum:

1.   An initial statement from any witnesses or complainants.

2.   A cursory examination for evidence.

(b)   If information indicates a crime has occurred, the officer shall:

1.   Preserve the scene and any evidence as required to complete the initial and follow-up investigation.

2.   Determine if additional investigative resources (e.g., investigators or scene processing) are necessary and request assistance as required.

3.   If assistance is warranted, or if the incident is not routine, notify a supervisor or the Watch Commander.

4.   Make reasonable attempts to locate, identify and interview all available victims, complainants, witnesses and suspects.

5.   Collect any evidence.

6.   Take any appropriate law enforcement action.

7.   Complete and submit the appropriate reports and documentation.

(c)   If the preliminary determination is that no crime occurred, determine what other action may be necessary, what other resources may be available, and advise the informant or complainant of this information.

600.3.2   NON-SWORN MEMBER RESPONSIBILITIES

A non-sworn member assigned to any preliminary investigation is responsible for all investigative steps, except making any attempt to locate, contact or interview a suspect face-to-face or take any enforcement action. Should an initial investigation indicate that those steps are required, the assistance of an officer shall be requested.

**600.4   CUSTODIAL INTERROGATION REQUIREMENTS**

Suspects who are in custody and subjected to an interrogation shall be given the *Miranda* warning unless an exception applies. Interview or interrogation of a juvenile shall be in accordance with the Temporary Custody of Juveniles Policy.

(a)   When a custodial suspect/defendant invokes their Miranda rights at the time of or during the interrogation, all questioning regarding the criminal investigation shall cease.

1.   Limited further questioning may occur when necessary to clarify a waiver or invocation of rights.

2.   Limited further questioning may occur when necessary for administrative purposes which are generally outside the scope of Miranda; i.e., use of force application, medical, booking, etc.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000920

Redding Police Department

RPD Policy Manual

*Investigation and Prosecution*

(b) Officers may commence questioning of a suspect about a criminal investigation after the initial invocation, and with a proper re-advisement and waiver, in either of these circumstances:

1. The suspect has had at least a 14-day break from custody since he invoked his right to counsel in the previous custodial interrogation.

2. Or when the suspect initiates contact with police officers about the criminal investigation.

600.4.1   AUDIO/VIDEO RECORDINGS
Any custodial interrogation of an individual who is suspected of having committed any violent felony offense should be recorded (audio or video with audio as available) in its entirety. Regardless of where the interrogation occurs, every reasonable effort should be made to secure functional recording equipment to accomplish such recordings.

Consideration should also be given to recording a custodial interrogation, or any investigative interview, for any other offense when it is reasonable to believe it would be appropriate and beneficial to the investigation and is otherwise allowed by law.

No recording of a custodial interrogation should be destroyed or altered without written authorization from the prosecuting attorney and the Investigation Division supervisor. Copies of recorded interrogations or interviews may be made in the same or a different format as the original recording, provided the copies are true, accurate and complete and are made only for authorized and legitimate law enforcement purposes.

Recordings should not take the place of a thorough report and investigative interviews. Written statements from suspects should continue to be obtained when applicable.

600.4.2   MANDATORY RECORDING OF ADULTS
Any custodial interrogation of an adult who is suspected of having committed any murder shall be recorded in its entirety. The recording should be video with audio if reasonably feasible (Penal Code § 859.5).

This recording is not mandatory when (Penal Code § 859.5):

(a) Recording is not feasible because of exigent circumstances that are later documented in a report.

(b) The suspect refuses to have the interrogation recorded, including a refusal any time during the interrogation, and the refusal is documented in a report. If feasible, the refusal shall be electronically recorded.

(c) The custodial interrogation occurred in another state by law enforcement officers of that state, unless the interrogation was conducted with the intent to avoid the requirements of Penal Code § 859.5.

(d) The interrogation occurs when no member conducting the interrogation has a reason to believe that the individual may have committed murder. Continued

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000921

Redding Police Department

RPD Policy Manual

*Investigation and Prosecution*

custodial interrogation concerning that offense shall be electronically recorded if the interrogating member develops a reason to believe the individual committed murder.

(e) The interrogation would disclose the identity of a confidential informant or would jeopardize the safety of an officer, the individual being interrogated or another individual. Such circumstances shall be documented in a report.

(f) A recording device fails despite reasonable maintenance and the timely repair or replacement is not feasible.

(g) The questions are part of a routine processing or booking, and are not an interrogation.

(h) The suspect is in custody for murder and the interrogation is unrelated to a murder.  However, if any information concerning a murder is mentioned during the interrogation, the remainder of the interrogation shall be recorded.

The Department shall maintain an original or an exact copy of the recording until a conviction relating to the interrogation is final and all appeals are exhausted or prosecution is barred by law (Penal Code § 859.5).

## 600.5  DISCONTINUATION OF INVESTIGATIONS

The investigation of a criminal case or efforts to seek prosecution should only be discontinued if one of the following applies:

(a) All reasonable investigative efforts have been exhausted, no reasonable belief that the person who committed the crime can be identified, and the incident has been documented appropriately.

(b) The perpetrator of a misdemeanor has been identified and a warning is the most appropriate disposition.

    1. In these cases, the investigator shall document that the person was warned and why prosecution was not sought.

    2. Warnings shall not be given for felony offenses or other offenses identified in this policy or by law that require an arrest or submission of a case to a prosecutor.

(c) The case has been submitted to the appropriate prosecutor but no charges have been filed. Further investigation is not reasonable nor has the prosecutor requested further investigation.

(d) The case has been submitted to the appropriate prosecutor, charges have been filed, and further investigation is not reasonable, warranted or requested, and there is no need to take the suspect into custody.

(e) Suspects have been arrested, there are no other suspects, and further investigation is either not warranted or requested.

(f) Investigation has proven that a crime was not committed (see the Sexual Assault Investigations Policy for special considerations in these cases).

The Domestic Violence, Child Abuse Sexual Assault Investigations and Adult Abuse policies may also require an arrest or submittal of a case to a prosecutor.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000922

# Redding Police Department

RPD Policy Manual

---

*Investigation and Prosecution*

---

600.5.1  BCS CASE CLEARANCE PROCEDURES
The purpose of this policy is to establish procedures for assuring closure of cases per the Bureau of Criminal Statistics (BCS) guidelines.

BCS keeps a record of crimes and clearance rates for eight categories. The categories are homicide, rape, robbery, assaults, burglaries, thefts, auto theft, and arson. The guidelines for closing cases for BCS purposes are different than those for the Redding Police Department.

For BCS purposes, only three clearance categories may be used to close a case; they are:

(a)    clearance by arrest,

(b)    exceptional clearance, and;

(c)    unfounded (see RPD Form F-2000-001 REV 5-2012).


The UCR Handbook specifies an offense as "Cleared by Arrest" when at least one person is arrested, charged, and turned over for prosecution. "Exceptional Clearances" require enough information to identify, locate, and arrest the offender, but some reason beyond law enforcement control precludes making the arrest. If the offense is deemed to have never occurred, the case shall be closed as "Unfounded".

Supplemental form RPD Form F-2000-001 shall be routed through the report system in the usual manner.

**600.6  COMPUTERS AND DIGITAL EVIDENCE**
The collection, preservation, transportation and storage of computers, cell phones and other digital devices may require specialized handling to preserve the value of the related evidence. If it is anticipated that computers or similar equipment will be seized, officers should request that computer forensic examiners assist with seizing computers and related evidence. If a forensic examiner is unavailable, officers should take reasonable steps to prepare for such seizure and use the resources that are available. For further see Policy 807 - Electronic Devices and Digital Evidence.

**600.7  INVESTIGATIVE USE OF SOCIAL MEDIA AND INTERNET SOURCES**
Use of social media and any other Internet source to access information for the purpose of criminal investigation shall comply with applicable laws and policies regarding privacy, civil rights and civil liberties. Information gathered via the Internet should only be accessed by members while on-duty and for purposes related to the mission of this department. If a member encounters information relevant to a criminal investigation while off-duty or while using his/her own equipment, the member should note the dates, times and locations of the information and report the discovery to his/her supervisor as soon as practicable. The member, or others who have been assigned to do so, should attempt to replicate the finding when on-duty and using department equipment.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000923

# Redding Police Department

RPD Policy Manual

*Investigation and Prosecution*

---

Information obtained via the Internet should not be archived or stored in any manner other than department-established record keeping systems (see the Records Maintenance and Release and the Criminal Organizations policies).

### 600.7.1   ACCESS RESTRICTIONS

Information that can be accessed from any Department computer, without the need of an account, password, email address, alias or other identifier (unrestricted websites), may be accessed and used for legitimate investigative purposes without supervisory approval.

Accessing information from any Internet source that requires the use or creation of an account, password, email address, alias or other identifier, or the use of nongovernment IP addresses, requires supervisor approval prior to access. The supervisor will review the justification for accessing the information and consult with legal counsel as necessary to identify any policy or legal restrictions. Any such access and the supervisor approval shall be documented in the related investigative report.

Accessing information that requires the use of a third party's account or online identifier requires supervisor approval and the consent of the third party. The consent must be voluntary and shall be documented in the related investigative report.

Information gathered from any Internet source should be evaluated for its validity, authenticity, accuracy and reliability. Corroborative evidence should be sought and documented in the related investigative report.

Any information collected in furtherance of an investigation through an Internet source should be documented in the related report. Documentation should include the source of information and the dates and times that the information was gathered.

### 600.7.2   INTERCEPTING ELECTRONIC COMMUNICATION

Intercepting social media communications in real time may be subject to federal and state wiretap laws. Officers should seek legal counsel before any such interception.

## 600.8   CELLULAR COMMUNICATIONS INTERCEPTION TECHNOLOGY

The Investigation Division Commander is responsible for ensuring the following for cellular communications interception technology operations (Government Code § 53166):

(a)   Security procedures are developed to protect information gathered through the use of the technology.

(b)   A usage and privacy policy is developed that includes:

   1.   The purposes for which using cellular communications interception technology and collecting information is authorized.

   2.   Identification by job title or other designation of employees who are authorized to use or access information collected through the use of cellular communications interception technology.

   3.   Training requirements necessary for those authorized employees.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000924

## Redding Police Department

RPD Policy Manual

*Investigation and Prosecution*

4. A description of how the Department will monitor the use of its cellular communications interception technology to ensure the accuracy of the information collected and compliance with all applicable laws.

5. Process and time period system audits.

6. Identification of the existence of any memorandum of understanding or other agreement with any other local agency or other party for the shared use of cellular communications interception technology or the sharing of information collected through its use, including the identity of signatory parties.

7. The purpose of, process for and restrictions on the sharing of information gathered through the use of cellular communications interception technology with other local agencies and persons.

8. The length of time information gathered through the use of cellular communications interception technology will be retained, and the process the local agency will utilize to determine if and when to destroy retained information.

Members shall only use approved devices and usage shall be in compliance with department security procedures, the department's usage and privacy procedures and all applicable laws.

### 600.9   MODIFICATION OF CHARGES FILED

Members are not authorized to recommend to the prosecutor or to any other official of the court that charges on a pending case be amended or dismissed without the authorization of a Division Commander or the Chief of Police. Any authorized request to modify the charges or to recommend dismissal of charges shall be made to the prosecutor.

### 600.10   ARSON INVESTIGATIONS

The responsibility for arson investigation is with the Redding Fire Department's Fire Prevention Bureau. The Investigations Division will assist with arson investigations as requested by Redding Fire Department. All arson reports shall be provided to the Fire Prevention Bureau.

### 600.11   FIRE AND EXPLOSION INVESTIGATIONS IN STATE-OWNED OR STATE-OCCUPIED BUILDINGS

(a) The State Fire Marshal (SFM) is required by (13107(a) H&S) to investigate every fire or explosion in any State institution, State-owned building, or those portions of a building which are leased or rented by the State of California.

(b) The California Highway Patrol and State Fire Marshal shall be notified immediately whenever such incident occurs with our jurisdiction.

(c) The State Fire Marshal's Arson and Bomb Investigation Unit will be responsible for the fire scene investigation and any subsequent follow-up investigation.

(d) Because the examination of a fire scene is critical to the entire investigation, cleanup shall not be permitted without clearance from a representative of the SFM's Arson and Bomb Unit.

# Sexual Assault Investigations

## 601.1  PURPOSE AND SCOPE

The purpose of this policy is to establish guidelines for the investigation of sexual assaults. These guidelines will address some of the unique aspects of such cases and the effects that these crimes have on the victims.

Mandatory notifications requirements are addressed in the Child Abuse and Adult Abuse policies.

### 601.1.1  DEFINITIONS

Definitions related to this policy include:

**Sexual assault** - Any crime or attempted crime of a sexual nature, to include, but not limited to, offenses defined in Penal Code § 243.4, Penal Code § 261 et seq., and Penal Code § 285 et seq.

**Sexual Assault Response Team (SART)** - A multidisciplinary team generally comprised of advocates; law enforcement officers; forensic medical examiners, including sexual assault forensic examiners (SAFEs) or sexual assault nurse examiners (SANEs) if possible; forensic laboratory personnel; and prosecutors. The team is designed to coordinate a broad response to sexual assault victims.

## 601.2  POLICY

It is the policy of the Redding Police Department that its members, when responding to reports of sexual assaults, will strive to minimize the trauma experienced by the victims, and will aggressively investigate sexual assaults, pursue expeditious apprehension and conviction of perpetrators, and protect the safety of the victims and the community.

## 601.3  QUALIFIED INVESTIGATORS

Qualified investigators should be available for assignment of sexual assault investigations. These investigators should:

(a)  Have specialized training in, and be familiar with, interview techniques and the medical and legal issues that are specific to sexual assault investigations.

(b)  Conduct follow-up interviews and investigation.

(c)  Present appropriate cases of alleged sexual assault to the prosecutor for review.

(d)  Coordinate with other enforcement agencies, social service agencies and medical personnel as needed.

(e)  Provide referrals to therapy services, victim advocates and support for the victim.

(f)  Participate in or coordinate with SART.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000926

## Redding Police Department

RPD Policy Manual

*Sexual Assault Investigations*

---

**601.4   REPORTING**

In all reported or suspected cases of sexual assault, a report should be written and assigned for follow-up investigation. This includes incidents in which the allegations appear unfounded or unsubstantiated.

**601.5   RELEASING INFORMATION TO THE PUBLIC**

In cases where the perpetrator is not known to the victim, and especially if there are multiple crimes where more than one appear to be related, consideration should be given to releasing information to the public whenever there is a reasonable likelihood that doing so may result in developing helpful investigative leads. An Investigation Division supervisor should weigh the risk of alerting the suspect to the investigation with the need to protect the victim and the public, and to prevent more crimes.

**601.6   TRAINING**

Subject to available resources, periodic training will be provided to:

    (a)    Members who are first responders. Training should include:

        1.    Initial response to sexual assaults.

        2.    Legal issues.

        3.    Victim advocacy.

        4.    Victim's response to trauma.

    (b)    Qualified investigators who should receive advanced training on additional topics. Advanced training should include:

        1.    Interviewing sexual assault victims.

        2.    SART.

        3.    Medical and legal aspects of sexual assault investigations.

        4.    Serial crimes investigations.

        5.    Use of community and other federal and state investigative resources, such as the Violent Criminal Apprehension Program (ViCAP).

        6.    Techniques for communicating with victims to minimize trauma.

**601.7   VICTIM INTERVIEWS**

The primary considerations in sexual assault investigations, which begin with the initial call to SHASCOM, should be the health and safety of the victim, the preservation of evidence, and preliminary interviews to determine if a crime has been committed and to attempt to identify the suspect.

Whenever possible, a member of SART should be included in the initial victim interviews. An in-depth follow-up interview should not be conducted until after the medical and forensic examinations are completed and the personal needs of the victim have been met (e.g., change

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

## Sexual Assault Investigations

of clothes, bathing). Whenever practicable, the follow-up interview should be conducted by a qualified investigator.

No opinion of whether the case is unfounded shall be included in the report.

Victims shall not be asked or required to take a polygraph examination (34 USC § 10451; Penal Code § 637.4).

Victims should be apprised of applicable victim's rights provisions, as outlined in the Victim and Witness Assistance Policy.

### 601.7.1  VICTIM RIGHTS
Whenever there is an alleged sexual assault, the assigned officer shall accomplish the following:

(a)  Advise the victim in writing of the right to have a victim advocate and a support person of the victim's choosing present at any interview or contact by law enforcement, any other rights of a sexual assault victim pursuant to Penal Code § 680.2, and the right to have a person of the same or opposite gender present in the room during any interview with a law enforcement official unless no such person is reasonably available (Penal Code § 679.04).

(b)  If the victim is transported to a hospital for any medical evidentiary or physical examination, the officer shall immediately cause the local rape victim counseling center to be notified (Penal Code § 264.2).

   1.  The officer shall not discourage a victim from receiving a medical evidentiary or physical examination (Penal Code § 679.04).

   2.  A support person may be excluded from the examination by the officer or the medical provider if his/her presence would be detrimental to the purpose of the examination (Penal Code § 264.2).

### 601.7.2  VICTIM CONFIDENTIALITY
Officers investigating or receiving a report of an alleged sex offense shall inform the victim, or the victim's parent or guardian if the victim is a minor, that his/her name will become a matter of public record unless the victim requests that his/her name not be made public. The reporting officer shall document in his/her report that the victim was properly informed and shall include any related response made by the victim, or if a minor, any response made by the victim's parent or guardian (Penal Code § 293).

Except as authorized by law, members of the Redding Police Department shall not publicly disclose the name of any victim of a sex crime who has exercised his/her right to confidentiality (Penal Code § 293).

## 601.8  COLLECTION AND TESTING OF BIOLOGICAL EVIDENCE
Whenever possible, a SART member should be involved in the collection of forensic evidence from the victim.

When the facts of the case indicate that collection of biological evidence is warranted, it should be collected regardless of how much time has elapsed since the reported assault.

COR (McLeod)  000928

# Redding Police Department

RPD Policy Manual

## *Sexual Assault Investigations*

If a drug-facilitated sexual assault is suspected, urine and blood samples should be collected from the victim as soon as practicable.

Subject to requirements set forth in this policy, biological evidence from all sexual assault cases, including cases where the suspect is known by the victim, should be submitted for testing.

Victims who choose not to assist with an investigation, do not desire that the matter be investigated or wish to remain anonymous may still consent to the collection of evidence under their control. In these circumstances, the evidence should be collected and stored appropriately.

### 601.8.1   COLLECTION AND TESTING REQUIREMENTS

Members investigating a sexual assault offense should take every reasonable step to ensure that DNA testing of such evidence is performed in a timely manner and within the time periods prescribed by Penal Code § 803(g). Generally, rape kits should be submitted to the crime lab within 20 days after being booked into evidence (Penal Code § 680).

In order to maximize the effectiveness of such testing and identify the perpetrator of any sexual assault, the Crime Scene Investigator shall ensure that an information profile for the sexual assault kit evidence has been created in the California Department of Justice (DOJ) SAFE-T database within 120 days of collection and should further ensure that the results of any such test have been timely entered into and checked against both the DOJ Cal-DNA database and the Combined DNA Index System (CODIS) (Penal Code § 680.3).

If the Crime Scene Investigator determines that a kit submitted to a private laboratory for analysis has not been tested within 120 days after submission, the Investigator shall update the SAFE-T database to reflect the reason for the delay in testing. The Crime Scene Investigator shall continue to update the status every 120 days thereafter until the evidence has been analyzed or the statute of limitations has run (Penal Code § 680.3).

If, for any reason, DNA evidence in a sexual assault case in which the identity of the perpetrator is an issue and is not going to be analyzed within 18 months of the crime, the assigned officer shall notify the victim of such fact in writing no less than 60 days prior to the expiration of the 18-month period (Penal Code § 680(d)).

Additional guidance regarding evidence retention and destruction is found in the Property and Evidence Policy.

### 601.8.2   DNA TEST RESULTS

A SART member should be consulted regarding the best way to deliver biological testing results to a victim so as to minimize victim trauma, especially in cases where there has been a significant delay in getting biological testing results (e.g., delays in testing the evidence or delayed DNA databank hits). Members should make reasonable efforts to assist the victim by providing available information on local assistance programs and organizations as provided in the Victim and Witness Assistance Policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

## Redding Police Department

RPD Policy Manual

*Sexual Assault Investigations*

---

(a) Upon receipt of a written request from a sexual assault victim or the victim's authorized designee, members investigating sexual assault cases shall inform the victim of the status of the DNA testing of any evidence from the victim's case (Penal Code § 680).

    1. Although such information may be communicated orally, the assigned officer should thereafter follow-up with and retain a copy of confirmation by either written or electronic mail.

    2. Absent a written request, no member of this department is required to, but may, communicate with the victim or the victim's authorized designee regarding the status of any DNA testing.

(b) Subject to the commitment of sufficient resources to respond to requests for information, sexual assault victims shall further have the following rights (Penal Code § 680):

    1. To be informed if a DNA profile of the assailant was obtained from the testing of the rape kit or other crime scene evidence from their case.

    2. To be informed if there is a match between the DNA profile of the assailant developed from the evidence and a DNA profile contained in the DOJ Convicted Offender DNA Database, providing that disclosure would not impede or compromise an ongoing investigation.

    3. To be informed if the DNA profile of the assailant developed from the evidence has been entered into the DOJ Databank of case evidence.

(c) Provided that the sexual assault victim or the victim's authorized designee has kept the assigned officer informed with regard to current address, telephone number and email address (if available), any victim or the victim's authorized designee shall, upon request, be advised of any known significant changes regarding the victim's case (Penal Code § 680).

    1. Although such information may be communicated orally, the assigned officer should thereafter follow-up with and retain a copy of confirmation by either written or electronic mail.

    2. No officer shall be required or expected to release any information which might impede or compromise any ongoing investigation.

### 601.9 DISPOSITION OF CASES

If the assigned investigator has reason to believe the case is without merit, the case may be classified as unfounded only upon review and approval of an Investigation Division supervisor.

Classification of a sexual assault case as unfounded requires an Investigation Division supervisor to determine that the facts have significant irregularities with reported information and that the incident could not have happened as it was reported. When a victim has recanted his/her original statement, there must be corroborating evidence that the allegations were false or baseless (i.e., no crime occurred) before the case should be determined as unfounded.

# Redding Police Department

RPD Policy Manual

*Sexual Assault Investigations*

---

**601.10  CASE REVIEW**

An Investigation Division supervisor should ensure case dispositions are reviewed on a periodic basis, at least annually. The reviews should include an analysis of:

- Case dispositions.

- Decisions to collect biological evidence.

- Submissions of biological evidence for lab testing.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000931

**Policy**

**602**

# Asset Forfeiture

## 602.1   PURPOSE AND SCOPE

This policy describes the authority and procedure for the seizure, forfeiture and liquidation of property associated with designated offenses.

### 602.1.1   DEFINITIONS

Definitions related to this policy include:

**Fiscal agent** - The person designated by the Chief of Police to be responsible for securing and maintaining seized assets and distributing any proceeds realized from any forfeiture proceedings. This includes any time the Redding Police Department seizes property for forfeiture or when the Redding Police Department is acting as the fiscal agent pursuant to a multi-agency agreement.

**Forfeiture** - The process by which legal ownership of an asset is transferred to a government or other authority.

**Forfeiture reviewer** - The department member assigned by the Chief of Police who is responsible for reviewing all forfeiture cases and for acting as the liaison between the Department and the assigned attorney.

**Property subject to forfeiture** - The following may be subject to forfeiture:

(a)   Property related to a narcotics offense, which includes (Heath and Safety Code § 11470; Health and Safety Code § 11470.1):

1.   Property (not including real property or vehicles) used, or intended for use, as a container for controlled substances, materials to manufacture controlled substances, etc.

2.   Interest in a vehicle (car, boat, airplane, other vehicle) used to facilitate the manufacture, possession for sale or sale of specified quantities of controlled substances.

3.   Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to an exchange, etc.

4.   Real property when the owner is convicted of violating Health and Safety Code § 11366, Health and Safety Code § 11366.5 or Health and Safety Code § 11366.6 (drug houses) when the property was not used as a family residence or for other lawful purposes, or property owned by two or more persons, one of whom had no knowledge of its unlawful use.

5.   The expenses of seizing, eradicating, destroying or taking remedial action with respect to any controlled substance or its precursors upon conviction for the unlawful manufacture or cultivation of any controlled substance or its precursors.

(b)   Property related to criminal profiteering (may include gang crimes), to include (Penal Code § 186.2; Penal Code § 186.3):

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)   000932

# Redding Police Department

### RPD Policy Manual

*Asset Forfeiture*

      1.    Any property interest, whether tangible or intangible, acquired through a pattern of criminal profiteering activity.

      2.    All proceeds acquired through a pattern of criminal profiteering activity, including all things of value that may have been received in exchange for the proceeds immediately derived from the pattern of criminal profiteering activity.

  (c)    Vehicles seized when the driver/registered owner's license is suspended or revoked (14607.6 CVC).

**Seizure** - The act of law enforcement officials taking property, cash or assets that have been used in connection with or acquired by specified illegal activities.

## 602.2   POLICY

The Redding Police Department recognizes that appropriately applied forfeiture laws are helpful to enforce the law, deter crime and reduce the economic incentive of crime. However, the potential for revenue should never compromise the effective investigation of criminal offenses, officer safety or any person's due process rights.

It is the policy of the Redding Police Department that all members, including those assigned to internal or external law enforcement task force operations, shall comply with all state and federal laws pertaining to forfeiture.

## 602.3   ASSET SEIZURE

Property may be seized for forfeiture as provided in this policy.

### 602.3.1   PROPERTY SUBJECT TO SEIZURE

The following may be seized upon review and approval of a supervisor and in coordination with the forfeiture reviewer:

  (a)    Property subject to forfeiture authorized for seizure under the authority of a search warrant or court order.

  (b)    Property subject to forfeiture not authorized for seizure under the authority of a search warrant or court order when any of the following apply (Health and Safety Code § 11471; Health and Safety Code § 11488):

      1.    The property subject to forfeiture is legally seized incident to an arrest.

      2.    There is probable cause to believe that the property was used or is intended to be used in a violation of the Uniform Controlled Substances Act and the seizing officer can articulate a nexus between the property and the controlled substance offense that would lead to the item being property subject for forfeiture.

      3.    The property has probable cause to be one of the following:

          i.    proceeds of an illegal activity,

          ii.    used or intended to be used to facilitate and illegal activity,

          iii.    contraband.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000933

# Redding Police Department

RPD Policy Manual

*Asset Forfeiture*

(c)    Officers aware of assets that may be forfeitable as a result of criminal profiteering or human trafficking should consider contacting the district attorney regarding a court order to protect the assets (Penal Code § 186.6; Penal Code § 236.6).

(d)    Whenever practicable, a search warrant or court order for seizure prior to making a seizure is the preferred method.

(e)    A large amount of money standing alone is insufficient to establish the probable cause required to make a seizure.

(f)    Vehicles seized when the registered owner's license is suspended or revoked (14607.6 CVC):

    1.    Vehicles driven by the registered owner whose driving privilege is currently suspended or revoked and the driver/registered owner has a previous misdemeanor conviction for 12500(a), 14601.1, 14601.2, 14601.3, 14601.4, or 14601.5 CVC may be seized and forfeited using CHP Form 180 F.

    2.    Officers shall ensure all elements of 14607.6 CVC are met and the driver/ registered owner is provided proper notice regarding the appeal of the seizure.Officers seizing a vehicle pursuant to 14607.6 CVC shall ensure all DMV entries and teletypes are attached to the completed report (CHP Form 180 F).

    3.    Officers should consider a guideline of $10,000 minimum in the total value of the vehicle seized to determine if the seizure is cost-effective.

## 602.3.2   PROPERTY NOT SUBJECT TO SEIZURE

The following property should not be seized for forfeiture:

(a)    Cash and property that does not meet the forfeiture counsel's current minimum forfeiture thresholds should not be seized.

(b)    Real property is not subject to seizure, absent exigent circumstances, without a court order (Health and Safety Code § 11471).

(c)    A vehicle which may be lawfully driven on the highway if there is a community property interest in the vehicle by a person other than the suspect and the vehicle is the sole vehicle available to the suspect's immediate family (Health and Safety Code § 11470).

(d)    Vehicles, boats or airplanes owned by an "innocent owner," such as a common carrier with no knowledge of the suspected offense (Health and Safety Code § 11490).

(e)    Any property when the associated activity involves the possession of marijuana or related paraphernalia that is permissible under the Control, Regulate and Tax Adult Use of Marijuana Act (Health and Safety Code § 11362.1).

## 602.4   PROCESSING SEIZED PROPERTY FOR FORFEITURE PROCEEDINGS

When property or cash subject to this policy is seized, the officer making the seizure should ensure compliance with the following:

(a)    Complete applicable seizure forms and present the appropriate copy to the person from whom the property is seized. If cash or property is seized from more than one

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000934

# Redding Police Department
RPD Policy Manual

*Asset Forfeiture*

person, a separate copy must be provided to each person, specifying the items seized. When property is seized and no one claims an interest in the property, the officer must leave the copy in the place where the property was found, if it is reasonable to do so.

(b) Complete and submit a report and original seizure forms within 24 hours of the seizure, if practicable.

(c) Forward the original seizure forms and related reports to the forfeiture reviewer within two days of seizure.

(d) Contact the on-call District Attorney before beginning any asset forfeiture proceedings.

The officer will book seized property as evidence with the notation in the comment section of the property form, "Seized Subject to Forfeiture." Property seized subject to forfeiture should be booked on a separate property form. No other evidence from the case should be booked on this form.

Photographs should be taken of items seized, particularly cash, jewelry and other valuable items.

Officers who suspect property may be subject to seizure but are not able to seize the property (e.g., the property is located elsewhere, the whereabouts of the property is unknown, it is real estate, bank accounts, non-tangible assets) should document and forward the information in the appropriate report to the forfeiture reviewer.

## 602.5   MAINTAINING SEIZED PROPERTY
The Property and Evidence Section Supervisor is responsible for ensuring compliance with the following:

(a) All property received for forfeiture is reasonably secured and properly stored to prevent waste and preserve its condition.

(b) All property received for forfeiture is checked to determine if the property has been stolen.

(c) All property received for forfeiture is retained in the same manner as evidence until forfeiture is finalized or the property is returned to the claimant or the person with an ownership interest.

(d) Property received for forfeiture is not used unless the forfeiture action has been completed.

(e) Property with fluctuating money value (i.e. gold/silver) need to have a DDA involved. The seizing agency is responsible for the value at the time of seizure.

(f) All moneys seized must be deposited in an interest-bearing account.

## 602.6   FORFEITURE REVIEWER
The Chief of Police will appoint an officer as the forfeiture reviewer. Prior to assuming duties, or as soon as practicable thereafter, the forfeiture reviewer should attend a department-approved course on asset forfeiture.

The responsibilities of the forfeiture reviewer include:

COR (McLeod)  000935

# Redding Police Department

RPD Policy Manual

*Asset Forfeiture*

---

(a) Remaining familiar with forfeiture laws, particularly Health and Safety Code § 11469 et seq. and Penal Code § 186.2 et seq. and the forfeiture policies of the forfeiture counsel.

(b) Serving as the liaison between the Department and the forfeiture counsel and ensuring prompt legal review of all seizures.

(c) Making reasonable efforts to obtain annual training that includes best practices in pursuing, seizing and tracking forfeitures.

(d) Ensuring that property seized under state law is not referred or otherwise transferred to a federal agency seeking the property for federal forfeiture as prohibited by Health and Safety Code § 11471.2.

(e) Ensuring that responsibilities, including the designation of a fiscal agent, are clearly established whenever multiple agencies are cooperating in a forfeiture case.

(f) Ensuring that seizure forms are available and appropriate for department use. These should include notice forms, a receipt form and a checklist that provides relevant guidance to officers. The forms should be available in languages appropriate for the region and should contain spaces for:

　　1. Names and contact information for all relevant persons and law enforcement officers involved.

　　2. Information as to how ownership or other property interests may have been determined (e.g., verbal claims of ownership, titles, public records).

　　3. A space for the signature of the person from whom cash or property is being seized.

　　4. A tear-off portion or copy, which should be given to the person from whom cash or property is being seized, that includes the legal authority for the seizure, information regarding the process to contest the seizure and a detailed description of the items seized.

(g) Ensuring that officers who may be involved in asset forfeiture receive training in the proper use of the seizure forms and the forfeiture process. The training should be developed in consultation with the appropriate legal counsel and may be accomplished through traditional classroom education, electronic media, Daily Training Bulletins (DTBs) or Department Directives. The training should cover this policy and address any relevant statutory changes and court decisions.

(h) Reviewing each asset forfeiture case to ensure that:

　　1. Written documentation of the seizure and the items seized is in the case file.

　　2. Independent legal review of the circumstances and propriety of the seizure was made prior to the seizure.

　　3. Notice of seizure has been given in a timely manner to those who hold an interest in the seized property (Health and Safety Code § 11488.4).

　　4. Property is promptly released to those entitled to its return (Health and Safety Code § 11488.2).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000936

*Asset Forfeiture*

5. All changes to forfeiture status are forwarded to any supervisor who initiates a forfeiture case.

6. Any cash received is deposited with the fiscal agent.

7. Assistance with the resolution of ownership claims and the release of property to those entitled is provided.

8. Current minimum forfeiture thresholds are communicated appropriately to officers.

9. This policy and any related policies are periodically reviewed and updated to reflect current federal and state statutes and case law.

(i) Ensuring that a written plan that enables the Chief of Police to address any extended absence of the forfeiture reviewer, thereby ensuring that contact information for other law enforcement officers and attorneys who may assist in these matters is available.

(j) Ensuring that the process of selling or adding forfeited property to the department's regular inventory is in accordance with all applicable laws and consistent with the department's use and disposition of similar property.

(k) Keeping a manual that details the statutory grounds for forfeitures and department procedures related to asset forfeiture, including procedures for prompt notice to interest holders, the expeditious release of seized property, where appropriate, and the prompt resolution of claims of innocent ownership (Heath and Safety Code § 11469).

(l) Providing copies of seized business records to the person or business from whom such records were seized, when requested (Heath and Safety Code §11471).

(m) Notifying the California Franchise Tax Board when there is reasonable cause to believe that the value of seized property exceeds $5,000.00 (Health and Safety Code § 11471.5).

Forfeiture proceeds should be maintained in a separate fund or account subject to appropriate accounting control, with regular reviews or audits of all deposits and expenditures.

Forfeiture reporting and expenditures should be completed in the manner prescribed by the law and City financial directives (Health and Safety Code § 11495).

## 602.7  DISPOSITION OF FORFEITED PROPERTY

Forfeited funds distributed under Health and Safety Code § 11489 et seq. shall only be used for purposes allowed by law, but in no case shall a peace officer's employment or salary depend upon the level of seizures or forfeitures he/she achieves (Heath and Safety Code § 11469).

The Department may request a court order so that certain uncontaminated science equipment is relinquished to a school or school district for science classroom education in lieu of destruction (Health and Safety Code § 11473; Health and Safety Code § 11473.5).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Asset Forfeiture*

### 602.7.1   RECEIVING EQUITABLE SHARES

When participating in a joint investigation with a federal agency, the Redding Police Department shall not receive an equitable share from the federal agency of all or a portion of the forfeiture proceeds absent either a required conviction under Health and Safety Code § 11471.2 or the flight, death or willful failure to appear of the defendant. This does not apply to forfeited cash or negotiable instruments of $40,000 or more.

## 602.8   CLAIM INVESTIGATIONS

An investigation shall be made as to any claimant of a vehicle, boat or airplane whose right, title, interest or lien is on the record in the Department of Motor Vehicles or in an appropriate federal agency. If investigation reveals that any person, other than the registered owner, is the legal owner, and that ownership did not arise subsequent to the date and time of arrest or notification of the forfeiture proceedings or seizure of the vehicle, boat or airplane, notice shall be made to the legal owner at his/her address appearing on the records of the Department of Motor Vehicles or the appropriate federal agency (Health and Safety Code § 11488.4).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000938

# Informants

## 603.1  PURPOSE AND SCOPE

The purpose of this policy is to provide guidelines for the use of informants.

### 603.1.1  DEFINITIONS

Definitions related to this policy include:

**Informant** - A person who covertly interacts with other individuals or suspects at the direction of, request of, or by agreement with, the Redding Police Department for law enforcement purposes. This also includes a person agreeing to supply information to the Redding Police Department for a benefit (e.g., a quid pro quo in the form of a reduced criminal penalty, money).

## 603.2  POLICY

The Redding Police Department recognizes the value of informants to law enforcement efforts and will strive to protect the integrity of the informant process. It is the policy of the Redding Police Department that all funds related to informant payments will be routinely audited and that payments to informants will be made according to the criteria outlined in this policy.

## 603.3  USE OF INFORMANTS

### 603.3.1  INITIAL APPROVAL

Before using an individual as an informant, an officer must receive approval from his/her supervisor. The officer shall compile sufficient information through a background investigation and experience with the informant in order to determine the suitability of the individual, including age, maturity and risk of physical harm, as well as any indicators of his/her reliability and credibility.

Members of the Redding Police Department should not guarantee absolute safety or confidentiality to an informant.

### 603.3.2  JUVENILE INFORMANTS

The use of informants under the age of 13 is prohibited.

Except for the enforcement of laws related to the commercial sale of alcohol, marijuana or tobacco products, a juvenile 13 years of age or older may only be used as an informant with the written consent of each of the following:

    (a)    The juvenile's parents or legal guardians

    (b)    The juvenile's attorney, if any

    (c)    The court in which the juvenile's case is being handled, if applicable (Penal Code § 701.5)

    (d)    The Chief of Police or the authorized designee

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.<br>Published with permission by Redding Police Department

COR (McLeod) 000939

## Redding Police Department
### RPD Policy Manual

---

*Informants*

---

603.3.3   INFORMANT AGREEMENTS

All informants are required to sign and abide by the provisions of the designated informant agreement. The officer using the informant shall discuss each of the provisions of the agreement with the informant.

Details of the agreement are to be approved in writing by a supervisor before being finalized with the informant.

**603.4   INFORMANTS ON PAROLE/PROBATION**

An officer wishing to use an informant who is currently on probation must first notify the informant's Probation Officer and obtain approval from the Probation Officer prior to using the informant. Information regarding the approval shall be noted in the informant's file.

An officer wishing to use an informant who is currently on California State parole shall contact a Special Agent with the CDCR Special Service Unit (SSU) to obtain approval. Information regarding the approval shall be noted in the informant's file.

An officer wishing to use an informant who is currently on Federal parole or probation must submit a letter of intent to the local Federal Parole Officer. This letter must outline what activities the informant will be involved in and what provisions can be made to protect the informant. A copy of this letter will be placed in the informants' file. The Federal Parole Office must then obtain permission from the court for the informant to participate. The approval letter shall be placed in the informant's file.

**603.5   INFORMANT INTEGRITY**

To maintain the integrity of the informant process, the following must be adhered to:

(a) The identity of an informant acting in a confidential capacity shall not be withheld from the Chief of Police, Division Commander, Investigations supervisors, or the NPU supervisor.

    1. Identities of informants acting in a confidential capacity shall otherwise be kept confidential.

(b) Criminal activity by informants shall not be condoned.

(c) Informants shall be told they are not acting as police officers, employees or agents of the Redding Police Department, and that they shall not represent themselves as such.

(d) An officer shall notify their supervisor prior to meeting with an informant. In the event of an exigency, the supervisor shall be notified at the earliest opportunity.

(e) The relationship between Department members and informants shall always be ethical and professional.

    1. Members shall not become intimately involved with an informant.

    2. Social contact shall be avoided unless it is necessary to conduct an official investigation and only with prior approval of the supervisor.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod)  000940

# Redding Police Department

RPD Policy Manual

*Informants*

3. Members shall neither solicit nor accept gratuities or engage in any private business transaction with an informant.

4. Officers are prohibited from providing informants their personal phone numbers or address unless their personally owned cellular phone is used for work purposes under the stipend program.

(f) Officers shall not meet with informants in a private place unless accompanied by at least one additional officer or with prior approval of their supervisor.

1. Officers may meet informants alone in an occupied public place, such as a restaurant.

2. Under no circumstances shall an officer meet with an informant of the opposite sex without being accompanied by another officer.

(g) When contacting informants for the purpose of making payments, officers shall arrange for the presence of another officer.

(h) In all instances when Department funds are paid to informants, a voucher shall be completed in advance, itemizing the expenses.

(i) Since the decision rests with the appropriate prosecutor, officers shall not promise that the informant will receive any form of leniency or immunity from criminal prosecution.

## 603.5.1   UNSUITABLE INFORMANTS

The suitability of any informant should be considered before engaging him/her in any way in a covert or other investigative process. Members who become aware that an informant may be unsuitable will notify the supervisor, who will initiate a review to determine suitability. Until a determination has been made by a supervisor, the informant should not be used by any member. The supervisor shall determine whether the informant should be used by the Department and, if so, what conditions will be placed on his/her participation or any information the informant provides. The supervisor shall document the decision and conditions in file notes and mark the file "unsuitable" when appropriate.

Considerations for determining whether an informant is unsuitable include, but are not limited to, the following:

(a) The informant has provided untruthful or unreliable information in the past.

(b) The informant behaves in a way that may endanger the safety of an officer.

(c) The informant reveals to suspects the identity of an officer or the existence of an investigation.

(d) The informant appears to be using his/her affiliation with this Department to further criminal objectives.

(e) The informant creates officer-safety issues by providing information to multiple law enforcement agencies simultaneously, without prior notification and approval of each agency.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000941

# Redding Police Department
RPD Policy Manual

*Informants*

    (f)    The informant engages in any other behavior that could jeopardize the safety of officers or the integrity of a criminal investigation.

    (g)    The informant commits criminal acts subsequent to entering into an informant agreement.

## 603.6   INFORMANT FILES

Informant files shall be utilized as a source of background information about the informant, to enable review and evaluation of information provided by the informant, and to minimize incidents that could be used to question the integrity of Department members or the reliability of the informant.

Informant files shall be maintained in a secure area within the Investigations Division. The Investigations Division Commander shall be responsible for maintaining informant files. Access to the informant files shall be restricted to the Chief of Police, Division Commander, Investigations supervisors, and NPU supervisor.

The Investigations Division Commander will periodically audit the informant files. Informants that are inactive for a period of six months will be placed on an inactive file. If an informant is reactivated, a new WSIN/NCIC check, driver's license printout, and criminal history shall be completed. Informants that have remained inactive for a period of ten years will have their files purged.

All outstanding warrants shall be cleared prior to use of the informant unless previously approved by a magistrate, district attorney, or the Investigations Division Commander.

### 603.6.1   FILE SYSTEM PROCEDURE

A separate file shall be maintained on each informant and shall include an informant number and designation as either "Confidential Informant" (CI), "Confidential Reliable Informant" (CRI) or Citizen Informant. An informant Personal History form must be completed and the file shall consist of the following:

    (a)    A complete Informant Personal History record form

    (b)    A current photograph of the informant

    (c)    Date and time of the WSIN and NCIC checks

    (d)    Copies of the CJIS Super Message Key Results, L-1 and Criminal History

    (e)    A copy of the informant's Driver's License printout

    (f)    Informants without a valid DL shall not operate a motor vehicle while engaged in investigations.

    (g)    An Informant Performance Record

    (h)    An RPD Special Consent Form

    (i)    Entrapment and Preponderance of Evidence definition forms

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

---

*Informants*

---

**603.7  INFORMANT PAYMENTS**

No informant will be told in advance or given an exact amount or percentage for his/her service. The amount of funds to be paid to any informant will be evaluated against the following criteria:

- The extent of the informant's personal involvement in the case

- The significance, value or effect on crime

- The value of assets seized

- The quantity of the drugs or other contraband seized

- The informant's previous criminal activity

- The level of risk taken by the informant

An Investigations supervisor or NPU supervisor will be responsible for the payment approval.

603.7.1  PAYMENT PROCESS

Upon payment to the informant of reimbursement or reward monies, a numbered receipt will be completed and signed by the officer and supervisor in charge of the payout. A case number or explanation for payment will also be noted on the receipt. Upon review by a supervisor, the receipt number will be recorded in a ledger designated specifically for such payments. The informant shall sign a copy of the receipt indicating the amount of money received. This receipt will be maintained in the informant's file.

**NOTE**: The Investigations Division Commander shall conduct a periodic review of the informant ledger.

603.7.2  REPORTING OF PAYMENTS

Each informant receiving a cash payment shall be advised of his/her responsibility to report the cash to the Internal Revenue Service (IRS) as income. If funds distributed exceed $600 in any reporting year, the informant should be provided IRS Form 1099 (26 CFR 1.6041-1). If such documentation or reporting may reveal the identity of the informant and by doing so jeopardize any investigation, the safety of officers or the safety of the informant (26 CFR 1.6041-3), then IRS Form 1099 should not be issued.

In such cases, the informant shall be provided a letter identifying the amount he/she must report on a tax return as "other income" and shall be required to provide a signed acknowledgement of receipt of the letter. The completed acknowledgement form and a copy of the letter shall be retained in the informant's file.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000943

# Eyewitness Identification

## 604.1  PURPOSE AND SCOPE
This policy sets forth guidelines to be used when members of this department employ eyewitness identification techniques (Penal Code § 859.7).

### 604.1.1  DEFINITIONS
Definitions related to the policy include:

**Eyewitness identification process** - Any field identification, live lineup or photographic identification.

**Field identification** - A live presentation of a single individual to a witness following the commission of a criminal offense for the purpose of identifying or eliminating the person as the suspect.

**Live lineup** - A live presentation of individuals to a witness for the purpose of identifying or eliminating an individual as the suspect.

**Photographic lineup** - Presentation of photographs to a witness for the purpose of identifying or eliminating an individual as the suspect.

## 604.2  POLICY
The Redding Police Department will strive to use eyewitness identification techniques, when appropriate, to enhance the investigative process and will emphasize identifying persons responsible for crime and exonerating the innocent.

## 604.3  INTERPRETIVE SERVICES
Members should make a reasonable effort to arrange for an interpreter before proceeding with eyewitness identification if communication with a witness is impeded due to language or hearing barriers.

Before the interpreter is permitted to discuss any matter with the witness, the investigating member should explain the identification process to the interpreter. Once it is determined that the interpreter comprehends the process and can explain it to the witness, the eyewitness identification may proceed as provided for within this policy.

## 604.4  EYEWITNESS IDENTIFICATION PROCESS AND FORM
The Investigations Division supervisor shall be responsible for the development and maintenance of an eyewitness identification process for use by members when they are conducting eyewitness identifications.

The process should include appropriate forms or reports that provide (Penal Code § 859.7):

    (a)    The date, time and location of the eyewitness identification procedure.

    (b)    The name and identifying information of the witness.

*Eyewitness Identification*

    (c)    The name of the person administering the identification procedure.

    (d)    If applicable, the names of all of the individuals present during the identification procedure.

    (e)    An instruction to the witness that it is as important to exclude innocent persons as it is to identify a perpetrator.

    (f)    An instruction to the witness that the perpetrator may or may not be among those presented and that the witness is not obligated to make an identification.

    (g)    If the identification process is a photographic or live lineup, an instruction to the witness that the perpetrator may not appear exactly as he/she did on the date of the incident.

    (h)    An instruction to the witness that the investigation will continue regardless of whether an identification is made by the witness.

    (i)    A signature line where the witness acknowledges that he/she understands the identification procedures and instructions.

    (j)    A statement from the witness in the witness's own words describing how certain he/she is of the identification or non-identification. This statement should be taken at the time of the identification procedure.

    (k)    Any other direction to meet the requirements of Penal Code § 859.7, including direction regarding blind or blinded administrations and filler selection.

The process and related forms should be reviewed at least annually and modified when necessary.

## 604.5   EYEWITNESS IDENTIFICATION

Members are cautioned not to, in any way, influence a witness as to whether any subject or photo presented in a lineup is in any way connected to the case.

Members should avoid mentioning that:

- The individual was apprehended near the crime scene.

- The evidence points to the individual as the suspect.

- Other witnesses have identified or failed to identify the individual as the suspect.

In order to avoid undue influence, witnesses should view suspects or a lineup individually and outside the presence of other witnesses. Witnesses should be instructed to avoid discussing details of the incident or of the identification process with other witnesses.

Whenever feasible, the eyewitness identification procedure should be audio and video recorded and the recording should be retained according to current evidence procedures (Penal Code § 859.7).

## 604.6   FIELD IDENTIFICATION CONSIDERATIONS

Field identifications, also known as field elimination show-ups or one-on-one identifications, may be helpful in certain cases, where exigent circumstances make it impracticable to conduct a photo or live lineup identifications. A field elimination show-up or one-on-one identification should not be

COR (McLeod)  000945

# Redding Police Department

RPD Policy Manual

*Eyewitness Identification*

used when independent probable cause exists to arrest a suspect. In such cases a live or photo lineup is the preferred course of action if eyewitness identification is contemplated.

When initiating a field identification, the member should observe the following guidelines:

(a) Obtain a complete description of the suspect from the witness.

(b) Assess whether a witness should be included in a field identification process by considering:

1. The length of time the witness observed the suspect.

2. The distance between the witness and the suspect.

3. Whether the witness could view the suspect's face.

4. The quality of the lighting when the suspect was observed by the witness.

5. Whether there were distracting noises or activity during the observation.

6. Any other circumstances affecting the witness's opportunity to observe the suspect.

7. The length of time that has elapsed since the witness observed the suspect.

(c) If safe and practicable, the person who is the subject of the show-up should not be handcuffed or in a patrol vehicle.

(d) When feasible, members should bring the witness to the location of the subject of the show-up, rather than bring the subject of the show-up to the witness.

(e) The person who is the subject of the show-up should not be shown to the same witness more than once.

(f) In cases involving multiple suspects, witnesses should only be permitted to view the subjects of the show-up one at a time.

(g) The person who is the subject of the show-up should not be required to put on clothing worn by the suspect, to speak words uttered by the suspect or to perform other actions mimicking those of the suspect.

(h) If a witness positively identifies a subject of the show-up as the suspect, members should not conduct any further field identifications with other witnesses for that suspect. In such instances members should document the contact information for any additional witnesses for follow up, if necessary.

## 604.6   PHOTOGRAPHIC LINEUP AND LIVE LINEUP CONSIDERATIONS

When practicable, the member presenting the lineup should not be involved in the investigation of the case or know the identity of the suspect. In no case should the member presenting a lineup to a witness know which photograph or person in the lineup is being viewed by the witness (Penal Code § 859.7). Techniques to achieve this include randomly numbering photographs, shuffling folders, or using a computer program to order the persons in the lineup.

Individuals in the lineup should reasonably match the description of the perpetrator provided by the witness and should bear similar characteristics to avoid causing any person to unreasonably stand

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000946

# Redding Police Department
RPD Policy Manual

*Eyewitness Identification*

out. In cases involving multiple suspects, a separate lineup should be conducted for each suspect. The suspects should be placed in a different order within each lineup (Penal Code § 859.7).

The member presenting the lineup should do so sequentially (i.e., show the witness one person at a time) and not simultaneously. The witness should view all persons in the lineup.

A live lineup should only be used before criminal proceedings have been initiated against the suspect. If there is any question as to whether any criminal proceedings have begun, the investigating member should contact the appropriate prosecuting attorney before proceeding.

## 604.6.1   OTHER SAFEGUARDS
Witnesses should be asked for suspect descriptions as close in time to the incident as possible and before conducting an eyewitness identification. No information concerning a suspect should be given prior to obtaining a statement from the witness describing how certain he/she is of the identification or non-identification. Members should not say anything to a witness that that may validate or invalidate an eyewitness' identification. In photographic lineups, writings or information concerning any previous arrest of a suspect shall not be visible to the witness (Penal Code § 859.7).

## 604.6  DOCUMENTATION
A thorough description of the eyewitness process and the result of any eyewitness identification should be documented in the case report.

If a photographic lineup is utilized, a copy of the photographic lineup presented to the witness should be included in the case report. In addition, the order in which the photographs were presented to the witness should be documented in the case report.

## 604.6.1   <B>DOCUMENTATION RELATED TO RECORDINGS</B>
The handling member shall document the reason that a video recording or any other recording of an identification was not obtained (Penal Code § 859.7).

## 604.6.2   <B>DOCUMENTATION RELATED TO BLIND ADMINISTRATION</B>
If a presentation of a lineup is not conducted using blind administration, the handling member shall document the reason (Penal Code § 859.7).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000947

# Brady Material Disclosure

## 605.1  PURPOSE AND SCOPE

This policy establishes guidelines for identifying and releasing potentially exculpatory or impeachment information (so-called "*Brady* information") to a prosecuting attorney.

### 605.1.1  DEFINITIONS

Definitions related to this policy include:

***Brady*  information** -Information known or possessed by the Redding Police Department that is both favorable and material to the current prosecution or defense of a criminal defendant.

## 605.2  POLICY

The Redding Police Department will conduct fair and impartial criminal investigations and will provide the prosecution with both incriminating and exculpatory evidence, as well as information that may adversely affect the credibility of a witness. In addition to reporting all evidence of guilt, the Redding Police Department will assist the prosecution by complying with its obligation to disclose information that is both favorable and material to the defense. The Department will identify and disclose to the prosecution potentially exculpatory information, as provided in this policy.

## 605.3  DISCLOSURE OF INVESTIGATIVE INFORMATION

Officers must include in their investigative reports adequate investigative information and reference to all material evidence and facts that are reasonably believed to be either incriminating or exculpatory to any individual in the case. If an officer learns of potentially incriminating or exculpatory information any time after submission of a case, the officer or the handling investigator must prepare and submit a supplemental report documenting such information as soon as practicable. Supplemental reports shall be promptly processed and transmitted to the prosecutor's office.

If information is believed to be privileged or confidential (e.g., confidential informant or protected personnel files), the officer should discuss the matter with a supervisor and/or prosecutor to determine the appropriate manner in which to proceed.

Evidence or facts are considered material if there is a reasonable probability that they would affect the outcome of a criminal proceeding or trial. Determining whether evidence or facts are material often requires legal or even judicial review. If an officer is unsure whether evidence or facts are material, the officer should address the issue with a supervisor.

Supervisors who are uncertain about whether evidence or facts are material should address the issue in a written memo to an appropriate prosecutor. A copy of the memo should be retained in the Department case file.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Redding Police Department

RPD Policy Manual

*Brady Material Disclosure*

**605.4  DISCLOSURE OF PERSONNEL INFORMATION**

Whenever it is determined that *Brady* information is located in the personnel file of a member of this Department who is, or is likely to be, a material witness in a criminal case, the following procedure shall apply:

(a) In the event that a *Pitchess* motion has not already been filed by the criminal defendant or other party pursuant to Evidence Code § 1043, the prosecuting attorney shall be notified of the potential presence of *Brady* information in the officer's personnel file.

(b) The prosecuting attorney should then be requested to file a *Pitchess* motion in order to initiate an in camera review by the court.

(c) Any member who is the subject of such a motion shall be notified in writing that a motion has been filed.

(d) The Custodian of Records or their designee shall accompany all relevant files during any in camera inspection and address any issues or questions raised by the court in determining whether any information contained in the files is both material and favorable to the criminal defendant.

(e) If the court determines that there is relevant *Brady* information contained in the files, only that information ordered released will be copied and released to the parties filing the motion.

1. Prior to the release of any information pursuant to this process, the Custodian of Records or their designee should request a protective order from the court limiting the use of such information to the involved case and requiring the return of all copies upon completion of the case.

At the conclusion of a sustained internal investigation with potential Brady information on an officer, the Division Commander for the employee will do the following:

(a) Notify the employee, in writing, of the existence of the Brady material and that the DA's office will be notified, and

(b) Notify the employee they have 10 days to appeal to the Chief of Police, and

(c) Following a denial of the appeal, or after 10 days, and at the direction of the Chief of Police, the District Attorney or their designee will be notified of the employee's name and the existence of potential Brady information. The investigation will NOT be released except:

(a) Subject to a Pitchess motion by a competent court with jurisdiction.

(b)  A Public Records Act Request under SB1421.

(c) A Federal Subpoena or discovery request.

**605.5  INVESTIGATING BRADY ISSUES**

If the Department receives information from any source that a member may have issues of credibility, dishonesty or has been engaged in an act of moral turpitude or criminal conduct, the information shall be investigated and processed in accordance with the Personnel Complaints Policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000949

# Redding Police Department
RPD Policy Manual

*Brady Material Disclosure*

## 605.6  TRAINING
Department members should receive periodic training on the requirements of this policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000950

Policy

**606**

# Unmanned Aerial Vehicle (UAV) Operations

**606.1  PURPOSE AND SCOPE**
The purpose of this policy is to establish guidelines for the use of an unmanned aerial vehicle (UAV) and for the storage, retrieval and dissemination of images and data captured by the UAV.

606.1.1  DEFINITIONS
Definitions related to this policy include:

**Unmanned Aerial System (UAS)** - An unmanned aircraft of any type that is capable of sustaining directed flight, whether preprogrammed or remotely controlled (commonly referred to as an unmanned aerial vehicle (UAV)), and all of the supporting or attached systems designed for gathering information through imaging, recording or any other means.

**606.2  POLICY**
Unmanned aerial vehicles may be utilized to enhance the Department's mission of protecting lives and property. Any use of a UAV will be in strict accordance with constitutional and privacy rights, Federal Aviation Administration (FAA) regulations, and Redding Police Department policy.

**606.3  PRIVACY**
The use of a UAV potentially involves privacy considerations. Absent a warrant or exigent circumstances, operators and observers shall adhere to FAA altitude regulations. Operators and observers shall take reasonable precautions to avoid inadvertently recording or transmitting images of areas where there is a reasonable expectation of privacy.

**606.4  PROGRAM MANAGER**
The Field Operations Division Commander will appoint a program manager who will be responsible for the management of the UAV program. The program manager will designate a supervisor to assist and ensure that policies and procedures conform to current laws, regulations and best practices.

- The UAV program manager and supervisor shall be responsible for ensuring that the department's Federal Aviation Administration (FAA) Certificate of Waiver or Authorization (COA) is current.

- All UAVs and related equipment will be maintained per the manufacturer's instructions. The UAV program supervisor shall keep records of the maintenance for the UAV units.

- The UAV program manager and supervisor will be responsible for ensuring that this policy is followed and will provide periodic reports regarding program enhancements, particularly regarding safety and information security, to the Field Operations Division Commander.

- The UAV supervisor will be responsible for submitting periodic reports on UAV usage to the FAA as required by the COA.

Redding Police Department

RPD Policy Manual

*Unmanned Aerial Vehicle (UAV) Operations*

---

### 606.5  USE OF UAV

All UAV deployments will be in accordance with the guidelines provided in the FAA COA. The FAA COA includes procedures governing safety oversight, use of visual observers, lost link procedures, and communication with air traffic control facilities.

UAVs shall only be operated by department personnel who have received department-approved training in the operation, applicable laws, policies, and procedures regarding the use of the UAV.

UAV deployment will be considered when an aerial view would enhance situational awareness and assist officers or incident commanders during the following occurrences:

- Arrest / Search Warrant
- CBRNE Incident (Chemical, Biological, Radiological, Nuclear, Explosives)
- Crowd Control / Special Events
- Dignitary Protection Detail
- Disaster Management
- Ongoing Criminal Investigation
- Explosive Ordinance Disposal / Investigation
- Fire
- Forensic / Crime Scene
- Missing Person Investigation
- Perimeter Search and Security
- Search and Rescue
- SWAT Operation
- Traffic Collision
- Training
- Public Relations / Multimedia Productions
- Assisting outside agencies in any of the above situations

All deployments of the UAV shall be approved by a Redding Police Department supervisor. This includes training or media/public relations flights. Requests for use of the UAV from outside agencies will be considered by the on-duty supervisor, or the UAV program manager or supervisor, on a case-by-case basis.

All UAV deployments, including training or media/public relations flights, shall be documented using the Redding Police Department UAV deployment report form (RPD-UAV1).

### 606.6  PROHIBITED USE

The UAV video surveillance equipment shall not be used:

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000952

# Redding Police Department

RPD Policy Manual

*Unmanned Aerial Vehicle (UAV) Operations*

- To conduct random surveillance activities.

- To target a person based solely on individual characteristics, such as, but not limited to race, ethnicity, national origin, religion, disability, gender or sexual orientation.

- The UAV shall not be weaponized.

## 606.7  RETENTION OF UAV DATA

Any video or photographic evidence that is collected by the deployment of a UAV shall be retained in the same manner as any other digital evidence.

All UAV records shall be maintained in accordance with the established City of Redding Records Retention Schedule.

Pursuant to Government Code Section 6254(f), UAV deployment records relating to criminal investigations will not be disclosed. The only exception will be through a valid court order.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000953

**Redding Police Department**

RPD Policy Manual

# Warrant Service

### 607.1  PURPOSE AND SCOPE
This policy establishes guidelines for the planning and serving of arrest and search warrants by members of this Department. It is understood that this policy cannot address every variable or circumstance that can arise in the service of a search or arrest warrant, as these tasks can involve rapidly evolving and unique circumstances.

This policy is intended to be used in conjunction with the Operations Planning and Deconfliction Policy, which has additional guidance on planning and serving high-risk warrants.

This policy is not intended to address the service of search warrants on locations or property already secured or routine field warrant arrests by patrol officers.

### 607.2  POLICY
It is the policy of the Redding Police Department to balance the safety needs of the public, the safety of Department members, privacy interests and other relevant factors when making decisions related to the service of search and arrest warrants.

### 607.3  SUPERVISOR RISK ASSESSMENT
The supervisor shall review all risk assessment forms to determine the risk level of the warrant service.

The supervisor will also have the responsibility to coordinate service of those warrants that are categorized as high risk. The supervisor shall contact the Watch Commander and SWAT Commander to consult on warrants deemed high risk. If the Watch Commander is unavailable, the Division Commander should assume this role.

### 607.4  SEARCH WARRANTS
Officers should receive authorization from a supervisor before preparing a search warrant application. Once authorization is received, the officer will prepare the affidavit and search warrant, after the warrant is reviewed by either the on-duty shift supervisor, watch commander, or Investigations Division Sergeant, the officer should have the warrant reviewed by the DA's office (if after hours, the on-call DA will be notified).Once approved by the DA's office, the warrant shall be signed by either an on-duty or on-call judge.

Once approved by a judge, the officer will notify an on-duty supervisor to schedule the service of the warrant. A supervisor must be present during the service of the warrant, except for the service of a warrant not requiring entry into a structure. In all cases with the potential for forced entry, an operational plan is required.

Personnel assigned to SINTF shall follow their agencies' individual guidelines for writing and serving of search warrants.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Warrant Service*

---

(a) Pursuant to an agreement with the with Shasta County District Attorney's office, DUI Blood Draw search warrants do not need to be reviewed by the DA's office prior to review by a judge. These warrants shall be reviewed by an on-duty supervisor prior to being sent to the judge for review. The supervisor or officer writing the warrant can call the DA's office if the circumstances require further review.

A supervisor must be present during the service of a search warrant except for the service of search warrants that do not require the entry into a structure.  For example, search warrants including but not limited to: DNA, social media, financial and phone records.  In all cases with potential for forced entry, an operational plan is required.

## 607.5  ARREST WARRANTS

If an officer reasonably believes that serving an arrest warrant may pose a higher risk than commonly faced on a daily basis, the officer shall advise a supervisor and a risk assessment shall be completed.

If the warrant is classified as high risk, service will be coordinated by the supervisor after consulting with the Watch Commander and SWAT Tactical Commander. If the Watch Commander is unavailable, the Division Commander should assume this role. If the warrant is not classified as high risk, the supervisor should weigh the risk of entry into a residence to make an arrest against other alternatives, such as arresting the person outside the residence where circumstances may pose a lower risk.

## 607.6  WARRANT PREPARATION

An officer who prepares a warrant should ensure the documentation in support of the warrant contains as applicable:

(a) Probable cause to support the search or arrest, including relevant dates and times to demonstrate timeliness and facts to support any request for nighttime warrant execution.

(b) A clear explanation of the affiant's training, experience and relevant education.

(c) Adequately supported opinions, when relevant, that are not left to unsubstantiated conclusions.

(d) A nexus between the place to be searched and the persons or items central to the investigation. The facts supporting this nexus should be clear and current. For example, the affidavit shall explain why there is probable cause to believe that a particular person is currently residing at a particular location or that the items sought are present at a particular location.

(e) Full disclosure of known or suspected residents at the involved location and any indication of separate living spaces at the involved location. For example, it should be disclosed that several people may be renting bedrooms at a single location, even if the exact location of the rooms is not known.

(f) A specific description of the location to be searched, including photographs of the location, if reasonably available.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000955

# Redding Police Department

RPD Policy Manual

(g)     A sufficient description of the items to be seized.

(h)     Full disclosure of any known exculpatory information relevant to the warrant application (refer to the Brady Material Disclosure Policy).

## 607.7   HIGH-RISK WARRANT SERVICE

The supervisor shall coordinate the service of warrants that are categorized as high risk after consulting with the Watch Commander and SWAT Tactical Commander. If the Watch Commander is unavailable, the Division Commander should assume this role.

The member responsible for directing the service should ensure the following as applicable:

(a)     When practicable and when doing so does not cause unreasonable risk, video or photographic documentation is made of the condition of the location prior to execution of a search warrant. The images should include the surrounding area and persons present.

(b)     The warrant service is audio-recorded when practicable and reasonable to do so.

(c)     Evidence is handled and collected only by those members who are designated to do so. All other members involved in the service of the warrant should alert one of the designated members to the presence of potential evidence and not touch or disturb the items.

(d)     Reasonable efforts are made during the search to maintain or restore the condition of the location.

(e)     Persons who are detained as part of the warrant service are handled appropriately under the circumstances.

(f)     Reasonable care provisions are made for children and dependent adults.

(g)     A list is made of all items seized and a copy provided to the person in charge of the premises if present or otherwise left in a conspicuous place.

(h)     A copy of the search warrant is left at the location.

(i)     The condition of the property is documented with video recording or photographs after the search.

## 607.8   DETENTIONS DURING WARRANT SERVICE

Officers must be sensitive to the safety risks of all persons involved with the service of a warrant. Depending on circumstances and facts present, it may be appropriate to control movements of any or all persons present at a warrant service, including those who may not be the subject of a warrant or suspected in the case. However, officers must be mindful that only reasonable force may be used and weapons should be displayed no longer than the officer reasonably believes is necessary.

As soon as it can be determined that an individual is not subject to the scope of a warrant and that no further reasonable suspicion or safety concerns exist to justify further detention, the person should be promptly released.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000956

# Redding Police Department

RPD Policy Manual

*Warrant Service*

Officers should, when and to the extent reasonable, accommodate the privacy and personal needs of people who have been detained.

## 607.9  ACTIONS AFTER WARRANT SERVICE

The case agent shall ensure that all affidavits, warrants, receipts and returns, regardless of any associated cases, are filed with the issuing judge or magistrate as soon as reasonably possible, but in any event no later than any date specified on the warrant.

## 607.10  OUTSIDE AGENCIES AND CROSS-JURISDICTIONAL WARRANTS

The Watch Commander will ensure that cooperative efforts with other agencies in the service of warrants conform to existing mutual aid agreements or other memorandums of understanding and will work cooperatively to mitigate risks including, but not limited to, the following:

- Identity of team members

- Roles and responsibilities

- Familiarity with equipment

- Rules of engagement

- Asset forfeiture procedures

Any outside agency requesting assistance in the service of a warrant within this jurisdiction should be referred to the Watch Commander. The Watch Commander should review and confirm the warrant, including the warrant location, and should discuss the service with the appropriate supervisor from the other agency. The Watch Commander should ensure that members of the Redding Police Department are utilized appropriately. Any concerns regarding the requested use of Redding Police Department members should be brought to the attention of the Division Commander. The actual service of the warrant will remain the responsibility of the agency requesting assistance.

If the Watch Commander is unavailable, the Division Commander should assume this role.

If officers intend to serve a warrant outside Redding Police Department jurisdiction, the supervisor should provide reasonable advance notice to the applicable agency, request assistance as needed and work cooperatively on operational planning and the mitigation of risks detailed in this policy.

Officers will remain subject to the policies of the Redding Police Department when assisting outside agencies or serving a warrant outside Redding Police Department jurisdiction.

## 607.11  MEDIA ACCESS

No advance information regarding warrant service operations shall be released without the approval of the Division Commander. Any media inquiries or press release after the fact shall be handled in accordance with the News Media Relations Policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000957

# Redding Police Department

RPD Policy Manual

*Warrant Service*

**607.12  TRAINING**

The Training Sergeant should ensure officers receive periodic training on this policy and associated topics, such as legal issues, warrant preparation, warrant service and reporting requirements.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000958

**Policy**

**608**

# Operations Planning and Deconfliction

## 608.1  PURPOSE AND SCOPE

This policy provides guidelines for planning, deconfliction and execution of high-risk operations.

Additional guidance on planning and serving high-risk warrants is provided in the Warrant Service Policy.

### 608.1.1  DEFINITIONS

Definitions related to this policy include:

**High-Risk Operations** - Operations, including service of search and arrest warrants and sting operations, that are likely to present higher risks than are commonly faced by officers on a daily basis, including suspected fortified locations, reasonable risk of violence or confrontation with multiple persons, or reason to suspect that persons anticipate the operation.

## 608.2  POLICY

It is the policy of the Redding Police Department to properly plan and carry out high-risk operationsin order to provide coordination, enhance the safety of members and the public, decrease the risk of compromising investigations and prevent duplicating efforts.

## 608.3  RISK ASSESSMENT

### 608.3.1  RISK ASSESSMENT FORM PREPARATION

Officers assigned as operational leads for any operation that may qualify as a high-risk operation shall complete an operations plan.

When preparing the form, the officer should query all relevant and reasonably available intelligence resources for information about the subject of investigation, others who may be present and the involved location. These sources may include regional intelligence and criminal justice databases, target deconfliction systems, firearm records, commercial databases and property records. Where appropriate, the officer should also submit information to these resources.

The officer should gather available information that includes, but is not limited to:

(a)  Photographs, including aerial photographs, if available, of the involved location, neighboring yards and obstacles.

(b)  Maps of the location.

(c)  Diagrams of any property and the interior of any buildings that are involved.

(d)  Historical information about the subject of investigation (e.g., history of weapon possession or use, known mental illness, known drug use, threats against police, gang affiliation, criminal history).

(e)  Historical information about others who may be present at the location (e.g., other criminals, innocent third parties, dependent adults, children, animals).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Operations Planning and Deconfliction*

(f) Obstacles associated with the location (e.g., fortification, dogs, booby traps, reinforced doors/windows, surveillance measures, number and type of buildings, geographic and perimeter barriers, the number and types of weapons likely to be present, information that suggests the presence of explosives, chemicals or other hazardous materials, the potential for multiple dwellings or living spaces, availability of keys/door combinations).

(g) Other environmental factors (e.g., nearby venues such as schools and day care centers, proximity of adjacent homes or other occupied buildings, anticipated pedestrian and vehicle traffic at the time of service).

(h) Other available options that may minimize the risk to officers and others (e.g., making an off-site arrest or detention of the subject of investigation).

## 608.3.2  RISK ASSESSMENT REVIEW

Officers will present the risk assessment form and other relevant documents (such as copies of search warrants and affidavits and arrest warrants) to their supervisor and the Watch Commander.

The supervisor and Watch Commander shall confer and determine the level of risk. Supervisors should take reasonable actions if there is a change in circumstances that elevates the risks associated with the operation.

## 608.3.3  HIGH-RISK OPERATIONS

If the Watch Commander, after consultation with the involved supervisor, determines that the operation is high risk, the Watch Commander should:

(a) Contact and consult with the SWAT Tactical Commander.

(b) Determine what resources will be needed at the location, and contact and/or place on standby any of the following appropriate and available resources:

1. SWAT/SR-1

2. Additional personnel

3. Outside agency assistance

4. Special equipment

5. Medical personnel

6. HNT

7. Additional surveillance

8. Canine

9. Specialized mapping for larger or complex locations

10. UAV

(c) Contact the appropriate department members or other agencies as warranted to begin preparation.

(d) Ensure that all legal documents such as search warrants are complete and have any modifications reasonably necessary to support the operation.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Operations Planning and Deconfliction*

    (e)    Coordinate the actual operation unless it has been determined SWAT will be used.

## 608.4  OPERATIONS PLAN

The supervisor should ensure that a written operations plan is developed for all high-risk operations. Plans should also be considered for other operations that would benefit from having a formal plan.

The plan should address such issues as:

    (a)    Operation goals, objectives and strategies.

    (b)    Operation location and people:

        (a)    The subject of investigation (e.g., history of weapon possession/use, known mental illness issues, known drug use, threats against police, gang affiliation, criminal history)

        (b)    The location (e.g., fortification, dogs, booby traps, reinforced doors/windows, surveillance cameras and/or lookouts, number/type of buildings, geographic and perimeter barriers, the number and types of weapons likely to be present, information that suggests the presence of explosives, chemicals or other hazardous materials, the potential for multiple dwellings or living spaces, availability of keys/door combinations), including aerial photos, if available, and maps of neighboring yards and obstacles, diagrams and other visual aids

        (c)    Other environmental factors (e.g., nearby venues such as schools and day care centers, proximity of adjacent homes or other occupied buildings, anticipated pedestrian and vehicle traffic at the time of service)

        (d)    Identification of other people who may be present in or around the operation, such as other criminal suspects, innocent third parties and children.

    (c)    Participants and their roles.

        (a)    An adequate number of uniformed officers should be included in the operation team to provide reasonable notice of a legitimate law enforcement operation.

    (d)    Identification of all communications channels and call-signs.

    (e)    Use of force issues.

    (f)    Contingencies for handling medical emergencies (e.g., services available at the location, closest hospital, closest trauma center).

    (g)    Plans for detaining people who are not under arrest.

    (h)    Contingencies for handling children, dependent adults, animals and other people who might be at the location in accordance with the Child Abuse, Adult Abuse, Child and Dependent Adult Safety and Animal Control policies.

    (i)    Communications plan

    (j)    Responsibilities for writing, collecting, reviewing and approving reports.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000961

## Redding Police Department
RPD Policy Manual

*Operations Planning and Deconfliction*

### 608.4.1   OPERATIONS PLAN RETENTION
Since the operations plan contains intelligence information and descriptions of law enforcement tactics, it shall not be filed with the report. The operations plan shall be stored separately and retained in accordance with the established records retention schedule.

### 608.5   OPERATIONS BRIEFING
A briefing should be held prior to the commencement of any high-risk operation to allow all participants to understand the operation, see and identify each other, identify roles and responsibilities and ask questions or seek clarification as needed. Anyone who is not present at the briefing should not respond to the operation location without specific supervisory approval.

  (a)   The briefing should include a verbal review of plan elements, using visual aids, to enhance the participants' understanding of the operations plan.

  (b)   All participants should be provided a copy of the operations plan and search warrant, if applicable. Participating personnel should be directed to read the search warrant and initial a copy that is retained with the operation plan. Any items to be seized should be identified at the briefing.

  (c)   The supervisor shall ensure that all participants are visually identifiable as law enforcement officers.

    1.   Exceptions may be made by the operations director for officers who are conducting surveillance or working under cover. However, those members exempt from visual identification should be able to transition to a visible law enforcement indicator at the time of enforcement actions, such as entries or arrests, if necessary.

  (d)   The briefing should include details of the communications plan.

    1.   It is the responsibility of the operations director to ensure that SHASCOM is notified of the time and location of the operation, and to provide a copy of the operation plan prior to officers arriving at the location.

    2.   If the radio channel needs to be monitored by SHASCOM, the dispatcher assigned to monitor the operation should attend the briefing, if practicable, but at a minimum should receive a copy of the operation plan.

    3.   The briefing should include a communications check to ensure that all participants are able to communicate with the available equipment on the designated radio channel.

### 608.6   SWAT PARTICIPATION
If the watch commander determines that SWAT participation is appropriate, the SWAT Tactical Commander shall designate someone to work together to develop a written plan. The SWAT Tactical Commander shall assume operational control until all persons at the scene are appropriately detained and it is safe to begin a search. When this occurs, the SWAT Tactical Commander shall transfer control of the scene to the handling supervisor. This transfer should be communicated to the officers present.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000962

# Redding Police Department
RPD Policy Manual

*Operations Planning and Deconfliction*

**608.7  MEDIA ACCESS**
No advance information regarding planned operations shall be released without the approval of the Chief of Police.

**608.8  OPERATIONS DEBRIEFING**
High-risk operations should be debriefed as soon as reasonably practicable. The debriefing should include as many participants as possible. This debrief may be separate from any SWAT debriefing.

**608.9  TRAINING**
The Training Sergeant should ensure officers and SWAT team members who participate in operations subject to this policy should receive periodic training including, but not limited to, topics such as legal issues, operations planning concepts and reporting requirements.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000963

**Redding Police Department**

RPD Policy Manual

# Vice Control

### 609.1  PURPOSE AND SCOPE

The Investigations Division, with the assistance of the Neighborhood Police Unit, is responsible for the investigation of reports involving gambling, prostitution, and narcotics. Vice must be constantly and aggressively suppressed.

### 609.2  INVESTIGATION

When a beat officer learns of a vice condition, two courses of action are available:

(a) If the vice condition involves simple misdemeanors, gambling, liquor violations, or soliciting for prostitution, and the offense is committed in the officer's presence, direct enforcement action shall be taken.

(b) If the vice condition involves a conspiracy, such as number gambling, narcotics, organized liquor violations, or organized prostitution, the officer should try to avoid taking direct action and should immediately report the condition to the Investigations Division.

(c) A copy of all police reports in which there is reference to a real or suspected vice or narcotic condition shall be routed to the Investigations Division by the approving supervisor.

In addition, the Investigations Division shall maintain liaison with other municipal, state, and federal agencies concerned with vice problems which might be of importance to this Department.

Pursuant to B & P Code Section 19829, all gambling investigations shall be reported to the California State Attorney General's office using DOJ form 19829. Investigations Division shall be responsible to complete the form.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000964

**Policy**
**610**

**Redding Police Department**
RPD Policy Manual

# Seizure of Alleged Stolen Property (Pawn Shops)

## 610.1 PURPOSE AND SCOPE

The purpose of this procedure is to establish guidelines when there is a seizure or release of alleged stolen property and includes procedures when dealing with pawn shops.

## 610.2 PROCEDURE

### 610.2.1 PAWNS

(a) A pawn shop liaison shall be designated by the Commander of the Investigations Division. Duties of the pawn shop liaison shall include communication with pawn shops, secondhand dealers, and gold buying businesses in regards to applicable state and local laws. The pawn shop liaison will also be responsible for enforcing violations of the Business and Professions Code and the Redding Municipal Code in regards to business violations. The Redding City Attorney's Office and the Shasta County District Attorney's Office shall be used as a source of clarification when necessary.

(b) All Pawn holds will be placed by, or with the knowledge of, the pawn shop liaison. If a patrol officer initiates a pawn hold, a copy of the supplemental crime report should be routed to the pawn shop liaison.

(c) Per 21647(c) BP, within two business days of placing the pawn hold, the officer or pawn liaison shall send the person who reported the property as lost, stolen, or embezzled a Notice to Reporting Party of Pawn Hold (Pawn Form 5) via U.S. Mail. A copy of the form (with the address of the person who reported the property as lost, stolen, or embezzled redacted) shall also be sent to the pawn shop where the property is being held.

(d) In most cases, the property shall remain in the custody of the pawn shop until final disposition (see Seizure of Property from Pawn Shop, below).

(e) When a pawned item is reasonably suspect of being stolen property, a Notice to Hold Suspected Stolen Property form (Pawn Form 1) shall be sent by FAX to the pawn shop, with a follow-up phone call to confirm receipt, or delivered in person. Alternately, the investigator or officer may use the online LEADS form to place the hold. If the suspected stolen property is recyclable goods held by a junk dealer or recycler, the process is the same, with the exception that a Notice to Hold Suspected Stolen Recyclable Property form (Pawn Form 2) shall be used.

(f) At the conclusion of the investigation, the pawn shop liaison shall utilize the Notice to Release Pawn Hold (Pawn Form 3) to notify the pawn shop that the hold has been lifted. This release has to take place within 90 days of when the hold was placed. If the property is recyclable material held by a recycler or junk dealer, the process is the same, except that a Notice to Release Recycle Hold (Pawn Shop form 4) should be issued to the dealer.

(g) Per 21647(c) BP, the 90 day period may be renewed as many times as necessary for purposes of ongoing investigation or pending court proceedings. Renewal of pawn holds shall be the responsibility of the pawn liaison.

COR (McLeod)  000965

# Redding Police Department

RPD Policy Manual

*Seizure of Alleged Stolen Property (Pawn Shops)*

---

## 610.2.2   SEIZURE OF STOLEN PROPERTY FROM PAWN SHOPS

(a)   Stolen property should be seized from the possession of a pawn shop in only the most extreme circumstances (i.e., homicide investigation, jury trial presentation).

(b)   The property may be seized when it is seen in plain view (such as on the service counter at the pawn shop) or under authority of a search warrant. Also, see Release of Stolen Property Seized Pursuant to Search Warrant below.

(c)   Per Finance Code Section 21206.7, the pawn shop shall be issued a receipt in the form of a Notice to Pawnbroker of Seizure (Pawn Form 6).

(d)   Per 21647(d) BP, the property must be returned to the pawn shop, not the party who reported the item stolen when the property no longer needs to be retained as evidence. The pawn shop retains a lien on the property, and they will deal directly with the reporting party thereafter.

## 610.2.3   OTHER STOLEN PROPERTY

(a)   When stolen property is seized from anyone other than a pawn shop, the stolen property shall be processed the same as any other item of evidence coming into the possession of the Department.

(b)   If the person from whom the suspected property is seized claims legitimate ownership, they shall be issued a receipt for the property. The on-duty supervisor shall be notified in order to determine if the Department will retain possession of the property.

## 610.2.4   OUTSIDE AGENCY PAWN HITS AND NOTIFICATIONS

(a)   The pawn shop liaison will review outside agency pawn hits that occur in our jurisdiction as they appear in the CAPSS online system. If the pawn hit appears to be actual stolen property, the pawn shop liaison shall notify the concerned agency.

(b)   When an outside agency pawn notification comes to the attention of Records personnel via the mail, the records technician shall forward the copy of the pawn slip to the pawn shop liaison or the Property Crimes Sergeant of Investigations.

## 610.2.5   RELEASE OF PROPERTY SEIZED PURSUANT TO A SEARCH WARRANT

(a)   Stolen property that has been previously seized under the authority of a search warrant cannot be released to the reporting party until a court order is issued by a judge. For this reason, officers are encouraged to include language in their search warrants that authorize the release of stolen property to the owner, or a pawn shop in the case of an item that has been seized from a pawn shop.

## 610.2.6   RELEASE OF STOLEN PROPERTY TO OWNER

(a)   Per 1413(b) PC, the Property/Evidence Technician is required to obtain satisfactory evidence of identification from a person to whom stolen property is to be released. In addition, a digital photograph shall be taken of the property prior to release by the investigating officer and/or their designee. After taking the photograph the digital film card shall be submitted to the Crime Scene Technician in an envelope with the case

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000966

# Redding Police Department

RPD Policy Manual

*Seizure of Alleged Stolen Property (Pawn Shops)*

number, name of photographer, and date printed on the envelope. The Crime Scene Technician will then download the photo into the Department's crime scene photo database.

## 610.3  ATTACHMENTS

See attachment: 610_Pawn Form 1.pdf - Notice to hold loan

See attachment: 610_Pawn Form 2.pdf - Notice to hold recycle

See attachment: 610_Pawn Form 3.pdf - Notice to release pawn

See attachment: 610_Pawn Form 4.pdf - Notice to release recycle

See attachment: 610_Pawn Form 5.pdf - Notice to RP of Pawn Hold

See attachment: 610_Pawn Form 6.pdf - Notice to Pawnbroker of Seizure

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Policy
**611**

**Redding Police Department**
RPD Policy Manual

# Dealer Record of Sales of Revolvers or Pistols

## 611.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for dealer firearm sales to prohibited classes of individuals living within the Redding city limits.

## 611.2  PROCEDURE
The California Department of Justice will notify this Department when any firearm has been sold to a Redding resident in any prohibited class which would preclude legal ownership of a weapon. This information shall be forwarded to the Investigations Division Lieutenant for review.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000968

# Access to Restricted Information

## 612.1 PURPOSE AND SCOPE

Redding Police Department employees shall only access restricted information for the purpose of conducting official investigations. When accessing information from the governmental agencies listed, employees shall follow the procedures indicated below.

## 612.2 PROCEDURE

### 612.2.1 UNITED STATES POSTAL SERVICE (USPS)

(a) The United States Postal Service can assist local law enforcement in criminal investigations by making available certain information from records kept on Postal Service customers.

(b) Information can only be provided by the USPS upon written certification of official need or in compliance with a subpoena. The following information which may be available includes:

1. The street address of a post office box;

2. Change of address information (forwarding) for both permanent and temporary changes of address; and/or

3. Address verification.

(c) Officers requesting information from the USPS will use the Address Information Request form. Officers will need to deliver the form to the Administrative Unit of the USPS at the main post office on Churn Creek Road during business hours to obtain the specific information requested.

### 612.2.2 REDDING ELECTRIC UTILITY CUSTOMER SERVICE

(a) Pursuant to Government Code Section 6254.16 of the California Public Records Act, utility customer information can be obtained upon court order or the request of a law enforcement agency engaged in an ongoing investigation.

(b) Redding Electric Utility customer information is available in one of three ways:

1. In writing from the Electric Utility Department.

   i. The attached form, "City of Redding Utilities Request for Release of Customer Information" has been provided by Customer Service for these written requests.

   ii. The information will be provided within eight hours.

2. Via the VERTEX computer system, access will be available only to employees who have received the appropriate training.

3. In emergency situations, where imminent danger is apparent and computer access is not available, a Redding Police Department supervisor may fax the

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000969

# Redding Police Department

RPD Policy Manual

---

*Access to Restricted Information*

request to Customer Service and contact a Customer Service supervisor to receive an immediate response.

## 612.2.3  CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT (EDD)

(a)  Pursuant to AB 2278, the Employment Development Department may disclose to law enforcement information on persons who have applied for or received Unemployment or Disability Insurance.This information includes: name, address, telephone number, date of birth, social security number, physical description and names and addresses of present and past employers of any victim, suspect, missing person, potential witness or person for whom a felony arrest warrant has been issued.

(b)  Requests for information must relate to an investigation of a crime where there is a reasonable suspicion that the crime is a felony and that the information would lead to relevant evidence in the case.

(c)  Information from the EDD will only be released to designated law enforcement agency representatives.The representatives for this Department are the Captain and Sergeant(s) of the Investigations Division.

(d)  Officers requesting information shall provide the Department representatives with the crime report number, the individual's name and social security number, if available.

(e)  The EDD Redding Branch office manager will assist officers with their request for information by coordinating efforts with the EDD Investigations Bureau.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000970

# Redding Police Department

RPD Policy Manual

# Chapter 7 - Equipment

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Department Owned and Personal Property

### 700.1  PURPOSE AND SCOPE

Department employees are expected to properly care for department property assigned or entrusted to them. Employees may also suffer occasional loss or damage to personal or department property while performing their assigned duty. Certain procedures are required depending on the loss and ownership of the item.

### 700.2  CARE OF DEPARTMENTAL PROPERTY

Employees shall be responsible for the safekeeping, serviceable condition, proper care, use and replacement of Department property assigned or entrusted to them. An employee's intentional or negligent abuse or misuse of department property may lead to discipline including, but not limited to the cost of repair or replacement.

    (a)    Employees shall promptly report through their chain of command, any loss, damage to, or unserviceable condition of any department-issued property or equipment assigned for their use.

    (b)    The use of damaged or unserviceable department property should be discontinued as soon as practical and replaced with comparable Department property as soon as available and following notice to a supervisor.

    (c)    Except when otherwise directed by a supervisor or required by exigent circumstances, department property shall only be used by those to whom it was assigned. Use should be limited to official purposes and in the capacity for which it was designed.

    (d)    Department property shall not be thrown away, sold, traded, donated, destroyed, or otherwise disposed of without supervisor approval.

    (e)    In the event that any Department property becomes damaged or unserviceable, no employee shall attempt to repair the property without prior approval of a supervisor and consistent with city policy.

### 700.3  FILING CLAIMS FOR PERSONAL PROPERTY

Claims for reimbursement for damage or loss of personal property are provided by the current Memorandum of Understanding.

The supervisor shall direct a memo to the appropriate Division Commander, which shall include the written results of his/her investigation and whether the employee followed proper procedures. The supervisor's report shall address whether reasonable care was taken to prevent the loss or damage.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000972

# Redding Police Department

RPD Policy Manual

---

*Department Owned and Personal Property*

---

### 700.3.1   REPORTING REQUIREMENT

(a)   A verbal report shall be made to the employee's immediate supervisor as soon as circumstances permit.

(b)   A written memorandum detailing the circumstances of the loss and the extent of damage shall be submitted via the chain of command to the Division Commander before the employee goes off duty or within the time frame directed by the supervisor to whom the verbal report is made. If a disability prevents an officer from preparing the memorandum, the shift supervisor or designee shall complete the memorandum.

(c)   Prior to reimbursement, the employee will submit either the original receipt or replacement receipt for the article damaged or destroyed.

(d)   A claim for damage reimbursement shall be made as expeditiously as possible.

(e)   If the damage is sustained as the result of an arrest, the Division Commander shall request that the District Attorney petition the court to direct restitution.

(f)   If the damage is caused by another person and no arrest is made, the City Attorney may seek reimbursement.

(g)   Reimbursement claims will be reviewed by the Division Commander. The Division Commander will authorize or deny the claim for reimbursement.

## 700.4   LOSS OR DAMAGE OF PROPERTY OF ANOTHER

Officers and other employees intentionally or unintentionally may cause damage to the real or personal property of another while performing their duties. Any employee who damages or causes to be damaged any real or personal property of another while performing any law enforcement functions, regardless of jurisdiction, shall report it as provided below.

(a)   A verbal report shall be made to the employee's immediate supervisor as soon as circumstances permit.

(b)   A written report shall be submitted before the employee goes off duty or within the time frame directed by the supervisor to whom the verbal report is made. The supervisor shall contact Risk Management and advise of the potential liability.

(c)   Employees should advise a potential claimant to contact Risk Management.

(d)   City employees shall not admit liability or commit the City of Redding for payment of any claim.

(e)   Department employees shall cooperate with Risk Management personnel to help ensure that claim investigations are completed in an expeditious manner.

(f)   Risk Management personnel may contact the Chief of Police or his designee to arrange for interviews with police employees. Every effort will be made to conduct interviews during the employee's on-duty time.

### 700.4.1   DAMAGE BY PERSON OF ANOTHER AGENCY

If employees of another jurisdiction cause damage to real or personal property belonging to the City, it shall be the responsibility of the employee present or the employee responsible for the

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000973

# Redding Police Department

RPD Policy Manual

*Department Owned and Personal Property*

property to make a verbal report to his/her immediate supervisor as soon as circumstances permit. The employee shall submit a written report before going off duty or as otherwise directed by the supervisor.

These written reports, accompanied by the supervisor's written report, shall promptly be forwarded to the appropriate Division Commander via the chain of command.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Personal Communication Devices

### 701.1  PURPOSE AND SCOPE

The purpose of this policy is to establish guidelines for the use of mobile telephones and communication devices, whether issued or funded by the Department or personally owned, while on-duty or when used for authorized work-related purposes.

This policy generically refers to all such devices as Personal Communication Devices (PCDs) but is intended to include all mobile telephones, wireless capable tablets and similar wireless two-way communications and/or portable Internet access devices. PCD use includes, but is not limited to, placing and receiving calls, text messaging, blogging and microblogging, emailing, using video or camera features, playing games and accessing sites or services on the Internet.

### 701.2  POLICY

The Redding Police Department allows members to utilize Department-issued or funded PCDs and to possess personally owned PCDs in the workplace, subject to certain limitations set forth in this policy.

The inappropriate use of a PCD while on-duty may impair officer safety. Additionally, members are advised and cautioned that the use of a personally owned PCD either on-duty or after duty hours for business-related purposes may subject the member and the member's PCD records to civil or criminal discovery or disclosure under applicable public records laws.

Members who have questions regarding the application of this policy or the guidelines contained herein are encouraged to seek clarification from supervisory personnel.

### 701.3  PRIVACY EXPECTATION

Members forfeit any expectation of privacy with regard to any communication accessed, transmitted, received or reviewed on any PCD issued or funded by the Department and shall have no expectation of privacy in their location should the device be equipped with location detection capabilities (see the Information Technology Use Policy for additional guidance).

701.3.1   CALIFORNIA ELECTRONIC COMMUNICATIONS PRIVACY ACT (CALECPA)
No member is authorized to be the sole possessor of a Department-issued PCD. Department-issued PCDs can be retrieved, reassigned, accessed or used by any member as directed by a supervisor without notice. Member use of a Department-issued PCD constitutes specific consent for access for department purposes. Prior to conducting an administrative search of a PCD, supervisors should consult legal counsel to ensure access is consistent with CalECPA (Penal Code § 1546; Penal Code § 1546.1).

### 701.4  DEPARTMENT-ISSUED PCD

Depending on a member's assignment and the needs of the position, the Department may, at its discretion, issue or fund a PCD. Department-issued or funded PCDs are provided as a convenience to facilitate on-duty performance only. If a member is issued a Department PCD

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000975

## Personal Communication Devices

they will be expected to carry it while on-duty. Officers should only use the PCD for work related matters, such as receiving calls, text messaging, emailing, video recording, audio recording, camera features, and accessing the internet for work related social media or other work related matters. When the officer is off-duty, the PCD should not be left in their Department vehicle. The PCD shall be stored in a secure location and out of extreme heat conditions, such as their Department locker.

Such devices and the associated telephone number shall remain the sole property of the Department and shall be subject to inspection or monitoring (including all related records and content) at any time without notice and without cause.

### 701.5   PERSONALLY OWNED PCD
Members may carry a personally owned PCD while on-duty, subject to the following conditions and limitations:

    (a)    Permission to carry a personally owned PCD may be revoked if it is used contrary to provisions of this policy.

    (b)    The Department accepts no responsibility for loss of or damage to a personally owned PCD.

    (c)    The PCD and any associated services shall be purchased, used and maintained solely at the member's expense.

    (d)    The device should not be utilized to record or disclose any business-related information, including photographs, video or the recording or transmittal of any information or material obtained or made accessible as a result of employment with the Department.

Members are not obligated or required to carry, access, monitor or respond to electronic communications using a personally owned PCD while off-duty. If a member is in an authorized status that allows for appropriate compensation consistent with policy or existing memorandum of understanding/collective bargaining agreements, or if the member has prior express authorization from his/her supervisor, the member may engage in business-related communications. Members entitled to compensation shall promptly document the time worked as outlined in Policy 919 - Overtime Compensation Requests..

### 701.6   USE OF PCD
The following protocols shall apply to all Department issued PCDs that are carried while on-duty or used to conduct Department business:

    (a)    Members may use a PCD to communicate with other personnel in situations where the use of radio communications is either impracticable or not feasible.

    (b)    Members are prohibited from taking pictures, audio or video recordings or making copies of any such picture or recording media unless it is directly related to official Department business. Disclosure of any such information to any third party through

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000976

# Redding Police Department

RPD Policy Manual

## *Personal Communication Devices*

any means, without the express authorization of the Chief of Police or the authorized designee, may result in discipline.

(c)   Members will not access social networking sites for any purpose that is not official Department business.

(d)   Using PCDs to harass, threaten, coerce or otherwise engage in inappropriate conduct with any third party is prohibited. Any member having knowledge of such conduct shall promptly notify a supervisor.

## 701.7   SUPERVISOR RESPONSIBILITIES

The responsibilities of supervisors include, but are not limited to:

(a)   Ensuring that members under their command are provided appropriate training on the use of PCDs consistent with this policy.

(b)   Monitoring, to the extent practicable, PCD use in the workplace and taking prompt corrective action if a member is observed or reported to be improperly using a PCD.

   1.   An investigation into improper conduct should be promptly initiated when circumstances warrant.

   2.   Before conducting any administrative search of a member's personally owned device, supervisors should consult with the Chief of Police or the authorized designee.

## 701.8   OFFICIAL USE

Members are reminded that PCDs are not secure devices and conversations may be intercepted or overheard. Caution should be exercised while utilizing PCDs to ensure that sensitive information is not inadvertently transmitted. As soon as reasonably possible, members shall conduct sensitive or private communications on a land-based or other Department communications network. No Criminal Justice Information (CJI) shall be transmitted on a PCD.

## 701.9   USE WHILE DRIVING

The use of a PCD while driving can adversely affect safety, cause unnecessary distractions and present a negative image to the public. Officers operating emergency vehicles should restrict the use of these devices to matters of an urgent nature and should, where practicable, stop the vehicle at an appropriate location to use the PCD.

Members who are operating Department vehicles that are not authorized emergency vehicles shall not use a PCD while driving unless the device is specifically designed and configured to allow hands-free use. In an emergency, a wireless phone may be used to place an emergency call to the Department or other emergency services agency (Vehicle Code § 23123; Vehicle Code § 23123.5).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000977

**Policy**

**702**

**Redding Police Department**

RPD Policy Manual

# Vehicle Maintenance

## 702.1   PURPOSE AND SCOPE

Employees are responsible for assisting in maintaining Department vehicles so that they are properly equipped, properly maintained, properly refueled and present a clean appearance.

## 702.2   DEFECTIVE VEHICLES

When a Department vehicle becomes inoperative or in need of repair that affects the safety of the vehicle, that vehicle shall be removed from service for repair. Proper documentation shall be promptly completed by the employee who first becomes aware of the defective condition, describing the correction needed. The paperwork shall be promptly forwarded to vehicle maintenance officer for repair. The vehicle's hood latch shall be released visually indicating the vehicle's condition and written notice shall be left in the vehicle's interior stating the defective condition.

Employees shall not change flat tires or attempt any roadside repairs to vehicles. If a City vehicle is inoperable a "City Tow" should be dispatched to the officer's location and the vehicle towed to the City Corporation Yard for repair. The employee's supervisor shall be notified as soon as possible.

### 702.2.1   DAMAGE OR POOR PERFORMANCE

Vehicles that may have been damaged, or perform poorly shall be removed from service for inspections and repairs as soon as practicable.

### 702.2.2   SEVERE USE

Vehicles operated under severe-use conditions, which include operations for which the vehicle is not designed or that exceed the manufacturer's parameters, should be removed from service and subjected to a safety inspection as soon as practicable. Such conditions may include rough roadway or off-road driving, hard or extended braking, pursuits or prolonged high-speed operation.

### 702.2.3   REMOVAL OF WEAPONS

All firearms, weapons, and control devices shall be removed from a vehicle and properly secured in the department armory prior to the vehicle being released for maintenance, service or repair.

## 702.3   VEHICLE EQUIPMENT

Certain items shall be maintained in all Department vehicles for emergency purposes and to perform routine duties.

### 702.3.1   PATROL VEHICLES

Officers shall inspect the patrol vehicle at the beginning of the shift and ensure that the following equipment, at a minimum, is present in the vehicle:

- Ballistic panels

- 10 Emergency road flares

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000978

# Redding Police Department
RPD Policy Manual

*Vehicle Maintenance*

- 1 Spray can of paint or 1 stick of chalk
- 1 Roll Crime Scene Barricade Tape
- 1 First aid kit, CPR mask
- 1 Blood-borne pathogen kit, Incl. protective gloves
- 1 Sharps container
- 1 Hazardous waste disposal bag
- 1 Traffic Safety Vest
- 1 Hazardous Materials Emergency Response Handbook
- 1 Evidence collection kit
- 1 Complete patrol beat box

702.3.2   UNMARKED VEHICLES
An employee driving unmarked department vehicles shall ensure that the minimum following equipment is present in the vehicle:

- 10 Emergency road flares
- 1 Roll Crime Scene Barricade Tape
- 1 First aid kit, CPR mask
- 1 Blood-borne pathogen kit, Incl. protective gloves

**702.4   VEHICLE REFUELING**
Absent emergency conditions or supervisor approval, officers driving patrol vehicles shall not leave a vehicle in service that has less than one-half tank of fuel. Vehicles shall only be refueled at authorized locations.

**702.5   WASHING OF VEHICLES**
All units shall be kept clean at all times and weather conditions permitting, shall be washed as necessary to enhance their appearance. Employees are allowed to wash their assigned vehicle once per week at the car wash facility contracted with the Department.  A supervisor may approve an additional car wash in extreme circumstance.

Employees shall remove any trash or debris at the end of their shift.

**702.6   NON-SWORN EMPLOYEE USE**
Non-sworn employees using marked vehicles shall ensure all weapons are removed from vehicles before going into service. Non-sworn employees shall also prominently display the "out of service" placards or lightbar covers at all times. Non-sworn employees shall not operate the emergency lights when the vehicle is moving, or siren at any time unless authorized by a supervisor.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod)  000979

**Redding Police Department**

RPD Policy Manual

# Vehicle Use

### 703.1  PURPOSE AND SCOPE
The purpose of this policy is to establish a system of accountability to ensure Department vehicles are used appropriately. This policy provides guidelines for on- and off-duty use of Department vehicles and shall not be construed to create or imply any contractual obligation by the City of Redding to provide assigned take-home vehicles.

### 703.2  POLICY
The Redding Police Department provides vehicles for Department-related business and may assign patrol and unmarked vehicles based on a determination of operational efficiency, economic impact to the Department, requirements for tactical deployments and other considerations.

### 703.3  USE OF VEHICLES

#### 703.3.1  SHIFT ASSIGNED VEHICLES
The Fleet Program Manager (Lieutenant) or their designee shall assign radio cars for each rotation based on Department needs and seniority. The FPM or designee will ensure a copy of the vehicle assignments is completed and posted on the vehicle check out board for each shift. If a member exchanges vehicles during his/her shift, the new vehicle number shall be documented on the vehicle check out board.

#### 703.3.2  OTHER USE OF VEHICLES
Members utilizing a vehicle for any purpose other than their normally assigned duties or normal vehicle assignment (e.g., transportation to training, community event) shall first notify the shift supervisor. A notation will be made on the vehicle  assignment roster indicating the member's name and vehicle number.

This subsection does not apply to those who are assigned to vehicle transportation for maintenance or assigned a permanent vehicle (K-9).

#### 703.3.3  INSPECTIONS
Members shall be responsible for inspecting the interior and exterior of any assigned vehicle before taking the vehicle into service and at the conclusion of their shifts. Any previously unreported damage, mechanical problems, unauthorized contents or other problems with the vehicle shall be promptly reported to a supervisor and documented as appropriate.

The interior of any vehicle that has been used to transport any person other than a member of this Department should be inspected prior to placing another person in the vehicle and again after the person is removed. This is to ensure that unauthorized or personal items have not been left in the vehicle.

When transporting any suspect, prisoner or arrestee, the transporting member shall search all areas of the vehicle that are accessible by the person before and after that person is transported.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000980

# Redding Police Department

RPD Policy Manual

---

*Vehicle Use*

---

All Department vehicles are subject to inspection and/or search at any time by a supervisor without notice and without cause. No member assigned to or operating such vehicle shall be entitled to any expectation of privacy with respect to the vehicle or its contents.

### 703.3.4  SECURITY AND UNATTENDED VEHICLES

Unattended vehicles should be locked and secured at all times. No key should be left in the vehicle except when it is necessary that the vehicle be left running (e.g., continued activation of emergency lights, canine safety, equipment charging). The vehicle shall be locked and secured if left running.Officers who exit a vehicle rapidly in an emergency situation or to engage in a foot pursuit must carefully balance the need to exit the vehicle quickly with the need to secure the vehicle.

Members shall ensure all weapons are secured while the vehicle is unattended.

### 703.3.5  MDC

Members assigned to vehicles equipped with a Mobile Digital Computer (MDC) shall log onto the MDC with the required information when going on-duty. If the vehicle is not equipped with a working MDC, the member shall notify SHASCOM. Use of the MDC is governed by the Mobile Digital Computer Use Policy.

### 703.3.6  AUTOMATED VEHICLE LOCATOR (AVL) SYSTEM

Patrol and other vehicles, at the discretion of the Chief of Police, may be equipped with a system designed to track the vehicles location. The primary purpose of the Automated Vehicle Locator (AVL) system is to deploy resources, increase officer safety and accountability, and assist SHASCOM in dispatching the closest available unit for high priority (0-2) calls. It is not intended to be used as a random disciplinary administrative tool.

The GPS data obtained from the Mobile Data AVL System will display a patrol vehicle's location within Spillman CAD and Spillman Mobile. This location data is available to all staff logged into Spillman Mobile or Spillman CAD.

The GPS data shall not be used as the sole basis for any administrative investigation.

The GPS data may be used to support or refute evidence in an administrative investigation, including citizen complaints and traffic collisions.

The GPS data may be used for criminal or administrative investigations involving criminal misconduct.

Patrol Supervisors should use AVL for deploying resources, monitoring pursuits, and locating personnel who are not able to communicate via radio.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000981

# Redding Police Department

RPD Policy Manual

## Vehicle Use

Members shall not make any unauthorized modifications to the system. At the start of each shift, members shall verify that the system is on and report any malfunctions to their supervisor. If the member finds that the system is not functioning properly at any time during the shift, he/she should exchange the vehicle for one with a working system, if available.

System data may be accessed by supervisors at any time. Historical data by other than supervisors will require Division Commander approval.

All data captured by the system shall be retained in for 90 days.

### 703.3.7   KEYS
Members approved to operate marked patrol vehicles should be issued a copy of the key as part of their initial equipment distribution. Members who are assigned a specific vehicle should be issued keys for that vehicle.

Members shall not duplicate keys. The loss of a key shall be promptly reported through the member's chain of command.

### 703.3.8   AUTHORIZED PASSENGERS
Members operating Department vehicles shall not permit persons other than City personnel or persons required to be conveyed in the performance of duty, or as otherwise authorized, to ride as passengers in the vehicle, except as stated in the Ride-Along Policy.

### 703.3.9   ALCOHOL
Members who have consumed alcohol are prohibited from operating any Department vehicle unless it is required by the duty assignment (e.g., task force, undercover work). Regardless of assignment, members may not violate state law regarding vehicle operation while intoxicated.

### 703.3.10   PARKING
Except when responding to an emergency or when urgent Department-related business requires otherwise, members driving Department vehicles should obey all parking regulations at all times.

Department vehicles should be parked in assigned stalls. Members shall not park privately owned vehicles in stalls assigned to Department vehicles or in other areas of the parking lot that are not so designated unless authorized by a supervisor. Privately owned motorcycles shall be parked in designated areas.

### 703.3.11   ACCESSORIES AND/OR MODIFICATIONS
There shall be no modifications, additions or removal of any equipment or accessories without written permission from the assigned vehicle program manager.

### 703.3.12   NON-SWORN MEMBER USE
Non-sworn members using marked emergency vehicles shall ensure that all weapons have been removed before going into service. Non-sworn members shall prominently display the "out of service" placards or light bar covers at all times. Non-sworn members shall not operate the

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000982

# Redding Police Department

RPD Policy Manual

*Vehicle Use*

emergency lights when the vehicle is moving,or siren at any time unless expressly authorized by a supervisor.

## 703.4  INDIVIDUAL MEMBER ASSIGNMENT TO VEHICLES

Department vehicles may be assigned to individual members at the discretion of the Chief of Police. Vehicles may be assigned for on-duty and/or take-home use. Assigned vehicles may be changed at any time. Permission to take home a vehicle may be withdrawn at any time.

The assignment of vehicles may be suspended when the member is unable to perform his/her regular assignment.

### 703.4.1  ON-DUTY USE

Vehicle assignments shall be based on the nature of the member's duties, job description and essential functions, and employment or appointment status. Vehicles may be reassigned or utilized by other Department members at the discretion of the Chief of Police or the authorized designee.

### 703.4.2  UNSCHEDULED TAKE-HOME USE

Circumstances may arise where Department vehicles must be used by members to commute to and from a work assignment. Members may take home Department vehicles only with prior approval of a supervisor and shall meet the following criteria:

    (a)    The circumstances are unplanned and were created by the needs of the Department.

    (b)    Other reasonable transportation options are not available.

    (c)    The member lives within a reasonable distance of the Redding City limits.

    (d)    Off-street parking will be available at the member's residence.

    (e)    Vehicles will be locked when not attended.

    (f)    All firearms, weapons and control devices will be removed from the interior of the vehicle and properly secured in the residence when the vehicle is not attended.

### 703.4.3  ASSIGNED VEHICLES

Assignment of take-home vehicles shall be based on the location of the member's residence, the nature of the member's duties, job description and essential functions, and employment or appointment status. Residence in the City of Redding is a prime consideration for assignment of a take-home vehicle. Members who reside outside the City of Redding may be required to secure the vehicle at a designated location or the Department at the discretion of the Chief of Police. Individuals assigned vehicles shall comply with City Policy CM95-2, Personal Use of City Vehicles, see attached.

Department members shall sign a take-home vehicle agreement that outlines certain standards, including, but not limited to, how the vehicle shall be used, where it shall be parked when the member is not on-duty, vehicle maintenance responsibilities and member enforcement actions. The vehicle, as well as the assigned employees, shall be recorded on the "Individuals

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000983

# Redding Police Department

RPD Policy Manual

---

*Vehicle Use*

---

Assigned City Vehicles" roster. The roster shall be updated as necessary and maintained by the Administrative Unit. A copy of the vehicle roster will be made available to the City Finance Officer.

Criteria for use of take-home vehicles include the following:

(a)　It shall be the policy of the City of Redding that city-owned vehicles shall not be used for personal non-city business purposes except under those limited situations set out in the following:

　　(a)　City vehicles may be used for travel to and from the employees residence and a designated work area authorized by the Chief of Police.

　　(b)　Any City of Redding employee assigned and authorized to take-home a city vehicle is prohibited from using the city-owned vehicle for personal use, except for commuting when authorized to do so by the City or by a supervisor for bona fide non-compensatory reasons in the conduct of city business and for de minimis personal use, such as stops for meals taken in the course of employment or on the way to and from home that does not materially increase the number of miles a vehicle is driven.

　　(c)　For further see CM95-2.

(b)　Vehicles will not be used when off-duty except:

　　1.　In circumstances when a member has been placed on call by the Chief of Police or designee and there is a high probability, the member will be called back to duty.

　　2.　When the member is performing a work-related function during what normally would be an off-duty period, including vehicle maintenance or traveling to or from a work-related activity or function.

　　3.　When the member has received permission from the Chief of Police or designee.

　　4.　When the vehicle is being used by the Chief of Police, Division Commander or employees working on-call administrative positions.

　　5.　When the vehicle is being used by on-call investigators.

(c)　While operating the vehicle, authorized members will carry and have accessible their duty firearms and be prepared to perform any function they would be expected to perform while on-duty.

(d)　The two-way communications radio, MDC and global positioning satellite device, if equipped, must be on and set to an audible volume when the vehicle is in operation.

(e)　Unattended vehicles are to be locked and secured at all times.

　　(a)　No key should be left in the vehicle except when it is necessary that the vehicle is left running (e.g., continued activation of emergency lights, canine safety, equipment charging).

　　(b)　All weapons shall be secured while the vehicle is unattended.

　　(c)　All department identification, portable radios and equipment should be secured.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000984

# Redding Police Department
RPD Policy Manual

---

*Vehicle Use*

---

(f)   Vehicles are to be parked off-street at the member's residence unless prior arrangements have been made with the Chief of Police or the authorized designee. All firearms and kinetic impact weapons shall be removed and properly secured in the residence (see the Firearms Policy regarding safe storage of firearms at home).

(g)   Vehicles are to be secured at the member's residence or the appropriate department facility, at the discretion of the Department when a member will be away (e.g., on vacation) for periods exceeding one week.

    1.   If the vehicle remains at the residence of the member, the Department shall have access to the vehicle.

    2.   If the member is unable to provide access to the vehicle, it shall be parked at the Department.

(h)   The member is responsible for the care and maintenance of the vehicle.

## 703.4.4   ENFORCEMENT ACTIONS
When driving a take-home vehicle to and from work outside of the jurisdiction of the Redding Police Department or while off-duty, an officer shall not initiate enforcement actions except in those circumstances where a potential threat to life or serious property damage exists (see the Off-Duty Law Enforcement Actions and Law Enforcement Authority policies).

Officers may render public assistance when it is deemed prudent (e.g., to a stranded motorist).

Officers driving take-home vehicles shall be armed, appropriately attired and carry their department-issued identification. Officers should also ensure that department radio communication capabilities are maintained to the extent feasible.

## 703.4.5   MAINTENANCE
Members are responsible for the cleanliness (exterior and interior) and overall maintenance of their assigned vehicles. Cleaning and maintenance supplies will be provided by the Department. Failure to adhere to these requirements may result in discipline and loss of vehicle assignment. The following should be performed as outlined below:

(a)   Members shall make daily inspections of their assigned vehicles for service/ maintenance requirements and damage.

(b)   It is the member's responsibility to ensure that his/her assigned vehicle is maintained according to the established service and maintenance schedule.

(c)   All scheduled vehicle maintenance and car washes shall be performed as necessary at a facility approved by the department supervisor in charge of vehicle maintenance.

(d)   The Department shall be notified of problems with the vehicle and approve any major repairs before they are performed.

(e)   When leaving the vehicle at the maintenance facility, the member will complete a vehicle repair card explaining the service or repair, and leave it on the seat or dash.

(f)   All weapons shall be removed from any vehicle left for maintenance.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000985

# Redding Police Department
RPD Policy Manual

*Vehicle Use*

(g)   Supervisors shall make, at a minimum, monthly inspections of vehicles assigned to members under their command to ensure the vehicles are being maintained in accordance with this policy.

## 703.5   DAMAGE, ABUSE AND MISUSE

When any Department vehicle is involved in a traffic collision or otherwise incurs damage, the involved member shall promptly notify a supervisor. Any traffic collision report shall be filed with the agency having jurisdiction (see the Traffic Collision Reporting Policy).

Damage to any Department vehicle that was not caused by a traffic collision shall be immediately reported to the on-duty supervisor.  The supervisor will make the determination if the damage is deemed operational damage.  Operational damage will be documented by the supervisor and employee through a City of Redding Incident Report.  Photographs of the damage should be obtained by the Supervisor and the Watch Commander shall be notified by the supervisor.

## 703.6   ATTIRE AND APPEARANCE

When operating any Department vehicle while off-duty, members may dress in a manner appropriate for their intended activity. Whenever in view of or in contact with the public, attire and appearance, should be suitable to reflect positively upon the Department.

This subsection does not apply to undercover operations that have been approved by a supervisor.

## 703.7   TOLL ROAD USAGE

Law enforcement vehicles are not routinely exempted from incurring toll road charges.

To avoid unnecessary toll road charges, all members operating department vehicles on a toll road shall adhere to the following:

(a)   Members operating department vehicles for any reason other than in response to an emergency shall pay the appropriate toll charge or utilize the appropriate toll way transponder. Members may submit a request for reimbursement from the City for any toll fees incurred in the course of official business.

(b)   Members passing through a toll plaza or booth during a response to an emergency shall notify, in writing, the appropriate Division Commander within five working days explaining the circumstances.

## 703.8   USE OF RENTAL VEHICLES

Employees assigned to attend training, school, conduct investigations or other duties, may be authorized to rent a vehicle for Department use under the following guidelines:

(a)   When traveling to a school or an assignment out of the area.

(b)   Surveillance operations.

(c)   Any other activities authorized by the Division Commander.

The authorization for a rental car shall be from a Division Commander.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000986

## Redding Police Department
RPD Policy Manual

---

*Vehicle Use*

---

Insurance offered by the Rental Vehicle company shall not be authorized as the City is self-insured.

Fuel for the rental vehicle should be done by a city fuel card obtained by the employee prior to the use of the rental vehicle.

### 703.9   VEHICLES BELONGING TO PRIVATE PERSONS OR CORPORATIONS
Employees of the Police Department are not authorized to drive private vehicles for City business unless prior approval has been received from their supervisor.

The City of Redding is self-insured for general liability which protects employees whenever they drive vehicles in the course of police duties. The City does not ensure or reimburse for property damage to non-City vehicles unless paid pursuant to a general liability claim.

Extreme care shall be exercised while operating a private vehicle on City business. If the vehicle is involved in a traffic collision or incident, an appropriate police report shall be made and damages photographed. The employee's supervisor shall be notified immediately.

### 703.10   ATTACHMENT
See attachment: 703.4_City Managers Vehicle Policy.pdf

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000987

# Cash Handling, Security and Management

### 704.1  PURPOSE AND SCOPE
This policy provides guidelines to ensure department members handle cash appropriately in the performance of their duties.

This policy does not address cash-handling issues specific to the Property and Evidence and Informant policies.

### 704.2  POLICY
It is the policy of the Redding Police Department to properly handle and document cash transactions and to maintain accurate records of cash transactions in order to protect the integrity of department operations and ensure the public trust.

The City of Redding Treasurer is responsible for the oversight of proper receipting, disbursement, and preservation of City funds.  Collection of fees for authorized transactions handled routinely by the Records Division of Redding Police Department shall be in accordance with the City of Redding Treasurer's guidelines and applicable standard procedures.

### 704.3  ROUTINE CASH HANDLING
Those who handle cash as part of their property or SINTF supervisor duties shall discharge those duties in accordance with the Property and Evidence and Informants policies.

Members who routinely accept payment for department services shall discharge those duties in accordance with the procedures established for those tasks.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Policy

**705**

**Redding Police Department**
RPD Policy Manual

# Personal Protective Equipment

**705.1  PURPOSE AND SCOPE**
This policy identifies the different types of personal protective equipment (PPE) provided by the Department as well the requirements and guidelines for the use of PPE.

This policy does not address ballistic vests or protection from communicable disease, as those issues are addressed in the Body Armor and Communicable Diseases policies.

705.1.1  DEFINITIONS
Definitions related to this policy include:

**Personal protective equipment (PPE)** - Equipment that protects a person from serious workplace injuries or illnesses resulting from contact with chemical, radiological, physical, electrical, mechanical or other workplace hazards.

**705.2  POLICY**
The Redding Police Department endeavors to protect members by supplying certain PPE to members as provided in this policy.

**705.3  OFFICER RESPONSIBILITIES**
Members are required to use PPE as provided in this policy and pursuant to their training.

Members are responsible for proper maintenance and storage of issued PPE. PPE should be stored in an appropriate location so that it is available when needed.

Any member who identifies hazards in the workplace is encouraged to utilize the procedures in the Illness and Injury Prevention Policy to recommend new or improved PPE or additional needs for PPE.

**705.4  HEARING PROTECTION**
Approved hearing protection shall be used by members during firearms training.

Hearing protection shall meet or exceed the requirements provided in 8 CCR 5098.

**705.5  EYE PROTECTION**
Approved eye protection, including side protection, shall be used by members during firearms training. Eye protection for members who wear prescription lenses shall incorporate the prescription (e.g., eye protection that can be worn over prescription lenses). Members shall ensure their eye protection does not interfere with the fit of their hearing protection.

The Rangemaster shall ensure eye protection meets or exceeds the requirements provided in 8 CCR 3382.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000989

# Redding Police Department

RPD Policy Manual

## *Personal Protective Equipment*

### 705.6  HEAD PROTECTION

Members who make arrests or control crowds should be provided ballistic head protection.

### 705.7  RESPIRATORY PROTECTION GAS MASK

Full-face air-purifying respirators, commonly referred to as gas masks, may be fitted with mechanical pre-filters or combination cartridge/filter assemblies for use in areas where gases, vapors, dusts, fumes or mists are present. Members must identify and use the correct cartridge based on the circumstances (8 CCR 5144).

A scene commander may order the use of gas masks. These incidents may include areas where tear gas has or will be used or where a vegetation fire is burning. Gas masks shall not be used if there is a potential for an oxygen-deficient atmosphere.

Members shall ensure their gas mask filters are replaced whenever:

    (a)    They smell taste or are irritated by a contaminant.

    (b)    They experience difficulty breathing due to filter loading.

    (c)    The cartridges or filters become wet.

    (d)    The expiration date on the cartridges or canisters has been reached.

### 705.8  RECORDS

The Training Sergeant is responsible for maintaining records of all:

    (a)    PPE training.

    (b)    Initial fit testing for respiratory protection equipment.

    (c)    Annual fit testing.

    (d)    Respirator medical evaluation questionnaires and any subsequent physical examination results.

        1.    These records shall be maintained in a separate confidential medical file.

The records shall be maintained in accordance with the department records retention schedule and 8 CCR 5144.

### 705.9  TRAINING

Members should be trained in the respiratory and other hazards to which they may be potentially exposed during routine and emergency situations.

All members shall be trained in the proper use and maintenance of PPE issued to them, including when the use is appropriate; how to put on, remove and adjust PPE; how to care for the PPE; and the limitations (8 CCR 3380).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000990

Redding Police Department

RPD Policy Manual

# Chapter 8 - Support Services

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000991

**Redding Police Department**

RPD Policy Manual

# Crime Analysis

## 800.1  PURPOSE AND SCOPE

Crime analysis should provide currently useful information to aid operational personnel in meeting their tactical crime control and prevention objectives by identifying and analyzing methods of operation of individual criminals, providing crime pattern recognition, and providing analysis of data from field interrogations and arrests. Crime analysis can be useful to the Department's long range planning efforts by providing estimates of future crime trends and assisting in the identification of enforcement priorities.

## 800.1  DATA SOURCES

Crime analysis data is extracted from many sources including, but not limited to:

- Crime reports

- Field Interview cards

- Parole and Probation records

- Computer Aided Dispatch data

- Statewide Integrated Traffic Reporting System (SWITRS)

## 800.1  CRIME ANALYSIS FACTORS

The following minimum criteria should be used in collecting data for Crime Analysis:

- Frequency by type of crime

- Geographic factors

- Temporal factors

- Victim and target descriptors

- Suspect descriptors

- Suspect vehicle descriptors

- Modus operandi factors

- Physical evidence information

## 800.1  CRIME ANALYSIS DISSEMINATION

For a crime analysis system to function effectively, information should be disseminated to the appropriate units or persons on a timely basis. Information that is relevant to the operational and tactical plans of specific line units should be sent directly to them. Information relevant to the development of the Department's strategic plans should be provided to the appropriate staff units. When information pertains to tactical and strategic plans, it should be provided to all affected units.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000992

# Shascom Dispatch Services

## 801.1  PURPOSE AND SCOPE

This policy establishes guidelines for the basic functions of Shascom. It addresses the immediate information needs of the Department in the course of its normal daily activities and during emergencies.

## 801.2  POLICY

It is the policy of the Redding Police Department to contract with Shascom for all dispatch services. Shascom follows their policy and procedures in regard to all dispatch services under contract. For further see the attached Joint Powers Agreement.

## 801.3  CALL HANDLING

This Department provides members of the public with access to the 9-1-1 system for a single emergency telephone number.

## 801.4  RADIO COMMUNICATIONS

The police radio system is for official use only, to be used by dispatchers to communicate with department members in the field. All transmissions shall be professional and made in a calm, businesslike manner, using proper language and correct procedures. Such transmissions shall include, but are not limited to:

    (a)    Members acknowledging the dispatcher with their radio identification call signs and current location.

    (b)    Dispatchers acknowledging and responding promptly to all radio transmissions.

    (c)    Members keeping the dispatcher advised of their status and location.

    (d)    Member and dispatcher acknowledgments shall be concise and without further comment unless additional information is needed.

### 801.4.1  FEDERAL COMMUNICATIONS COMMISSION COMPLIANCE

Redding Police Department radio operations shall be conducted in accordance with Federal Communications Commission (FCC) procedures and requirements.

### 801.4.2  GUIDELINES FOR FAILURE OF COMMUNICATION SYSTEMS

If the police radio system fails, including the backup radio system, officers assigned to the east beats shall immediately call the supervisor for instructions. If unable to contact the supervisor, the officer shall respond to Fire Station 5 and continue to attempt to contact the supervisor. Officers assigned to the west beats shall respond to the police station. All community service officers and police cadets shall respond to the police station. Investigators should call their division and/or report the office.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department
RPD Policy Manual

## *Shascom Dispatch Services*

In the event both the police radio and the telephone system fail, personnel shall respond to the police station for further instruction.

The Field Operations shift supervisor must make radio repair notifications. The Services shift supervisor must ensure telephone repair notifications are requested.

In the event the police station becomes incapacitated due to an emergency situation (fire, explosion, HazMat spill, terrorist attack, etc.), all field personnel shall respond to the Emergency Operations Center at the Corporation Yard. Personnel working at the police station should follow the Emergency Action and Fire Protection Plan.

This policy is exempt from disclosure under the Public Records Act as "Records of intelligence information or security procedures," 6254(f) G.C. **Do not discuss or divulge** any aspect of this policy with non-law enforcement personnel.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000994

# Property and Evidence

## 802.1  PURPOSE AND SCOPE

This  policy provides for the proper collection, storage, and security of evidence and other property. Additionally, this policy provides for the protection of the chain of evidence and those persons authorized to remove and/or destroy property.

## 802.2  DEFINITIONS

**Property** - Includes all items of evidence, items taken for safekeeping and found property.

**Evidence** - Includes items taken or recovered in the course of an investigation that may be used in the prosecution of a case. This includes photographs and latent fingerprints.

**Safekeeping** - Includes the following types of property:

- Property obtained by the Department for safekeeping such as a firearm

- Personal property of an arrestee not taken as evidence

- Property taken for safekeeping under authority of a law (e.g., Welfare and Institutions Code § 5150 (mentally ill persons))

**Found property** - Includes property found by an employee or citizen that has no apparent evidentiary value and where the owner cannot be readily identified or contacted.

**Recovered Property** - Includes property which has been reported stolen and has been recovered.

## 802.3  PROPERTY HANDLING

Any employee who comes into possession of any property shall ensure such property is properly tagged and placed in the designated property locker or storage room along with the property record. Care shall be taken to maintain the chain of custody for all evidence.

Where ownership can be established as to found property with no apparent evidentiary value, such property may be released to the owner without the need for booking. The property record must be completed to document the release of property not booked and the owner shall sign the form acknowledging receipt of the items.

An offense report shall be completed for all property booked with the exception of H&S 11357 (b) and CVC 23222(b).

Possession of personal property from a person for temporary safekeeping, the officer shall do the following per 2080.10 Civil Code:

- Take responsibility for the storage, documentation, and disposition of the property.

- Provide the person with whom the property was taken with a receipt and instructions for the retrieval of the property by personal delivery or mailed.

- If the person whom the property was taken is not the owner, make reasonable effort to identify the owner.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000995

# Redding Police Department

RPD Policy Manual

---

*Property and Evidence*

---

- Notify the person whom the property was taken that it must be claimed within 60 days or the property will be disposed by the Department.

## 802.3.1  PROPERTY BOOKING PROCEDURE

All property must be booked prior to the employee going off-duty unless otherwise approved by a supervisor. Employees booking property shall observe the following guidelines:

(a) Complete the property record describing each item of property separately, listing all serial numbers, owner's name, finder's name, and other identifying information or markings.

(b) Mark each item of evidence with the booking employee's initials and the date booked using the appropriate method so as not to deface or damage the value of the property.

(c) Print the evidence/property record and attach it to each package or envelope in which the property is stored.

(d) Place the case number on the bag or container.

(e) The printed property record shall be placed/affixed to the property.

(f) When the property is too large to be placed in a locker, the item shall be retained in the overnight storage room with the property record attached.

## 802.3.2  NARCOTICS AND DANGEROUS DRUGS

All  narcotics and dangerous drugs shall be booked separately using a separate property record.

Paraphernalia as defined by Health and Safety Code § 11364 shall be booked separately.  Paraphernalia used to inject or smoke controlled substances may be held as evidence due to other criminal violations for prosecution. It is not necessary to hold these instruments as evidence for 11364 H&S cases. In these cases, officers shall document the syringe, hypodermic needle, or glass smoking pipe with a digital photograph. The digital film card shall be placed into property/ evidence. The instrument may then be placed in the by the officer. For further see Instruction 09-04.

The officer seizing the narcotics and dangerous drugs of evidentiary value shall place them in a DOJ envelope with the property record attached. Narcotics and other dangerous drugs not booked for evidentiary value should be placed in an appropriately sized envelope or storage container.

## 802.3.3  EXPLOSIVES

Officers who encounter a suspected explosive device shall promptly notify their immediate supervisor or the Watch Commander. The bomb squad will be called to handle explosive-related incidents and will be responsible for the handling, storage, sampling and disposal of all suspected explosives.

Explosives will not be retained in the police facility. Only fireworks that are considered stable and safe and road flares or similar signaling devices may be booked into property. All such items shall be stored in proper containers and in an area designated for the storage of flammable materials.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000996

# Redding Police Department

RPD Policy Manual

---

*Property and Evidence*

---

The Property and Evidence Technician is responsible for transporting to the Fire Department, on a regular basis, any fireworks or signaling devices that are not retained as evidence.

### 802.3.4   EXCEPTIONAL HANDLING

Certain property items require a separate process. The following items shall be processed in the described manner:

(a) Bodily fluids such as blood or semen stains shall be air dried prior to booking.

(b) License plates found not to be stolen or connected with a known crime, should be placed in the designated container for return to the Department of Motor Vehicles. No formal property booking process is required.

(c) All bicycles and bicycle frames require a property record. Property records will be securely attached to each bicycle or bicycle frame. The property may be released directly to the Property and Evidence Technician or placed in the over-night storage area until a Property and Evidence Technician can log the property.

(d) All cash exceeding $100.00 shall be counted in the presence of a supervisor and the envelope initialed by the booking officer and the supervisor. If seized money requires special handling, i.e, is physical evidence, has collector value, constitutes evidentiary value, or at the direction of the investigating officer or District Attorney's Office written explanation requesting funds not be deposited is to be attached to the evidence envelope or container by the officer at the time it is submitted into property.

(e) All latent print cards which have been obtained by officers shall be placed into the Police Department evidence locker. The cards will note case number, the officer's name/ID number, and the location where obtained. Designated ID personnel shall be responsible for the maintenance of the latent print file. Latent prints shall be maintained for a period of at least three years and disposed of consistent with the case disposition. Latent print cards put into evidence shall not be listed under the property section of the Redding Police Department offense and/or supplemental report. Details involving the latent print lifts and number of cards submitted shall be related in the police report narrative. Latent print cards do not require a property record form.

City property, unless connected to a known criminal case, should be released directly to the appropriate City department. No formal booking is required. In cases where no responsible person can be located, the property should be booked for safekeeping in the normal manner.

### 802.3.5   RELINQUISHED FIREARMS

Individuals who relinquish firearms pursuant to the provisions of Penal Code § 29850 shall be issued a receipt that describes the firearm, the serial number or other identification of the firearm at the time of relinquishment (Penal Code § 29810).

Relinquished firearms shall be retained for 30 days, after which time they may be destroyed, retained, sold or otherwise transferred, unless (Penal Code § 29810):

(a) A certificate is issued by a judge of a court of record or the District Attorney stating the firearms shall be retained; or

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 000997

# Redding Police Department

RPD Policy Manual

*Property and Evidence*

---

    (b)    The convicted person provides written notice of an intent to appeal the conviction that necessitated the relinquishment; or

    (c)    The Automated Firearms System indicates that the firearm was reported lost or stolen.

        1.    In such event, the firearm shall be restored to the lawful owner as soon as it is no longer needed as evidence, the lawful owner has identified the weapon and provided proof of ownership, and the Department has complied with the requirements of Penal Code § 33850 et seq.

The Property and Evidence Technician shall ensure the Records Division is notified of the relinquished firearm for purposes of updating the Automated Firearms System and the disposition of the firearm for purposes of notifying the California Department of Justice (DOJ).

## 802.4  PACKAGING OF PROPERTY

Certain items require special consideration and shall be booked separately as follows:

    (a)    Narcotics and dangerous drugs

    (b)    Firearms (ensure they are unloaded and booked separately from ammunition)

    (c)    Property with more than one known owner

    (d)    Paraphernalia as described in Health and Safety Code § 11364

    (e)    Fireworks

    (f)    Contraband

    (g)    Marijuana

    (h)    Monies

    (i)    DVD's, CD's, flash-drives or devices containing contents that will need to be uploaded by the Crime Scene Technician

### 802.4.1  PACKAGING CONTAINER

Employees shall package all property, except narcotics and dangerous drugs in a suitable container available for its size. Knife boxes should be used to package knives, gun boxes should be used for firearms, and syringe tubes should be used to package syringes and needles.

A property tag shall be securely attached to the outside of all items or group of items packaged together.

### 802.4.2  PACKAGING NARCOTICS

The officer seizing narcotics and dangerous drugs shall retain such property in his/her possession until it is properly weighed, packaged, tagged, and placed in a locker, accompanied by two copies of the property record. Prior to packaging and if the quantity allows, a presumptive test should be made on all suspected narcotics. If conducted, the results of this test shall be included in the officer's report.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000998

# Redding Police Department

RPD Policy Manual

---

*Property and Evidence*

---

Narcotics and dangerous drugs shall be packaged in a DOJ envelope. The booking officer shall date and initial the envelope and seal it with cellophane tape. Narcotics and dangerous drugs shall not be packaged with other property.

A completed property record shall be attached to the outside of the container. The chain of evidence shall be recorded on the back of this envelope.

## 802.5   RECORDING OF PROPERTY

The Property and Evidence Technician receiving custody of evidence or property shall record where the property will be stored on the property record.

Any changes in the location of property held by the Redding Police Department shall be noted in the Property System and the property record.

## 802.6   PROPERTY CONTROL

The Support Services Division is responsible for evidence and property control functions.

The Property/Evidence Technicians are the only persons authorized to carry keys to Property.

In an emergency, in the absence of Property/Evidence Technicians, the Investigations Division Commander and the Professional Standards Sergeant will each have access to Property.

Each time the Property and Evidence Technician receives property or releases property to another person, he/she shall enter this information on the property record. Officers desiring property for court shall contact the Property and Evidence Technician in person or via message.

### 802.6.1   RESPONSIBILITY OF OTHER PERSONNEL

Every time property is released or received, an appropriate entry on the property record and evidence package shall be completed to maintain the chain of evidence.

Request for analysis for items other than narcotics or drugs shall be completed on the appropriate forms and submitted to the Property and Evidence Technician. This request may be filled out any time after booking of the property or evidence.

### 802.6.2   TRANSFER OF EVIDENCE TO CRIME LABORATORY

The transporting employee will check the evidence out of property, indicating the date on the property record and the request for laboratory analysis.

The Property and Evidence Technician releasing the evidence must complete the required information on the property control record and the evidence.

### 802.6.3   STATUS OF PROPERTY

Each person receiving property will make the appropriate entry to document the chain of evidence. Temporary release of property to officers for investigative purposes, or for court, shall be noted on the property record, stating the date and to whom released.

The Property and Evidence Technician shall obtain the initials and employee number of the person to whom property is released. Any employee receiving property shall be responsible for such

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  000999

# Redding Police Department

RPD Policy Manual

*Property and Evidence*

---

property until it is properly returned to property or properly released to another authorized person or entity.

The return of the property should be recorded on the property record, indicating date and the person who returned the property.

## 802.6.4   AUTHORITY TO RELEASE PROPERTY

The responsible officer shall authorize the disposition or release of all evidence and property, with the exception of found property and items kept for safekeeping, coming into the care and custody of the Department.

## 802.6.5   RELEASE OF PROPERTY

All reasonable attempts shall be made to identify the rightful owner of found property or evidence not needed for an investigation.

Release of property shall be made upon authorization from an officer, court, or DA's Office. Release of all property shall be documented on the property record.

With the exception of firearms and other property specifically regulated by statute, found property shall be held for a minimum of 90 days. Property held for safekeeping shall be held for a minimum of 60 days. Property not held for any other purpose and not claimed within 90 days after notification (or receipt, if notification is not feasible) may be auctioned to the highest bidder at a properly published public auction. If such property is not sold at auction or otherwise lawfully claimed, it may thereafter be destroyed (Civil Code § 2080.6). The final disposition of all such property shall be fully documented in related reports.

A Property and Evidence Technician shall release the property upon proper identification being presented by the owner for which an authorized release has been received. A signature of the person receiving the property shall be recorded on the original property record. After release of all property entered on the property control record, the record shall be forwarded to the Records Division for filing with the case. If some items of property have not been released the property record will remain with the Property and Evidence Section. Upon release, the proper entry shall be documented in the Property System.

Under no circumstances shall any firearm be returned to any individual unless and until such person presents valid identification and written notification from the California Department of Justice that conforms to the provisions of Penal Code § 33865.

The Department is not required to retain any firearm or other deadly weapon longer than 180 days after notice has been provided to the owner that such firearm or other deadly weapon is available for return. At the expiration of such period, the firearm or other deadly weapon may be processed for disposal in accordance with applicable law (Penal Code § 33875).

No item held by search warrant may be returned to the defendant/owner without a court order.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001000

# Redding Police Department

RPD Policy Manual

---

*Property and Evidence*

---

### 802.6.6   DISPUTED CLAIMS TO PROPERTY

Occasionally more than one party may claim an interest in property being held by the Redding Police Department, and the legal rights of the parties cannot be clearly established. Such property shall not be released until one party has obtained a valid court order or other undisputed right to the involved property.

All parties should be advised that their claims are civil and in extreme situations, legal counsel for the Redding Police Department may wish to file an interpleader to resolve the disputed claim (Code of Civil Procedure § 386(b)).

### 802.6.7   CONTROL OF NARCOTICS AND DANGEROUS DRUGS

The Property Division will be responsible for the storage, control, and destruction of all narcotics and dangerous drugs coming into the custody of this Department, including paraphernalia as described in Health and Safety Code § 11364.

### 802.6.8   RELEASE OF FIREARM IN DOMESTIC VIOLENCE MATTERS

Within five days of the expiration of a restraining order issued in a domestic violence matter that required the relinquishment of a firearm, the Property and Evidence Technician shall return the weapon to the owner if the requirements of Penal Code § 33850 and Penal Code § 33855 are met unless the firearm is determined to be stolen, evidence in a criminal investigation or the individual is otherwise prohibited from possessing a firearm (Family Code § 6389(g); Penal Code § 33855).

### 802.6.9   RELEASE OF FIREARMS IN GUN VIOLENCE RESTRAINING ORDER MATTERS

Firearms and ammunition that were taken into temporary custody or surrendered pursuant to a gun violence restraining order shall be returned to the restrained person upon the expiration of the order and in accordance with the requirements of Penal Code § 33850 et seq. (Penal Code § 18120).

If the restrained person who owns the firearms or ammunition does not wish to have the firearm or ammunition returned, he/she is entitled to sell or transfer title to a licensed dealer, provided that the firearms or ammunition are legal to own or possess and the restrained person has right to title of the firearms or ammunition (Penal Code § 18120).

If a person other than the restrained person claims title to the firearms or ammunition surrendered pursuant to Penal Code § 18120 and the Redding Police Department determines him/her to be the lawful owner, the firearms or ammunition shall be returned in accordance with the requirements of Penal Code § 33850 et seq. (Penal Code § 18120).

Firearms and ammunition that are not claimed are subject to the requirements of Penal Code § 34000.

### 802.6.10   RELEASE OF FIREARMS AND WEAPONS IN MENTAL ILLNESS MATTERS

Firearms and other deadly weapons confiscated from an individual detained for an evaluation by a mental health professional or subject to the provisions of Welfare and Institutions Code § 8100 or Welfare and Institutions Code § 8103 shall be released or disposed of as follows:

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001001

# Redding Police Department

RPD Policy Manual

(a) If a petition for a hearing regarding the return of the weapon has been initiated pursuant to Welfare and Institutions Code § 8102(c), the weapon shall be released or disposed of as provided by an order of the court. If the court orders a firearm returned, the firearm shall not be returned unless and until the person presents valid identification and written notification from the California Department of Justice (DOJ) which conforms to the provisions of Penal Code § 33865.

(b) If no petition has been initiated pursuant to Welfare and Institutions Code § 8102(c) and the weapon is not retained as evidence, the Redding Police Department shall make the weapon available for return. No firearm will be returned unless and until the person presents valid identification and written notification from the California DOJ which conforms to the provisions of Penal Code § 33865.

(c) Unless the person contacts the Redding Police Department to facilitate the sale or transfer of the firearm to a licensed dealer pursuant to Penal Code § 33870, firearms not returned should be sold, transferred, destroyed or retained as provided in Welfare and Institutions Code § 8102.

## 802.7  DISPOSITION OF PROPERTY

All property not held for evidence in a pending criminal investigation or proceeding, and held for six months or longer where the owner has not been located or fails to claim the property, may be disposed of in compliance with existing laws upon receipt of proper authorization for disposal.

### 802.7.1  EXCEPTIONAL DISPOSITIONS

The following types of property shall be destroyed or disposed of in the manner, and at the time prescribed by law, unless a different disposition is ordered by a court of competent jurisdiction:

- Weapons declared by law to be nuisances (Penal Code § 29300; Penal Code § 18010; Penal Code § 32750)

- Animals, birds, and related equipment that have been ordered forfeited by the court (Penal Code § 599a)

- Counterfeiting equipment (Penal Code § 480)

- Gaming devices (Penal Code § 335a)

- Obscene matter ordered to be destroyed by the court (Penal Code § 312)

- Altered vehicles or component parts (Vehicle Code § 10751)

- Narcotics (Health and Safety Code § 11474 et seq.)

- Unclaimed, stolen or embezzled property (Penal Code § 1411)

- Destructive devices (Penal Code § 19000)

- Sexual assault evidence (Penal Code § 680(e))

### 802.7.2  UNCLAIMED MONEY

If found or seized money is no longer required as evidence and remains unclaimed after three years, the Redding Police Department shall cause a notice to be published each week for a period

## Redding Police Department

RPD Policy Manual

*Property and Evidence*

---

of two consecutive weeks in a local newspaper of general circulation (Government Code § 50050). Such notice shall state the amount of money, the fund in which it is held and that the money will become the property of the agency on a designated date not less than 45 days and not more than 60 days after the first publication (Government Code § 50051).

Any individual item with a value of less than $15.00, or any amount if the depositor/owner's name is unknown, which remains unclaimed for a year or by order of the court, may be transferred to the general fund without the necessity of public notice (Government Code § 50055).

If the money remains unclaimed as of the date designated in the published notice, the money will become the property of this Department to fund official law enforcement operations. Money representing restitution collected on behalf of victims shall either be deposited into the Restitution Fund or used for purposes of victim services.

802.7.3   RETENTION OF BIOLOGICAL EVIDENCE
The Property and Evidence Section technician shall ensure that no biological evidence held by the Redding Police Department is destroyed without adequate notification to the following persons, when applicable:

(a)   The defendant

(b)   The defendant's attorney

(c)   The appropriate prosecutor and Attorney General

(d)   Any sexual assault victim

(e)   The assigned investigator

Biological evidence shall be retained for either a minimum period that has been established by law (Penal Code § 1417.9) or that has been established by the officer, or until the expiration of any imposed sentence that is related to the evidence, whichever time period is greater. Following the retention period, notifications should be made by certified mail and should inform the recipient that the evidence will be destroyed after a date specified in the notice unless a motion seeking an order to retain the sample is filed and served on the Redding Police Department within 180 days of the date of the notification. A record of all certified mail receipts shall be retained in the appropriate file. Any objection to, or motion regarding, the destruction of the biological evidence should be retained in the appropriate file and a copy forwarded to the Investigations Division supervisor.

Biological evidence related to a homicide shall be retained indefinitely and may only be destroyed with the approval of the assigned investigator and the District Attorney's Office.

Biological evidence or other crime scene evidence from an unsolved sexual assault should not be disposed of prior to expiration of the statute of limitations and shall be retained as required in Penal Code § 680. Even after expiration of an applicable statute of limitations, the Investigations Division supervisor should be consulted and the sexual assault victim shall be notified at least 60 days prior to the disposal (Penal Code § 680). Reasons for not analyzing biological evidence shall be documented in writing (Penal Code § 680.3).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001003

# Redding Police Department

RPD Policy Manual

*Property and Evidence*

---

802.7.4  FORFEITED WEAPONS -- USE BY SWORN OFFICERS

Weapons forfeited in compliance with Penal Code Sections 12028, 12030, 12032 and Welfare and Institutions Code Section 8102 and clear of any criminal or civil case may be used by sworn members of this Department.

Each firearm shall have a court order, court docket or release from the owner authorizing the forfeiture to the Police Department attached to the original report.

A Redding Police Department tracking form shall be used to document the receipt of a forfeited weapon in the Department and all assignments of the weapon to Department personnel.

Each weapon forfeited shall be documented in the following manner:

(a)  An offense report supplement to the original report including the approving signature of the Chief of Police, the Field Operations Division Commander and the Records Technician who entered the weapon in CLETS.

(b)  CLETS entry in the Automated Firearms System listing the weapon as "Retained for Official Use Only."

(c)  An RPD weapons tracking form shall be filed with the Chief of Police or his designee indicating to whom the weapon is assigned.

Weapons shall only be assigned to sworn officers. Maintenance of the assigned weapon shall be the responsibility of the officer in accordance with established policies for any other duty weapon.

Weapons to be forfeited will be of good quality, in serviceable condition, and in a caliber applicable to law enforcement use. Prior to being issued, each weapon shall be inspected by a Department Range Master.

Weapons forfeited shall only be used for:

(a)  Training

(b)  Official law enforcement duties, including undercover, backup, off-duty or tactical use.

(c)  Transfer to another law enforcement agency.

(d)  Educational display.

The use of these firearms shall be governed by existing laws and Department policy.

When no longer needed, the weapon shall be returned to the Property Evidence Technician for destruction with a record made on the RPD weapons tracking form and CLETS entry.

## 802.8  INSPECTIONS OF THE EVIDENCE ROOM

(a)  The Professional Standards Sergeant should periodically inspect the evidence storage facilities and practices to ensure adherence to appropriate policies and procedures. The inspections should follow the guidelines outlined in the California POST Evidence and Property Management Guide. The inspection results should be documented and forwarded to the Chief of Police.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001004

# Redding Police Department

RPD Policy Manual

*Property and Evidence*

---

(b) Unannounced inspections of evidence storage areas should be conducted annually by the Professional Standards Sergeant or designee of the Chief of Police. The inspection results should be documented and forwarded to the Chief of Police.

(c) An annual audit should be completed by the Professional Standards Sergeant or a designee of the Chief of Police. The audit should follow the guidelines outlined in the California POST Evidence and Property Management Guide. A report should be completed and forwarded to the Chief of Police.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001005

**Policy**

**803**

Redding Police Department

RPD Policy Manual

# Records Division

**803.1  PURPOSE AND SCOPE**

This policy establishes the guidelines for the operational functions of the Redding Police Department Records Division. The policy addresses Redding Police Department file access and internal requests for case reports.

**803.2  POLICY**

It is the policy of the Redding Police Department to maintain Department records securely, professionally, and efficiently.

**803.3  POLICE SERVICES MANAGER (PSM) AND RECORDS SUPERVISOR**

The Chief of Police shall appoint and delegate certain responsibilities to a Police Services Manager (PSM) and to a Records Supervisor. The PSM shall be directly responsible to the Administration Division Commander or the authorized designee.

The responsibilities of the PSM and the Records Supervisor include, but are not limited to:

(a)  Overseeing the efficient and effective operation of the Records Division.

(b)  Scheduling and maintaining Records Division time records.

(c)  Supervising, training and evaluating Records Division staff.

(d)  Maintaining and updating a Records Division procedure manual.

(e)  Ensuring compliance with established policies and procedures.

(f)  Supervising the access, use and release of protected information (see the Protected Information Policy).

(g)  Establishing security and access protocols for case reports designated as sensitive, where additional restrictions to access have been implemented. Sensitive reports may include, but are not limited to:

1.  Homicides.

2.  Cases involving Redding Police Department members or public officials.

3.  Any case where restricted access is prudent.

803.3.1  RECORDS DIVISION

The responsibilities of the Records Division include, but are not limited to:

(a)  Working with IPS and the Spillman Project Team on maintaining a records management system for case reports.

1.  The records management system should include a process for numbering, identifying, tracking and retrieving case reports.

(b)  Entering case report information into the records management system.

(a)  Modification of case reports shall only be made when authorized by a supervisor.

# Redding Police Department

RPD Policy Manual

---

*Records Division*

---

    (c)    Maintaining compliance with federal, state and local regulations regarding reporting requirements of crime statistics. This includes reporting statistical data to the California Department of Justice (DOJ) for:

        1.    All officer-involved shootings and incidents involving use of force resulting in serious bodily injury (Government Code § 12525.2).

        2.    Suspected hate crimes (Penal Code § 13023).

        3.    Complaints of racial bias against officers (Penal Code § 13012; Penal Code § 13020).

        4.    Civilian complaints made against officers (Penal Code § 832.5; Penal Code § 13012).

        5.    Stop data required by Government Code § 12525.5 and 11 CCR 999.226.

            i.    The reported information must not contain personally identifiable information of the person stopped or other information exempt from disclosure pursuant to Government Code § 12525.5 (11 CCR 999.228).

    (d)    Maintaining compliance with federal, state and local regulations regarding criminal history reports and auditing.

    (e)    Identifying missing case reports and notifying the responsible member's supervisor.

    (f)    Updating the Automated Firearms System to reflect any firearms relinquished to the Redding Police Department and the subsequent disposition to the DOJ pursuant to Penal Code § 34010 (Penal Code § 29810).

## 803.3.2   RECORDS DIVISION PROCEDURE MANUAL

The Police Services Manager and the Records Supervisor should establish procedures that address:

    (a)    Identifying by name persons in reports.

    (b)    Classifying reports by type of incident or crime.

    (c)    Tracking reports through the approval process.

    (d)    Assigning alpha-numerical records to all arrest records.

    (e)    Managing a warrant and wanted persons file.

## 803.4   DETERMINATION OF FACTUAL INNOCENCE

In any case, where a person has been arrested by officers of the Redding Police Department and no accusatory pleading has been filed, the person arrested may petition the Department to destroy the related arrest records. Petitions should be forwarded to the Police Services Manager (PSM). The PSM  may contact the prosecuting attorney and request a written opinion as to whether the petitioner is factually innocent of the charges (Penal Code § 851.8). Factual innocence means the accused person did not commit the crime.

Upon determination that a finding of factual innocence is appropriate, the PSM  shall ensure that the arrest record and petition are sealed for later destruction and the required notifications are

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001007

# Redding Police Department
RPD Policy Manual

## *Records Division*

made to the California Department of Justice and other law enforcement agencies (Penal Code § 851.8).

The PSM should respond to a petition with the Department's decision within 45 days of receipt. Responses should include only the decision of the Department, not an explanation of the analysis leading to the decision.

## 803.5   ARREST WITHOUT FILING OF ACCUSATORY PLEADING
The PSM should ensure a process is in place for when an individual is arrested and released and no accusatory pleading is filed so that the following occurs (Penal Code § 849.5; Penal Code § 851.6):

    (a)    The individual is issued a certificate describing the action as a detention.

    (b)    All references to an arrest are deleted from the arrest records of the Redding Police Department and the record reflects only a detention.

    (c)    The California DOJ is notified.

## 803.6   CONFIDENTIALITY
Records Division staff has access to information that may be confidential or sensitive in nature. Records Division staff shall not access, view, or distribute, or allow anyone else to access, view, or distribute any record, file, or report, whether in hard copy or electronic file format, or any other confidential, protected, or sensitive information except in accordance with the Records Maintenance and Release and Protected Information policies and the Records Division procedure manual.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001008

**Policy**

**804**

# Restoration of Firearm Serial Numbers

## 804.1  PURPOSE AND SCOPE

The primary purpose for restoring firearm serial numbers is to determine the prior owners or origin of the item from which the number has been recovered. Thus, property can be returned to rightful owners or investigations can be initiated to curb illegal trade of contraband firearms. The purpose of this plan is to develop standards, methodologies, and safety protocols for the recovery of obliterated serial numbers from firearms and other objects using procedures that are accepted as industry standards in the forensic community. All personnel who are involved in the restoration of serial numbers will observe the following guidelines. This policy complies with Penal Code § 11108.9.

## 804.2  PROCEDURE

Any firearm coming into the possession of the Redding Police Department as evidence, found property, etc., where the serial numbers have been removed or obliterated will be processed in the following manner:

### 804.2.1  PRELIMINARY FIREARM EXAMINATION

(a)  Always keep the muzzle pointed in a safe direction. Be sure the firearm is in an unloaded condition. This includes removal of the ammunition source (e.g., the detachable magazine, contents of the tubular magazine) as well as the chamber contents.

(b)  If the firearm is corroded shut or in a condition that would preclude inspection of the chamber contents, treat the firearm as if it is loaded. Make immediate arrangements for a firearms examiner or other qualified examiner to render the firearm safe.

(c)  Accurately record/document the condition of the gun when received. Note the positions of the various components such as the safeties, cylinder, magazine, slide, hammer, etc. Accurately record/document cylinder chamber and magazine contents. Package the ammunition separately.

(d)  If the firearm is to be processed for fingerprints or trace evidence, process before the serial number restoration is attempted. First record/document important aspects such as halos on the revolver cylinder face or other relevant evidence that might be obscured by the fingerprinting chemicals.

### 804.2.2  PROPERTY BOOKING PROCEDURE

Any employee taking possession of a firearm with removed/obliterated serial numbers shall book the firearm into property following standard procedures. The employee booking the firearm shall indicate on the property form that serial numbers have been removed or obliterated.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001009

# Redding Police Department
### RPD Policy Manual

*Restoration of Firearm Serial Numbers*

### 804.2.3  OFFICER RESPONSIBILITY
The officer or investigator is responsible for arranging for the firearm to be transported to the crime lab for restoration and for maintaining the chain of evidence.

### 804.2.4  DOCUMENTATION
Case reports are prepared in order to document the chain of custody and the initial examination and handling of evidence from the time it is received/collected until it is released.

This report must include a record of the manner in which and/or from whom the firearm was received. This may appear on the request form or property form depending on the type of evidence.

### 804.2.5  FIREARM TRACE
After the serial number has been restored (or partially restored) by the criminalistics laboratory, the officer or investigator will complete a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Tracing Center (NTC) Obliterated Serial Number Trace Request Form (ATF 3312.1-OBL) and forward the form to the NTC in Falling Waters, West Virginia or enter the data into the ATF eTrace system.

## 804.3  BULLET AND CASING IDENTIFICATION
Exemplar bullets and cartridge cases from the firearm, depending upon acceptance criteria and protocol, may be submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Integrated Ballistic Information Network (NIBIN) which uses the Integrated Ballistic Identification System (IBIS) technology to search the national database and compare with ballistic evidence recovered from other crime scenes.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001010

**Redding Police Department**

RPD Policy Manual

# Records Maintenance and Release

### 805.1   PURPOSE AND SCOPE

This policy provides guidance on the maintenance and release of Department records. Protected information is separately covered in the Protected Information Policy.

### 805.2   POLICY

The Redding Police Department is committed to providing public access to records in a manner that is consistent with the California Public Records Act (Government Code § 6250 et seq.).

### 805.3   CUSTODIAN OF RECORDS RESPONSIBILITIES

The  Chief of Police shall designate a Custodian of Records. The responsibilities of the Custodian of Records include but are not limited to:

(a)   Managing the records management system for the Department, including the retention, archiving, release, and destruction of department public records.

(b)   Maintaining and updating the department records retention schedule including:

1.   Identifying the minimum length of time the Department must keep records.

2.   Identifying the department division responsible for the original record.

(c)   Establishing rules regarding the inspection and copying of department public records as reasonably necessary for the protection of such records (Government Code § 6253).

(d)   Identifying records or portions of records that are confidential under state or federal law and not open for inspection or copying.

(e)   Establishing rules regarding the processing of subpoenas for the production of records.

(f)   Ensuring a current schedule of fees for public records as allowed by law is available (Government Code § 6253).

(g)   Determining how the department's website may be used to post public records in accordance with Government Code § 6253.

(h)   Ensuring that all department current standards, policies, practices, operating procedures, and education and training materials are posted on the department website in accordance with Penal Code § 13650.

(i)   Ensuring that public records posted on the Department website meet the requirements of Government Code § 6253.10 including but not limited to posting in an open format where a record may be retrieved, downloaded, indexed, and searched by a commonly used internet search application.

(j)   Ensuring that a list and description, when applicable, of enterprise systems (as defined by Government Code § 6270.5) is publicly available upon request and posted in a prominent location on the Department's website.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Records Maintenance and Release*

---

**805.4  PROCESSING REQUESTS FOR PUBLIC RECORDS**

Any Department member who receives a request for any record shall route the request to the Custodian of Records or the authorized designee.

805.4.1  REQUESTS FOR RECORDS

Any member of the public, including the media and elected officials, may access unrestricted records of this Department, during regular business hours by submitting a request that reasonably describes each record sought and paying any associated fees (Government Code § 6253).

The processing of requests for any record is subject to the following (Government Code § 6253):

(a) The Department is not required to create records that do not exist.

(b) Victims of an incident or their authorized representative shall not be required to show proof of legal presence in the United States to obtain Department records or information. If identification is required, a current driver's license or identification card issued by any state in the United States, a current passport issued by the United States or a foreign government with which the United States has a diplomatic relationship or current Matricula Consular card is acceptable (Government Code § 6254.30).

(c) Either the requested record or the reason for non-disclosure will be provided promptly, but no later than 10 days from the date of the request, unless unusual circumstances preclude doing so. If more time is needed, an extension of up to 14 additional days may be authorized by the Custodian of Records or the authorized designee. If an extension is authorized, the Department shall provide the requester written notice that includes the reason for the extension and the anticipated date of the response.

    (a) When the request does not reasonably describe the records sought, the Custodian of Records shall assist the requester in making the request focused and effective in a way to identify the records or information that would be responsive to the request including providing assistance for overcoming any practical basis for denying access to the records or information. The Custodian of Records shall also assist in describing the information technology and physical location in which the record exists (Government Code § 6253.1).

    (b) If the record requested is available on the Department website, the requester may be directed to the location on the website where the record is posted. If the requester is unable to access or reproduce the record, a copy of the record shall be promptly provided.

(d) Upon request, a record shall be provided in an electronic format utilized by the Department. Records shall not be provided only in electronic format unless specifically requested (Government Code § 6253.9).

(e) When a record contains material with release restrictions and material that is not subject to release restrictions, the restricted material shall be redacted and the unrestricted material released.

    1. A copy of the redacted release should be maintained or noted in the case file for proof of what was actually released and as a place to document the reasons for the redactions. If the record is audio or video, a copy of the redacted audio/

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001012

video release should be maintained in the department-approved media storage system and a notation should be made in the case file to document the release and the reasons for the redacted portions.

(f) If a record request is denied in whole or part, the requester shall be provided a written response that includes the statutory exemption for withholding the record or facts that the public interest served by nondisclosure outweighs the interest served by disclosure (Government Code § 6255). The written response shall also include the names, titles or positions of each person responsible for the denial.

## 805.5  RELEASE RESTRICTIONS

Examples of release restrictions include:

(a) Personal identifying information, including an individual's photograph; Social Security and driver identification numbers; name, address, and telephone number; and medical or disability information that is contained in any driver license record, motor vehicle record, or any Department record, including traffic collision reports, are restricted except as authorized by the Department, and only when such use or disclosure is permitted or required by law to carry out a legitimate law enforcement purpose (18 USC § 2721; 18 USC § 2722).

(b) Social Security numbers (Government Code § 6254.29).

(c) Personnel records, medical records, and similar records which would involve an unwarranted invasion of personal privacy except as allowed by law (Government Code § 6254; Penal Code § 832.7; Penal Code § 832.8; Evidence Code § 1043 et seq.).

1. Peace officer personnel records that are deemed confidential shall not be made public or otherwise released to unauthorized individuals or entities absent a valid court order.

2. The identity of any officer subject to any criminal or administrative investigation shall not be released without the consent of the involved officer, prior approval of the Chief of Police, or as required by law.

(d) Victim information that may be protected by statutes, including victims of certain crimes who have requested that their identifying information be kept confidential, victims who are minors, and victims of certain offenses (e.g., sex crimes or human trafficking, Penal Code § 293). Addresses and telephone numbers of a victim or a witness to any arrested person or to any person who may be a defendant in a criminal action shall not be disclosed, unless it is required by law (Government Code § 6254; Penal Code § 841.5).

1. Victims of certain offenses (e.g., domestic violence, sexual assault, stalking, human trafficking, adult abuse) or their representatives shall be provided, upon request and without charge, one copy of all incident report face sheets, one copy of all incident reports, or both, pursuant to the requirements and time frames of Family Code § 6228.

2. Victims of sexual assault, upon written request, shall be provided a free copy of the initial crime report regardless of whether the report has been closed. Personal identifying information may be redacted (Penal Code § 680.2(b)).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
Records Maintenance and Release - 542

COR (McLeod)  001013

# Redding Police Department

RPD Policy Manual

*Records Maintenance and Release*

---

(e) Video or audio recordings created during the commission or investigation of the crime of rape, incest, sexual assault, domestic violence, or child abuse that depicts the face, intimate body part, or voice of a victim of the incident except as provided by Government Code § 6254.4.5.

(f) Information involving confidential informants, intelligence information, information that would endanger the safety of any person involved, or information that would endanger the successful completion of the investigation or a related investigation. This includes analysis and conclusions of investigating officers (Evidence Code § 1041; Government Code § 6254).

   1. Absent a statutory exemption to the contrary or other lawful reason to deem information from reports confidential, information from unrestricted agency reports shall be made public as outlined in Government Code § 6254(f).

(g) Local criminal history information including but not limited to arrest history and disposition, and fingerprints shall only be subject to release to those agencies and individuals set forth in Penal Code § 13300.

   1. All requests from criminal defendants and their authorized representatives (including attorneys) shall be referred to the District Attorney, City Attorney, or the courts pursuant to Penal Code § 1054.5.

(h) Certain types of reports involving but not limited to child abuse and molestation (Penal Code § 11167.5), elder and dependent abuse (Welfare and Institutions Code § 15633), and juveniles (Welfare and Institutions Code § 827).

(i) Sealed autopsy and private medical information concerning a murdered child with the exceptions that allow dissemination of those reports to law enforcement agents, prosecutors, defendants, or civil litigants under state and federal discovery laws (Code of Civil Procedure §130).

(j) Information contained in applications for licenses to carry firearms or other files that indicates when or where the applicant is vulnerable or which contains medical or psychological information (Government Code § 6254).

(k) Traffic collision reports (and related supplemental reports) shall be considered confidential and subject to release only to the California Highway Patrol, Department of Motor Vehicles (DMV), other law enforcement agencies, and those individuals and their authorized representatives set forth in Vehicle Code § 20012.

(l) Any record created exclusively in anticipation of potential litigation involving this department (Government Code § 6254).

(m) Any memorandum from legal counsel until the pending litigation has been adjudicated or otherwise settled (Government Code § 6254.25).

(n) Records relating to the security of the department's electronic technology systems (Government Code § 6254.19).

(o) A record of a civilian complaint, or the investigations, findings, or dispositions of that complaint if the complaint is frivolous, as defined by Code of Civil Procedure § 128.5, or if the complaint is unfounded (Penal Code § 832.7 (b)(8)).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001014

# Redding Police Department

RPD Policy Manual

*Records Maintenance and Release*

---

(p)   Any other record not addressed in this policy shall not be subject to release where such record is exempt or prohibited from disclosure pursuant to state or federal law, including but not limited to provisions of the Evidence Code relating to privilege (Government Code § 6254).

(q)   Information connected with juvenile court proceedings or the detention or custody of a juvenile. Federal officials may be required to obtain a court order to obtain certain juvenile information (Welfare and Institutions Code § 827.9; Welfare and Institutions Code § 831).

## 805.6  SUBPOENAS AND DISCOVERY REQUESTS

Any member who receives a subpoena duces tecum or discovery request for records should promptly contact a supervisor and the Custodian of Records for review and processing. While a subpoena duces tecum may ultimately be subject to compliance, it is not an order from the court that will automatically require the release of the requested information.

Generally, discovery requests and subpoenas from criminal defendants and their authorized representatives (including attorneys) should be referred to the District Attorney, City Attorney or the courts.

All questions regarding compliance with any subpoena duces tecum or discovery request should be promptly referred to legal counsel for the Department so that a timely response can be prepared.

## 805.7  RELEASED RECORDS TO BE MARKED

Each page of any written record released pursuant to this policy should be stamped in a colored ink or otherwise marked to indicate the department name and to whom the record was released.

Each audio/video recording released should include the department name and to whom the record was released.

## 805.8  SEALED RECORD ORDERS

Sealed record orders received by the Department shall be reviewed for appropriate action by the Custodian of Records. The Custodian of Records shall seal such records as ordered by the court. Records may include but are not limited to a record of arrest, investigation, detention, or conviction. Once the record is sealed, members shall respond to any inquiry as though the record did not exist (Penal Code § 851.8; Welfare and Institutions Code § 781).

When an arrest record is sealed pursuant to Penal Code § 851.87, Penal Code § 851.90, Penal Code § 851.91, Penal Code § 1000.4, or Penal Code § 1001.9, the Records Supervisor shall ensure that the required notations on local summary criminal history information and police investigative reports are made. Sealed records may be disclosed or used as authorized by Penal Code § 851.92.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001015

## Redding Police Department

RPD Policy Manual

*Records Maintenance and Release*

**805.9  SECURITY BREACHES**

The Records Supervisor shall ensure notice is given anytime there is a reasonable belief an unauthorized person has acquired either unencrypted personal identifying information or encrypted personal information along with the encryption key or security credential stored in any Department information system (Civil Code § 1798.29).

Notice shall be given as soon as reasonably practicable to all individuals whose information may have been acquired. The notification may be delayed if the Department determines that notification will impede a criminal investigation or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

For the purposes of this requirement, personal identifying information includes an individual's first name or first initial and last name in combination with any one or more of the following:

- Social Security number

- Driver license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual

- Account number or credit or debit card number, in combination with any required security code, access code or password that would permit access to an individual's financial account

- Medical information

- Health insurance information

- A username or email address, in combination with a password or security question and answer that permits access to an online account

- Information or data collected by Automated License Plate Reader (ALPR) technology

- Unique biometric data

805.9.1  FORM OF NOTICE

(a)  The notice shall be written in plain language, be consistent with the format provided in Civil Code § 1798.29 and include, to the extent possible, the following:

1.  The date of the notice.

2.  Name and contact information for the Redding Police Department.

3.  A list of the types of personal information that were or are reasonably believed to have been acquired.

4.  The estimated date or date range within which the security breach occurred.

5.  Whether the notification was delayed as a result of a law enforcement investigation.

6.  A general description of the security breach.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001016

## Redding Police Department

RPD Policy Manual

*Records Maintenance and Release*

7. The toll-free telephone numbers and addresses of the major credit reporting agencies, if the breach exposed a Social Security number or a driver license or California identification card number.

(b) The notice may also include information about what the Redding Police Department has done to protect individuals whose information has been breached and may include information on steps that the person whose information has been breached may take to protect him/herself (Civil Code § 1798.29).

(c) When a breach involves an online account, and only a username or email address in combination with either a password or security question and answer that would permit access to an online account, and no other personal information has been breached (Civil Code § 1798.29):

1. Notification may be provided electronically or in another form directing the person to promptly change either his/her password or security question and answer, as applicable, or to take other appropriate steps to protect the online account with the Department in addition to any other online accounts for which the person uses the same username or email address and password or security question and answer.

2. When the breach involves an email address that was furnished by the Redding Police Department, notification of the breach should not be sent to that email address but should instead be made by another appropriate medium as prescribed by Civil Code § 1798.29.

### 805.9.2 MANNER OF NOTICE

(a) Notice may be provided by one of the following methods (Civil Code § 1798.29):

1. Written notice.

2. Electronic notice if the notice provided is consistent with the provisions regarding electronic records and signatures set forth in 15 USC § 7001.

3. Substitute notice if the cost of providing notice would exceed $250,000, the number of individuals exceeds 500,000 or the Redding Police Department does not have sufficient contact information. Substitute notice shall consist of all of the following:

   i. Email notice when the Department has an email address for the subject person.

   ii. Conspicuous posting of the notice on the Department's webpage for a minimum of 30 days.

4. Notification to major statewide media and the California Information Security Office within the California Department of Technology.

(b) If a single breach requires the Department to notify more than 500 California residents, the Department shall electronically submit a sample copy of the notification, excluding any personally identifiable information, to the Attorney General.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001017

## Redding Police Department
RPD Policy Manual

*Records Maintenance and Release*

### 805.10   RELEASE OF AUDIO OR VIDEO RECORDINGS RELATED TO CRITICAL INCIDENTS

Video and audio recordings related to critical incidents shall be released upon a proper public record request and subject to delayed release, redaction, and other release restrictions as provided by law (Government Code § 6254(f)(4)).

For purposes of this section, a video or audio recording relates to a critical incident if it depicts an incident involving the discharge of a firearm at a person by an officer, or depicts an incident in which the use of force by an officer against a person resulted in death or in great bodily injury (as defined by Penal Code § 243(f)(4)) (Government Code § 6254(f)(4)).

The Custodian of Records should work as appropriate with the Chief of Police or the Professional Standards Unit supervisor in determining what recordings may qualify for disclosure when a request for a recording is received and if the requested recording is subject to delay from disclosure, redaction, or other release restrictions.

### 805.10.1   DELAY OF RELEASE

Disclosure of critical incident recordings during active criminal or administrative investigations may be delayed as follows if disclosure would substantially interfere with the investigation, such as by endangering the safety of a witness or a confidential source:

(a) Disclosure may be delayed up to 45 days from the date the Department knew or reasonably should have known about the incident.

(b) Delay of disclosure may continue after the initial 45 days and up to one year if the Department demonstrates that disclosure would substantially interfere with the investigation.

(c) Any delay of disclosure longer than one year must be supported by clear and convincing evidence that disclosure would substantially interfere with the investigation (Government Code § 6254(f)(4)).

### 805.10.2   NOTICE OF DELAY OF RELEASE

When there is justification to delay disclosure of a recording, the Custodian of Records shall provide written notice to the requester as follows (Government Code § 6254(f)(4)):

(a) During the initial 45 days, the Custodian of Records shall provide the requester with written notice of the specific basis for the determination that disclosure would substantially interfere with the investigation. The notice shall also include the estimated date for the disclosure.

(b) When delay is continued after the initial 45 days, the Custodian of Records shall promptly provide the requester with written notice of the specific basis for the determination that the interest in preventing interference with an active investigation outweighs the public interest in the disclosure, and the estimated date for the disclosure. The Custodian of Records should work with the Chief of Police in reassessing the decision to continue withholding a recording and notify the requester every 30 days.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001018

Redding Police Department

RPD Policy Manual

*Records Maintenance and Release*

Recordings withheld shall be disclosed promptly when the specific basis for withholding the recording is resolved.

805.10.3   REDACTION

If the Custodian of Records, in consultation with the Chief of Police or authorized designee, determines that specific portions of the recording may violate the reasonable expectation of privacy of a person depicted in the recording, the Department should use redaction technology to redact portions of recordings made available for release. The redaction should not interfere with the viewer's ability to fully, completely, and accurately comprehend the events captured in the recording, and the recording should not otherwise be edited or altered (Government Code § 6254(f)(4)).

If any portions of a recording are withheld to protect the reasonable expectation of privacy of a person depicted in the recording, the Custodian of Records shall provide in writing to the requester the specific basis for the expectation of privacy and the public interest served (Government Code § 6254(f)(4)).

805.10.4   RECORDINGS WITHHELD FROM PUBLIC DISCLOSURE

If the reasonable expectation of privacy of a person depicted in the recording cannot adequately be protected through redaction, and that interest outweighs the public interest in disclosure, the Department may withhold the recording from the public, except that the recording, either redacted or unredacted, shall be disclosed promptly, upon request, to any of the following (Government Code § 6254(f)(4)):

(a)   The person in the recording whose privacy is to be protected, or his/her authorized representative.

(b)   If the person is a minor, the parent or legal guardian of the person whose privacy is to be protected.

(c)   If the person whose privacy is to be protected is deceased, an heir, beneficiary, designated immediate family member, or authorized legal representative of the deceased person whose privacy is to be protected.

If the Department determines that this disclosure would substantially interfere with an active criminal or administrative investigation, the Custodian of Records shall provide the requester with written notice of the specific basis for the determination and the estimated date of disclosure (Government Code § 6254(f)(4)).

The Department may continue to delay release of the recording from the public for 45 days with extensions as provided in this policy (Government Code § 6254(f)(4)(A)).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001019

Redding Police Department
RPD Policy Manual

# Protected Information

## 806.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for the access, transmission, release and security of protected information by members of the Redding Police Department. This policy addresses the protected information that is used in the day-to-day operation of the Department and not the public records information covered in the Records Maintenance and Release Policy.

### 806.1.1  DEFINITIONS
**Protected information** - Any information or data that is collected, stored or accessed by members of the Redding Police Department and is subject to any access or release restrictions imposed by law, regulation, order or use agreement. This includes all information contained in federal, state or local law enforcement databases that are not accessible to the public.

## 806.2  POLICY
Members of the Redding Police Department will adhere to all applicable laws, orders, regulations, use agreements and training related to the access, use, dissemination and release of protected information.

## 806.3  RESPONSIBILITIES
The Chief of Police shall select a member of the Department to serve as the Agency CLETS Coordinator (ACC) andcoordinate the use of protected information.

The responsibilities of this position include, but are not limited to:

(a)  Ensuring member compliance with this policy and with requirements applicable to protected information, including requirements for the National Crime Information Center (NCIC) system, National Law Enforcement Telecommunications System (NLETS), Department of Motor Vehicle (DMV) records and California Law Enforcement Telecommunications System (CLETS).

(b)  Developing, disseminating and maintaining procedures that adopt or comply with the U.S. Department of Justice's current Criminal Justice Information Services (CJIS) Security Policy.

(c)  Developing, disseminating and maintaining any other procedures necessary to comply with any other requirements for the access, use, dissemination, release and security of protected information.

(d)  Developing procedures to ensure training and certification requirements are met.

(e)  Resolving specific questions that arise regarding authorized recipients of protected information.

(f)  Ensuring security practices and procedures are in place to comply with requirements applicable to protected information.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001020

# Redding Police Department
RPD Policy Manual

*Protected Information*

**806.4   ACCESS TO PROTECTED INFORMATION**

Protected information shall not be accessed in violation of any law, order, regulation, user agreement, Redding Police Department policy or training. Only those members who have completed applicable training and met any applicable requirements, such as a background check, may access protected information, and only when the member has a legitimate work-related reason for such access.

Unauthorized access, including access for other than a legitimate work-related purpose, is prohibited and may subject a member to administrative action pursuant to the Personnel Complaints Policy and/or criminal prosecution.

806.4.1   PENALTIES FOR MISUSE OF RECORDS

It is a misdemeanor to furnish, buy, receive or possess Department of Justice criminal history information without authorization by law (Penal Code § 11143).

Authorized persons or agencies violating state regulations regarding the security of Criminal Offender Record Information (CORI) maintained by the California Department of Justice may lose direct access to CORI (11 CCR 702).

**806.5   RELEASE OR DISSEMINATION OF PROTECTED INFORMATION**

Protected information may be released only to authorized recipients who have both a right to know and a need to know.

A member who is asked to release protected information that should not be released should refer the requesting person to a supervisor or to the Records Supervisor for information regarding a formal request.

Unless otherwise ordered or when an investigation would be jeopardized, protected information maintained by the Department may generally be shared with authorized persons from other law enforcement agencies who are assisting in the investigation or conducting a related investigation. Any such information should be released through the Records Division to ensure proper documentation of the release (see the Records Maintenance and Release Policy).

Protected information, such as Criminal Justice Information (CJI), which includes Criminal History Record Information (CHRI), should generally not be transmitted by radio, cellular telephone or any other type of wireless transmission to members in the field or in vehicles through any computer or electronic device, except in cases where there is an immediate need for the information to further an investigation or where circumstances reasonably indicate that the immediate safety of officers, other department members or the public is at risk.

Nothing in this policy is intended to prohibit broadcasting warrant information.

806.5.1   REVIEW OF CRIMINAL OFFENDER RECORD

Individuals requesting to review their own California criminal history information shall be referred to the Department of Justice (Penal Code § 11121).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001021

# Redding Police Department

RPD Policy Manual

---

*Protected Information*

---

Individuals shall be allowed to review their arrest or conviction record on file with the Department after complying with all legal requirements regarding authority and procedures in Penal Code § 11120 through Penal Code § 11127 (Penal Code § 13321).

## 806.6  SECURITY OF PROTECTED INFORMATION

The Chief of Police will select a member of the Department to serve as the Agency CLETS Coordinator (ACC) and oversee the security of protected information.

The responsibilities of this position include, but are not limited to:

(a)   Developing and maintaining security practices, procedures and training.

(b)   Ensuring federal and state compliance with the CJIS Security Policy and the requirements of any state or local criminal history records systems.

(c)   Establishing procedures to provide for the preparation, prevention, detection, analysis and containment of security incidents including computer attacks.

(d)   Tracking, documenting and reporting all breach of security incidents to the Chief of Police and appropriate authorities.

### 806.6.1  MEMBER RESPONSIBILITIES

Members accessing or receiving protected information shall ensure the information is not accessed or received by persons who are not authorized to access or receive it. This includes leaving protected information, such as documents or computer databases, accessible to others when it is reasonably foreseeable that unauthorized access may occur (e.g., on an unattended table or desk; in or on an unattended vehicle; in an unlocked desk drawer or file cabinet; on an unattended computer terminal).

## 806.7  TRAINING

All members authorized to access or release protected information shall complete a training program that complies with any protected information system requirements and identifies authorized access and use of protected information, as well as its proper handling and dissemination.

## 806.8  CALIFORNIA RELIGIOUS FREEDOM ACT

Members shall not release personal information from any agency database for the purpose of investigation or enforcement of any program compiling data on individuals based on religious belief, practice, affiliation, national origin or ethnicity (Government Code § 8310.3).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001022

Policy

**807**

# Electronic Devices and Digital Evidence

## 807.1 PURPOSE AND SCOPE

This policy establishes procedures for the seizure, storage and processing of digital evidence from computers, mobile devices and associated storage media. These processes are designed to maintain the integrity of digital evidence.

All evidence seized and/or processed pursuant to this policy shall be done so in compliance with clearly established Fourth Amendment and more specifically CalECPA (SB-178, SB-1121).

## 807.2 SEIZING COMPUTERS AND RELATED EVIDENCE

Computer equipment requires specialized training and handling to preserve its value as evidence. Officers should be aware of the potential to destroy information through careless or improper handling, and utilize the most knowledgeable available resources. When seizing a computer and accessories the following steps should be taken:

(a) Contact any individuals on the scene who may have relevant information (e.g., usernames, passwords, operating systems and network credentials)

(b) Photograph each item, front and back, specifically including cable connections to other items. Look for cabling running to a modem/router for internet access.

(c) Do not overlook the possibility of the presence of physical evidence on and around the hardware relevant to the particular investigation such as fingerprints, biological or trace evidence, and/or documents.

(d) If the computer is off, do not turn it on.

(e) If the computer is on, do not shut it down normally and do not click on anything or examine any files.

    1. Photograph the screen, if possible, and note any programs or windows that appear to be open and running.

    2. Disconnect the power cable from the back of the computer box or if a portable notebook style, disconnect any power cable from the case and remove the battery).

(f) Label each item with the case number, evidence sheet number, and item number.

(g) Handle and transport the computer and storage media (e.g., tape, discs, memory cards, USB thumb drive, and internal/external drives) with care so that potential evidence is not lost.

(h) Lodge all computer items in the Property Room. Do not store computers where normal room temperature and humidity is not maintained.

(i) At a minimum, officers should document the following in related reports:

    1. Where the computer was located and whether or not it was in operation.

    2. Determine if the computer is attached to the internet (e.g., router, modem, Ethernet cords). Photograph and document.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001023

Redding Police Department

RPD Policy Manual

*Electronic Devices and Digital Evidence*

3. Who claimed ownership or who has access to the computer.

4. Any known passwords by owner or users. Document any possible passwords written on or near the computer.

(j) In most cases when a computer is involved in criminal acts and is in the possession of the suspect, the computer itself and all storage devices (hard drives, tape drives, and disk drives) should be seized along with all media. Accessories (printers, monitors, mouse, scanner, keyboard, cables, software and manuals) should not be seized unless as a precursor to forfeiture.

## 807.2.1   BUSINESS OR NETWORKED COMPUTERS

If the computer belongs to a business or is part of a network, it may not be feasible to seize the entire computer. Cases involving networks require specialized handling. Officers should contact a certified forensic computer examiner for instructions or a response to the scene. It may be possible to perform an on-site inspection, or to image the hard drive only of the involved computer. This should only be done by someone specifically trained in processing computers for evidence.

## 807.2.2   FORENSIC EXAMINATION OF COMPUTERS

If an examination of the contents of the computer's hard drive, or floppy disks, compact discs, or any other storage media is required, forward the following items to a computer forensic examiner:

(a) Copy of report(s) involving the computer, including the Evidence/Property sheet.

(b) Copy of a consent to search form signed by the computer owner or the person in possession of the computer, or a copy of a search warrant authorizing the search of the computer hard drive for evidence relating to investigation.

(c) A listing of the items to search for (e.g., photographs, financial records, e-mail, documents).

(d) An exact duplicate of the hard drive or disk will be made using a forensic computer and a forensic software program by someone trained in the examination of computer storage devices for evidence.

## 807.3   SEIZING DIGITAL STORAGE MEDIA

Digital storage media including hard drives, floppy discs, CD's, DVD's, tapes, memory cards, or flash memory devices should be seized and stored in a manner that will protect them from damage.

(a) If the media has a write-protection tab or switch, it should be activated.

(b) Do not review, access or open digital files prior to submission. If the information is needed for immediate investigation request the Property and Evidence Section to copy the contents to an appropriate form of storage media.

(c) Many kinds of storage media can be erased or damaged by magnetic fields. Keep all media away from magnetic devices, electric motors, radio transmitters or other sources of magnetic fields.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001024

# Redding Police Department

RPD Policy Manual

## Electronic Devices and Digital Evidence

(d) Do not leave storage media where they would be subject to excessive heat such as in a parked vehicle on a hot day.

(e) Use plastic cases designed to protect the media, or other protective packaging, to prevent damage.

## 807.4  SEIZING PCDS

Personal communication devices such as cell phones, PDAs or other hand-held devices connected to any communication network must be handled with care to preserve evidence that may be on the device including messages, stored data and/or images.

(a) Officers should not attempt to access, review or search the contents of such devices prior to examination by a forensic expert. Unsent messages can be lost, data can be inadvertently deleted and incoming messages can override stored messages.

(b) Do not turn the device on or off. The device should be placed in a solid metal container such as a paint can or in a faraday bag, to prevent the device from sending or receiving information from its host network.

(c) When seizing the devices, also seize the charging units and keep them plugged in to the chargers until they can be examined. If the batteries go dead all the data may be lost.

## 807.5  DIGITAL EVIDENCE RECORDED BY OFFICERS

Officers handling and submitting recorded and digitally stored evidence from digital cameras and audio or video recorders will comply with these procedures to ensure the integrity and admissibility of such evidence.

### 807.5.1  COLLECTION OF DIGITAL EVIDENCE

Once evidence is recorded it shall not be erased, deleted or altered in any way prior to submission. All photographs taken will be preserved regardless of quality, composition or relevance. Video and audio files will not be altered in any way.

### 807.5.2  SUBMISSION OF DIGITAL MEDIA RECORDED BY CAMERAS AND OTHER RECORDERS

The following are required procedures for the submission of digital media used by cameras, audio recorders, or other recorders:

(a) The recording media (SD card) shall be brought to the Property and Evidence Section as soon as possible for submission into evidence.

(b) As soon as possible following the collection of evidence, the operator is to remove the SD card from their digital device and place into a zip-lock type baggie.The operator shall write their name and the related case number on the outside of the baggie before placing in the film drop box along with the evidence form.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001025

# Redding Police Department

RPD Policy Manual

## *Electronic Devices and Digital Evidence*

(c)  The Crime Scene Investigator, or designee, will make a copy of the memory card by uploading to the Crime Scene Photos server. Once they have verified that the images properly transferred to the Crime Scene Photos server, they will erase the memory card for re-use. The storage media will be marked as the original.

(d)  Investigators may copy original digital media (such as audio recorded interviews) prior to submission into evidence for case files and/or District Attorney requests with the approval of their supervisor.

### 807.5.3  DOWNLOADING OF DIGITAL MEDIA RECORDED ON INTERNAL MEMORY

Digital media recorded on devices using internal memory must be downloaded to storage media. The following procedures are to be followed:

(a)  Digital media recorded using internal memory shall be copied to a CD or similar storage device and brought to Property and Evidence as soon as possible for submission into evidence.

(b)  Where possible, the device should be connected to a computer and the files accessed directly from the computer directory or downloaded to a folder on the host computer for copying to the storage media.

### 807.5.4  PRESERVATION OF DIGITAL EVIDENCE

(a)  Only the Crime Scene Investigator or designee should be used to copy original digital media that has been held as evidence.  Investigators may copy original digital media prior to submission into evidence for case files and/or District Attorney requests with the approval of their supervisor.  The original digital media shall remain in evidence and shall remain unaltered.

(b)  Digital images that are enhanced to provide a better quality photograph for identification and investigative purposes must only be made from a copy of the original media.

(c)  If any enhancement is done to the copy of the original, it shall be noted in the corresponding incident report.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001026

# Services Division Scheduling

## 808.1   PURPOSE AND SCOPE

It is the policy of the Redding Police Department to schedule and assign Police Records Technicians and Police Services Supervisors in a fair and equitable manner in compliance with the MOU between the City of Redding and the employees' organized union.

## 808.2   SHIFT AND VACATION SIGN-UP

(a)   Police Records Technicians and Police Services Supervisors will select shifts and vacation based on seniority.

    1.   Seniority is defined as time with the City of Redding within respective classifications.

    2.   Police Records Technicians and Police Services Supervisors may not work more than two consecutive shift rotations on the same shift; notwithstanding paragraphs two and four below.

    3.   During the time period the Department allows Shift 1 to operate with one Police Records technician, a probationary Technician may not work more than one half their shift alone unless pre-approved by a supervisor. A Technician who has been released from training may work an overtime shift when approved by a supervisor.

(b)   Management may assign Police Records Technicians and Police Services Supervisors to shifts based on Department needs and/or administrative adjustment. Any administrative adjustment made after completion of a shift sign-up shall not give the employee the right to bump for another shift or vacation.

(c)   Vacations will be scheduled based on seniority.

## 808.3   SPECIAL ASSIGNMENT POSITIONS

(a)   Police Records Technicians and will have the opportunity to transfer to various special assignment positions.

(b)   Extensions beyond two years will be reviewed by the Chief of Police or his designee and will be accommodated when a Department need exists.

(c)   When a two-year special assignment has been completed a one-year rotation in one of the regular positions (shift work) in the Records Division will be required before applying for another special assignment.

(d)   If there are no volunteers for a two-year rotational position, selection will be made by assignment.

(e)   Selection for special assignment positions may be made by oral board results, administrative input, or at the discretion of the Chief of Police. All Police Records Technicians except those currently on probation, are eligible to apply.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001027

# Redding Police Department

RPD Policy Manual

*Services Division Scheduling*

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001028

Redding Police Department

RPD Policy Manual

# Chapter 9 - Personnel

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001029

**Redding Police Department**
RPD Policy Manual

# Recruitment and Selection

## 900.1  PURPOSE AND SCOPE

This policy provides a framework for employee recruiting efforts and identifying job-related standards for the selection process. This policy supplements the rules that govern employment practices for the Redding Police Department and that are promulgated and maintained by the Personnel Department.

## 900.2  POLICY

In accordance with applicable federal, state, and local law, the Redding Police Department provides equal opportunities for applicants and employees, regardless of actual or perceived race, ethnicity, national origin, religion, sex, sexual orientation, gender identity or expression, age, disability, pregnancy, genetic information, veteran status, marital status, or any other protected class or status. The Department does not show partiality or grant any special status to any applicant, employee, or group of employees unless otherwise required by law.

The Department will recruit and hire only those individuals who demonstrate a commitment to service and who possess the traits and characteristics that reflect personal integrity and high ethical standards.

## 900.3  RECRUITMENT

The Administration Division Commander should employ a comprehensive recruitment and selection strategy to recruit and select employees from a qualified and diverse pool of candidates.

The strategy should include:

    (a)   Identification of racially and culturally diverse target markets.

    (b)   Use of marketing strategies to target diverse applicant pools.

    (c)   Expanded use of technology and maintenance of a strong internet presence. This may include an interactive department website and the use of department-managed social networking sites, if resources permit.

    (d)   Expanded outreach through partnerships with media, community groups, citizen academies, local colleges, universities, and the military.

    (e)   Employee referral and recruitment incentive programs.

    (f)   Consideration of shared or collaborative regional testing processes.

The Administration Division Commander shall avoid advertising, recruiting and screening practices that tend to stereotype, focus on homogeneous applicant pools or screen applicants in a discriminatory manner.

The Department should strive to facilitate and expedite the screening and testing process, and should periodically inform each candidate of his/her status in the recruiting process.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001030

# Redding Police Department

RPD Policy Manual

*Recruitment and Selection*

900.3.1  REFERRAL

    (a)    All persons seeking employment shall be referred to the City of Redding Personnel Office.

    (b)    No applications shall be accepted or retained by any other City of Redding department.

## 900.4  SELECTION PROCESS

The Department shall actively strive to identify a diverse group of candidates who have in some manner distinguished themselves as being outstanding prospects. Minimally, the Department should employ a comprehensive screening, background investigation, and selection process that assesses cognitive and physical abilities and includes review and verification of the following:

    (a)    A comprehensive application for employment (including previous employment, references, current and prior addresses, education, military record)

    (b)    Driving record

    (c)    Reference checks

    (d)    Employment eligibility, including U.S. Citizenship and Immigration Services (USCIS) Employment Eligibility Verification Form I-9 and acceptable identity and employment authorization documents consistent with Labor Code § 1019.1. This required documentation should not be requested until a candidate is hired. This does not prohibit obtaining documents required for other purposes.

    (e)    Information obtained from public internet sites

    (f)    Financial history consistent with the Fair Credit Reporting Act (FCRA) (15 USC § 1681 et seq.)

    (g)    Local, state, and federal criminal history record checks

    (h)    Lie detector test (when legally permissible) (Labor Code § 432.2)

    (i)    Medical and psychological examination (may only be given after a conditional offer of employment)

    (j)    Review board or selection committee assessment

900.4.1  VETERAN'S PREFERENCE

Qualifying veterans of the United States Armed Forces who receive a passing score on an entrance examination shall be ranked in the top rank of any resulting eligibility list. The veteran's preference shall also apply to a widow or widower of a veteran or a spouse of a 100 percent disabled veteran (Government Code § 18973.1).

## 900.5  BACKGROUND INVESTIGATION

Every candidate shall undergo a thorough background investigation to verify his/her personal integrity and high ethical standards, and to identify any past behavior that may be indicative of the candidate's unsuitability to perform duties relevant to the operation of the Redding Police Department (11 CCR 1953).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001031

# Redding Police Department
RPD Policy Manual

---

*Recruitment and Selection*

---

The narrative report and any other relevant background information shall be shared with the psychological evaluator. Information shall also be shared with others involved in the hiring process if it is relevant to their respective evaluations (11 CCR 1953).

### 900.5.1   NOTICES
Background investigators shall ensure that investigations are conducted and notices provided in accordance with the requirements of the FCRA and the California Investigative Consumer Reporting Agencies Act (15 USC § 1681d; Civil Code § 1786.16).

### 900.5.2   STATE NOTICES
If information disclosed in a candidate's criminal offender record information (CORI) is the basis for an adverse employment decision, a copy of the CORI shall be provided to the applicant (Penal Code § 11105).

### 900.5.3   REVIEW OF SOCIAL MEDIA SITES
Due to the potential for accessing unsubstantiated, private, or protected information, the Administration Division Commander shall not require candidates to provide passwords, account information, or access to password-protected social media accounts (Labor Code § 980).

The Administration Division Commander should consider utilizing the services of an appropriately trained and experienced third party to conduct open source, internet-based searches, and/or review information from social media sites to ensure that:

(a)   The legal rights of candidates are protected.

(b)   Material and information to be considered are verified, accurate, and validated.

(c)   The Department fully complies with applicable privacy protections and local, state, and federal law.

Regardless of whether a third party is used, the Administration Division Commander should ensure that potentially impermissible information is not available to any person involved in the candidate selection process.

### 900.5.4   DOCUMENTING AND REPORTING
The background investigator shall summarize the results of the background investigation in a narrative report that includes sufficient information to allow the reviewing authority to decide whether to extend a conditional offer of employment. The report shall not include any information that is prohibited from use, including that from social media sites, in making employment decisions. The report and all supporting documentation shall be included in the candidate's background investigation file (11 CCR 1953).

### 900.5.5   RECORDS RETENTION
The background report and all supporting documentation shall be maintained for a minimum of two years and in accordance with the established records retention schedule (Government Code § 12946; 11 CCR 1953).

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001032

# Redding Police Department

RPD Policy Manual

*Recruitment and Selection*

---

900.5.6  BACKGROUND INVESTIGATION UPDATE

A background investigation update may, at the discretion of the Chief of Police, be conducted in lieu of a complete new background investigation on a peace officer candidate who is reappointed within 180 days of voluntary separation from the Redding Police Department, or who is an interim police chief meeting the requirements contained in 11 CCR 1953(f).

**900.6  DISQUALIFICATION GUIDELINES**

As a general rule, performance indicators and candidate information and records shall be evaluated by considering the candidate as a whole, and taking into consideration the following:

- Age at the time the behavior occurred

- Passage of time

- Patterns of past behavior

- Severity of behavior

- Probable consequences if past behavior is repeated or made public

- Likelihood of recurrence

- Relevance of past behavior to public safety employment

- Aggravating and mitigating factors

- Other relevant considerations

A candidate's qualifications will be assessed on a case-by-case basis, using a totality-of-the-circumstances framework.

**900.7  EMPLOYMENT STANDARDS**

All candidates shall meet the minimum standards required by state law (Government Code § 1029; Government Code § 1031; 11 CCR 1950 et seq.). Candidates will be evaluated based on merit, ability, competence, and experience, in accordance with the high standards of integrity and ethics valued by the Department and the community. The California Commission on Peace Officer Standards and Training (POST) developed a Job Dimensions list, which is used as a professional standard in background investigations.

Validated, job-related, and nondiscriminatory employment standards shall be established for each job classification and shall minimally identify the training, abilities, knowledge, and skills required to perform the position's essential duties in a satisfactory manner. Each standard should include performance indicators for candidate evaluation. The Personnel Department should maintain validated standards for all positions.

900.7.1  STANDARDS FOR OFFICERS

Candidates shall meet the minimum standards established by POST (Government Code § 1029; Government Code § 1031; 11 CCR 1950 et seq.):

(a)  Free of any felony convictions

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001033

# Redding Police Department

RPD Policy Manual

## *Recruitment and Selection*

(b) Citizen of the United States, or permanent resident alien eligible for and has applied for citizenship

(c) At least 18 years of age

(d) Fingerprinted for local, state and national fingerprint check

(e) Good moral character as determined by a thorough background investigation (11 CCR 1953)

(f) High school graduate, passed the GED or other high school equivalency test or obtained a two-year, four-year or advanced degree from an accredited or approved institution

(g) Free from any physical, emotional, or mental condition which might adversely affect the exercise of police powers (11 CCR 1954; 11 CCR 1955)

(h) Candidates must also satisfy the POST selection requirements, including (11 CCR 1950 et seq.):

1. Reading and writing ability assessment (11 CCR 1951)

2. Oral interview to determine suitability for law enforcement service (11 CCR 1952)

In addition to the above minimum POST required standards, candidates may be subjected to additional standards established by the Department (Penal Code § 13510(d)).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001034

# Evaluation of Employees

### 901.1  PURPOSE AND SCOPE
The Department's employee performance evaluation system is designed to record work performance for both the Department and the employee, providing recognition for good work and developing a guide for improvement.

### 901.2  POLICY
The Redding Police Department utilizes a performance evaluation as described in the employee's Memorandum of Understanding.

The Department evaluates employees in a non-discriminatory manner based upon job-related factors specific to the employee's position, without regard to sex, race, color, national origin, religion, age, disability or other protected classes.

### 901.3  EVALUATION PROCESS
The evaluation process is described in the employees Memorandum of Understanding.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001035

# Promotional and Transfer Policy

### 902.1  PURPOSE AND SCOPE
The purpose of this policy is to establish required and desirable qualifications for specialty assignments and promotions within the ranks of the Redding Police Department.

### 902.2  POLICY
Consistent with the following Memorandums of Understandings (MOU); Redding Peace Officers Association Section 1.7, Redding Police Managers Association Section 3.1, and Redding Independent Employee Organization Section 3.1, special assignments are deemed temporary.

Employees assigned to special programs or positions within individual Departmental units serve at the discretion of the Division Commander and the Chief of Police. The length of service will be determined by Departmental needs, efficiency of the employee in the assignment, training expertise in a particular field, and other factors which contribute to the overall effectiveness of the Department.

### 902.3  GENERAL REQUIREMENTS SPECIALTY ASSIGNMENTS
All assignments will generally be for a minimum two years from the assignment date with the exception of those assignments that require extended specialized training and knowledge.  The length of these specialized assignments is also deemed temporary

If no eligible officers apply or if there are insufficient qualified applicants, the experience level required will be at the discretion of the Division Commander.  The Division Commander retains the discretion to exhaust the list based on qualified applicants.  Officers who are currently on probation are not eligible to participate in the examination process.  Assignment selection and duration are at the discretion of the Division Commander and Chief of Police.

Applicants must have maintained average or above average performance ratings in the following areas:

(a)   Field Enforcement

(b)   Internal and External Relations

(c)   Officer Safety

(d)   Work Habits

(e)   Complete investigations and thorough police reports

(f)   Successfully pass personnel evaluation review

### 902.3.1  INVESTIGATIONS

(a)   Must present a copy of the POST Intermediate Certificate as of the closing date of the application;

(b)   Must have a minimum of five (5) years' law enforcement experience;

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001036

Redding Police Department

RPD Policy Manual

*Promotional and Transfer Policy*

   (c)    100 Percent Oral Board.

   (d)    Oral Board shall be comprised of:

        1.    Division Commander or designee;

        2.    Two Investigations Sergeants and one Patrol Sergeant or Patrol Lieutenant.

### 902.3.2   NPU/TRAFFIC/SRO/CRIME SCENE INVESTIGATOR

   (a)    Must have a minimum of three (3) years' law enforcement experience;

   (b)    100 Percent Oral Board;

   (c)    Oral Board shall be comprised of:

        1.    Specialty assignment manager or immediate supervisor;

        2.    Non-supervisory member of group;

        3.    Division Commander or designee;

        4.    Two Investigations Sergeants and one Patrol Sergeant or Patrol Lieutenant (Crime Scene Investigator only).

   (d)    The Traffic Unit assignment requires successfully passing a POST-certified motorcycle school and a Class M-1 license prior to appointment if assigned to a motorcycle.

### 902.3.3   FIELD TRAINING OFFICER (FTO)/K-9 OFFICER

   (a)    Must have a minimum of four (4) years' law enforcement experience;

   (b)    100 Percent Oral Board;

   (c)    Oral Board shall be comprised of:

        1.    Specialty assignment manager or supervisor;

        2.    Non-supervisory member of group;

        3.    Division Commander or designee.

   (d)    Must present a copy of the POST Basic Certificate as of the closing date of application (FTO only).

   (e)    Must successfully complete the POST-certified FTO course prior to training new officers (FTO only).

   (f)    Must complete 24-hour FTO update every three years (FTO only).

   (g)    The Department will purchase and own the canines for this program. Successful candidates will be responsible for the daily handling, care, maintenance, and training. Once selected, officers will receive compensation as outlined under Section 9.10 of the RPOA MOU (K-9 only).

### 902.3.4   SWAT TEAM

   (a)    Must have a minimum of three (3) years' law enforcement experience;

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001037

# Redding Police Department

RPD Policy Manual

*Promotional and Transfer Policy*

    (b)    100 Percent Oral Board;

    (c)    Successfully pass the physical agility test.

    (d)    Oral Board shall be comprised of:

        1.    Tactical Commander;

        2.    Tactical Coordinator;

        3.    Team Leader.

## 902.3.5  HOSTAGE NEGOTIATOR TEAM

    (a)    Must have a minimum of three (3) years' law enforcement experience;

    (b)    100 Percent Oral Board.

    (c)    Oral Board shall the of:

        1.    Specialty assignment manager or supervisor;

        2.    Non-supervisory member of group;

        3.    Division Commander or designee.

## 902.3.6  VARIOUS ASSIGNMENTS AS LISTED

**Additional Assignments**: Defensive Tactics / Armorer / Bomb Disposal Technician / Drug Recognition Expert (DRE) / Field Evidence Technician / Honor Guard / Range Master / Social Media / Unmanned Aerial Vehicle (UAV) / All Terrain Motorcycle Unit (ATMU) / Instructor:  Force Options - Defensive Driving – Taser – Emergency Vehicle Operation Control (EVOC):

    (a)    Must have a minimum of two (2) years' law enforcement experience

    (b)    100 Percent Oral Board

        1.    ATMU ranking will be by a proficiency test/skills test on the ATMU. Ranking will be done by Department motorcycle intstructors and the Traffic supervisor. No oral board ranking.

    (c)    Oral Board shall be comprised of:

        1.    Program Manager or supervisor

        2.    Team Member

        3.    Division Commander or designee

    (d)    Oral Board for Bomb Disposal Technician shall be comprised of:

        1.    Representatives from the Shasta County Sheriff's Office and the Police Department Field Operation's Division Commander or his designee.

    (e)    Must satisfactorily pass Armorer training (Armorer only)

    (f)    Must successfully pass a physical agility test, weighted pass/fail (Bomb Disposal Tech only)

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001038

# Redding Police Department
RPD Policy Manual

*Promotional and Transfer Policy*

    (g)    Experience in explosives or electronics is desirable, but not required (Bomb Disposal Tech only)

    (h)    Must satisfactorily pass the POST Range Master class (Range Master only)

    (i)    Must possess Class M-1 permit (ATMU only)

## 902.4  SPECIAL ASSIGNMENT ELIGIBILITY
In order to be eligible assignment to a special assignment, candidates shall have served for the designated years as a sworn peace officer as of the closing date of the application. Academy time does not count toward total sworn peace officer time. Minimum educational requirements (units) and college degrees shall be completed and proof submitted (copy of degree, degree completion letter, or official transcripts) as of the closing date of the application. For POST Certificate requirements, the applicant shall have a copy of the POST Certificate as of the closing date of the application. It is the individual's responsibility to ensure the necessary eligibility requirements are met prior to submitting an application. Community Service Officers (CSOs) or Services= candidates shall have served the designated years with the Department prior to assignment to a Special Assignment.

## 902.5  PROMOTIONAL AND SPECIAL ASSIGNMENT LIST TIME LIMITS
All promotions and transfers shall be in accordance with standards and procedures as determined by the City. Promotional lists will have a minimum life of one year and a maximum life of two years. The above will also apply to Special Assignments.

## 902.6  ROTATION FROM A SPECIALTY ASSIGNMENT
When an officer or CSO returns from specialty assignments (i.e., Investigations, NPU, SRO, Traffic) back to a regular patrol assignment, the Department should make every effort to accomplish the reassignment at the normal shift change. This will allow the officer/CSO advance notice and opportunity to sign up for the next shift by seniority. In all cases, the Chief of Police or his designee may make the change in an assignment based on the needs of the Department or specialty assignment.

## 902.7  HIRING/PROMOTIONAL AND SPECIALTY ASSIGNMENT SENIORITY
The hiring, transfer to specialty assignment, promotions and transfer to specialty assignment of employees shall occur on different calendar days. This will ensure no two employees are hired, promoted, or transferred on the same day.

The MOU between the City of Redding and the Redding Peace Officers Association (RPOA) has guidelines regarding the seniority for canine officers (MOU Section 9.3). Seniority within the Traffic Unit shall be based on consecutive seniority in the Traffic Unit.

Employees in all other specialty assignments and promotions will have seniority based on consecutive time in the assignment or rank.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001039

# Redding Police Department

RPD Policy Manual

*Promotional and Transfer Policy*

---

**902.8  PERMANENT PROMOTIONAL SPECIFICATIONS**

Specifications for promotional opportunities are on file with the City of Redding Personnel Department. Refer to City of Redding Class Specifications for details on all promotions.

Testing Process:

- Captains:
    - º  100% Chief's Oral
- Lieutenants:
    - º  100% Chief's Oral
- Sergeants:
    - º  45% Managerial Staff Input, 20% Citizen Panel, 35% Professional Panel
- Corporal:
    - º  45% Managerial Staff Input, 20% Citizen Panel, 35% Professional Panel

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001040

Redding Police Department
RPD Policy Manual

# Grievance Procedure

## 903.1  PURPOSE AND SCOPE

It is the policy of this Department that all grievances be handled quickly and fairly without discrimination against employees who file a grievance whether or not there is a basis for the grievance.

### 903.1.1  GRIEVANCE DEFINED

A grievance is any difference of opinion concerning terms or conditions of employment or the dispute involving the interpretation or application of any of the following documents by the person(s) affected:

- The employee bargaining agreement (Memorandum of Understanding)

- This Policy Manual

- City rules and regulations covering personnel practices or working conditions

Grievances may be brought by an individual affected employee or by a group representative.

Specifically outside the category of grievance are complaints related to alleged acts of sexual, racial, ethnic or other forms of unlawful harassment, as well as complaints related to allegations of discrimination on the basis of sex, race, religion, ethnic background and other lawfully protected status or activity are subject to the complaint options set forth in the Discriminatory Harassment Policy, and personnel complaints consisting of any allegation of misconduct or improper job performance against any department employee that, if true, would constitute a violation of department policy, federal, state or local law set forth in the Personnel Complaint Policy.

## 903.2  PROCEDURE

The grievance procedure is described in the employees Memorandum of Understanding.

| Policy |
|:------:|
| **904** |

# Anti-Retaliation

## 904.1  PURPOSE AND SCOPE
This policy prohibits retaliation against members who identify workplace issues, such as fraud, waste, abuse of authority, gross mismanagement or any inappropriate conduct or practices, including violations that may pose a threat to the health, safety or well-being of members.

This policy does not prohibit actions taken for nondiscriminatory or non-retaliatory reasons, such as discipline for cause.

These guidelines are intended to supplement and not limit members' access to other applicable remedies. Nothing in this policy shall diminish the rights or remedies of a member pursuant to any applicable federal law, provision of the U.S. Constitution, law, ordinance or memorandum of understanding.

## 904.2  POLICY
The Redding Police Department has a zero tolerance for retaliation and is committed to taking reasonable steps to protect from retaliation members who, in good faith, engage in permitted behavior or who report or participate in the reporting or investigation of workplace issues. All complaints of retaliation will be taken seriously and will be promptly and appropriately investigated.

## 904.3  RETALIATION PROHIBITED
No member may retaliate against any person for engaging in lawful or otherwise permitted behavior; for opposing a practice believed to be unlawful, unethical, discriminatory or retaliatory; for reporting or making a complaint under this policy; or for participating in any investigation related to a complaint under this or any other policy.

Retaliation includes any adverse action or conduct, including but not limited to:

- Refusing to hire or denying a promotion.

- Extending the probationary period.

- Unjustified reassignment of duties or change of work schedule.

- Real or implied threats or other forms of intimidation to dissuade the reporting of wrongdoing or filing of a complaint, or as a consequence of having reported or participated in protected activity.

- Taking unwarranted disciplinary action.

- Spreading rumors about the person filing the complaint or about the alleged wrongdoing.

- Shunning or unreasonably avoiding a person because he/she has engaged in protected activity.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001042

# Redding Police Department

RPD Policy Manual

*Anti-Retaliation*

## 904.4  COMPLAINTS OF RETALIATION

Any member who feels he/she has been retaliated against in violation of this policy should promptly report the matter to any supervisor, command staff member, Chief of Police or the City Personnel Director.

Members shall act in good faith, not engage in unwarranted reporting of trivial or minor deviations or transgressions, and make reasonable efforts to verify facts before making any complaint in order to avoid baseless allegations. Members shall not report or state an intention to report information or an allegation knowing it to be false, with willful or reckless disregard for the truth or falsity of the information or otherwise act in bad faith.

Investigations are generally more effective when the identity of the reporting member is known, thereby allowing investigators to obtain additional information from the reporting member. However, complaints may be made anonymously. All reasonable efforts shall be made to protect the reporting member's identity. However, confidential information may be disclosed to the extent required by law or to the degree necessary to conduct an adequate investigation and make a determination regarding a complaint. In some situations, the investigative process may not be complete unless the source of the information and a statement by the member is part of the investigative process.

## 904.5  SUPERVISOR RESPONSIBILITIES

Supervisors are expected to remain familiar with this policy and ensure that members under their command are aware of its provisions.

The responsibilities of supervisors include, but are not limited to:

(a)  Ensuring complaints of retaliation are investigated as provided in the Personnel Complaints Policy.

(b)  Receiving all complaints in a fair and impartial manner.

(c)  Documenting the complaint and any steps taken to resolve the problem.

(d)  Acknowledging receipt of the complaint, notifying the Chief of Police via the chain of command and explaining to the member how the complaint will be handled.

(e)  Taking appropriate and reasonable steps to mitigate any further violations of this policy.

(f)  Monitoring the work environment to ensure that any member making a complaint is not subjected to further retaliation.

(g)  Periodic follow-up with the complainant to ensure that retaliation is not continuing.

(h)  Not interfering with or denying the right of a member to make any complaint.

(i)  Taking reasonable steps to accommodate requests for assignment or schedule changes made by a member who may be the target of retaliation if it would likely mitigate the potential for further violations of this policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001043

Redding Police Department
RPD Policy Manual

*Anti-Retaliation*

## 904.6  COMMAND STAFF RESPONSIBILITIES

The Chief of Police should communicate to all supervisors the prohibition against retaliation.

Command staff shall treat all complaints as serious matters and shall ensure that prompt actions take place, including but not limited to:

(a) Communicating to all members the prohibition against retaliation.

(b) The timely review of complaint investigations.

(c) Remediation of any inappropriate conduct or condition and instituting measures to eliminate or minimize the likelihood of recurrence.

(d) The timely communication of the outcome to the complainant.

## 904.7  WHISTLE-BLOWING

California law protects members who (Labor Code § 1102.5; Government Code § 53296 et seq.):

(a) Report a violation of a state or federal statute or regulation to a government or law enforcement agency, including the member's supervisor or any other member with the authority to investigate the reported violation.

(b) Provide information or testify before a public body if the member has reasonable cause to believe a violation of law occurred.

(c) Refuse to participate in an activity that would result in a violation of a state or federal statute or regulation.

(d) File a complaint with a local agency about gross mismanagement or a significant waste of funds, abuse of authority, or a substantial and specific danger to public health or safety. Members shall exhaust all available administrative remedies prior to filing a formal complaint.

(e) Are family members of a person who has engaged in any protected acts described above.

Members are encouraged to report any legal violations through the chain of command (Labor Code § 1102.5).

Members who believe they have been the subject of retaliation for engaging in such protected behaviors should promptly report it to a supervisor. Supervisors should refer the complaint to the Professional Standards Unit for investigation pursuant to the Personnel Complaints Policy.

### 904.7.1  DISPLAY OF WHISTLE-BLOWER LAWS

The Department shall display a notice to members regarding their rights and responsibilities under the whistle-blower laws, including the whistle-blower hotline maintained by the Office of the Attorney General (Labor Code § 1102.8).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod) 001044

## Redding Police Department
RPD Policy Manual

*Anti-Retaliation*

### 904.8  RECORDS RETENTION AND RELEASE
The Administration Division shall ensure that documentation of investigations is maintained in accordance with the established records retention schedules.

### 904.9  TRAINING
The policy should be reviewed with each new member.

All members should receive periodic refresher training on the requirements of this policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001045

# Reporting of Employee Convictions

### 905.1  PURPOSE AND SCOPE
Convictions of certain offenses may restrict or prohibit an employee's ability to properly perform official duties. Therefore, all employees shall be required to promptly notify the Department of any past and current criminal convictions.

The Administration Division Commander, or their designee, shall submit in a timely manner a notice to the Commission on Peace Officer Standards and Training (POST) of any appointment, termination, reinstatement, name change or status change regarding any peace officer, reserve peace officer, public safety dispatcher and records supervisor employed by this Department (11 CCR 1003).

The Administration Division Commander, or their designee, shall submit in a timely manner a notice to POST of a felony conviction or Government Code § 1029 reason that disqualifies any current peace officer employed by this Department or any former peace officer if this Department was responsible for the investigation (11 CCR 1003).

### 905.2  DOMESTIC VIOLENCE CONVICTIONS, OUTSTANDING WARRANTS AND RESTRAINING ORDERS
California and federal law prohibit individuals convicted of, or having an outstanding warrant for, certain offenses and individuals subject to certain court orders from lawfully possessing a firearm. Such convictions and court orders often involve allegations of the use or attempted use of force or threatened use of a weapon on any individual in a domestic relationship (e.g., spouse, cohabitant, parent, child) (18 USC § 922; Penal Code § 29805).

All members are responsible for ensuring that they have not been disqualified from possessing a firearm by any such conviction or court order and shall promptly report any such conviction or court order to a supervisor, as provided in this policy.

### 905.3  OTHER CRIMINAL CONVICTIONS AND COURT ORDERS
Government Code § 1029 prohibits any person convicted of a felony from being a peace officer in the State of California. This prohibition applies regardless of whether the guilt was established by way of a verdict, guilty or nolo contendre plea.

Convictions of certain violations of the Vehicle Code and other provisions of law may also place restrictions on an employee's ability to fully perform the duties of the job.

Outstanding warrants as provided in Penal Code § 29805 also place restrictions on a member's ability to possess a firearm.

Moreover, while legal restrictions may or may not be imposed by statute or by the courts upon conviction of any criminal offense, criminal conduct by members of this department may be inherently in conflict with law enforcement duties and the public trust.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001046

# Redding Police Department

RPD Policy Manual

## *Reporting of Employee Convictions*

### 905.4  REPORTING PROCEDURE

All members of this Department and all retired officers with an identification card issued by the Department shall promptly notify their immediate supervisor (or the Chief of Police in the case of retired officers) in writing of any past or current criminal arrest, outstanding warrant or conviction regardless of whether or not the matter is currently on appeal and regardless of the penalty or sentence, if any.

All members and all retired officers with an identification card issued by the Department shall further promptly notify their immediate supervisor (or the Chief of Police in the case of retired officers) in writing if the member or retiree becomes the subject of a domestic violence restraining order or similar court order or becomes the subject of an outstanding warrant.

Any member whose criminal conviction unduly restricts or prohibits that member from fully and properly performing his/her duties may be disciplined including, but not limited to, being placed on administrative leave, reassignment and/or termination. Any effort to remove such disqualification or restriction shall remain entirely the responsibility of the member on his/her own time and expense.

Any member failing to provide prompt written notice pursuant to this policy shall be subject to discipline.

### 905.5  PROCEDURE FOR RELIEF

Pursuant to Penal Code § 29855, a peace officer may petition the court for permission to carry a firearm following a conviction under state law. Federal law, however, does not provide for any such similar judicial relief and the granting of a state court petition under Penal Code § 29855 will not relieve one of the restrictions imposed by federal law. Therefore, relief for any employee falling under the restrictions imposed by federal law may only be obtained by expungement of the conviction. Each employee shall seek relief from firearm restrictions on their own time and through their own resources.

Pursuant to Family Code § 6389(h), an individual may petition the court for an exemption to any restraining order, which would thereafter permit the individual to carry a firearm as a part of their employment. Relief from any domestic violence or other restriction shall also be pursued through the employee's own resources and on the employee's own time.

Pending satisfactory proof of relief from any legal restriction imposed on an employee's duties, the employee may be placed on administrative leave, reassigned or disciplined. The Department may but is not required to return an employee to any assignment, reinstate any employee or reverse any pending or imposed discipline upon presentation of satisfactory proof of relief from any legal restriction set forth in this policy.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001047

**Policy**

**906**

# Drug- and Alcohol-Free Workplace

## 906.1   PURPOSE AND SCOPE
The purpose of this policy is to establish clear and uniform guidelines regarding drugs and alcohol in the workplace.

## 906.2   POLICY
It is the policy of this Department to provide a drug- and alcohol-free workplace for all members.

## 906.3   GENERAL GUIDELINES
Alcohol and drug use in the workplace or on Department time can endanger the health and safety of Department members and the public. Such use shall not be tolerated (41 USC § 8103). Employees can refer to the Redding Police Department Substance Abuse Policy for further guidelines.

### 906.3.1   USE OF MEDICATIONS
Members should avoid taking any medications that will impair their ability to safely and completely perform their duties. Any member who is medically required or has a need to take any such medication shall report that need to his/her immediate supervisor prior to commencing any on-duty status.

No member shall be permitted to work or drive a vehicle owned or leased by the Department while taking any medication that has the potential to impair his/her abilities, without a written release from his/her physician.

## 906.4   EMPLOYEE ASSISTANCE PROGRAM
There may be available a voluntary employee assistance program to assist those who wish to seek help for alcohol and drug problems (41 USC § 8103). Insurance coverage that provides treatment for drug and alcohol abuse also may be available. Employees should contact the Personnel Department, their insurance providers or the employee assistance program for additional information. It is the responsibility of each employee to seek assistance before alcohol or drug problems lead to performance problems.

## 906.5   COMPLIANCE WITH THE DRUG-FREE WORKPLACE ACT
No later than 30 days following notice of any drug statute conviction for a violation occurring in the workplace involving a member, the Department will take appropriate disciplinary action, up to and including dismissal, and/or requiring the member to satisfactorily participate in a drug abuse assistance or rehabilitation program (41 USC § 8104).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001048

Redding Police Department

RPD Policy Manual

*Drug- and Alcohol-Free Workplace*

**906.6  CONFIDENTIALITY**

The Department recognizes the confidentiality and privacy due to its members. Disclosure of any information relating to substance abuse treatment, except on a need-to-know basis, shall only be with the express written consent of the member involved or pursuant to lawful process.

The written results of any screening tests and all documents generated by the employee assistance program are considered confidential medical records and shall be maintained separately from the employee's other personnel files.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Drug- and Alcohol-Free Workplace - 578

COR (McLeod)  001049

**Redding Police Department**

RPD Policy Manual

# Sick Leave

## 907.1  PURPOSE AND SCOPE

This policy provides general guidance regarding the use and processing of sick leave. The accrual and terms of use of sick leave for eligible employees are detailed in the City personnel manual or applicable collective bargaining agreement.

This policy is not intended to cover all types of sick or other leaves. For example, employees may be entitled to additional paid or unpaid leave for certain family and medical reasons as provided for in the Family and Medical Leave Act (FMLA) (29 USC § 2601 et seq.) and the California Family Rights Act, and leave related to domestic violence, sexual assault, stalking or for organ or bone marrow donor procedures (29 CFR 825; Government Code § 12945.2; Labor Code § 230.1; Labor Code § 1510).

## 907.2  POLICY

It is the policy of the Redding Police Department to provide eligible employees with a sick leave benefit. Sick leave use is covered in the employees Memorandum of Understanding.

## 907.3  NOTIFICATION

All members should notify the appropriate supervisor as soon as they are aware that they will not be able to report to work and no less than one hour before the start of their scheduled shifts. If, due to an emergency, a member is unable to contact the supervisor, every effort should be made to have a representative for the member contact the supervisor (Labor Code § 246 ).

When the necessity to be absent from work is foreseeable, such as planned medical appointments or treatments, the member shall whenever possible and practicable, provide the Department with no less than 30 days' notice of the impending absence (Labor Code § 246).

Upon return to work, members are responsible for ensuring their time off was appropriately accounted for, and for completing and submitting the required documentation describing the type of time off used and the specific amount of time taken.

## 907.4  REQUIRED NOTICES

The Personnel Director shall ensure:

    (a)    Written notice of the amount of paid sick leave available is provided to employees as provided in Labor Code § 246.

    (b)    A poster is displayed in a conspicuous place for employees to review that contains information on paid sick leave as provided in Labor Code § 247.

## 907.5  SUPERVISOR RESPONSIBILITIES

The responsibilities of supervisors include, but are not limited to:

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001050

# Redding Police Department

RPD Policy Manual

*Sick Leave*

    (a)    Monitoring and regularly reviewing the attendance of those under their command to ensure that the use of sick leave and absences is consistent with this policy.

    (b)    Attempting to determine whether an absence of four or more days may qualify as family medical leave and consulting with legal counsel or the Personnel Department as appropriate.

    (c)    Addressing absences and sick leave use in the member's performance evaluation when excessive or unusual use has:

        1.    Negatively affected the member's performance or ability to complete assigned duties.

        2.    Negatively affected department operations.

    (d)    When appropriate, counseling members regarding excessive absences and/or inappropriate use of sick leave.

    (e)    Referring eligible members to an available employee assistance program when appropriate.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001051

**Policy**

**908**

Redding Police Department

RPD Policy Manual

# Communicable Diseases

### 908.1  PURPOSE AND SCOPE
This policy provides general guidelines to assist in minimizing the risk of Department members contracting and/or spreading communicable diseases.

908.1.1  DEFINITIONS
Definitions related to this policy include:

**Communicable disease** - A human disease caused by microorganisms that are present in and transmissible through human blood, bodily fluid, tissue, or by breathing or coughing. These diseases commonly include, but are not limited to, hepatitis B virus (HBV), HIV and tuberculosis.

**Exposure** - When an eye, mouth, mucous membrane or non-intact skin comes into contact with blood or other potentially infectious materials, or when these substances are injected or infused under the skin; when an individual is exposed to a person who has a disease that can be passed through the air by talking, sneezing or coughing (e.g., tuberculosis), or the individual is in an area that was occupied by such a person. Exposure only includes those instances that occur due to a member's position at the Redding Police Department. (See the exposure control plan for further details to assist in identifying whether an exposure has occurred.)

### 908.2  POLICY
The Redding Police Department is committed to providing a safe work environment for its members. Members should be aware that they are ultimately responsible for their own health and safety.

### 908.3  EXPOSURE CONTROL OFFICER
The Chief of Police will assign a person as the Exposure Control Officer (ECO). The ECO should be the supervisor of the Department first aid instructors. The ECO shall develop an exposure control plan that includes:

(a)  Exposure-prevention and decontamination procedures.

(b)  Procedures for when and how to obtain medical attention in the event of an exposure or suspected exposure.

(c)  The provision that Department members will have no-cost access to the appropriate personal protective equipment (PPE) (e.g., gloves, face masks, eye protection, pocket masks) for each member's position and risk of exposure.

(d)  Evaluation of persons in custody for any exposure risk and measures to separate them (15 CCR 1051; 15 CCR 1207).

(e)  Compliance with all relevant laws or regulations related to communicable diseases, including:

   1.  Responding to requests and notifications regarding exposures covered under the Ryan White law (42 USC § 300ff-133; 42 USC § 300ff-136).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001052

*Communicable Diseases*

2. Bloodborne pathogen mandates including (8 CCR 5193):

   (a) Sharps injury log.

   (b) Needleless systems and sharps injury protection.

3. Airborne transmissible disease mandates including (8 CCR 5199):

   (a) Engineering and work practice controls related to airborne transmissible diseases.

   (b) Distribution of appropriate personal protective equipment to minimize exposure to airborne disease.

4. Promptly notifying the county health officer regarding member exposures (Penal Code § 7510).

5. Establishing procedures to ensure that members request exposure notification from health facilities when transporting a person that may have a communicable disease and that the member is notified of any exposure as required by Health and Safety Code § 1797.188.

6. Informing members of the provisions of Health and Safety Code § 1797.188 (exposure to communicable diseases and notification).

(f) Provisions for acting as the designated officer liaison with health care facilities regarding communicable disease or condition exposure notification. The designated officer should coordinate with other department members to fulfill the role when not available. The designated officer shall ensure that the name, title and telephone number of the designated officer is posted on the Department website (Health and Safety Code § 1797.188).

The ECO should also act as the liaison with the Division of Occupational Safety and Health (Cal/OSHA) and may request voluntary compliance inspections. The ECO shall annually review and update the exposure control plan and review implementation of the plan (8 CCR 5193).

## 908.4   EXPOSURE PREVENTION AND MITIGATION

### 908.4.1   GENERAL PRECAUTIONS
All members are expected to use good judgment and follow training and procedures related to mitigating the risks associated with communicable disease. This includes, but is not limited to (8 CCR 5193):

(a) Stocking disposable gloves, antiseptic hand cleanser, CPR masks or other specialized equipment in the work area or Department vehicles, as applicable.

(b) Wearing Department-approved disposable gloves when contact with blood, other potentially infectious materials, mucous membranes and non-intact skin can be reasonably anticipated.

(c) Washing hands immediately or as soon as feasible after removal of gloves or other PPE.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001053

# Redding Police Department
### RPD Policy Manual

*Communicable Diseases*

    (d)    Treating all human blood and bodily fluids/tissue as if it is known to be infectious for a communicable disease.

    (e)    Using an appropriate barrier device when providing CPR.

    (f)    Using a face mask or shield if it is reasonable to anticipate an exposure to an airborne transmissible disease.

    (g)    Decontaminating non-disposable equipment (e.g., flashlight, control devices, clothing and portable radio) as soon as possible if the equipment is a potential source of exposure.

        1.    Clothing that has been contaminated by blood or other potentially infectious materials shall be removed immediately or as soon as feasible and stored/decontaminated appropriately.

    (h)    Handling all sharps and items that cut or puncture (e.g., needles, broken glass, razors, knives) cautiously and using puncture-resistant containers for their storage and/or transportation.

    (i)    Avoiding eating, drinking, smoking, applying cosmetics or lip balm, or handling contact lenses where there is a reasonable likelihood of exposure.

    (j)    Disposing of biohazardous waste appropriately or labeling biohazardous material properly when it is stored.

### 908.4.2   IMMUNIZATIONS
Members who could be exposed to HBV due to their positions may receive the HBV vaccine and any routine booster at no cost (8 CCR 5193).

## 908.5   POST EXPOSURE

### 908.5.1   INITIAL POST-EXPOSURE STEPS
Members who experience an exposure or suspected exposure shall:

    (a)    Begin decontamination procedures immediately (e.g., wash hands and any other skin with soap and water, flush mucous membranes with water).

    (b)    Obtain medical attention as appropriate.

    (c)    Notify a supervisor as soon as practicable.

### 908.5.2   REPORTING REQUIREMENTS
The supervisor on-duty shall investigate every exposure or suspected exposure that occurs as soon as possible following the incident. The supervisor shall ensure a City of Redding Incident Report is completed. The following informationshould include (8 CCR 5193):

    (a)    Name and Social Security number of the member exposed

    (b)    Date and time of the incident

    (c)    Location of the incident

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001054

## Communicable Diseases

    (d)    Potentially infectious materials involved and the source of exposure (e.g., identification of the person who may have been the source)

    (e)    Work being done during exposure

    (f)    How the incident occurred or was caused

    (g)    PPE in use at the time of the incident

    (h)    Actions taken post-event (e.g., clean-up, notifications)

The supervisor shall advise the member that disclosing the identity and/or infectious status of a source to the public or to anyone who is not involved in the follow-up process is prohibited. The supervisor should complete the incident documentation in conjunction with other reporting requirements that may apply (see the Occupational Disease and Work-Related Injury Reporting Policy).

### 908.5.3  MEDICAL CONSULTATION, EVALUATION AND TREATMENT
Department members shall have the opportunity to have a confidential medical evaluation immediately after an exposure and follow-up evaluations as necessary (8 CCR 5193).

The ECO should request a written opinion/evaluation from the treating medical professional that contains only the following information:

    (a)    Whether the member has been informed of the results of the evaluation.

    (b)    Whether the member has been notified of any medical conditions resulting from exposure to blood or other potentially infectious materials which require further evaluation or treatment.

No other information should be requested or accepted by the ECO.

### 908.5.4  COUNSELING
The Department shall provide the member, and his/her family if necessary, the opportunity for counseling and consultation regarding the exposure (8 CCR 5193).

### 908.5.5  SOURCE TESTING
Testing a person for communicable diseases when that person was the source of an exposure should be done when it is desired by the exposed member or when it is otherwise appropriate (8 CCR 5193). Source testing is the responsibility of the ECO. If the ECO is unavailable to seek timely testing of the source, it is the responsibility of the exposed member's supervisor to ensure testing is sought. The supervisor shall complete Form CDPH-8479 by the end of the exposed employees shift if possible, but no longer than two (2) days after the incident. Form CDPH-8749 shall be attached to the completed Incident Report and forwarded to the Chief of Police.

Source testing may be achieved by:

    (a)    Obtaining consent from the individual.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001055

# Redding Police Department
RPD Policy Manual

*Communicable Diseases*

---

    (b)    Complying with the statutory scheme of Health and Safety Code § 121060. This includes seeking consent from the person who was the source of the exposure and seeking a court order if consent is not given.

    (c)    Testing the exposed member for evidence of a communicable disease and seeking consent from the source individual to either access existing blood samples for testing or for the source to submit to testing (Health and Safety Code § 120262).

    (d)    Taking reasonable steps to immediately contact the County Health Officer and provide preliminary information regarding the circumstances of the exposure and the status of the involved individuals to determine whether the County Health Officer will order testing (Penal Code § 7510).

    (e)    Under certain circumstances, a court may issue a search warrant for the purpose of HIV testing a person when the exposed member qualifies as a crime victim (Penal Code § 1524.1).

Since there is the potential for overlap between the different manners in which source testing may occur, the ECO is responsible for coordinating the testing to prevent unnecessary or duplicate testing.

The ECO should seek the consent of the individual for testing and consult the City Attorney to discuss other options when no statute exists for compelling the source of an exposure to undergo testing if he/she refuses.

Public Health form CDPH-8479 can be accessed online at:

- CDPH-8479

Using this form, the law enforcement employee may request a test for HIV, Hepatitis B or Hepatitis C or the person who is the subject of the report.

## 908.6  CONFIDENTIALITY OF REPORTS
Medical information shall remain in confidential files and shall not be disclosed to anyone without the member's written consent (except as required by law). Test results from persons who may have been the source of an exposure are to be kept confidential as well.

## 908.7  TRAINING
All members shall participate in training regarding communicable diseases commensurate with the requirements of their position. The training (8 CCR 5193):

    (a)    Shall be provided at the time of initial assignment to tasks where an occupational exposure may take place and at least annually after the initial training.

    (b)    Shall be provided whenever the member is assigned new tasks or procedures affecting his/her potential exposure to communicable disease.

    (c)    Should provide guidance on what constitutes an exposure, what steps can be taken to avoid an exposure and what steps should be taken if a suspected exposure occurs.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod)  001056

# Smoking and Tobacco Use

### 909.1   PURPOSE AND SCOPE
This policy establishes limitations on smoking and the use of tobacco products by members and others while on-duty or while in Redding Police Department facilities or vehicles.

For the purposes of this policy, smoking and tobacco use includes, but is not limited to, any tobacco product, such as cigarettes, cigars, pipe tobacco, snuff, tobacco pouches and chewing tobacco, as well as any device intended to simulate smoking, such as an electronic cigarette or personal vaporizer.

### 909.2   POLICY
The Redding Police Department recognizes that tobacco use is a health risk and can be offensive to others.

Smoking and tobacco use also presents an unprofessional image for the Department and its members. Smoking and tobacco use by members is prohibited anytime members are in public view representing the Redding Police Department. Smoking is prohibited inside all city facilities, city owned/rented/leased vehicles, and on the City Hall Campus. For further see attached City of Redding Tobacco Use Policy, City Manager Smoke Free Campus at City Hall. (Government Code § 7597; Labor Code § 6404.5).

See attachment: TobaccoUsePolicyRev815.pdf

See attachment: CM101SmokefreecampusatCity.pdf

### 909.3   ADDITIONAL PROHIBITIONS
No person shall use tobacco products within 20 feet of a main entrance, exit or operable window of any public building (including any department facility), or buildings on the campuses of the University of California, California State University and California community colleges, whether present for training, enforcement or any other purpose (Government Code § 7596 et seq.).

### 909.3.1   NOTICE
The Chief of Police or the authorized designee should ensure that proper signage is posted at each entrance to the Department facility (Labor Code § 6404.5).

**Redding Police Department**
RPD Policy Manual

# Personnel Complaints

## 910.1   PURPOSE AND SCOPE
This policy provides guidelines for the reporting, investigation and disposition of complaints regarding the conduct of members of the Redding Police Department. This policy shall not apply to any questioning, counseling, instruction, informal verbal admonishment or other routine or unplanned contact of a member in the normal course of duty, by a supervisor or any other member, nor shall this policy apply to a criminal investigation.

## 910.2   POLICY
The Redding Police Department takes seriously all complaints regarding the service provided by the Department and the conduct of its members.

The Department will accept and address all complaints of misconduct in accordance with this policy and applicable federal, state and local law, municipal and county rules and the requirements of any collective bargaining agreements.

It is also the policy of this Department to ensure that the community can report misconduct without concern for reprisal or retaliation.

The investigation of alleged misconduct shall be considered confidential and release of any portion of an investigation shall not be made without the prior approval of the Chief of Police.

## 910.3   PERSONNEL COMPLAINTS
Personnel complaints include any allegation of misconduct or improper job performance that, if true, would constitute a violation of Department policy or of federal, state or local law, policy or rule. Personnel complaints may be generated internally or by the public.

Inquiries about conduct or performance that, if true, would not violate Department policy or federal, state or local law, policy or rule may be handled informally by a supervisor and shall not be considered a personnel complaint. Such inquiries generally include clarification regarding policy, procedures or the response to specific incidents by the Department.

### 910.3.1   SOURCES OF COMPLAINTS
The following applies to the source of complaints:

(a)   Individuals from the public may make complaints in any form, including in writing, by email, in person or by telephone.

(b)   Any Department member becoming aware of alleged misconduct shall immediately notify a supervisor.

(c)   Supervisors shall initiate a complaint based upon observed misconduct or receipt from any source alleging misconduct that, if true, could result in disciplinary action.

(d)   Anonymous and third-party complaints should be accepted and investigated to the extent that sufficient information is provided.

Redding Police Department
RPD Policy Manual

*Personnel Complaints*

(e)     Tort claims and lawsuits may generate a personnel complaint.

## 910.4  AVAILABILITY AND ACCEPTANCE OF COMPLAINTS

### 910.4.1  COMPLAINT FORMS
Personnel Complaint and Procedure Report forms will be available at the front counter of the Redding Police Department Records Unit and be accessible through the Department website.

### 910.4.2  ACCEPTANCE
All complaints will be courteously accepted by any Department member and promptly given to the appropriate supervisor. Complaints received during business hours shall be referred to the employees' Watch Commander. In their absence, the on-duty supervisor shall receive the complaint and notify their concerned Watch Commander as soon as practical. If the complaint is of sufficient gravity, the supervisor shall notify their appropriate Watch Commander, shall be notified regardless of the hour.

Although written complaints are preferred, a complaint may also be filed orally, either in person or by telephone. Such complaints will be directed to a Watch Commander, or supervisor in their absence. If a Watch Commander/supervisor are not immediately available to take an oral complaint, the receiving member shall obtain contact information sufficient for the Watch Commnader/supervisor to contact the complainant. The Watch Commander/supervisor, upon contact with the complainant, should determine the severity of the complaint. If the complainant requests a formal complaint, the Watch Commander/supervisor shall complete and submit a Personnel Complaint and Procedures Report form to the Division Commander via chain of command.

If the complainant alleges injuries were caused by an employee's actions, a medical release form should be obtained.

Although not required, complainants should be encouraged to file complaints in person so that proper identification, signatures, photographs or physical evidence may be obtained as necessary.

A complainant shall be provided with a copy of his/her statement at the time it is filed with the Department (Penal Code § 832.7).

### 910.4.3  AVAILABILITY OF WRITTEN PROCEDURES
The Department shall make available to the public a written description of the investigation procedures for complaints (Penal Code § 832.5).

## 910.5  DOCUMENTATION
Watch Commanders shall ensure that all formal complaints are documented on a Personnel Complaint and Procedures Report form. The Watch Commander shall ensure that the nature of the complaint is defined as clearly as possible.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001059

# Redding Police Department

RPD Policy Manual

---

*Personnel Complaints*

---

All formal complaints and inquiries should also be documented in a log that records and tracks complaints. The log shall include the nature of the complaint and the actions taken to address the complaint. This log will be kept in the Professional Standards Unit.

## 910.6   ADMINISTRATIVE INVESTIGATIONS

Allegations of misconduct will be administratively investigated as follows.

### 910.6.1   SUPERVISOR RESPONSIBILITIES

In general, the initial responsibility for the investigation of a personnel complaint shall rest with the member's immediate Watch Commander, if available. In their absence, the supervisor may assume the initial responsibility. If the Watch Commander/supervisor is the complainant, or has any personal involvement regarding the alleged misconduct, the initial responsibility should not be conducted by this person. The Division Commander may direct that another supervisor investigate any complaint.

The responsibilities of the Watch Commander and/or supervisor include but are not limited to:

(a)   Ensuring that upon receiving or initiating any formal complaint, a Personnel Complaint and Procedures Report form is completed.

    (a)   The original complaint form will be directed to the Division Commander of the accused member, via the chain of command, who will take appropriate action and/or determine who will have responsibility for the investigation.

    (b)   In circumstances where the integrity of the investigation could be jeopardized by reducing the complaint to writing or where the confidentiality of a complainant is at issue, a Watch Commander and/or supervisor may orally report the matter to the member's Division Commander or the Chief of Police, who will initiate appropriate action.

(b)   Responding to all complainants in a professional manner.

(c)   Resolving those personnel complaints that can be resolved immediately. Personnel complaints may be resolved by a supervisor talking with the complainant and do not raise the the level of a formal, written complaint.

(d)   Ensuring that upon receipt of a complaint involving allegations of a potentially serious nature, the Division Commander is notified via the chain of command as soon as practicable.

(e)   Promptly contacting the Division Commander for direction regarding addressing a complaint that relates to sexual, racial, ethnic or other forms of prohibited harassment or discrimination.

(f)   Forwarding unresolved personnel complaints to the Watch Commander, who will determine whether to contact the complainant or assign the complaint for investigation.

(g)   Informing the complainant of their name, contact information, and the complaint number, if available.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001060

# Redding Police Department

RPD Policy Manual

*Personnel Complaints*

---

    (h)    Investigating a complaint as follows:

        1.    Making reasonable efforts to obtain names, addresses and telephone numbers of witnesses.

        2.    When appropriate, ensuring immediate medical attention is provided and photographs of alleged injuries and accessible uninjured areas are taken.

    (i)    Ensuring that the procedural rights of the accused member are followed (Government Code § 3303 et seq.).

    (j)    Ensuring interviews of the complainant are generally conducted during reasonable hours.

## 910.6.2   ADMINISTRATIVE INVESTIGATION PROCEDURES

Whether conducted by a supervisor, Watch Commander, or a member of the Professional Standards Unit, the following applies to members covered by the Public Safety Officers Procedural Bill of Rights Act (POBR) (Government Code § 3303):

    (a)    Interviews of an accused member shall be conducted during reasonable hours and preferably when the member is on-duty. If the member is off-duty, he/she shall be compensated.

    (b)    Unless waived by the member, interviews of an accused member shall be at the Redding Police Department or other reasonable and appropriate place.

    (c)    No more than two interviewers should ask questions of an accused member.

    (d)    Prior to any interview, a member shall be informed of the nature of the investigation, the name, rank and command of the officer in charge of the investigation, the interviewing officers and all other persons to be present during the interview.

    (e)    All interviews shall be for a reasonable period and the member's personal needs should be accommodated.

    (f)    No member should be subjected to offensive or threatening language, nor shall any promises, rewards or other inducements be used to obtain answers.

    (g)    Any member refusing to answer questions directly related to the investigation may be ordered to answer questions administratively and may be subject to discipline for failing to do so.

        1.    A member should be given an order to answer questions in an administrative investigation that might incriminate the member in a criminal matter only after the member has been given a *Lybarger* advisement. Administrative investigators should consider the impact that compelling a statement from the member may have on any related criminal investigation and should take reasonable steps to avoid creating any foreseeable conflicts between the two related investigations. This may include conferring with the person in charge of the criminal investigation (e.g., discussion of processes, timing, implications).

        2.    No information or evidence administratively coerced from a member may be provided to anyone involved in conducting the criminal investigation or to any prosecutor.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001061

# Redding Police Department

RPD Policy Manual

---

*Personnel Complaints*

---

(h)   The interviewer should record all interviews of members and witnesses. The member may also record the interview. If the member has been previously interviewed, a copy of that recorded interview shall be provided to the member prior to any subsequent interview.

(i)   All members subjected to interviews that could result in discipline have the right to have an uninvolved representative present during the interview. However, in order to maintain the integrity of each individual's statement, involved members shall not consult or meet with a representative or attorney collectively or in groups prior to being interviewed.

(j)   All members shall provide complete and truthful responses to questions posed during interviews.

(k)   No member may be requested or compelled to submit to a polygraph examination, nor shall any refusal to submit to such examination be mentioned in any investigation (Government Code § 3307).

No investigation shall be undertaken against any officer solely because the officer has been placed on a prosecutor's *Brady* list or the name of the officer may otherwise be subject to disclosure pursuant to *Brady v. Maryland*. However, an investigation may be based on the underlying acts or omissions for which the officer has been placed on a *Brady* list or may otherwise be subject to disclosure pursuant to *Brady v. Maryland* (Government Code § 3305.5).

## 910.6.3   ADMINISTRATIVE INVESTIGATION FORMAT

The Internal Affairs Investigation shall summarize the pertinent facts including:

(a)   A summary of the complaint or alleged act of misconduct.

(b)   Pertinent portions of the statements of all parties to the incident, using Department Personnel Complaint and Procedures Report for the initial complaint reporting.

(c)   A description of the incident and evidence important to the case.

(d)   The observations and conclusions of the investigating officer.

## 910.6.4   DISPOSITIONS

Each personnel complaint shall be classified with one of the following dispositions:

**Unfounded** - When the investigation discloses that the alleged acts did not occur or did not involve Department members. Complaints that are determined to be frivolous will fall within the classification of unfounded (Penal Code § 832.8).

**Exonerated** - When the investigation discloses that the alleged act occurred but that the act was justified, lawful and/or proper.

**Not sustained** - When the investigation discloses that there is insufficient evidence to sustain the complaint or fully exonerate the member.

**Sustained** - A final determination by an investigating agency, commission, board, hearing officer, or arbitrator, as applicable, following an investigation and opportunity for an administrative appeal

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001062

# Redding Police Department

RPD Policy Manual

pursuant to Government Code § 3304 and Government Code § 3304.5 that the actions of an officer were found to violate law or Department policy (Penal Code § 832.8).

If an investigation discloses misconduct or improper job performance that was not alleged in the original complaint, the investigator shall take appropriate action with regard to any additional allegations.

910.6.5   COMPLETION OF INVESTIGATIONS
Every investigator or supervisor assigned to investigate a personnel complaint or other alleged misconduct shall proceed with due diligence in an effort to complete the investigation within one year from the date of discovery by an individual authorized to initiate an investigation (Government Code § 3304).

In the event that an investigation cannot be completed within one year of discovery, the assigned investigator or supervisor shall ensure that an extension or delay is warranted within the exceptions set forth in Government Code § 3304(d) or Government Code § 3508.1.

**910.7   ADMINISTRATIVE SEARCHES**
Assigned lockers, storage spaces and other areas, including desks, offices and vehicles, may be searched as part of an administrative investigation upon a reasonable suspicion of misconduct.

Such areas may also be searched any time by a supervisor for non-investigative purposes, such as obtaining a needed report, radio or other document or equipment.

Lockers and storage spaces may only be administratively searched in the member's presence, with the member's consent, with a valid search warrant or where the member has been given reasonable notice that the search will take place (Government Code § 3309).

910.7.1   DISCLOSURE OF FINANCIAL INFORMATION
An employee may be compelled to disclose personal financial information under the following circumstances (Government Code § 3308):

(a)   Pursuant to a state law or proper legal process

(b)   Information exists that tends to indicate a conflict of interest with official duties

(c)   If the employee is assigned to or being considered for a special assignment with a potential for bribes or other improper inducements

**910.8   ADMINISTRATIVE LEAVE**
When a complaint of misconduct is of a serious nature, or when circumstances indicate that allowing the accused to continue to work would adversely affect the mission of the Department, the Chief of Police or the authorized designee may temporarily assign an accused employee to administrative leave. Any employee placed on administrative leave:

(a)   May be required to relinquish any Department badge, identification, assigned weapons and any other Department equipment.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001063

Redding Police Department
RPD Policy Manual

    (b)    Shall be required to continue to comply with all policies and lawful orders of a supervisor.

    (c)    May be temporarily reassigned to a different shift, generally a normal business-hours shift, during the investigation. The employee may be required to remain available for contact at all times during such shift, and will report as ordered.

## 910.9   CRIMINAL INVESTIGATION

Where a member is accused of potential criminal conduct, a separate supervisor, investigator, or outside law enforcement agency shall be assigned to investigate the criminal allegations apart from any administrative investigation. Any separate administrative investigation may parallel a criminal investigation.

The Chief of Police shall be notified as soon as practicable when a member is accused of criminal conduct. The Chief of Police may request a criminal investigation by an outside law enforcement agency.

A member accused of criminal conduct shall be advised of his/her constitutional rights (Government Code § 3303(h)). The member should not be administratively ordered to provide any information in the criminal investigation.

The Redding Police Department may release information concerning the arrest or detention of any member, including an officer, that has not led to a conviction. No disciplinary action should be taken until an independent administrative investigation is conducted.

## 910.10   POST-ADMINISTRATIVE INVESTIGATION PROCEDURES

Upon completion of a formal investigation, an investigation report should be forwarded to the Chief of Police through the chain of command. Each level of command should review the report and include his/her comments in writing before forwarding the report. The Chief of Police may accept or modify any classification or recommendation for disciplinary action.

### 910.10.1   DIVISION COMMANDER RESPONSIBILITIES

Upon receipt of any completed personnel investigation, the Division Commander of the involved member shall review the entire investigative file, the member's personnel file and any other relevant materials.

The Division Commander shall make recommendations regarding the disposition of any allegations and the amount of discipline, if any, to be imposed.

Prior to forwarding recommendations to the Chief of Police, the Division Commander may return the entire investigation to the assigned investigator or supervisor for further investigation or action.

When forwarding any written recommendation to the Chief of Police, the Division Commander shall include all relevant materials supporting the recommendation. Actual copies of a member's existing personnel file need not be provided and may be incorporated by reference.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001064

# Redding Police Department
RPD Policy Manual

*Personnel Complaints*

---

### 910.10.2   CHIEF OF POLICE RESPONSIBILITIES
Upon receipt of any written recommendation for disciplinary action, the Chief of Police shall review the recommendation and all accompanying materials. The Chief of Police may modify any recommendation and/or may return the file to the Division Commander for further investigation or action.

Once the Chief of Police is satisfied that no further investigation or action is required by staff, the Chief of Police shall approve or reject the amount of discipline, if any, that should be imposed. In the event disciplinary action is proposed, the Division Commander shall provide the member with a pre-disciplinary procedural due process hearing (*Skelly*) by providing written notice of the charges, proposed action and reasons for the proposed action. Written notice shall be provided within one year from the date of discovery of the misconduct (Government Code § 3304(d)). The Division Commander shall also provide the member with:

    (a)    Access to all of the materials considered by the Division Commander in recommending the proposed discipline.

    (b)    An opportunity to respond orally or in writing to the Chief of Police within five days of receiving the notice.

        1.    Upon a showing of good cause by the member, the Chief of Police may grant a reasonable extension of time for the member to respond.

        2.    If the member elects to respond orally, the presentation may be recorded by the Department. Upon request, the member shall be provided with a copy of the recording.

Once the member has completed his/her response or if the member has elected to waive any such response, the Chief of Police shall consider all information received in regard to the recommended discipline. The Chief of Police shall render a timely written decision to the member and specify the grounds and reasons for discipline and the effective date of the discipline. Once the Chief of Police has issued a written decision, the discipline shall become effective.

### 910.10.3   NOTICE OF FINAL DISPOSITION TO THE COMPLAINANT
The Chief of Police or the authorized designee shall ensure that the complainant is notified of the disposition (i.e., sustained, not sustained, exonerated, unfounded) of the complaint (Penal Code § 832.7(f)).

### 910.10.4   NOTICE REQUIREMENTS
The disposition of any civilian's complaint shall be released to the complaining party within 30 days of the final disposition. This release shall not include what discipline, if any, was imposed (Penal Code § 832.7(f)).

### 910.11   PRE-DISCIPLINE EMPLOYEE RESPONSE
The pre-discipline process is intended to provide the accused employee with an opportunity to present a written or oral response to the Chief of Police after having had an opportunity to review

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001065

Redding Police Department
RPD Policy Manual

*Personnel Complaints*

the supporting materials and prior to imposition of any recommended discipline. The employee shall consider the following:

(a)   The response is not intended to be an adversarial or formal hearing.

(b)   Although the employee may be represented by an uninvolved representative or legal counsel, the response is not designed to accommodate the presentation of testimony or witnesses.

(c)   The employee may suggest that further investigation could be conducted or the employee may offer any additional information or mitigating factors for the Chief of Police to consider.

(d)   In the event that the Chief of Police elects to cause further investigation to be conducted, the employee shall be provided with the results prior to the imposition of any discipline.

(e)   The employee may thereafter have the opportunity to further respond orally or in writing to the Chief of Police on the limited issues of information raised in any subsequent materials.

## 910.12   POST-DISCIPLINE APPEAL RIGHTS

Non-probationary employees have the right to appeal a suspension without pay, punitive transfer, demotion, reduction in pay or step, or termination from employment. The employee has the right to appeal using the procedures established by any collective bargaining agreement, Memorandum of Understanding and/or personnel rules.

In the event of punitive action against an employee covered by the POBR, the appeal process shall be in compliance with Government Code § 3304 and Government Code § 3304.5.

During any administrative appeal, evidence that an officer has been placed on a *Brady* list or is otherwise subject to *Brady* restrictions may not be introduced unless the underlying allegations of misconduct have been independently established. Thereafter, such *Brady* evidence shall be limited to determining the appropriateness of the penalty (Government Code § 3305.5).

## 910.13   PROBATIONARY EMPLOYEES AND OTHER MEMBERS

At-will and probationary employees and those members other than non-probationary employees may be released from employment for non-disciplinary reasons (e.g., failure to meet standards) without adherence to the procedures set forth in this policy or any right to appeal. However, any probationary officer subjected to an investigation into allegations of misconduct shall be entitled to those procedural rights, as applicable, set forth in the POBR (Government Code § 3303; Government Code § 3304).

At-will, probationary employees and those other than non-probationary employees subjected to discipline or termination as a result of allegations of misconduct shall not be deemed to have acquired a property interest in their position, but shall be given the opportunity to appear before the Chief of Police or authorized designee for a non-evidentiary hearing for the sole purpose of

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001066

# Redding Police Department
RPD Policy Manual

*Personnel Complaints*

attempting to clear their name or liberty interest. There shall be no further opportunity for appeal beyond the liberty interest hearing and the decision of the Chief of Police shall be final.

## 910.14   PERSONNEL INVESTIGATION FILES

Government Code Section 3303(g) states, in part, "The public safety officer shall be entitled to a transcribed copy of...any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential." Pursuant to 3303(g), the Department will provide the accused officer all copies of materials upon which the action is based prior to disciplinary action.

Routing and maintenance of completed investigations of complaints against Department employees:

(a)   **Divisional File**: Will be maintained within the division where the employee is assigned. The documentation contained in this file will be used by supervisors to assist them in completing annual personnel evaluations (PER). Both positive and negative documentation on employee performance will be maintained in this file. Positive performance documentation will be referenced in the PER and discarded after the PER is approved and sent to the Personnel Department at City Hall. Negative documentation maintained in this file will be limited to memoranda describing oral counseling. Negative documentation may be referenced in the PER. Documents used to support a below standards rating in one or more performance area will be retained in the Divisional file and be used for documentation on the PER. No documentation will be held in this file for more than one year (unless personnel or legal proceedings are pending).

(b)   **Traffic Accident**: Traffic Accident Review Board (TARB) files will be maintained in the Administration Division and contain documents as outlined per policy. These files will contain TARBs where the employee was found not at fault or was at fault and receives a memoranda describing an oral counseling or training as a remedy. These files will be purged after five years. TARBs which result in a sworn officer receiving formal discipline will be maintained in the Internal Affairs file for sworn officers. For non-sworn employees, TARBs which result in a non-sworn employee receiving formal discipline will be placed in their permanent personnel file at City Hall.

(c)   **Internal Affairs**: Internal Affairs Files (IA) will be maintained in the Administration Division. They will contain formal complaints of misconduct and the accompanying completed investigations, along with any documentation where the punishment is a written reprimand or more severe. Internal Affairs files will be maintained as outlined in Policy 913.6. Investigations of formal complaints of misconduct against non-sworn employees will be maintained in the Administrative Division. Any investigation resulting in discipline of a non-sworn employee will be forwarded to the City Personnel Department to be placed in their permanent personnel file at City Hall.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001067

# Seat Belts

## 911.1  PURPOSE AND SCOPE

This policy establishes guidelines for the use of seat belts and child restraints. This policy will apply to all members operating or riding in department vehicles (Vehicle Code § 27315.5).

### 911.1.1  DEFINITIONS

Definitions related to this policy include:

**Child restraint system** - An infant or child passenger restraint system that meets Federal Motor Vehicle Safety Standards (FMVSS) and Regulations set forth in 49 CFR 571.213.

## 911.2  POLICY

It is the policy of the Redding Police Department that members use safety and child restraint systems to reduce the possibility of death or injury in a motor vehicle collision.

## 911.3  WEARING OF SAFETY RESTRAINTS

All members shall wear properly adjusted safety restraints when operating or riding in a seat equipped with restraints, in any vehicle owned, leased or rented by this department while on- or off-duty, or in any privately owned vehicle while on-duty. The member driving such a vehicle shall ensure that all other occupants, including non-members, are also properly restrained.

Exceptions to the requirement to wear safety restraints may be made only in exceptional situations where, due to unusual circumstances, wearing a seat belt would endanger the member or the public. Members must be prepared to justify any deviation from this requirement.

## 911.4  TRANSPORTING CHILDREN

Children under the age of 8 shall be transported in compliance with California's child restraint system requirements (Vehicle Code § 27360; Vehicle Code § 27363).

Rear seat passengers in a cage-equipped vehicle may have reduced clearance, which requires careful seating and positioning of seat belts. Due to this reduced clearance, and if permitted by law, children and any child restraint system may be secured in the front seat of such vehicles provided this positioning meets federal safety standards and the vehicle and child restraint system manufacturer's design and use recommendations. In the event that a child is transported in the front seat of a vehicle, the seat should be pushed back as far as possible and the passenger-side airbag should be deactivated. If this is not possible, members should arrange alternate transportation when feasible. A child shall not be transported in a rear-facing child restraint system in the front seat in a vehicle that is equipped with an active frontal passenger airbag (Vehicle Code § 27363).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001068

# Redding Police Department
RPD Policy Manual

*Seat Belts*

---

### 911.5  TRANSPORTING SUSPECTS, PRISONERS OR ARRESTEES

Suspects, prisoners and arrestees should be in a seated position and secured in the rear seat of any department vehicle with a prisoner restraint system or, when a prisoner restraint system is not available, by seat belts provided by the vehicle manufacturer. The prisoner restraint system is not intended to be a substitute for handcuffs or other appendage restraints.

Prisoners in leg restraints shall be transported in accordance with the Handcuffing and Restraints Policy.

### 911.6  INOPERABLE SEAT BELTS

Department vehicles shall not be operated when the seat belt in the driver's position is inoperable. Persons shall not be transported in a seat in which the seat belt is inoperable.

Department vehicle seat belts shall not be modified, removed, deactivated or altered in any way, except by the vehicle maintenance and repair staff, who shall do so only with the express authorization of the Chief of Police.

Members who discover an inoperable restraint system shall report the defect to the appropriate supervisor. Prompt action will be taken to replace or repair the system.

### 911.7  VEHICLES MANUFACTURED WITHOUT SEAT BELTS

Vehicles manufactured and certified for use without seat belts or other restraint systems are subject to the manufacturer's operator requirements for safe use.

### 911.8  VEHICLE AIRBAGS

In all vehicles equipped with airbag restraint systems, the system will not be tampered with or deactivated, except when transporting children as written elsewhere in this policy. All equipment installed in vehicles equipped with airbags will be installed as per the vehicle manufacturer specifications to avoid the danger of interfering with the effective deployment of the airbag device.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Seat Belts - 598

COR (McLeod) 001069

Policy

**912**

**Redding Police Department**
RPD Policy Manual

# Body Armor

### 912.1  PURPOSE AND SCOPE
The purpose of this policy is to provide law enforcement officers with guidelines for the proper use of body armor.

### 912.2  POLICY
It is the policy of the Redding Police Department to maximize officer safety through the use of body armor in combination with prescribed safety procedures. While body armor provides a significant level of protection, it is not a substitute for the observance of officer safety procedures.

### 912.3  ISSUANCE OF BODY ARMOR
The Administrative Sergeant shall ensure that body armor is issued to all officers, CSO's, and CWPO's when they begin service at the Redding Police Department and that, when issued, the body armor meets or exceeds the standards of the National Institute of Justice.

The Administrative Sergeant shall establish a body armor replacement schedule and ensure that replacement body armor is issued pursuant to the schedule or whenever the body armor becomes worn or damaged to the point that its effectiveness or functionality has been compromised.

#### 912.3.1  USE OF SOFT BODY ARMOR
Generally, the use of body armor is required subject to the following:

(a) Officers, CSO's, and CWPO's shall only wear agency-approved body armor.

(b) Officers, CSO's, and CWPO's shall wear body armor anytime they are in assigned to work in the field or in a situation where they could reasonably be expected to take enforcement action.

(c) Officers, CSO's, and CWPO's may be excused from wearing body armor when they are functioning primarily in an administrative or support capacity and could not reasonably be expected to take enforcement action.

(d) Body armor shall be worn when an officer is working in uniform or taking part in Department range training.

(e) Non-uniformed officers shall have their body armor readily available to them while on duty (equipment bag, trunk of vehicle) and shall wear their body armor when serving arrest or search warrants, is engaged in field enforcement activity, conducting parole or probation searches, or other high-risk activities and when involved in special operations likely to involve field contacts, arrests, or the potential for violence is present.

1. The Division Commander may determine that circumstances make it unnecessary or inappropriate for the employee to wear body armor, such as during the service of a warrant for business records relative to the investigation of a white-collar crime, during an undercover operation, or certain other assignments.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001070

# Redding Police Department
RPD Policy Manual

*Body Armor*

### 912.3.2   CARE AND MAINTENANCE OF SOFT BODY ARMOR
Soft body armor should never be stored for any extended period of time in an area where environmental conditions (e.g., temperature, light, humidity) are not reasonably controlled (e.g., normal ambient room temperature/humidity conditions), such as in automobiles or automobile trunks.

Soft body armor should be cared for and cleaned pursuant to the manufacturer's care instructions provided with the soft body armor. The instructions can be found on labels located on the external surface of each ballistic panel. The carrier should also have a label that contains care instructions. Failure to follow these instructions may damage the ballistic performance capabilities of the armor. If care instructions for the soft body armor cannot be located, contact the manufacturer to request care instructions.

Soft body armor should not be exposed to any cleaning agents or methods not specifically recommended by the manufacturer, as noted on the armor panel label.

Soft body armor should be replaced in accordance with the manufacturer's recommended replacement schedule.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001071

# Personnel Records

## 913.1   PURPOSE AND SCOPE
This policy governs maintenance and access to personnel records. Personnel records include any file maintained under an individual member's name.

## 913.2   POLICY
It is the policy of this Department to maintain personnel records and preserve the confidentiality of personnel records pursuant to the Constitution and the laws of California (Penal Code § 832.7).

## 913.3   PERSONNEL FILE
The Personnel file shall be maintained as a record of a person's employment/appointment with this Department and be maintained in the city Personnel Department. The Personnel file should contain, at a minimum:

(a)   Personal data, including an employee photograph, marital status, names of family members, educational and employment history, or similar information. A photograph of the member should be permanently retained.

(b)   Election of employee benefits.

(c)   Personnel action reports reflecting assignments, promotions, and other changes in employment/appointment status. These should be permanently retained.

(d)   Original performance evaluations. These should be permanently maintained.

(e)   Discipline records, including copies of sustained personnel complaints.

    (a)   Disciplinary action resulting from sustained internally initiated complaints or observation of misconduct shall be maintained pursuant to the established records retention schedule and at least five years.

    (b)   Disciplinary action resulting from a sustained civilian's complaint shall be maintained pursuant to the established records retention schedule and at least five years (Penal Code § 832.5).

(f)   Commendations and awards.

(g)   Any other information, the disclosure of which would constitute an unwarranted invasion of personal privacy.

## 913.4   DEPARTMENT PERSONNEL FILE
The Department file shall be maintained in the Administration Division. The Department file should contain, at a minimum:

(a)   Annual policy review

(b)   Internal Affairs reference sheet

(c)   POST certification

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001072

# Redding Police Department
RPD Policy Manual

*Personnel Records*

**913.5   TRAINING FILE**

An individual training file shall be maintained by the Training Sergeant for each member. Training files will contain records of all training; original or photocopies of available certificates, transcripts, diplomas and other documentation; and education and firearms qualifications. Training records may also be created and stored remotely, either manually or automatically (e.g., Daily Training Bulletin (DTB) records).

    (a)   The involved member is responsible for providing the Training Sergeant or immediate supervisor with evidence of completed training/education in a timely manner.

    (b)   The Training Sergeant or supervisor shall ensure that copies of such training records are placed in the member's training file.

**913.6   DIVISION FILE**

Division files shall be maintained in the Division that the employee is assigned. The Division file should contain, at a minimum:

1. Commendations and awards

2. Supervisor notes or memos

3. Copy of Traffic Accident Review Board (TARB)

4. Incident Reports of Operational Damage

5. Documented Oral Counseling

6. Monthly Stats

7. Division Commander memo outlining discipline as a result of a sustained Internal Affairs investigation for the purpose of employee evaluation.

8. Previous employee evaluation

The Division file may be used for the purpose of completing timely performance evaluations. The Division file may contain supervisor comments, notes, notices to correct and other materials that are intended to serve as a foundation for the completion of timely performance evaluations.

Adverse comments such as supervisor notes or memos may be retained in the Division file after the member has had the opportunity to read and initial the comment (Government Code 3305).

1. Once a member has had an opportunity to read and initial any adverse comment, the member shall be given the opportunity to respond in writing to the adverse comment within 30 days (Government Code 3306).

2. Any member response shall be attached to and retained with the original adverse comment (Government Code 3306).

3. If a member refuses to initial or sign an adverse comment, at least one supervisor should note the date and time of such refusal on the original comment and the member should sign or initial the noted refusal. Such a refusal, however, shall not be deemed insubordination, nor shall it prohibit the entry of the adverse comment into the member's file (Government Code 3305).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod)  001073

# Redding Police Department

RPD Policy Manual

*Personnel Records*

913.6.1  UPDATED PERSONAL INFORMATION AND EMERGENCY CONTACT
INFORMATION

The purpose of this policy is to obtain vital emergency contact information and provide an update
policy for personnel.

(a)   The Emergency Contact File form will be completed during the administration
orientation and submitted to the Executive Assistant in the Administration Division.

(b)   Any changes and/or updates should be made immediately to the Executive Assistant
in the Administration Division upon returning to duty.

(c)   Information submitted to the Executive Assistant will be entered into the master
personnel file and forwarded to the Personnel Department.

(d)   The emergency information should include, but is not be limited to the following:

1.   Name

2.   Physical Address

3.   Home Phone Number

4.   Cell Phone Number

5.   Personal Physician

6.   Blood Type

7.   Emergency Contacts

## 913.7  INTERNAL AFFAIRS FILE

Internal Affairs files shall be maintained under the exclusive control of the office of the Chief of
Police. Access to these files may only be approved by the Chief of Police or Division Commander.

These files shall contain the complete investigation of all formal complaints of member misconduct,
regardless of disposition. Investigations of complaints that result in the following findings shall not
be placed in the member's file but will be maintained in the internal affairs file:

(a)   Not sustained

(b)   Unfounded

(c)   Exonerated

Investigation files arising out of civilian's complaints shall be maintained pursuant to the
established records retention schedule and for a period of five years. Investigations that resulted
in other than a sustained finding may not be used by the Department to adversely affect an
employee's career (Penal Code § 832.5).

Investigation files arising out of internally generated complaints will be maintained for five years.

Internal Affairs files that have been released pursuant SB1421 and by an official request under
the Public Records Act (PRA) will be retained forever.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001074

Redding Police Department

RPD Policy Manual

*Personnel Records*

## 913.8   MEDICAL FILE

A medical file shall be maintained separately from all other personnel records and shall contain all documents relating to the member's medical condition and history, including but not limited to:

(a)   Materials relating to a medical leave of absence, including leave under the Family and Medical Leave Act (FMLA).

(b)   Documents relating to workers' compensation claims or the receipt of short- or long-term disability benefits.

(c)   Fitness-for-duty examinations, psychological and physical examinations, follow-up inquiries and related documents.

(d)   Medical release forms, doctor's slips and attendance records that reveal a member's medical condition.

(e)   Any other documents or materials that reveal the member's medical history or medical condition, including past, present or future anticipated mental, psychological or physical limitations.

## 913.9   SECURITY

Personnel records should be maintained in a secured location and locked either in a cabinet or access-controlled room. Personnel records maintained in an electronic format should have adequate password protection.

Personnel records are subject to disclosure only as provided in this policy, the Records Maintenance and Release Policy or according to applicable discovery procedures.

Nothing in this policy is intended to preclude review of personnel records by the City Manager, City Attorney or other attorneys or representatives of the City in connection with official business.

### 913.9.1   REQUESTS FOR DISCLOSURE

Any member receiving a request for a personnel record shall promptly notify the Custodian of Records or other person charged with the maintenance of such records.

Upon receipt of any such request, the responsible person shall notify the affected member as soon as practicable that such a request has been made (Evidence Code § 1043).

The responsible person shall further ensure that an appropriate response to the request is made in a timely manner, consistent with applicable law. In many cases, this may require assistance of available legal counsel.

All requests for disclosure that result in access to a member's personnel records shall be logged in the corresponding file.

### 913.9.2   RELEASE OF PERSONNEL INFORMATION

Personnel records shall not be disclosed except as allowed by law (Penal Code § 832.7; Evidence Code § 1043) (See also Records Maintenance and Release Policy).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001075

# Redding Police Department
RPD Policy Manual

*Personnel Records*

Any person who maliciously, and with the intent to obstruct justice or the due administration of the laws, publishes, disseminates, or otherwise discloses the residence address or telephone number of any member of this department may be guilty of a misdemeanor (Penal Code § 146e).

The Department may release any factual information concerning a disciplinary investigation if the member who is the subject of the investigation (or the member's representative) publicly makes a statement that is published in the media and that the member (or representative) knows to be false. The disclosure of such information, if any, shall be limited to facts that refute any such false statement (Penal Code § 832.7).

## 913.10   MEMBER ACCESS TO HIS/HER OWN PERSONNEL RECORDS

Any member may request access to his/her own personnel records during the normal business hours of those responsible for maintaining such files. Any member seeking the removal of any item from his/her personnel records shall file a written request to the Chief of Police through the chain of command. The Department shall remove any such item if appropriate, or within 30 days provide the member with a written explanation of why the contested item will not be removed. If the contested item is not removed from the file, the member's request and the written response from the Department shall be retained with the contested item in the member's corresponding personnel record (Government Code § 3306.5).

Members may be restricted from accessing files containing any of the following information:

(a) An ongoing Internal Affairs investigation to the extent that it could jeopardize or compromise the investigation pending final disposition or notice to the member of the intent to discipline.

(b) Confidential portions of Internal Affairs files that have not been sustained against the member.

(c) Criminal investigations involving the member.

(d) Letters of reference concerning employment/appointment, licensing or issuance of permits regarding the member.

(e) Any portion of a test document, except the cumulative total test score for either a section of the test document or for the entire test document.

(f) Materials used by the Department for staff management planning, including judgments or recommendations concerning future salary increases and other wage treatments, management bonus plans, promotions and job assignments or other comments or ratings used for department planning purposes.

(g) Information of a personal nature about a person other than the member if disclosure of the information would constitute a clearly unwarranted invasion of the other person's privacy.

(h) Records relevant to any other pending claim between the Department and the member that may be discovered in a judicial proceeding.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001076

## Redding Police Department
RPD Policy Manual

*Personnel Records*

---

### 913.11   RETENTION AND PURGING
Unless provided otherwise in this policy, personnel records shall be maintained in accordance with the established records retention schedule.

(a)   During the preparation of each member's performance evaluation, all personnel complaints and disciplinary actions should be reviewed to determine the relevancy, if any, to progressive discipline, training and career development. Each supervisor responsible for completing the member's performance evaluation should determine whether any prior sustained disciplinary file should be retained beyond the required period for reasons other than pending litigation or other ongoing legal proceedings.

(b)   If a supervisor determines that records of prior discipline should be retained beyond the required period, approval for such retention should be obtained through the chain of command from the Chief of Police.

(c)   If, in the opinion of the Chief of Police, a personnel complaint or disciplinary action maintained beyond the required retention period is no longer relevant, all records of such matter may be destroyed in accordance with the established records retention schedule.

### 913.12   RELEASE OF PERSONNEL RECORDS AND RECORDS RELATED TO CERTAIN INCIDENTS, COMPLAINTS, AND INVESTIGATIONS OF OFFICERS
Personnel records and records related to certain incidents, complaints, and investigations of officers shall be released pursuant to a proper request under the Public Records Act and subject to redaction and delayed release as provided by law.

The Custodian of Records should work as appropriate with the Chief of Police or the Professional Standards Unit supervisor in determining what records may qualify for disclosure when a request for records is received and if the requested record is subject to redaction or delay from disclosure.

For purposes of this section, a record includes (Penal Code § 832.7(b)(2)):

• All investigation reports.

• Photographic, audio, and video evidence.

• Transcripts or recordings of interviews.

• Autopsy reports.

• All materials compiled and presented for review to the District Attorney or to any person or body charged with determining whether to file criminal charges against an officer in connection with an incident, or whether the officer's action was consistent with law and department policy for purposes of discipline or administrative action, or what discipline to impose or corrective action to take.

• Documents setting forth findings or recommending findings.

• Copies of disciplinary records relating to the incident, including any letters of intent to impose discipline, any documents reflecting modifications of discipline due to the *Skelly* or grievance process, and letters indicating final imposition of discipline or other documentation reflecting implementation of corrective action.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod)  001077

## Redding Police Department

RPD Policy Manual

*Personnel Records*

Unless a record or information is confidential or qualifies for delayed disclosure as provided by Penal Code § 832.7(b)(7) or other law, the following records shall be made available for public inspection upon request (Penal Code § 832.7):

(a) Records relating to the report, investigation, or findings of:

1. The discharge of a firearm at another person by an officer.

2. The use of force against a person resulting in death or in great bodily injury (as defined by Penal Code § 243(f)(4)) by an officer.

(b) Records relating to an incident where a sustained finding (see the Personnel Complaints Policy) was made by the department or oversight agency regarding:

1. An officer engaged in sexual assault of a member of the public (as defined by Penal Code § 832.7(b)).

2. Dishonesty of an officer relating to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another officer, including but not limited to any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or concealing of evidence.

A record from a separate and prior investigation or assessment of a separate incident shall not be released unless it is independently subject to disclosure (Penal Code § 832.7(b)(3)).

When an investigation involves multiple officers, the Department shall not release information about allegations of misconduct or the analysis or disposition of an investigation of an officer unless it relates to a sustained finding of a qualified allegation as provided by Penal Code § 832.7(b)(4) against the officer. However, factual information about the action of the officer during an incident or the statements of an officer shall be released if the statements are relevant to a sustained finding of the qualified allegation against another officer that is subject to release (Penal Code § 832.7(b)(4)).

### 913.12.1   REDACTION

The Custodian of Records, in consultation with the Chief of Police or authorized designee, shall redact the following portions of records made available for release (Penal Code § 832.7(b)(5)):

(a) Personal data or information (e.g., home address, telephone number, identities of family members) other than the names and work-related information of officers

(b) Information that would compromise the anonymity of complainants and witnesses

(c) Confidential medical, financial, or other information where disclosure is prohibited by federal law or would cause an unwarranted invasion of personal privacy that clearly outweighs the strong public interest in records about misconduct and serious use of force

(d) Where there is a specific, articulable, and particularized reason to believe that disclosure of the record would pose a significant danger to the physical safety of the officer or another person

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Personnel Records - 607

COR (McLeod)  001078

# Redding Police Department

RPD Policy Manual

*Personnel Records*

---

Additionally, a record may be redacted, including redacting personal identifying information, where, on the facts of the particular case, the public interest served by not disclosing the information clearly outweighs the public interest served by disclosing it (Penal Code § 832.7(b)(6)).

## 913.12.2   DELAY OF RELEASE

Unless otherwise directed by the Chief of Police, the Custodian of Records should consult with a supervisor familiar with the underlying investigation to determine whether to delay disclosure of records relating to the discharge of a firearm or use of force resulting in death or in great bodily injury due to any of the following conditions (Penal Code § 832.7):

    (a)    Active criminal investigations

        1.    Disclosure may be delayed 60 days from the date the use of force occurred or until the District Attorney determines whether to file criminal charges, whichever occurs sooner.

        2.    After the initial 60 days, delay of disclosure may be continued if the disclosure could reasonably be expected to interfere with a criminal enforcement proceeding against an officer or against someone other than an officer who used the force.

    (b)    Filed criminal charges

        1.    When charges are filed related to an incident where force was used, disclosure may be delayed until a verdict on those charges is returned at trial or, if a plea of guilty or no contest is entered, the time to withdraw the plea has passed.

    (c)    Administrative investigations

        1.    Disclosure may be delayed until whichever occurs later:

            (a)    There is a determination from the investigation whether the use of force violated law or department policy, but no longer than 180 days after the date of the department's discovery of the use of force or allegation of use of force

            (b)    Thirty days after the close of any criminal investigation related to the officer's use of force

## 913.12.3   NOTICE OF DELAY OF RECORDS

When there is justification for delay of disclosure of records relating to the discharge of a firearm or use of force resulting in death or in great bodily injury during an active criminal investigation, the Custodian of Records shall provide written notice of the reason for any delay to a requester as follows (Penal Code § 832.7):

    (a)    Provide the specific basis for the determination that the interest in delaying disclosure clearly outweighs the public interest in disclosure. The notice shall also include the estimated date for the disclosure of the withheld information.

    (b)    When delay is continued beyond the initial 60 days because of criminal enforcement proceedings against anyone, at 180-day intervals provide the specific basis that

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001079

# Redding Police Department

RPD Policy Manual

*Personnel Records*

disclosure could reasonably be expected to interfere with a criminal enforcement proceeding and the estimated date for disclosure.

1. Information withheld shall be disclosed when the specific basis for withholding the information is resolved, the investigation or proceeding is no longer active, or no later than 18 months after the date of the incident, whichever occurs sooner, unless:

    (a) When the criminal proceeding is against someone other than an officer and there are extraordinary circumstances to warrant a continued delay due to the ongoing criminal investigation or proceeding, then the Department must show by clear and convincing evidence that the interest in preventing prejudice to the active and ongoing criminal investigation or proceeding outweighs the public interest for prompt disclosure of records about use of serious force by officers.

In cases where an action to compel disclosure is brought pursuant to Government Code § 6258, the Department may justify delay by filing an application to seal the basis for withholding if disclosure of the written basis itself would impact a privilege or compromise a pending investigation (Penal Code § 832.7(b)(7)).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Personnel Records - 609

COR (McLeod)  001080

# Commendations and Awards

## 914.1  PURPOSE AND SCOPE
This policy provides general guidelines for recognizing commendable or meritorious acts of members of the Redding Police Department and individuals from the community.

## 914.2  POLICY
It is the policy of the Redding Police Department to recognize and acknowledge exceptional individual or group achievements, performance, proficiency, heroism and service of its members and individuals from the community through commendations and awards.

## 914.3  COMMENDATIONS
Commendations for members of the Redding Police Department or for individuals from the community may be initiated by any Department member or by any person from the community.

## 914.4  AWARDS
Awards may be bestowed upon members of the Department and individuals from the community.

    (a)    These awards include:

        1.    Police Medal of Honor

        2.    Police Medal of Valor.

        3.    Lifesaving Award.

        4.    Meritorious Conduct.

        5.    Posthumous Awards

            i.    Police Cross

            ii.    Memorial Cross

        6.    Police Commendation Award

        7.    Police Shield

        8.    Merit Award

        9.    Civic Achievement Award

        10.    Special Recognition Award

        11.    Citizen's Award

        12.    Employee of the Year Award:

            i.    Support Staff Employee of the Year

            ii.    Officer of the Year

The Meritorious Conduct Board shall be appointed by the Chief of Police and consist of one Lieutenant, one sworn supervisor (sergeant or corporal) and three employees of the Redding

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.<br>Published with permission by Redding Police Department

COR (McLeod)  001081

# Redding Police Department

RPD Policy Manual

*Commendations and Awards*

Police Department who hold any of the ranks of corporal, police officer, investigator, or community service officer. The Board shall meet quarterly.

The Meritorious Conduct Board will review cases involving meritorious service by members of the Police Department and make recommendations to the Chief of Police for proper recognition. The Board may assist the Administrative Sergeant, who sits as a member of the Shasta County Public Safety Awards Committee, by referring appropriate cases to that committee.

The Meritorious Conduct Board will receive nominations for Employee of the Year Awards. The Board will forward the nominations to the Chief of Police, who will select the recipient of each award.

The duties of the Board are:

    (a)    Receive recommendations made by Department employees and citizens.

    (b)    Approve/disapprove recommendations for meritorious conduct or service by both sworn and non-sworn personnel.

    (c)    Review recommendations of exemplary acts by citizens.

    (d)    Decide the type of award to be presented.

Criteria for each award and the selection, presentation, and display of any award are determined by the Chief of Police.

## 914.5  MERITORIOUS AWARDS CRITERIA

    (a)    Police Medal of Honor:  Awarded to any sworn officer who voluntarily distinguishes himself/herself conspicuously by gallantry and other extraordinary heroism. the act must be in excess of normal demands and of such a nature that the officer was fully aware of the imminent threat to his/her personal safety and acted above and beyond the call of duty.

    (b)    Police Medal of Valor: Awarded to a sworn officer for exceptional courage in an extremely dangerous situation in the line of duty.

    (c)    Posthumous Awards:

        1.    Police Cross: Awarded posthumously whenever a sworn officer loses his/her life in the performance of duty under honorable circumstances and may be awarded in addition to any other award the sworn officer is entitled to in making the supreme sacrifice.

        2.    Memorial Cross: Awarded posthumously whenever a non-sworn employee loses his/her life in the performance of duty under honorable circumstances and may be awarded in addition to any other award the non-sworn employee is entitled to in making the supreme sacrifice.

    (d)    Police Commendation Award: Awarded to an employee for outstanding performance involving great risk to his/her personal safety while performing his/her duties.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001082

*Commendations and Awards*

(e)   Meritorious Conduct Award: Awarded to any employee for meritorious service or excellent performance in an assignment of great responsibility where the officer distinguishes himself/herself of the Police Department while carrying out the assignment.

(f)   Lifesaving Award: Awarded to an employee directly responsible for the saving of a human life. Documentation and supporting evidence must be included to substantiate the award such as statements from witnesses, physicians, and law enforcement personnel. This award may be given when evidence indicates the actions of the employee prolonged human life to the extent a victim was released to the care of medical personnel, even though the victim may have expired at a later time.

(g)   Police Shield: Awarded to any employee who is seriously injured in the line of duty as a result of assault, fires, explosions, etc. This award may be given in addition to any other award for which the recipient is qualified. The injury must not be the result of, or concurrent with, any less than acceptable conduct by the employee. The Board will not consider injuries sustained from falls on ice, motor vehicle accidents and the like unless the evidence clearly indicates the employee exhausted all safety precautions and had no control over the circumstances.

(h)   Merit Award: Awarded to any Redding Police Department employee or volunteer for outstanding performance of duties under unusual, complicated or hazardous conditions. This award may also be given to any Redding Police Department employee or volunteer for the outstanding or superior performance of any assignment over a prolonged period of time. A Merit Award may also be awarded to any distinct work group of employees or volunteers when the actions of the group as a whole meet the qualifications.

(i)   Civic Achievement Award: Awarded to any employee who brings favorable recognition to the agency through their involvement in civic affairs while a member and representative of the Redding Police Department.

(j)   Special Recognition Award: May be awarded to any person(s), other than a Redding Police Department employee, who brings favorable recognition to this agency through their involvement with the Redding Police Department.

(k)   Citizen's Award: May be awarded to any person(s) whose actions exemplify excellence in the performance of civic responsibilities, show unselfish devotion to their fellow man and community and/or bring honor to themselves and recognition to the city through their actions.

## 914.5.1  EMPLOYEE OF THE YEAR AWARDS

Employees who have been nominated by their peers or supervisors and are recognized by the Department for their distinguished service to the agency. The awards are available in the following categories:

(a)   Support Staff Employee of the Year:

1.   This includes all non-sworn personnel.

(b)   Officer of the Year,

# Redding Police Department
RPD Policy Manual

*Commendations and Awards*

---

(c)    Supervisor of the Year.

## 914.5.2  PROCESSING DOCUMENTATION
Documentation regarding the meritorious or commendable act of a member of the Department should be forwarded to the Meritorious Conduct Board for review. The report should be signed by the author, include the names of all involved, and a complete account of the incident. In the event an internal investigation of the incident is in progress, the report should be submitted after the conclusion of the investigation.

Documentation regarding the meritorious or commendable act of an individual from the community should be forwarded to the Meritorious Conduct Board for review.

## 914.6  DESCRIPTION OF AWARDS
The following awards shall be symbolized by a medal, bar, and plaque:

(a)    Police Medal of Honor,

(b)    Police Cross,

(c)    Police Medal of Valor,

(d)    Memorial Cross.

The following awards shall be symbolized by a bar and plaque:

(a)    Police Commendation Award,

(b)    Meritorious Conduct Award,

(c)    Lifesaving Award, Police Shield,

(d)    Merit Award,

(e)    Civic Achievement Award.

Support Staff of the Year, Officer of the Year, and Supervisor of the Year: Employees will receive one bar for awards in each category. Officers will also receive a bar for Exchange Club Officer of the Year. The Citizen's Award and Special Recognition Award may be symbolized by a plaque and/or a framed certificate.

## 914.7  ATTACHMENTS
See attached for further details:

- See attachment: Award Descriptions.pdf

## 914.8  PRESENTATION OF AWARDS
The Police Medal of Honor, the Police Cross, and the Police Medal of Valor will be presented by the Chief of Police. All other awards may be presented by the Chief of Police or his/her designee. The Chief of Police shall decide the date, time, and location of the presentations.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001084

**Redding Police Department**

RPD Policy Manual

# Fitness for Duty

## 915.1 PURPOSE AND SCOPE

All officers are required to be free from any physical, emotional, or mental condition which might adversely affect the exercise of peace officer powers. The purpose of this policy is to ensure that all officers of this Department remain fit for duty and able to perform their job functions (Government Code § 1031).

## 915.2 EMPLOYEE RESPONSIBILITIES

(a) It shall be the responsibility of each member of this Department to maintain good physical condition sufficient to safely and properly perform the essential duties of their position.

(b) Each member of this Department shall perform his/her respective duties without physical, emotional, and/or mental constraints.

(c) During working hours, all employees are required to be alert, attentive, and capable of performing his/her assigned responsibilities.

(d) Any employee who feels unable to perform his/her duties shall promptly notify a supervisor. In the event that an employee believes that another employee is unable to perform his/her duties, such observations and/or belief shall be promptly reported to a supervisor.

## 915.3 SUPERVISOR RESPONSIBILITIES

(a) A supervisor observing an employee, or receiving a report of an employee who is perceived to be, unable to safely perform his/her duties due to a physical or mental condition shall take prompt and appropriate action in an effort to resolve the situation.

(b) Whenever feasible, the supervisor should attempt to ascertain the reason or source of the problem and in all cases a preliminary evaluation should be made in an effort to determine the level of inability of the employee to perform his/her duties.

(c) In the event the employee appears to be in need of immediate medical or psychiatric treatment, all reasonable efforts should be made to provide such care.

(d) The supervisor shall notify the Watch Commander or employee's available Division Commander, a determination should be made whether or not the employee should be temporarily relieved from his/her duties.

(e) A written report shall be completed and forwarded to the Chief of Police via the chain of command.

## 915.4 NON-WORK RELATED CONDITIONS

Any employee suffering from a non-work related condition which warrants a temporary relief from duty may be required to use sick leave or other paid time off means in order to obtain medical treatment or other reasonable rest period.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001085

# Redding Police Department
RPD Policy Manual

*Fitness for Duty*

## 915.5  WORK RELATED CONDITIONS

Any employee suffering from a work-related condition which warrants a temporary relief from duty shall be required to comply with personnel rules and guidelines for processing such claims.

Any employee whose actions or use of force in an official capacity result in death or serious injury to another may be temporarily removed from regularly assigned duties and/or placed on paid administrative leave for the well being of the employee and until such time as the following may be completed:

(a) A preliminary determination that the employee's conduct appears to be in compliance with policy and, if appropriate.

(b) The employee has had the opportunity to receive necessary counseling and/or psychological clearance to return to full duty.

When an officer is unable to report to work for an off-duty injury/illness or a job-related injury/illness covered under California Labor Code 4850, with the recommendation of a physician/psychologist, the Chief of Police may revoke the peace officer powers of the involved officer.

When an officer uses all of the time allotted under California Labor Code 4850 and is unable to return to work, the Chief of Police may revoke their peace officer powers.

## 915.6  PHYSICAL AND PSYCHOLOGICAL EXAMINATIONS

(a) Whenever circumstances reasonably indicate that an employee is unfit for duty, the Chief of Police may serve that employee with a written order to undergo a physical and/or psychological examination in cooperation with Personnel Department to determine the level of the employee's fitness for duty. The order shall indicate the date, time and place for the examination.

(b) The examining physician or therapist will provide the Department with a report indicating that the employee is either fit for duty or, if not, listing any functional limitations which limit the employee's ability to perform job duties. If the employee places his/her condition at issue in any subsequent or related administrative action/grievance, the examining physician or therapist may be required to disclose any and all information which is relevant to such proceeding (Civil Code § 56.10(c)(8)).

(c) In order to facilitate the examination of any employee, the Department will provide all appropriate documents and available information to assist in the evaluation and/or treatment.

(d) All reports and evaluations submitted by the treating physician or therapist shall be part of the employee's confidential personnel file.

(e) Any employee ordered to receive a fitness for duty examination shall comply with the terms of the order and cooperate fully with the examining physician or therapist regarding any clinical interview, tests administered or other procedures as directed. Any failure to comply with such an order and any failure to cooperate with the examining physician or therapist may be deemed insubordination and shall be subject to discipline up to and including termination.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
COR (McLeod)  001086

# Redding Police Department

RPD Policy Manual

*Fitness for Duty*

    (f)    Once an employee has been deemed fit for duty by the examining physician or therapist, the employee will be notified to resume his/her duties.

    (g)    At the conclusion of a fitness for duty examination, with the recommendation of a physician/psychologist, the Chief of Police may revoke the peace officer powers of the involved officer.

    (h)    When an officer is unable to report to work for an off-duty injury/ illness or a job-related injury/illness covered under California Labor Code 4850, with the recommendation of a physician/ psychologist, the Chief of Police may revoke the peace officer powers of the involved officer.

    (i)    When an officer uses all of the time allotted under California Labor Code section 4850 and is unable to return to work, the Chief of Police may revoke their peace officer powers.

## 915.7   LIMITATION ON HOURS WORKED

Absent emergency operations members should not work more than:

- 16 hours in one day (24 hour) period or

- 30 hours in any 2 day (48 hour) period or

- 84 hours in any 7 day (168 hour) period

Except in very limited circumstances members should have a minimum of 8 hours off between shifts. Supervisors should give consideration to reasonable rest periods and are authorized to deny overtime or relieve to off-duty status any member who has exceeded the above guidelines.

Limitations on the number of hours worked apply to shift changes, shift trades, rotation, holdover, training, general overtime and any other work assignments.

## 915.8   APPEALS

An employee who is separated from paid employment or receives a reduction in salary resulting from a fitness for duty examination shall be entitled to an administrative appeal as outlined in the Employee Memorandum of Understanding.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001087

# Meal Periods and Breaks

## 916.1  PURPOSE AND SCOPE

This order is necessary to address the public's concern related to work ethics of public employees. It is generally assumed by the public that law enforcement personnel in uniform are on duty. Employee meal periods and breaks are governed by the employees Memorandum of Understanding. Unrepresented employees are to follow policies as set forth by City Policy regarding their meal periods and breaks.

### 916.1.1  MEAL PERIOD

Sworn employees shall remain on duty subject to call during meal breaks. All other employees are not on call during meal breaks, unless directed otherwise by a supervisor.

Uniformed patrol and traffic officers shall notifySHASCOMby MDC, phone, or radio prior to taking a meal break. Uniformed officers shall take their breaks within the City limits unless on assignment outside of the City or with prior supervisor approval.

This order does not apply to uniformed personnel who are attending a meeting, training, or other official function and have prior supervisor approval.

The time spent for the meal period shall not exceed 30 minutes for sworn employees, unless prior approval by a supervisor.

### 916.1.2  15 MINUTE BREAKS

Each employee is entitled to a 15-minute break, near the midpoint, for each four-hour work period. Only one 15 minute break shall be taken during every four hours of duty.

Field officers on breaks and during meals are subject to call and shall monitor their radios.

## 916.2  GRATUITIES

Redding Police Department personnel shall not accept a gratuity in any form that is not available to the general public. A gratuity is defined as "something given in return for a favor." Employees will often encounter gratuities in the form of free, discounted, or specially reduced prices on services, merchandise, beverages, meals, or entertainment.

Any employee who accepts a gratuity in any form that is not available to the general public will be subject to disciplinary action.

# Lactation Break Policy

### 917.1  PURPOSE AND SCOPE
The purpose of this policy is to provide reasonable accommodations to employees desiring to express breast milk for the employee's infant child (Labor Code § 1034).

### 917.2  POLICY
It is the policy of this department to provide, in compliance with the Fair Labor Standards Act, reasonable break time and appropriate facilities to accommodate any employee desiring to express breast milk for her nursing infant child (29 USC § 207; Labor Code § 1030).

### 917.3  LACTATION BREAK TIME
A rest period should be permitted each time the employee has the need to express breast milk (29 USC § 207; Labor Code § 1030). In general, lactation breaks that cumulatively total 30 minutes or less during any four-hour work period or major portion of a four-hour work period would be considered reasonable. However, individual circumstances may require more or less time. Such breaks, if feasible, should be taken at the same time as the employee's regularly scheduled rest or meal periods.

While a reasonable effort will be made to provide additional time beyond authorized breaks, any such time exceeding regularly scheduled and paid break time will be unpaid (Labor Code § 1030).

Employees desiring to take a lactation break shall notify SHASCOM or a supervisor prior to taking such a break. Such breaks may be reasonably delayed if they would seriously disrupt department operations (Labor Code § 1032).

Once a lactation break has been approved, the break should not be interrupted except for emergency or exigent circumstances.

### 917.4  PRIVATE LOCATION
The Department will make reasonable efforts to accommodate employees with the use of an appropriate room or other location to express milk in private. Such room or place should be in close proximity to the employee's work area and shall be other than a bathroom or toilet stall. The location must be shielded from view and free from intrusion from co-workers and the public (29 USC § 207; Labor Code § 1031).

Employees occupying such private areas shall either secure the door or otherwise make it clear to others that the area is occupied with a need for privacy. All other employees should avoid interrupting an employee during an authorized break, except to announce an emergency or other urgent circumstance.

Authorized lactation breaks for employees assigned to the field may be taken at the nearest appropriate private area.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001089

# Redding Police Department
RPD Policy Manual

*Lactation Break Policy*

## 917.5  STORAGE OF EXPRESSED MILK
Any employee storing expressed milk in any authorized refrigerated area within the Department shall clearly label it as such and shall remove it when the employee ends her shift.

### 917.5.1  STATE REQUIREMENTS
Employees have the right to request lactation accommodations. If a break time or location accommodation cannot be provided, the supervisor shall provide the member with a written response regarding the reasons for the determination (Labor Code § 1034).

Lactation rooms or other locations should comply with the prescribed feature and access requirements of Labor Code § 1031.

Employees who believe that their rights have been violated under this policy or have been the subject of discrimination or retaliation for exercising or attempting to exercise their rights under this policy, are encouraged to follow the chain of command in reporting a violation, but may also file a complaint directly with the Labor Commissioner (Labor Code § 1033).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001090

**Redding Police Department**
RPD Policy Manual

# Payroll Records

## 918.1  PURPOSE AND SCOPE
This policy provides the guidelines for completing and submitting payroll records of department members who are eligible for the payment of wages.

### 918.1.1  TIME REQUIREMENTS
A basic work week is defined in the Memorandum of Understanding (MOU) for the represented employee. Unrepresented employees report under the City personnel policies. Part-time employees will be scheduled to meet the specific needs of the Department.

## 918.2  POLICY
The Redding Police Department maintains timely and accurate payroll records.

## 918.3  RESPONSIBILITIES
Members are responsible for the accurate completion and timely submission of their payroll records for the payment of wages.

Division Commanders are responsible for approving the payroll records for those under their commands.

## 918.4  TIME REQUIREMENTS
Members who are eligible for the payment of wages are paid on a scheduled, periodic basis, generally on the same day or date each period, with certain exceptions, such as holidays. Payroll records shall be completed and submitted to Administration as established by the City payroll procedures.

## 918.5  RECORDS
The Administration Division Commander shall ensure that accurate and timely payroll records are maintained as required by 29 CFR 516.2 for a minimum of three years (29 CFR 516.5).

## 918.6  SHIFT TRADES
Employees of the same rank and qualifications may trade shifts within the same pay period.

(a)   The substitute employee is not entitled to overtime pay as a result of the shift trade. Overtime is allowed if the employee works beyond the normal traded shift.

(b)   If the substitute employee fails to report for duty on the assigned shift, the substitute employee's vacation/ CTO will be charged.  The employee will select the time bank to be used.

(c)   If the substitute employee fails to appear for duty on the assigned shift because of illness the employee's sick leave balance will be charged.

(d)   The shift supervisor's approval is required for all shift trades.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001091

# Redding Police Department

RPD Policy Manual

*Payroll Records*

---

    (e)    The approving shift supervisor is responsible for entering the shift trade into PlanIt.

## 918.7  DAYLIGHT SAVING TIME

Daylight Saving Time begins at 2:00 a.m. on the second Sunday of March. Time reverts to standard time at 2:00 a.m. on the first Sunday of November.

Personnel working during the fall, when the time is set back one hour, will be compensated for the additional time worked in excess of their normal shift (e.g. Shift I officer working from 2030 to 0630 hours would receive 10 hours straight time and one hour overtime.)

Personnel working during the spring, when the time is advanced one hour, may elect to either take one hour off their balance or work one additional hour (e.g. Shift I officer working from 2030 to 0630 would receive nine hours of straight time and then may elect to work until 0730 or take one-hour CTO or vacation.)

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001092

# Overtime Compensation Requests

## 919.1   PURPOSE AND SCOPE

The purpose of this policy is to provide a policy regarding overtime and compensation for employees.

### 919.1.1   DEPARTMENT POLICY

It is the policy of the Department to compensate non-exempt employees who work authorized overtime either by payment of wages as agreed and in effect through the Memorandum of Understanding (MOU), or by the allowance of accrual of compensatory time off. All requests to work overtime, except for court overtime, shall be approved in advance by a supervisor.

## 919.2   REQUEST FOR OVERTIME COMPENSATION

Employees shall submit all overtime compensation requests to the on-duty supervisors immediately after working the overtime shift for verification and forwarding to the Administration Division. Court overtime earned when the employee is off-duty will be submitted immediately upon return to work.

Failure to submit a request as described may result in discipline. Employees shall attach a memo with the late overtime compensation request describing the reason for the late request.  The memo and overtime compensation request will be forwarded by the supervisor to a Watch Commander for review.

### 919.2.1   EMPLOYEES RESPONSIBILITY

Employees shall complete the overtime compensation request immediately after working the overtime and forward to the on-duty supervisor. Employees submitting overtime compensation requests for court, specialty-pay, or on-call pay when off duty shall submit cards to the shift supervisor immediately upon returning to work.

### 919.2.2   SUPERVISORS RESPONSIBILITY

The supervisor may verify the overtime compensation request for accuracy prior to Watch Commander review.. After review, the overtime compensation request is forwarded to a Watch Commander for final approval.

### 919.2.3   WATCH COMMANDERS RESPONSIBILITY

Watch Commanders will have final approval of all overtime compensation requests. The Watch Commander will forward all approved overtime compensation requests to the Administration Division.

## 919.3   ACCOUNTING FOR OVERTIME WORKED

Employees are to record the actual time worked in an overtime status. The employees Memorandum of Understanding provides some overtime with a minimum number of hours paid (e.g., Callout and Court). When a minimum applies, the employee will enter the actual time worked and the compensation time consistent with the MOU.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001093

Redding Police Department

RPD Policy Manual

*Overtime Compensation Requests*

### 919.3.1  ACCOUNTING FOR PORTIONS OF AN HOUR

When accounting for less than a full hour, time worked shall be rounded up to the nearest quarter of an hour as indicated by the following chart:

| TIME WORKED | INDICATE ON CARD |
|---|---|
| 1 to 15 minutes | .25 |
| 16 to 30 minutes | .50 |
| 31 to 45 minutes | .75 |
| 46 to 60 minutes | 1 hour |

### 919.4  PATROL AND SPECIAL EVENT OVERTIME

(a) The assignment of supervisors for special events will be done by the Field Operations Division Commander, based upon operational needs.

(b) Selection and assignment of police officers for special events and mandatory patrol overtime will be conducted as follows:

1. All eligible employees will be selected in an equitable manner that will fit the needs of the Department.  It is the policy of the Department to implement patrol and special event overtime on a voluntary basis whenever possible.

2. Two lists for overtime assignments will be maintained. The first list will be for standard patrol overtime. This patrol overtime will be used to fill vacancies in patrol shift work. The second list will be a special event list. This list will be used for special events (such as July 4th Freedom Festival, Kool April Nites, Redding Rodeo) as well as any significant preplanned events designated by the Division Commander. Officers will be listed in order of reverse seniority.

3. The patrol list and the special event list will be maintained in the PlanIt scheduling software. Every effort must be made to ensure no officer is overburdened during his time off. Two mandatory assignments should not be made in the same week.

4. The patrol list will include all patrol (including corporals), neighborhood police unit, school resource, and traffic officers. The special event list will include the same employees as the patrol list and the investigators eligible for assignment to a special event. Investigators may volunteer to work a patrol assignment with the approval of their supervisor or Division Commander, however, they are not to be mandatorily assigned for general patrol duties. If an investigator volunteers for a general patrol assignment, they will be given credit on the patrol list.

5. In order to be fair and to give credit to those who volunteer for overtime, whether an officer volunteers or is mandatorily assigned, the officer will be given credit and their name will be checked off as having worked an overtime slot. This is also referred to as a "sign off". The only time an officer will be signed off on both lists (patrol and special event) is when an officer works a special event either voluntarily or assigned.  An officer who is mandatorily assigned may find a substitute to work the shift in his place. The substitute officer will be given the credit for actually working. The original officer will not be given credit.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001094

# Redding Police Department

RPD Policy Manual

*Overtime Compensation Requests*

6. If an officer is called out and responds for a minimum of four hours as a result of the following special assignments (Bomb, SWAT, Traffic, UAV, K9, DRE, Field Evidence Tech, Peer Support) the officer will receive a patrol a sign-off. Conducting or attending training/meetings do not count as a sign-off. The shift supervisor will need to add a manual sign off in the PlanIt scheduling software.

7. If an officer volunteers or is mandatorily assigned to work a special event, or any event requiring enforcement action, regardless of funding source, they will be given credit as working a patrol shift as long as the event is longer than four hours.

8. If an officer volunteers or is mandatorily assigned, and the overtime is canceled, the officer will not receive credit for the assignment unless they are given less than 24 hours' notice. The shift supervisor would need to add a manual sign off in the PlanIt scheduling software.

9. Every January 1st, the list will be reset and started over again. When a new officer is released from FTO and assigned to a shift or an investigator is rotated back to patrol, they will be given the same number of sign-offs, minus one, as the next officer with the lowest number of sign-offs (i.e., Officer Jones is hired August 1. Officer Smith has three sign-offs on the list. Officer Jones automatically receives two sign-offs. On January 1 all officers go to zero sign-offs.)

10. Officers should not be required to "double back" and work two consecutive shifts. Consideration should be given when ordering an officer to work if they have already worked a shift in the previous 10 hours. Barring extenuating circumstances, for safety reasons, officers should not be allowed or forced to work more than 16 hours per day.

11. Officers shall not be ordered to work during their primary vacation or when they have been previously scheduled to attend school or training.

12. Employees on primary vacation, sick leave, other authorized leave, or on duty during the time of a special event will not be assigned to the event.

13. Employees who have been assigned to a special event, and who wish to be relieved of that assignment, will submit an email naming a voluntary replacement to the supervisor in charge of the event.

14. When possible, assignments should be made two weeks prior to the event.

(c) All requests for special event coverage will be given to the Field Operations Division Commander, or their designee, who shall determine the level of personnel to be assigned.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001095

**Redding Police Department**

RPD Policy Manual

# Outside Employment

## 920.1  PURPOSE AND SCOPE

The Redding Municipal Code provides that no full-time officer or employee of the City of Redding shall follow any other calling, occupation, or business that will tend to impair his/her efficiency or be incompatible with his position with the City.

  A.    Reference: Redding Municipal Code, Section 2.76.060

### 920.1.1  DEFINITIONS

**Outside Employment** - Any member of this department who receives wages, compensation or other consideration of value from another employer, organization or individual not affiliated directly with this department for services, product(s) or benefits rendered. For purposes of this section, the definition of outside employment includes those employees who are self-employed and not affiliated directly with this department for services, product(s) or benefits rendered.

**Outside Overtime** - Any member of this department who performs duties or services on behalf of an outside organization, company, or individual within this jurisdiction. Such outside overtime shall be requested and scheduled directly through this department so that the Department may be reimbursed for the cost of wages and benefits.

## 920.2  OBTAINING APPROVAL

No member of this department may engage in any outside employment without first obtaining prior written approval of the Chief of Police and Personnel Director. Such approval shall be secured in advance of any employment. Failure to obtain prior written approval for outside employment or engaging in outside employment prohibited by this policy may lead to disciplinary action.

In order to obtain approval for outside employment, the employee must complete an Outside Employment Application which shall be submitted to the employee's immediate supervisor. The application will then be forwarded through channels to the Chief of Police for consideration.

If approved, the employee will be provided with a copy of the approved permit. Unless otherwise indicated in writing on the approved permit, a permit will be valid through the end of the calendar year in which the permit is approved. Any employee seeking to renew a permit shall submit a new Outside Employment Application in a timely manner.

  (a)    If approved, the signed Outside Employment Application shall be maintained in the employee's personnel file.

Any employee seeking approval of outside employment, whose request has been denied, shall be provided with a written reason for the denial of the application at the time of the denial (Penal Code § 70(e)(3)).

## Redding Police Department
RPD Policy Manual

*Outside Employment*

---

### 920.2.1   APPEAL OF DENIAL OF OUTSIDE EMPLOYMENT
If an employee's Outside Employment Application is denied or withdrawn by the Department, the employee may file a written notice of appeal to the Chief of Police within ten days of the date of denial.

If the employee's appeal is denied, the employee may file a grievance pursuant to the procedure set forth in the current Memorandum of Understanding (MOU).

### 920.2.2   REVOCATION/SUSPENSION OF OUTSIDE EMPLOYMENT PERMITS
Any outside employment permit may be revoked or suspended under the following circumstances:

(a) Should an employee's performance at this department decline to a point where it is evaluated by a supervisor as needing improvement to reach an overall level of competency, the Chief of Police may, at his or her discretion, revoke any previously approved outside employment permit(s). That revocation will stand until the employee's performance has been reestablished at a satisfactory level and his/her supervisor recommends reinstatement of the outside employment permit

(b) Suspension or revocation of a previously approved outside employment permit may be included as a term or condition of sustained discipline

(c) If, at any time during the term of a valid outside employment permit, an employee's conduct or outside employment conflicts with the provisions of department policy, the permit may be suspended or revoked

(d) When an employee is unable to perform at a full duty capacity due to an injury or other condition, any previously approved outside employment permit may be subject to similar restrictions as those applicable to the employee's full time duties until the employee has returned to a full duty status

### 920.3   PROHIBITED OUTSIDE EMPLOYMENT
Consistent with the provisions of Government Code § 1126, the Department expressly reserves the right to deny any Outside Employment Application submitted by an employee seeking to engage in any activity which:

(a) Involves the employee's use of departmental time, facilities, equipment or supplies, the use of the Department badge, uniform, prestige or influence for private gain or advantage

(b) Involves the employee's receipt or acceptance of any money or other consideration from anyone other than this department for the performance of an act which the employee, if not performing such act, would be required or expected to render in the regular course or hours of employment or as a part of the employee's duties as a member of this department

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001097

# Redding Police Department
## RPD Policy Manual

*Outside Employment*

(c) Involves the performance of an act in other than the employee's capacity as a member of this department that may later be subject directly or indirectly to the control, inspection, review, audit or enforcement of any other employee of this department

(d) Involves time demands that would render performance of the employee's duties for this department less efficient

## 920.3.1   OUTSIDE SECURITY AND PEACE OFFICER EMPLOYMENT

Consistent with the provisions of <u>Penal Code</u> § 70, and because it would further create a potential conflict of interest, no member of this Department may engage in any outside or secondary employment as a private security guard, private investigator or other similar private security position.

Any private organization, entity or individual seeking special services for security or traffic control from members of this department must submit a written request to the Chief of Police in advance of the desired service. Such outside extra duty overtime assignments will be assigned, monitored and paid through the Department.

(a) The applicant will be required to enter into an indemnification agreement prior to approval.

(b) The applicant will further be required to provide for the compensation and full benefits of all employees requested for such outside security services.

(c) Should such a request be approved, any employee working outside overtime shall be subject to the following conditions:

1. The officer(s) shall wear the Departmental uniform/identification.

2. The officer(s) shall be subject to the rules and regulations of this Department.

3. No officer may engage in such outside employment during or at the site of a strike, lockout, picket, or other physical demonstration of a labor dispute.

4. Compensation for such approved outside security services shall be pursuant to normal overtime procedures.

5. Outside security services shall not be subject to the collective bargaining process.

6. No officer may engage in outside employment as a peace officer for any other public agency without prior written authorization of the Chief of Police.

## 920.3.2   OUTSIDE OVERTIME ARREST AND REPORTING PROCEDURE

Any employee making an arrest or taking other official police action while working in an approved outside overtime assignment shall be required to complete all related reports in a timely manner pursuant to Department policy. Time spent on the completion of such reports shall be considered incidental to the outside overtime assignment.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001098

# Redding Police Department

RPD Policy Manual

*Outside Employment*

---

### 920.3.3   SPECIAL RESTRICTIONS

Except for emergency situations or with prior authorization from the Division Commander, undercover officers or officers assigned to covert operations shall not be eligible to work overtime or other assignments in a uniformed or other capacity which might reasonably disclose the officer's law enforcement status.

### 920.4   DEPARTMENT RESOURCES

Employees are prohibited from using any Department equipment or resources in the course of or for the benefit of any outside employment. This shall include the prohibition of access to official records or databases of this department or other agencies through the use of the employee's position with this department.

### 920.4.1   REVIEW OF FINANCIAL RECORDS

Employees approved for outside employment expressly agree that their personal financial records may be requested and reviewed/audited for potential conflict of interest (Government Code § 3308; Government Code § 1126). Prior to providing written approval for an outside employment position, the Department may request that an employee provide his/her personal financial records for review/audit in order to determine whether a conflict of interest exists. Failure of the employee to provide the requested personal financial records could result in denial of the off-duty work permit. If, after approving a request for an outside employment position, the Department becomes concerned that a conflict of interest exists based on a financial reason, the Department may request that the employee provide his/her personal financial records for review/audit. If the employee elects not to provide the requested records, his/her off-duty work permit may be revoked pursuant to the Revocation/Suspension of Outside Employment Permits section of this policy.

### 920.5   CHANGES IN OUTSIDE EMPLOYMENT STATUS

If an employee terminates his or her outside employment during the period of a valid permit, the employee shall promptly submit written notification of such termination to the Chief of Police through channels. Any subsequent request for renewal or continued outside employment must thereafter be processed and approved through normal procedures set forth in this policy.

Employees shall also promptly submit in writing to the Chief of Police any material changes in outside employment including any change in the number of hours, type of duties, or demands of any approved outside employment. Employees who are uncertain whether a change in outside employment is material are advised to report the change.

### 920.6   OUTSIDE EMPLOYMENT WHILE ON DISABILITY

Department members engaged in outside employment who are placed on disability leave or modified/light-duty shall inform their immediate supervisor in writing within five days whether or not they intend to continue to engage in such outside employment while on such leave or light-duty status. The immediate supervisor shall review the duties of the outside employment along with any related doctor's orders, and make a recommendation to the Chief of Police whether such outside employment should continue.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001099

# Redding Police Department

RPD Policy Manual

## *Outside Employment*

In the event the Chief of Police determines that the outside employment should be discontinued or if the employee fails to promptly notify his/her supervisor of his/her intentions regarding their work permit, a notice of revocation of the member's permit will be forwarded to the involved employee, and a copy attached to the original work permit.

Criteria for revoking the outside employment permit include, but are not limited to, the following:

    (a)    The outside employment is medically detrimental to the total recovery of the disabled member, as indicated by the City's professional medical advisors.

    (b)    The outside employment performed requires the same or similar physical ability, as would be required of an on-duty member.

    (c)    The employee's failure to make timely notice of their intentions to their supervisor.

When the disabled member returns to full duty with the Redding Police Department, a request (in writing) may be made to the Chief of Police to restore the permit.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001100

# Occupational Disease and Work-Related Injury Reporting

### 921.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidance regarding the timely reporting of occupational diseases, psychiatric injuries, and work-related injuries.

### 921.1.1  DEFINITIONS
Definitions related to this policy include:

**Occupational disease or work-related injury** - An injury, disease or psychiatric injury arising out of employment (Labor Code § 3208; Labor Code § 3208.3; Labor Code § 3212 et seq.).

### 921.2  POLICY
The Redding Police Department will address occupational diseases and work-related injuries appropriately, and will comply with applicable state workers' compensation requirements (Labor Code § 3200 et seq.).

### 921.3  RESPONSIBILITIES

### 921.3.1  MEMBER RESPONSIBILITIES
Any member sustaining any occupational disease or work-related injury shall report such event as soon as practicable, but within 24 hours, to a supervisor, and shall seek medical care when appropriate (8 CCR 14300.35).

### 921.3.2  SUPERVISOR RESPONSIBILITIES
A supervisor learning of any occupational disease or work-related injury should ensure the member receives medical care as appropriate.

Supervisors shall ensure that required documents regarding workers' compensation are completed and forwarded to Risk Management with 24 hours.  Any related Citywide disease or injury reporting protocol shall also be followed.

Supervisors shall determine whether the Major Incident Notification and Illness and Injury Prevention policies apply and take additional action as required.

The Risk Management Office shall be advised immediately concerning any occurrence listed below. After hours notification of Risk Management shall depend on the seriousness of the incident and notification will be at the discretion of the supervisor. Guidelines for after-hours call outs are as follows:

  (a)  Accidents or incidents with possible City liability that include but are not limited to the following:

    1.  Any injury as the result of a firearm discharge,

# Redding Police Department

RPD Policy Manual

*Occupational Disease and Work-Related Injury Reporting*

    2.    Any physical injuries during the course of an arrest that requires a suspect to receive medical attention,

    3.    Any property damage caused by a City of Redding employee,

    4.    Any unintentional injury to anyone that requires medical attention (i.e., a non-involved party or witness injured during the course of an arrest),

    5.    Any potential life-threatening situation requiring the Redding Police Department SWAT team.

(b)    Accidents of incidents involving City vehicles and equipment, including non-injury traffic accidents; and,

(c)    Accidents or incidents in which a City employee receives a serious injury requiring medical attention.

If the accident or incident occurs at one of the airports, the Airport Manager shall be notified immediately, before notification of Risk Management.

For the purposes of this policy, City property includes, but is not limited to: shrubs, trees, parking meters, traffic signs, street signs, traffic signals, lawns, fire hydrants, vehicles, buildings, furnishings, facilities, equipment, and other apparatus owned and/or operated by the City of Redding.

## 921.3.3   DIVISION COMMANDER RESPONSIBILITIES

The Division Commander who receives a report of an occupational disease or work-related injury should review the report for accuracy and determine what additional action should be taken. The report shall then be forwarded to the Chief of Police, the City's risk management entity, and the Administration Division Commander to ensure any required Division of Occupational Health and Safety Administration (Cal/OSHA) reporting is made as required in the illness and injury prevention plan identified in the Illness and Injury Prevention Policy.

## 921.3.4   CHIEF OF POLICE RESPONSIBILITIES

The Chief of Police shall review and forward copies of the report to the Personnel Department. Copies of the report and related documents retained by the Department shall be filed in the member's confidential medical file.

## 921.3.5   OFF DUTY STATUS DUE TO INDUSTRIAL INJURY

Employees who are off work due to an industrial injury are subject to the same shift adjustments and requirements as Administrative Leave and are not entitled to overtime compensation, regardless of their assigned shift, per current case law (Mannetter v. County of Marin). If an employee is assigned to a shift which qualifies for shift differential when placed on 4850 leave, the employee will continue to receive the differential while on that assigned shift.

**Note**: Worker's Compensation benefits will be provided based on the employee's average weekly wage for the previous 12-month period per the California Labor Code.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Occupational Disease and Work-Related Injury Reporting*

## 921.4  OTHER DISEASE OR INJURY

Diseases and injuries caused or occurring on-duty that do not qualify for workers' compensation reporting shall be documented on the designated report of injury form, which shall be signed by a supervisor. A copy of the completed form shall be forwarded to the appropriate Division Commander through the chain of command and a copy sent to the Administration Division Commander.

Unless the injury is extremely minor, this report shall be signed by the affected member, indicating that he/she desired no medical attention at the time of the report. By signing, the member does not preclude his/her ability to later seek medical attention.

## 921.5  SETTLEMENT OFFERS

When a member sustains an occupational disease or work-related injury that is caused by another person and is subsequently contacted by that person, his/her agent, insurance company or attorney and offered a settlement, the member shall take no action other than to submit a written report of this contact to his/her supervisor as soon as possible.

### 921.5.1  NO SETTLEMENT WITHOUT PRIOR APPROVAL

No less than 10 days prior to accepting and finalizing the settlement of any third-party claim arising out of or related to an occupational disease or work-related injury, the member shall provide the Chief of Police with written notice of the proposed terms of such settlement. In no case shall the member accept a settlement without first providing written notice to the Chief of Police. The purpose of such notice is to permit the City to determine whether the offered settlement will affect any claim the City may have regarding payment for damage to equipment or reimbursement for wages against the person who caused the disease or injury, and to protect the City's right of subrogation, while ensuring that the member's right to receive compensation is not affected.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Policy**

**922**

# Personal Appearance Standards

## 922.1  PURPOSE AND SCOPE

In order to project uniformity and neutrality toward the public and other members of the department, employees shall maintain their personal hygiene and appearance to project a professional image appropriate for this department and for their assignment.

## 922.2  GROOMING STANDARDS

Unless otherwise stated and because deviations from these standards could present officer safety issues, the following appearance standards shall apply to all employees, except those whose current assignment would deem them not appropriate, and where the Chief of Police has granted exception.

### 922.2.1  HAIR

Hairstyles of all members shall be neat in appearance and not detract from a professional appearance.

For male sworn, CSO, CWPO, PET, PRT and Cadets, hair must be clean and neatly cut, and combed hair shall not protrude ½ inch below the top of the ears and shall not touch the shirt collar. Any hairstyle or artificial coloring that detracts from the professional appearance of the uniform is forbidden.

Members assigned to the Investigations Division may, at the discretion of the Division Commander, have hair styles which vary from officers assigned to Field Operation

For female sworn, CSO, CWPO, PET, PRT, and Cadets, hair must be clean, neat, and combed. Braided or brushed styles are permitted as long as they do not interfere with the normal wearing of standard headgear.Those female officers with a hair length that would extend below the collar top of the uniform shirt must wear their hair pulled back away from the face, either in a fashion pulled up off the collar or pulled back and secured in a plain clip or rubber band.In no case will hair be worn below the yoke of the shirt.Wigs or hair pieces are permitted if they conform to the above standards for natural hair.

### 922.2.2  MUSTACHES

A short and neatly trimmed mustache may be worn. Mustaches shall not extend 1/2 inch past the corners of the mouth, horizontally or vertically, and shall not extend over the lip edge into the mouth area, and may not be curled up.

### 922.2.3  SIDEBURNS

Sideburns shall not extend below the bottom of the ear lobes and shall be neatly trimmed.

### 922.2.4  FACIAL HAIR

Facial hair other than sideburns, mustaches and eyebrows shall not be worn, unless authorized by the Division Commander.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001104

# Redding Police Department

RPD Policy Manual

*Personal Appearance Standards*

---

922.2.5   FINGERNAILS
Fingernails extending beyond the tip of the finger can pose a safety hazard to officers or others. For this reason, fingernails shall be trimmed so that no point of the nail extends beyond the tip of the finger.

922.2.6   JEWELRY AND ACCESSORIES
No jewelry or personal ornaments shall be worn by officers on any part of the uniform or equipment, except those authorized within this manual.Jewelry, if worn around the neck, shall not be visible above the shirt collar.

Only one ring may be worn on each hand of the employee while on-duty.

## 922.3   TATTOOS
All uniformed and Investigations personnel shall not have tattoos visible while on duty or while representing the Department. A single wedding ring tattoo is allowed on the left ring finger. Personnel shall cover visible tattoos with a flesh colored cover. Tattoos above the neckline are prohibited.

Non-uniformed, non-sworn personnel with limited public contact may have visible arm tattoos. This also applies to sworn personnel working in a light-duty capacity with limited public contact.

At no time while on-duty or representing the Department in any official capacity, shall any offensive tattoo or body art be visible. Examples of offensive tattoos would include, but not be limited to, those which depict racial, sexual, discriminatory, gang related, or obscene language. Tattoos deemed to be offensive are at the sole discretion of the Chief of Police.

## 922.4   EARRINGS, BODY PIERCING OR ALTERATION
Body jewelry and body piercing holes, other than a maximum of three hole in the lobe of each ear,shall not be visible while on-duty.

Earrings shall not be worn by uniformed Officers, CSOs, CWPO, Cadets, or special assignment personnel without permission of the Division Commander. PRT, PET, non-sworn/non-uniformed staff, and volunteers may wear earrings as long as they do not detract from the professional appearance of the Department as deemed by the Chief of Police.

## 922.5   EXEMPTIONS
Members who seek cultural (e.g., culturally protected hairstyles) or other exemptions to this policy that are protected by law should generally be accommodated (Government Code § 12926). A member with an exemption may be ineligible for an assignment if the individual accommodation presents a security or safety risk. The Chief of Police should be advised any time a request for such an accommodation is denied or when a member with a cultural or other exemption is denied an assignment based on a safety or security risk.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001105

**Redding Police Department**

RPD Policy Manual

# Uniform Regulations

### 923.1  PURPOSE AND SCOPE

The Uniform Manual of the Redding Police Department is established to ensure that uniformed officers will be readily identifiable to the public through the proper use and wearing of Department uniforms.

The Department Uniform Manual is maintained and periodically updated by the Chief of Police or his/her designee. That manual should be consulted regarding authorized equipment and uniform specifications.

### 923.2  DEPARTMENT ISSUED IDENTIFICATION

The Department issues each employee an official Department identification card bearing the employee's name, identifying information and photo likeness. All employees shall be in possession of their Department issued identification card at all times while on duty or when carrying a concealed weapon.

    (a)    Identification cards will be issued on the first day of employment. All ID cards expire on the same day for all employees, December 31, in five-year increments. Sworn officers will be issued two ID cards.

    (b)    It is the responsibility of the employee changing job classification and/or assignment to obtain new ID cards by contacting the Administrative Unit.

    (c)    Whenever on duty or acting in an official capacity representing the Department, employees shall display their Department issued identification in a courteous manner to any person upon request and as soon as practical.

    (d)    Officers working specialized assignments may be excused from the possession and display requirements when directed by their Division Commander.

    (e)    Upon separation from employment, the Chief or his designee shall be responsible for collecting employee ID cards. The Chief of Police may return an expired ID card to an employee as a "keepsake" item.However, such cards shall be clearly marked by punching a hole through the card in the area indicating it is no longer valid.

### 923.3  MOURNING BADGE BAND

In the event of a law enforcement officer being killed on duty, the Chief of Police may authorize employees to wear a black mourning band across their badge. The Chief of Police may also authorize the wearing of the black mourning band at other times, such as during the week of the National Peace Officers Memorial.

### 923.4  POLITICAL ACTIVITIES, ENDORSEMENTS, AND ADVERTISEMENTS

Unless specifically authorized by the Chief of Police, Redding Police Department employees may not wear any part of the uniform, be photographed wearing any part of the uniform, utilize a department badge, patch or other official insignia, or cause to be posted, published, or displayed,

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001106

# Redding Police Department

RPD Policy Manual

## Uniform Regulations

the image of another employee, or identify himself/herself as an employee of the Redding Police Department to do any of the following (Government Code §§ 3206 and 3302):

(a) Endorse, support, oppose, or contradict any political campaign or initiative.

(b) Endorse, support, oppose, or contradict any social issue, cause, or religion.

(c) Endorse, support, or oppose, any product, service, company or other commercial entity.

(d) Appear in any commercial, social, or non-profit publication, or any motion picture, film, video, public broadcast, or any website.

## 923.5 RETIREE BADGES

The Chief of Police may issue identification in the form of a badge, insignia, emblem, device, label, certificate, card or writing that clearly states the person has honorably retired from the Redding Police Department. This identification is separate and distinct from the identification authorized by Penal Code § 25455 and referenced in the Retired Officer CCW Endorsement Policy in this manual.

A badge issued to an honorably retired peace officer that is not affixed to a plaque or other memento will have the words "Honorably Retired" clearly visible on its face (Penal Code § 538d).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001107

# Police Cadets

## 924.1  PURPOSE AND SCOPE

Cadets work under direct supervision, perform a variety of routine and progressively more advanced tasks in an apprenticeship program in preparation for a career in law enforcement.

## 924.2  PROGRAM MANAGEMENT

The Administration Division is responsible for the management of the Police Cadet program. The Administration Division Lieutenant shall serve as the Program Manager.  The Training Sergeant will serve as the Program Coordinator.

The Program Coordinator will be responsible for tracking the job performance of cadets as well as making their individual assignments throughout the Department. He/she will also monitor the training provided for all cadets and review all decisions affecting job assignments, status for compensation, and performance evaluations.

## 924.3  ORIENTATION AND TRAINING

Newly hired cadets will receive an orientation of the organization and facilities before reporting to their first assignment. On-the-job training will be conducted in compliance with the Cadet Training Manual. Newly hired cadets will train in compliance with the Cadet Training Manual. The Program Coordinator will be responsible for the initial training for new cadets and ensuring the signed Cadet Training Manual is placed in the cadet division file.

Additional training sessions will be scheduled as needed to train cadets for as many assignments as possible. In addition to job-specific training, information will be offered to prepare cadets to compete successfully in the police officer selection process, as well as the academy training. All training will focus on improving job performance, as well as preparation to become police officers. These meetings will also offer an opportunity to receive continuous feedback regarding progress of the program.

### 924.3.1  CITY AND POLICE DEPARTMENT POLICY

Police cadets are subject to all regulations set forth by the City and Department policies. Cadets shall conduct themselves in an exemplary manner at all times.

(a)  Cadets involved in an on-duty accident or become injured during their working hours shall immediately report the incident to the appropriate shift supervisor.

(b)  Cadets involved in a motor vehicle collision using City equipment shall immediately notify the appropriate shift supervisor.

### 924.3.2  CADET USE OF MARKED POLICE VEHICLES

Cadet use of marked police vehicles shall be as follows:

1. Patrol vehicles used by officers shall not be used unless assigned by shift supervisors.

2. "Out-of-Service" signs or light bar covers shall be used at all times a patrol vehicle is used.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001108

# Redding Police Department

RPD Policy Manual

*Police Cadets*

3. All traffic laws shall be obeyed.

4. Emergency lights and sirens shall not be used unless directed to do so by an officer or supervisor.

5. Established radio procedures shall be adhered to at all times.

6. Cadets are not to operate a police vehicle "Code 3" at any time.

## 924.4  CADET DUTIES

### 924.4.1  PATROL CADET
Cadets assigned to the Field Operations Division will be under the direct supervision of the shift supervisor.  Field Operations duties include:

(a)   Vehicle Maintenance Duties (VMO),

(b)   Subpoenas,

(c)   Supply report writing/property,

(d)   Patrol mail,

(e)   Handicap/Parkin cites,

(f)   Found/lost property,

(g)   Traffic control,

(h)   TC info exchange,

(i)   AVA tag,

(j)   Property bookings (bikes, shopping carts),

(k)   To assist on 180's,

(l)   Consent to Enforce inspections,

(m)   Any other duties deemed by the Supervisor.

### 924.4.2  SERVICES CADET
Cadets assigned to the Services Division will be under the direct supervision of the shift supervisor.  Services duties include:

(a)   Court run,

(b)   Fingerprints,

(c)   Cite sign-off,

(d)   DE cites,

(e)   Imaging,

(f)   Shred,

(g)   Microfilm,

COR (McLeod)  001109

# Redding Police Department

RPD Policy Manual

*Police Cadets*

    (h)    Phones/front counter,

    (i)    Supply records and 7i,

    (j)    Any other duties deemed by the Supervisor.

## 924.4.3  PROPERTY CADET
Property Cadets duties include:

    (a)    Log in photo and audio SD cards,

    (b)    Assist with releasing property,

    (c)    Assist with logging in and storing safekeeping property,

    (d)    Pull property/evidence/contraband designated for destruction, auction, or return to owner,

    (e)    Filing of property tags,

    (f)    Assist with property showings with the DA's office and Defense Attorneys,

    (g)    Miscellaneous other duties as needed.

## 924.5  ROTATION OF ASSIGNMENTS
Rotating job assignments should occur on a regular basis to enhance the career development for each cadet. Department needs, and concerns will take precedence over individual considerations with the final decision resting with the Training Sergeant.

## 924.5.1  SCHEDULING OF POLICE CADETS
The Police Services Manager (PSM) or designee is responsible for the scheduling of division/unit assignments to cadets after consultation with the Program Manager. Police cadets shall report for duty appropriately dressed to perform their assigned duties. Whenever possible, assignments will be coordinated to meet the needs of each division/unit and the police cadet involved.

    (a)    Cadets working scheduled four-hour shifts are entitled to a rest break (15 minutes); they are not entitled to a meal break. Cadets working an eight-hour shift are entitled to rest breaks and a meal break. Cadets assigned to training details shall be considered on-duty.

    (b)    Cadets reporting for duty shall immediately contact their supervisor who shall establish priorities and make appropriate task assignments as needed. Cadets shall check their emails and mailboxes routinely and at least once per shift.

    (c)    When requests are made for cadet assistance from another division, cadets shall refer the requesting party to their supervisor. This will ensure each division's assigned tasks are accomplished on a scheduled, timely basis.

    (d)    Cadets are responsible for the correct and accurate use of time cards. Cadets shall assist in monitoring their work hours to ensure they do not exceed stipulated program hours and to ensure adequate hours are worked.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001110

## Redding Police Department

RPD Policy Manual

*Police Cadets*

---

(e) Time off requests shall be made with as much advance notice as possible and submitted to the appropriate supervisor. All changes to a cadet's schedule shall be authorized in advance by the Program Manager. Cadet Program Supervisor.

## 924.6   RIDE-ALONG PROCEDURES

All cadets are authorized to participate in the Ride-Along Program on their own time and/or as approved by their immediate supervisor and the appropriate patrol shift supervisor. Cadets may wear their uniform while participating on a ride-along.

## 924.7   PERFORMANCE EVALUATIONS

Performance evaluations for all cadets shall be completed on an annual basis to assess their current job performance. The Program Coordinator will be responsible for assigning the evaluations to the appropriate cadet supervisor from that evaluation period.  Evaluations will be completed by the assigned supervisor and returned to the Program Coordinator.  Evaluations will be reviewed and signed by the employee.  The evaluation will be placed in the cadet division file kept in the Cadet Coordinator's office.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Nepotism and Conflicting Relationships

## 925.1  PURPOSE AND SCOPE

The purpose of this policy is to ensure equal opportunity and effective employment practices by avoiding actual or perceived favoritism, discrimination or actual or potential conflicts of interest by or between members of this department. These employment practices include: recruiting, testing, hiring, compensation, assignment, use of facilities, access to training opportunities, supervision, performance appraisal, discipline and workplace safety and security.

### 925.1.1  DEFINITIONS

**Business relationship** - Serving as an employee, independent contractor, compensated consultant, owner, board member, shareholder, or investor in an outside business, company, partnership, corporation, venture or other transaction, where the Department employee's annual interest, compensation, investment or obligation is greater than $250.

**Conflict of interest** - Any actual, perceived or potential conflict of interest in which it reasonably appears that a department employee's action, inaction or decisions are or may be influenced by the employee's personal or business relationship.

**Nepotism** - The practice of showing favoritism to relatives over others in appointment, employment, promotion or advancement by any public official in a position to influence these personnel decisions.

**Personal relationship** - Includes marriage, cohabitation, dating or any other intimate relationship beyond mere friendship.

**Public official** - A supervisor, officer or employee vested with authority by law, rule or regulation or to whom authority has been delegated.

**Relative** - An employee's parent, stepparent, spouse, domestic partner, significant other, child (natural, adopted or step), sibling or grandparent.

**Subordinate** - An employee who is subject to the temporary or ongoing direct or indirect authority of a supervisor.

**Supervisor** - An employee who has temporary or ongoing direct or indirect authority over the actions, decisions, evaluation and/or performance of a subordinate employee.

## 925.2  RESTRICTED DUTIES AND ASSIGNMENTS

The Department will not prohibit all personal or business relationships between employees. However, in order to avoid nepotism or other inappropriate conflicts, the following reasonable restrictions shall apply (Government Code § 12940):

(a)  Employees are prohibited from directly supervising, occupying a position in the line of supervision or being directly supervised by any other employee who is a relative or with whom they are involved in a personal or business relationship.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001112

# Redding Police Department

RPD Policy Manual

*Nepotism and Conflicting Relationships*

1. If circumstances require that such a supervisor/subordinate relationship exist temporarily, the supervisor shall make every reasonable effort to defer matters pertaining to the involved employee to an uninvolved supervisor.

2. When personnel and circumstances permit, the Department will attempt to make every reasonable effort to avoid placing employees in such supervisor/subordinate situations. The Department, however, reserves the right to transfer or reassign any employee to another position within the same classification in order to avoid conflicts with any provision of this policy.

(b) Employees are prohibited from participating in, contributing to or recommending promotions, assignments, performance evaluations, transfers or other personnel decisions affecting an employee who is a relative or with whom they are involved in a personal or business relationship.

(c) Whenever possible, FTOs and other trainers will not be assigned to train relatives. FTOs and other trainers are prohibited from entering into or maintaining personal or business relationships with any employee they are assigned to train until such time as the training has been successfully completed and the employee is off probation.

(d) To avoid actual or perceived conflicts of interest, members of this department shall refrain from developing or maintaining personal or financial relationships with victims, witnesses or other individuals during the course of or as a direct result of any official contact.

(e) Except as required in the performance of official duties or, in the case of immediate relatives, employees shall not develop or maintain personal or financial relationships with any individual they know or reasonably should know is under criminal investigation, is a convicted felon, parolee, fugitive or registered sex offender or who engages in serious violations of state or federal laws.

## 925.2.1   EMPLOYEE RESPONSIBILITY

Prior to entering into any personal or business relationship or other circumstance which the employee knows or reasonably should know could create a conflict of interest or other violation of this policy, the employee shall promptly notify his/her uninvolved, next highest level of supervisor.

Whenever any employee is placed in circumstances that would require the employee to take enforcement action or provide official information or services to any relative or individual with whom the employee is involved in a personal or business relationship, the employee shall promptly notify his/her uninvolved, immediate supervisor. In the event that no uninvolved supervisor is immediately available, the employee shall promptly notify dispatch to have another uninvolved employee either relieve the involved employee or minimally remain present to witness the action.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001113

# Redding Police Department

RPD Policy Manual

## *Nepotism and Conflicting Relationships*

### 925.2.2  SUPERVISOR'S RESPONSIBILITY

Upon being notified of, or otherwise becoming aware of any circumstance that could result in or constitute an actual or potential violation of this policy, a supervisor shall take all reasonable steps to promptly mitigate or avoid such violations whenever possible. Supervisors shall also promptly notify the Chief of Police of such actual or potential violations through the chain of command.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001114

Redding Police Department

RPD Policy Manual

# Department Badges

## 926.1  PURPOSE AND SCOPE

The Redding Police Department badge and uniform patch as well as the likeness of these items and the name of the Redding Police Department are property of the Department and their use shall be restricted as set forth in this policy.

## 926.2  POLICY

The uniform badge shall be issued to Department members as a symbol of authority and the use and display of Departmental badges shall be in strict compliance with this policy. Only authorized badges issued by this Department shall be displayed, carried or worn by members while on duty or otherwise acting in an official or authorized capacity.

### 926.2.1  FLAT BADGE

Sworn officers will be issued a flat badge capable of being carried in a wallet. The use of the flat badge is subject to all the same provisions of departmental policy as the uniform badge. officer Redding Police Department Chief of Police officer

    (a)    An honorably retired officer may purchase his/her flat badge upon retirement. The badge will be required to have an "Honorably Retired" banner.

    (b)    The purchase, carrying or display of a flat badge is not authorized for non-sworn personnel.

### 926.2.2  NON-SWORN PERSONNEL

Badges and departmental identification cards issued to non-sworn personnel shall be clearly marked to reflect the position of the assigned employee (e.g. Parking Control, Dispatcher).

    (a)    Non-sworn personnel shall not display any Department badge except as a part of his/her uniform and while on duty, or otherwise acting in an official and authorized capacity.

    (b)    Non-sworn personnel shall not display any Department badge or represent him/ herself, on or off duty, in such a manner which would cause a reasonable person to believe that he/she is a sworn peace officer.

### 926.2.3  RETIREE UNIFORM BADGE

The Chief of Police may issue identification in the form of a badge, insignia, emblem, device, label, certificate, card or writing that clearly states the person has honorably retired from the Redding Police Department. This identification is separate and distinct from the identification authorized by Penal Code § 25455 and referenced in the Retired Officer CCW Endorsement Policy in this manual.

A badge issued to an honorably retired peace officer that is not affixed to a plaque or other memento will have the words "Honorably Retired" clearly visible on its face (Penal Code § 538d).

Redding Police Department

RPD Policy Manual

*Department Badges*

---

**926.3  UNAUTHORIZED USE**

Except as required for on-duty use by current employees, no badge designed for carry or display in a wallet, badge case or similar holder shall be issued to anyone other than a current or honorably retired peace officer.

Department badges are issued to all sworn employees and non-sworn uniformed employees for official use only. The Department badge, shoulder patch or the likeness thereof, or the Department name shall not be used for personal or private reasons including, but not limited to, letters, memoranda, and electronic communications such as electronic mail or web sites and web pages.

The use of the badge, uniform patch and Department name for all material (printed matter, products or other items) developed for department use shall be subject to approval by the Chief of Police.

Employees shall not loan his/her Department badge or identification card to others and shall not permit the badge or identification card to be reproduced or duplicated.

**926.4  PERMITTED USE BY EMPLOYEE GROUPS**

The likeness of the Department badge shall not be used without the expressed authorization of the Chief of Police and shall be subject to the following:

(a) The employee associations may use the likeness of the Department badge for merchandise and official association business provided they are used in a clear representation of the association and not the Redding Police Department. The following modifications shall be included:

    1. The text on the upper and lower ribbons is replaced with the name of the employee association.

    2. The badge number portion displays the acronym of the employee association.

(b) The likeness of the Department badge for endorsement of political candidates shall not be used without the expressed approval of the Chief of Police.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001116

# Temporary Modified-Duty Assignments

## 927.1  PURPOSE AND SCOPE

This policy establishes procedures for providing temporary modified-duty assignments. This policy is not intended to affect the rights or benefits of employees under federal or state law, City rules, current memorandums of understanding or collective bargaining agreements. For example, nothing in this policy affects the obligation of the Department to engage in a good faith, interactive process to consider reasonable accommodations for any employee with a temporary or permanent disability that is protected under federal or state law.

## 927.2  POLICY

Subject to operational considerations, the Redding Police Department may identify temporary modified-duty assignments for employees who have an injury or medical condition resulting in temporary work limitations or restrictions. A temporary assignment allows the employee to work, while providing the Department with a productive employee during the temporary period.

## 927.3  GENERAL CONSIDERATIONS

Priority consideration for temporary modified-duty assignments will be given to employees with work-related injuries or illnesses that are temporary in nature. Employees having disabilities covered under the Americans with Disabilities Act (ADA) or the California Fair Employment and Housing Act (Government Code § 12940 et seq.) shall be treated equally, without regard to any preference for a work-related injury.

No position in the Redding Police Department shall be created or maintained as a temporary modified-duty assignment.

Temporary modified-duty assignments are a management prerogative and not an employee right. The availability of temporary modified-duty assignments will be determined on a case-by-case basis, consistent with the operational needs of the Department. Temporary modified-duty assignments are subject to continuous reassessment, with consideration given to operational needs and the employee's ability to perform in a modified-duty assignment.

The Chief of Police or the authorized designee may restrict employees working in temporary modified-duty assignments from wearing a uniform, displaying a badge, carrying a firearm, operating an emergency vehicle, engaging in outside employment, or being otherwise limited in employing their peace officer powers.

Temporary modified-duty assignments shall generally not exceed a cumulative total of 1,040 hours in any one-year period.

## 927.4  PROCEDURE

Employees may request a temporary modified-duty assignment for short-term injuries or illnesses.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001117

# Redding Police Department

RPD Policy Manual

---

## *Temporary Modified-Duty Assignments*

Employees seeking a temporary modified-duty assignment should submit a written request to their Division Commanders or the authorized designees. The request should, as applicable, include a certification from the treating medical professional containing:

(a)   An assessment of the nature and probable duration of the illness or injury.

(b)   The prognosis for recovery.

(c)   The nature and scope of limitations and/or work restrictions.

(d)   A statement regarding any required workplace accommodations, mobility aids or medical devices.

(e)   A statement that the employee can safely perform the duties of the temporary modified-duty assignment.

The Division Commander will make a recommendation through the chain of command to the Chief of Police regarding temporary modified-duty assignments that may be available based on the needs of the Department and the limitations of the employee. The Chief of Police or the authorized designee shall confer with the Personnel Department or the City Attorney as appropriate.

Requests for a temporary modified-duty assignment of 20 hours or less per week may be approved and facilitated by the Watch Commander or Division Commander, with notice to the Chief of Police.

## 927.5   ACCOUNTABILITY

Written notification of assignments, work schedules and any restrictions should be provided to employees assigned to temporary modified-duty assignments and their supervisors. Those assignments and schedules may be adjusted to accommodate department operations and the employee's medical appointments, as mutually agreed upon with the Division Commander.

### 927.5.1   EMPLOYEE RESPONSIBILITIES

The responsibilities of employees assigned to temporary modified duty shall include, but not be limited to:

(a)   Communicating and coordinating any required medical and physical therapy appointments in advance with their supervisors.

(b)   Promptly notifying their supervisors of any change in restrictions or limitations after each appointment with their treating medical professionals.

(c)   Communicating a status update to their supervisors no less than once every 30 days while assigned to temporary modified duty.

(d)   Submitting a written status report to the Division Commander that contains a status update and anticipated date of return to full-duty when a temporary modified-duty assignment extends beyond 60 days.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001118

# Redding Police Department

RPD Policy Manual

*Temporary Modified-Duty Assignments*

## 927.5.2   SUPERVISOR RESPONSIBILITIES

The employee's immediate supervisor shall monitor and manage the work schedule of those assigned to temporary modified duty.

The responsibilities of supervisors shall include, but not be limited to:

(a) Periodically apprising the Watch Commander of the status and performance of employees assigned to temporary modified duty.

(b) Notifying the Watch Commander and ensuring that the required documentation facilitating a return to full duty is received from the employee.

(c) Ensuring that employees returning to full duty have completed any required training and certification.

(d) Complete a modified light duty contract with the employee and forward to the Division Commander via the chain of command.

## 927.6   MEDICAL EXAMINATIONS

Prior to returning to full-duty status, employees shall be required to provide certification from their treating medical professionals stating that they are medically cleared to perform the essential functions of their jobs without restrictions or limitations.

The Department may require a fitness-for-duty examination prior to returning an employee to full-duty status, in accordance with the Fitness for Duty Policy.

## 927.7   PREGNANCY

If an employee is temporarily unable to perform regular duties due to a pregnancy, childbirth, or a related medical condition, the employee will be treated the same as any other temporarily disabled employee (42 USC § 2000e(k)). A pregnant employee shall not be involuntarily transferred to a temporary modified-duty assignment. Nothing in this policy limits a pregnant employee's right to a temporary modified-duty assignment if required under Government Code § 12945.

### 927.7.1   NOTIFICATION

Pregnant employees should notify their immediate supervisors as soon as practicable and provide a statement from their medical providers identifying any pregnancy-related job restrictions or limitations. If at any point during the pregnancy it becomes necessary for the employee to take a leave of absence, such leave shall be granted in accordance with the City's personnel rules and regulations regarding family and medical care leave.

## 927.8   WORKING REMOTELY (TELEWORK)

At the direction of the Chief of Police, employees may be required to work remotely. The Department may provide employees with additional equipment to work from home, depending on the circumstances. The Department's policy is as follows:

(a) Employees will be advised by their supervisor how many days they are authorized or required to work remotely.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001119

# Redding Police Department

RPD Policy Manual

*Temporary Modified-Duty Assignments*

(b)   Participation will be determined at the sole discretion of the Division Commander and the Chief of Police. In some cases (i.e. State of Emergency), it may become mandatory for eligible employees.

(c)   Any remote working arrangement resulting from this policy may be terminated by the Department at any time.

(d)   Any equipment, software, file, and databases provided by the Department shall remain the property of the Department.

(e)   Employees may not add hardware or software to Department equipment without approval.

(f)   Equipment, software, or supplies provided by the Department are for Department business only.

(g)   The Department is not liable for damages to an employee's personal or real property while the employee is working at an alternate worksite.

(h)   All Department rules regarding the use of computers and the internet apply while an employee is working remotely.

(i)   Employees working remotely, who are not able to perform work, shall inform their supervisor immediately.

Employees shall not use any personally-owned equipment to access any system that contains Criminal Justice Information (CJI), such as Spillman. Employees that need remote access to a system containing CJI shall ensure they follow current FBI and DOJ guidelines for the access of CJI including, but not limited to, two-factor authentication, mandatory use of a Virtual Private Network (VPN), and password requirements. These guidelines also include locking any device used to store or view CJI when not in use and positioning devices containing CJI in a manner so as to prevent unauthorized access and view.

## 927.9  PROBATIONARY EMPLOYEES
Probationary employees who are assigned to a temporary modified-duty assignment shall have their probation extended by a period of time equal to their assignment to temporary modified duty.

## 927.10  MAINTENANCE OF CERTIFICATION AND TRAINING
Employees assigned to temporary modified duty shall maintain all certification, training and qualifications appropriate to both their regular and temporary duties, provided that the certification, training or qualifications are not in conflict with any medical limitations or restrictions. Employees who are assigned to temporary modified duty shall inform their supervisors of any inability to maintain any certification, training or qualifications.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Policy**

**928**

# Employee Speech, Expression and Social Networking

### 928.1  PURPOSE AND SCOPE
This policy is intended to address issues associated with employee use of social networking sites and to provide guidelines for the regulation and balancing of employee speech and expression with the needs of the Department.

Nothing in this policy is intended to prohibit or infringe upon any communication, speech or expression that is protected or privileged under law. This includes speech and expression protected under state or federal constitutions as well as labor or other applicable laws. For example, this policy does not limit an employee from speaking as a private citizen, including acting as an authorized member of a recognized bargaining unit or officer associations, about matters of public concern, such as misconduct or corruption.

Employees are encouraged to consult with their supervisor regarding any questions arising from the application or potential application of this policy.

#### 928.1.1  APPLICABILITY
This policy applies to all forms of communication including but not limited to film, video, print media, public or private speech, use of all internet services, including the World Wide Web, e-mail, file transfer, remote computer access, news services, social networking, social media, instant messaging, blogs, forums, video, and other file-sharing sites.

### 928.2  POLICY
Public employees occupy a trusted position in the community, and thus, their statements have the potential to contravene the policies and performance of this Department. Due to the nature of the work and influence associated with the law enforcement profession, it is necessary that employees of this Department be subject to certain reasonable limitations on their speech and expression. To achieve its mission and efficiently provide service to the public, the Redding Police Department will carefully balance the individual employee's rights against the Department's needs and interests when exercising a reasonable degree of control over its employees' speech and expression.

### 928.3  SAFETY
Employees should consider carefully the implications of their speech or any other form of expression when using the internet. Speech and expression that may negatively affect the safety of the Redding Police Department employees, such as posting personal information in a public forum, can result in compromising an employee's home address or family ties. Employees should therefore not disseminate or post any information on any forum or medium that could reasonably be anticipated to compromise the safety of any employee, an employee's family, or associates. Examples of the type of information that could reasonably be expected to compromise safety include:

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

*Employee Speech, Expression and Social Networking*

- Disclosing a photograph and name or address of an officer who is working undercover.

- Disclosing the address of a fellow officer.

- Otherwise disclosing where another officer can be located off-duty.

## 928.4  PROHIBITED SPEECH, EXPRESSION AND CONDUCT

To meet the Department's safety, performance and public-trust needs, the following are prohibited unless the speech is otherwise protected (for example, an employee speaking as a private citizen, including acting as an authorized member of a recognized bargaining unit or officer associations, on a matter of public concern):

(a)  Speech or expression made pursuant to an official duty that tends to compromise or damage the mission, function, reputation or professionalism of the Redding Police Department or its employees.

(b)  Speech or expression that, while not made pursuant to an official duty, is significantly linked to, or related to, the Redding Police Department and tends to compromise or damage the mission, function, reputation or professionalism of the Redding Police Department or its employees. Examples may include:

    1.  Statements that indicate disregard for the law or the state or U.S. Constitution.

    2.  Expression that demonstrates support for criminal activity.

    3.  Participating in sexually explicit photographs or videos for compensation or distribution.

(c)  Speech or expression that could reasonably be foreseen as having a negative impact on the credibility of the employee as a witness. For example, posting statements or expressions to a website that glorify or endorse dishonesty, unlawful discrimination or illegal behavior.

(d)  Speech or expression of any form that could reasonably be foreseen as having a negative impact on the safety of the employees of the Department. For example, a statement on a blog that provides specific details as to how and when prisoner transportations are made could reasonably be foreseen as potentially jeopardizing employees by informing criminals of details that could facilitate an escape or attempted escape.

(e)  Speech or expression that is contrary to the canons of the Law Enforcement Code of Ethics as adopted by the Redding Police Department.

(f)  Use or disclosure, through whatever means, of any information, photograph, video or other recording obtained or accessible as a result of employment with the Department for financial or personal gain, or any disclosure of such materials without the express authorization of the Chief of Police or the authorized designee.

(g)  Posting, transmitting or disseminating any photographs, video or audio recordings, likenesses or images of Department logos, emblems, uniforms, badges, patches, marked vehicles, equipment or other material that specifically identifies the Redding Police Department on any personal or social networking or other website or web page, without the express authorization of the Chief of Police.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001122

# Redding Police Department

RPD Policy Manual

*Employee Speech, Expression and Social Networking*

     (h)    Accessing websites for non-authorized purposes, or use of any personal communication device, game device or media device, whether personally or Department-owned, for personal purposes while on-duty, except in the following circumstances:

          1.    When brief personal communication may be warranted by the circumstances (e.g., inform family of extended hours).

          2.    During authorized breaks such usage should be limited as much as practicable to areas out of sight and sound of the public and shall not be disruptive to the work environment.

Employees must take reasonable and prompt action to remove any content, including content posted by others, that is in violation of this policy from any web page or website maintained by the employee (e.g., social or personal website).

## 928.4.1   UNAUTHORIZED ENDORSEMENTS AND ADVERTISEMENTS

While employees are not restricted from engaging in the following activities as private citizens or as authorized members of a recognized bargaining unit or officer associations, employees may not represent the Redding Police Department or identify themselves in any way that could be reasonably perceived as representing the Redding Police Department in order to do any of the following, unless specifically authorized by the Chief of Police (Government Code § 3206; Government Code § 3302):

     (a)    Endorse, support, oppose or contradict any political campaign or initiative.

     (b)    Endorse, support, oppose or contradict any social issue, cause or religion.

     (c)    Endorse, support or oppose any product, service, company or other commercial entity.

     (d)    Appear in any commercial, social or nonprofit publication or any motion picture, film, video, public broadcast or on any website.

Additionally, when it can reasonably be construed that an employee, acting in his/her individual capacity or through an outside group or organization (e.g., bargaining group or officer associations), is affiliated with this Department, the employee shall give a specific disclaiming statement that any such speech or expression is not representative of the Redding Police Department.

Employees retain their right to vote as they choose, to support candidates of their choice and to express their opinions as private citizens, including as authorized members of a recognized bargaining unit or officer associations, on political subjects and candidates at all times while off-duty.

However, employees may not use their official authority or influence to interfere with or affect the result of an election or a nomination for office. Employees are also prohibited from directly or indirectly using their official authority to coerce, command or advise another employee to pay, lend or contribute anything of value to a party, committee, organization, agency or person for political purposes (5 USC § 1502).

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001123

# Redding Police Department

RPD Policy Manual

*Employee Speech, Expression and Social Networking*

## 928.5  PRIVACY EXPECTATION

Employees forfeit any expectation of privacy with regard to e-mails, texts, or anything published or maintained through file-sharing software or any internet site (e.g., Facebook) that is accessed, transmitted, received, or reviewed on any department technology system (see the Information Technology Use Policy for additional guidance).

The Department shall not require an employee to disclose a personal user name or password for accessing personal social media or to open a personal social website; however, the Department may request access when it is reasonably believed to be relevant to the investigation of allegations of work-related misconduct (Labor Code § 980).

## 928.6  CONSIDERATIONS

In determining whether to grant authorization of any speech or conduct that is prohibited under this policy, the factors that the Chief of Police or authorized designee should consider include:

    (a)    Whether the speech or conduct would negatively affect the efficiency of delivering public services.

    (b)    Whether the speech or conduct would be contrary to the good order of the Department or the efficiency or morale of its members.

    (c)    Whether the speech or conduct would reflect unfavorably upon the Department.

    (d)    Whether the speech or conduct would negatively affect the member's appearance of impartiality in the performance of his/her duties.

    (e)    Whether similar speech or conduct has been previously authorized.

    (f)    Whether the speech or conduct may be protected and outweighs any interest of the Department.

### 928.6.1  PUBLIC APPEARANCES

    (a)    All requests for outside appearances, whether talks or demonstrations, shall be approved by a supervisor who will advise the Chief of Police via the chain of command.(This does not include daily presentations by personnel assigned to Crime Prevention, Traffic Unit, Neighborhood Police Unit, or School Resource Officers.)

    (b)    Employees may be required by a supervisor to complete an after-event critique which shall be forwarded via the chain of command to the Chief of Police.The critique shall contain subject matter discussed, size of crowd, date, time, location of event, positive/ negative discussions, etc.

## 928.7  TRAINING

Subject to available resources, the Department should provide training regarding employee speech and the use of social networking to all members of the Department.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Employee Speech, Expression and Social
Networking - 653

COR (McLeod) 001124

Policy

**929**

# Line-of-Duty Deaths

## 929.1   PURPOSE AND SCOPE
The purpose of this policy is to provide guidance to members of the Redding Police Department in the event of the death of a member occurring in the line of duty and to direct the Department in providing proper support for the member's survivors.

The Chief of Police may also apply some or all of this policy in situations where members are injured in the line of duty and the injuries are life-threatening.

### 929.1.1   DEFINITIONS
Definitions related to this policy include:

**Line-of-duty death** - The death of a sworn member during the course of performing law enforcement-related functions while on- or off-duty, or a non-sworn member during the course of performing their assigned duties.

**Survivors** - Immediate family members of the deceased member, which can include spouse, children, parents, other next of kin or significant others. The determination of who should be considered a survivor for purposes of this policy should be made on a case-by-case basis given the individual's relationship with the member and whether the individual was previously designated by the deceased member.

## 929.2   POLICY
It is the policy of the Redding Police Department to make appropriate notifications and to provide assistance and support to survivors and coworkers of a member who dies in the line of duty.

It is also the policy of this department to respect the requests of the survivors when they conflict with these guidelines, as appropriate.

## 929.3   INITIAL ACTIONS BY COMMAND STAFF

(a)   Upon learning of a line-of-duty death, the deceased member's supervisor should provide all reasonably available information to the Watch Commander and SHASCOM.

1.   Communication of information concerning the member and the incident should be restricted to secure networks to avoid interception by the media or others (see the Public Information Officer section of this policy).

(b)   The Watch Commander should ensure that notifications are made in accordance with the Officer-Involved Shootings and Deaths and Major Incident Notification policies as applicable.

(c)   If the member has been transported to the hospital, the Watch Commander or the designee should respond to the hospital to assume temporary responsibilities as the Hospital Liaison.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001125

# Redding Police Department

RPD Policy Manual

## Line-of-Duty Deaths

(d)    The Chief of Police or the authorized designee should assign members to handle survivor notifications and assign members to the roles of Hospital Liaison (to relieve the temporary Hospital Liaison) and the Department Liaison as soon as practicable (see the Notifying Survivors section and the Department Liaison and Hospital Liaison subsections in this policy).

## 929.4  NOTIFYING SURVIVORS

Survivors should be notified as soon as possible in order to avoid the survivors hearing about the incident in other ways.

The Chief of Police or the authorized designee should review the deceased member's emergency contact information and make accommodations to respect the member's wishes and instructions specific to notifying survivors. However, notification should not be excessively delayed because of attempts to assemble a notification team in accordance with the member's wishes.

The Chief of Police, Watch Commander or the authorized designee should select at least two members to conduct notification of survivors, one of which may be the Department Chaplain.

Notifying members should:

(a)    Make notifications in a direct and compassionate manner, communicating as many facts of the incident as possible, including the current location of the member. Information that is not verified should not be provided until an investigation has been completed.

(b)    Determine the method of notifying surviving children by consulting with other survivors and taking into account factors such as the child's age, maturity and current location (e.g., small children at home, children in school).

(c)    Plan for concerns such as known health concerns of survivors or language barriers.

(d)    Offer to transport survivors to the hospital, if appropriate. Survivors should be transported in department vehicles. Notifying members shall inform the Hospital Liaison over a secure network that the survivors are on their way to the hospital and should remain at the hospital while the survivors are present.

(e)    When survivors are not at their residences or known places of employment, actively seek information and follow leads from neighbors, other law enforcement, postal authorities and other sources of information in order to accomplish notification in as timely a fashion as possible. Notifying members shall not disclose the reason for their contact other than a family emergency.

(f)    If making notification at a survivor's workplace, ask a workplace supervisor for the use of a quiet, private room to meet with the survivor. Members shall not inform the workplace supervisor of the purpose of their visit other than to indicate that it is a family emergency.

(g)    Offer to call other survivors, friends or clergy to support the survivors and to avoid leaving survivors alone after notification.

(h)    Assist the survivors with meeting childcare or other immediate needs.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001126

# Redding Police Department

RPD Policy Manual

*Line-of-Duty Deaths*

---

(i) Provide other assistance to survivors and take reasonable measures to accommodate their needs, wishes and desires. Care should be taken not to make promises or commitments to survivors that cannot be met.

(j) Inform the survivors of the name and phone number of the Survivor Support Liaison (see the Survivor Support Liaison section of this policy), if known, and the Department Liaison.

(k) Provide their contact information to the survivors before departing.

(l) Document the survivor's names and contact information, as well as the time and location of notification. This information should be forwarded to the Department Liaison.

(m) Inform the Chief of Police or the authorized designee once survivor notifications have been made so that other Redding Police Department members may be apprised that survivor notifications are complete.

## 929.4.1   OUT-OF-AREA NOTIFICATIONS

The Department Liaison should request assistance from law enforcement agencies in appropriate jurisdictions for in-person notification to survivors who are out of the area.

(a) The Department Liaison should contact the appropriate jurisdiction using a secure network and provide the assisting agency with the name and telephone number of the department member that the survivors can call for more information following the notification by the assisting agency.

(b) The Department Liaison may assist in making transportation arrangements for the member's survivors, but will not obligate the Department to pay travel expenses without the authorization of the Chief of Police.

## 929.5   NOTIFYING DEPARTMENT MEMBERS

Supervisors or members designated by the Chief of Police are responsible for notifying department members of the line-of-duty death as soon as possible after the survivor notification is made. Notifications and related information should be communicated in person or using secure networks and should not be transmitted over the radio.

Notifications should be made in person and as promptly as possible to all members on-duty at the time of the incident. Members reporting for subsequent shifts within a short amount of time should be notified in person at the beginning of their shift. Members reporting for duty from their residence should be instructed to contact their supervisor as soon as practicable. Those members who are working later shifts or are on days off should be notified by phone as soon as practicable.

Members having a close bond with the deceased member should be notified of the incident in person. Supervisors should consider assistance (e.g., peer support group, modifying work schedules, approving sick leave) for members who are especially affected by the incident.

Supervisors should direct members not to disclose any information outside the Department regarding the deceased member or the incident.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001127

# Redding Police Department

RPD Policy Manual

*Line-of-Duty Deaths*

---

**929.6  LIAISONS AND COORDINATORS**

The Chief of Police or the authorized designee should select members to serve as liaisons and coordinators to handle responsibilities related to a line-of-duty death, including, but not limited to:

    (a)    Department Liaison.

    (b)    Hospital Liaison.

    (c)    Survivor Support Liaison.

    (d)    Critical Incident Stress Management (CISM) coordinator.

    (e)    Funeral Liaison.

    (f)    Mutual aid coordinator.

    (g)    Benefits Liaison.

    (h)    Finance coordinator.

Liaisons and coordinators will be directed by the Department Liaison and should be given sufficient duty time to complete their assignments.

Members may be assigned responsibilities of more than one liaison or coordinator position depending on available department resources. The Department Liaison may assign separate liaisons and coordinators to accommodate multiple family units, if needed.

929.6.1   DEPARTMENT LIAISON

The Department Liaison should be a Division Commander or of sufficient rank to effectively coordinate department resources, and should serve as a facilitator between the deceased member's survivors and the Department. The Department Liaison reports directly to the Chief of Police. The Department Liaison's responsibilities include, but are not limited to:

    (a)    Directing the other liaisons and coordinators in fulfilling survivors' needs and requests. Consideration should be given to organizing the effort using the National Incident Management System (NIMS).

    (b)    Establishing contact with survivors within 24 hours of the incident and providing them contact information.

    (c)    Advising survivors of the other liaison and coordinator positions and their roles and responsibilities.

    (d)    Identifying locations that will accommodate a law enforcement funeral and presenting the options to the appropriate survivors, who will select the location.

    (e)    Coordinating all official law enforcement notifications and arrangements.

    (f)    Making necessary contacts for authorization to display flags at half-mast.

    (g)    Ensuring that department members are reminded of appropriate information–sharing restrictions regarding the release of information that could undermine future legal proceedings.

    (h)    Coordinating security checks of the member's residence as necessary and reasonable.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001128

# Redding Police Department
RPD Policy Manual

*Line-of-Duty Deaths*

---

(i)   Serving as a liaison with visiting law enforcement agencies during memorial and funeral services.

## 929.6.2   HOSPITAL LIAISON

The Hospital Liaison should work with hospital personnel to:

(a)   Arrange for appropriate and separate waiting areas for:

   1.   The survivors and others whose presence is requested by the survivors.

   2.   Department members and friends of the deceased member.

   3.   Media personnel.

(b)   Ensure, as much as practicable, that any suspects who are in the hospital and their families or friends are not in close proximity to the member's survivors or Redding Police Department members (except for members who may be guarding the suspect).

(c)   Ensure that survivors receive timely updates regarding the member before information is released to others.

(d)   Arrange for survivors to have private time with the member, if requested.

   1.   The Hospital Liaison or hospital personnel may need to explain the condition of the member to the survivors to prepare them accordingly.

   2.   The Hospital Liaison should accompany the survivors into the room, if requested.

(e)   Stay with survivors and ensure that they are provided with other assistance as needed at the hospital.

(f)   If applicable, explain to the survivors why an autopsy may be needed.

(g)   Ensure hospital bills are directed to the Department, that the survivors are not asked to sign as guarantor of payment for any hospital treatment and that the member's residence address, insurance information and next of kin are not included on hospital paperwork.

Other responsibilities of the Hospital Liaison include, but are not limited to:

•   Arranging transportation for the survivors back to their residence.

•   Working with investigators to gather and preserve the deceased member's equipment and other items that may be of evidentiary value.

•   Documenting his/her actions at the conclusion of his/her duties.

## 929.6.3   SURVIVOR SUPPORT LIAISON

The Survivor Support Liaison should work with the Department Liaison to fulfill the immediate needs and requests of the survivors of any member who has died in the line of duty, and serve as the long-term department contact for survivors.

The Survivor Support Liaison should be selected by the deceased member's Division Commander. The following should be considered when selecting the Survivor Support Liaison:

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001129

# Redding Police Department

RPD Policy Manual

## Line-of-Duty Deaths

- The liaison should be an individual the survivors know and with whom they are comfortable working.

- If the survivors have no preference, the selection may be made from names recommended by the deceased member's supervisor and/or coworkers. The deceased member's partner or close friends may not be the best selections for this assignment because the emotional connection to the member or survivors may impair their ability to conduct adequate liaison duties.

- The liaison must be willing to assume the assignment with an understanding of the emotional and time demands involved.

The responsibilities of the Survivor Support Liaison include, but are not limited to:

(a) Arranging for transportation of survivors to hospitals, places of worship, funeral homes and other locations, as appropriate.

(b) Communicating with the Department Liaison regarding appropriate security measures for the family residence, as needed.

(c) If requested by the survivors, providing assistance with instituting methods of screening telephone calls made to their residence after the incident.

(d) Providing assistance with travel and lodging arrangements for out-of-town survivors.

(e) Returning the deceased member's personal effects from the Department and the hospital to the survivors. The following should be considered when returning the personal effects:

1. Items should not be delivered to the survivors until they are ready to receive the items.

2. Items not retained as evidence should be delivered in a clean, unmarked box.

3. All clothing not retained as evidence should be cleaned and made presentable (e.g., items should be free of blood or other signs of the incident).

4. The return of some personal effects may be delayed due to ongoing investigations.

(f) Assisting with the return of department-issued equipment that may be at the deceased member's residence.

1. Unless there are safety concerns, the return of the equipment should take place after the funeral at a time and in a manner considerate of the survivors' wishes.

(g) Working with the CISM coordinator to ensure that survivors have access to available counseling services.

(h) Coordinating with the department's Public Information Officer (PIO) to brief the survivors on pending press releases related to the incident and to assist the survivors with media relations in accordance with their wishes (see the Public Information Officer section of this policy).

(i) Briefing survivors on investigative processes related to the line-of-duty death, such as criminal, internal and administrative investigations.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001130

# Redding Police Department

RPD Policy Manual

*Line-of-Duty Deaths*

---

(j) Informing survivors of any related criminal proceedings and accompanying them to such proceedings.

(k) Introducing survivors to prosecutors, victim's assistance personnel and other involved personnel as appropriate.

(l) Maintaining long-term contact with survivors and taking measures to sustain a supportive relationship (e.g., follow-up visits, phone calls, cards on special occasions, special support during holidays).

(m) Inviting survivors to department activities, memorial services or other functions as appropriate.

Survivor Support Liaisons providing services after an incident resulting in multiple members being killed should coordinate with and support each other through conference calls or meetings as necessary.

The Department recognizes that the duties of a Survivor Support Liaison will often affect regular assignments over many years, and is committed to supporting members in the assignment.

If needed, the Survivor Support Liaison should be issued a personal communication device (PCD) owned by the Department to facilitate communications necessary to the assignment. The department-issued PCD shall be used in accordance with the Personal Communication Devices Policy.

## 929.6.4  CRITICAL INCIDENT STRESS MANAGEMENT COORDINATOR

The CISM coordinator should work with the Chief of Police or the authorized designee, liaisons, coordinators and other resources to make CISM and counseling services available to members and survivors who are impacted by a line-of-duty death. The responsibilities of the CISM coordinator include, but are not limited to:

(a) Identifying members who are likely to be significantly affected by the incident and may have an increased need for CISM and counseling services, including:

1. Members involved in the incident.

2. Members who witnessed the incident.

3. Members who worked closely with the deceased member but were not involved in the incident.

(b) Ensuring that members who were involved in or witnessed the incident are relieved of department responsibilities until they can receive CISM support as appropriate and possible.

(c) Ensuring that CISM and counseling resources (e.g., peer support, debriefing, grief counselors) are available to members as soon as reasonably practicable following the line-of-duty death.

(d) Coordinating with the Survivor Support Liaison to ensure survivors are aware of available CISM and counseling services and assisting with arrangements as needed.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001131

## Redding Police Department

RPD Policy Manual

---

*Line-of-Duty Deaths*

---

(e)    Following up with members and the Survivor Support Liaison in the months following the incident to determine if additional CISM or counseling services are needed.

### 929.6.5   FUNERAL LIAISON

The Funeral Liaison should work with the Department Liaison, Survivor Support Liaison and survivors to coordinate funeral arrangements to the extent the survivors wish. The Funeral Liaison's responsibilities include, but are not limited to:

(a)    Assisting survivors in working with the funeral director regarding funeral arrangements and briefing them on law enforcement funeral procedures.

(b)    Completing funeral notification to other law enforcement agencies.

(c)    Coordinating the funeral activities of the Department, including, but not limited to the following:

    1.    Honor Guard

        (a)    Casket watch

        (b)    Color guard

        (c)    Pallbearers

        (d)    Bell/rifle salute

    2.    Bagpipers/bugler

    3.    Uniform for burial

    4.    Flag presentation

    5.    Last radio call

(d)    Briefing the Chief of Police and command staff concerning funeral arrangements.

(e)    Assigning an officer to remain at the family home during the viewing and funeral.

(f)    Arranging for transportation of the survivors to and from the funeral home and interment site using department vehicles and drivers.

### 929.6.6   MUTUAL AID COORDINATOR

The mutual aid coordinator should work with the Department Liaison and the Funeral Liaison to request and coordinate any assistance from outside law enforcement agencies needed for, but not limited to:

(a)    Traffic control during the deceased member's funeral.

(b)    Area coverage so that as many Redding Police Department members can attend funeral services as possible.

The mutual aid coordinator should perform his/her duties in accordance with the Mutual Aid and Outside Agency Assistance Policy.

---

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001132

*Line-of-Duty Deaths*

---

### 929.6.7   BENEFITS LIAISON

The Benefits Liaison should provide survivors with information concerning available benefits and assist them in applying for benefits. Responsibilities of the Benefits Liaison include, but are not limited to:

(a) Confirming the filing of workers' compensation claims and related paperwork (see the Occupational Disease and Work-Related Injury Reporting Policy).

(b) Researching and assisting survivors with application for federal government survivor benefits, such as those offered through the:

1. Public Safety Officers' Benefits (PSOB) Programs.

2. Public Safety Officers' Educational Assistance (PSOEA) Program.

3. Social Security Administration.

4. Department of Veterans Affairs.

(c) Researching and assisting survivors with application for state and local government survivor benefits.

1. Education benefits (Education Code § 68120)

2. Health benefits (Labor Code § 4856)

3. Worker's compensation death benefit (Labor Code § 4702)

(d) Researching and assisting survivors with application for other survivor benefits such as:

1. Private foundation survivor benefits programs.

2. Survivor scholarship programs.

(e) Researching and informing survivors of support programs sponsored by police associations and other organizations.

(f) Documenting and informing survivors of inquiries and interest regarding public donations to the survivors.

1. If requested, working with the finance coordinator to assist survivors with establishing a process for the receipt of public donations.

(g) Providing survivors with a summary of the nature and amount of benefits applied for, including the name of a contact person at each benefit office. Printed copies of the summary and benefit application documentation should be provided to affected survivors.

(h) Maintaining contact with the survivors and assisting with subsequent benefit questions and processes as needed.

### 929.6.8   FINANCE COORDINATOR

The finance coordinator should work with the Chief of Police and the Department Liaison to manage financial matters related to the line-of-duty death. The finance coordinator's responsibilities include, but are not limited to:

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001133

Redding Police Department

RPD Policy Manual

*Line-of-Duty Deaths*

---

(a)   Establishing methods for purchasing and monitoring costs related to the incident.

(b)   Providing information on finance-related issues, such as:

    1.   Paying survivors' travel costs if authorized.

    2.   Transportation costs for the deceased.

    3.   Funeral and memorial costs.

    4.   Related funding or accounting questions and issues.

(c)   Working with the Benefits Liaison to establish a process for the receipt of public donations to the deceased member's survivors.

(d)   Providing accounting and cost information as needed.

## 929.7   DEPARTMENT CHAPLAIN

The Department chaplain may serve a significant role in line-of-duty deaths. His/her duties may include, but are not limited to:

- Assisting with survivor notifications and assisting the survivors with counseling, emotional support or other matters, as appropriate.

- Assisting liaisons and coordinators with their assignments, as appropriate.

- Assisting department members with counseling or emotional support, as requested and appropriate.

Further information on the potential roles and responsibilities of the chaplain is in the Chaplains Policy.

## 929.8   NON-LINE-OF-DUTY AND CURRENT/FORMER EMPLOYEE DEATH

The Chief of Police may authorize certain support services for the death of a member not occurring in the line of duty. The Chief of Police, in accordance with the expressed wishes of the deceased and/or family of the deceased, the Redding Police Department may provide the following:

    1.   The Chief of Police or his/her designee shall coordinate participation by the Redding Police Department with the family of the deceased.

    2.   Provide the surviving family with assistance in contacting agencies and/or organizations that may help with the financial or legal matters.

    3.   Advise the surviving family that the Redding Police Department may be able to assist in the funeral service, including the Police Chaplain.

    4.   The Honor Guard shall be made available to perform one or more of the following functions:

        1.   Greeters.

        2.   Ushers.

        3.   Stand Post at or near the casket.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001134

Redding Police Department

RPD Policy Manual

*Line-of-Duty Deaths*

4. Present a folded American Flag to the family of the deceased on behalf of the Redding Police Department and the City of Redding.

929.8.1  OUTSIDE AGENCY FUNERALS

The Chief of Police or his/her designee shall liaison with the concerned law enforcement agency and confirm the date, time, and location of the funeral services. When an officer is killed in the line of duty or police related incident, the Chief of Police or his/her designee may dispatch an Honor Guard consisting of no less than two officers. The Honor Guard sergeant or designee will make all necessary arrangements regarding travel.

If, in addition to the Honor Guard, other uniformed officers are assigned to attend the funeral services, the Honor Guard sergeant or designee shall coordinate transportation and participation of all involved officers. Department transportation shall be utilized whenever practical. Upon arriving at the location of the services, the officers shall participate in the services at the discretion of the hosting agency.

**929.9  LINE-OF-DUTY DEATH OF A LAW ENFORCEMENT ANIMAL**

The Chief of Police may authorize appropriate memorial and funeral services for law enforcement animals killed in the line of duty.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001135

# Consultants

### 930.1  PAID CONSULTANT SERVICES

If consultants' services are required in case preparation, approval from the Division Commander will be secured before enlisting such services.

    (a)    When this Department requests the services of a consultant, the consultant will be advised to bill this Department for payment of fees.

    (b)    Should the District Attorney's office or the Court request the consultant's services, the billing will be made to that agency requesting the service.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001136

# Special Assignments

## 931.1  PURPOSE AND SCOPE

The purpose of this general order is to establish policy regarding special programs and work assignments

## 931.2  POLICY

Consistent with the following Memorandums of Understandings (MOU); Redding Peace Officers Association Section 1.7, Redding Police Managers Association Section 3.1 and Services Employees International Union Section 3.1, special assignments are deemed temporary.

Employees assigned to special programs or positions within individual Departmental units serve at the discretion of the Division Commander and the Chief of Police. The length of service will be determined by departmental needs, the efficiency of the employee in the assignment, training expertise in a particular field, and other factors which contribute to the overall effectiveness of the Department.

## 931.3  PROCEDURE

All assignments will generally be for a minimum two years from the assignment date with the exception of those assignments that require extended specialized training and knowledge. The length of these specialized assignments is also deemed temporary using information described in above in the Special Assignments Policy section.

These assignments include, but are not limited to:

    (a)   Special Assignments/Programs

        (a)   Bomb Unit

        (b)   Canine

        (c)   Defensive Tactics

        (d)   Field Training

        (e)   Hostage Negotiators

        (f)   ID Technician

        (g)   Peer Support

        (h)   Rangemaster

        (i)   SWAT

        (j)   SWAT Tactical Support

        (k)   Traffic Accident Investigation Team

    (b)   Divisional Work Assignments

        (a)   Investigations

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

## *Special Assignments*

      (b)    School Resource Officer

      (c)    Traffic Unit

      (d)    Warrants Technician

      (e)    Alarm Coordinator

      (f)    Abandoned Vehicle Abatement

      (g)    Missing Persons

      (h)    Vehicle Maintenance Officer

      (i)    Neighborhood Police Unit

      (j)    CLETS Technician

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001138

**Policy**

**932**

# ICAC Wellness and Employee Resilience Program

### 932.1   PURPOSE AND SCOPE

The purpose of this policy is to establish guidelines to ensure employees are assisted in limiting the potential for secondary or vicarious trauma due to their exposure to images and videos depicting child sexual abuse.  The Redding Police Department recognizes that research has identified that those individuals who are required to view child sexual abuse images at work may experience specific stressors associated with their exposure to such images and videos of child sexual abuse.

### 932.2   POLICY

The Redding Police Department recognizes that research has identified that those individuals who are required to view child sexual abuse images at work may experience specific stressors associated with their exposure to images or videos depicting child sexual abuse.  To support its members, Department has created an Employee Wellness and Employee Resilience Program. This program is in addition to the existing City of Redding Employee Assistance Program.

### 932.3   PROCEDURE - EMPLOYEE RESILIENCE PROGRAM

The Redding Police Department's ICAC Wellness and Employee Resilience Program   will feature the following:

(a)   The program should include elements (e.g., education, intervention, counseling services, and evaluation) that are administered by a professional with specialized training in trauma intervention, ideally secondary trauma, if the specialty is available.

(b)   The professional care provider should be an outside resource, not an employee of the City of Redding. This ensures confidentiality and helps remove barriers to open communication. Confidentiality can be maintained by assigning random code numbers to task force members to be used when the task force member meets with the Mental Health Provider (MHP).  The services of the MHP will be provided at no cost to the employee.

(c)   Strong consideration should be given to making select elements of the program mandatory such as meeting with the MHP annually on an individual basis or as part of a group, and wellness trainings. All members who are exposed to images or videos depicting child sexual abuse of are encouraged to meet with the MHP when they are experiencing any symptoms of secondary (vicarious) trauma. This removes any stigma for employees who want to seek help and can increase employee awareness of the subtle, cumulative effects that regular exposure may produce.

(d)   The MHP will explain to officers/investigators that participating in the Employee Resilience Program is not a "Fit for Duty" assessment.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001139

# Redding Police Department

RPD Policy Manual

## *ICAC Wellness and Employee Resilience Program*

### 932.4  PROCEDURE - PROMOTING "SELF-CARE"

The Redding Police Department recognizes that research has identified that those individuals who are required to view child sexual abuse images at work may experience specific stressors associated with their exposure to images or videos depicting child sexual abuse.  To ensure that employees are assisted in limiting the potential for secondary or vicarious trauma, members are encouraged to participate in "Self Care" activities.

The Department encourages all members to participate in "Self Care" by doing the following:

(a)  Meet with the City of Redding Mental Health Provider (MHP) both semi-annually as directed by a supervisor and as needed for individual and/or group meetings.

(b)  Attend Wellness trainings to increase the member's knowledge and awareness of the potential for secondary/vicarious trauma and the methods that can be employed to decrease the chances to experience secondary/vicarious trauma.

(c)  With the support of the City of Redding MHP, create a "Safety Plan" to assist the member in decreasing the chance to experience secondary/vicarious trauma.

(d)  This "Safety Plan" might include strategies/activities such as:

(a)  Taking a break from exposure to take a walk.

(b)  Talking to a friend or co-worker.

(c)  Do not participate in any exposure to child pornography within a half hour of leaving work for the day.

(d)  Do a different work activity for an hour.

(e)  Go home (If allowed by your Supervisor)

(f)  Contact the task City of Redding MHP.

(g)  Have plenty of activities/hobbies outside of work that are relaxing and stress reducing.

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department Policy Manual

RPD Policy Manual

# Attachments

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001141

# Redding Police Department Policy Manual

RPD Policy Manual

# 1019.2-Shift Trade Request Form.pdf

Attachment

# Redding Police Department Policy Manual

RPD Policy Manual

# 305_CRITICAL INCIDENT
# INVESTIGATION GUIDELINES.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department Policy Manual

RPD Policy Manual

**610_Pawn Form 6.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department



**CITY OF REDDING**
777 CYPRESS AVENUE, REDDING, CA 96001
P.O. Box 496071, REDDING, CA 96049-6071

**POLICE DEPARTMENT**
ROGER L. MOORE, CHIEF OF POLICE

530.225.4553 FAX

## NOTICE TO PAWNBROKER OF SEIZURE

This form shall constitute a receipt for property seized, pursuant to California Finance Code 21206.7, to the following Pawnbroker/Secondhand dealer:

To: _____

Description of Property: _____

_____

The above listed property has been seized, pursuant to 21647(D) of the Business and Professions Code, by the Redding Police Department, for the following reason(s):

_____ To aid in the prosecution of a crime.

_____ For future court presentation.

_____ To test for physical evidence/conduct function tests

_____ Other: _____

For questions regarding this seizure, refer all communications to Investigator_____ at (530) _____.  The property will be returned to you when it is no longer needed for evidence.  Thank you for your cooperation.

Dated:_____

GO I-10 (03/16/14)
Pawn Form 6

COR (McLeod)  001145

# Redding Police Department Policy Manual

RPD Policy Manual

**438_Attachment Severe Red (2).pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# COR IT Policy.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

## *CITY OF REDDING*
**Personnel Policies and Procedures Manual**

**Section:**   **Miscellaneous Policies**

**Subject:**   **Policy Regarding Use of Computers and Management of Electronic Records**

**Personnel Director:** _Linda Johnson_     **Date:** _10-24-08_

**City Manager:** _____     **Date:** _10/27/08_

**City Council Resolution No. (if applicable)** ___N/A___   **Effective Date:** _9/1/98_

**Purpose**

The routine use of electronic equipment by City employees raises a number of issues, including appropriate use of equipment and software, confidentiality of City data; retention or deletion of electronic information; ownership and access to equipment; and prohibited uses. The purpose of this item is to establish a City of Redding policy regarding the appropriate and professional use of computers and related technology.

**Policy**

It is the policy of the City of Redding to abide by the United States Copyright Laws. Any employee that has access to copyrighted or licensed software and makes unauthorized copies of copyrighted or licensed programs is in violation of these copyright laws. Therefore, no City personnel shall duplicate a licensed program without written authorization from the vendor or unless the software license agreement authorizes it.

The use of employee-owned personal computer hardware or software at the workplace is prohibited without permission of the Department Director. The City will not be held liable for any damage or loss to, nor will the City be responsible for the maintenance of, employee-owned hardware, software, or data even if such materials or equipment are used in the course of conducting authorized City business.

Only Information Technology personnel or other personnel authorized by Information Technology will load software and/or hardware onto City computers. Software will be loaded only if: (1) it is licensed by the City, or (2) it is licensed to an employee of the City and its use has been approved by the Department Director.

Configuration of each workstation shall be determined first by City-wide policy and then by department policy. Only Information Technology or department personnel authorized by Information Technology may change the configuration of computer systems.

17.B

COR (McLeod) 001148

The City seeks to protect its proprietary interest in City records stored on its computer systems. Rules prohibiting theft or vandalism apply to software and data as well as to physical equipment. All software, data, reports, messages and information stored on local and network resources are the property of the City.

Therefore, no data relating to the conduct of City business shall be removed or transmitted via e-mail or any method of electronic file transfer to any other agency or person unless it is for the sole purpose of completing City business. Messages/e-mail, both internal and via Internet, created, received, or sent over any City-owned computer system may be subject to public disclosure in accordance with applicable law.

Employees are not guaranteed enjoyment of privacy rights for any mail, messages, or files created, stored, received, or transmitted on City computer systems and networks containing personal information unrelated to City business. Furthermore, City management reserves the right to review any and all such mail, messages, files, etc., to ensure compliance with this Policy and any other applicable City policies, laws, rules, and regulations.

Employees are expected to exercise good judgment while using the City's hardware, software, and networks. These tools should be used in a responsible, efficient, ethical, and legal manner in accordance with this and other administrative policies, regulations, and work standards. An employee's User-ID and Password are unique, identifying his/her as the user accessing a workstation or PC. The employee is responsible for any modifications or access to system information made using their User-ID. Therefore, employees shall at all times use extreme care to avoid exposing the City's automated systems and networks to security violations.

Individual departments may adopt more restrictive or additional policies or regulations applicable to the use of these technologies. Said information will be disseminated to the affected employees. If a conflict exists, the more restrictive policies will apply.

The City has no control over the content of messages or information postings on the Internet or on-line services. Employees using these services must understand that they may receive unsolicited e-mail/information which may be considered offensive. Due to the nature of the Internet, at this time there is not a way to safeguard this activity. The City will take all reasonable measures to protect City users from this type of intrusion. The use and distribution of electronic messages and/or images are subject to the City's policies regarding harassment, discrimination, workplace violence, employee conduct and honesty, and any other City policies.

**Prohibited Uses Include But Are Not Limited to:**

a.    Illegal activities
b.    Threats
c.    Harassment
d.    Slander
e.    Gambling
f.    Defamation
g.    Obscene language or images
h.    Political endorsements
i.    Excessive use for personal matters unrelated to City business

COR (McLeod)  001149

j.      Personal (non-City) for profit activities

k.     Copying commercial software in violation of copyright law

l.      Sharing passwords or disseminating information which may be used to gain unauthorized access to City's systems, networks, or data

m.    Accessing the Internet or other electronic bulletin boards for inappropriate activities (e.g. pornography, profane/hate materials, etc.)

**Retention and Deletion of Electronic Communications**

Electronic communications, by their nature, are not customarily preserved and retained by the City or its officers or employees, but are transitory in nature similar to, and often used as a substitute for, telephonic or person-to-person communications. The City recognizes its legal obligations relating to the preservation and/or public disclosure of public records pursuant to the requirements of destruction of records laws and/or the PRA. However, the City's electronic communication systems has a limited capacity and therefore the City routinely purges, (deletes) e-mail and voice-mail communications from the system. Each system, to function as intended, anticipates or requires that employees regularly delete the communications from the system. Accordingly, an electronic communication should not to be used by any City official or employee as the exclusive means to memorialize important information when it is necessary or intended that the informational content of the communication be preserved for future City use or reference.

All electronic communications to, from, between or among any City officials or employees by use of an electronic communication system to facilitate any business of the City, where it is neither necessary nor intended that the informational content of the communication be preserved for future City use or reference, may be deleted from the City's computer system without preserving the informational content of the communication or any portion thereof, unless (1) a law expressly requires such communication to be kept; or (2) preservation of the communication is necessary or convenient to the discharge of the public officer's or employee's duties and the communication was made or retained for the purpose of preserving this informational content for future City use or reference.

If the City is required to maintain any electronic communication as a permanent record, it must be printed out in hard copy form for permanent filing or copied and stored to an electronic file for archiving separate from ordinary entries or message logs, and capable of being retrieved in readable or audible and comprehensible form.

**Violation**

Anyone found in violation of this policy will be subject to disciplinary action up to and including termination of employment and/or criminal prosecution, if appropriate.

Moved from CM-98-1 to Personnel Manual 10-08

Z:\My Documents\work\POLICIES\Computers and Related Technology Policy 10-08.wpd

COR (McLeod)  001150

# Redding Police Department Policy Manual

### RPD Policy Manual

# Hate Crime Checklist.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Attachment

## Redding Police Department Policy Manual
### RPD Policy Manual

# Commission on Peace Officer Standards and Training Hate Crimes Model Policy 2019.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Attachment 326.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001153

Revised June 2007

# CALIFORNIA HIGHWAY PATROL
## AND
# REDDING POLICE DEPARTMENT

## SAFETY SERVICES PROGRAM
## AND
## VEHICLE COLLISIONS
## INVESTIGATIVE SERVICES

## MEMORANDUM
## OF
## UNDERSTANDING

1

COR (McLeod)  001154

Revised June 2007

1.   GENERAL

Consistent with the mission of the CHP, a Safety Services Program (SSP) has been established and developed to provide for the administration of law enforcement services to state agencies.  The CHP will accomplish this by:

A.   Providing State Capitol Security.  Dignitary Protection, and Constitutional Officer Protection.

B.   Fulfilling reimbursable service agreements with consideration of contract approval and available resources.

C.   Providing training for state employees in Crime Prevention Plan preparation. Emergency Prevention procedures, personal safety, and overall Crime deterrence.

D.   Providing law enforcement services as established by Memorandums of Understanding (MOU) with appropriate local law enforcement agencies.  It is not the intent of the CHP to assume local law enforcement responsibility.  Notwithstanding, a regular presence and basic level of service shall be maintained for all state facilities, and will be part of a CHP officer's regular beat patrol responsibilities, thereby enhancing security and protection for all state employees.

2.   PRIMARY RESPONSIBILITY

The CHP will assume primary responsibility for investigating crimes which occur on state-owned or leased property.

3.   CALLS

The CHP will respond to all calls for service at state-owned or leased property within the City of Redding.  This includes criminal, non-criminal, and other related calls.  The CHP shall have the primary responsibility for taking an initial report and completing any and all follow-up necessary to complete the case.  The Redding Police Department will supply additional resources if they are available and requested by the CHP.

4.   IMMEDIATE THREATS

When a call is received where there is an immediate threat to the safety of individuals at a state-owned or leased facility, and CHP is unable to respond immediately, the shift supervisor should contact SHASCOM and ask the Redding Police Department to respond to the incident.  The Redding Police Department may either take the initial report and forward a copy to the CHP for follow-up, or stabilize the incident and stand-by until an officer is able to respond.

2

Revised June 2007

<u>AGREEMENT FOR VEHICLE COLLISIONS INVESTIGATIVE SERVICES</u>

It is in the best interest of Redding Police Department (RPD) that the Redding Area Office of the CHP should be the lead investigative agency on all RPD "on-duty emergency vehicle" traffic collisions. However, CHP would normally not be requested to investigate a non-injury collision with minor damage and no other driver involved unless circumstances indicate a need for CHP assistance.

In addition, the on-duty RPD supervisor may request CHP to investigate:

A.   Vehicle collisions involving RPD employees in a non "on-duty emergency vehicle" accident, whether driving a City-owned vehicle or a privately owned vehicle being used for City business if it involves a fatality, severe injury, arrest, or other significant circumstance; or

B.   Vehicle collisions involving other City of Redding employees, whether driving a City-owned vehicle or a privately owned vehicle being used for City business (e.g., staff cars, fire engines, sanitation trucks, electric department trucks) if it involves a fatality, severe injury, arrest, or other significant circumstance.

All requests for CHP assistance shall be made through the on-duty CHP supervisor and approval to provide investigative assistance to RPD will be based on CHP operational need at the time of the request.

This agreement may be cancelled by either the Redding Police Department or the California Highway Patrol with thirty (30) days notice.

This agreement is effective upon signature of both parties and supersedes the one dated November 21, 2003.


_____   Date: _6/27/07_____
Chief Leonard F. Moty, Redding Police Department


_____   Date: _6/27/07_____
Captain Jerry Godnick, California Highway Patrol


3

COR (McLeod)  001156



| BEAT NO. | AGENCY | LOCATION |
|---|---|---|
| 710 | DMV/RDG. FIELD OFFICE | 2135 CIVIC CENTER DR. |
| 710 | DEPT. OF GENERAL SERVICES | 2135 CIVIC CENTER DR. |
| 710 | DEPT. OF FOOD & AG/ANIMAL HEALTH | 2135 CIVIC CENTER DR. |
| 710 | DEPT. OF FOOD & DRUG RDG. FIELD OFFICE | 2115 CIVIC CENTER DR |
| 710 | DEPT. OF IND. REL./REHAB UNIT | 2115 CIVIC CENTER DR |
| 710 | PUBLIC UTILITIES COMMISSION TRANS./INQ & COMP. | 2115 CIVIC CENTER DR. |
| 710 | DMV/INVEST. & DRIVER IMPRVMNT | 2115 CIVIC CENTER DR |
| 710 | DEPT. OF INDUST. REL./ASSIST. & ENF. | 2115 CIVIC CENTER DR |
| 710 | WORKMAN'S COMP/APPEALS | 2135 CIVIC CENTER DR |
| 711 | DEPT. F&G/REGION HQ | 601 LOCUST ST |
| 711 | DEPT. F&G/FIELD SUPPORT UNIT | 2440 ATHENS AVE |
| 711 | DEPT. GEN SVC./RADIO MAINT | 2375 GRAPE ST |
| 711 | DEPT. OF FORESTRY/SHASTA FIRE UNIT | 1050 PARKVIEW AVE |
| 711 | STATE BOARD OF EQUALIZATION/DIST. OFFICE | 2881 CHURN CREEK RD |
| 712 | DEPT. OF GEN SVC./COMM. DIV. | 20272 SKYPARK DR |
| 712 | STATE FIRE MARSHALL/FIELD OFC | 425 RED CLIFF DR |
| 712 | SCIF/DISTRICT OFFICE | 364 HEMSTED DR |
| 712 | WATER QUALITY CON. BRD/CENTRAL VLY REG | 415 KNOLLCREST DR |
| 712 | DEPT. OF HEALTH/DIV OF DRINKING WATER | 415 KNOLLCREST DR |
| 712 | CYA/FIELD OFFICE | 405 RED CLIFF DR |
| 712 | OES/REGIONAL MANGER | 2395 BECHELLI LN |
| 712 | CAL-OSHA/ENFORCEMENT BRANCH | 381 HEMDTED DR |
| 713 | DEPT. OF CORRECTIONS/PAROLE DIV | 2250 BENTON DR |
| 714 | DOT/SPECIAL CREWS | 1450 GEORGE DR |
| 714 | DOT/MAINT. OPERATIONS | 1450 GEORGE DR |
| 714 | DOT/REGION OFFICER | 1490 GEORGE DR |
| 714 | DOT/EQUIP. SVC. CENTER | 1490 GEORGE DR |
| 714 | DOT/CONST/SURVEY/DESIGN | 4300 CATERPILLAR RD |
| 714 | DOT/ DISTRICT OFFICE | 1657 RIVERSIDE DR |
| 714 | CT PARK AND RIDE | SR 273/ CLEAR CREEK RD |
| 715 | DEPT.  OF REHAB/REDDING DIV. OFC | 1900 CHURN CREEK RD |
| 715 | HOUSING & COMMUNITY/DEV. CODE AND STANDARDS DIV | 2989 BECHELLI LN |
| 715 | ABC/ENFORCEMENT AND LIC. DIVISION | 1900 CHURN CREEK RD |
| 715 | STATE CONT. LIC. DIVISION | 1900 CHURN CREEK RD |
| 716 | DOJ/CRIME LAB | 9737 TANQUERAY CT |
| 716 | DOJ/BUREAU OF NARCOTIC ENF. | 3688 AVTECH AVE |
| | | |

| 716 | DEPT. OF FORESTRY/AIR TANKER BASE/HQ | 6105 AIRPORT RD |
|-----|--------------------------------------|-----------------|
| 718 | STATE SENATOR SAM AANESTAD | 777 CYPRESS AVE |
| 718 | ASSEMBLYMAN DOUG LAMALFA | 2865 CHURN CREEK RD |
| 719 | EDD DIVISION OFFICE | 1325 PINE STREET |
| 719 | EDD HEARING BOARD | 615 LOCUST ST |
| 724 | CDF FIRE STATION 43/REDDING | 6103 AIRPORT RD |

COR (McLeod)  001158

# Redding Police Department Policy Manual

RPD Policy Manual

**TobaccoUsePolicyRev815.pdf**

# *CITY OF REDDING*
## Personnel Policies and Procedures Manual

Section:      Miscellaneous
Subject:      Tobacco Use <u>Policy</u>
Personnel Director: *Su DeMaagd*      Date: *8/18/15*
City Manager:              Date: *8/19/15*
City Council Resolution No. (if applicable): <u>N/A</u>    Effective Date: <u>3/17/03</u>

### <u>Purpose</u>

The City of Redding is dedicated to protecting the health, safety<u>, and general welfare</u> of all City employees from unhealthful conditions. The goal can be achieved through concerted efforts to protect non-tobacco users, to support tobacco users who wish to quit and to help all employees adjust to restrictions on tobacco use. Research findings <u>indicate</u> that smoking and the breathing of secondhand smoke constitute a significant health hazard. <u>Further, with certain exceptions, state law and County of Shasta Ordinance 2014-06 prohibits smoking inside public buildings and at places of employment. The purpose of this Policy, is to reduce the effects or other hazards caused by smoking. Nicotine is a highly addictive neurotoxin which is also a component of the emissions from electronic smoking devices and involuntarily exposes non-users.</u> This policy will establish guidelines for the designation of smoking and non-smoking areas and tobacco use in facilities and vehicles owned, leased and operated by the City of Redding.

### <u>Definitions</u>

<u>Smoke or smoking shall mean inhaling, exhaling, burning, or carrying any lighted or heated cigar, cigarette, pipe, or any other lighted or heated tobacco, chemical substance or plant product intended for inhalation, including hookahs and marijuana, whether natural or synthetic, in any manner or in any form. Smoking also includes the use of an electronic and/or battery-operated smoking device which creates an aerosol or vapor, in any manner or in any form which can be used to deliver an inhaled dose of nicotine or other substance to the user.</u>

### <u>Policy</u>

Smoking is prohibited inside all enclosed facilities without exception. This includes, but is not limited to:

1. All <u>common work areas/offices</u>, including lobbies and waiting rooms, auditoriums, classrooms and lecture rooms, conference and meeting rooms, <u>private offices</u>, elevators, hallways, employee lounges and eating areas, hallways and stairwells, restrooms and locker rooms, garages <u>and shops</u>, and all other enclosed areas.

2. In outdoor common work areas where non-smoking employees are exposed to unwanted

second-hand smoke.

3. Within 20 feet of a main exit, entrance, or operable window of any public city-owned building.

4. In city-owned automobiles, trucks or other moving vehicles, <u>or vehicles rented/leased by the City of Redding</u>.

**<u>Tobacco Cessation Programs</u>**

All City employees who use tobacco are encouraged to stop using tobacco products. Enrollment in and completion of a tobacco cessation program is included in the group health plan for covered employees. If employees have questions about this benefit, please contact Blue Shield of California at 1-800- 642-6155.

**<u>No-Smoking Signs</u>**

Appropriate signs shall be posted in public areas and at building entrances to indicate that the City facility is non-smoking.

**<u>Compliance</u>**

The success of this policy will depend upon the thoughtfulness, consideration, and cooperation of tobacco users and non-tobacco users. All employees share in the responsibility for adhering to and enforcing this policy <u>as a smoke-free workplace</u>. Employees who do not comply with this policy shall be subject to disciplinary action.

Employees are encouraged, whenever appropriate, to politely inform fellow employee(s) that the facility/area is designated as a tobacco-free workplace. In the event of non-compliance, the issue should be referred to the appropriate supervisor.

Supervisors shall be responsible for the proper implementation and compliance of employees under their supervision with this policy. An employee or supervisor may submit compliance problems which are not resolved at the department level to the Personnel Director.

The Personnel Department shall give a copy of this policy to each newly appointed employee and to any prospective employee who so requests.

**<u>Non-Retaliation</u>**

No person shall discharge, refuse to hire, discipline, or retaliate against any employee or applicant for employment because such employee or applicant claims or exercises any right to a tobacco-free work environment.

Revised 7/15

COR (McLeod)  001161

**610_Pawn Form 3.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department



**CITY OF REDDING**
777 CYPRESS AVENUE, REDDING, CA 96001
P.O. Box 496071, REDDING, CA 96049-6071

**POLICE DEPARTMENT**

ROGER L. MOORE, CHIEF OF POLICE

530.225.4553 FAX

## NOTICE TO RELEASE PAWN HOLD

To:_____ Attn:_____ Fax No._____

The following listed property has been held at your business per our request:

The reporting agency is: ☐ Redding Police Department or ☐ Other:_____

ARTICLE:_____

SERIAL NO:_____

BRAND:_____

MODEL:_____

DESCRIPTION:_____

_____

BUY/LOAN #: _____          PAWN VALUE: $ _____

The Redding Police Department case number is _____. The property is no longer required for the purpose of a criminal investigation and we are releasing our hold.

PURSUANT TO BUSINESS AND PROFESSIONS CODE §21647:

☐   The person who reported the property as lost or stolen has been notified that they have 60 days to seek the recovery of their property and that the property may not be released to any other person during that period.

☐   The person who reported the property as lost or stolen chose not to participate in the prosecution of the person identified as taking the property.  Therefore, the law provides that you are entitled to your "out-of-pocket" expenses paid in the acquisition of the property in return for the surrender of the property.

Signed:_____   Date:___/___/___ Time:_____HRS
         Redding Police Department Representative
                    (530) 225-4214

Signed:_____
         Establishment Representative

GO I-10 (03/12/14)
Pawn Form 3

# Redding Police Department Policy Manual

RPD Policy Manual

# 610_Pawn Form 5.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001164



**CITY OF REDDING**
777 CYPRESS AVENUE, REDDING, CA 96001
P.O. Box 496071, REDDING, CA 96049-6071

**POLICE DEPARTMENT**

ROGER L. MOORE, CHIEF OF POLICE

530.225.4553 FAX

## NOTICE TO REPORTING PARTY OF PAWN HOLD

TO: _____

ADDRESS: _____

_____

Per 21647(c) of the Business and Professions Code of California, you are hereby notified that the property, described as: _____
is currently being held by the following business:

Pawnbroker: _____   Phone: _____

Address: _____

_____

Our records indicate that you have previously reported this property as stolen.  Please contact Investigator/Officer_____ , if you have not done so already, at (530)225-4214 or (530)_____. There is currently a hold on this property for the purposes of prosecution.  When this hold is lifted by law enforcement, you may reclaim this property at the above listed business.  Stay in touch with this Investigator so that you may successfully recover your property.

Many pawnbrokers charge a fee for expenses incurred while accepting and storing property. The law neither requires nor prohibits payment of a fee or any other condition in return for the surrender of property, except that when the person who reported the property lost, stolen, or embezzled does not choose to participate in the prosecution of an identified alleged thief, the person shall pay the licensed pawnbroker or secondhand dealer the "out-of-pocket" expenses paid in the acquisition of the property in return for the surrender of the property.

Also make sure you pick up your property in a timely manner when the Investigator tells you the hold is lifted.  The law states that if the person who reported the property as lost, stolen, or embezzled takes no action to recover the property from the licensed pawnbroker or secondhand dealer within 60 days of the notice, the licensed pawnbroker or secondhand dealer may treat the property as other property received in the ordinary course of business. During the 60-day notice period, the licensed pawnbroker or secondhand dealer may not release the property to any other person.

cc: Pawnbroker

GO I-10 (03/16/14)
Pawn Form 5

# Redding Police Department Policy Manual

RPD Policy Manual

**Instruction 18-03.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001166

# Redding Police Department Policy Manual

RPD Policy Manual

**18-2.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001167

# 1024-Uniform Regulations-Attachment.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department
1024-Uniform Regulations-Attachment.pdf -
684
COR (McLeod)  001168

# Redding Police Department Policy Manual

RPD Policy Manual

**CM101SmokefreecampusatCity.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001169

*CITY OF REDDING*                                                    *City Manager's Policy*

| Subject: | Policy Number | Effective Date | Page | Initial |
|----------|---------------|----------------|------|---------|
| Smoke Free Campus at City Hall | 10-1 | 2-16-10 | 1 | *KJS* |

### BACKGROUND

The City of Redding is dedicated to protecting the health and safety of its residents and its employees. Research findings indicate that smoking and secondhand smoke constitute a significant health hazard. Therefore, the City Council has indicated that it would like to prohibit all smoking on the City Hall campus.

### POLICY

It is the policy of the City to prohibit smoking on the City Hall campus. This policy shall apply to all areas of the City Hall campus including enclosed facilities, common areas, walkways, and parking lots adjacent to and surrounding City Hall.

### PROCEDURE

The City will install signs at prominent locations indicating that smoking is prohibited on the City Hall campus. Compliance with this policy shall be voluntary. The success of this policy will depend upon the cooperation of tobacco users and non-tobacco users. Nothing in this policy shall be construed to supercede or usurp federal, state, or local laws relative to prohibitions on smoking in public places.

**Instruction 18-02.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001171

# 438_Attachment High Orange.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001172

# 610_Pawn Form 1.pdf



**CITY OF REDDING**
777 CYPRESS AVENUE, REDDING, CA 96001
P.O. Box 496071, REDDING, CA 96049-6071

**POLICE DEPARTMENT**

ROGER L. MOORE, CHIEF OF POLICE

530.225.4553 FAX

## NOTICE TO HOLD SUSPECTED STOLEN PROPERTY

To: _____ Attn: _____ Fax No. _____

The following listed property has been reported stolen:

The reporting agency is: ☐ Redding Police Department ☐ Other: _____

ARTICLE: _____

SERIAL NO.: _____

BRAND: _____

MODEL: _____

DESCRIPTION: _____

_____

PAWN VALUE: $_____

Your buy/loan number is _____. The Redding Police Department

case number is _____. At this time, it is requested that you hold this

property at your store as authorized under Business and Professions Code 21647.

Sincerely,

Roger L. Moore
Chief of Police

Signed: _____
      Redding Police Department Representative

Signed: _____
      Establishment Representative

Date: ____/____/_____ Time:_____HRS

GO I-10 (03/12/14)
Pawn Form 1

COR (McLeod)  001174

# Redding Police Department Policy Manual

RPD Policy Manual

## 610_Pawn Form 4.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001175



**CITY OF REDDING**
777 CYPRESS AVENUE, REDDING, CA 96001
P.O. Box 496071, REDDING, CA 96049-6071

**POLICE DEPARTMENT**
ROGER L. MOORE, CHIEF OF POLICE

530.225.4553 FAX

## NOTICE TO RELEASE RECYCLE HOLD

To:_____ Attn:_____ Fax No._____

The following listed property has been reported stolen:

The reporting agency is: ☐ Redding Police Department or ☐ Other:_____

ARTICLE:_____

WEIGHT:_____

DESCRIPTION:_____

_____

RECYCLED VALUE: $_____

Your sale receipt number is _____. The Redding Police Department

case number is _____. At this time, we have dropped our hold on this

property.


Sincerely,

Roger L. Moore
Chief of Police


Signed:_____
          Redding Police Department Representative
                  (530) 225-4214

Signed:_____
          Establishment Representative

Date: ____/____/____ Time:_____HRS


GO I-10 (03/12/14)
Pawn Form 4

COR (McLeod)  001176

**COR Social Media Policy.pdf**

# CITY OF REDDING
## Personnel Policies and Procedures Manual

Section:     Miscellaneous

Subject:     Social Media Use Policy & Procedures

Personnel Director: _S___ DeMaagd_____     Date: _8/18/15_____

City Manager: _____     Date: _8/19/15_____

City Council Resolution No. (if applicable): _N/A_     Effective Date: _8/19/15_

## Purpose

To address the channels for disseminating time-sensitive information quickly and to better engage with residents and businesses in communicating and obtain information about the City of Redding online, the City of Redding's (the "City") departments may consider using social media tools to reach a broader audience. The City encourages and supports the secure use of social media to further enhance the organizational goals of the City and the missions of its departments, where appropriate.

The City has an overriding interest and expectation in deciding what is "announced" or "spoken" on behalf of the City on social media sites. This policy establishes internal procedures for the use of social media. Social networking sites continue to grow in popularity and functionality, with government agencies using Social Media to promote activities, programs, projects and events. This standard is designed for City departments looking to drive traffic to department websites and to inform more people about City activities.

Definition of Social Media: Social Media refers to activities that integrate technology, social interaction and content creation, through an internet website which provides a virtual community for people interested in a particular subject or communicating with each other. This media allows people to generate, organize, share, edit and comment on web content (commentary shall be limited to City programs or services) by means of RSS and other web feeds, blogs, mashups, widgets, wikis, podcasts and photo- and video-sharing, to name a few.  Examples of such Social Media sites include, but are not limited to, Facebook, Twitter, Instagram, Pinterest, Blogs, YouTube, Flickr, and LinkedIn.

## Applicability

This policy applies to all City of Redding employees and approved volunteers, consultants, service providers and contractors performing social media support or business on behalf of a City department.

## Policy

City of Redding social media sites are for official purposes only. All of the City's social media sites that are posted by departments and offices will be subject to initial approval by the City Manager's

Office. Access including login and passwords to the City's social media accounts will be established and maintained by the I.T. Division. The City's website (http://www.ci.redding.ca.us/) will remain the City's primary and predominant internet presence. Social Media will not be the primary tool used for disseminating emergency information. The most appropriate uses of social media tools are as informational channels to increase the City's ability to broadcast its messages to the widest possible audience. When applicable, content posted to the City's social media sites will also be made available on the City's website. Wherever possible, content posted to the City's social media sites must contain hyperlinks directing users back to the City's official website for in-depth information, forms, documents or online services necessary to conduct business with the City of Redding. As is the case for the City's website, the department's director or designee will be responsible for the content and upkeep (including maintenance and monitoring) of any social media site that department may create.

The City's social media sites shall comply with all City policies. The City's social media sites are subject to the California Public Records Act. Any content maintained in a social media format that is related to City business, including a list of subscribers and posted communication may be public record. The City will coordinate archival tools for departmental social media pages. The Department maintaining the site is responsible for responding completely and accurately to any public records request for public records on social media; provided, however, such requests shall be handled in collaboration with the City Clerk and City Attorney's Office. Content related to City business shall be maintained in an accessible format so that it can be produced in response to a request. Wherever possible, such sites shall clearly indicate that any articles and any other content posted or submitted for posting may be subject to public disclosure upon request.

The City of Redding reserves the right to restrict or remove any content that is deemed in violation of this policy or any applicable law. The City also reserves the right to terminate any City social media site at any time without notice.

## Procedures

Whenever a department determines it has a business need for a Social Media account, it will submit a request to the City Manager's Office, or his/her designee, outlining the business need for the Social Media sites. Upon approval, the Department Director, or his/her designee, will coordinate all new accounts with the I.T. Division. This will allow I.T. to maintain a roster of active City Social Media sites, register or establish new accounts, and maintain all log-in information.

Department Directors are responsible for determining who is authorized to use social media on behalf of the Department, and for designating appropriate access levels. Authorized users shall follow the "City of Redding Content Guidelines for Social Media," established and maintained by the Personnel Department.

The I.T. Division will also approve all new social media tools proposed for City use and will maintain a list of acceptable social media tools for use by City departments and staff. The department's decision to use social media shall be a risk-based business decision. The Department's Director or designee will inform the I.T. Division of any new social media sites or administrative changes to existing sites. The City must be able to immediately edit or remove content from social media sites. All escalating social media site complaints must be forwarded and handled by the City Manager's Office or his/her designee.

### City of Redding Social Media Content Guideline

Department Directors shall provide all authorized users a copy of the Personnel "Social Media Use Policy & Procedures." All individuals authorized to post items on any of the City social media sites will review, be familiar with, and comply with the policy, the City of Redding Content Guidelines included herein, and the social media site's use policies and terms of conditions.

The following social media tools have been approved by the City and standards have been developed for their use: Twitter, Instagram, Facebook, Pinterest, LinkedIn.  The use of other sites must be approved by the I.T. Division. Once I.T. has created you new department Social Media account, the Department page must contain contact information for the City Department and/or program. For 'type' description, choose "government." The City logo must be the profile picture. Social Media pages developed by the City will be branded as "official" and must include a text statement that reads, "This is an official City of Redding page." The Information/About/Profile pages must include links to both http://www.ci.redding.ca.us/ and the City's Social Media Use Policy and Procedures. The primary page name must be descriptive of the department. Each department will choose carefully with due consideration given to abbreviations, slang iterations, and proper grammatical usage. Departments will include a mission statement or appropriate text in the introduction box on the Wall Page.  The content of City social media sites will only pertain to City-sponsored or City-endorsed programs, services, and events.

Using the appropriate tool for the given social media account, the "About" or equivalent section should contain a department/program description and the following:

*"This is an official social media page for the City of Redding. This page is maintained by the City and complies with the City's Social Media Use Policy & Procedures. For more information about the City of Redding please visit http://www.ci.redding.ca.us/. This site is intended to serve as a mechanism for communication between the public and the department on the listed topics and as a forum to further the mission of the department. Any comment submitted to this page may be considered a public record which is subject to disclosure pursuant to the California Public Records Act. Public information requests must be directed to the City Public Information Officer."*

If comments are enabled on the social media site, the appropriate "Comment Policy" section must include the following disclaimer:

*"Comments posted to this page will be monitored and shall be limited to City programs or services only, and inappropriate content will be removed as soon as possible. Under the City of Redding Social Media Use Policy and Procedures, the City reserves the right to remove inappropriate content, including, but not limited to, those items that have obscene language or sexual content, threaten or defame any person or organization, violate the legal ownership interest of another party, promote illegal activity and promote commercial services or products. The City disclaims any and all responsibility and liability for any materials that the City deems inappropriate for posting, which cannot be removed in an expeditious and otherwise timely manner."*

Users and visitors to the City's social media sites shall be notified that the intended purpose of the site is to serve as a means of communication between City departments and members of the public, and that commentary shall be limited to City programs or services only. Users shall be notified that public disclosure requests must be directed to the relevant department's director or designee. The City's

social media site articles, posts and comments containing any of the following forms of content shall not be allowed and shall be removed as soon as possible:

- Profane language or content
- Content that promotes, fosters, or perpetuates discrimination on the basis of race, creed, color, age, religion, gender, marital status, status with regard to public assistance, national origin, physical or mental disability or sexual orientation
- Sexual content or links to sexual content
- Solicitations of commerce
- Conduct or encouragement of illegal activity
- Information that may compromise the safety or security of the public or public systems
- Content that violates a legal ownership interest of any other party

Users shall be informed by posting to the City's social media sites that the City disclaims any and all responsibility and liability for any materials that the City deems inappropriate for posting, which cannot be removed in an expeditious and otherwise timely manner.

These guidelines must be displayed to users or made available by hyperlink. Any content removed based on these guidelines must be retained, including the time, date and identity of the poster when available, in accordance with the City's policy on the retention of such information. Again, as outlined in the Social Media Policy, the City will coordinate archival tools for departmental social media pages. The City reserves the right to restrict or remove any content that is deemed in violation of this policy or any applicable law. The City also reserves the right to terminate any City social media site at any time without notice.

If there are postings of photos and/or videos of the public, staff must secure waivers by individuals depicted in the photo and/or video. Postings may not contain any personal information, except for the names of employees whose job duties include being available for contact by the public.

# 312-Juvenile In Custody.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Shasta County Multi-Agency
# OICI Protocol Dec 2014.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**Statutes and Legal Requirements.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# 703.4_City Managers Vehicle Policy.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

**CITY OF REDDING**                                          *City Manager's Policy*

| Subject: VEHICLE POLICY *(Revised 10/03,9/08, and 10/08)* <br> ▲ Assignment of City Vehicles <br> ▲ Use of Personal Vehicles While Conducting City Business <br> ▲ Accident Reporting <br> ▲ Mobile Telephone/Equipment | Policy Number | Effective Date | Page | Initial |
|---|---|---|---|---|
| | CM 95-2 | 9-1-98 | 1 of 10 | *KJS* |

## I.   PURPOSE

The City assigns City vehicles to individuals which it feels need full-time access to a City vehicle. Generally these are people on emergency call, people with responsibilities that extend longer than a normal eight-hour work day, or people who do considerable driving between places on City business. Other employees are assigned vehicles as part of their work day schedule, use pool cars on an occasional basis, or drive their personal vehicles while conducting City business.

## II.   ISSUE

The use of City vehicles is subject to public scrutiny and has a bearing on the City's image, potential liability, and overall operating costs. During any given year, numerous calls are received about where City vehicles are parked, what they are used for, and when they are used.

The use of personal vehicles to conduct City business is a Risk Management issue. The City must take the necessary precautions to prevent liability exposure and prevent losses from occurring.

## III.   POLICY

Vehicles are made available to City employees to facilitate City business. These vehicles shall be provided for authorized City business and shall be operated only by City employees possessing a valid California driver's license of the appropriate class for the vehicle.

### A.   Assignment:

#### 1.   General

It shall be the policy of the City of Redding to limit assignment of City vehicles for take home use to employees who require the use of a City vehicle on a recurring and frequent basis during the day and night time hours for City related business. Unless the authorization to use a City vehicle on an on-going basis confers a benefit to the City and is in the City's best interests, requests to take City vehicles home will not be approved. Use beyond normal working hours and parking/garaging City vehicles at employee's place of residence at night shall be requested by the Department Director and approved by the City Manager on an annual basis.

COR (McLeod)  001186

*CITY OF REDDING*                                                                    *City Manager's Policy*

| Subject:  VEHICLE POLICY  (Revised 10/03, 9/08, and 10/08) | Policy Number | Effective Date | Page | Initial |
|---|---|---|---|---|
| ▲  Assignment of City Vehicles<br>▲  Use of Personal Vehicles While Conducting City Business<br>▲  Accident Reporting<br>▲  Mobile Telephone/Equipment | CM 95-2 | 9-1-98 | 2 of 10 | *KJS* |

The City Manager is responsible for determining the need for assignment of City owned vehicles. Assignment must be justified in writing to the City Manager prior to assignment and is subject to an annual review. The City Manager's approval is subject to budget authorization availability and will be in accordance with the following:

a.   City personnel who, by nature of their specific job responsibilities, would be required to respond directly from their home in an emergency or disaster situation requiring emergency response equipment, warning lights, special apparatus or supplies.

b.   Department Directors or other administrative employees whose official duties require response in emergency situations, higher than the normal need for continuous availability to the public, frequent public meetings beyond normal working hours, and/or frequent responsibilities away from their established work area.

2.   **Department Director Authority**

In the following situations, the Department Director shall have the authority to authorize short term temporary take home vehicle use. Permanent or longer term assignments of vehicles are to be authorized by the City Manager. Department Directors may authorize vehicle use for:

a.   Employees who will be attending an out-of-town meeting where departure will be outside normal working hours or where an employee will be attending a meeting away from City facilities requiring his/her attendance for City business.

b.   Specified employees who serve on an "on-call basis" for specific assigned periods of time and where the nature of the "on-call" will require special equipment, apparatus, supplies or emergency warning lights.

c.   City employees who are authorized by their Department on appropriate occasions to travel directly from their residence to a work site in the field without first coming to the established work area and where the nature of the occasion will require special use of the vehicle, special equipment, apparatus, supplies or emergency warning lights.

Revised October 20, 2008
Empolicy/BPolicy.UsagComputers

COR (McLeod)  001187

**CITY OF REDDING**                                    *City Manager's Policy*

| Subject: **VEHICLE POLICY** *(Revised 10/03, 9/08, and 10/08)*<br>▲ Assignment of City Vehicles<br>▲ Use of Personal Vehicles While Conducting City Business<br>▲ Accident Reporting<br>▲ Mobile Telephone/Equipment | *Policy Number* | *Effective Date* | *Page* | *Initial* |
|---|---|---|---|---|
| | CM 95-2 | 9-1-98 | 3 of 10 | *KJJ* |

**B.   Use of Private Vehicle In-Lieu of City Vehicle:**

    **1.   General**

        Where the needs of City business require that a vehicle be assigned to a City employee or that a City employee be required to use a personal vehicle for City business, an evaluation by the City Manager and/or Department Director will be made each time such a position becomes vacant to determine if the need for the vehicle and/or appropriate reimbursement is still appropriate and necessary to the function of the position.

        The City is self-insured and has an interest in seeing that the employees who are using their personal vehicles to conduct City business have adequate insurance on their personal vehicle. The City does not want to impose a mandate that requires a higher requirement above the minimal limits set by the State of California of $15,000/$30,000. The City strongly recommends that each employee operating a personal vehicle to conduct City business have a policy no less than $100,000/$300,000. If an employee is involved in an automobile accident, the employee's personal insurance will be primary regardless of fault.

    **2.   Personal Vehicle Reimbursement for City Use**

        The mileage reimbursement for use of personal vehicles on City business will be based on the current Internal Revenue Service (IRS) standard for business mileage reporting. The IRS rate is based on fixed and variable costs to operate an automobile which includes the cost of personal insurance, fuel, and maintenance.

        The number of miles actually traveled on City business by employees is subject to verification and audit. The employee is required to maintain a log if the use is frequent and ongoing. The employee must provide documentation of actual miles traveled.

        The personal vehicle mileage reimbursement will be paid to employees who use their personal vehicle for City business travel within the City or out of the City limits as authorized by the Department Director. Such usage must be documented and will be reimbursed on a monthly basis based on the actual miles traveled. In lieu of the per mile reimbursement, a monthly vehicle reimbursement fee can be approved by the City Manager.

COR (McLeod)  001188

**CITY OF REDDING**                                    *City Manager's Policy*

| Subject: **VEHICLE POLICY** *(Revised 10/03,9/08, and 10/08)*<br>▲ Assignment of City Vehicles<br>▲ Use of Personal Vehicles While Conducting City Business<br>▲ Accident Reporting<br>▲ Mobile Telephone/Equipment | *Policy Number* | *Effective Date* | *Page* | *Initial* |
|---|---|---|---|---|
| | CM 95-2 | 9-1-98 | 4 of 10 | *KJ* |

**C.**   **City Vehicle Use Restrictions**

It shall be the policy of the City of Redding that City-owned vehicles shall not be used for personal non-City business purposes except under those limited situations set out in the following:

1. City vehicles may be used for travel to and from the employee's residence and a designated work area when authorized;

2. Deviation from the City's Vehicle Use Policy may be authorized in writing (or verbally in emergency situations) by the City Manager upon recommendation of the Department Director;

3. Any City of Redding employee assigned and authorized to take-home a City vehicle is prohibited from using the city-owned vehicle for personal use, except for commuting when authorized to do so by the City or by a designated official for bona fide non-compensatory reasons in the conduct of City business and for de minimis personal use, such as stops for meals taken in the course of employment or on the way to and from home that does not materially increase the number of miles a vehicle is driven; and

4. When employees who are currently assigned City vehicles leave City employment, continued assignment of the accompanying City vehicle to the vacant position and the subsequent new employee is not automatic. Each vacant position must receive written approval of the City Manager after written justification and recommendation from the Department Director, if applicable, before a City vehicle can be reassigned to the position.

**D.**   **Employee Responsibilities**

Any City of Redding employee regularly assigned a City vehicle or using his or her personal vehicle to conduct City business shall be responsible to comply with the following requests:

Revised October 20, 2008
Cmpolicy/Bi/Policy.UsedComputers

*CITY OF REDDING*                                          *City Manager's Policy*

| Subject:  VEHICLE POLICY *(Revised 10/03, 9/08, and 10/08)*<br>▲  Assignment of City Vehicles<br>▲  Use of Personal Vehicles While Conducting City Business<br>▲  Accident Reporting<br>▲  Mobile Telephone/Equipment | *Policy Number* | *Effective Date* | *Page* | *Initial* |
|---|---|---|---|---|
| | CM 95-2 | 9-1-98 | 5 of 10 | *KJS* |

Please **Initial** or **Check** each item.

1.  Comply with the City of Redding Procedures for the Maintenance and Repair of Automotive Equipment on City vehicles _____;

2.  Never leave keys inside an unattended vehicle _____;

3.  Lock vehicle when not in use _____;

4.  Immediately report mechanical failures or malfunction of safety devices on City vehicles to the Fleet Manager _____;

5.  Bring City vehicles to Fleet Maintenance for regular preventive maintenance as required by the Fleet Manager _____;

6.  Ensure all maintenance on City vehicles is performed by or arranged for by the City Fleet Maintenance personnel _____;

7.  Never operate a vehicle without engaging the seatbelt _____;

8.  Immediately report any collision, theft, or damage to Risk Management and supervisor _____;

9.  Park City vehicles off street at night when possible _____;

10. Never operate a vehicle without a valid California Driver's License appropriate to the type of vehicle driven _____;

11. Do not transport employee family members in a City vehicle **unless in the course of City business** as set forth in this policy _____;

12. Do not smoke tobacco products in City vehicles _____;

13. Do not operate a City vehicle while under the influence of alcohol and shall not drive while under the influence of any drugs or medications that could affect his/her driving _____;

COR (McLeod)  001190

**CITY OF REDDING**                                    *City Manager's Policy*

| Subject: VEHICLE POLICY (Revised 10/03, 9/08, and 10/08) | Policy Number | Effective Date | Page | Initial |
|---|---|---|---|---|
| ▲ Assignment of City Vehicles<br>▲ Use of Personal Vehicles While Conducting City Business<br>▲ Accident Reporting<br>▲ Mobile Telephone/Equipment | CM 95-2 | 9-1-98 | 6 of 10 | KJS |

14. Not have any medical restrictions on driving, other than corrective lenses _____;

15. Obey all traffic laws _____;

16. Report any change in their driver's license status to the Department Director _____;

17. Do not use any electronic devices (i.e., computers or personal data assistants) while driving other than a mobile phone or radio which is in accordance with the 2008 Vehicle Code § 23123. It is an infraction to use a wireless telephone while operating a motor vehicle, unless it is designed and configured to allow hands-free listening and is used in that manner _____;

18. The employee is responsible for payment of any traffic tickets or fines received while driving during the course of City business _____; and

19. Understand that the assignment of a vehicle is not a job right; as such, it may be rescinded at any time by action of the City Manager and/or the Department Director _____.

E. **Transportation of Family Members and Non-City Individuals:**

While not in the course of City business, transporting family members or members of the public is prohibited. The City supports the "Volunteer", "Take Your Sons and Daughters to Work Day", "The Ride-A-Long", and other programs that require transporting individuals who are not employees of the City and the practice will be permitted at the approval of the Department Director and/or City Manager.

The transportation of individuals who are not employed by the City of Redding in City owned vehicles will **ONLY** be permitted to conduct City business.

F. **Out of Town Travel and Vehicle Rental:**

a. When City employees rent or lease vehicles from a vehicle rental agency, it is required that they purchase the additional comprehensive damage waiver and three hundred thousand ($300,000) in liability insurance from the rental agency. If the employee is involved in an accident, the rental agency's insurance policy will be primary and the City will not cover any loss regardless of fault with the exception of compensable workers' compensation claims.

Revised October 20, 2008
Cmpolicy@/Policy User/Computers

**CITY OF REDDING**                                              *City Manager's Policy*

| Subject: VEHICLE POLICY *(Revised 10/03, 9/08, and 10/08)* <br> ▲ Assignment of City Vehicles <br> ▲ Use of Personal Vehicles While Conducting City Business <br> ▲ Accident Reporting <br> ▲ Mobile Telephone/Equipment | *Policy Number* | *Effective Date* | *Page* | *Initial* |
|---|---|---|---|---|
| | CM 95-2 | 9-1-98 | 7 of 10 | *KTS* |

     b.   When a City vehicle is used for out-of-town travel to a meeting or conference that the employee is directed to attend, and other government representatives are going to be attending the same meeting or conference, then the vehicle may be used to transport representative(s) from another agency.

     c.   Taking family members to an out of town conference *in a City vehicle* is prohibited. If an employee would like to take a family member to an out of town conference, their personal vehicle maybe used and mileage reimbursement will be redeemed upon the Department Director's approval.

     d.   If a family member is going to accompany a City employee to an out of town conference *in a rental vehicle*, the proper "additional driver" authorization must be obtained from the rental agency to ensure the "additional driver" is covered under the rental agency's insurance policy. If an "additional driver" is involved in an automobile accident, the City will not cover any loss regardless of fault.

     e.   Mileage reimbursement will strictly be limited to and from the conference. Any mileage for personal activities while at a conference will not be redeemable.

**G.   Modification of Vehicles or Equipment:**

No City vehicle or equipment shall be modified without the approval of the Fleet Maintenance Division. No modification will be authorized that could possibly jeopardize the safety features or warranty of any vehicle or equipment.

**H.   Off-road Vehicle Idling Policy**

Effective June 15, 2008, pursuant to Title 13 CCR Section 2449(d)(3), no City owned, leased or rented off-road vehicle may idle for more than five consecutive minutes. Off-road vehicles are defined as any vehicle designed to operate off-road and powered by off-road engines, even if they can safely be driven on-road.

Revised October 20, 2008

*CITY OF REDDING*                                                        *City Manager's Policy*

| Subject:  VEHICLE POLICY *(Revised 10/03,9/08, and 10/08)* ▲ Assignment of City Vehicles ▲ Use of Personal Vehicles While Conducting City Business ▲ Accident Reporting ▲ Mobile Telephone/Equipment | Policy Number | Effective Date | Page | Initial |
|---|---|---|---|---|
| | CM 95-2 | 9-1-98 | 9 of 10 | *KTS* |

### K. Use of Two-Way Communication Devices and Electronic Communication & Computer Devices (Mobile Office Technology) while Operating Vehicles or Equipment

No employee shall use any electronic devices (i.e., computers or personal data assistants) while driving other than a mobile phone or radio which is in accordance with the 2008 Vehicle Code § 23123, which makes it an infraction to use a wireless telephone while operating a motor vehicle, unless it is designed and configured to allow hands-free listening and is used in that manner. Emergency personnel are exempt under Vehicle Code §23123 but should follow their respective department policies regarding this subject.

The City of Redding is committed to provide a safe and healthful work environment for its employees. The use of mobile telephones, radios, pagers, computers, PDA's (Blackberrys), also referred to as Mobile Office Technology or Two-way Communication devices, have become important tools in improving our communication abilities as well as our ability to work more efficiently. For this reason, it is necessary that this policy be developed to provide safety guidelines and procedures on the use of such devices while conducting City business and operating vehicles/equipment. It is imperative that employees use these devices safely and not put their life or the lives of others at risk in order to use them.

Public Safety Officers who utilize these communication devices shall take extra care while operating vehicles/equipment. Non-Public Safety personnel may use hand-held mobile telephones while operating vehicles/equipment only if a headset, speaker phone, ear bud, or some other technology is used that frees both hands while talking. Drivers involved in emergency situations are exempt from this requirement.

All personnel may continue to use two-way radios while operating vehicles/equipment as long as care is taken to safely operate vehicles/equipment and all laws are adhered to. Departments may have their own policies in this regard which will supersede this item.

Text messaging and emailing are prohibited at all times when operating vehicles/equipment.

To avoid inattention and distraction while driving, employees must allow telephone calls to be forwarded to an answering device if they are not equipped with a hands-free answering system. Or, they must wait to answer the call until the vehicle/equipment is safely out of traffic and in a parked position. Messages can then be retrieved and responded to accordingly. As an alternative, the employee may make arrangement to have calls forwarded to another individual for a response.

Revised October 20, 2008
Cmpolicy98\Policy Use\Computers

# A-59.2 _Proficient - Fluent.pdf

# 306-Vehicle Pursuits.pdf

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department Policy Manual

RPD Policy Manual

**Award Descriptions.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

Police Cross and Memorial Cross:  Gold Cross on silver background with purple and blue ribbon.



### 1501
### Medal

Part No:
1501
Dimensions
1 1/2" X 1
1/2"
Illustrated in
Cartone
also
available in
Plattloy (all
silver)

## Ribbons

Order from Davis & Stanton

### Medal of Honor

A200 - Medal of Honor

### Medal of Valor

B201 - Medal of Valor

### Police Cross and Memorial Cross




D103 - Community Service



### Police Commendation Award

P115 - Police Commendation

### Meritorious Conduct Award

F105 - Meritorious Conduct

### Lifesaving Award

E04 - Lifesaving

### Police Shield

H110 - Police Shield

### Merit Award

C202 - Certificate of Merit

### Civic Achievement Award

D203 - Civic Achievement

### Other Awards:

### Employee of the Year Ribbon

OC14 - Master Ca   OC14 - M

COR (McLeod)  001197

Meritorious Conduct Awards

## Medals

Purchased from Entenmann-Rovin Co.

Center of Medal is City of Redding seal.

**Medal of Honor:** Gold-colored medal with red, white and blue ribbon



1526
Medal

Part No:
1526
Dimensions
2" X 1 1/4"

**Medal of Valor:** Silver-colored medal with blue and white ribbon

1525
Medal

Part No:
1525
Dimensions
1.8" x 1.6"

COR (McLeod)  001198

**610_Pawn Form 2.pdf**

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department



**CITY OF REDDING**
777 CYPRESS AVENUE, REDDING, CA 96001
P.O. Box 496071, REDDING, CA 96049-6071

**POLICE DEPARTMENT**

ROGER L. MOORE, CHIEF OF POLICE

530.225.4553 FAX

## NOTICE TO HOLD SUSPECTED STOLEN PROPERTY

To:_____ Attn:_____ Fax No._____

The following listed property has been reported stolen:

The reporting agency is: ☐ Redding Police Department ☐ Other:_____

ARTICLE:_____

WEIGHT:_____

DESCRIPTION:_____

_____

RECYCLED VALUE: $_____

Your sale receipt number is _____. The Redding Police Department

case number is _____. At this time, it is requested that you hold this

property at your store as authorized under Business and Professions Code 21609.

Sincerely,

Roger L. Moore
Chief of Police

Signed:_____
        Redding Police Department Representative
                (530) 225-4214

Signed:_____
        Establishment Representative

Date: _____/_____/_____ Time:_____HRS

GO I-10 (03/12/14)
Pawn Form 2

# INDEX / TOPICS

. . . . . . . . . . . . . . . . .   175

## A

ACCOUNTABILITY TO SUPERVISOR . .   19
ACKNOWLEDGEMENTS
   Policy manual. . . . . . . . . .   17
   Policy revisions. . . . . . . . . .   17
ADMINISTRATIVE INVESTIGATION . . .   70
ADMINISTRATIVE INVESTIGATIONS
   OIS . . . . . . . . .   70, 70, 70
   OIS . . . . . . . . . . . .   70, 70
   Recorded media files. . . . . . . .   375
ADULT ABUSE . . . . . . . . . .   134
   Investigations. . . . . . . . . .   451
ALCOHOL
   Vehicle use. . . . . . . . . . .   511
ALCOHOL . . . . . . . . . . . .   577
ALCOHOL USE . . . . . . . . . .   577
AMMUNITION
   Gun violence restraining order surrenders.   263
ANTI-REPRODUCTIVE RIGHTS CRIMES .   228
APPOINTMENTS
   Chaplain coordinator. . . . . . . .   243
   Coordinator - portable audio/video recorders   372
   Forfeiture reviewer. . . . . . . . .   464
   Line-of-duty death liaisons and coordinators   657
   PIO. . . . . . . . . . . . . .   192
ARREST OF PUBLIC SCHOOL TEACHER .   238
ARRESTS
   First amendment assemblies . . . .   393, 395
   Log. . . . . . . . . . . . . .   193
   Seat belts. . . . . . . . . . . .   598
ASSET FORFEITURE . . . . . . . . .   461
AUDIO/VIDEO RECORDING
   Body-worn cameras. . . . . . . .   372
   Custodial interrogation. . . . . . .   450
   OIS. . . . . . . . . . . . . .   71
AUTHORITY . . . . . . . . . . . .   10
   Policy manual. . . . . . . . . .   15
AUTOMATED LICENSE PLATE READERS
(ALPR) . . . . . . . . . . . . .   383

## B

BADGE . . . . . . . . . . . .   644
BIOLOGICAL SAMPLES
   Hazards. . . . . . . . . . . .   355

BIOLOGICAL SAMPLES . . . . . . . .   240
BODY ARMOR . . . . . . . . . . .   599
BODY-WORN CAMERAS . . . . . . .   372
BOMBS
   Aircraft accidents. . . . . . . . .   355
   Chaplains. . . . . . . . . . . .   246
BRADY MATERIAL . . . . . . . . .   477
BREATH TEST . . . . . . . . . .   431

## C

CHAPLAINS
   Line-of-duty deaths. . . . . . . .   663
CHIEF EXECUTIVE . . . . . . . . . .   13
CHILDREN
   Transporting. . . . . . . . . . .   597
CIVIL DISPUTES . . . . . . . . . .   397
CIVILIAN/NON-SWORN . . . . . . . .   15
CIVILIAN/NONSWORN
   Crisis intervention incidents. . . . . .   330
COMMAND STAFF
   Policy review. . . . . . . . . . .   17
COMMENDATIONS AND AWARDS . . .   610
COMMUNICABLE DISEASE
   Health orders. . . . . . . . . .   294
COMMUNICATIONS CENTER
   Vehicle pursuits. . . . . . . . . .   91
COMMUNICATIONS CENTER
   Crisis intervention incidents. . . . . .   329
COMPUTERS
   Digital evidence. . . . . . . . . .   452
CONFIDENTIALITY
   ALPR. . . . . . . . . . . . .   383
   Chaplains. . . . . . . . . . . .   247
   Surreptitious recording. . . . . . .   374
CONTROL DEVICES
   First amendment assemblies. . . . . .   394
   Training. . . . . . . . . . . .   346
CONTROL DEVICES . . . . . . . . .   53
CORRESPONDENCE . . . . . . . . .   28
COURT APPEARANCES . . . . . . . .   195
COURT ORDERS
   Canine controlled substance. . . . . .   107
   Gun violence restraining order surrenders.   263
   Surreptitious recording. . . . . . .   374
CRIME SCENE AND DISASTER INTEGRITY
. . . . . . . . . . . . . . . . .   293
CRISIS INTERVENTION INCIDENTS . .   327

## D

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

# Redding Police Department

RPD Policy Manual

DEATH
    Chaplains. . . . . . . . . . .    246
    Native American Graves (NAGPRA). . .    264
DEBRIEFING
    OIS. . . . . . . . . . . . .    72
    Tactical. . . . . . . . . . . .    72
    Warrant service. . . . . . . . .    486
DEFINITIONS . . . . . . . . . .    15
DEPARTMENTAL DIRECTIVES . . . . .    21
DISABLED
    Motorist. . . . . . . . . . . .    438
DISCLAIMER . . . . . . . . . .    15
DISCLOSING INFORMATION . . . . .    651
DOMESTIC VIOLENCE
    Reporting of Employee Convictions. . .    575
DRUG USE . . . . . . . . . . .    577
DUI ENFORCEMENT . . . . . . . .    429

# E

ELECTRO-MUSCULAR DISRUPTION
TECHNOLOGY DEVICE . . . . . . . .    58
ELECTRONIC CIGARETTES . . . . . .    586
EMERGENCY MANAGEMENT PLAN . . .    22
EPINEPHRINE AUTO-INJECTORS . . . .    400
EVIDENCE
    Digital. . . . . . . . . . . .    452
    NAGPRA. . . . . . . . . . . .    264
    Seizing recordings. . . . . . . .    378
EVIDENCE, BOMBS . . . . . . . .    326
EXPLOSIONS . . . . . . . . . . .    325

# F

FIELD SOBRIETY TESTS . . . . . . .    429
FIREARMS
    Retiree. . . . . . . . . . . .    31
FIRST AMENDMENT ASSEMBLIES . . .    391
FITNESS FOR DUTY . . . . . . . .    614

# G

GRIEVANCES
    Supervisor authority. . . . . . . .    15
GUN VIOLENCE RESTRAINING ORDERS    261

# H

HAZARDOUS MATERIAL (HAZMAT)
RESPONSE
    Aircraft accidents. . . . . . . .    355
HOMELESS . . . . . . . . . . . .    386

# I

IDENTITY THEFT . . . . . . . . . .    215
INFORMATION TECHNOLOGY USE
TECHNOLOGY USE . . . . . . . . .    179
INSPECTIONS
    Vehicles. . . . . . . . . . . .    509
INTERNAL AFFAIRS
    Personnel records. . . . . . . .    603
INTERNET ACTIVITY . . . . . . . .    651
INVESTIGATION AND PROSECUTION .    448

# J

JURISDICTIONS
    Vehicle pursuits. . . . . . . . .    92

# K

KEYS
    Vehicle. . . . . . . . . . . .    511

# L

LIMITED ENGLISH PROFICIENCY
    Eyewitness identification. . . . . . .    473
LIMITED ENGLISH PROFICIENCY . . .    230

# M

MDT/MDC
    Use. . . . . . . . . . . . .    510
    Vehicles. . . . . . . . . . . .    510
MEDIA . . . . . . . . . . . .    192
    Aircraft accidents. . . . . . . .    356
    First amendment assemblies. . . . .    395
MEDICAL
    Adult involuntary detention. . . . . .    138
    Aircraft accidents. . . . . . . .    355
    Examinations – Adult abuse. . . . . .    139
    Leave act (FMLA). . . . . . . .    579
    Releases. . . . . . . . . . . .    399

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001202

# Redding Police Department
RPD Policy Manual

MOBILE AUDIO/VIDEO (MAV)
    OIS. . . . . . . . . . . . . . . . 71
MOBILE DIGITAL TERMINAL USE . . . 370
MODIFIED-DUTY ASSIGNMENTS . . . 646
MUTUAL AID
    First amendment assemblies. . . . . . 393

# N

NATIVE AMERICAN GRAVES (NAGPRA)  264
NONSWORN
    Vehicles. . . . . . . . . . . . . . 511
NOTIFICATIONS
    Impaired driving. . . . . . . . . . . 430
    Line-of-duty deaths. . . . . . . . . 655
    NAGPRA. . . . . . . . . . . . . . 264

# O

OATH OF OFFICE . . . . . . . . . . . 14
OFFICER SAFETY
    Crime scene and disaster integrity. . . . 293
    LEOSA. . . . . . . . . . . . . . . 31
    Seat belts. . . . . . . . . . . . . . 597
    Warrant service. . . . . . . . . . . 483
OPERATIONS PLANNING AND
DECONFLICTION . . . . . . . . . . . 488
ORGANIZATIONAL STRUCTURE . . . . 19
ORGANIZATIONAL STRUCTURE AND
RESPONSIBILITY . . . . . . . . . . . 19
OUTSIDE AGENCY ASSISTANCE . . . . 206
OUTSIDE EMPLOYMENT
    Change in Status. . . . . . . . . . 628
    Obtaining Approval. . . . . . . . . 625
    Prohibited Outside Employment. . . . 626
OVERTIME
    Court. . . . . . . . . . . . . . . . 199

# P

PARKING . . . . . . . . . . . . . . . 511
PERFORMANCE EVALUATIONS
    Sick leave. . . . . . . . . . . . . 579
PERSONAL APPEARANCE . . . . . . . 633
PERSONAL PROTECTIVE EQUIPMENT . 518
PERSONNEL COMPLAINTS
    Portable audio/video review. . . . . . 375
PERSONNEL ORDERS . . . . . . . . . 28
PHOTOGRAPHS

    First amendment assemblies. . . . . . 392
PIO . . . . . . . . . . . . . . . . . 192
POLICE/SHERIFF CADETS . . . . . . . 637
POLICY MANUAL . . . . . . . . . . . 15
POLITICAL ACTIVITY . . . . . . . . . 652
POLITICAL ENDORSEMENTS . . . . . 652
PRESS INFORMATION OFFICER . . . . 192
PRIVACY EXPECTATIONS
    Audio/video recordings. . . . . . . . 372
    Vehicles. . . . . . . . . . . . . . . 509
PROHIBITED SPEECH . . . . . . . . . 651
PROTECTIVE CUSTODY
    Dependent adults. . . . . . . . . . 138
PUBLIC RECORDING OF LAW ENFORCEMENT
ACTIVITY . . . . . . . . . . . . . . 377

# R

RAPID RESPONSE AND DEPLOYMENT . 344
RECORDS BUREAU
    Administrative hearings. . . . . . . . 434
    Impaired driving. . . . . . . . . . . 434
RECORDS RELEASE
    ALPR. . . . . . . . . . . . . . . 385
    Audio/video recordings. . . . . . . . 375
RECORDS RETENTION
    Epinephrine auto-injectors. . . . . . . 401
    Oath of office. . . . . . . . . . . . 14
    Personal protective equipment. . . . . 519
RELIGION
    NAGPRA. . . . . . . . . . . . . . 264
REPORT PREPARATION . . . . . . . . 186
RESERVE OFFICERS/DEPUTIES
    Firearms Requirements. . . . . . . . 204
RESTRAINTS . . . . . . . . . . . . . 48
REVIEWS
    Policy manual. . . . . . . . . . . . 17
    Portable audio/video. . . . . . . . . 375
ROLL CALL TRAINING . . . . . . . . 292

# S

SAFETY
    Canine. . . . . . . . . . . . . . . 510
    First responder. . . . . . . . . . . 293
    Media. . . . . . . . . . . . . . . 192
    Personal protective equipment. . . . . 518
SAFETY EQUIPMENT
    First amendment assemblies. . . . . . 393
    Seat belts. . . . . . . . . . . . . . 597
SCHOOL EMPLOYEE REPORTING . . . 238

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod) 001203

SEARCH & SEIZURE . . . . . . . . .   121
SEARCHES
 Crime scene. . . . . . . . . . .   294
 Gun violence restraining orders. . . . .   262
 Police vehicle inspections. . . . . . .   509
SEAT BELTS . . . . . . . . . . . .   597
SICK LEAVE . . . . . . . . . . . .   579
SMOKING AND TOBACCO USE . . . .   586
SOCIAL MEDIA . . . . . . . . . .   183
SOCIAL NETWORKING . . . . . . . .   650
SUBPOENAS AND COURT APPEARANCES   195

# T

TASER . . . . . . . . . . . . . .   58
TATTOOS . . . . . . . . . . . . .   634
TOLL ROADS . . . . . . . . . . .   515
TRAINING
 ALPR. . . . . . . . . . . . .   385
 Canine. . . . . . . . . . . . .   106
 Epinephrine auto-injector. . . . . . .   401
 First amendment assemblies. . . . . .   396
 Impaired driving. . . . . . . . . .   434
 Operation planning and deconfliction. . .   492
 Opioid medication. . . . . . . . .   400
 Rapid response and deployment. . . . .   346
 Social media. . . . . . . . . . .   185
 Warrant service. . . . . . . . . .   487

# U

UNIFORMS
 Chaplains. . . . . . . . . . . .   243
UNITY OF COMMAND . . . . . . . .   19
UNLAWFUL ASSEMBLY . . . . . . .   394
UNMANNED AERIAL SYSTEM . . . . .   480
URINE TESTS . . . . . . . . . . .   431
USE OF FORCE
 First amendment assemblies. . . . . .   394
USE OF SOCIAL MEDIA . . . . . . . .   183

# V

VEHICLE MAINTENANCE . . . . . . .   507
VEHICLE PURSUITS . . . . . . . . .   85
VEHICLES
 Impound hearings. . . . . . . . .   427
VIDEO RECORDINGS
 First amendment assemblies. . . . . .   392

# W

WARNINGS
 Canine. . . . . . . . . . . . .   103
WARRANT SERVICE . . . . . . . . .   483

Copyright Lexipol, LLC 2020/08/27, All Rights Reserved.
Published with permission by Redding Police Department

COR (McLeod)  001204

**EXHIBIT "B"**



**INTERNAL COMMUNICATION**

**DATE:**     June 20, 2022

**TO:**       Chief Schueller

**FROM:**     Lieutenant Smyrnos

**SUBJECT:**  Administrative Inquiry – Use of Force
             Corporal Garett Maxwell
             Reference:  IA Case No. 20-0033

## I.   WITNESSES AND PARTIES INTERVIEWED

(1)   Corporal Garett Maxwell, #354, c/o Redding Police Department, 777 Cypress Avenue, Redding, CA, 96001, phone (530) 225-4200

## II.   DOCUMENTATION AND EVIDENCE

| Item No. | Description |
|---|---|
| 1 | CAD log for law incident 20R079262 |
| 2 | Redding Police Department investigative report / 20R079262 |
| 3 | Shasta County Sheriff's Office investigative report / 20S038084 |
| 4 | Anderson Police Department investigative report / 20A011287 |
| 5 | MDC chat traffic from 1826 hours on December 2, 2020 to 0300 hours on December 3, 2020 |
| 6 | Dolores Hernandez Verdict of Death report dated April 13, 2021. Includes Coroner Narrative Report dated December 3, 2020 and autopsy report dated December 8, 2020. |
| 7 | Video of OIS incident captured by witness Melody Raudman |
| 8 | SHASCOM radio traffic for law incident 20R079262 |

CONFIDENTIAL

COR (McLeod) 002946

*Administrative Inquiry*
*Page 2*
*June 20, 2022*

9      Clearance letter from District Attorney Stephanie Bridgett dated May 13, 2022

10     RPD policies in effect on December 2, 2020
        a. Policy 300 (Use of Force)
        b. Policy 305 (Firearms)

11     Officer Matt Bruce
        a. Transcribed statement of Officer Bruce by Shasta County Sheriff Detective Josh Hambly and Redding Police Detective Nick Weaver dated December 4, 2020

12     Corporal Garett Maxwell
        a. Notice of Administrative Leave with Pay dated December 2, 2020
        b. Transcribed statement of Corporal Maxwell by Sergeant Brian Torum dated December 4, 2020
        c. Release of Interview Transcripts Memo dated February 12, 2021

CONFIDENTIAL

COR (McLeod) 002947

*Administrative Inquiry*
*Page 3*
*June 20, 2022*

### III.   **ALLEGATIONS**

N/A – Administrative inquiry into use of force in this incident.

CONFIDENTIAL

COR (McLeod) 002948

*Administrative Inquiry*
*Page 4*
*June 20, 2022*

## IV.   **INVESTIGATION**

On December 12, 2020, at around 1827 hours, SHASCOM received a call from North State Security Officer Jason Schuler. Schuler was reporting a female in a gray Toyota Camry was causing a disturbance in front of Mod Pizza at 913 Dana Drive in Redding. Specifically, Schuler indicated the female had been causing a disturbance inside of the business and was now locked in her vehicle with her music turned up loudly. The female was also yelling and cursing at citizens and was threatening Schuler.

Officer Matt Bruce started responding to the call at 1829 hours and Corporal Garett Maxwell started responding at 1831 hours. Officer Bruce and Corporal Maxwell advised they were both on scene at 1834 hours and 16 seconds. Once on scene, Officer Bruce provided dispatch with the license plate 7GZH882. At 1836 hours and 27 seconds, Corporal Maxwell advised over radio that the female was "belligerent". At 1836 hours and 42 seconds, Corporal Maxwell advised over the radio that shots were fired, one was subject was down, and he was requesting medical "code 3". At 1837 hours and 54 seconds, Corporal Maxwell advised over radio that the female had attempted to run over Officer Bruce.

The involved female was subsequently identified by investigators as Dolores Hernandez (DOB: 9/29/61). Hernandez was pronounced deceased at the scene by medical personnel and Officer Bruce was transported to the hospital with non-life-threatening injuries. The initial investigation revealed that Corporal Maxwell was the only officer that discharged his firearm during this incident and that no additional civilians or officers were injured.

Per standard protocol, Corporal Maxwell was transported to the Redding Police Department and was placed on administrative leave with pay (see attached Administrative Leave memo).

The Shasta County Sheriff's Office was designated as the lead agency for the criminal investigation into this incident, which was documented under law incident 20S038084 (attached). The Redding Police Department's investigation was documented under law incident 20R079262 (attached) and the Anderson Police Department's investigation was documented under law incident 20A011287 (attached).

During a canvas of the area, a witness (Melody Raudman) was contacted that had recorded the shooting in its entirety on her cell phone camera. Pursuant to the criminal investigation, this video was collected as evidence and is attached to this administrative investigation.

As part of the criminal investigation, multiple civilian witnesses were interviewed. One witness, Elisa Gonzalez, had significant contact with Hernandez prior to the shooting. During her interview, Gonzalez stated that she was in line at Mod Pizza with her boyfriend, Jonah Lincoln. Hernandez was standing in line directly behind Gonzalez and Lincoln and was not wearing a face mask which was against COVID-19 guidance at the time. The fact that Hernandez did not have a face mask

CONFIDENTIAL

COR (McLeod) 002949

*Administrative Inquiry*
*Page 5*
*June 20, 2022*

made Gonzalez nervous, however every time she tried to move away from Hernandez, Hernandez would move closer to her, not giving her the space that she needed.

Gonzalez turned and asked Hernandez to either give her some space or put a mask on. Hernandez started insulting Gonzalez by calling her a "bitch" and stating to the effect that Gonzalez was "ugly", "fat", and a "whore". Hernandez told Gonzalez and Lincoln they could "go die" and also flipped them off.

Lincoln confronted Hernandez and she said did not need to use that type of language when children were present. A manger from the store came from around the counter and told Hernandez to leave due to her language. Hernandez protested and the manager said she could stay as long as she did not interact with Gonzalez.

When Hernandez made it up to the front of the line to place her order, an employee asked Hernandez to put a mask on. Hernandez refused and was again asked to leave the business. Hernandez started calling others in the restaurant names and raised her middle finger to everyone as she exited. Hernandez told employees and other customers that they were going to die.

After Gonzalez and Lincoln received their pizza, they walked out of the restaurant. Hernandez exited her vehicle, which was parked in front of the store, and started yelling at Gonzalez and Lincoln. Gonzalez and Lincoln left the area and did not have any further interaction with Hernandez.

Detectives also spoke to the Mod Pizza shift leader, Morgan Lensing. Lensing said Hernandez entered the restaurant and immediately became confrontational with other customers. Hernandez started yelling at customers at which time Lensing told Hernandez she needed to stop or would have to leave the business. Hernandez calmed down until she made it to the front of the line. Lensing asked Hernandez to put a face mask on, as was required per Mod Pizza policy. Hernandez became belligerent, vulgar, and aggressive. Hernandez called Lensing "a little bitch" at which time Lensing again told Hernandez she needed to leave. Hernandez left the business, however an unknown customer came inside and told Lensing Hernandez was continuing to be aggressive and belligerent outside by yelling at customers. Lensing called for security, however a short time later a security guard came in and said he was not able to handle the situation and was calling the police.

Detectives spoke to the original reporting party, North State Security officer Jason Schuler. Schuler said at around 1811 hours, he received a call from Lensing about Hernandez causing a disturbance. Schuler arrived at around 1817 hours and saw Hernandez sitting in her vehicle in front of the business. Hernandez was yelling at people passing by and had her car stereo volume turned up. A family sitting nearby told Schuler "you need to get that lady out of here." Schuler approached Hernandez's vehicle and she partially rolled down the window. Hernandez began to yell at Schuler and said things such as "you're not even a cop," "you're a homo," and "I can kick your ass." Schuler told Hernandez that she needed to leave. Hernandez said she was not leaving and that she

CONFIDENTIAL

COR (McLeod) 002950

had a problem with the people inside of Mod Pizza. Schuler told Hernandez he was going to call the police.

At around 1825 hours, Schuler called SHASCOM to report the disturbance. Within about 10 minutes, officers had arrived on scene. While waiting for officers to arrive, Schuler stood by to make sure Hernandez did not try to re-enter the business. Hernandez told Schuler that she was not leaving and that he could not make her leave.

Schuler was present during the use of force and said he saw Hernandez hit an officer with her vehicle, causing the officer to fall near the front driver's side tire of Hernandez's vehicle. Schuler said he thought Hernandez was going to "run over the officer even more" and said Hernandez did not seem concerned that she had struck a police officer. Schuler said he saw one of the officers fire his gun into Hernandez's vehicle and then saw the other officer getting up off the ground. Schuler was not able to recall if he heard any of the interaction between Hernandez and the officers other than to say he could recall hearing Hernandez's music.

Several other witnesses were interviewed and provided consistent statements with regards to Hernandez's behavior and the involved officer's actions. Refer to the attached criminal investigative reports for further details.

On December 4, 2020, at around 1025 hours, Officer Matt Bruce was interviewed by Shasta County Sheriff's Detective Josh Hambly and Redding Police Investigator Nick Weaver. The following is a summary of his statement (see attached transcript):

Officer Bruce confirmed he was on duty on December 2, 2020, at around 6:00 p.m. and was wearing his issued Redding Police patrol uniform and was operating a marked Redding Police patrol vehicle. Officer Bruce recalled responding to the call at Mod Pizza and said he was initially not too far away when the call came out. Officer Bruce asked for the call over the radio and arrived at the same time as Corporal Maxwell.

Officer Bruce said the shopping center where Mod Pizza is located is usually very busy, especially around 6 p.m. Upon his arrival, Officer Bruce immediately located the involved vehicle. He said it was a silver Camry and was parked directly in front of Mod Pizza. There were at a few empty parking stalls open next to the Camry. Officer Bruce parked his patrol car along the nearby red painted curb and was in no way blocking the Camry from exiting its parking stall or the parking lot.

Officer Bruce said his attention was immediately drawn to the Camry because he could hear its music was "cranked way up." Officer Bruce also saw a security guard standing about 10 feet in front of the Camry. At this time, Officer Bruce did not think there was much to this call other than an angry person causing a disturbance. Officer Bruce did not speak to the reporting party (Schuler), approached the B-pillar of the Camry, and knocked on her window. Officer Bruce said he knocked

CONFIDENTIAL

COR (McLeod) 002951

*Administrative Inquiry*
*Page 7*
*June 20, 2022*

several times because Hernandez was just staring at the dashboard of her car. Officer Bruce eventually shined his flashlight into the vehicle to try to get Hernandez's attention. Hernandez lowered the volume on her radio and rolled her window down about two inches. Officer Bruce asked Hernandez what was going on and she said something similar to, "I'm not doing anything… You don't have the right or authority to speak with me." Officer Bruce told Hernandez that she was not in any kind of trouble and that he just wanted to speak to her. Officer Bruce told Hernandez that he was there to help her, find out what was going on, and find out why she was so upset. Hernandez told Officer Bruce, "I'm not talking to you, you're a murderer." Officer Bruce told Hernandez that he had never met her before to which she replied, "I know you. I know all of you." She then said, "You're all murderers and you will be brought to justice in the name of Jesus Christ."

Officer Bruce said he next asked to see Hernendez's driver's license. Hernandez replied, "You don't have the right to ask me, and I don't have to give you shit." Officer Bruce said Hernandez was incredibly agitated and was speaking so forcefully that he could see her spit hitting her window. Officer Bruce told Hernandez that she was driving a vehicle in the state of California and that he had the authority to verify her ability to drive. Hernandez replied that she was not driving and that she was in a parking lot. Hernandez said "fuck you" and then put her car into reverse.

Officer Bruce said he was concerned about Hernandez's ability to drive a vehicle based on how she appeared to be highly agitated for no reason, which indicated she was possible not in her "right mind." Officer Bruce said he never yelled at Hernandez and never raised his voice at her. He tried to stay calm and be as cordial and professional as he could. Officer Bruce said it was possible that Hernandez was either suffering from a mental health episode or was under the influence of something based on her erratic behavior. He said, "obviously something wasn't right."

Officer Bruce said he could not evaluate Hernandez to see if she was safe to drive due to her lack of cooperation. Once Hernandez started backing out of the parking spot, Officer Bruce made the decision to walk away from Hernandez. He said he really did not have enough information to determine if Hernandez was driving under the influence and being "crazy is not a crime." Officer Bruce said he was ok with Hernandez leaving the parking lot because that would resolve the original complaint of Hernandez causing a disturbance.

Officer Bruce saw Corporal Maxwell standing nearby and figured they would discuss the incident as Hernandez was leaving. Hernandez initially started to back out at "a normal angle like you would be leaving" from the parking stall. Officer Bruce started to walk back toward his patrol car and saw Hernandez's car about six feet away from him. Officer Bruce said after he had taken maybe two steps, he saw the headlights of Hernandez's vehicle coming back toward him and Corporal Maxwell. Officer Bruce said he stepped back because Hernandez drove "right up to my leg." Officer Bruce thought "oh my God, like, she's trying to hit me." Officer Bruce said Hernandez's action was totally unexpected because he figured she was already gone. Officer Bruce said he had been watching Hernandez's car but was not paying very close attention to it until he saw the front of the car coming toward him. Officer Bruce said Hernandez's car came "within

CONFIDENTIAL

COR (McLeod) 002952

*Administrative Inquiry*
*Page 8*
*June 20, 2022*

inches" of his shin and said her car was "close. Too close." Officer Bruce said the way Hernandez was pulling forward was not normal for someone who was backing out of a parking space based upon her angle and the position of other vehicles in the parking lot.

Officer Bruce said as soon as the front of Hernandez's vehicle almost hit his leg, he looked up at her and she "flipped me off with two fingers" and screamed "fuck you" as loud as she could. Officer Bruce moved toward the driver's side of Hernandez's car so he could approach her through her window. Officer Bruce said, "I immediately thought when I saw her try to hit me, and flip me off and say, 'Fuck you,' I said there's no way I'm lettin' this lady drive." Officer Bruce said he was also fearful that Hernandez would attempt to "mow over" any of the approximately 100 citizens that were in the area at that time.

Officer Bruce said at this point, he felt that Hernandez had committed an assault with a deadly weapon and his plan was to break out her driver's side window and remove her from the vehicle. Officer Bruce removed his baton and used the butt of it to strike Hernandez's closed window. Officer Bruce struck the window two or three times but it did not break. Officer Bruce extended his baton and was going to use the tip of the baton to try to break the window. Officer Bruce said he did not issue any commands to Hernandez because she had turned her music back up and he didn't think she would be able to hear him.

Before Officer Bruce would again hit the window, Hernandez turned the front wheels of her car toward Officer Bruce and put her car into reverse. As she started to back up, the front tire grabbed Officer Bruce's foot and pulled him to the ground. Hernandez's car continued to move backward, causing the front tire to run over Officer Bruce's leg. Officer Bruce said when Hernandez finally stopped, his was pinned to the ground because the tire was on top of his left knee. Officer Bruce was partially on his side and both of his legs were trapped under the tire of Hernandez's car.

Officer Bruce said he initially did not feel any pain and that "everything just kinda slowed down." He said, "…I remember just starting to breathe and going 'oh my God,' you know, she's gonna kill me." Officer Bruce said he was not sure how long the car was stopped on top of his knee, but he started feeling a lot of pain coming from his knee on down. The longer the car was stopped onto of Officer Bruce's knee, the pain was getting "worse and worse."

As this was occurring, Corporal Maxwell was to Officer Bruce's right. Officer Bruce was not sure if Corporal Maxwell was trying to communicate with the driver because Officer Bruce was just focused on his leg and the fact that he couldn't do anything. When asked what was going through his mind, Officer Bruce said, "she's gonna kill me. I'm dead. She's gonna back up. She's gonna run me over again. She's gonna park the thing on top of me and I'm gonna lose my legs. I'm gonna - I'm gonna die."

After some time went by, Officer Bruce said it felt like he was starting to lose consciousness. The pain was getting "worse and worse" and Hernandez was not moving the car off of him. Officer

CONFIDENTIAL

COR (McLeod) 002953

*Administrative Inquiry*
*Page 9*
*June 20, 2022*

Bruce told Corporal Maxwell, "shoot her!" Shortly after that, Officer Bruce heard two gunshots and the car rolled forward off of his leg, freeing him from under the vehicle. Officer Bruce was able to get up and "hobbled" over to his police car. Officer Bruce asked Corporal Maxwell if he was OK. Corporal Maxwell replied, "yeah, I got it." Officer Bruce opened the door to his patrol car and tried to lay down to straighten his leg. At that time, he did not know how bad the damage was. Officer Bruce was transported to the hospital for treatment.

On December 4, 2020, at 1030 hours, Corporal Maxwell was interviewed by Sergeant Brian Torum and Sergeant Rob Peterson in the Enterprise Park conference room at Redding City Hall. Present with Corporal Maxwell was his attorney David Garcia from Goyette and Associates. Sergeant Torum asked Corporal Maxwell if he was aware of his rights as outlined in the Peace Officers Procedural Bill of Rights Act, Government Code Sections 3300 through 3311. He said he was. Sergeant Torum informed Corporal Maxwell that the interview was being recorded and advised him of his Miranda rights. After stating he understood his rights, Sergeant Torum asked Corporal Maxwell if was willing to speak to him. Corporal Maxwell declined to waive his Miranda rights at this time. Sergeant Torum then administratively ordered Corporal Maxwell to answer honestly and fully questions relating to this investigation. Corporal Maxwell agreed to speak to Sergeant Torum. The interview was also recorded by Corporal Maxwell's attorney. The following is a summary of his statement (see attached transcript):

Corporal Maxwell confirmed he was on duty at the date and time of this incident and was wearing his full police uniform and was driving a marked Redding Police Department patrol vehicle. Corporal Maxwell said the original call for service indicated there was a disturbance occurring at the Mod Pizza on Dana Drive. Corporal Maxwell said he responded to this incident with Officer Matt Bruce.

Upon arrival, Corporal Maxwell parked his car behind Officer Bruce's patrol car. Officer Bruce began interacting with the involved female (Hernandez) and Corporal Maxwell began speaking to the security guard (Schuler). Corporal Maxwell positioned himself so he could keep a clear view of Hernandez and her vehicle.

As Corporal Maxwell was getting some initial information from Schuler, he overheard Officer Bruce attempting to collect identification information from Hernandez. Hernandez was being "belligerent" and was refusing to provide her ID. Hernandez also made a statement similar to, "I'm not driving." A short time later, Hernandez rolled her window up and belligerently yelled, "fuck you!" at Officer Bruce. Hernandez then started to back out of her parking spot. Corporal Maxwell said Officer Bruce had a calm demeanor during the initial encounter.

Based on the information received from Schuler, Corporal Maxwell felt Hernandez was possibly in violation of 415 PC (disturbing the peace). Schuler said Hernandez had caused a disturbance inside of the business, had been cussing at customers, and had been berating and cussing at Schuler. Corporal Maxwell said Hernandez's behavior elevated to 148 PC (obstructing/delaying a peace

CONFIDENTIAL

COR (McLeod) 002954

*Administrative Inquiry*
*Page 10*
*June 20, 2022*

officer) based on her reaction to Officer Bruce. Corporal Maxwell said he was not able to confirm what Schuler wanted done based on how quickly the incident unfolded. Corporal Maxwell said that while he felt Hernandez could be legally detained, he did not want to press the issue of a violent encounter with her and was ok with her backing out and safely departing the area. He additionally said he was concerned with how crowded the area was at the time and did not want to engage in a pursuit with Hernandez.

Based on the position of her vehicle, Corporal Maxwell felt Hernandez could comfortably back out of the parking space because there was nothing blocking her way. Corporal Maxwell said he had other ways of filing a criminal case against Hernandez if he needed to.

Corporal Maxwell said if Hernandez had backed up all the way and left the parking lot, he would not have had to take any additional action against her. Corporal Maxwell said his mind changed when Hernandez "lurched" her vehicle forward toward himself and Officer Bruce. At this time, Officer Bruce and Corporal Maxwell were both near the front of Hernandez's vehicle when she made this movement.

Corporal Maxwell said, "There was, it was obvious to me that the vehicle lurched forward. It was very unnatural considering the context of where that, again, there was ample space for her to just cautiously back out. There was room for her to depart. She stopped that backing maneuver when her vehicle was facing directly at us, put it in drive and lurched forward towards us, and that to me is when everything changed."

Corporal Maxwell felt this movement was an "Active" assault with a deadly weapon on himself and Officer Bruce. This was based on the unusual lurching movement of the vehicle coupled with Hernandez's aggressive behavior. Corporal Maxwell said there was no reasonable explanation for Hernandez's actions. Corporal Maxwell said he felt there were now four crimes that had occurred. These were the two initial misdemeanor violations he discussed, along with the felonious direct assault with a deadly weapon against himself and Officer Bruce. Corporal Maxwell said it was "common knowledge" that vehicles colliding with people can cause significant injury or death. At this point, Corporal Maxwell said Hernandez was not free to leave and needed to be immediately stopped to prevent her from potentially injuring not only officers, but other citizens in the area.

Corporal Maxwell immediately moved toward the driver's side of the vehicle while Officer Bruce went to the front driver's side window. Officer Bruce was using his expandable baton to try to break Hernandez's driver's side window.

Corporal Maxwell went to the rear driver's side tire and stabbed it with his knife to disable the vehicle and prevent a possible pursuit. Corporal Maxwell said their goal at the time was to safely bring Hernandez into custody.

CONFIDENTIAL

COR (McLeod) 002955

*Administrative Inquiry*
*Page 11*
*June 20, 2022*

As Corporal Maxwell stood up after stabbing the tire, he saw Officer Bruce being pinned and actively crushed under the front left tire of Hernandez's vehicle. Corporal Maxwell shifted to his left to get a view of Hernandez. Corporal Maxwell said Officer Bruce had "a look of absolute panic and horror." It appeared he was "helplessly pinned under that car being crushed." Corporal Maxwell began to draw his pistol and observed Hernandez. Corporal Maxwell said Hernandez was trying to drive away. Corporal Maxwell said, "There was no look of shock as if she had accidentally run Officer Bruce over.   There was no intent, that I could tell, for her to stop her active attempt to murder him." He said Hernandez had an "angry demeanor" on her face at this time. Officer Bruce yelled at Officer Maxwell, "shoot her!"

Corporal Maxwell said he was already thinking about a lethal force scenario. He said there was no other reasonable methods to stop her from driving away and to quickly get into the vehicle and remove her. Corporal Maxwell said, "The only option I had was the use of lethal force to prevent her from killing Officer Bruce." Corporal Maxwell said there was no way Hernandez's actions were accidental. This opinion was based on their initial interaction with her, her act of attempting to run them over, and the same angry demeanor on her face as she was continuing to manipulate the vehicle. Corporal Maxwell said Hernandez was clearly going to continue to drive over Officer Bruce and would even possibly start turning the wheels back and forth to grind his legs into the ground. Hernandez's natural path of travel would have been to continue to turn to the left. If she had done so, it would have further crushed Officer Bruce's legs and the rear wheel would have run over Officer Bruce's head and upper torso which would have crushed and killed him. Corporal Maxwell said he did not have any time to try to say anything to Hernandez.

Corporal Maxwell was aware of the numerous citizens in the area and positioned himself to minimize this risk. Corporal Maxwell said the vehicle lurched slightly at which time he began to engage Hernandez with lethal force by shooting her. Corporal Maxwell fired a total of seven rounds from his pistol. He stopped shooting when Hernandez's vehicle rolled into a parked vehicle and he could see Hernandez was no longer in physical control of her vehicle.

Once he stopped shooting, Corporal Maxwell was able to see Officer Bruce free himself from under Hernandez's vehicle. Corporal Maxwell assessed Hernandez and said he was comfortable that she was not going to be able to drive, further risking citizens and anyone else in the area. Corporal Maxwell broadcast over the radio that shots had been fired, the suspect was down, and that an officer was injured. Once he felt Hernandez was no longer a threat, Corporal Maxwell shifted his focus to rendering aid to Officer Bruce. Corporal Maxwell said it appeared that Officer Bruce was going to need a higher level of care than Corporal Maxwell would be able to provide. Corporal Maxwell ensured that Officer Bruce was in a safe position where he could wait for medics to tend to him.

Corporal Maxwell said he also checked the surrounding area to ensure no citizens were hurt during the altercation. Corporal Maxwell moved back to the driver's door of Hernandez's vehicle and discovered it was locked. Corporal Maxwell had to reach in through the shot-out window to

CONFIDENTIAL

COR (McLeod) 002956

*Administrative Inquiry*
*Page 12*
*June 20, 2022*

physically unlock the door. Hernandez appeared to be obviously deceased as she was motionless, not breathing, and there was significant trauma on the left side of her body from gunshot wounds. Corporal Maxwell checked Hernandez's pulse and did not find one.

Corporal Maxwell said if he had not shot Hernandez, she would have killed Officer Bruce as he would have been run over and crushed into the ground. Corporal Maxwell said if Hernandez had just left the scene when she first started to back out, he would not have had to use any force against her. If Hernandez would have stopped and complied after lurching her car toward Officer Bruce and Corporal Maxwell, Corporal Maxwell said it was likely that he would not have had to use his firearm. Additionally, if Hernandez looked like she was going to comply after striking Officer Bruce, Corporal Maxwell said he would not have had to use his firearm against her. Corporal Maxwell estimated that the total amount of time that elapsed from when he first noticed Officer Bruce was trapped under Hernandez's vehicle to the discharge of his firearm was three to five seconds.

On February 12, 2021, Corporal Maxwell signed a Release of Internal Affair Interview Transcripts memo authored by Sergeant Brian Torum (see attached). The transcript of Corporal Maxwell's was released to the Shasta County Sheriff's Office.

I reviewed MDC message traffic from the time of this call through 0300 hours on the morning of December 3rd, 2020. I did not find any MDC messages that were relevant to this administrative investigation.

I reviewed the cell phone video recorded by witness Melody Raudman. The video begins with Officer Bruce standing outside of the driver's window of Hernandez's vehicle. The cell phone video was recorded from inside of Raudman's vehicle and she is conversing with a male subject who is inside of the vehicle with her. I was unable to hear what was being said between Officer Bruce and Hernandez. Corporal Maxwell is observed standing nearby as he begins to communicate with a security guard, presumably Schuler.

The parking stall to Hernandez's left is open, as is the parking stall to her right. At about 1:17 into the video, Hernandez puts her car into reverse and starts to back out of her parking spot. There is ample room for Hernandez to completely back out of the parking stall, however she stopped after only backing out a few feet. At 1:24 into the video, Hernandez takes her car out of reverse and the front wheels are seen turning toward Officer Bruce, who was walking through the parking lot away from Mod Pizza. Hernandez's vehicle is then observed rapidly accelerating toward Officer Bruce, who was standing adjacent to the front driver's side of the vehicle. Raudman is heard audibly gasping on the video.

Officer Bruce had to step back to avoid being struck by the vehicle. Hernandez's vehicle is observed visibly bouncing up and down when she applied the brakes, indicating she rapidly applied them. Hernandez then almost immediately placed her vehicle into reverse.

CONFIDENTIAL

COR (McLeod) 002957

*Administrative Inquiry*
*Page 13*
*June 20, 2022*

At 1:30 into the video, Officer Bruce is observed striking the driver's side window of Hernandez's vehicle with his baton. Hernandez's vehicle is still in reverse at this time. Officer Bruce strikes the window three times and as he is going in for the fourth strike, the front tires of Hernandez's vehicle turn toward Officer Bruce. Hernandez's vehicle rapidly accelerated backward, causing the front driver's side tire to run over Officer Bruce's leg. This movement pulled Officer Bruce underneath the vehicle. Around this same time, Corporal Maxwell is observed stabbing the driver's side rear tire of Hernandez's vehicle.

Officer Bruce is observed struggling, however it is clear that he is stuck under Hernandez's vehicle. Corporal Maxwell moved to the driver's window of Hernandez's vehicle and removed his pistol from his holster. At 1:39 into the video, Corporal Maxwell is observed discharging seven rounds from his pistol into Hernandez's vehicle. Hernandez's vehicle then rolled forward which freed Officer Bruce. Officer Bruce is observed crawling away from Hernandez's vehicle and appears to be in pain as he grabbed his left thigh. Hernandez's vehicle continued to roll forward and comes to rest against a nearby parked car. The male that was in Raudman's vehicle exited and is observed running toward Officer Bruce. The video ends at this point.

The video recording corroborates the information given by Officer Maxwell and Officer Bruce in their statements. Based on the fact that Hernandez had sufficient room to back out of her parking space, the fact she only backed up a few feet and then turned her wheels and rapidly accelerated forward toward Officer Bruce, and the fact that she turned her wheels toward Officer Bruce while backing up causing him to be pulled under her car, it appears that Hernandez was intentionally trying to either run over and/or strike Officer Bruce with her vehicle.

I reviewed the attached autopsy that was conducted on Hernandez. The cause of death was listed as "Multiple gunshot wounds." A post-mortem toxicology test was conducted which came back negative for the presence of alcohol or specified drugs.

A review of Hernandez's criminal history (attached) showed several prior arrests for resisting arrest, traffic violations, trespassing, vandalism, assault of a peace officer, prowling, threatening an executive officer, failing to appear, and assault with a deadly weapon. Of those arrests, Hernandez was convicted of resisting arrest, vandalism, and threatening an executive officer. All of her convictions were for misdemeanor violations. None of her arrests or convictions were from Shasta County.

CONFIDENTIAL

CONFIDENTIAL

COR (McLeod) 002959

*Administrative Inquiry*
*Page 14*
*June 20, 2022*

**V.     CONCLUSIONS AND FINDINGS**

Redding Police Department policy 300.3 (Use of Force) states:

*Officers shall use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose.*

California Penal Code Section 835a states in part:

*(b) Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use objectively reasonable force to effect the arrest, to prevent escape, or to overcome resistance.*

*(c) (1) Notwithstanding subdivision (b), a peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary for either of the following reasons:*

*(A) To defend against an imminent threat of death or serious bodily injury to the officer or to another person.*

On December 2, 2022, at around 1827 hours, Officer Matt Bruce and Corporal Garett Maxwell responded to Mod Pizza at 913 Dana Drive in Redding regarding a report that a female (Hernandez) was causing a disturbance at the business and had threatened the reporting party. Hernandez has several prior arrests for resisting arrest and assault on a peace officer in other counties.

Upon arrival, Officer Bruce attempted to speak to Hernandez however she was immediately uncooperative. Hernandez had her music turned up loudly and was cursing at Officer Bruce as he attempted to speak with her. Hernandez said she did not have to speak to Officer Bruce and called him a murderer. Officer Bruce attempted to communicate further with Hernandez however she continued to be uncooperative and also refused to provider her identification. At one point, Hernandez put her car into reverse and appeared to be preparing to leave the parking lot. Officer Bruce decided to let Hernandez leave as it would resolve the initial report of her causing a disturbance.

Hernandez did not back all the way out and drove her car forward directly toward Officer Bruce, coming within inches of striking his leg. Based on the movement of Hernandez's vehicle, along with her demeanor during the entire encounter, it appeared this was an intentional act. Officer Bruce felt this act was an assault with a deadly weapon against himself and attempted to use his baton to break out the window of Hernandez's vehicle to detain her. Hernandez turned the wheels of her vehicle toward Officer Bruce and started to quickly back up. This motion caused the front

*Administrative Inquiry*
*Page 15*
*June 20, 2022*

tire of Hernandez's vehicle to run over Officer Bruce's leg, pulling him underneath her vehicle. Hernandez stopped her vehicle, which was now on top of Officer Bruce and was pinning him to the ground. Officer Bruce was afraid that he was going to die or lose his legs. Corporal Maxwell initially used his knife to try to disable Hernandez's vehicle, however when Officer Bruce was run over, Corporal Maxwell moved to the driver's window of the vehicle. Corporal Maxwell discharged seven rounds from his duty pistol, striking Hernandez multiple times. Hernandez's vehicle rolled forward, freeing Officer Bruce. Hernandez was pronounced deceased at the scene.

Hernandez's vehicle was identified as a 2007 Toyota Camry. Based on publicly available data, the curb weight for a 2007 Toyota Camry is approximately 3,200 lbs. Hernandez's act of running over Officer Bruce with her vehicle was clearly an imminent threat of death or serious bodily injury to Officer Bruce.

Corporal Maxwell discharged his firearm at Hernandez to stop this imminent threat. Based on the rapidly unfolding nature of this incident, along with the fact that Officer Bruce was actively trapped under Hernandez's vehicle, it was not feasible for Corporal Maxwell to issue a warning about his intent to use force against Hernandez. Once Corporal Maxwell perceived that Hernandez was no longer a threat, he stopped his use of force and immediately called for medical assistance.

A video recorded by a bystander corroborated the statements of the involved officers and other witnesses. On May 13, 2022, Shasta County District Attorney Stephanie Bridgett issued her opinion that included:

*Facing the imminent threat posed by Hernandez and actual physical harm inflicted by her, Corporal Maxwell chose to use deadly force to end that threat.*

*...Under these circumstances, Corporal Maxwell was justified in using deadly force in response to Hernandez's actions. I find the shooting to be lawful and will take no further action in this matter.*

Based on the totality of this investigation including witness statements, statements of the involved officers, and video and other physical evidence, Corporal Maxwell's use of deadly force against Hernandez was reasonable and justified to protect Officer Bruce from serious bodily injury or death. Corporal Maxwell's use of force was lawful and within Department policy. No further action is recommended.

CONFIDENTIAL

COR (McLeod) 002960