1

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
2  dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
3  hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
4  Woodland Hills, California, 91367
Telephone: (818) 347-3333
5  Facsimile: (818) 347-4118

6  **LAW OFFICE OF STEWART KATZ**
Stewart Katz, State Bar #127425
7  555 University Avenue, Suite 270
Sacramento, California 95825
8  Telephone: (916) 444-5678

9  *Attorneys for Plaintiffs*

10

11                 **UNITED STATES DISTRICT COURT**

12                 **EASTERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  VERONICA MCLEOD, individually and as successor in interest to decedent, DOLORES HERNANDEZ; AMADO HERNANDEZ, individually and as successor in interest to decedent, DOLORES HERNANDEZ; and YSIDRA REGALDO, individually, | Case No. 2:22-cv-00585-WBS-JDP *Honorable William B. Shubb* *Hon. Magistrate Jeremy D. Peterson* |
| 18                 Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND PLAINTIFFS' STATEMENT OF DISPUTED FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION [F.R.C.P. 56]** |
| 19  vs. | |
| 20  CITY OF REDDING; GARRETT MAXWELL, an individual; MATTHEW BRUCE, an individual; and DOES 2-10, inclusive, | |
| 23                 Defendants. | |

24

25

26

27

28

1  **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF**

2  **RECORD**:

3         Pursuant to Local Rule 260, Plaintiffs Veronica McLeod, Amado Hernandez, and Ysidra

4  Regaldo hereby submit their Response to Defendants' Separate Statement of Undisputed Facts and

5  Plaintiffs' Statement of Disputed Facts in Support of Plaintiffs' Opposition to Defendants' Motion

6  for Summary Judgment, or in the Alternative Summary Adjudication [F.R.C.P. 56].

7

8  Respectfully submitted,

9

10  DATED: May 13, 2024          **LAW OFFICES OF DALE K. GALIPO**
                                **LAW OFFICE OF STEWART KATZ**
11

12

13                          By          */s/ Hang D. Le*
                                Dale K. Galipo
14                                Stewart Katz
                                Hang D. Le
15                                Attorneys for Plaintiffs
                                VERONICA MCLEOD, AMADO HERNANDEZ, and
16                                YSIDRA REGALDO

17
    //
18
    //
19
    //
20
    //
21
    //
22
    //
23
    //
24
    //
25
    //
26
    //
27
    //
28

| **DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION** | **PLAINTIFFS' RESPONSE** |
|---|---|
| 1. At approximately 6:27 p.m., on December 2, 2020, North State Security guard, Jason Schuler, called the Shasta Area Safety Communications Agency ("SHASCOM") to report a woman causing a disturbance at MOD Pizza, located in the Discovery Village Shopping Center at 913 Dana Drive in Redding. *Declaration of Chris Smyrnos ("Smyrnos Decl."), at ¶ 13; Deposition Transcript of Garrett Maxwell (Maxwell Depo) attached as Exhibit "A" to AP Decl. at p.33:4-10; p.29:3-4* | Undisputed for the purposes of Defendants' summary judgment motion. |
| 2. Schuler reported the woman left MOD Pizza and was locked in her grey Toyota Camry (California license plate# 7GZH882), yelling and cursing at everyone. *Smyrnos Decl., at ¶ 13; Deposition Transcript of Garrett Maxwell (Maxwell Depo) attached as Exhibit "A" to AP Decl. at p.33:4-10; p.29:3-4* | **Disputed** to the extent that all of these details were communicated to Maxwell and Bruce or that Maxwell and Bruce were aware of all of these details. According to Bruce and Maxwell, they were responding to a woman using foul language, causing a disturbance at a location, and refusing to leave the area. Exhibit 1 ("Ex. 1") to Declaration of Hang D. Le ("Le Decl."), Deposition of Garret Maxwell ("Maxwell Dep.") 25:13-19, 26:3-115; Exhibit 3 ("Ex. 3") to Le Decl., Deposition of Matthew Bruce ("Bruce Dep.") 9:8-18. |
| 3. Witness, Melody Graham, captured video ("*Incident Video*") of the incident giving rise to litigation in this matter with her cellular phone. *Smyrnos Decl., at ¶ 12; Deposition Transcript of Melody Graham (Graham Depo) attached as Exhibit "B" to AP Decl. at p. 37:18-p.29:2* | Undisputed for the purposes of Defendants' summary judgment motion. |
| 4. Redding Police Corporal Garrett Maxwell and Officer Matthew Bruce, on duty, in full police uniform and marked patrol | Undisputed for the purposes of Defendants' summary judgment motion. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| vehicles, responded to the incident reported at the subject location. *Smyrnos Decl.,* at ¶ 14; *Incident Video,* Exhibit "C" to *AP Decl.*; *Maxwell Depo,* attached as Exhibit "A" to *AP Decl.* at p.24:20-24; *Deposition Transcript of Matthew Bruce (Bruce Depo)* attached as Exhibit "D" to *AP Decl.* at p.69:15-p.70:1. | |
| 5. Ofc. Bruce arrived on scene first and located the grey Toyota Camry parked facing south in front of MOD Pizza and determined it was occupied by a female, later identified as Dolores Hernandez. *Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.12:7-21, p.14:15-18. | Undisputed for the purposes of Defendants' summary judgment motion. |
| 6. Schuler pointed out Hernandez as the person involved in the disturbance. *Maxwell Depo*, attached as Exhibit "A" to *AP Decl.* at p.27:3-17. | **Objection**. Vague as to who Schuler was communicating with when he pointed out Hernandez as the person involved in the disturbance. **Disputed** to the extent that this suggests Schuler pointed out Hernandez to Bruce. Bruce did not speak with anyone at the scene before speaking with Hernandez. Ex. 3, Bruce Dep. 14:12-14. |
| 7. Corporal Maxwell arrived almost immediately after Bruce and spoke with Schuler regarding the incident while standing several feet from Ofc. Bruce and Hernandez's Toyota. *Maxwell Depo*, attached as Exhibit "A" to *AP Decl.* at p.27:9-13, p.29:3-21, p.33:4-18; *Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.14:15-22; p.18:23-p.19:2 | Undisputed for the purposes of Defendants' summary judgment motion. |
| 8. Once Cpl. Maxwell had finished speaking with Schuler, he walked closer to the Toyota and Ofc. Bruce, who had | **Objection**. Compound. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| approached the driver side window of the Toyota in an attempt to speak with Hernandez once Cpl. Maxwell had arrived.<br><br>*Maxwell Depo*, attached as Exhibit "A" to *AP Decl.* at p.35:23-p.36:6. | **Objection**. Vague as to "closer to the Toyota and Ofc. Bruce."<br><br>**Objection**. Vague and confusing as to time in regards to "in an attempt to speak with Hernandez once Cpl. Maxwell had arrived."<br><br>**<u>Disputed</u>** to the extent that this suggests Bruce only started to attempt to speak with Hernandez after Maxwell moved closer to the Toyota and Bruce. Bruce was speaking with Hernandez while Maxwell was speaking with the security guard.<br><br>Ex. C, Incident Video at 00:23-00:57 |
| 9.  Hernandez had her car running, stereo on at an extremely high volume, and initially ignored Ofc. Bruce's initial efforts to make contact with her, choosing instead to stare straight ahead.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.16:25-p.17:3-8; p.17:12-25 | **<u>Objection</u>**. The cited evidence does not support the allegation that Decedent intentionally ignored Bruce and chose to stare straight ahead.<br><br>Undisputed that when Bruce initially contacted Decedent, she was not looking at Bruce and was looking straightforward and had music playing loudly. |
| 10. Eventually, after Bruce shined his flashlight in her car, Hernandez rolled her window down approximately two inches and became uncooperative and argumentative with Ofc. Bruce (telling him that he was a "murderer," and that she did not have to speak with him).<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.15:3-14; p.16:25-p.17:3-8. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 11. Ofc. Bruce continued to try to engage her in conversation, telling her they had never met, that he was not a murderer, and that he was just trying to figure out what was wrong. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| *Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.15:3-14. | |
| 12. Ofc. Bruce asked Hernandez for her driver's license since her car was running; however, Hernandez refused to provide it and instead told Ofc. Bruce she was not driving and did not have to give him "shit."<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.23:12-20. | **Objection**. The cited evidence does not support the alleged fact. The cited portion of Bruce's deposition does not state that Bruce asked for Decedent's driver's license because her car was running.<br><br>Undisputed that Bruce asked for Decedent's driver's license and Decedent told him she wasn't giving him "shit" and that she was not driving. |
| 13. Hernandez then put her car in reverse and began to back out of the parking spot (the parking stall on either side of her vehicle was open and provided ample room to clear the officers and safely reverse into the parking lot lane of traffic had she intended to leave).<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.19:21- p.20:3; p.23:25-24:9; *Raudman Video*, Exhibit "C" to *AP Decl.*; *Declaration of Rajeev Kelkar, Ph.D.* ("*Kelkar Decl.*"), at ¶ 5(d). | **Objection**. Compound.<br><br>**Objection**. Vague and confusing as to the "the parking stall on either side of her vehicle as open and provided ample room to clear the officers."<br><br>**Disputed** that the officers positioning themselves near the vehicle was tactically sound.<br><br>The officers' failure to tactically position themselves in a position of cover and away from Decedent's vehicle when it began moving was a poor tactical choice.<br><br>Declaration of Scott DeFoe ("DeFoe Decl.") ¶ 7. |
| 14. The officers began to walk away from her vehicle as they had no desire to detain her and intended on allowing Hernandez to leave since her departure could end the conflict; however, Hernandez stopped reversing and drove forward, turning her vehicle directly at both Bruce and Maxwell.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.21:23-p.22:9; p.22:22-p.23:5; 28:13-15; p.29:10-25; p.30:8-17; | **Disputed**.<br><br>As the vehicle began to back out, Maxwell was moving into the parking lot to get a better vantage point of the parking area.<br><br>Ex. 1, Maxwell Dep. 37:7-15, 14-25.<br><br>Maxwell intended to let Decedent leave the shopping plaza and then initiate a traffic stop on Decedent at a later location. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| 58:17-25; *Raudman Video*, Exhibit "C" to *AP Decl.*; *Deposition Transcript of Jennifer Hoberg* (*J. Hoberg Depo*) attached as Exhibit "E" to *AP Decl.* at p. 29:15-20; *Deposition Transcript of Ryan Hoberg* (*R. Hoberg Depo*) attached as Exhibit "F" to *AP Decl.* at p. 20:6-14. | Exhibit 2 ("Ex. 2") to Le Decl., Interview of Garret Maxwell ("Maxwell Int.") 9:386-391.<br><br>The vehicle came to a stop and then moved forward as the officers walked alongside the driver's side of the vehicle, before coming to another stop.<br><br>Ex. 3, Bruce Dep. 30:5-7; Ex. C, Incident Video at 01:26-01:28.<br><br>The vehicle did not come close to striking any officer and neither officer was in the pathway of the vehicle when it moved forward.<br><br>Ex. C, Incident Video at 01:26-01:28.<br><br>Neither Bruce nor Maxwell was struck by the vehicle.<br><br>Ex. 1, Maxwell Dep. 39:17-21; Ex. 3, Bruce Dep. 30:1-4. |
| 15. Hernandez's vehicle came closer to Bruce, who was in fear for his safety (being run over) and stepped out of the way as the vehicle came within inches of his legs.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.30:5-25; p.32:17-p.33:2; *Raudman Video*, Exhibit "C" to *AP Decl.* | **Disputed**.<br><br>The officers' failure to tactically position themselves in a position of cover and away from Decedent's vehicle when it began moving was a poor tactical choice.<br><br>DeFoe Decl. ¶ 7.<br><br>The vehicle came to a stop and then moved forward as the officers walked alongside the driver's side of the vehicle, before coming to another stop.<br><br>Ex. 3, Bruce Dep. 30:5-7; Ex. C, Incident Video at 01:26-01:28.<br><br>The vehicle did not come close to striking any officer and neither officer was in the pathway of the vehicle when it moved forward.<br><br>Ex. C, Incident Video at 01:26-01:28. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | Neither Bruce nor Maxwell was struck by the vehicle.<br><br>Ex. 1, Maxwell Dep. 39:17-21; Ex. 3, Bruce Dep. 30:1-4. |
| 16. Hernandez stopped for a few seconds as she screamed "fuck you" and extended both of her middle fingers.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.31:3-17; *Raudman Video*, Exhibit "C" to *AP Decl.* | Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 17. Intending to stop the car from moving out of concern for her unsafe driving and for the numerous pedestrians in the area, Ofc. Bruce pulled out his baton and attempted to break the driver's side window to grab Hernandez's keys, disable the vehicle and attempt to place her under arrest.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.31:3-17; p.32:15-p. 33:12; p.33:3-12; 34:20-35:2; *Raudman Video*, Exhibit "C" to *AP Decl.*; *Smyrnos Decl.*, at ¶ 19. | **Objection**. Fed. R. Evid. 802—hearsay. The cited portion of Smyrnos's Declaration is hearsay to which there is not exception.<br><br>**Objection**. The cited evidence to Bruce's Deposition and Raudman Video does not support the allegation that Bruce intended to stop the car from moving out of concern for Decedent's unsafe driving and for the numerous pedestrians in the area.<br><br>**Objection**. There are no objective facts to justify Bruce's alleged concern of Decedent's unsafe driving and that she posed a danger to the pedestrians in the area. "[A] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).<br><br>**Disputed**.<br><br>A reasonable officer acting pursuant to standard police practices and training would not have believed there was reasonable suspicion to detain or probable cause to arrest Ms. Hernandez at the time Officer Bruce approached the vehicle and began to strike the driver's side window with his baton. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | DeFoe Decl. ¶ 6. |
| | The vehicle did not come close to striking any officer and neither officer was in the pathway of the vehicle when it moved forward. |
| | Ex. C, Incident Video at 01:26-01:28. |
| | Neither Bruce nor Maxwell was struck by the vehicle. |
| | Ex. 1, Maxwell Dep. 39:17-21; Ex. 3, Bruce Dep. 30:1-4. |
| | Bruce's plan was to bash open the driver's side window and pull Decedent out of the vehicle. |
| | Ex. 3, Bruce Dep. 32:15-33:2; Exhibit 4 ("Ex. 4") to Le Decl., Interview of Matthew Bruce 18:792-795. |
| | Bruce has never been able to successfully break window while the driver was in the car and the engine was on. |
| | Ex. 3, Bruce Dep. 35:12-23. |
| | Bruce has never seen an officer successfully smash a window open and stop someone from driving while the vehicle is on, in gear, and the driver is in the vehicle. |
| | Ex. 3, Bruce Dep. 57:14-58:4. |
| | Bruce's use of the baton to strike the driver's side window violated standard police practices and training and unnecessarily escalated the situation. |
| | DeFoe Decl. ¶ 9. |
| | A reasonable officer acting consistent with standard police practices would have acted according to their training regarding how to |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | deal will mentally ill persons or persons experiencing a mental crisis and would have attempted to deescalate and utilize proper defusing techniques.<br><br>DeFoe Decl. ¶ 8. |
| 18. The window did not break as a result of the baton strikes.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.33:3-12; 34:20-35:2. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 19. Bruce did not inform Hernandez that she was under arrest prior to doing so because of how quickly the incident unfolded and because her music was turned up, leading him to believe she would not hear him.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.32:15-33:2; p.36:6-8; *Smyrnos Decl.*, at ¶ 19. | **Objection**. The cited evidence to Bruce's deposition does not support the alleged fact.<br><br>**Objection**. Fed. R. Evid. 802—hearsay. The cited evidence to the Declaration of Captain Chris Smyrnos is hearsay to which no exception exists.<br><br>**Disputed**.<br><br>Officers are trained to give a warning, when feasible, prior to using force in order to give the suspect the opportunity to comply and avoid the use of force.<br><br>DeFoe Decl. ¶ 14; Ex. 1, Maxwell Dep. 76:8-10.<br><br>It was feasible for Bruce to give Decedent commands or warning prior to using his baton to strike the driver's side window but Bruce failed to do so. A reasonable officer acting pursuant to standard police practices and training would have given a warning prior to striking the driver's side window with the baton.<br><br>DeFoe Decl. ¶ 14. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | Bruce never attempted to communicate with Decedent prior to the use of his baton via gestures, commands, or a warning. <br><br> Ex. 3, Bruce Dep. 36:2-8; 53:14-16. <br><br> Bruce made the decision to not try to communicate with Decedent prior to the use of his baton. <br><br> Ex. 3, Bruce Dep. 64:15-20. <br><br> Bruce claims that the reason why he did not try to give Decedent a command or gesture to let her know he wanted her to stop prior to approaching to stop her window was because he was purely focused on the task at hand. <br><br> Ex. 3, Bruce Dep. 59:14-18. <br><br> No one was in the pathway of the vehicle or at risk of being struck by the vehicle at the time Bruce approached the vehicle and started striking the driver's side window with his baton. <br><br> Ex. C, Incident Video at 01:29-01:31. <br><br> The vehicle briefly stopped before starting to slowly move in reverse at the time Bruce approached the vehicle and started striking the driver's side window with his baton. <br><br> Ex. C, Incident Video at 01:28-01:31. |
| 20. At that point, Hernandez then started to reverse her vehicle (while turning the steering wheel clockwise) with its wheels turned towards Bruce and made contact with Ofc. Bruce's foot, dragging it and his left leg under the vehicle's front, driver's side tire and pulling him to the ground. | **Disputed**. <br><br> Bruce found himself on the ground and initially did not know what had brought him off his feet. <br><br> Ex. 3, Bruce Dep. 39:21-40:5. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| *Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.40:25-p.41:12; *Kelkar Decl.*, at ¶ 5(j); *Smyrnos Decl.*, at ¶ 21. | After Bruce's third baton strike, the car reversed further, and Bruce fell to the ground near the front left tire.<br><br>Ex. C, Incident Video at 01:32-01:34. |
| 21. The vehicle rolled onto Ofc. Bruce's leg near his left knee and then stopped, pinning him underneath the vehicle and preventing either of his legs from moving.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.41:8-20; *Raudman Video*, Exhibit "C" to *AP Decl.*; *Smyrnos Decl.*, at ¶ 21 | **Objection**. Fed. R. Evid. 802—hearsay. The cited evidence to the Declaration of Captain Chris Smyrnos is hearsay to which no exception exists.<br><br>**Disputed**.<br><br>After Bruce fell to the ground, the vehicle's front left tire did not stop on top of Bruce and Bruce was not pinned underneath the vehicle.<br><br>Exhibit 6 ("Ex. 6") to Le Decl., Deposition of Aiden Phillips ("Phillips Dep.") 26:25-27:13; Exhibit 7 ("Ex. 7") to Le Decl., Deposition of Richard Bell ("Bell Dep.") 23:10-25; Ex. C, Incident Video at 01:32-10:39.<br><br>After falling to the ground, Bruce was positioned on all fours, with his arms and legs apart.<br><br>Ex. C, Incident Video at 01:34-01:38. |
| 22. Ofc. Bruce felt his left leg being "crushed" and experienced "immense pain" shooting up his leg while Hernandez's vehicle was stopped on top of him, leading him to believe that Hernandez was going to kill him.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.46:11-16; p.47:11-23. | **Disputed**.<br><br>After Bruce fell to the ground, the vehicle's front left tire did not stop on top of Bruce and Bruce was not pinned underneath the vehicle.<br><br>Ex. 6, Phillips Dep. 26:25-27:13; Ex. 7, Bell Dep. 23:10-25; Ex. C, Incident Video at 01:32-10:39.<br><br>After falling to the ground, Bruce was positioned on all fours, with his arms and legs apart.<br><br>Ex. C, Incident Video at 01:34-01:38. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | Bruce did not sustain any broken bones or any injury that required surgical intervention as a result of the incident.<br><br>Ex. 3, Bruce Dep. 50:4-6, 50:13-24.<br><br>Bruce only sustained abrasions and contusions to his left knee, right knee, and abrasions to his hands<br><br>Exhibit 5 ("Ex. 5") to Le Decl., Photographs taken of Matthew Bruce's injuries at the hospital after the incident ("Bruce Injury Photos").<br><br>This was not an immediate defense of life situation and under the facts of this case, Maxwell could not shoot Decedent after Bruce was not under the vehicle or in a position where he or Maxwell could be struck by the vehicle.<br><br>DeFoe Decl. ¶ 10. |
| 23. In fear for his life, Ofc. Bruce noticed Cpl. Maxwell running towards his location on the ground and yelled "shoot her"[;] however, Cpl. Maxwell had drawn his firearm once he saw the vehicle on top of Ofc. Bruce.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.45:21-46:10; p.47:11-23; *Maxwell Depo*, attached as Exhibit "A" to *AP Decl.* at p.64:13-19. | **Disputed**.<br><br>After Bruce fell to the ground, the vehicle's front left tire did not stop on top of Bruce and Bruce was not pinned underneath the vehicle.<br><br>Ex. 6, Phillips Dep. 26:25-27:13; Ex. 7, Bell Dep. 23:10-25; Ex. C, Incident Video at 01:32-10.39.<br><br>After falling to the ground, Bruce was positioned on all fours, with his arms and legs apart.<br><br>Ex. C, Incident Video at 01:34-01:38.<br><br>Bruce did not sustain any broken bones or any injury that required surgical intervention as a result of the incident. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | Ex. 3, Bruce Dep. 50:4-6, 50:13-24. |
| | Bruce only sustained abrasions and contusions to his left knee, right knee, and abrasions to his hands |
| | Ex. 5, Bruce Injury Photos. |
| | This was not an immediate defense of life situation and under the facts of this case, Maxwell could not shoot Decedent after Bruce was not under the vehicle or in a position where he or Maxwell could be struck by the vehicle. |
| | DeFoe Decl. ¶ 10. |
| | Bruce believed that he was directing Maxwell to shoot the Decedent. |
| | Ex. 3, Bruce Dep. 46:17-19. |
| | The vehicle was not moving when the shooting started. |
| | Ex. C, Incident Video at 01:38-01:42. |
| 24. Cpl. Maxwell shot into Hernandez's vehicle a total of seven times based on his own independent, reasonable and honest belief that Hernandez posed an imminent and deadly threat to Ofc. Bruce.<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.47:11-23; *Maxwell Depo*, attached as Exhibit "A" to *AP Decl.* at p.60:6-p.61:1; p.62:20-22 p.64:20-23; *Smyrnos Decl.,* at ¶ 21 | **Objection**. Argumentative.<br><br>**Objection**. Fed. R. Evid. 802. The evidence from the Smyrnos Declaration is based on hearsay.<br><br>**Objection**. Fed. R. Evid. 401, 402, 403. Evidence of the Redding Police Department's findings that Maxwell's use of deadly force was reasonable and justified are irrelevant and unduly prejudicial. *See Tulloss v. Near N. Montessori School, Inc.*, 776 F.2d 150, 153-54 (7th Cir. 1985) (excluding evidence of findings in an internal investigation because it "was tantamount to saying this has already been decided and here is the decision."). |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | **Objection**. Fed. R. Evid. 702. Smyrnos's findings are inappropriate and inadmissible opinions as to his legal conclusion on an ultimate issue of the law. *See Hangarter v. Provident Life Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *Miller v. Clark Cnty.*, 340 F.3d 959, 963 n.7 (9th Cir. 2003). <br><br> **Disputed**. <br><br> After Bruce fell to the ground, the vehicle's front left tire did not stop on top of Bruce and Bruce was not pinned underneath the vehicle. <br><br> Ex. 6, Phillips Dep. 26:25-27:13; Ex. 7, Bell Dep. 23:10-25; Ex. C, Incident Video at 01:32-10:39. <br><br> After falling to the ground, Bruce was positioned on all fours, with his arms and legs apart. <br><br> Ex. C, Incident Video at 01:34-01:38. <br><br> Bruce did not sustain any broken bones or any injury that required surgical intervention as a result of the incident. <br><br> Ex. 3, Bruce Dep. 50:4-6, 50:13-24. <br><br> Bruce only sustained abrasions and contusions to his left knee, right knee, and abrasions to his hands <br><br> Ex. 5, Bruce Injury Photos. <br><br> This was not an immediate defense of life situation and under the facts of this case, Maxwell could not shoot Decedent after Bruce was not under the vehicle or in a position where he or Maxwell could be struck by the vehicle. <br><br> DeFoe Decl. ¶ 10. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | A reasonable officer acting consistent with police practices and training, confronted with the facts of this incident, would not have used lethal force in this situation. |
| | DeFoe Decl. ¶ 10. |
| | The vehicle was not moving when the shooting started. |
| | Ex. C, Incident Video at 01:38-01:42. |
| | Maxwell had the impression that his shots were striking Decedent in the car because he could see the initial impact as he began shooting and could see that his continued shots appeared to be striking her. |
| | Ex. 1, Maxwell Dep. 65:14-23. |
| | After the first or second shot, Decedent's head fell forward and landed on the steering wheel. |
| | Exhibit 8 ("Ex. 8") to Le Decl., Deposition of Jennifer Hoberg ("Hoberg Dep.") 47:9-15, 61:5-17. |
| | After the first two shots, Decedent's head and upper body moved away from the driver's side and down towards passenger seat area. |
| | Ex. C, Incident Video at 01:39-01:40. |
| | After the first two shots, the car slowly moved forward in a straight line and Bruce moved away from near the front left tire. |
| | Ex. C, Incident Video at 01:40-01:42. |
| | Bruce was not in the direct pathway of the vehicle when it started to move forward. |
| | Ex. 7, Bell Dep. 42:16-23, 44:11-45:5. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | The car never attempted to make a turn when it moved forward; it generally moved in a straight direction the entire time. |
| | Ex. 7, Bell Dep. 49:3-15; Ex. C, Incident Video at 01:39-01:43. |
| | When the car rolled forward, it was moving at approximately 2 miles per hour. |
| | Ex. 7, Bell Dep. 43:2-44:1; Ex. C, Incident Video at 01:39-01:43. |
| | Bruce claims he heard two back-to-back shots and then felt the vehicle move off his leg. |
| | Ex. 3, Bruce Dep. 67:1-6; Ex. 4, Bruce Int. 23:1010-1021. |
| | One of the gunshot wounds entered Decedent's left mid-back and had a back to front, left to right, and sharply upward trajectory. |
| | Exhibit 9 ("Ex. 9") to Le Decl., Shasta County Sheriff Autopsy of Dolores Hernandez ("Autopsy") at 2. |
| | Another gunshot wound entered the lateral left torso and had a left to right, slightly front to back, and sharply upward trajectory. |
| | Ex. 9, Autopsy at 2. |
| | Officers are trained that shooting at a moving vehicle is rarely effective and the officers should move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. |
| | DeFoe Decl. ¶ 11; Ex. 1, Maxwell Dep. 70:14-71:1, 71:5-23, 72:12-18. |
| | Officers are taught that if a driver is wounded or killed while operating a motor vehicle, it |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | could cause the driver to lose control of the vehicle, making it more dangerous for those around the vehicle.

DeFoe Decl. ¶ 11.

Officers are trained that lethal force must be a last resort and used only in the direst of circumstances. Officers are further trained that they must show a reverence for human life and to consider other reasonable measures available prior to using lethal force.

DeFoe Decl. ¶ 12.

Maxwell had other reasonable measures available to him at the time he used lethal force, including but not limited to issuing commands and warnings and moving to a position of cover.

DeFoe Decl. ¶ 12.

Officers are trained that they are responsible for justifying every shot. Officers are also trained that subjective fear is insufficient to justify the use of lethal force and that an overreaction in using force is excessive force.

DeFoe Decl. ¶ 13; Ex. 1, Maxwell Dep. 76:11-13.

The number of shots by Maxwell violated standard police practices and training as it was clear to Maxwell that his initial shots struck Decedent, Decedent was incapacitated by the initial shots, and Bruce was able to move away from the vehicle after the initial two shots.

DeFoe Decl. ¶ 13.

Officers are trained to give a warning, when feasible, prior to using force in order to give |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | the suspect the opportunity to comply and avoid the use of force.

DeFoe Decl. ¶ 14; Ex. 1, Maxwell Dep. 76:8-10.

It was feasible for Maxwell to provide commands and a warning prior to his use of lethal force but failed to do so.

DeFoe Decl. ¶ 14.

There was a gap of time from when Maxwell drew his firearm to when he engaged his firearm during which Maxwell assessed the situation.

Ex. 2, Maxwell Int. 13:598-600.

According to Maxwell, approximately three to five seconds passed between the time Maxwell got to the car window and when he began shooting.

Ex. 2, Maxwell Int. 14:612-618.

A reasonable officer acting pursuant to standard police practices and training would have given a warning prior to striking the driver's side window with a baton and prior using deadly force under the circumstances of this incident.

DeFoe Decl. ¶ 14.

The Redding Police Department Policy 300.4.1 advises officers that an officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle or if deadly force other than the vehicle is directed at the officer or others. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | Ex. 1, Maxwell Dep. 80:24-81:6.<br><br>Maxwell never saw Decedent in the car with a gun or pointing a gun at Maxwell.<br><br>Ex. 1, Maxwell Dep. 81:7-10. |
| 25. Ofc. Bruce correctly believed that he would have been run over again if Cpl. Maxwell had not fired his shots to eliminate the threat Hernandez posed, as Hernandez's vehicle would have run over Ofc. Bruce's head and body had it been driven forward with counterclockwise steering (posing a potential for serious and potentially fatal injury to Ofc. Bruce).<br><br>*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p.67:12-21; *Maxwell Depo*, attached as Exhibit "A" to *AP Decl.* at p.60:6-61:1; 67:15-21; *Kelkar Decl.,* at ¶ 5(m). | **Objection**. Argumentative.<br><br>**Objection**. There are no objective facts to justify Bruce's alleged belief that Bruce's body and head would have been run over if the car had driven forward with counterclockwise steering. "[A] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).<br><br>**Disputed**.<br><br>Bruce found himself on the ground and initially did not know what had brought him off his feet.<br><br>Ex. 3, Bruce Dep. 39:21-40:5.<br><br>After falling to the ground, Bruce was positioned on all fours, with his arms and legs apart.<br><br>Ex. C, Incident Video at 01:34-01:38.<br><br>Ex. 6, Phillips Dep. 26:25-27:13; Ex. 7, Bell Dep. 23:10-25; Ex. C, Incident Video at 01:32-10:39.<br><br>Ex. 3, Bruce Dep. 45:21-23.<br><br>The vehicle was not moving when the shooting started.<br><br>Ex. C, Incident Video at 01:38-01:42. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | After the first two shots, the car slowly moved forward in a straight line and Bruce moved away from near the front left tire.

Ex. C, Incident Video at 01:40-01:42

Bruce was not in the direct pathway of the vehicle when it started to move forward.

Ex. 7, Bell Dep. 42:16-23, 44:11-45:5.

The car never attempted to make a turn when it moved forward; it generally moved in a straight direction the entire time.

Ex. 7, Bell Dep. 49:3-15; Ex. C, Incident Video at 01:39-01:43.

When the car rolled forward, it was moving at approximately 2 miles per hour.

Ex. 7, Bell Dep. 43:2-44:1; Ex. C, Incident Video at 01:39-01:43. |
| 26. Cpl. Maxwell did not believe it was feasible to provide a verbal warning to Hernandez prior to firing his weapon; nor did Ofc. Bruce or Cpl. Maxwell have time to create a tactical plan because of how quickly the incident transpired.

*Bruce Depo* attached as Exhibit "D" to *AP Decl.* at p. 47:11-p.48:3, 55:15-21; *Maxwell Depo*, attached as Exhibit "A" to *AP Decl.* at p.48:13-15, 63:12-15; *Smyrnos Decl.,* at ¶ 21. | **Objection**. Compound.

**Disputed**.

Maxwell never said anything to Decedent, including any commands to stop or a warning that he was going to shoot, prior to the shooting.

Ex. 1, Maxwell Dep. 16:19-17:6, 17:17-21, 63:12-15.

There was a gap of time from when Maxwell drew his firearm to when he engaged his firearm during which Maxwell assessed the situation.

Ex. 2, Maxwell Int. 13:598-600

According to Maxwell, approximately three to five seconds passed between the time Maxwell |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | got to the car window and when he began shooting. |
| | Ex. 2, Maxwell Int. 14:612-618. |
| | Officers are trained to give a warning, when feasible, prior to using force in order to give the suspect the opportunity to comply and avoid the use of force. |
| | DeFoe Decl. ¶ 14; Ex. 1, Maxwell Dep. 76:8-10. |
| | It was feasible for Maxwell to provide commands and a warning prior to his use of lethal force but failed to do so. |
| | DeFoe Decl. ¶ 14. |
| | A reasonable officer acting pursuant to standard police practices and training would have given a warning prior to using deadly force under the circumstances of this incident. |
| | DeFoe Decl. ¶ 14. |
| | The officers failed to formulate a tactical plan prior to their initial approach Decedent and prior to approaching Decedent to detain her. |
| | DeFoe Decl. ¶ 7. |
| | The poor tactical choices and errors made by the officers during this incident include failing to recognize that Decedent may have a mental illness and responding appropriately pursuant to their training, failing to tactically position themselves in a position of cover and away from Decedent's vehicle when it began moving, failing to communicate with each other during the incident, positioning themselves near or in the pathway of a moving vehicle despite anticipating that the vehicle would continue to move, unnecessarily escalating the situation by using force without |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
|  | attempting to communicate, give commands, or give warnings, and not being aware of where their partner was during the incident.  DeFoe Decl. ¶ 7. |
| 27. At approximately 6:36:42 p.m. on December 2, 2020, Corporal Maxwell advised over the radio that shots had been fired and one subject was down and requested "Code 3" medical to respond.  *Smyrnos Decl.,* at ¶ 15; *Maxwell Audio Clip* attached as Exhibit "H" to *AP Decl.* | Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 28. Corporal Maxwell evaluated Hernandez, who appeared to be obviously deceased since she was motionless, not breathing, had significant trauma on the left side of her body from gunshot wounds, and had no pulse.  *Smyrnos Decl.,* at ¶ 15; *Maxwell Depo*, attached as Exhibit "A" to *AP Decl.* at p.66:6-24. | Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 29. Per Redding Police Department Policy, the Department conducted an internal investigation into the officer involved shooting incident.  *Smyrnos Decl.,* at ¶ 16. | **Objection**. Fed. R. Evid. 401, 402—relevance.  Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 30. The Department found that Ofc. Bruce believed Hernandez intentionally drove directly at him (assault with a deadly weapon) and attempted to use his baton to break the vehicle's window to detain and arrest her.  *Smyrnos Decl.,* at ¶ 19. | **Objection**. Fed. R. Evid. 401, 402, 403— relevance and unduly prejudicial. *See Tulloss v. Near N. Montessori School, Inc.*, 776 F.2d 150, 153-54 (7th Cir. 1985) (excluding evidence of findings in an internal investigation because it "was tantamount to saying this has already been decided and here is the decision.").  **Objection**. Fed. R. Evid. 702. The Department's findings are inappropriate and inadmissible opinions as to its legal conclusion |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | on an ultimate issue of the law. *See Hangarter v. Provident Life Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *Miller v. Clark Cnty.*, 340 F.3d 959, 963 n.7 (9th Cir. 2003). |
| | **Disputed** that it was reasonable for Bruce to believe that Decedent intentionally drove directly at him and that his use of the baton was reasonable. |
| | The vehicle came to a stop and then moved forward as the officers walked alongside the driver's side of the vehicle, before coming to another stop. |
| | Ex. 3, Bruce Dep. 30:5-7; Ex. C, Incident Video at 01:26-01:28. |
| | The officers failed to tactically position themselves in a position of cover and away from Decedent's vehicle when it began moving. |
| | DeFoe Decl. ¶ 7. |
| | The vehicle did not come close to striking any officer and neither officer was in the pathway of the vehicle when it moved forward. |
| | Ex. C, Incident Video at 01:26-01:28. |
| | Neither Bruce nor Maxwell was struck by the vehicle. |
| | Ex. 1, Maxwell Dep. 39:17-21; Ex. 3, Bruce Dep. 30:1-4. |
| | Bruce did not give the Decedent any commands or any warning that he was going strike her window with his baton prior to striking the window. |
| | Ex. 3, Bruce Dep. 36:2-8. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | Bruce never made any gestures with his hands in an attempt to communicate with Decedent that he wanted her to stop.<br><br>Ex. 3, Bruce Dep. 53:14-16.<br><br>Bruce made the decision to not give any commands or gestures prior to approaching to smash the window.<br><br>Ex. 3, Bruce Dep. 64:15-20.<br><br>Bruce claims that the reason why he did not try to give Decedent a command or gesture to let her know he wanted her to stop prior to approaching to stop her window was because he was purely focused on the task at hand.<br><br>Ex. 3, Bruce Dep. 59:14-18.<br><br>Bruce has never been able to successfully break window while the driver was in the car and the engine was on.<br><br>Ex. 3, Bruce Dep. 35:12-23.<br><br>Bruce has never seen an officer successfully smash a window open and stop someone from driving while the vehicle is on, in gear, and the driver is in the vehicle.<br><br>Ex. 3, Bruce Dep. 57:14-58:4.<br><br>Bruce anticipated that the vehicle was going to move while he was smashing the window.<br><br>Ex. 3, Bruce Dep. 53:25-54:5.<br><br>Bruce concedes that if he had not gone up to smash the vehicle's window, he would not have been in the position to end up where he did on the ground.<br><br>Ex. 3, Bruce Dep. 52:14-24 |

PLAINTIFFS' SEPARATE STATEMENT

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | Based on the circumstances of this incident, a reasonable police office acting consistent with standard police practices and training would have initially determined that Decedent was mentally ill or experiencing a mental health crisis.<br><br>DeFoe Decl. ¶ 5.<br><br>A reasonable officer acting consistent with standard police practices would have acted according to their training regarding how to deal will mentally ill persons or persons experiencing a mental crisis and would have attempted to deescalate and utilize proper defusing techniques.<br><br>DeFoe Decl. ¶ 8.<br><br>Bruce's use of the baton to strike the driver's side window violated standard police practices and training and unnecessarily escalated the situation.<br><br>DeFoe Decl. ¶ 9. |
| 31. Moreover, the Department found Cpl. Maxwell's use of deadly force was reasonable and justified to stop Hernandez's immediate threat of death or serious bodily injury to Officer Bruce and the ongoing threat to the public if she were to escape (and thus lawful and within Department policy).<br><br>*Smyrnos Decl.,* at ¶ 21. | **Objection**. Fed. R. Evid. 401, 402, 403— relevance and unduly prejudicial. *See Tulloss v. Near N. Montessori School, Inc.*, 776 F.2d 150, 153-54 (7th Cir. 1985) (excluding evidence of findings in an internal investigation because it "was tantamount to saying this has already been decided and here is the decision.").<br><br>**Objection**. Fed. R. Evid. 702. The Department's findings are inappropriate and inadmissible opinions as to its legal conclusion on an ultimate issue of the law. *See Hangarter v. Provident Life Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *Miller v. Clark Cnty.*, 340 F.3d 959, 963 n.7 (9th Cir. 2003).<br><br>**Disputed** that Maxwell's just of deadly force was reasonable and justified and that Decedent |

PLAINTIFFS' SEPARATE STATEMENT

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | posed an immediate threat of death or serios bodily injury to Bruce or the general public at the time of the shooting. |
| | After Bruce fell to the ground, the vehicle's front left tire did not stop on top of Bruce and Bruce was not pinned underneath the vehicle. |
| | Ex. 6, Phillips Dep. 26:25-27:13; Ex. 7, Bell Dep. 23:10-25; Ex. C, Incident Video at 01:32-10:39. |
| | After falling to the ground, Bruce was positioned on all fours, with his arms and legs apart. |
| | Ex. C, Incident Video at 01:34-01:38. |
| | Bruce did not sustain any broken bones or any injury that required surgical intervention as a result of the incident. |
| | Ex. 3, Bruce Dep. 50:4-6, 50:13-24. |
| | Bruce only sustained abrasions and contusions to his left knee, right knee, and abrasions to his hands |
| | Ex. 5, Photographs taken of Matthew Bruce's injuries at the hospital after the incident. |
| | This was not an immediate defense of life situation and under the facts of this case, Maxwell could not shoot Decedent after Bruce was not under the vehicle or in a position where he or Maxwell could be struck by the vehicle. |
| | DeFoe Decl. ¶ 10. |
| | A reasonable officer acting consistent with police practices and training, confronted with the facts of this incident, would not have used lethal force in this situation. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
| --- | --- |
| | DeFoe Decl. ¶ 10. |
| | The vehicle was not moving when the shooting started. |
| | Ex. C, Incident Video at 01:38-01:42. |
| | Maxwell had the impression that his shots were striking Decedent in the car because he could see the initial impact as he began shooting and could see that his continued shots appeared to be striking her. |
| | Ex. 1, Maxwell Dep. 65:14-23. |
| | After the first or second shot, Decedent's head fell forward and landed on the steering wheel. |
| | Ex. 8, Hoberg Dep. 47:9-15, 61:5-17. |
| | After the first two shots, Decedent's head and upper body moved away from the driver's side and down towards passenger seat area. |
| | Ex. C, Incident Video at 01:39-01:40. |
| | After the first two shots, the car slowly moved forward in a straight line and Bruce moved away from near the front left tire. |
| | Ex. C, Incident Video at 01:40-01:42. |
| | Bruce was not in the direct pathway of the vehicle when it started to move forward. |
| | Ex. 7, Bell Dep. 42:16-23, 44:11-45:5. |
| | The car never attempted to make a turn when it moved forward; it generally moved in a straight direction the entire time. |
| | Ex. 7, Bell Dep. 49:3-15; Ex. C, Incident Video at 01:39-01:43. |

PLAINTIFFS' SEPARATE STATEMENT

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | When the car rolled forward, it was moving at approximately 2 miles per hour. |
| | Ex. 7, Bell Dep. 43:2-44:1; Ex. C, Incident Video at 01:39-01:43. |
| | Bruce claims he heard two back-to-back shots and then felt the vehicle move off his leg. |
| | Ex. 3, Bruce Dep. 67:1-6; Ex. 4, Bruce Int. 23:1010-1021. |
| | One of the gunshot wounds entered Decedent's left mid-back and had a back to front, left to right, and sharply upward trajectory. |
| | Ex. 9, Autopsy at 2. |
| | Another gunshot wound entered the lateral left torso and had a left to right, slightly front to back, and sharply upward trajectory. |
| | Ex. 9, Autopsy at 2. |
| | Officers are trained that shooting at a moving vehicle is rarely effective and the officers should move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. |
| | DeFoe Decl. ¶ 11; Ex. 1, Maxwell Dep. 70:14-71:1, 71:5-23, 72:12-18. |
| | Officers are taught that if a driver is wounded or killed while operating a motor vehicle, it could cause the driver to lose control of the vehicle, making it more dangerous for those around the vehicle. |
| | DeFoe Decl. ¶ 11. |
| | Officers are trained that lethal force must be a last resort and used only in the direst of circumstances. Officers are further trained that |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | they must show a reverence for human life and to consider other reasonable measures available prior to using lethal force.

DeFoe Decl. ¶ 12.

Maxwell had other reasonable measures available to him at the time he used lethal force, including but not limited to issuing commands and warnings and moving to a position of cover.

DeFoe Decl. ¶ 12.

Officers are trained that they are responsible for justifying every shot. Officers are also trained that subjective fear is insufficient to justify the use of lethal force and that an overreaction in using force is excessive force.

DeFoe Decl. ¶ 13; Ex. 1, Maxwell Dep. 76:11-13.

The number of shots by Maxwell violated standard police practices and training as it was clear to Maxwell that his initial shots struck Decedent, Decedent was incapacitated by the initial shots, and Bruce was able to move away from the vehicle after the initial two shots.

DeFoe Decl. ¶ 13.

Officers are trained to give a warning, when feasible, prior to using force in order to give the suspect the opportunity to comply and avoid the use of force.

DeFoe Decl. ¶ 14; Ex. 1, Maxwell Dep. 76:8-10.

It was feasible for Maxwell to provide commands and a warning prior to his use of lethal force but failed to do so. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | DeFoe Decl. ¶ 14. |
| | There was a gap of time from when Maxwell drew his firearm to when he engaged his firearm during which Maxwell assessed the situation. |
| | Ex. 2, Maxwell Int. 13:598-600. |
| | According to Maxwell, approximately three to five seconds passed between the time Maxwell got to the car window and when he began shooting. |
| | Ex. 2, Maxwell Int. 14:612-618. |
| | A reasonable officer acting pursuant to standard police practices and training would have given a warning prior to striking the driver's side window with a baton and prior using deadly force under the circumstances of this incident. |
| | DeFoe Decl. ¶ 14. |
| | The Redding Police Department Policy 300.4.1 advises officers that an officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle or if deadly force other than the vehicle is directed at the officer or others. |
| | Ex. 1, Maxwell Dep. 80:24-81:6. |
| | Maxwell never saw Decedent in the car with a gun or pointing a gun at Maxwell. |
| | Ex. 1, Maxwell Dep. 81:7-10. |
| 32. As part of the Department's policies, the Department adheres to Cal. Pen. Code §832.5 | **Objection.** Fed. R. Evid. 401, 402, 403—relevance, unduly prejudicial. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| *Smyrnos Decl.,* at ¶ 5. | Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 33. At the time of the shooting, Redding Police Department observed and trained to the standards set by the State of California Commission on Peace Officer Standards and Training ("POST").<br><br>*Smyrnos Decl.,* at ¶ 6. | **Objection**. Fed. R. Evid. 401, 402—relevance.<br><br>Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 34. POST is a state-wide, governmental organization (created by State of California Legislature) composed of law enforcement executives and advisors tasked with setting minimum selection and training standards for California law enforcement.<br><br>*Smyrnos Decl.,* at ¶ 6. | Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 35. The Department's update training is consistent with POST mandates.<br><br>*Smyrnos Decl.,* at ¶ 7. | **Objection**. Fed. R. Evid. 401, 402—relevance.<br><br>Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 36. In order to be in compliance with POST standards, the Department submits its training courses and policies to regular audits by POST.<br><br>*Smyrnos Decl.,* at ¶ 8. | **Objection**. Fed. R. Evid. 401, 402—relevance.<br><br>Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 37. At the time of the incident, Cpl. Maxwell and Ofc. Bruce attended and successfully completed the POST-certified police academy prior to being hired by the Department, successfully passed their FTO training, and were up to date with all mandated POST training requirements<br><br>*Smyrnos Decl.,* at ¶ 9. | **Objection**. Fed. R. Evid. 401, 402—relevance.<br><br>Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 38. Only approximately 19.7 seconds elapsed between the moment Hernandez's vehicle first moved (reversed out of the parking | **Objection**. Fed. R. Evid. 401, 402—relevance. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| space) and the moment Cpl. Maxwell drew his weapon.

*Raudman Video*, Exhibit "C" to *AP Decl.*; *Kelkar Report*, attached as Exhibit "B" to *Kelkar Decl.*, at p. 41 ("Video Log"). | Undisputed for the purposes of Defendants' Motion for Summary Judgment. |
| 39. Cpl. Maxwell was forced to fire his first shot just one second after drawing his gun.

*Raudman Video*, Exhibit "C" to *AP Decl.*; *Kelkar Report*, attached as Exhibit "B" to *Kelkar Decl.*, at p. 41 ("Video Log"). | **Objection**. Argumentative.

**Objection**. Vague as to "forced to fire."

**Disputed**.

After Bruce fell to the ground, the vehicle's front left tire did not stop on top of Bruce and Bruce was not pinned underneath the vehicle.

Ex. 6, Phillips Dep. 26:25-27:13; Ex. 7, Bell Dep. 23:10-25; Ex. C, Incident Video at 01:32-10:39.

After falling to the ground, Bruce was positioned on all fours, with his arms and legs apart.

Ex. C, Incident Video at 01:34-01:38.

Bruce did not sustain any broken bones or any injury that required surgical intervention as a result of the incident.

Ex. 3, Bruce Dep. 50:4-6, 50:13-24.

Bruce only sustained abrasions and contusions to his left knee, right knee, and abrasions to his hands

Ex. 5, Photographs taken of Matthew Bruce's injuries at the hospital after the incident.

This was not an immediate defense of life situation and under the facts of this case, Maxwell could not shoot Decedent after Bruce was not under the vehicle or in a position |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | where he or Maxwell could be struck by the vehicle. |
| | DeFoe Decl. ¶ 10. |
| | A reasonable officer acting consistent with police practices and training, confronted with the facts of this incident, would not have used lethal force in this situation. |
| | DeFoe Decl. ¶ 10. |
| | Maxwell had the impression that his shots were striking Decedent in the car because he could see the initial impact as he began shooting and could see that his continued shots appeared to be striking her. |
| | Ex. 1, Maxwell Dep. 65:14-23. |
| | After the first or second shot, Decedent's head fell forward and landed on the steering wheel. |
| | Ex. 8, Hoberg Dep. 47:9-15, 61:5-17. |
| | After the first two shots, Decedent's head and upper body moved away from the driver's side and down towards passenger seat area. |
| | Ex. C, Incident Video at 01:39-01:40. |
| | After the first two shots, the car slowly moved forward in a straight line and Bruce moved away from near the front left tire. |
| | Ex. C, Incident Video at 01:40-01:42. |
| | Bruce was not in the direct pathway of the vehicle when it started to move forward. |
| | Ex. 7, Bell Dep. 42:16-23, 44:11-45:5; Ex. C, Incident Video at 01:39-01:43. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | The car never attempted to make a turn when it moved forward; it generally moved in a straight direction the entire time.<br><br>Ex. 7, Bell Dep. 49:3-15; Ex. C, Incident Video at 01:39-01:43.<br><br>When the car rolled forward, it was moving at approximately 2 miles per hour.<br><br>Ex. 7, Bell Dep. 43:2-44:1; Ex. C, Incident Video at 01:39-01:43.<br><br>Bruce claims he heard two back-to-back shots and then felt the vehicle move off his leg.<br><br>Ex. 3, Bruce Dep. 67:1-6; Ex. 4, Bruce Int. 23:1010-1021.<br><br>One of the gunshot wounds entered Decedent's left mid-back and had a back to front, left to right, and sharply upward trajectory.<br><br>Ex. 9, Autopsy at 2.<br><br>Another gunshot wound entered the lateral left torso and had a left to right, slightly front to back, and sharply upward trajectory.<br><br>Ex. 9, Autopsy at 2.<br><br>Officers are trained that shooting at a moving vehicle is rarely effective and the officers should move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants.<br><br>DeFoe Decl. ¶ 11; Ex. 1, Maxwell Dep. 70:14-71:1, 71:5-23, 72:12-18.<br><br>Officers are taught that if a driver is wounded or killed while operating a motor vehicle, it could cause the driver to lose control of the |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
|  | vehicle, making it more dangerous for those around the vehicle. |
|  | DeFoe Decl. ¶ 11. |
|  | Officers are trained that lethal force must be a last resort and used only in the direst of circumstances. Officers are further trained that they must show a reverence for human life and to consider other reasonable measures available prior to using lethal force. |
|  | DeFoe Decl. ¶ 12. |
|  | Maxwell had other reasonable measures available to him at the time he used lethal force, including but not limited to issuing commands and warnings and moving to a position of cover. |
|  | DeFoe Decl. ¶ 12. |
|  | Officers are trained that they are responsible for justifying every shot. Officers are also trained that subjective fear is insufficient to justify the use of lethal force and that an overreaction in using force is excessive force. |
|  | DeFoe Decl. ¶ 13; Ex. 1, Maxwell Dep. 76:11-13. |
|  | The number of shots by Maxwell violated standard police practices and training as it was clear to Maxwell that his initial shots struck Decedent, Decedent was incapacitated by the initial shots, and Bruce was able to move away from the vehicle after the initial two shots. |
|  | DeFoe Decl. ¶ 13. |
|  | Officers are trained to give a warning, when feasible, prior to using force in order to give the suspect the opportunity to comply and avoid the use of force. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | DeFoe Decl. ¶ 14; Ex. 1, Maxwell Dep. 76:8-10. |
| | It was feasible for Maxwell to provide commands and a warning prior to his use of lethal force but failed to do so. |
| | DeFoe Decl. ¶ 14. |
| | There was a gap of time from when Maxwell drew his firearm to when he engaged his firearm during which Maxwell assessed the situation. |
| | Ex. 2, Maxwell Int. 13:598-600. |
| | According to Maxwell, approximately three to five seconds passed between the time Maxwell got to the car window and when he began shooting. |
| | Ex. 2, Maxwell Int. 14:612-618. |
| | A reasonable officer acting pursuant to standard police practices and training would have given a warning prior to striking the driver's side window with a baton and prior using deadly force under the circumstances of this incident. |
| | DeFoe Decl. ¶ 14. |
| | The Redding Police Department Policy 300.4.1 advises officers that an officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle or if deadly force other than the vehicle is directed at the officer or others. |
| | Ex. 1, Maxwell Dep. 80:24-81:6. |

PLAINTIFFS' SEPARATE STATEMENT

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACT AND CITATION | PLAINTIFFS' RESPONSE |
|---|---|
| | Maxwell never saw Decedent in the car with a gun or pointing a gun at Maxwell. Ex. 1, Maxwell Dep. 81:7-10. |

### PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| **Bruce and Maxwell Respond to a Call Regarding a General Disturbance and Bruce Makes Contact with Decedent** | |
| 40. Bruce and Maxwell responded to a general disturbance call regarding a woman using foul language, causing a disturbance at a location, and refusing to leave the area. | Ex. 1, Maxwell Dep. 25:13-19, 26:3-15; Ex. 3, Bruce Dep. 9:8-18 |
| 41. When Bruce responded to the call, he did not have any information that anyone had been verbally threatened, that anyone had been injured, or that any weapon had been involved. | Ex. 3, Bruce Dep. 9:19-10:1. |
| 42. Bruce did not speak with anyone at the scene before speaking with Decedent. | Ex. 3, Bruce Dep. 14:12-14. |
| 43. Bruce was aware that Maxwell had arrived shortly behind him. | Ex. 3, Bruce Dep. 14:15-18. |
| 44. Bruce waited for Maxwell to make their approach but did not have a conversation with Maxwell prior to approaching Decedent. | Ex. 3, Bruce Dep. 14:19-22. |
| 45. When Bruce initially contacted Decedent in her vehicle, the vehicle's window was all the way up. | Ex. 3, Bruce Dep. 16:25-17:3; Ex. C, Incident Video at 00:00-00:08. |
| 46. When Maxwell arrived on scene, he made contact with a security guard who informed him that the Decedent had | Ex. 1, Maxwell Dep. 33:4-10; Ex. C, Incident Video at 00:10-00:22. |

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| caused a disturbance inside the Mod Pizza business and claims she had been belligerent. | |
| 47. In order to get Decedent's attention, Bruce knocked on Decedent's window three times then shined his flashlight into her car, to which Decedent lowered her window a few inches. | Ex. 3, Bruce Dep. 17:4-8; Ex. 4, Bruce Int. 9:368-377. |
| 48. Bruce did not recognize Decedent and had never had contact with Decedent prior to the incident. | Ex. 4, Bruce Int. 8:337-352. |
| 49. Bruce did not see any weapons inside the car. | Ex. 3, Bruce Dep. 25:9-11. |
| 50. Bruce knew something was not right with Decedent and that she was not in her right mind due to her statements to him. | Ex. 4, Bruce Int. 11:459-464. |
| 51. As Bruce spoke with Decedent, he could tell that he was agitating her. | Ex. 4, Bruce Int. 11:468-472. |
| 52. Bruce knew that something was not right with Decedent and was starting to build on suspicions of a possible mental health problem. | Ex. 4, Bruce Int. 12:529-531. |
| 53. After Decedent accused Bruce of being a murderer, Bruce claims started to become more aware that Decedent was not safe. | Ex. 4, Bruce Int. 13:551-553. |
| 54. Decedent did not make any verbal threats to Bruce during their conversation. | Ex. 3, Bruce Dep. 24:17-25. |
| 55. Bruce was not able to assess whether Decedent was under the influence of drugs or alcohol. | Ex. 3, Bruce Dep. 27:12-16. |
| 56. Maxwell did not complete his discussion with the security guard because he claims that while he was speaking with the security guard, he noticed that the Decedent was angry and cursing at Bruce. | Ex. 1, Maxwell Dep. 27:18-28:7. |

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 57. Maxwell moved off the sidewalk and positioned himself near Bruce as Bruce continued to speak with Decedent. | Ex. 1, Maxwell Dep. 35:23-36:6; Ex. C, Incident Video at 00:58-01:09. |
| 58. In response to Bruce's request to see Decedent's license, Decedent refused and began to reverse her vehicle. | Ex. 3, Bruce Dep. 24:2-7. |
| **Decedent Attempts to Leave the Shopping Plaza** | |
| 59. When Decedent started backing up the vehicle, Bruce waved to her and told her that she was now driving. | Ex. 3, Bruce Dep. 23:19-20. 24:6-9. |
| 60. When Decedent began to back up, Bruce believed that Decedent was free to leave because he did not have enough to detain or arrest Decedent and intended to go look for Maxwell and talk to him about what had occurred. | Ex. 3, Bruce Dep. 22:25-23:5; Ex. 4, Bruce Int. 25:1084-1094 |
| 61. At the time Decedent started to back up her vehicle, Bruce had no intention of arresting Decedent and was going to let her go. | Ex. 3, Bruce Dep. 22:3-9. |
| 62. The reason Bruce intended to let Decedent go was because he did not have enough to determine if she was something more than just crazy and being crazy is not a crime. | Ex. 4, Bruce Int. 13:570-581. |
| 63. As the vehicle began to back out, Maxwell was moving into the parking lot to get a better vantage point of the parking area. | Ex. 1, Maxwell Dep. 37:14-25. |
| 64. Maxwell intended to let Decedent leave the shopping plaza and then initiate a traffic stop on Decedent at a later location. | Ex. 2, Maxwell Int. 9:386-391. |
| 65. Bruce did not know where Maxwell was at the time Decedent put her vehicle in reverse and intended to go look for Maxwell. | Ex. 3, Bruce Dep. 22:19-23:5. |

PLAINTIFFS' SEPARATE STATEMENT

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 66. The vehicle came to a stop and then moved forward as the officers walked alongside the driver's side of the vehicle, before coming to another stop. | Ex. 3, Bruce Dep. 30:5-7; Ex. C, Incident Video at 01:26-01:28. |
| 67. The vehicle did not come close to striking any officer and neither officer was in the pathway of the vehicle when it moved forward. | Ex. C, Incident Video at 01:26-01:28. |
| 68. Neither Bruce nor Maxwell was struck by the vehicle. | Ex. 1, Maxwell Dep. 39:17-21; Ex. 3, Bruce Dep. 30:1-4. |
| 69. After Decedent moved the vehicle forward and came to a stop, Bruce claims that he thought that Decedent was agitated at this point. | Ex. 3, Bruce Dep. 53:9-13. |
| 70. Bruce cannot recall whether Decedent's car windows were all the way up and concedes that the window may have been down a few inches still. | Ex. 3, Bruce Dep. 31:18-25. |
| 71. After the car reversed and then moved forward, Maxwell claims he heard Bruce say things to the driver before Bruce began to hit the window with his baton. | Ex. 1, Maxwell Dep. 47:21-48:12. |
| 72. After coming to a stop, the vehicle began to reverse again. | Ex. C, Incident Video at 01:28-01:30. |
| **The Officers Escalate the Encounter in an Attempt to Take Decedent into Custody** | |
| 73. As the vehicle reversed, Bruce approached the driver's side door and started to strike the driver's side window with the bottom of his baton, while positioning his left foot extended forward near the front left tire. | Ex. 3, Bruce Dep. 33:3-6, 38:10-14; Ex. C, Incident Video at 01:29-01:31. |
| 74. A reasonable officer acting pursuant to standard police practices and training would not have believed there was reasonable suspicion to detain or probable cause to arrest Ms. Hernandez at the time Officer Bruce approached the vehicle and | DeFoe Decl. ¶ 6. |

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| began to strike the driver's side window with his baton. | |
| 75. Bruce's plan was to bash open the driver's side window and pull Decedent out of the vehicle. | Ex. 3, Bruce Dep. 32:15-33:2; Ex. 4, Bruce Int. 18:792-795. |
| 76. Bruce did not make tactical plan or have any discussion with Maxwell prior to bashing the vehicle's window. | Ex. 3, Bruce Dep. 55:15-21. |
| 77. Bruce has never been able to successfully break window while the driver was in the car and the engine was on. | Ex. 3, Bruce Dep. 35:12-23. |
| 78. Bruce has never seen an officer successfully smash a window open and stop someone from driving while the vehicle is on, in gear, and the driver is in the vehicle. | Ex. 3, Bruce Dep. 57:14-58:4. |
| 79. Bruce did not give the Decedent any commands or any warning that he was going strike her window with his baton prior to striking the window. | Ex. 3, Bruce Dep. 36:2-8. |
| 80. Bruce never made any gestures with his hands in an attempt to communicate with Decedent that he wanted her to stop. | Ex. 3, Bruce Dep. 53:14-16. |
| 81. Bruce made the decision to not give any commands or gestures prior to approaching to smash the window. | Ex. 3, Bruce Dep. 64:15-20. |
| 82. Bruce claims that the reason why he did not try to give Decedent a command or gesture to let her know he wanted her to stop prior to approaching to stop her window was because he was purely focused on the task at hand. | Ex. 3, Bruce Dep. 59:14-18. |
| 83. Bruce was unaware of whether the car was moving while he was focused on breaking the driver's side window. | Ex. 3, Bruce Dep. 38:25-39:6, 39:16-20 |

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 84. Bruce anticipated that the vehicle was going to move while he was smashing the window. | Ex. 3, Bruce Dep. 53:25-54:5. |
| 85. Bruce claims that if the vehicle moved forward or backward, he intended to move along with the vehicle and match its angle while continuing to smash the window. | Ex. 3, Bruce Dep. 54:6-23. |
| 86. Bruce did not know where Maxwell was while he was smashing the window with his baton and was not aware of what Maxwell was doing. | Ex. 3, Bruce Dep. 54:24-55:1, 55:6-8. |
| 87. While Bruce was striking the driver's side window, Maxwell approached the moving vehicle's left rear tire and stabbed the tire with his knife. | Ex. 3, Bruce Dep. 40:16-18, 55:15-21; Ex. C, Incident Video at 01:31-01:35. |
| 88. Maxwell observed Bruce using his expandable baton to try and break the window before Maxwell got to the rear tire. | Ex. 1, Maxwell Dep. 40:19-41:7. |
| 89. Bruce struck the vehicle's window three times with his baton. | Ex. 3, Bruce Dep. 33:10-12; Ex. C, Incident Video at 01:30-33. |
| 90. After Bruce's third baton strike, the car reversed further, and Bruce fell to the ground near the front left tire. | Ex. C, Incident Video at 01:32-01:34. |
| 91. Bruce found himself on the ground and initially did not know what had brought him off his feet. | Ex. 3, Bruce Dep. 39:21-40:5. |
| 92. Bruce concedes that if he had not gone up to smash the vehicle's window, he would not have been in the position to end up where he did on the ground. | Ex. 3, Bruce Dep. 52:14-24. |
| 93. After falling to the ground, Bruce was positioned on all fours, with his arms and legs apart. | Ex. C, Incident Video at 01:34-01:38. |

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 94. After Bruce fell to the ground, the vehicle's front left tire did not stop on top of Bruce and Bruce was not pinned underneath the vehicle. | Ex. 6, Phillips Dep. 26:25-27:13; Ex. 7, Bell Dep. 23:10-25; Ex. C, Incident Video at 01:32-10:39. |
| 95. After Bruce went to the ground, he did not try to say anything to the Decedent. | Ex. 3, Bruce Dep. 45:21-23. |
| **Maxwell Shoots and Kills Decedent** | |
| 96. Moments after Bruce went to the ground, Bruce looked at Maxwell and told Maxwell to shoot Decedent with his firearm. | Ex. 1, Maxwell Dep. 64:9-12; Ex. 3, Bruce Dep. 45:24-46:10 |
| 97. Bruce believed that he was directing Maxwell to shoot the Decedent. | Ex. 3, Bruce Dep. 46:17-19. |
| 98. After stabbing the left rear tire twice, Maxwell turned his attention to Bruce, unholstered his firearm and pointed it at the driver's side window. | Ex. C, Incident Video at 01:35-01:37. |
| 99. There was a gap of time from when Maxwell drew his firearm to when he engaged his firearm during which Maxwell assessed the situation. | Ex. 2, Maxwell Int. 13:598-600. |
| 100.     According to Maxwell, approximately three to five seconds passed between the time Maxwell got to the car window and when he began shooting. | Ex. 2, Maxwell Int. 14:612-618. |
| 101.     Maxwell discharged his firearm into the driver's side window. | Ex. C, Incident Video at 01:39. |
| 102.     The vehicle was not moving when the shooting started. | Ex. C, Incident Video at 01:38-01:42. |
| 103.     Maxwell never said anything to Decedent, including any commands to stop or a warning that he was going to shoot, prior to the shooting. | Ex. 1, Maxwell Dep. 16:19-17:6, 17:17-21, 63:12-15. |

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 104.   Maxwell aimed at Decedent's upper left torso. | Ex. 1, Maxwell Dep. 63:16-20. |
| 105.   Maxwell was able to see Decedent in the car through the circle that was created after the first shot. | Ex. 1, Maxwell Dep. 63:24-64:4 |
| 106.   Maxwell had the impression that his shots were striking Decedent in the car because he could see the initial impact as he began shooting and could see that his continued shots appeared to be striking her. | Ex. 1, Maxwell Dep. 65:14-23. |
| 107.   After the first or second shot, Decedent's head fell forward and landed on the steering wheel. | Ex. 8, Hoberg Dep. 47:9-15, 61:5-17. |
| 108.   After the first two shots, Decedent's head and upper body moved away from the driver's side and down towards passenger seat area. | Ex. C, Incident Video at 01:39-01:40. |
| 109.   After the first two shots, the car slowly moved forward in a straight line and Bruce moved away from near the front left tire. | Ex. C, Incident Video at 01:40-01:42. |
| 110.   Bruce was not in the direct pathway of the vehicle when it started to move forward. | Ex. 7, Bell Dep. 42:16-23, 44:11-45:5; Ex. C, Incident Video at 01:39-01:43. |
| 111.   The car never attempted to make a turn when it moved forward; it generally moved in a straight direction the entire time. | Ex. 7, Bell Dep. 49:3-15; Ex. C, Incident Video at 01:39-01:43. |
| 112.   When the car rolled forward, it was moving at approximately 2 miles per hour. | Ex. 7, Bell Dep. 43:2-44:1; Ex. C, Incident Video at 01:39-01:43. |
| 113.   Bruce claims he heard two back-to-back shots and then felt the vehicle move off his leg. | Ex. 3, Bruce Dep. 67:1-6; Ex. 4, Bruce Int. 23:1010-1021. |

PLAINTIFFS' SEPARATE STATEMENT

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 114.    Maxwell fired five additional shots after the initial two shots for a total of seven shots. | Ex. 1, Maxwell Dep. 12:23-13:9; Ex. C, Incident Video at 01:39-01:41 |
| 115.    Maxwell claims he would not have had to shoot if Decedent had stopped and complied with directions after driving forward in the officers' direction. | Ex. 2, Maxwell Int. 14:650-653 |
| 116.    Maxwell claims Maxwell would not have used his firearm against Decedent had Decedent not been manipulating her car or looked like she was going to comply after striking Bruce. | Ex. 2, Maxwell Int. 14:655-15:659 |
| 117.    Decedent sustained seven gunshot wounds to her body. | Ex. 9, Autopsy at 2. |
| 118.    One of the gunshot wounds entered her left mid-back and had a back to front, left to right, and sharply upward trajectory. | Ex. 9, Autopsy at 2. |
| 119.    Another gunshot wound entered the lateral left torso and had a left to right, slightly front to back, and sharply upward trajectory. | Ex. 9, Autopsy at 2. |
| 120.    The bullets broke Decedent's jaw and left upper arm, damaged structures in her neck, and tore through her left lung with resultant accumulation of blood in her left chest cavity. | Ex. 9, Autopsy at 3. |
| 121.    Decedent died as a result of her gunshot wounds. | Ex. 9, Autopsy at 3. |
| 122.    Bruce did not sustain any broken bones or any injury that required surgical intervention as a result of the incident. | Ex. 3, Bruce Dep. 50:4-6, 50:13-24. |
| 123.    Bruce only sustained abrasions and contusions to his left knee, right knee, and abrasions to his hands. | Ex. 5, Bruce Injury Photos. |

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| **The Officers' Pre-Force Conduct and Uses of Force Violated Standard Police Practices and Training** | |
| 124.　Based on the circumstances of this incident, a reasonable police office acting consistent with standard police practices and training would have initially determined that Decedent was mentally ill or experiencing a mental health crisis. | DeFoe Decl. ¶ 5. |
| 125.　Officers are trained to recognize cues and other indicators of a mental illness in order to make appropriate decisions regarding intervention strategies. | DeFoe Decl. ¶ 5. |
| 126.　Despite Decedent exhibiting indicators of a mental illness, including Bruce determining that Decedent was not in her right state of mind and was crazy, Bruce and Maxwell failed to initially determine that Decedent was mentally ill or was experiencing a mental health crisis. | DeFoe Decl. ¶ 5. |
| 127.　There was a gross lack of situational awareness and fundamental tactical errors made by Maxwell and Bruce in this incident. | DeFoe Decl. ¶ 7. |
| 128.　The officers failed to formulate a tactical plan prior to their initial approach Decedent and prior to approaching Decedent to detain her. | DeFoe Decl. ¶ 7. |
| 129.　The poor tactical choices and errors made by the officers during this incident include failing to recognize that Decedent may have a mental illness and responding appropriately pursuant to their training, failing to tactically position themselves in a position of cover and away from Decedent's vehicle when it began moving, failing to communicate with each other during the incident, positioning themselves near or in the pathway of a moving vehicle despite anticipating that | DeFoe Decl. ¶ 7. |

| **PLAINTIFFS' ADDITIONAL MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| the vehicle would continue to move, unnecessarily escalating the situation by using force without attempting to communicate, give commands, or give warnings, and not being aware of where their partner was during the incident. | |
| 130.   Had the officers not made such poor tactical decisions and errors, the shooting would not have happened. | DeFoe Decl. ¶ 7. |
| 131.   A reasonable officer acting consistent with standard police practices would have acted according to their training regarding how to deal will mentally ill persons or persons experiencing a mental crisis and would have attempted to deescalate and utilize proper defusing techniques. | DeFoe Decl. ¶ 8. |
| 132.   Bruce's use of the baton to strike the driver's side window violated standard police practices and training and unnecessarily escalated the situation. | DeFoe Decl. ¶ 9. |
| 133.   A reasonable officer acting consistent with police practices and training, confronted with the facts of this incident, would not have used lethal force in this situation. | DeFoe Decl. ¶ 10. |
| 134.   This was not an immediate defense of life situation and under the facts of this case, Maxwell could not shoot Decedent after Bruce was not under the vehicle or in a position where he or Maxwell could be struck by the vehicle. | DeFoe Decl. ¶ 10. |
| 135.   Officers are trained that shooting at a moving vehicle is rarely effective and the officers should move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. | DeFoe Decl. ¶ 11; Ex. 1, Maxwell Dep. 70:14-71:1, 71:5-23, 72:12-18. |

| **PLAINTIFFS' ADDITIONAL MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 136.    Officers are taught that if a driver is wounded or killed while operating a motor vehicle, it could cause the driver to lose control of the vehicle, making it more dangerous for those around the vehicle. | DeFoe Decl. ¶ 11. |
| 137.    Officers are trained that moving to cover, repositioning, and/or waiting for additional responding units to gain and maintain a superior tactical advantage may maximize officer and public safety and minimizes the necessity for using lethal force. | DeFoe Decl. ¶ 11. |
| 138.    Officers are trained that lethal force must be a last resort and used only in the direst of circumstances. | DeFoe Decl. ¶ 12. |
| 139.    Officers are further trained that they must show a reverence for human life and to consider other reasonable measures available prior to using lethal force. | DeFoe Decl. ¶ 12. |
| 140.    Maxwell had other reasonable measures available to him at the time he used lethal force, including but not limited to issuing commands and warnings and moving to a position of cover. | DeFoe Decl. ¶ 12. |
| 141.    Officers are trained that they are responsible for justifying every shot. | DeFoe Decl. ¶ 13; Ex. 1, Maxwell Dep. 76:11-13. |
| 142.    Officers are also trained that subjective fear is insufficient to justify the use of lethal force and that an overreaction in using force is excessive force. | DeFoe Decl. ¶ 13. |
| 143.    The number of shots by Maxwell violated standard police practices and training as it was clear to Maxwell that his initial shots struck Decedent, Decedent was incapacitated by the initial shots, and Bruce was able to move away from the vehicle after the initial two shots. | DeFoe Decl. ¶ 13. |

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 144.    Officers are trained to give a warning, when feasible, prior to using force in order to give the suspect the opportunity to comply and avoid the use of force. | DeFoe Decl. ¶ 14; Ex. 1, Maxwell Dep. 76:8-10. |
| 145.    It was feasible for Bruce to provide commands or a warning prior to using his baton to strike the driver's side window but failed to do so | DeFoe Decl. ¶ 14. |
| 146.    It was feasible for Maxwell to provide commands and a warning prior to his use of lethal force but failed to do so. | DeFoe Decl. ¶ 14. |
| 147.    A reasonable officer acting pursuant to standard police practices and training would have given a warning prior to striking the driver's side window with a baton and prior to using deadly force under the circumstances of this incident. | DeFoe Decl. ¶ 14. |
| 148.    The Redding Police Department Policy 300.4.1 advises officers that an officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle or if deadly force other than the vehicle is directed at the officer or others. | Ex. 1, Maxwell Dep. 80:24-81:6. |
| 149.    Maxwell never saw Decedent in the car with a gun or pointing a gun at Maxwell. | Ex. 1, Maxwell Dep. 81:7-10. |