1   **LAW OFFICES OF DALE K. GALIPO**
    Dale K. Galipo, Esq. (Bar No. 144074)
2   dalekgalipo@yahoo.com
    Hang D. Le, Esq. (Bar No. 293450)
3   hlee@galipolaw.com
    21800 Burbank Boulevard, Suite 310
4   Woodland Hills, California, 91367
    Telephone: (818) 347-3333
5   Facsimile: (818) 347-4118

6   **LAW OFFICE OF STEWART KATZ**
    Stewart Katz, State Bar #127425
7   555 University Avenue, Suite 270
    Sacramento, California 95825
8   Telephone: (916) 444-5678

9   *Attorneys for Plaintiffs*

10

11              **UNITED STATES DISTRICT COURT FOR THE**
                **EASTERN DISTRICT OF CALIFORNIA**
12

13

14   VERONICA MCLEOD, individually and as     Case No. 2:22-cv-00585-WBS-JDP
     successor in interest to decedent, DOLORES
15   HERNANDEZ; AMADO HERNANDEZ,              *Honorable William B. Shubb*
     individually and as successor in interest to   *Hon. Magistrate Jeremy D. Peterson*
16   decedent, DOLORES HERNANDEZ; and
     YSIDRA REGALDO, individually,            **DECLARATION OF SCOTT DEFOE**
17

18                      Plaintiffs,
19                vs.

20   CITY OF REDDING; GARRETT MAXWELL,
     an individual; MATTHEW BRUCE, an
21   individual; and DOES 2-10, inclusive,

22                      Defendants.

23

24

25

26

27

28

## DECLARATION OF SCOTT DEFOE

I, Scott DeFoe, declare as follows:

      1.     I am a police practices expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances.

      2.     I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

      3.     My opinions are based in part on my training, professional experience and education.  I am a twenty-year veteran of the Los Angeles Police Department ("LAPD").  I held supervisory positions for the last 14 years of my career.  During my tenure with the LAPD, I received over 100 commendations, including the Medal of Valor, Purple Heart, and Police Star.

      4.     Before reaching my opinions in this case, I reviewed the involved officers' deposition transcripts, interview transcripts, bystander video of the incident photographs of the scene, the available police reports, City of Redding policies, as well as POST Learning Domains.

      5.     It is my opinion a reasonable police officer acting consistent with standard police practices and training would have initially determined that Ms. Dolores Hernandez was mentally ill or experiencing a mental health crisis. While it is not the role of or within the capacity of peace officers to attempt to diagnose a person's disability, officers are trained to recognize cues and other indicators in order to make appropriate decisions regarding intervention strategies. Officer Matthew Bruce and Corporal Garett Maxwell failed to initially determine that based on Ms. Dolores Hernandez's behavior, she was mentally ill or experiencing a mental health crisis. This includes the information regarding Ms. Hernandez's behavior and belligerence that was communicated to the officers when responding to the call, Officer Bruce stating that when he first approached Ms. Hernandez, she was not displaying normal behavior, Officer Bruce stating that he knew Ms. Hernandez was not in her right state of mind and becoming agitated with Officer Bruce, and Officer Bruce stating that he intended to let her go because it was not a crime to be crazy. Moreover, Officer Bruce stated that he was unable to assess whether or not Ms. Hernandez was under the influence of alcohol or a controlled substance. Officer Maxwell also observed Ms.

Hernandez's behavior and interactions with Officer Bruce, which prompted him to move closer to Officer Bruce.

6.      It is my opinion that an officer acting pursuant to standard police practices and training would not have believed there was reasonable suspicion to detain or probable cause to arrest Ms. Hernandez at the time Officer Bruce approached the vehicle and began to strike the driver's side window with his baton. The officers admit that when they first contacted Ms. Hernandez, they had neither reasonable suspicion to detain nor probable cause to arrest Decedent. Officer Bruce further admits that when Decedent started to back up to leave, he did not have enough to detain or arrest Decedent. Moreover, based on my view of the bystander video of the incident, it does not appear that Ms. Hernandez was intentionally trying to strike any of the officers with her vehicle.

7.      It is my opinion based on my review of the facts that there was a gross lack of situational awareness and fundamental tactical errors in this incident by Corporal Maxwell and Officer Bruce. Corporal Maxwell and Officer Bruce made poor tactical choices and errors and failed to formulate a tactical plan in this incident involving Ms. Hernandez prior to approaching the vehicle to make initial contact and prior to the officers approaching the vehicle in an attempt to detain Ms. Hernandez. It is my opinion that had the officers not made such poor tactical decisions and errors, the shooting would not have happened. The poor tactical choices and errors during this incident include but are not limited to:

- Failing to run the vehicle's license plate prior to making contact with Ms. Hernandez in order to ascertain additional information regarding possible criminal history, including 5150 mental health holds, of the subject of the call;
- Failing to formulate a tactical plan prior to approaching Ms. Hernandez;
- Failing to recognize, pursuant to their training, that based on Ms. Hernandez's behavior Ms. Hernandez may have a mental illness or be experiencing a mental crisis and responding appropriately pursuant to their training;
- Failing to tactically position themselves in a position of cover and away from Ms. Hernandez's vehicle when the vehicle began to move, considering Ms. Hernandez's

behavior and the comments she made to Officer Bruce during their conversation, including accusing Officer Bruce of being a murderer—which led Officer Bruce to believe that Ms. Hernandez was not safe;

- Assuming that Officer Bruce and Corporal Maxwell reasonably believed that Ms. Hernandez had attempted to strike the officers with her vehicle, both officers failed to tactically reposition themselves into a position of cover and communicate with their partner to move away from the vehicle and a plan to approach and detain Ms. Hernandez;

- Positioning themselves near or in the pathway of a moving vehicle despite anticipating that the vehicle would continue to move;

- Unnecessarily escalating the situation when Officer Bruce used his baton began striking the driver's side window with the intent of smashing open the window and pulling Ms. Hernandez out of the vehicle despite Officer Bruce admitting that he had never been able to successfully smash open a car window with his baton and never witnesses a successful attempt at smashing open a car window and pulling out the driver while the car is in gear and moving;

- Failing to attempt to communicate with Ms. Hernandez—including giving commands, gestures to communicate their intent that they wanted Ms. Hernandez to stop, and a warning that they were prepared to use force—in order to give Ms. Hernandez the opportunity to comply, prior to Officer Bruce's baton strikes and Corporal Maxwell's use of lethal force; and

- Officer Bruce not being aware of where Officer Maxwell was while Officer Bruce was attempting to smash open the driver's side window.

8. It is my opinion that a reasonable police officer acting consistent with standard police practices would have acted according to their training regarding how to deal with mentally ill persons or persons experiencing a mental crisis. Officers are taught that they should attempt to de-esclate and utilize proper defusing techniques when dealing with a suspected mentally-ill person. These techniques include:

- Recognize the person may be overwhelmed by thoughts, beliefs, sounds (voices).
- Remember, a person's delusions or hallucinations are real to them.
- Understand that a rational discussion may not take place.
- Speak simply, move slowly.
- Announce actions before taking them.
- Attempt to gain voluntary compliance.
- Remove distractions and disruptive people.
- Be friendly, patient and encouraging but remain professional.
- Be aware that a uniform and a gun may frighten a person with mental illness.
- Reassure the person that no harm is intended.
- Get immediate emergency aid when needed.

9.      It is my opinion that Officer Bruce's use of the baton to strike the driver's side window violated standard police practices and training. It is my opinion that Officer Bruce unnecessarily escalated the situation when he began striking the front driver's side window of Ms. Hernandez's vehicle with his baton in an attempt to break it, entire, and pull her out of the vehicle. The officers had observable information that Ms. Hernandez may be experiencing a mental illness or mental health crisis but did not have any information that Ms. Hernandez had threatened anyone, had injured anyone, had a criminal history, was under the influence of drugs or alcohol, or had any weapons. Neither officer had been impacted by Ms. Hernandez's vehicle at the time Officer Bruce began striking the driver's side window. Neither officer had attempted to communicate with Ms. Hernandez to convey that they wanted her to stop in order to give Ms. Hernandez the opportunity to comply and avoid any escalation prior to Officer Bruce approaching and striking the driver's side window.

10.     It is my opinion that a reasonable officer acting consistent with standard police practices and training, confronted with the facts of this incident, would not have used lethal force in this situation. This was not an immediate defense of life situation, and under the facts of this case, Corporal Maxwell could not shoot Ms. Hernandez after Officer Bruce was not under the vehicle or in a position where he or Corporal Maxwell could be struck by the vehicle.  In addition,

1  there were no police officers or citizens in the path of Ms. Hernandez's vehicle at the time

2  Corporal Maxwell fired (7) rounds from his Glock, Model 35, .40 caliber semi-automatic pistol

3  killing Ms. Hernandez.

4        11.    Officers are trained that shooting at a moving vehicle is rarely effective and the

5  officers should move out of the path of an approaching vehicle instead of discharging their firearm

6  at the vehicle or any of its occupants. Officers are trained that they should not shoot at any part of

7  the vehicle in an attempt to disable the vehicle. Officers are taught that if a driver is wounded or

8  killed while operating a motor vehicle, it could cause the driver to lose control of the vehicle,

9  making it more dangerous for those around the vehicle. Shooting at a vehicle should ordinarily be

10  an act of last resort and generally should only be done when other reasonable alternatives are

11  impractical or fail.  The mere movement of a vehicle toward a police officer does not necessarily

12  constitute a deadly force situation. Officers are trained that moving to cover, repositioning, and/or

13  waiting for additional responding units to gain and maintain a superior tactical advantage may

14  maximize officer and public safety and minimizes the necessity for using lethal force.

15        12.    Officers are trained lethal force must be a last resort and used only in the direst of

16  circumstances. Officers are further trained that they must show a reverence for human life and to

17  consider other reasonable measures available prior to using lethal force. It is my opinion that

18  Corporal Maxwell had other reasonable measures available to him at the time he used lethal force,

19  including but not limited to issuing commands and warnings and moving to a position of cover.

20        13.    Officers are trained that they are responsible for justifying every shot. Officers are

21  also trained that subjective fear is insufficient to justify the use of lethal force and that an

22  overreaction in using force is excessive force. It is my opinion that the number of shots by

23  Corporal Maxwell violated standard police practices and training. Assuming that Corporal

24  Maxwell reasonably believed Ms. Hernandez posed an immediate threat of death or serious bodily

25  injury to Officer Bruce at the time Corporal Maxwell fired his initial two shots, the objective facts

26  of this case do not support Corporal Maxwell's firing five additional rounds. It was clear to

27  Corporal Maxwell that when he initially opened fire, the rounds struck Ms. Hernandez. Corporal

28  Maxwell could see into the vehicle and was able to see Ms. Hernandez being struck by the

1  gunshots. After the first two initial shots, it is clear that the vehicle is not on top of Officer Bruce
2  and Ms. Hernandez was no longer in a position to operate the vehicle. This is supported by the
3  bystander video and Officer Bruce testifying that he was able to move away from the vehicle after
4  the first two shots.

5      14.    Officers are trained to give a warning when feasible prior to using force in order to
6  give the suspect the opportunity to comply and avoid the use of force. It is my opinion that it was
7  feasible for Officer Bruce to provide commands or a warning prior to using his baton to strike the
8  driver's side window but failed to do so. Officer Bruce testified that he made the decision to not
9  issue commands or gestures that he wanted Ms. Hernandez to stop prior to approaching to smash
10  the window because he was purely focused on the task at hand. It is also my opinion that it was
11  feasible for Corporal Maxwell to provide commands and a warning prior to his use of lethal force
12  but failed to do so. Corporal Maxwell testified that there was a gap of time between when he drew
13  his firearm and when he engaged his firearm, during which he assessed the situation. However,
14  Corporal Maxwell admitted that he did not provide any commands or verbal warnings at any time
15  during the incident. It is my opinion that a reasonable officer acting pursuant to standard police
16  practices and training would have given a warning prior to striking the driver's side window with
17  a baton and prior using deadly force under the circumstances of this incident.

18

19      I declare under penalty of perjury under the laws of the State of California and the United
20  States of America that the foregoing is true and correct. Executed this 6th day of May 2024 in
21  Huntington Beach, California.

22

23

24

25  _____

26      Scott DeFoe

27

28