1  DALE L. ALLEN, JR., State Bar No. 145279
   dallen@aghwlaw.com
2  AMEET D. PATEL, State Bar No. 343413
   apatel@aghwlaw.com
3  ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
   180 Montgomery Street, Suite 1200
4  San Francisco, CA  94104
   Telephone:     (415) 697-2000
5  Facsimile:     (415) 813-2045

6  Attorney for Defendant
   CITY OF REDDING, GARRETT MAXWELL, AND
7  MATTHEW BRUCE

8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11 VERONICA MCLEOD, individually and     Case No. 2:22-cv-00585-WBS-JDP
   as successor in interest to decedent,
12 DOLORES HERNANDEZ; AMADO
   HERNANADEZ; individually and as        **DEFENDANTS' REPLY TO PLAINTIFFS'**
13 successor in interest to decedent,      **OPPOSITION TO MOTION FOR SUMMARY**
   DOLORES HERNANDEZ; and YSIDRA           **JUDGMENT, OR IN THE ALTERNATIVE,**
14 REGALDO, individually,                  **SUMMARY ADJUDICATION [F.R.C.P. 56]**

15              Plaintiff,                  Hon. WILLIAM B. SHUBB

16      v.

17 CITY OF REDDING; GARRETT               Date:    June 10, 2024
   MAXWELL, an individual; MATTHEW        Time:    1:30 p.m.
18 BRUCE, an individual; and DOES 2-10,   Ctrm:    5
   inclusive,
                                          Trial:   September 10, 2024
19
                Defendants
20

21

22

23

24

25

26

27

28

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

661867.1

# TABLE OF CONTENTS

I.  UNDISPUTED MATERIAL AND RELEVANT FACTS BY PLAINTIFFS AND DEFENDANTS ............................................................................................ 1

II.  LEGAL ARGUMENT ............................................................................................ 2

    A.  Plaintiffs Have Withdrawn Denial of Medical Care and *Monell* Claims ............. 2

    B.  Abandoned Claims ................................................................................................ 2

    C.  No Unreasonable Seizure ...................................................................................... 3

    D.  The Officers Use of Force Was Objectively Reasonable ...................................... 4

        1.  Objective Reasonableness Standard – Use of Force ................................. 4

        2.  Qualified Immunity .................................................................................. 16

    E.  Familial Relationship .......................................................................................... 19

        1.  No Purpose to Harm ................................................................................ 19

        2.  No Deliberate Indifference ...................................................................... 19

        3.  Even if Officers Had Time to Deliberate, No Deliberate Indifference ................................................................................................ 20

        4.  Qualified Immunity .................................................................................. 20

    F.  Bane Act .............................................................................................................. 21

    G.  Battery and Negligence Claims Should be Dismissed ......................................... 21

III.  CONCLUSION .................................................................................................... 22

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

661867.1

# TABLE OF AUTHORITIES

**U.S. Supreme Court**

*Connick v. Thompson*,
  563 U.S. 51 (2011).................................................................................................20

*Florida v. Royer*,
  460 U.S. 491(1983)................................................................................................3

*Graham v. Connor*,
  490 U.S. 386, 388 (1989)................................................................................passim

*Saucier v. Katz*,
  533 U.S. 194 (2001)...............................................................................................18

*Scott v. Harris*,
  550 U.S. 372 (2007)............................................................................................1, 2

**Ninth Circuit Court of Appeals**

*A.D. v. California Highway Patrol*,
  712 F.3d 446 (9th Cir. 2013) ..........................................................................20, 21

*Acosta v. City and County of San Francisco*,
  83 F.3d 1143 (9th Cir. 1996) ...............................................................................18

*Blankenhorn v. City of Orange*,
  485 F. 3d 463, 481 (9th Cir. 2007) ......................................................................15

*Branscum v. San Ramon Police Dept.*,
  606 Fed. App'x 860 (9th Cir. 2015) .......................................................................1

*Bryan v. MacPherson,* 630 F.3d 805, 831 (9th Cir. 2010) .........................................6

*Crawford v. City of Bakersfield*,
  944 F.3d 1070, 1078 (9th Cir. 2019) ...................................................................16

*Vos v. City of Newport Beach*,
  892 F.3d 1024 (9th Cir. 2018) .............................................................................16

*Deorle v. Rutherford*,
  272 F.3d 1272 (9th Cir. 2001) ...........................................................................8, 9

*Espinosa v. City & Cnty. of San Francisco*,
  598 F.3d 528 (9th Cir. 2010) .................................................................................4

*Estate of Aguirre v. Cnty. of Riverside*,
  29 F.4th 624 (9th Cir. 2022).................................................................................18

*Estate of Martinez v. City of Federal Way*,
  105 Fed.Appx. 897, 899 (9th Cir. 2004) ...............................................................8

*Estate of Hernandez v.. City of Los Angeles*,
  96 F.4th 1209 (9th. Cir 2024) ..............................................................................13

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

ii

661867.1

*George v. Morris*,
   736 F.3d 829 (9th Cir. 2013) ...................................................................................18

*Gonzales v. City of Anaheim*,
   747 F. 3d 789 (9th Cir. 2014) ..................................................................................19

*Hopkins v. Bonvicino*,
   573 F.3d 757 (9th Cir. 2009) ............................................................................16, 17

*Mattos v. Agarano*,
   661 F.3d 433, 445 (9th Cir. 2011) ..........................................................................6

*Monzon v. City of Murietta*,
   978 F.3d 1150 (9th Cir. 2020) ................................................................................12

*Orn v. City of Tacoma*,
   949 F.3d 1167 (9th. Cir 2020) ..........................................................................10, 18

*Ramirez v. Butte-Silver Bow Cnty.*,
   298 F.3d 1022 (9th Cir. 2002) ................................................................................15

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) ....................................................................................2

*Scott v. Henrich*,
   39 F.3d 912 (9th Cir.1994)

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir. 2005.) ..............................................................................5, 8

*Villanueva v. California*,
   986 F.3d 1158, 1170 (9th Cir. 2021) ...............................................................10, 11

*Wilkinson v. Torres*,
   610 F.3d 546 (9th Cir. 2010) ............................................................................12, 13

*Young v. Cnty. of Los Angeles*,
   655 F.3d 1156, 1162 (9th Cir. 2011) ........................................................................9

**Other Circuit Courts**

*Smith v. Cupp*,
   430 F.3d 766 (6th Cir. 2005) ..................................................................................18

*Johnson v. White*,
   725 F. App'x 868 (11th Cir. 2018) .........................................................................17

*Kirby v. Duva*,
   530 F.3d 475 (6th Cir. 2008) ..................................................................................18

*Patterson v. City of Wildwood*,

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

661867.1

354 Fed. App'x 695 (3d Cir. 2009) ...................................................................1, 2

*Robbins v. Chronister*,
   156 F. Supp. 2d 1211 (D. Kansas 2001)................................................................17

*Salvato v. Miley*,
   790 F.3d 1286, 1293 (11th Cir. 2015) ....................................................................5

*Shreve v. Franklin Cnty.*,
   743 F.3d 126 (6th Cir. 2014) ...............................................................................1, 2

**Federal District**

*Donaldson v. United States*,
   No. 15-CV-908 JLS (KSC), 2018 WL 1089986 (S.D. Cal. February 26, 2018).....................4

*Fewell v. California*,
   No. CV 16-1934 DSF, 2017 WL 6043080 (C.D. Cal April 11, 2017) ............................12, 13

*Holland v. Azevedo*,
   No. 14-cv-01349-JST, 2016 WL 1754446 (N.D. Cal. May 3, 2016) ...............................8, 9

*Kosakoff v. City of San Diego*,
   No. 08-CV-1819, 2010 WL 1759455 (S.D. Cal. Apr. 29, 2010)........................................19

*Santos v. Bear*,
   No. 2:14–cv–00836–JKS, 2015 WL 5326499 (E.D. Cal. September 11, 2015).....................3

**California Supreme Court**
*B.B. v. Cnty. of Los Angeles*,
   25 Cal. App. 5th 115 (2018) ....................................................................................21

**California Court of Appeals**

*People v. Russell*,
   129 Cal. App. 4th 776 (Ct. App. 2005) ...................................................................4

**California Statutes and Law**
Cal. Penal Code § 245(a)(1)..................................................................................4

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

661867.1

**I.    UNDISPUTED MATERIAL AND RELEVANT FACTS BY PLAINTIFFS AND DEFENDANTS**

Plaintiffs, in their Opposition, disputed nearly all 149 of Defendants' and their own material facts; however, only three disputes truly remain.  Whether Bruce was pinned underneath the vehicle after being run over (based on the testimony of witnesses Richard Bell and Aiden Phillips), whether the car was moving when the shooting was initiated, and Plaintiffs' expert's (Scott DeFoe's) opinion evidence as to the reasonableness of the officers' actions.

What is undisputed, is that the death of Dolores Hernandez occurred because she assaulted Ofc. Bruce not once, but twice. The first time was when she drove directly at both Ofcs. Bruce and Maxwell (though coming closer to Ofc. Bruce, missing him by inches) although she was able to and free to leave and unhindered in any way by either officer. (*DUMF Nos. 13-15*; *PAMF Nos. 60-61, 66*). The second occurred immediately after the first assault, when Ofc. Bruce attempted to place her under lawful arrest by trying to break her car window with his baton. After he struck Hernandez's window three times with his baton, she reversed her vehicle, striking Bruce, dragging him under the vehicle, and pinning him under the vehicle. (*DUMF Nos. 17, 20-21*; *PAMF No. 72-74, 90-91*) The shooting occurred because Maxwell had the objectively reasonable belief that Bruce was at imminent risk of death or seriously bodily injury based on the totality of the facts known to the officers at the time. (*DUMF Nos. 22-25*; *PAMF No.93-94, 97, 99-101*)

Plaintiffs, at the outset of their Opposition (*Opposition*, p.18:24-p.19:10), want to bar the only video of this incident that exists because it tells the true and accurate story of officers trying to contact Hernandez, ultimately allowing her to leave when she began reversing, Hernandez suddenly turning her vehicle towards and driving directly at officers, and Hernandez then reversing, running over an officer and pinning him under her car. Though they frequently cite and rely on the video in their disputed facts and additional material facts, and though the video clearly speaks for itself, Plaintiffs argue the video does not speak for itself and argue that it should not be considered under the *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) exception.  Plaintiffs cite to cases (*Patterson v. City of Wildwood*, 354 Fed. App'x 695, 698 (3d Cir. 2009); *Branscum v. San Ramon Police Dept.*, 606 Fed. App'x 860 (9th Cir. 2015); and *Shreve v. Franklin Cnty.*, Ohio,

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

661867.1

743 F.3d 126 (6th Cir. 2014)) that have no applicability to the facts of this case. The video in *Patterson*, did not capture or portray the incident. *Patterson*, *supra*, at 697-698. The video footage in *Branscum* was obtained from more than one source (dashcam video footage from responding officers' vehicles and Taser mounted cameras) that only captured portions of the incident. Plaintiffs citation to *Shreve* was to the dissenting opinion (*Shreve*, *supra*, at 143), and confirmed that the majority held that plaintiff's interpretation of the events on the video is by no means "blatantly contradicted" by the video evidence." *Id.*

"*Scott's* holding is twofold. First, *Scott* stands for the proposition that witness accounts seeking to contradict an unambiguous video recording do not create a triable issue. *Id.* at 380–81, 127 S.Ct. 1769. *Scott* reaffirmed the holdings of *Matsushita* and *Anderson* that, in disposing of a motion for summary judgment, a court need draw only reasonable inferences in favor of the nonmoving party; it need not construe the record "in such a manner that is wholly unsupportable—in the view of any reasonable jury—by the video recording." *Id.*, at 132.

The Incident Video here is not susceptible to more than one interpretation. It is clear, concise, and unambiguously shows the undisputed facts of this case.

## II.    LEGAL ARGUMENT

### A.    Plaintiffs Have Withdrawn Denial of Medical Care and *Monell* Claims

In their Opposition, Plaintiffs have voluntarily dismissed (and do not oppose Defendants' Motion for Summary Judgment as to) their Fourth Amendment denial of medical care against Cpl. Maxwell and municipal liability (*Monell*) claims (ratification, inadequate training, and unconstitutional custom, practice or policy) against the City. (*Opposition*, p. 2 at n.1) Thus, Defendants' Reply will not address those claims.

### B.    Abandoned Claims

In their Opposition, Plaintiffs abandoned the DOEs and punitive damages. Plaintiffs never responded to Defendants' request for dismissal of DOE defendants and punitive damages. See *Shakur v. Schriro*, 514 F.3d 878, at 892 (9th Cir. 2008) ("a plaintiff has abandoned … claims by not raising them in opposition to [the defendant's] motion for summary judgment.") (internal quotations and citation omitted). All DOEs should be dismissed, with prejudice, as should

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1    Plaintiffs' requests for punitive damages.

2         **C.      No Unreasonable Seizure**

3         Plaintiffs' Opposition argues that Hernandez was unreasonably seized when Bruce struck

4    her car window and when Maxwell deflated her vehicle's tires with a knife. Plaintiffs are

5    mistaken. The Parties agree that the officers' contact with Hernandez started off as a consensual

6    encounter, and that Hernandez was free to leave at the time she first reversed her vehicle. (*UMF.*

7    *No. 14*; *Motion*, p.18:24-p.19:13; *Opposition*, p.20:1-8). Plaintiffs provided no authority contrary

8    to that presented in Defendant's Motion (*Florida v. Royer*, *supra*, 460 U.S. 491, 497-98 (1983)

9    and *Santos v. Bear*, No. 2:14–cv–00836–JKS, 2015 WL 5326499 at *7 (E.D. Cal. September 11,

10   2015)), showing that the initial encounter did not require suspicion since it occurred in a public

11   place.

12        Plaintiffs raise numerous disputes that are immaterial to what the Incident Video clearly

13   shows. That during these "seconds" that passed between Hernandez's initial reversing movement

14   and the point Bruce used his baton – that Hernandez committed a felony, assault with a deadly

15   weapon, on Bruce and Maxwell. (*UMF No. 30*) Plaintiffs' argument that no such assault with a

16   deadly weapon occurred is conclusory and blatantly contradicts incident-related video. (*Incident*

17   *Video* – "Ex. C" to AP Decl. (Dkt. No. 29)). Defendants' Reply to SSUMF, specifically as to

18   *UMF No.14* and *UMF No. 30*, shows that Plaintiffs' disputes fail to contradict the evidence

19   Defendants cite to in support of Defendants' *UMF No. 14* and *UMF No. 30*, which

20   unambiguously shows that Hernandez drove her vehicle directly at both Bruce and Maxwell and

21   committed an assault with a deadly weapon. Plaintiffs' disputes to *UMF No. 14* and *30* lack

22   foundation and are unsupported by their cited evidence, which Plaintiffs at times

23   mischaracterized. (See *Reply to SSUMF*).

24        Plaintiffs' Opposition states that the Incident Video shows that Hernandez does not appear

25   to intentionally try to strike any of the officers with her vehicle in between the time she started to

26   reverse her vehicle and when Bruce began striking the car window with his baton. (*Opposition*,

27   p.20:13-16). This factual allegation is absent from Plaintiffs' *Response* and presented without and

28   supporting evidence, making it wholly conclusory and speculative conjecture. The Incident Video

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

661867.1

speaks for itself on this matter.

For these reasons, Plaintiffs have failed to establish any dispute of material fact as to their unreasonable seizure claim, and this claim should be dismissed with prejudice.

**D.**   **The Officers Use of Force Was Objectively Reasonable**

Defendants are entitled to summary judgment on the first cause of action (excessive force under the Fourth Amendment) because: (1) the officers used reasonable force under an objective reasonableness standard; and (2) they are entitled to qualified immunity.

1.   Objective Reasonableness Standard – Use of Force

The parties agree that excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Bearing in mind that deadly force requires the highest justification, a court then weighs the factors identified by the Supreme Court in *Graham*: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).

The use of force here includes baton strikes by Ofc. Bruce on Hernandez's car window and the use of deadly force by Cpl. Maxwell.

a.   Severity of the Crime

Plaintiffs' Opposition argues that Hernandez had not committed a crime. As established above, in Section II.C, Plaintiffs are incorrect. Hernandez committed a serious and violent felony, assault with a deadly weapon, on Bruce and Maxwell.

The parties agree that neither Bruce nor Maxwell had made any attempt to stop Hernandez from leaving when she began to reverse her vehicle. Instead of leaving, Hernandez drove her vehicle directly at both Cpl. Maxwell and Ofc. Bruce (who would have been hit if they did not move out of the way) in violation of Cal. Penal Code Section 245(a)(1). See *Donaldson v. United States*, No. 15-CV-908 JLS (KSC), 2018 WL 1089986 at *14 (S.D. Cal. February 26, 2018) ("Such a crime is cognizable in California. See Cal. Penal Code § 245(a)(1); *People v. Russell*, 129 Cal. App. 4th 776, 782 (Ct. App. 2005) ("The law makes clear a person who operates or

MSJ – REPLY
2:22-CV-00585-WBS-JDP

661867.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

drives a vehicle in an attempt to injure another person has committed assault with a deadly weapon, to wit, the car" (citation omitted)). The evidence supports this based on the totality of the circumstances – see *UMF Nos. 14, 15* and *30.* The invalid objections and disputes to *UMF No. 14* and *UMF No. 30* were discussed in Section II.C. Plaintiffs made no objection to *UMF No. 15*, and their disputes were the very same presented in *UMF No. 14* and *UMF No. 30*, which failed to contradict Defendants' facts or create a dispute as to a material fact.

Plaintiffs Opposition argues that "[t]he officers were not responding to a serious crime when they initially responded to the scene and Decedent had not committed a crime when the officers moved to arrest her. The type of call officers responded to here or the fact that that the initial reported disturbance did not constitute a serious crime is irrelevant here. What is relevant is Hernandez's actions after officers were allowing her to leave the scene – Hernandez driving her vehicle directly at the officers. Plaintiffs reliance on *Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015) is misplaced. Not only is *Salvato* an out of Circuit opinion that has never been adopted by this Circuit, but *Salvato* is entirely unavailing because the officer in that case shot Salvato when he was not an "immediate threat" to either officer – in fact, Salvato was retreating, apparently unarmed, and outside of striking distance. *Id*. at 1293–94. The officer also kicked the decedent after he was already shot, handcuffed, and lying face down in the road. *Id*. at 1294. Nothing like those egregious facts is present here. More importantly, the evidence here (See Section II.C) conclusively shows that Hernandez had committed an assault with a deadly weapon with her car on Bruce and Maxwell (prior to Bruce's baton strikes), later ran over Bruce and pinned him under her vehicle, posing an imminent risk of death or serious bodily injury to Bruce at the time Maxwell fired his shots. Further, the assault with a deadly weapon by Hernandez occurred on scene and against officers on scene.

b.    Threat to Officers' or Public's Safety

The Ninth Circuit has made plain -- repeatedly -- the importance of the threat to officer and/or public safety: "the most important factor under *Graham* is whether the suspect posed an immediate threat to the safety of the officers or others." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc).

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

Ofc. Bruce only used his baton on Hernandez's vehicle after she drove her vehicle directly at him. It is undisputed Hernandez's conduct posed a threat to Ofc. Bruce. Cpl. Maxwell used deadly force on Hernandez after she assaulted Ofc. Bruce with a deadly weapon once, then assaulted him again by running him over and pinning him under the car, and the imminent risk of death or serious bodily injury she posed to Ofc. Bruce. Plaintiffs do not dispute that a car can pose a lethal threat. Their expert testified in the event a car is deemed a lethal threat, no other force options other than lethal force would be available. (See Defendants' Response to PAMF No. 140 and *DeFoe Dep*., p.:89:17-p.90:2, Exhibit I to Declaration of Ameet Patel).

### c.   Resistance

Plaintiffs attempt to shift focus from where it belongs – that Hernandez assaulted the officers with a deadly weapon (her vehicle) and then actually struck and drove over and on top of Bruce – and instead argue that they did not issue commands or a warning prior to striking her window with a baton and prior to Maxwell's use of deadly force. Although The Ninth Circuit has recognized other factors like warnings and lack of alternative means (See *Bryan v. MacPherson,* 630 F.3d 805, 831 (9th Cir. 2010); *Mattos v. Agarano*, 661 F.3d 433, 445 (9th Cir. 2011) (en banc)), Plaintiffs discuss this other factor under their Section entitled, "*Decedent was Not Actively Resisting Arrest or Attempting to Evade Arrest by Flight*" (*Opposition*, at p.13:23-24) and yet fail to actually address Hernandez's active resistance.

As Defendants' Motion made clear, Hernandez had every opportunity to cooperate with officers but chose not to. When she first backed out of the parking space, she was still free to leave. Instead, Hernandez suddenly drove her vehicle at Ofc. Bruce, who had to step out of the way to avoid being hit. Ofc. Bruce used his baton to disable the vehicle and stop Hernandez, and she resisted. She did not put the car in park. She did not exit the vehicle. She did not indicate or gesture in any way that she was willing to comply and stop driving. Instead, she put the vehicle in reverse and ran over Ofc. Bruce's foot and leg in an attempt to get away. This is undoubtedly, active resistance.

Plaintiffs argue that "the officers had the opportunity and the time to give commands and a warning (*Opposition*, at p.22:11-18).

661867.1

These arguments are unsupported and based on mischaracterized evidence. The fact Bruce "*made the decision*" to not issue commands or a warning is analyzed under the totality of the circumstances. Bruce did testify, during his deposition, that a reason for not issuing a gesture or command was that he was "focused on the task at hand." (*Bruce Dep.*, p.59:14-18, Exhibit J to Declaration of Ameet Patel); however the question he was asked was "Right. And is there ***a reason*** (emphasis added) why prior to approaching to smash her window, you didn't try to give her a command or some gesture or something to let her know you wanted her to stop?" (*Bruce Dep.*, p.59:14-17). Plaintiffs selectively include portions of Bruce's testimony in an attempt to muddy the waters. In fact, the very next question Bruce was asked, "…aren't officers trained to give commands when they can?" (*Id.*, at p.59:19-20). Bruce responded, "When they can[,]" and added that "If you can. If the situation lends itself to providing commands, and there are so many situations that do not provide the opportunity to give commands, that action is needed *immediately* (emphasis added), then you don't give commands; you take action. (*Id.*, at p.59:21, p.60:8-15). This evidence shows Bruce recognized the immediacy of the rapidly evolving situation he faced and did not believe such a warning was feasible. Further, the objective data supports Bruce's beliefs.

Bruce did not have time to provide a verbal warning prior to striking Hernandez's window with his baton. Approximately 4.1 seconds elapsed between the time Hernandez's vehicle first moved directly towards the officers and the time it started its second reverse movement and running over Ofc. Bruce's leg. (See *Kelkar Declaration*, ¶ 5(n) and *Kelkar Report* - Line Items 11 and 15 in Kelkar's Video Log attachment – Dkt. No. 30 at p.51) Given the proximity of both officers to the vehicle and the danger Hernandez's vehicle posed being used as a deadly weapon, it was not practicable for Ofc. Bruce to provide a warning. The fact Cpl. Maxwell recalled Ofc. Bruce stating something to the effect of "Now you're trying to run us over?" (*Maxwell Dep.*, at p.47:21-p. 48:4; *PAMF No. 71*) after the first forward movement of the vehicle speaks to Ofc. Bruce's state of mind concerning the danger he perceived and the infeasibility of issuing a warning or commands. Ofc. Bruce also reasonably believed that Hernandez would not hear a warning due to the loud music in her car. (*UMF No. 19*).

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

Plaintiffs argue that Maxwell had time to issue a warning (i.e., it was feasible). Per the *Kelkar Report*, approximately 1.567 seconds elapsed from time Maxwell unholsters [at the driver's window] and his first shot (see *Kelkar Report*, Lines 27 and 32 of "Video Log" [Dkt. No. 30, at p. 51, itself attached as Exhibit "J" to AP Decl.) Only approximately 5.0 seconds transpired from the point Hernandez's vehicle struck Ofc. Bruce's leg until the vehicle began moving forward again while Ofc. Bruce was pinned under it. [See *Kelkar Declaration*, ¶ 5(o)]. The situation Bruce and Maxwell faced was undeniably rapidly evolving and took only mere seconds to transpire.

Warnings should only be given when **feasible** (emphasis added). *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001). "Verbal warnings are not feasible when lives are in immediate danger and every second matters." *Corrales v. Impastato*, 650 Fed.Appx. 540, 542 (9th Cir. 2016) (quoting *Estate of Martinez v. City of Federal Way*, 105 Fed.Appx. 897, 899 (9th Cir. 2004)) Plaintiffs' willfully ignore the immediate danger Bruce faced when pinned under the car, as supported by the undisputed *Kelkar Decl.* and *Kelkar Report*.

Thus, it remains clear that Hernandez actively resisted and/or obstructed peace officers in the lawful exercise of their duties. *Smith v. City of Hemet* 394 F.3d 689, 695 (9th Cir. 2005.)

            d.    <u>Officer Bruce's Baton Strikes Were Objectively Reasonable</u>

Defendants' Motion (*Motion*, p.20:12-22) illustrated that Ofc. Bruce's use of his baton to strike Hernandez's vehicle's driver door window (**not on Hernandez herself**) constituted a low level of force. See *Holland v. Azevedo*, No. 14-cv-01349-JST, 2016 WL 1754446 at *9 (N.D. Cal. May 3, 2016) (establishing that the record conclusively establishes that defendant officers employed a level of force that was "'low on the continuum of tactics available to police officers'" [quotation omitted] and was not "capable of inflicting significant pain and causing serious injury" where officers "broke plaintiff's passenger side window, opened the passenger door, and attempted to pull her from the car through the passenger door"[quotation omitted].) Plaintiffs attempt to distinguish *Holland* from the facts here is their baseless argument that officers did not have probable cause to arrest Hernandez. As shown in Section II.D.1.a above, officers did have probable cause to arrest Hernandez for assault with a deadly weapon.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1    Plaintiffs' Opposition failed to present any authority to the contrary. Instead, the authority

2    they cite is entirely differentiable. *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir.

3    2011) arises from a traffic stop where Young himself (*not his vehicle*) was pepper sprayed and

4    struck with a baton after he exited his vehicle and disobeyed an order to reenter it. *Young* Court

5    held that an officer's use of baton blows presents a significant use of force that is capable of

6    causing pain and **bodily** injury and are thus considered a form of "intermediate force." Hernandez

7    was never struck with a baton, her car was. *Id.*

8    Plaintiffs reliance on *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001) is

9    misdirected.  Defendants don't contest this general notion; however, the words "potentially" and

10   "may cause" are key. The situation Bruce and Maxwell faces was not potentially dangerous, it

11   **was** dangerous. Instead of simply reversing and leaving (while free to do so), Hernandez drove

12   directly at Bruce and Maxwell, coming within inches of Bruce's legs committing an assault with

13   a deadly weapon that placed Ofc. Bruce in fear for his safety based on the totality of the

14   circumstances. (*UMF Nos. 14-15*). Also, as *Holland*, *supra*, acknowledged, baton strikes against

15   an individual's vehicle (and not the individual) is not "capable of inflicting significant pain and

16   causing serious injury." *Holland*, *supra* at *9.

17   Plaintiffs' remaining arguments regarding Bruce's use of his baton are also unpersuasive.

18   As shown above in Section II.C, the evidence objectively and unmistakably committed an assault

19   with a deadly weapon on the officers, giving them reasonable suspicion to stop and detain

20   Hernandez, and probable case to place her under arrest. Plaintiffs agree that Hernandez had

21   become uncooperative and argumentative with Ofc. Bruce during their initial interaction, called

22   Bruce a murderer, and screamed "fuck you" and extended both of her middle fingers at Bruce,

23   suddenly. (*UMF Nos. 10, 11,* and *16*). Shortly after, Hernandez drove forward, turning her vehicle

24   directly at both Bruce and Maxwell and coming within inches of Bruce's legs (*UMF Nos. 14* and

25   *15*). Plaintiffs' disputes to *UMF Nos. 14* and *15* do not create a dispute of material fact as to this

26   issue. (See *Reply to SSUMF*).

27   Plaintiffs also argue that officers should have been able to read Hernandez's mind. There

28   is no evidence officers knew what she was thinking. Both officers acted upon the totality of the

9

1   circumstances as to the objective factors under *Graham* as presented to them.  Plaintiffs argue

2   they should have known what Plaintiff would do or how she would react. That is pure

3   speculation.

4        The facts are clear. Ofc. Bruce used his baton to strike Hernandez's car window after she

5   committed a felony, assault with a deadly weapon, in an attempt to stop the car and lawfully

6   detain/arrest her. (*UMF Nos. 14, 15, 17* and *30*).

7        Plaintiffs' claim that Bruce failed to de-escalate, or that Hernandez was provoked are also

8   inaccurate and unsupported. Cpl. Maxwell and Ofc. Bruce responded, attempted to de-escalate

9   the situation, and walked away from her vehicle to allow her to leave. (*UMF No. 14.*) The parking

10  stall on either side of her vehicle was open and provided ample room to clear the officers and

11  safely reverse into the parking lot lane of traffic had she intended to leave). (*UMF No. 13*. and

12  Incident Video, 1:18-1:26). Both officers were standing in the open parking stall to the left (east)

13  of Hernandez. Officers did nothing to provoke Hernandez or cause her to suddenly stop reversing

14  and drive directly at them (and towards the car parked two parking stalls to the left (east).

15  (Incident Video, *DeFoe Deposition*, at p.47:15-p.50:3, Decl. Patel, Ex. I). Lastly, Plaintiffs ignore

16  the assault on officers with Hernandez's vehicle and mischaracterize the entire incident (and

17  Incident Video, which speaks for itself), by stating that Bruce's baton strikes were a "quick

18  escalation to significant force without provocation" (*Opposition*, p. 24:2-6). Bruce's use of his

19  baton on Hernandez's vehicle were reasonable under *Graham*, *supra*, and not excessive.

20            e.      Officer Maxwell's use of Deadly Force was Reasonable

21       Cpl. Maxwell's use of deadly force in response to the lethal threat posed by Hernandez is

22  consistent with *Graham* and Ninth Circuit precedent. Plaintiffs' *Opposition* presents authority

23  (p.24:16-24) that supports Defendants' argument, not cut against it. Both *Orn v. City of Tacoma*,

24  949 F.3d 1167, 1174 (9th Cir. 2020) and *Villanueva v. California*, 986 F.3d 1158, 1170 (9th Cir.

25  2021) justify Maxwell's shots because Bruce was "at risk of being struck by [Hernandez's

26  vehicle."] *Orn*, *supra*, at 1174. Further, Bruce was pinned under Hernandez's vehicle after

27  Hernandez struck Ofc. Bruce's leg until the vehicle struck Ofc. Bruce and pinned him underneath

28  the vehicle, placing him in imminent risk of death or seriously bodily injury. Combined with

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – REPLY
2:22-CV-00585-WBS-JDP

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

Hernandez's earlier assault on Maxwell and Bruce with her vehicle (during her first forward movement), it is clear that Ofc. Bruce could not "have easily stepped out of the vehicle's path to avoid danger" (*Villanueva*, *supra* at 1170) when pinned (*UMF No. 21-22*), and that Hernandez displayed an "aggressive manner" of driving "involving attempted or actual acceleration of the vehicle." (*Id.*).

Plaintiffs attempt to argue that Bruce was not pinned is ineffective. They rely on mischaracterization of testimony from two witnesses (Richard Bell and Aiden Phillips), who were some distance away from where Bruce and Hernandez's vehicle were located. Ofc. Bruce testified that the vehicle's wheel stopped on top of his leg, which he felt being "crushed." When asked if Bruce was pinned, Mr. Phillips' testimony (*Phillips Deposition*, p.27:6-13, Exhibit K to Declaration of Ameet Patel) was "Not that I remember." When asked, "Okay. So there was no point in time where the car stopped or slowed down even while it was running over that officer's body?", Mr. Bell responded, "It ran over it and then right when it got off of it, it kind of halted to a stop." (*Bell Deposition*, p.23:16-20, Exhibit L to Declaration of Ameet Patel). Bell's response does not state that Bruce was not pinned under the vehicle. Further, Phillips testified that he and Bell (who were in the same car together) were approximately 30 feet from the officers during the incident (*Phillips Dep.*, p.15:23-p.16:11, *Id.*), while Bell testified they were approximately 10-15 feet away. (*Bell Dep.,* p.45:22-p.46:4, *Id.*). Neither would have been in a better position than Bruce himself to determine if Bruce was pinned and unable to move. Finally, Plaintiffs did not perform an accident reconstruction analysis of the incident. Kelkar's report and objective analysis, combined with the Incident Video, shows undeniably that Bruce was pinned under the car prior to Maxwell firing and through Maxwell's fifth shot (See Lines 37 and 38 of "Video Log" attached to *Kelkar Report*, itself attached as Exhibit "J" to AP Decl).

It is undisputed that Hernandez's vehicle would have run over Ofc. Bruce's head and body had it been driven forward with counterclockwise steering (effectively moving the front of the vehicle to the left, and having the rear wheels run over Ofc. Bruce's head and body), meaning there was potential for serious and potentially fatal injury to Ofc. Bruce. (*Kelkar Report*, attached as Exhibit "J" to AP Decl.; *Declaration of Rajeev Kelkar*, attached as Exhibit "F" to AP Decl, at ¶

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

5(m)). Plaintiffs mischaracterize this imminent threat posed to Bruce as he was pinned under the vehicle, claiming that there was only a "potential" imminent threat. They severely misstate the facts and misapply the law in doing so. Although there are no objective facts supporting with absolute certainty that Hernandez's vehicle was going to move forward again in the fashion described in Kelkar's Declaration and Report, there are also no facts showing that the vehicle was not going to move forward again. Hernandez had already exhibited an odd driving pattern (initially reversing, then driving forward directly at officers, then reversing and striking Bruce and dragging him under the car). (Incident Video). Maxwell had to make a split-second decision and assess the *actual* imminent risk of death that the vehicle posed to Bruce, who was pinned underneath. (*UMF No. 24*). Ofc. Maxwell was not required to endanger Bruce's life by waiting to see if the vehicle would move off of Bruce in a certain direction.

The authority presented in Defendants' Motion from both the Ninth Circuit and in-circuit District Court opinions (*Monzon v. City of Murietta*, 978 F.3d 1150 (9th Cir. 2020); *Wilkinson v. Torres*, 610 F.3d 546, 549 (9th Cir. 2010) and *Fewell v. California¸* No. CV 16-1934 DSF (JEMx), 2017 WL 6043080 (C.D. Cal April 11, 2017)) highlight the reasonableness of Maxwell's actions given that the risk Bruce faced. Bruce was not merely at risk of being struck by the vehicle but actually was struck and pinned underneath, a risk/threat that was equal to, or even greater than that faced by officers in the aforementioned cases. Plaintiffs' attempts to differentiate the above authority are fruitless. Although the high-speed chase that preceded the shooting in *Monzon* was certainly a factor considered by the Court, the fact there was no high-speed chase here does not change the fact that Hernandez posed an immediate threat of death or serious bodily injury to Bruce. Any attempts by Plaintiffs to argue that she did not, or that Bruce was not in the pathway of the vehicle just prior to the shooting, should be ignored (DeFoe testified he is not an accident reconstruction expert and did not do a reconstruction in this case – "*DeFoe Dep*., at p.39:3-5; p.64:23-p.65:11; p.87:3-23). Further, as shown above in Section II.D.1.c, Hernandez actively resisted when officers tried to place her under arrest.

Plaintiffs' attempt to distinguish *Wilkinson* fails for the same reasons as their attempt to differentiate *Monzon*. Not only did Hernandez actually strike and driver over Bruce, she also

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1   posed an immediate threat to him as he remained pinned underneath until at least the fifth shot

2   from Maxwell. See also *Wilkinson*, *supra*, at 554-555 ("No one could predict how quickly the

3   minivan would gain traction. Furthermore, because Torres was in a rapidly evolving situation

4   requiring him to make "split-second judgments," we need not scrutinize as closely as the district

5   court did Torres' decision about how best to minimize the risk to his own safety and the safety of

6   others. See Porter, 546 F.3d at 1139."). Plaintiffs' efforts to distinguish *Fewell* also fail. Officers

7   had probable cause to arrest Hernandez and warnings/commands were not feasible given the

8   tense, quickly-evolving events.

9       Plaintiffs also argue that the number of shots fired in total was excessive and

10  unreasonable. (*Opposition*, p.25:17-19). This argument is also ineffective. First, Plaintiffs state

11  that Maxwell fired "his five additional" (after his first two) shots "despite it being clear that his

12  initial shots had struck Decedent." (*Opposition*, p.25:27-28). The mere fact the first two rounds

13  struck Hernandez does not in itself make the next five unreasonable or excessive (especially in

14  light of the authority in Defendants' Motion (*Motion*, p.25:10-21 – See *City & County of San*

15  *Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015) and *Wilkinson*, *supra*, at 552-553).

16      A recent Ninth Circuit decision, *Estate of Hernandez v.. City of Los Angeles*, 96 F.4th

17  1209 (9th. Cir 2024) is illustrative. In *Estate of Hernandez*, the officer fired at least three

18  temporally distinct volleys of shots (six in total). See *Estate of Hernandez*, *supra*, at 1214-15. The

19  Court noted that there was an almost a two-second pause between the officer's second and third

20  shots, and about a one-second pause between her fourth and fifth shots. The Court precluded

21  summary judgment based on when the last two shots fired by the officer, at which point

22  Hernandez—who was still on the ground—had sufficiently been halted to warrant 'reassess[ing]

23  the situation rather than continu[ing] shooting.'" *Id.*, at 1218.

24      Unlike in *Estate of Hernandez,* Maxwells seven shots were fired consecutively, with

25  minimal pause in between each shot. In essence, the shots were one large volley, with no time for

26  Maxwell to re-asses based on the continued threat Hernandez's vehicle posed to Bruce.

27      Plaintiffs' argument that Hernandez "was incapacitated after the initial two shots as her

28  head fell forward and struck the steering wheel and her head and upper body then fell towards the

13

front passenger seat, and Bruce was able to move away from the vehicle after the initial two shots" (*PAMF Nos. 109, 143*) lacks foundation and blatantly contradicts the Incident Video (depicting Bruce was not able to move away from the car until at least the fifth shot) and the undisputed *Kelkar Report*. Moreover, Plaintiffs did not retain an accident reconstruction expert such as the one retained by Defendants (Kelkar), whose report provided unambiguous evidence showing that the vehicle came off Bruce's leg right after the fifth shot was fired – see Lines 37 and 38 of "Video Log" attached to *Kelkar Report*). Kelkar's Report also shows that only approximately 1.967 seconds elapsed between Maxwell's first shot and his sixth shot[1], and only .768 second elapses between the second shot and the third shot (see Lines 32-39 of "Video Log" attached to *Kelkar Report*). Plaintiffs' argument not only ignores the Incident Video and the definite data contained in the *Kelkar Report*, it also improperly relies on DeFoe's Declaration (¶13), which provides only speculative, opinion evidence. DeFoe testified he is not an accident reconstruction expert and did not do a reconstruction in this case.  See "*DeFoe Dep*., at p.39:3-5; p.64:23-p.65:11; p.87:3-23. DeFoe also conceded that he did not perform forensic video analysis. See "*DeFoe Dep*., at p.39:3-5, p.93:2-p.97:20. DeFoe also conceded that he was not offering medical opinions (i.e. to Hernandez being "incapacitated.") See "*DeFoe Dep*., at p.10:22-p.11:11.

See also *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1150 (E.D. Cal 2005) ("Moreover, the Ninth Circuit has held that, "even for summary judgment purposes, 'the fact that an expert disagrees with the officer's actions does not render the officer's actions unreasonable.'" *Billington*, supra 292 F.3d at 1189 [overruled on other grounds] (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.1994))."

Based on the above, Maxwell's use of deadly force was reasonable, and this claim should be dismissed.

---

[1] Defendants acknowledge that the Video Log attached to the *Kelkar Report* only lists the muzzle flash time log data for shots one through six; however, this is sufficient to support Defendants' arguments in this Section.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

f.   Bruce Did Not Integrally Participate in the Use of Deadly Force Against Hernandez

Ofc. Bruce did not integrally participate in the Use of Deadly Force, and even if he did, such use was reasonable per Section II.D.1.e above. Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F. 3d 463, 481, n. 12 (9th Cir. 2007). "[I]f an officer is unaware of a constitutional violation as it is occurring, the unaware officer cannot be held liable." *Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1029-30 (9th Cir. 2002).

Bruce did not integrally participate in the use of deadly force. He did not fire his pistol. He only presented his genuine state of mind regarding his fear of the imminent risk of death or serious bodily injury to Maxwell. Maxwell unholstered and drew his weapon before Bruce made his statement to "shoot her," and Maxwell's decision to shoot was independent of Bruce's statement. (*UMF No. 23-24*). Assuming, *in arguendo*, that Bruce did integrally participate, Maxwell's use of deadly force was reasonable, meaning Bruce's participation was as well.

g.   Additional Factors Favor the Reasonableness of the Force Used

Plaintiffs again rely on the lack of warning of commands issued by Maxwell and Bruce. Defendants' moving papers and Reply show that such warnings or commands were not feasible. Plaintiffs also argue that the officers knew or should have known that Decedent was mentally ill, should have de-escalated the situation and instead escalated the situation. (*Opposition*, p.27:16-19). This argument holds no weight.

No facts show that either Bruce or Maxwell were able to evaluate Hernandez for mental illness. Rather, the facts show Hernandez was uncooperative and argumentative, thus preventing officers from engaging in further conversation with her. After that point, officers de-escalated the situation by allowing Hernandez to leave. Thus, these additional factors favor the reasonableness of the use of force here.

See also *Hart v. City of Redwood City*, 99 F.4th 543, 554 (9th Cir. 2024) ("While "whether the suspect has exhibited signs of mental illness is one of the factors the court will consider," this court has "refused to create two tracks of excessive force analysis, one for the

661867.1

1   mentally ill and one for serious criminals." *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078

2   (9th Cir. 2019) (quoting *Vos*, 892 F.3d at 1034 n.9). Ultimately, that an individual who poses an

3   immediate threat may be mentally ill does not remove the case from the *Graham* analysis

4   performed above, and any mental health crisis Hart experienced is considered in view of the

5   surrounding circumstances.")

6        To the extent Plaintiffs rely on DeFoe's Declaration to support their argument concerning

7   mental illness, such portions of DeFoe's Declaration (¶5-10) are improper opinion evidence

8   lacking foundation. See *Foster*, *supra.* There is simply no evidence that the officers were aware

9   that Hernandez was mentally ill.

10       Plaintiff's also argue that the Defendant officers placed themselves in harm's way and

11  made poor tactical decisions are completely unsupported by the evidence. Paragraph 7 of the

12  Declaration of Scott DeFoe, on which Plaintiffs solely rest their arguments on this issue, contains

13  nothing but improper, speculative opinion evidence that is not fact and lacks foundation. DeFoe

14  testified he is not an accident reconstruction expert and did not do a reconstruction in this case.

15  ("*DeFoe Dep.*, at p.39:3-p.46:15). DeFoe could not point to any training material supporting

16  Plaintiff's argument. ("*DeFoe Dep.*, at p.28:20-p.29:11, p.39:3-p.46:15, p.47:15-p.49:12; p.73:21-

17  p.78:18). The standard is totality of the circumstances/ objective reasonableness under *Graham*,

18  *supra*, and its progeny. See *Maxwell Dep.*, p.48:13-15. See *Bruce Dep.*, p.27:1-11, p.62:10-13.

19  See also *Foster*, *supra*. Here, both officers acted reasonably.

20            2.   Qualified Immunity

21       Plaintiffs' Opposition argues Bruce and Maxwell are not entitled to qualified immunity

22  because Hernandez never posed an immediate threat of death or serious bodily injury to Bruce.

23  (*Opposition*, p.31:8-17) First, as discussed *supra*, under the facts of this case, employing an

24  objectively reasonable standard, as well as looking at controlling case law, Hernandez did assault

25  officers with her vehicle not once, but twice (the second time being when actually struck Bruce,

26  drug him under the car and pinned him) and was an imminent threat. Second, and more

27  importantly, Plaintiffs fail to argue the proper standard for qualified immunity.

28       The standard for qualified immunity is not whether the officers' use of force was

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

16

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

reasonable or whether the suspect posed an imminent threat or even whether the officers followed their training. In analyzing a police officer's assertion of qualified immunity, the court must determine: (1) whether there was a violation of a constitutional right, ***and*** (2) whether the right was clearly established such that a reasonable officer would understand his conduct violate that right. If the alleged conduct violated a constitutional right, then the Court must determine "whether the right was clearly established at the time of the alleged unlawful action." *Hopkins v. Bonvicino*, 573 F.3d 757, 762 (9th Cir. 2009) (internal citation and quotation omitted).

Cpl. Maxwell and Ofc. Bruce are entitled to qualified immunity unless Plaintiffs can identify a case where an officer was found to have violated the Fourth Amendment for (1) using a baton in an attempt to break a car window when apprehending an aggressive and uncooperative subject who refused to leave when allowed and instead actively and physically resisted by assaulting them with a deadly weapon; and (2) shooting under the following circumstances: subject who chose not to leave when given the opportunity and instead, escalated the situation without provocation by assaulting the officers with a deadly weapon more than once by driving forward directly at them and then reversing into and on top an officer (making him vulnerable to death or further serious bodily injury). Plaintiffs failed to identify such a case in their Opposition.

a.   It Was Not Clearly Established that Bruce's Baton Strikes Violated the Constitution

Plaintiffs cite two out of Circuit cases denying qualified immunity as to Bruce's baton strikes. In *Johnson v. White*, 725 F. App'x 868, 872 876-77 (11th Cir. 2018) plaintiff was contacted regarding an indecent exposure incident and, without physically resisting, was forcibly removed from his vehicle, thrown to the ground, pinned down by the officers' knees, had his face pushed into the asphalt, and was struck several times while face down. *Id.*, at 870, 876-877. The opinion did not address whether qualified immunity applied or not as to whether an officer used a flashlight or a baton to break plaintiff's car window. The opinion merely denied qualified immunity for the officers who forcibly removed plaintiff from his vehicle in the above circumstances, which are a stark contrast to those here, where Hernandez who had just committed a violent felony, assault with a deadly weapon.

In *Robbins v. Chronister*, 156 F. Supp. 2d 1211, (D. Kansas 2001), the Court denied the officer qualified immunity on the basis that the crime involved was a low-level traffic warrant, and that the off-duty officer, not in uniform, should have waited for on-duty officers to arrive so as to not necessitate breaking plaintiff's car window. *Id.*, at 1215. *Id.* Unlike the *Robbins* plaintiff, Hernandez had committed a serious crime (assault with a deadly weapon), actively resisted when officers tried to place her under arrest (by reversing and striking Bruce and pinning him under her car) and posted an immediate threat to Bruce.

The facts here are nothing like those where an "obvious case" has been found [i.e., where officers, without warning, shot and killed an individual holding a weapon in a non-threatening manner (*Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624 (9th Cir. 2022)) or where officers responding to a domestic disturbance call to fatally shoot a suspect who emerged from his home onto his porch with his pistol pointed down (*George v. Morris*, 736 F.3d 829, 837 (9th Cir. 2013)].

Officer Bruce is entitled to qualified immunity.

   b. <u>It Was Not Clearly Established that Maxwell's Use of Deadly Force Violated the Constitution</u>

Regarding excessive force claims, the immunity "operates … to protect officers from the sometimes-hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal citations and quotations omitted).

Plaintiffs offer two in-Circuit and three out-of-Circuit cases denying qualified immunity as to Maxwell's use of deadly force. None are on point as all are clearly distinguishable. *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1146 (9th Cir. 1996), an off-duty (plainclothes) officer heard a woman scream and saw two men running with what he believed to be a purse, gave chase to them and fired two shots into the car the suspects entered, killing a third male, the driver. *Orn v. City of Tacoma,* 949 F.3d 1167, 1167 (9th. Cir 2020) involved an officer who could have avoided any risk of being struck by simply taking a step back and "get out of the path of Mr. Orn's vehicle" and only made accidental contact with a police vehicle in a parking lot.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

661867.1

*Kirby v. Duva*, 530 F.3d 475 (6th Cir. 2008) involved an interlocutory appeal where Plaintiffs' facts showed that officers shot at the decedent during a traffic stop where he tried to flee and nearby officers were not in harm's way. *Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005)involved an officer who was not in the line of flight of the fleeing vehicle and who ran toward the driver side of the car after the car passed him. Finally, *Kosakoff v. City of San Diego*, No. 08-CV-1819, 2010 WL 1759455 at *6 (S.D. Cal. Apr. 29, 2010) involved officers firing at a fleeing vehicle after it exited a garage and was moving away from the officers where no officer was in harm's way because of the vehicle.

None of these five cases inform an officer that they cannot shoot at a vehicle that has struck and run over an officer (or any individual), pinning him underneath, where the shooting officer objectively believes under the totality of the circumstances that the individual underneath pinned under the vehicle is in imminent risk of death or serious bodily injury.

Defendant officers are entitled to qualified immunity.

**E.    Familial Relationship**

Plaintiffs' Opposition offers conclusory statements (unsupported by factual evidence) that the defendant officers' conduct "shocked the conscious" because officers escalated their actions, which led to the deadly shooting. Such conclusory remarks are not enough. Plaintiffs do not proffer any evidence that the defendant officers acted with a purpose to harm or, in the alternative, deliberate indifference. The officers are also entitled to qualified immunity.

1.    No Purpose to Harm

Where, as here, the incident unfolded in a matter of seconds and the officers did not have time to deliberate "use of force shocks the conscience only if the officers had a purpose to harm the decedent for reasons unrelated to legitimate law enforcement objectives." *Gonzales v. City of Anaheim*, 747 F. 3d 789, 797 (9th Cir. 2014) There was no purpose to harm here. Ofc. Bruce only used his baton in an effort to break Hernandez's window (not on her) after Hernandez committed her first assault with a deadly weapon, and Cpl. Maxwell deployed his firearm in response to the imminent threat of death and bodily injury posed to Bruce. Plaintiffs have produced no evidence to even suggest – let alone conclude – that Bruce or Maxwell acted with an ulterior motive in this

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

matter.

### 2.   No Deliberate Indifference

Assuming, *in arguendo*, the Court finds the officers did have time to deliberate and utilizes the other Fourteenth Amendment standard (deliberate indifference), there is still no violation. Here, Plaintiffs argue that neither Bruce nor Maxwell faced split-second decision making. The argument is entirely unsupported. Officers here did not have time to deliberate.

As illustrated above, officers had probable cause to arrest Hernandez for a violent felony, assault with a deadly weapon. Although free to leave, Hernandez chose to rapidly escalate the situation, requiring Bruce to make a split-second decision in an effort to detain and arrest her. Approximately 4.1 seconds elapsed between the time Hernandez's vehicle first moved directly towards the officers and the time it started its second reverse movement and running over Ofc. Bruce's leg. (*Kelkar Declaration*, ¶ 5(n)). The situation Cpl. Maxwell was facing was also rapidly evolving and took approximately 5.0 seconds to transpire from the point Hernandez's vehicle struck Ofc. Bruce's leg until the vehicle began moving forward again while Ofc. Bruce was pinned under it. (*Kelkar Declaration*, ¶ 5(o)).

### 3.   Even if Officers Had Time to Deliberate, No Deliberate Indifference

Assuming, *arguendo*, the Court finds the officers did have time to deliberate and utilizes the other Fourteenth Amendment standard (deliberate indifference), there is still no constitutional violation. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51 (2011). Plaintiffs have offered no such evidence here. Bruce did not deploy his baton and Maxwell did not deploy his pistol on a whim. Bruce used his baton against Hernandez's vehicle to place her under arrest after her felonious assault, and Maxwell only fired in response to the lethal threat (i.e. Bruce pinned under her car) posed by Hernandez.

### 4.   Qualified Immunity

Defendants fully incorporate and adopt by reference their qualified immunity discussion above. Maxwell and Bruce are entitled to qualified immunity unless Plaintiffs can identify a case where officers in similar factual circumstances were found to have violated the Fourteenth

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

661867.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  Amendment under the purpose to harm or deliberate indifference standard. Plaintiffs did not

2  make this showing in their Opposition. They cite to *A.D. v. California Highway Patrol*, 712 F.3d

3  446 (9th Cir. 2013), in which the issues and facts are far from analogous to those here given that

4  that case rested in large part on a jury finding that the officer in fact acted without a legitimate

5  law enforcement objective and with a purpose to harm. Further, unlike in *A.D.*, where no officer

6  was in the direct pathway of the vehicle when the shooting occurred, Bruce had been struck by

7  Hernandez's vehicle and pinned under the ground, facing an imminent risk of death or serious

8  bodily injury. Thus, both officers are entitled to qualified immunity.

9        **F.**    <u>**Bane Act**</u>

10        Plaintiffs' Opposition argues they have a viable Bane Act claim on the sole grounds that

11  the Maxwell "acted with reckless disregard." (*Opposition*, p. 39:20-25.) Their basis for this

12  argument is fundamentally flawed. As shown above, Hernanez undeniably posed an imminent

13  risk of death or serious bodily injury to Bruce, who she had struck with her car and drug under

14  until he was pinned and unable to move. Plaintiff's conclusory statement claiming this was not

15  the case is insufficient. Plaintiffs have not proffered any proper evidence (i.e., non-opinion factual

16  evidence with proper foundation) to the contrary. The facts of the sole case they cite to *B.B. v.*

17  *Cnty. of Los Angeles*, 25 Cal. App. 5th 115, 133 (2018), are completely dissimilar from the facts

18  here. *B.B.* involved a hands-on use of force where "deputies continued to hold and apply weight

19  to the prone suspect after the suspect had been handcuffed, had labored breathing, and went

20  limp." (*Opposition*, p.39:13-14). The case is so dissimilar it is irrelevant based on the facts here,

21  where an individual assaulted officers with her vehicle before actually striking an officer and

22  crushing him under her car.

23        Defendants are not liable under Civil Code § 52.1 because there was no specific intent to

24  deprive Hernandez of a constitutional right. Rather, the officers were acting for a legitimate,

25  specific law enforcement purpose (investigating a disturbance and then attempting to place

26  Hernandez under arrest for assault with a deadly weapon). Plaintiffs' Bane Act claim also fails

27  because there was no excessive force (See Section II.D).

28

661867.1

**G.**      **Battery and Negligence Claims Should be Dismissed**

For the reasons set forth in Defendants' moving papers (Dkt. No. 27) Plaintiffs' battery and

negligence state law claims should be dismissed.

/ / /

/ / /

**III.**    **CONCLUSION**

Defendants respectfully request the Court grant Defendants' motion for summary

judgment or, in the alternative, partial summary judgment.

Dated:  May 28, 2024                    ALLEN, GLAESSNER,
                                        HAZELWOOD & WERTH, LLP


                                        By:   _/s/ AMEET D. PATEL_____
                                            DALE L. ALLEN, JR.
                                            AMEET D. PATEL
                                            Attorneys for Defendants
                                            CITY OF REDDING, GARRETT
                                            MAXWELL, and MATTHEW BRUCE

**ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP**
180 Montgomery Street, Suite 1200
San Francisco, California 94104

22

661867.1